IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ALEX PERMENTER, ERIC RODIGHIERO, and CHRIS WHEELER, ) ) ) ) ) ) Plaintiffs, ) ) v. ) ) eCLINICALWORKS, LLC, ) ) Defendant. ) ) ) | CIVIL ACTION NO. 5:18-cv-382 (MTT) |

## ORDER

Defendant eClinicalWorks moves to transfer this action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).[1]  Doc. 49.  Relators Alex Permenter, Eric Rodighiero, and Chris Wheeler oppose the motion.  Doc. 62.  For the following reasons, eClinicalWorks' motion to transfer is **DENIED.**

### I. BACKGROUND

Relators allege that eClinicalWorks fraudulently obtained federal certification of its electronic healthcare records ("EHR") software causing medical practices using that software to submit false claims for federal incentive payments.  Doc. 34.  According to the relators, this constitutes a violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729.  *Id.*  Relators are computer and information technology ("IT") specialists who live and work in Macon, Georgia.  Doc. 62-1 ¶¶ 2-7, 27-31.  Relators' company, Alex's PC

---

[1] Section 1404(a) provides: "For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

Solutions, provides IT, telecom, and web services for 198 private healthcare providers in the Middle District of Georgia.  *Id.* ¶ 10.  Defendant eClinicalWorks is a healthcare technology company headquartered in Westborough, Massachusetts.  Doc. 49-2 ¶ 3.  eClinicalWorks "has had approximately 2,300 employees based in the United States, approximately 1,500 of which work out of the company's Massachusetts based headquarters."  *Id.*  In total, eClinicalWorks "has approximately 16,000 customers in 55 states and territories nationwide," with approximately 850 customers based in Georgia.  *Id.* ¶ 7.

Relators filed this FCA action in the Middle District of Georgia on October 16, 2018.  Doc. 3.  The Court granted the United States several extensions to decide whether it would intervene.  Docs. 11; 16; 20; 23; 26; 29.  The United States ultimately declined to do so on October 18, 2021.  Doc. 32.  On October 20, 2021, relators filed an amended complaint.  Doc. 34.  Defendant eClinicalWorks filed this instant motion to transfer venue on January 14, 2022.  Doc. 49.

## II. STANDARD

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  "[T]he purpose of the section is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen*, 376 U.S. at 616.  The Eleventh Circuit has established nine factors to balance when determining if transfer is proper:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "The moving party bears the burden of establishing that a balance of the 1404(a) interests favor the transfer." *Martin v. South Carolina Bank*, 811 F. Supp. 679, 685 (M.D. Ga. 1992) (quotation omitted). "[T]o satisfy this burden, the movant must do more than show that the transfer would merely shift convenience from one party to the other or that the balance of all factors is but slightly in their favor." *Knapik v. United States*, 2020 WL 7775429, at 5 (M.D. Ga. Dec. 30, 2020) (citation omitted).

### III. DISCUSSION

Under the FCA, venue is proper in the judicial district in which: (1) one or more of the "defendant[s] can be found, resides, [or] transacts business," or (2) "any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). Defendant eClinicalWorks asserts that this action could have originally been filed in the District of Massachusetts. *See* 28 U.S.C.A. § 1391(b). Relators do not challenge this claim, and the Court agrees that venue, personal jurisdiction, and subject matter jurisdiction are proper in the District of Massachusetts. Accordingly, transfer is appropriate if the balancing test reveals that this case should, in the interest of convenience and justice, proceed in the District of Massachusetts.

**(1)   Convenience of the Witnesses**

"It is often said that the most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Harper v. Am. Airlines, Inc.*, 2009 WL 1605800, at *5 (N.D. Ala. May 18, 2009) (quotation omitted). "When weighing the convenience of the witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D. Fla. 2013) (citation omitted).

Proceeding on the unlikely assumption that this case would go to trial,[2] eClinicalWorks identifies three groups of witnesses that it claims should be considered: eClinicalWorks' employees; government witnesses; and eClinicalWorks' outside software monitoring company. Docs. 49-1 at 18-24; 63 at 8-9. With regard to the first group, "[w]itnesses closely aligned with the parties, like employees, are presumed to be willing to testify in different forums because their presence can be obtained by the parties themselves." *Omega Pats., LLC v. Gen. Motors LLC*, 2012 WL 13014727, at *3 (N.D. Ga. Oct. 4, 2012). Accordingly, the Court does not give much weight to eClinicalWorks' contention that "[a] trial in Boston would be far more convenient than a trial in Macon for the key eClinicalWorks' witnesses." Doc. 63 at 9.

Rather, "[i]n evaluating the convenience of witnesses, the Court focuses on non-party witnesses' willingness and ability to testify in the forum." *Omega Pats.*, 2012 WL 13014727, at *3. eClinicalWorks contends that ["t]he irrefutable evidence of the

---

[2] Relators' note that "[t]rials in FCA cases are about as rare as they come." Doc. 62 at 17 n. 72. That point is well taken.

government's lack of enforcement action will destroy the relators' ability to prove materiality."  Doc. 63 at 11 (citing *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 195 (2016)).  As such, the "government officials who can speak to the government's inaction will therefore be key trial witnesses" in addition to witnesses from the outside software monitoring company "who have overseen eClinicalWorks' software" since 2017.  Doc. 63 at 11-12.  All of the government witnesses from the second group reside in the Washington, D.C. metropolitan area, and the majority of the outside software monitoring company witnesses from the third group reside in Nashville, Tennessee.  *Id.*  As to the government witnesses, eClinicalWorks argues that the Moakley Federal Courthouse in Boston is a mere two miles from Boston's Logan International Airport and that "[a]ccessing Boston from any of the Washington, D.C. area's three international airports is very easy" in contrast to travelling to the William A. Bootle Federal Courthouse in Macon.  Doc. 49-1 at 23 n. 11.  Such a journey to Macon, eClinicalWorks contends, would "require an hour-long flight to Atlanta followed by an hour-plus drive to Macon."  *Id.*  But this is not the case.  Middle Georgia Regional Airport—located only ten miles from the Federal Courthouse in Macon—offers daily service to the Baltimore/Washington International Airport.[3]  With respect to the third group, eClinicalWorks concedes "a trial in Boston would be at least as convenient for them as a trial in Macon."  Doc. 63 at 12.

---

[3] Albeit only "12 weekly round trips with two each weekday and one on Saturdays and Sundays."  *Destinations*, Middle Georgia Regional Airport, https://www.iflymacon.com/destinations.cms (last visited March 24, 2022).  In any event, the Court fails to see how a one-hour commute imposes hardship.  Notably, eClinicalWorks describes Logan International Airport by distance rather than time.  In the Court's experience, it is unlikely that the time difference in the two commutes is material.

To recap, the first group consisting of eClinicalWorks' own employees is largely irrelevant to the Court's analysis.  The second group, consisting of government witnesses who reside in Washington D.C., can fly non-stop to Macon just as they could fly non-stop to Boston.  The third group, consisting of witnesses from the outside software monitoring company—the majority of whom are in Nashville—is a wash.  The Court finds that the "convenience of witnesses" and "ability to compel unwilling witnesses" factors are neutral and do not favor transfer.  *See Omega Pats.*, 2012 WL 13014727, at *3.

**(2)     The Location of Relevant Documents**

"The second factor examines the sources of documentary proof and other tangible materials, and the ease at which the Parties can transport them to trial."  *U.S. ex rel. Fla. v. ApolloMD Inc.*, 2020 WL 10181736, at *6 (S.D. Fla. Aug. 3, 2020).  But in the technological age, this factor "is almost irrelevant."  *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586, 2015 WL 11233132, at *2 (S.D. Fla. Jan. 29, 2015). eClinicalWorks argues this factor weighs in favor of transfer because "few, if any, relevant documents are likely to be located in Georgia."  Doc. 49-1 at 24.  While this may be true, it is hard to fathom that eClinicalWorks—a software company—operates in the "bygone era of paper files and documents."  Doc. 62 at 23.  Moreover, eClinicalWorks' counsel has already established it is familiar with the electronic document review process because eClinicalWorks used such a process to respond to the DOJ's civil investigative demands.  *Id.* (citing Doc. 49-5 ¶¶ 5-9).  The Court has no doubt eClinicalWorks can replicate this process should this case proceed to discovery.  To the extent it remains relevant, this factor is neutral.

**(3)     Convenience of the Parties**

The third factor concerns "the appearance of employees at court, and, to some extent, the appearance of counsel."  *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1328 (M.D. Fla. 2010).  "The logical starting point for analyzing the convenience of the parties is a consideration of their residences."  *Delorenzo v. HP Enter. Servs.*, LLC, 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015) (internal citations omitted).  "[W]here the movant has an extensive nationwide network" of operations, "the scale tilts slightly in favor of the nonmovant."  *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000).  Finally, "[t]ransfer should be denied if it would merely shift inconvenience from one party to another."  *Paul, Hastings, v. City of Tulsa, OK*, 245 F. Supp. 2d 1248, 1260 (N.D. Ga. 2002).

In the Court's view, shifting inconvenience is exactly what eClinicalWorks seeks to accomplish here.  Relators run a small business together and have extensive work and family obligations in Macon, Georgia.  Doc. 62 at 24-25.  Due to the technical nature of the case, relators "also are integral parts of the legal team," at least one of whom will be required to "attend every court proceeding in which technical compliance with the federal regulations is at issue."  *Id.* at 25.  While it is admittedly inconvenient for eClinicalWorks' employees to travel to Macon, it is just as inconvenient for relators to travel to Boston.  Accordingly, this factor weighs against transfer.  *Paul, Hastings*, 245 F. Supp. 2d at 1260.

**(4)     The Locus of Operative Facts**

Defendant's argument that Massachusetts is the "locus of operative facts" rests on the fact that eClinicalWorks is headquartered in Westborough, Massachusetts.  Doc.

49-1 at 14, 25-27. But where there is a nationwide scheme, as relators allege here, there is "no one location that is the center of gravity of the litigation." *U.S. ex rel. Bassan v. Omnicare*, Inc., 2022 WL 72300, at *4 (S.D.N.Y. Jan. 7, 2022) (quotation omitted). Because the false claims in this case are geographically dispersed, encompassing "approximately 16,000 customers in 55 states and territories nationwide," (Doc. 49-2 ¶ 7), this factor weighs against transfer. *See id*.

**(5)    The Availability of Process to Compel Unwilling Witnesses**

"The fifth factor considers the availability of process to compel unwilling witnesses." *ApolloMD Inc.*, 2020 WL 10181736, at *7. eClinicalWorks concedes this factor is neutral because the FCA provides for nation-wide services of process. Doc. 49-1 at 29. The Court agrees. *See* 31 U.S.C. § 3732(a).

**(6)    The Relative Means of the Parties**

Relators argue that this factor weighs against transfer because they "will incur more expenses litigating this case in Massachusetts." Doc. 62 at 28. In contrast to eClinicalWorks, "a privately held company with over 1,300 employees in the United States and several thousand employees outside the United States," relators note they "are small business owners who live and work in Macon." *Id.* In short, "[t]hey sued here because it is convenient and cost efficient for them." Nonetheless, eClinicalWorks contends this factor is neutral because the FCA "provides that eClinicalWorks would have to reimburse relators' expenses should the relators prevail on their cause of action." Doc. 49-1 at 29. The Court is not convinced. Despite the FCA ultimately providing for reimbursement of relators' expenses should they prevail; it is undisputed relators would still incur significant expenses litigating this case in Massachusetts to get

to that point. Accordingly, this factor weighs against transfer. *See U.S. ex rel. Grand v. Northrop Corp.*, 811 F. Supp. 330, 332 (S.D. Ohio 1992) (rejecting transfer in FCA case because defendant could better bear cost of litigating away from its home district).

**(7)   A Forum's Familiarity with the Governing Law**

Defendant concedes that "relators' claims arise exclusively under federal law, which the District of Massachusetts and the Middle District of Georgia are deemed to be equally capable of interpreting." Docs. 49-1 at 29; 62 at 29. Thus, this factor is neutral. *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 46 (D.D.C. 2011) (Because "[a]ll federal courts are presumed equally familiar with the law governing … FCA claims, and this factor does not weigh either for or against transfer.").

**(8)   The Weight Accorded a Plaintiff's Choice of Forum**

There is a strong presumption in favor of the plaintiff's initial forum choice, which "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Here, eClinicalWorks argues there are two considerations at play that warrant transfer. eClinicalWorks first contends relators' choice of forum is entitled to little deference because "it is beyond dispute that essentially all of the alleged corporate conduct undergirding the relators' causes of action occurred in Massachusetts, and no materially relevant corporate conduct occurred in Georgia." Doc. 49-1 at 27. But the FCA's broad venue provision allows relators to sue in Massachusetts, or any other federal district given the scope of eClinicalWorks' nationwide operations and sales. *See* 31 U.S.C. § 3732(a). And even if the Court were to take eClinicalWorks' assertion that all the alleged corporate misconduct occurred in Massachusetts at face value, relators

discovered that misconduct in the Middle District of Georgia.  Doc. 62 at 11.  Simply put, the mere fact that the eClinicalWorks' corporate office is in Massachusetts does not in and of itself undermine Realtors' choice of forum because that would directly undercut the FCA's venue provision.

Second, eClinicalWorks argues that because the real plaintiff in a *qui tam* action is the United States, relators' choice of forum should be given little weight.  Doc. 49-1 at 27-28.  Indeed, it is true that "the deference traditionally given to a plaintiff's choice of forum is lessened in a *qui tam* action, even when the United States has not intervened." *U.S. ex rel. Harris v. Coleman Am. Moving Servs., Inc.*, 2015 WL 5522069, at *3 (M.D. Ala. Sept. 17, 2015); *U.S. ex rel. Roop v. Arkray USA, Inc.*, 2007 WL 844691, at *2 (N.D. Miss. Mar. 19, 2007) ("it seems to be the consensus view among district courts that a plaintiff's choice of forum is entitled to considerably less deference in *qui tam* cases.").  But minimal deference does not mean no deference, and where, as here, relators live and work in the Middle District of Georgia and the principal locus of operative facts is nationwide, this factor weighs against transfer.  *See ApolloMD Inc.*, 2020 WL 10181736, at *8.

**(9)     Trial Efficiency and the Interests of Justice**

"This factor considers 'the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum.'" *ApolloMD Inc.*, 2020 WL 10181736, at *8 (quoting *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, 2016 WL 1546427, at *7 (S.D. Fla. Apr. 15, 2016).  eClinicalWorks

contends the final "interests of justice" factor is at worst, neutral. Doc. 49-1 at 30. The Court disagrees. At the very least, "[b]y not transferring this matter, this litigation will be resolved more promptly." *U.S. ex rel. Grand*, 811 F. Supp. at 332. In this case, the timeliness consideration is of considerable importance because relators have made serious allegations that eClinicalWorks has compromised the Protected Health Information of citizens nationwide. Doc. 62 at 29-30. As a matter of public interest, the Court should endeavor to resolve it "without delay for the sake of all parties." *U.S. ex rel. Grand*, 811 F. Supp. at 332 (citing *AMF, Inc. v. Comput. Automation, Inc.*, 532 F. Supp. 1335, 1343 (S.D. Ohio 1982)).

## IV.  CONCLUSION

In sum, five of the nine factors weigh against transfer, with the remaining weighing neither in favor nor against transfer. Accordingly, the Court concludes that transferring this case to the District of Massachusetts is inappropriate under 28 U.S.C. § 1404(a), and eClinicalWorks' motion (Doc. 49) is **DENIED**.[4]

**SO ORDERED**, this 28th day of March, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] In accordance with the Court's order on the parties' consent motion, eClinicalWorks' deadline for submitting its motion to dismiss, if it chooses to file one, is April 25, 2022. Doc. 47 ¶ 4.