**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al. | ) | No. 5:18-CV-382 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | Honorable Marc T. Treadwell |
| | ) | |
| eCLINICALWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPPOSITION TO RELATORS' MOTION FOR SANCTIONS

## TABLE OF CONTENTS

Page

BACKGROUND ..........................................................................................................................3

    A.    eCW's Production Of Jira Tickets .......................................................................4

    B.    ███████████████████████ ...............................................................7

ARGUMENT .............................................................................................................................9

I.    ECW DID NOT ENGAGE IN ANY SANCTIONABLE CONDUCT. ............................9

    A.    eCW Did Not Engage In Any Sanctionable Conduct With Respect To The Production Of Additional Jira Tickets. .................................................................10

        1.    The Delayed Production Of APPSEC Jira Tickets Was Substantially Justified And Harmless. ....................................................10

        2.    Relators Cannot Show Bad Faith, Barring Sanctions Under The Court's Inherent Authority. ...................................................................18

    B.    eCW Did Not Engage In Any Sanctionable Conduct By Failing To Produce ███████████████████████ Before Relators Asked For It. .......19

    C.    Plaintiffs' Request For Sanctions Under Rule 16(f) Separately Fails Because eCW Did Not Violate Any Court Order. ..............................................22

II.    THE REQUESTED ISSUE SANCTION IS EXTREME, DISPROPORTIONATE AND IMPROPER. ...........................................................................................................24

CONCLUSION .........................................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abdulla v. Klosinski,*
898 F. Supp. 2d 1348 (S.D. Ga. 2012) ...........................................................................17

*Abruscato v. Geico General Insurance Co.,*
No. 3:13-cv-962-J-39JBT, 2014 U.S. Dist. LEXIS 192606
(M.D. Fla. Apr. 21, 2014).................................................................................................19

*American Property Construction Co. v. Sprenger Lang Foundation,*
274 F.R.D. 1 (D.D.C. 2011)..............................................................................................14

*Baring Industries, Inc. v. 3 BP Property Owner LLC,*
580 F. Supp. 3d 41 (S.D.N.Y. 2022) ...............................................................................30

*Bates v. Michelin North America, Inc.,*
No. 1:09-CV-3280-AT, 2012 WL 453233 (N.D. Ga. Jan. 13, 2012)...............................29

*Chilcutt v. United States,*
4 F.3d 1313 (5th Cir. 1993)..............................................................................................30

*Cleveland v. The Behemoth,*
No. 19-cv-0672-GPC-BGS, 2021 U.S. Dist. LEXIS 101685
(S.D. Cal. May 27, 2021)..................................................................................................11

*Cutlass Collieries, LLC v. Jones,*
No. 20-CV-80001-RLR, 2021 U.S. Dist. LEXIS 247809 (S.D. Fla. Dec. 7, 2021) ...........9

*Dallas Fallen Officer Foundation v. Frazier,*
No. 4:18-CV-00481, 2019 U.S. Dist. LEXIS 152872 (E.D. Tex. Sept. 9, 2019) ..............30

*In re Delta/AirTran Baggage Fee Antitrust Litigation,*
846 F. Supp. 2d 1335 (N.D. Ga. 2012)...................................................................... 17, 18

*In re Delta/AirTran Baggage Fee Antitrust Litigation,*
No. 1:09-md-2089-TCB, 2014 WL 12625961 (N.D. Ga. Nov. 21, 2014) ........................29

*Doe v. AE Outfitters Retail Co.,*
No. WDQ-14-0508, 2015 U.S. Dist. LEXIS 2222 (D. Md. Jan. 8, 2015)........................10

*FactorTrust, Inc. v. Evanston Insurance Co.,*
No. 1:16-CV-02711-LMM, 2018 WL 11350386 (N.D. Ga. Apr. 9, 2018)................... 9, 19

*Fields v. Ethicon, Inc.*,
    No. CV421-020, 2022 U.S. Dist. LEXIS 132655 (S.D. Ga. July 26, 2022) ...................23

*French Cuff, Ltd. v. Markel American Insurance Co.*,
    No. 07-60006, 2009 U.S. Dist. LEXIS 123348 (S.D. Fla. Dec. 22, 2009)................. 12, 21

*GRV Aviation, Inc. v. Hale Aircraft, Inc.*,
    No. 1:00-CV-1978-WBH, 2003 U.S. Dist. LEXIS 27573 (N.D. Ga. Jan. 31, 2003)........27

*Guimaraes v. NORS*,
    366 F. App'x 51 (11th Cir. 2010)................................................................................16

*Handy v. Cook*,
    No. 5:10-CV-271 (MTT), 2011 U.S. Dist. LEXIS 86055
    (M.D. Ga. Aug. 4, 2011)................................................................................... 9, 19

*Hayles v. Smith*,
    No. 6:10-cv-31, 2013 U.S. Dist. LEXIS 147140 (S.D. Ga. Oct. 9, 2013)........................ 19

*Jefferson v. Webber*,
    777 F. App'x 11 (2d Cir. 2019)................................................................................24

*Johnson v. Fulton County*,
    No. 1:18-CV-5292-TWT, 2021 WL 2581431 (N.D. Ga. Feb. 17, 2021).........................22

*Johnson v. Fulton County Board of Tax Assessors*,
    No. 1:18-cv-5292-TWT-JKL, 2021 WL 2582304 (N.D. Ga. Jan. 28, 2021) ...................22

*Kipperman v. Onex Corp.*,
    260 F.R.D. 682 (N.D. Ga. 2009)................................................................................25

*Kleiman v. Wright*,
    No. 18-cv-80176-BLOOM/Reinhart, 2020 U.S. Dist. LEXIS 110987
    (S.D. Fla. June 24, 2020) ............................................................................... 25, 26

*Kleiman v. Wright*,
    No. 22-11150, 2023 WL 7039512 (11th Cir. Oct. 26, 2023) ..................................... 21, 28

*Lapidus v. Life Insurance Co. of North America*,
    No. 4:18CV01291 JCH, 2019 U.S. Dist. LEXIS 102104 (E.D. Mo. June 19, 2019) .......11

*Malautea v. Suzuki Motor Co.*,
    987 F.2d 1536 (11th Cir. 1993)................................................................................18

*Marlin Oilfield Divers, Inc. v. Allied Shipyard, Inc.*,
No. 20-2431, 2022 U.S. Dist. LEXIS 83080 (E.D. La. May 9, 2022) ....................... 10, 12

*Monical v. Marion County*,
No. 6:18-cv-103-YY, 2023 U.S. Dist. LEXIS 114866 (D. Or. July 5, 2023) ................. 20

*Perrymond v. Lockheed Martin Corp.*,
No. 1:09-CV-01936-SCJ-AJB, 2011 U.S. Dist. LEXIS 165594
(N.D. Ga. June 8, 2011) ................................................................................. 25, 26, 27

*Platypus Wear, Inc. v. Clarke Modet & Co.*,
No. 06-20976-CIV, 2008 WL 11401783 (S.D. Fla. Mar. 31, 2008) ............................... 16

*Powell v. Siegal*,
447 F. App'x 92 (11th Cir. 2011) ............................................................................. 10, 24

*Preferred Care Partners Holding Corp. v. Humana, Inc.*,
No. 08-20424-CIV, 2009 WL 982460 (S.D. Fla. Apr. 9, 2009) ...................................... 28

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
851 F.3d 1218 (11th Cir. 2017) ............................................................................... 19, 25

*Richard v. Young*,
No. 19-2144 (RC), 2023 U.S. Dist. LEXIS 208722
(D.D.C. Nov. 21, 2023) .............................................................................. 25, 26, 27, 28

*Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L.*,
No. 20-cv-5704 (ERK)(SJB), 2024 U.S. Dist. LEXIS 153876
(E.D.N.Y. Aug. 27, 2024) .................................................................................................. 15

*Rodriguez v. Bryson*,
No. 5:17-cv-10 (MTT), 2020 U.S. Dist. LEXIS 84164 (M.D. Ga. May 13, 2020) .......... 11

*SCADIF, S.A. v. First Union National Bank*,
208 F. Supp. 2d 1352 (S.D. Fla. 2002) .......................................................................... 18

*Serra Chevrolet, Inc. v. GMC*,
446 F.3d 1137 (11th Cir. 2006) ....................................................................................... 28

*SiteLock LLC v. GoDaddy.com LLC*,
562 F. Supp. 3d 283 (D. Ariz. 2022) .............................................................................. 29

*Sovulj v. United States*,
No. 98 CV 5550FBRML, 2005 WL 2290495 (E.D.N.Y. Sept. 20, 2005) ....................... 28

*In re Telescopes Antitrust Litigation*,
No. 20-cv-03642-EJD (VKD), 2022 U.S. Dist. LEXIS 150470
(N.D. Cal. Aug. 22, 2022)..................................................................................................16

*Thomas v. Lawler*,
No. 1:CV-10-2437, 2013 U.S. Dist. LEXIS 32913 (M.D. Pa. Mar. 11, 2013) ................20

*United States v. Samaniego*,
345 F.3d 1280 (11th Cir. 2003)........................................................................................24

*Voyager Indemnity Insurance Co. v. Zalman North, Inc.*,
668 F. Supp. 3d 990 (C.D. Cal. 2023)..............................................................................29

*Wilborn v. Wal-Mart Stores East, L.P.*,
No. 1:19-cv-1202-MLB, 2021 WL 8572678 (N.D. Ga. Aug. 16, 2021)...........................10

*Wilkerson v. Woodford*,
No. CIV S-05-2482 LKK DAD P, 2010 U.S. Dist. LEXIS 91829
(E.D. Cal. Aug. 6, 2010)..................................................................................................11

*Yeazel v. Baxter Healthcare Crop*,
MDL No. 1953, 2011 U.S. Dist. LEXIS 23241 (N.D. Ohio Feb. 22, 2011) ....................22

*Yellow Pages Photos, Inc. v. YP, LLC*,
No. 8:17-cv-764-T-36JSS, 2019 U.S. Dist. LEXIS 137222
(M.D. Fla. Aug. 14, 2019) ...............................................................................................11

## RULES

Fed. R. Civ. P. 16(f)(1)(C) ...........................................................................................................23

Fed. R. Civ. P. 26(b)(1)................................................................................................................20

Fed. R. Civ. P. 37(c)(1) ................................................................................................................10

## OTHER AUTHORITIES

The Sedona Conference, The Sedona Conference Cooperation Proclamation, 10 Sedona
Conf. J. 331 (2009)............................................................................................................4

The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for
Addressing Electronic Document Production (2018), Principle 6.................................4, 5

## INTRODUCTION

Defendant eClinicalWorks, LLC ("eCW") acknowledges that it made a mistake in responding to certain discovery in this case. Specifically, an eCW employee forgot about a retired data source, resulting in the belated production of certain materials. But that error was inadvertent (there was absolutely no bad faith), and it was not prejudicial; eCW rectified the mistake and produced all the material at issue within the fact discovery period. Under these circumstances, sanctions are improper and unauthorized by law.

Relators nonetheless seek to capitalize on eCW's error by seeking a draconian sanction that would put a thumb on the scale in their favor by telling jurors that eCW's Electronic Health Records ("EHR") software did not comply with federal certification standards. Relators also seek to exploit other disputes for strategic benefit, including a dispute over the production of an irrelevant (and ultimately produced) ███████████████████████████████ ███████████████████ Relators' motion should be denied for several reasons.

*First*, eCW did not engage in any sanctionable conduct. Throughout this litigation, eCW has gone above and beyond its obligations in responding to Relators' sweeping requests. eCW's diligence is evidenced by the fact that it retained a third-party discovery consultant with significant technological expertise, initiated numerous meet-and-confers to communicate at each step of the way what it was doing to respond to Relators' discovery requests and ultimately produced millions of pages of documents as well as multiple sophisticated structured datasets.

The bulk of Relators' motion focuses on eCW's production of tickets that track changes to the company's software in a document management system called Jira, which contains more than half-a-million tickets organized under approximately 100 different projects. Due to an inadvertent and honest mistake, eCW's original production from this system did not include all

tickets related to a single (defunct) project called APPSEC. The fact that an inadvertent mistake like this occurred is an inevitability in a litigation of this magnitude. But, as explained further below, eCW immediately disclosed the error to Relators upon discovering the problem and that is not sanctionable behavior.[1]

Relators' other ground for sanctions is frivolous. Relators contend that eCW was obligated to produce ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ (again well before the close of fact discovery), further underscoring its good faith and showing that it has exceeded its discovery obligations.[2]

***Second***, Relators' requested sanction—a determination that eCW's software does not meet federal certification standards—is extreme and disproportionate, bears no logical relationship to the alleged discovery violations and would violate eCW's due-process rights. The crux of Relators' case is that claims submitted by healthcare providers who used eCW's software

---

[1] Relators acknowledge that they were afforded ample opportunity to question an eCW corporative representative, James Mittenthal, about the company's "document productions," including with regard to the APPSEC project. (Mot. at 14.) While Relators indicate that they would have preferred to question Ms. Downs (the "Triality employee working with eCW since discovery started") (*id.*), Ms. Downs was "ill and unable to sit for a deposition" (Decl. of Pamela Downs ("Downs Decl.") ¶ 28, Sept. 16, 2024 (Ex. 1), which Relators did not dispute.

[2] Relators also make passing claims regarding the supposed inadequacy of eCW's discovery pertaining to a third-party software it licenses (not owns) called Contrast. (*See* Mot. at 4.) As detailed in the Declaration of Richard Bernardo, however, eCW promptly produced all reasonably available Contrast records that pertained to eCW's EHR software on December 1, 2023, and Relators did not raise any issues until more than five months later. (*See* Decl. of Richard T. Bernardo ("Bernardo Decl.") ¶¶ 43-44, Sept. 17, 2024 (Ex. 2); Downs Decl. ¶ 27.) In the spirit of cooperation, "eCW, Skadden, and Triality worked with Contrast . . . to provide remote access to a full copy of eCW's Contrast Security data." (Downs Decl. ¶ 27.)

were fraudulent because the software allegedly did not meet federal certification requirements. Granting the requested sanction would thus effectively direct a verdict on a key element of their claims. Such a potentially dispositive sanction would be tantamount to a default judgment, which is only proper where there is a showing of bad faith and actual prejudice, and where lesser sanctions (e.g., monetary costs) would not suffice to address the prejudice to a party. Here, eCW accepted responsibility for and remedied its inadvertently late production of additional (largely irrelevant and cumulative) Jira tickets. Moreover, Relators had months to review the information from the additional tickets and were able to address them in supplemental expert reports, plainly belying any claim of prejudice. Thus, to the extent that the Court believes that eCW engaged in any sanctionable conduct, at most, Relators would be entitled to the limited expenses incurred in reviewing those materials that would not have been incurred if the APPSEC Jira tickets had been produced earlier. And eCW's initial non-production of ███████████████████ — which was not responsive to any discovery request—was entirely proper and cannot possibly justify any sanction.

For all of these reasons, discussed further below, the Court should deny Relators' motion.

## BACKGROUND

Relators' discovery requests throughout this litigation have required the harvesting of information from (among other things) complex document management systems that have multiple uses at eCW and include millions of pieces of information in hundreds of interrelated fields. (*See* Downs Decl. ¶ 6.) This process has been particularly challenging because Relators have repeatedly demanded the production of "all" data, as opposed to information relevant to their specific allegations. (*See id.*)[3] Moreover, eCW lacks extensive experience in discovery and

---

[3]    Such unbounded discovery contravenes the Sedona Cooperation Proclamation and eDiscovery best

*(cont'd)*

3

does not maintain records in a manner that can easily be harvested for purposes of litigation. (*See* Downs Decl. ¶ 7.) As a result, document collections and productions that might be simpler and quicker for other companies took extra time and necessitated the retention of an experienced third-party consultant, Pam Downs of Triality, who specializes in such work and has spent nearly 30 years advising companies on proper e-discovery practices. (Downs Decl. ¶¶ 6, 37.) Relators' motion largely pertains to two discrete aspects of discovery: (1) certain Jira tickets that were inadvertently not included in eCW's initial December 2023 production; and (2) ███████████[4]

███████████████████████████████████████

## A.    eCW's Production Of Jira Tickets

Jira is a voluminous issue-tracking and project management data system that contains approximately 700,000 tickets related to technical issues organized under approximately 100 different projects. (*See* Decl. of Bharat Satyanarayan ("Satyanarayan Decl.") ¶¶ 5, 13, Sept. 17, 2024 (Ex. 3).) "[W]hen an issue is identified that requires a change to source code, a company employee creates a ticket, which subsequently tracks information about the issue and the company's handling of it." (*Id.* ¶ 4.) Since eCW began using Jira in 2015, the company has maintained a "project" (i.e., a collection of Jira tickets) for each of its products. (*Id.* ¶ 6.) For eCW's EHR software—the subject of Relators' lawsuit—this project was called "EMR & PM (PE)."[5] (*Id.*) In addition, until 2020, eCW also maintained a project called "Security Enhancements" (referred to as "APPSEC"), which included security-related tickets for a number

---

practices, which caution against discovery of excessive amounts of irrelevant information. *See* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (2018), Principle 6; The Sedona Conference, The Sedona Conference Cooperation Proclamation, 10 Sedona Conf. J. 331 (2009).

[4]    While Relators make reference to other issues throughout their brief, as set forth more fully in Mr. Bernardo's and Ms. Downs' declarations, such allegations are without basis and, in any event, do not support their Motion.

[5]    (*See* Decl. of Akshaykumar D. Patel ("Patel Decl.") ¶ 11, Sept. 17, 2024 (Ex. 4).)

4

of the company's products, including its EHR software. (*Id.*) In approximately 2020, eCW retired the APPSEC project and continued creating and maintaining tickets related to security enhancements in existing product-specific projects, including the EMR & PM (PE) project. (*Id.* ¶¶ 7, 30 & n.13.) As part of this process, eCW closed out some tickets within the APPSEC project and migrated some active tickets to appropriate product-based projects, including the EMR & PM (PE) project (*id.*), all of which were produced to Relators by December 7, 2023.

Since the beginning of this litigation, Relators have insisted on receiving a complete copy of the entirety of eCW's Jira server, even though their counsel has expressly acknowledged that such discovery would be "overinclusive." (Downs Decl. ¶ 17.) Relators also demanded that this voluminous data be produced in native format (contrary to cybersecurity, e-discovery and privacy best practices).[6] The collection of Jira tickets was challenging both because of the sheer number of projects covered by the database and the fact that it included confidential Personal Identifiable Information ("PII") and Protected Health Information ("PHI"). (*See* Bernardo Decl. ¶¶ 14-15, 27, 51; Downs Decl. ¶¶ 16, 19.)[7] Nonetheless, on December 7, 2023, after multiple cooperative meet-and-confers, eCW produced (in the format demanded by Relators) extracts of *210,232* Jira tickets from the EMR & PM (PE) project that hit on the parties' agreed-upon search terms. (*See* Bernardo Decl. ¶ 28; Downs Decl. ¶ 20.) Shortly after this production, Relators served their two expert reports, neither of which mentions Jira or any of the tickets produced by eCW. (*See* Rep. of Christopher S. Wheeler & Eric J. Rodighiero ("Wheeler & Rodighiero Rep."), Dec. 15, 2023 (Ex. 5); Rep. of Eric Cole ("Cole Rep.") Jan. 5, 2024 (Ex. 6).)

At the time of the December 2023 production, Bharat Satyanarayan—the person at eCW

---

[6]    *See* Sedona Principle 6, *supra* note 3.

[7]    eCW "experienced two delays" in the collection process because Jira can only export 1000 rows at a time. (*See* Downs Decl. ¶ 15.)

who identified the EMR & PM (PE) project as the relevant one for purposes of this litigation—believed that EMR & PM (PE) included a complete set of Jira tickets related to the company's EHR software. (*See* Satyanarayan Decl. ¶¶ 11, 13.) eCW instructed an IT employee, Akshaykumar D. Patel, to compile all such tickets. (*See* Patel Decl. ¶ 3.) The only way to provide a version of Jira tickets in their native XML format is to take a snapshot of the entire Jira database and then unselect (i.e., "delete" from the snapshot) the portions that are not to be included in the export for production. (*See id.* ¶ 4.)[8] In performing this job, Mr. Patel, as an IT employee, had no knowledge of this litigation and did not know the context of the data he was being asked to compile, and he performed his work while completing other tasks and taking periodic breaks over the course of three days. (*See id.* ¶¶ 7-8, 11.)

In February 2024, an inquiry by one of eCW's experts caused Mr. Satyanarayan to realize that the APPSEC project would have included Jira tickets responsive to Relators' discovery, and he immediately notified eCW's counsel, Geoffrey Wyatt, about the existence of this project and its contents. (Satyanarayan Decl. ¶ 11.) It was not Mr. Satyanarayan's "intention to withhold any relevant information from eCW's outside counsel and e-discovery vendor." (*Id.*) Rather, "because of the way Jira had been organized for at least the two years prior to relators' request . . . [he] simply did not consider the retired subject matter-based projects when evaluating relators' Jira requests." (*Id.*)

Upon learning of the APPSEC issue, defense counsel promptly notified Relators' counsel. (Bernardo Decl. ¶ 30.) Approximately one week later, on February 28, 2024, eCW

---

[8]     Notwithstanding Relators' repeated use and emphasis of the word "delete" (*see, e.g.*, Mot. at 3, 13), nothing was "deleted" in the sense that it was spoliated or lost. Rather, as discussed in text, the information was merely removed from the snapshot collection, much in the same way that one would uncheck boxes in Excel when trying to filter data down. The underlying data were retained and ultimately produced to Relators when eCW realized that there was a separate Jira project specific to security. (*See, e.g.*, Downs Decl. ¶ 20; Patel Decl. ¶ 4.)

produced extracts of all 11,009 APPSEC Jira tickets (including corresponding comments), and on March 14, 2024, eCW produced all 25,543 attachment files to those tickets. (*Id.* ¶¶ 33-34.) Because some of the tickets had been migrated to the EMR & PM (PE) project, those tickets were duplicative of ones previously produced to Relators in 2023. (*See* Satyanarayan Decl. ¶ 13.) In addition, some of the information set forth in the tickets had previously been provided to Relators in the source code repositories made available months earlier. (*Id.*) Relators served their supplemental expert reports more than three months later; one discusses four APPSEC Jira tickets, and another addresses two such tickets. (*See, e.g.*, Suppl. Rep. of Christopher S. Wheeler ("Wheeler Suppl. Rep."), May 31, 2014 (Mot. Ex. G); Suppl. Rep. of Eric Cole ("Cole Suppl. Rep."), May 31, 2024 (Ex. 7)).)[9]

**B.** ██████████████████████████████

In resolving the government's investigation of eCW in another False Claims Act case, *U.S. ex rel. Delaney v. eClinicalWorks, LLC*, eCW entered into a CIA with the Department of Health and Human Services Office of Inspector General ("HHS-OIG"). (Mot. at 17.) Pursuant to that agreement, eCW retained the firm Quandary Peak to serve as its SQOO, which began overseeing the company's software standards and practices. (*Id.*) ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[9] As detailed in Mr. Bernardo's declaration, eCW also provided Relators with a list of approximately 90 other JIRA projects and offered to produce any Relators requested, even though eCW believed most were unrelated to the EHR-based security allegations in this case. (*See* Bernardo Decl. ¶ 35.) On April 2, 2024, eCW produced extracts of JIRA tickets for ***all*** projects. (*Id.*)



---

[10] For example at his deposition, Relator Alex Permenter repeatedly referred to eCW personnel as "dollar-an-hour employee[s] in India." (Dep. of Alex Permenter 39:24-40:1, June 21, 2024 (Ex. 10) (A. "Are you asking me if I decided to not discuss a secret national security issue with a dollar-an-hour employee in India?"); *see also id.* 43:16-18 (Q. "You referred a minute ago to calling -- I think you said dollar-an-hour employees in India?" A. "Yeah.").)

████████████

## ARGUMENT

"The party seeking sanctions . . . bears the burden of establishing that an opposing party failed to comply with Rule 26 or a discovery order." *Cutlass Collieries, LLC v. Jones*, No. 20-CV-80001-RLR, 2021 U.S. Dist. LEXIS 247809, at *2 (S.D. Fla. Dec. 7, 2021) (citation omitted). "If the party can establish that a discovery violation occurred, that party then has the burden of establishing the appropriateness of a requested sanction at least by a preponderance of the evidence." *Id.* (citation omitted). As explained below, Relators have not carried their burden of establishing either requirement.

## I.    ECW DID NOT ENGAGE IN ANY SANCTIONABLE CONDUCT.

Relators invoke Rule 37(c) and Rule 16(f) of the Federal Rules of Civil Procedure, and the Court's inherent authority, as the legal bases for requesting sanctions. (*See* Mot. at 21-28.) As this Court has recognized, "[t]he Federal Rules use permissive language, and thus sanctions are not automatic." *Handy v. Cook*, No. 5:10-CV-271 (MTT), 2011 U.S. Dist. LEXIS 86055, at *9 (M.D. Ga. Aug. 4, 2011) (Treadwell, J.); *see also FactorTrust, Inc. v. Evanston Ins. Co.*, No. 1:16-CV-02711-LMM, 2018 WL 11350386, at *3 (N.D. Ga. Apr. 9, 2018) (district court may impose "appropriate sanctions" on parties that fail to provide required disclosures) (citation omitted); *Powell v. Siegal*, 447 F. App'x 92, 94 (11th Cir. 2011) (per curiam) ("Rule 16(f)

████████████████████████████████████████████

authorizes a court to impose sanctions . . . if a party fails to obey a pretrial order.").  As

explained below, eCW did not engage in any sanctionable conduct.

A.    **eCW Did Not Engage In Any Sanctionable Conduct With Respect To The Production Of Additional Jira Tickets.**

1.    **The Delayed Production Of APPSEC Jira Tickets Was Substantially Justified And Harmless.**

The first proffered basis for Relators' motion—the "belated production" of APPSEC Jira

tickets (Mot. at 22)—does not warrant any sanctions under Rule 37(c) or Rule 16(f).  Under Rule

37, failure to produce responsive information is not sanctionable where "the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "[T]he analysis is the same

under both Rule 16(f) and Rule 37(c)(1)."  *Doe v. AE Outfitters Retail Co.*, No. WDQ-14-0508,

2015 U.S. Dist. LEXIS 2222, at *8 n.4 (D. Md. Jan. 8, 2015).  "In determining whether a failure

to disclose was justified or harmless, courts consider '1) the importance of the evidence, 2) the

reason for the party's failure to disclose the evidence earlier, and 3) the prejudice to the opposing

party . . . .'"  *Wilborn v. Wal-Mart Stores E., L.P.*, No. 1:19-cv-1202-MLB, 2021 WL 8572678,

at *1 (N.D. Ga. Aug. 16, 2021) (citation omitted).  "The second and third factors, together, can

outweigh the first."  *Id.*

The untimely production of information generally does *not* support the imposition of

sanctions where the delay resulted from "an honest mistake, and [the party] produced the

documents as soon as it discovered them."  *Marlin Oilfield Divers, Inc. v. Allied Shipyard, Inc.*,

No. 20-2431, 2022 U.S. Dist. LEXIS 83080, at *4-5 (E.D. La. May 9, 2022) (denying motion for

sanctions because "Allied's failure to timely produce the Coast Guard documents was

substantially justified and harmless"); *Cleveland v. The Behemoth*, No. 19-cv-0672-GPC-BGS,

2021 U.S. Dist. LEXIS 101685, at *20 (S.D. Cal. May 27, 2021) (denying motion for sanctions

where "[t]he [d]efendant proffers several good faith reasons for these otherwise late

10

productions"); *Lapidus v. Life Ins. Co. of N. Am.*, No. 4:18CV01291 JCH, 2019 U.S. Dist.

LEXIS 102104, at *6, *11 (E.D. Mo. June 19, 2019) (denying motion for sanctions where delay

"was due to the oversight of a claim manager" who did not mark document "as finalized" and

any prejudice "was not so serious as to make the deposition impossible."). As one court put it,

an "inadvertent error" in producing discovery that is followed by an immediate correction simply

does not "create[] an impediment to [the] plaintiff in prosecuting th[e] case, and therefore the

imposition of sanctions would be unjust." *Wilkerson v. Woodford*, No. CIV S-05-2482 LKK

DAD P, 2010 U.S. Dist. LEXIS 91829, at *6 (E.D. Cal. Aug. 6, 2010) (denying motion for

sanctions under Rule 37). Under this framework, the facts foreclose any finding of sanctionable

conduct with respect to the Jira tickets here.

*Reason for the delay.* First, no sanction is warranted because the delay at issue resulted

from a combination of the complexity of collecting Jira tickets and an honest oversight. This

Court has previously recognized that the quantity and complexity of discovery are an important

factor in assessing whether a party's untimely responses constitute sanctionable conduct. *See*

*Rodriguez v. Bryson*, No. 5:17-cv-10 (MTT), 2020 U.S. Dist. LEXIS 84164, at *9-10 (M.D. Ga.

May 13, 2020) (Treadwell, J.) (affirming magistrate judge's ruling denying sanctions; "the large

number of [p]laintiff's discovery requests in this action constitutes 'good cause' . . . for excusing

the [d]efendants' untimeliness") (citation omitted); *see also Yellow Pages Photos, Inc. v. YP,*

*LLC*, No. 8:17-cv-764-T-36JSS, 2019 U.S. Dist. LEXIS 137222, at *11 (M.D. Fla. Aug. 14,

2019) (denying motion for sanctions where "[d]efendants have shown that they have made a

good faith effort to comply with all discovery obligations and court orders" and specifically

"made '40 separate productions of more than 30,000 documents, totaling more than 2 million

pages[]'").

11

Here, as explained in the Bernardo and Downs declarations, the initial collection of Jira tickets was challenging both because of the sheer number of projects covered by the database and because it included confidential PII and PHI. (*See* Bernardo Decl. ¶ 15; Downs Decl. ¶¶ 16, 19.) Moreover, exporting a single project alone is not functionality natively available in Jira. (*Id.* ¶¶ 19-20.) Nonetheless, after a cooperative, iterative process that included multiple meet-and-confers, in August 2023, eCW produced relevant Jira tickets pursuant to an agreed-upon search methodology. (Downs Decl. ¶ 25; Bernardo Decl. ¶ 16.) Despite its objection, after continued meet-and-confers, eCW ultimately agreed to produce extracts of *all* Jira tickets related to the EHR software (regardless of relevance, including corresponding comments and in their native XML format) and initially produced *more than 200,000* such tickets in December 2023. (*See* Bernardo Decl. ¶ 28; Downs Decl. ¶¶ 11-13, 20.)

At the time of the production in December 2023, eCW reasonably understood this to be a complete set of all Jira tickets for the EHR software that is the subject of this lawsuit. (*See* Satyanarayan Decl. ¶¶ 11-13.) In February 2024, however, eCW discovered that the initial production did not include certain Jira tickets related to an old (now-retired) project called APPSEC that pertained to application security for all of eCW's products, including its EHR software. (*See id.* ¶ 12; Bernardo Decl. ¶ 31.) eCW regrets and takes full responsibility for this oversight, but it was the result of an "honest mistake." *Marlin*, 2022 U.S. Dist. LEXIS 83080, at *4. As Mr. Satyanarayan explains, because Jira tickets had been organized according to product type for several years, he "simply did not consider the retired subject matter-based projects when evaluating relators' Jira requests. Rather, [he] was focused on EMR & PM (PE), *the project dedicated to the EHR software at issue in this case*." (Satyanarayan Decl. ¶ 11 (emphasis added).) Mr. Satyanarayan's lack of recollection was understandable and absolutely not an

12

intentional effort to withhold discovery. (*See id.*)

As noted above, Mr. Satyanarayan "immediately contacted" eCW's counsel regarding the AppSec issue (*id.*), and eCW's counsel, in turn, promptly notified Relators' counsel and produced the additional Jira tickets. (Bernardo Decl. ¶ 32.) This swift communication and remediation underscore the company's good faith. *See, e.g., French Cuff, Ltd. v. Markel Am. Ins. Co.*, No. 07-60006, 2009 U.S. Dist. LEXIS 123348, at *3 (S.D. Fla. Dec. 22, 2009) ("Plaintiff's behavior does not amount to sanctionable conduct" under Rule 37 because "[t]hough the production was late, [p]laintiff produced the video and drawings upon their discovery on Mr. Ganem's computer and in accordance with French Cuff's duty to supplement."); *Marlin*, 2022 U.S. Dist. LEXIS 83080, at *4-5 ("[F]ailure to timely produce the Coast Guard documents was substantially justified and harmless" where party "has provided evidence that the delay in production was the result of an honest mistake, and it produced the documents as soon as it discovered them.").

Relators insist that "[t]his was not an honest mistake," asserting that eCW "knew about the AppSec project . . . and made an *intentional* choice to withhold production of the materials." (Mot. at 22-23 (emphasis added).)[12] But this speculative accusation is foreclosed by Mr. Satyanarayan's declaration explaining why he had inadvertently forgotten about the APPSEC project. *See Am. Prop. Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 8 (D.D.C. 2011) ("While APCC speculates that the timing of the production was 'an intentional effort to prohibit

---

[12]    Relators claim they do not "file this motion lightly" (Mot. at 1), but that claim is difficult to accept when they make a serious accusation like this one with no real evidence to back it up. On this point, for example, they rely on their supposition that, since "[e]very eCW *programmer* who had access to [the] JIRA server could go into the system, click on the projects tab at the top of the page, and see the existence of the AppSec project" (Mot. at 23 (emphasis added)), the existence of the APPSEC project could not go unnoticed by Mr. Satyanarayan. But as already discussed, Mr. Satyanarayan, who was responsible for overseeing the project, had a reasonable, good-faith basis for believing that the EMR/PR project constituted the universe of Jira tickets related to eCW's EHR software.

13

any sort of responsive discovery,' the [c]ourt accepts the representation of [d]efendants/[c]ounter-[p]laintiffs' counsel . . . that the delay in production was due to an inadvertent oversight . . . .") (citation omitted).  Moreover, Mr. Satyanaryan's "immediate[]" outreach to eCW's counsel and the swift subsequent production of the APPSEC tickets by the company further belie Relators' claim that anyone engaged in intentional concealment.  (*See* Satyanarayan Decl. ¶ 11.)

The only circumstantial "evidence" cited by Relators—an audit log of the eCW IT technician who compiled the Jira tickets from the EMR & PM project—does not suggest otherwise.  Relators contend that the log shows that "eCW *manually* deleted the AppSec project" from the Jira server days before it was produced to Relators in December 2023 and argue that a "gap[] of around an hour before [it] was deleted," somehow "suggest[s] that eCW put significant thought into deleting" it.  (Mot. at 13, 23.)  This theory fails for multiple reasons.  First, the only way to provide a version of Jira tickets in the native XML format demanded by Relators is to take a "snapshot" of the live Jira database and then unselect from that copy all projects that are not part of the project of interest (in this case, the EMR & PM project).  (Patel Decl. ¶ 4; *see also* Downs Decl. ¶ 19.)  Second, as is typical of IT personnel, who are generally far removed from the substance of the information with which they are working, Mr. Patel, the IT technician tasked with performing this exercise, was not informed about the litigation or the purpose for which the data would be used.  (Patel Dec. ¶¶ 3, 12.)  And third, the so-called "gaps" in time identified by Relators are based on a selectively chosen screenshot of just two periods of time during which Mr. Patel was performing this task and deleted 33 non-EMR & PM projects.  (*Id.* ¶ 10.)  In truth, this exercise occurred over the course of three days and entailed deleting 84 such projects, and the "gaps" in time reflect the unremarkable fact that Mr. Patel was

14

"completing other work, taking breaks, or sleeping." (*Id.* ¶¶ 10-11.)[13] Relators' insinuation of a conspiracy to withhold the APPSEC Jira tickets is not based in reality or the record.

*Prejudice and importance of the information.* Sanctions are also improper because Relators sustained no material prejudice, and the APPSEC Jira tickets played virtually no role in supporting their allegations in this case. Relators assert that the "JIRA tickets were at the heart of this case" and that they were prejudiced because the late production of those pertaining to the APPSEC project "came after expert reports and depositions." (Mot. at 23, 24.) This claim is not credible. As Mr. Satyanarayan explains, some of the information provided by Jira tickets is also available in the source code repositories, which Relators do not dispute were timely produced in this case. (*See* Satyanarayan Decl. ¶ 12.) *See Rienzi & Sons, Inc. v. I Buonatavola Sini S.R.L.*, No. 20-cv-5704 (ERK)(SJB), 2024 U.S. Dist. LEXIS 153876, at \*18 (E.D.N.Y. Aug. 27, 2024) (untimely expert disclosure "was harmless" where the "main point" set forth in the untimely declaration was "duplicative of other evidence in the record"). Moreover, in August 2023, eCW produced more than *100,000 rows of information from Jira tickets* (Bernardo Decl. ¶ 25), and on December 7, 2023, eCW produced more than *200,000* Jira tickets, *30,000* of which related to security, many of which were also included in the subsequent APPSEC production (*see* Bernardo Decl. ¶ 28; Satyanarayan Decl. ¶ 12). Yet, Relators' original expert reports—both of which were served *after* that initial productions—do not even reference Jira tickets, much less explain how the subject bears on Relators' claims in this litigation. (*See* Wheeler & Rodighiero Rep.; Cole Rep.) Nor did Relators request any additional time to review the tickets before serving these original reports. Rather, it was only after eCW disclosed the inadvertent error that Relators

---

[13]    As set forth in Mr. Patel's declaration, "[t]he longer time periods before deletion of the 'Security Enhancements (Retired/Inactive)' Jira project and the 'Regulatory Requirement' Jira project were not the only long time periods between deletion of projects." (Patel Decl. ¶ 11.)

15

suddenly characterized Jira tickets as being the "heart" of their case. These circumstances alone put the lie to Relators' claim of prejudice. *See Guimaraes v. NORS*, 366 F. App'x 51, 54 (11th Cir. 2010) (per curiam) (affirming district court's denial of motion for sanctions in part because untimely produced documents were "of minimal relevance" and "would not have changed the outcome of the case" had they been produced earlier) (citation omitted).

Relators' claim of prejudice is all the more meritless because they had ***nearly three months*** to review the APPSEC Jira tickets before serving any supplemental reports addressing them. And far from forming the "heart" of their expert opinions, just two APPSEC tickets are discussed in the supplemental report of Dr. Cole, while just four are addressed in Mr. Wheeler's. (*Compare* Wheeler Suppl. Rep., *with* Cole Suppl. Rep.) In other words, not only did the reports form a negligible part of the experts' opinions, but the experts did have an opportunity to respond to the data, further confirming the lack of any prejudice. *See In re Telescopes Antitrust Litig.*, No. 20-cv-03642-EJD (VKD), 2022 U.S. Dist. LEXIS 150470, at *10-11 (N.D. Cal. Aug. 22, 2022) (finding no prejudice from defendant's "delayed production that might be remedied by measures other than or different from those [d]efendants have already undertaken" by belatedly producing documents); *Platypus Wear, Inc. v. Clarke Modet & Co.*, No. 06-20976-CIV, 2008 WL 11401783, at *3 (S.D. Fla. Mar. 31, 2008) ("harsh remedies sought by [p]laintiff are not warranted" even though defendant "resisted discovery," where prejudice "has been ameliorated by the extensions of time and the continuance of the trial date"). Indeed, Relators do not identify any specific ticket or piece of information that they were not able to include in their supplemental reports or otherwise rely on in pursuing their claims. *See Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) (no prejudice from untimely expert disclosure where defendants "proceeded to depose [expert] as scheduled" and "have not cited any specific

16

examples of information they wished to obtain or extract but were unable to, nor any questions they were unable to ask" of the expert), *aff'd*, 523 F. App'x 580 (11th Cir. 2013) (per curiam). These circumstances reflect both the minimal importance of the late-produced information and the lack of any real prejudice to Relators.[14]

Relators do not meaningfully address the factors just discussed, much less cite any authority supporting the imposition of sanctions under analogous circumstances. Instead, they cite a couple of cases supposedly rejecting the "right to produce information in a belated fashion." (Mot. at 22 (quoting *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1357 (N.D. Ga. 2012)).) Plaintiffs' cases only serve to highlight the lack of sanctionable conduct here. *In re Delta* involved the late production of "60,000 pages of documents" that "violated th[e] [c]ourt's deadlines." *Id.* at 1344, 1358. Moreover, the missing documents "contradict[ed]" the deposition testimony of defense witnesses, after the company had "misrepresented" "to the [c]ourt" "approximately 20 times that it had produced every document responsive to [p]laintiffs' discovery requests." *Id.* at 1344, 1349 (footnote omitted). While the court imposed monetary sanctions under Rule 37 (it refused to issue any other relief), it reasoned that the defendant "was *not* diligent in ensuring that the relevant hard drives were searched" because it failed to identify any "steps it took to ensure that all of the hard drives were in fact uploaded for processing" when these misstatements were made. *Id.* at 1357 (emphasis added).

Here, by contrast, the additional Jira tickets were produced months *before* any discovery

---

[14]    Relators repeatedly insinuate that eCW's lawyers offered to pay "fees and expenses related to th[e] [Jira] issue," effectively conceding that eCW's conduct is sanctionable. (Mot. at 24; *see also id.* at 6.) This is a gross mischaracterization of the record. As explained in Mr. Bernardo's declaration, when Relators' counsel raised the possibility of filing a sanctions motion, Mr. Bernardo made clear that the discovery mistake was *not* sanctionable but that to the extent the late production caused Relators to incur additional costs in reviewing that production, Mr. Bernardo would raise the possibility of covering those costs with the company. (*See* Bernardo Decl. ¶ 38.) Relators' twisting of eCW's good-faith offer into an admission of sanctionable conduct is contrary to the spirit of the meet-and-confer process, violates Fed. R. Evid. 408, and highlights the overreaching nature of their motion.

17

deadline, and eCW has provided multiple declarations explaining the diligent steps it and its vendor took to respond to Relators' discovery requests. Moreover, Relators do not contend that these materials contradict anything in eCW's deposition testimony; nor have they pointed to any statements by eCW misrepresenting anything to the Court regarding its Jira production.

In *SCADIF, S.A. v. First Union National Bank*, 208 F. Supp. 2d 1352 (S.D. Fla. 2002) (cited in Mot. at 22), the plaintiff similarly alleged that the defendant had "concealed documents" "until the eve of trial." *Id.* at 1378. Nonetheless, the court took the defendant at its word that "its failure to timely disclose the[] documents was a good faith error"; it found that the documents "were not particularly relevant" (i.e., "no 'smoking guns'"); and it ultimately ***denied*** the plaintiff's motion for sanctions. *Id.* at 1379. This case does not support Relators' motion either.[15]

In short, Relators' cases illustrate why eCW's conduct with regard to the APPSEC Jira tickets was substantially justified and harmless—and should not give rise to sanctions.

## 2.    Relators Cannot Show Bad Faith, Barring Sanctions Under The Court's Inherent Authority.

eCW's late production of certain Jira tickets is separately not sanctionable under the Court's inherent power because it did not act in bad faith. "In order to invoke its inherent power, the [c]ourt must find that a party acted in bad faith." *FactorTrust, Inc.*, 2018 WL 11350386, at *3-4; *see Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) ("The key to unlocking a court's inherent power is a finding of bad faith."). "Recklessness

---

[15]    While the *SCADIF* court "reprimand[ed]" the defendant for failing to timely produce discovery "multiple times in the same litigation" and specifically producing materials on the "eve of trial," *SCADIF*, 208 F. Supp. 2d at 1378-79, the discovery mistake surrounding the Jira tickets was an isolated mistake and did not occur on "the eve of trial." Relators also suggest that *Malautea v. Suzuki Motor Co.*, supports the proposition that a mere "delay in producing documents" warrants sanctions under Rule 37. (Mot. at 24 (citing 987 F.2d 1536, 1540-42 (11th Cir. 1993)).) But in that case, the district court "expressly" and "undoubtedly compelled the defendants" to provide critical information, and defendants "*refused*" to produce it, "willfully violating the court's three clear orders." 987 F.2d at 1543 (emphasis added). The circumstances here are not remotely comparable.

alone does not satisfy the inherent powers standard; there must be more." *Purchasing Power*, 851 F.3d at 1225. "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Id.* Here, eCW's oversight clearly did not rise to the level of bad faith required to invoke the Court's inherent authority for all the reasons set forth above. *See Hayles v. Smith*, No. 6:10-cv-31, 2013 U.S. Dist. LEXIS 147140, at *10-11 (S.D. Ga. Oct. 9, 2013) (unintentional failure to include all required information in expert report "more closely resemble[s] inadvertent mistakes" that does not justify sanctions under the court's inherent authority).

For this reason, too, the late production of Jira tickets was not sanctionable.

As this Court has recognized, "*any* sanction" "is clearly inappropriate" where the party against whom sanctions are being sought "acted properly." *Handy*, 2011 U.S. Dist. LEXIS 86055, at *3 (emphasis added).

Consistent with this principle, a motion for sanctions is "entirely inappropriate" where the requested discovery "was not responsive" or otherwise relevant to the claims being made in the litigation. *See Abruscato v. Geico Gen. Ins. Co.*, No. 3:13-cv-962-J-39JBT, 2014 U.S. Dist. LEXIS 192606, at *2-4 (M.D. Fla. Apr. 21, 2014) (plaintiff's "request for sanctions" was "entirely inappropriate" where defendant failed to produce irrelevant file that "was not responsive to Requests" propounded by plaintiff); *see also, e.g., Monical v. Marion County*, No. 6:18-cv-103-YY, 2023 U.S. Dist. LEXIS 114866, at *10-11 (D. Or. July 5, 2023) (magistrate judge properly denied motion for sanctions based on alleged failure to "timely" produce

19

document because it "was not responsive to any document request and thus was not required to have been produced"); *Thomas v. Lawler*, No. 1:CV-10-2437, 2013 U.S. Dist. LEXIS 32913, at *6 (M.D. Pa. Mar. 11, 2013) ("The court will deny Thomas' motion for sanctions" because defendant "is not required to respond to discovery that is irrelevant to the issues in this case.").





*See, e.g., French Cuff*, 2009 U.S. Dist. LEXIS 123348, at \*3 (no sanctionable conduct under Rule 37 despite late production, where plaintiff produced the discovery at issue once identified).  Indeed, the Eleventh Circuit has upheld the denial of sanctions based on the mere "possibility" that a party *would* provide information requested by his opponent, "mitigating any prejudice to its case and reducing the need for further curative measures." *Kleiman v. Wright*, No. 22-11150, 2023 WL 7039512, at \*6 (11th Cir. Oct. 26, 2023) (affirming district court's order vacating magistrate's entry of sanctions deeming certain facts as established).



*Johnson v. Fulton Cnty. Bd. of Tax Assessors*, No. 1:18-cv-5292-TWT-JKL, 2021 WL 2582304, at \*7 (N.D. Ga. Jan. 28, 2021) (no prejudice where plaintiff failed to cite any specific examples of information he wished to obtain or extract but was unable to, nor any questions he was unable to ask during deposition), *report & recommendation adopted sub nom. Johnson v. Fulton County*, No. 1:18-CV-5292-TWT, 2021 WL 2581431 (N.D. Ga. Feb. 17, 2021).

*See Yeazel v. Baxter Healthcare Corp.*, MDL No. 1953, 2011 U.S. Dist. LEXIS 23241, at \*10-11 (N.D. Ohio Feb. 22, 2011) (denying motion for sanctions where plaintiff has several months "to cure any prejudice" and did not do so, by deposition or otherwise).

### C.    Plaintiffs' Request For Sanctions Under Rule 16(f) Separately Fails Because eCW Did Not Violate Any Court Order.

Finally, Relators' request for sanctions under Rule 16(f) as to either discovery issue fails

for an independent reason: eCW did not violate any "scheduling or other pretrial *order*." Fed. R. Civ. P. 16(f)(1)(C) (emphasis added); *see also Fields v. Ethicon, Inc.*, No. CV421-020, 2022 U.S. Dist. LEXIS 132655, at *11 (S.D. Ga. July 26, 2022) ("[T]he [c]ourt declines to sua sponte impose sanctions pursuant to Rule 16(f) because it finds Dr. Smith's declaration does not violate the MDL [c]ourt's scheduling order."). Relators highlight the fact that the Court's *original* Scheduling Order "set[] the completion of fact discovery for December 31, 2023." (Mot. at 25.) But as they acknowledge on the next page of their motion, the Court subsequently "push[ed] the fact discovery cut off to May 31, 2024" and ultimately granted a further 60-day extension, "moving the fact discovery deadline to July 30, 2024." (*Id.* at 26.) Both categories of documents were produced well in advance of the Court's deadline: the APPSEC Jira production occurred in March and April 2024 (Bernardo Decl. ¶¶ 34-35), ███████████████████████ ███████████████████ (Katz Decl. ¶ 14).

Relators' claim that eCW's purported "delayed productions" necessitated extensions of the applicable deadlines (Mot. at 26) is also meritless. In the parties' *joint* motion to modify internal discovery deadlines in February, Relators agreed that "[t]he parties have been working diligently and cooperatively in discovery" but that "[d]espite the[ir] . . . best efforts, both the document production and relators' review of it extended beyond the time the parties had hoped to complete these efforts." (Doc. No. 134, at 1.) As that document explains, part of the delay was attributable to the fact that "relators' counsel ha[d] a trial set for the middle of March." (*Id.*) And as explained in the Bernardo and Downs declarations, Relators have been the source of delay in several other instances, taking nearly a month to agree to eCW's initial Jira search proposal; two months to raise any issues with eCW's initial Jira production; and more than five months to raise any issues with eCW's Contrast production. (*See* Bernardo Decl. ¶¶ 20, 26, 27;

23

Downs Decl. ¶ 26.)[18]  In short, Relators' own conduct "undermine[s] [their] claim of prejudice." *Jefferson v. Webber*, 777 F. App'x 11, 15 (2d Cir. 2019) (vacating sanctions order because a court must "consider [sanctioned party's] delay in light of the record as a whole, including the extent to which the [opposing party] . . . contributed to delays in the proceedings").

The authority cited by Relators purporting to countenance Rule 16(f) sanctions where a party has engaged in a "pattern of delay" is inapposite. (*See* Mot. at 25 (quoting *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003)).) In *Samaniego*, the Eleventh Circuit affirmed the district court's ***denial*** of sanctions for violating, "on two occasions, the court's order that [opposing party] provide both a witness and exhibit list" in advance of trial. 345 F.3d at 1284. Here, by contrast, there has been no violation of any court order, much less a "pattern of delay." *See Powell*, 447 F. App'x at 94 (vacating a dismissal sanction under Rule 16(f) because "[n]othing evidences that [party's] conduct was deliberate, constituted a pattern of delay, or unreasonably delayed the proceedings").

In short, Relators' own cases demonstrate why sanctioning eCW would not be proper under Rule 16(f).

## II.     THE REQUESTED ISSUE SANCTION IS EXTREME, DISPROPORTIONATE AND IMPROPER.

Relators' requested sanction—that eCW be "preclude[d]" from arguing that its software met federal certification requirements (Mot. at 6)—would effectively direct a verdict in Relators' favor and would constitute reversible error.

A court's inherent power to impose sanctions "must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial

---

[18]     Relators also likely caused further delay by raising their dispute over discovery related to third-party software with Contrast directly and concealing their status as Relators in ongoing litigation against eCW. (*See* REL000610-613 at 611-12 (5/22/2024 Email from C. Wheeler to S. McBain) (Ex. 13).)

process." *Purchasing Power*, 851 F.3d at 1223 (citation omitted).  In addition, "the Supreme Court has interpreted the Rule 37 requirement of a 'just' sanction to require 'general due process restrictions on the court's discretion.'" *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 699 (N.D. Ga. 2009) (citation omitted).  Accordingly, "[t]he sanction of default judgment is one of 'last resort'" and is only permitted "when l[ess] drastic sanctions will not suffice." *Perrymond v. Lockheed Martin Corp.*, No. 1:09-CV-01936-SCJ-AJB, 2011 U.S. Dist. LEXIS 165594, at *7 (N.D. Ga. June 8, 2011) (citation omitted); *see also Kipperman*, 260 F.R.D. at 699 (potentially dispositive sanctions "should be used sparingly and only . . . where their deterrent value cannot be substantially achieved by use of less drastic sanctions").

"Some alternative sanctions, while not literally dismissal, may effectively amount to a default judgment." *Richard v. Young*, No. 19-2144 (RC), 2023 U.S. Dist. LEXIS 208722, at *6 (D.D.C. Nov. 21, 2023).  A prime example is a so-called "issue" or "preclusion" sanction that deems key disputed allegations being made by the plaintiff in support of her claims as established, which is "'little more than a back-door attempt at the same remedy' as default sanctions." *Kleiman v. Wright*, No. 18-cv-80176-BLOOM/Reinhart, 2020 U.S. Dist. LEXIS 110987, at *61 (S.D. Fla. June 24, 2020) (citation omitted) (rejecting purportedly "alternative lesser sanction" of deeming certain facts as established as disproportionate and improper); *accord Richard*, 2023 U.S. Dist. LEXIS 208722, at *7 (preclusion and adverse inference sanctions "bear[ing] on key elements" "amount to dispositive sanctions").

Here, Relators seek "dispositive sanctions" by "preclud[ing] eCW from arguing or presenting evidence that its software met the federal certification requirements." (Mot. at 6.) Relators' theory of the case is that eCW's EHR software fails to meet the certification requirements promulgated by the ONC and that all Medicare claims submitted by physicians are

25

therefore "false" to the extent they were contingent on the physicians' use of ONC-certified EHR software. (*See* First Am. Compl. ¶¶ 8, 134, 141-143, 149-150.) Granting Relators' requested sanction (which bears no logical relationship to the alleged discovery violations) would abrogate their burden to prove this fundamental element of their FCA claims, contravene any fair reading of the law governing sanctions and violate eCW's due-process rights.

*First*, because an issue sanction that deems a key element of a plaintiff's claims as established is tantamount to a directed verdict, it "may only be issued if [the defendant] acted in bad faith." *Perrymond*, 2011 U.S. Dist. LEXIS 165594, at *10 n.6. As already discussed, the record disproves any such conduct by eCW, which undertook enormous efforts to comply with Relators' unprecedented discovery requests and produced millions of pages of documents. Moreover, ██████████████████████████████████ even though it was not relevant or responsive to Relators' requests. And while eCW initially failed to produce certain Jira tickets from the APPSEC project, that was an honest and inadvertent mistake, which eCW promptly disclosed and rectified through a subsequent production. Accordingly, any "discovery failures" related to the Jira tickets do not "rise 'to the level of flagrant or egregious misconduct'" required for dispositive sanctions. *See Richard*, 2023 U.S. Dist. LEXIS 208722, at *7-9 (citation omitted) (rejecting sanction precluding defendant from challenging "key elements of the claim" where defendant took "steps to supplement and remedy his discovery production"); *see also Kleiman*, 2020 U.S. Dist. LEXIS 110987, at *60 (declining to deem key facts as established where defendant remedied the deficient discovery and plaintiffs "have not shown clear and convincing evidence of an 'unconscionable plan' . . . to defraud the [c]ourt").

*Second*, Relators' requested sanction separately fails for lack of prejudice. As already discussed, ██████████████████████████████████████ and the failure of

26

their experts to even mention the timely-produced Jira tickets in their initial expert reports makes it clear that the subsequent production of additional tickets has not hindered the prosecution of their claims. Indeed, Relators appear to concede that they have not bothered to "fully review[]" the additional Jira tickets because they are too voluminous. (Mot. at 26-27.) Relators cannot demand voluminous, overbroad discovery and then seek to punish eCW because they purportedly lack time and resources to review it. In any event, any additional "costs" incurred in connection with reviewing belated discovery productions do not constitute the "type of actual prejudice required" for dispositive issue sanctions. *See Richard*, 2023 U.S. Dist. LEXIS 208722, at \*8 (rejecting preclusion and issue sanctions, even though untimely discovery "has wasted [p]laintiff's time and resources," and where "[d]efendant has made some attempts to remedy insufficiencies"); *see also GRV Aviation, Inc. v. Hale Aircraft, Inc.*, No. 1:00-CV-1978-WBH, 2003 U.S. Dist. LEXIS 27573, at \*13 (N.D. Ga. Jan. 31, 2003) (rejecting "extreme sanction of evidence preclusion" where "the only prejudice is that, given the tardiness of the disclosure and the discovery deadline imposed by this [c]ourt . . . [other side] did not have sufficient time to obtain its own expert"). In short, the only conceivable "prejudice" from eCW's untimely production of certain APPSEC Jira tickets was a minor delay of the discovery process that did not adversely affect Relators' ability to pursue their claims.

***Third***, even if Relators had proven bad faith and actual prejudice, their proposed issue sanction would be grossly disproportionate to the alleged discovery violation and award them an unfair windfall. *See Perrymond*, 2011 U.S. Dist. LEXIS 165594, at \*7 (dispositive sanctions only proper where l[ess] drastic sanctions will not suffice").[19] As the Eleventh Circuit has

---

[19]     *See also, e.g., Richard*, 2023 U.S. Dist. LEXIS 208722, at \*8 (rejecting preclusion and issue sanctions and ordering attorney fee and court reporter fees instead as a result of "Defendant's delayed and inadequate discovery responses," which is "the 'less dire alternative'"); *Baker v. Curtis W. Key Plumbing Contractors, Inc.*, No. 2:15-cv-

*(cont'd)*

27

recognized, "[t]o comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related'" to the purported "discovery abuse" at issue. *Kleiman*, 2023 WL 7039512, at *6 (citation omitted) ("willful and bad faith" failure to produce bitcoin holdings in a case was not sufficiently tailored to sanction of deeming certain issues established, including that plaintiffs had an ownership interest in the partnership's bitcoin); *see Serra Chevrolet, Inc. v. GMC*, 446 F.3d 1137, 1152 (11th Cir. 2006) (striking defenses violated due process because they "had no apparent relationship with the discovery abuse" that was the basis for the sanctions).

Here, neither the APPSEC Jira tickets nor ███████████████ bears any logical relationship to the requested sanction—which would deem, as proven, that eCW's EHR software was *not* in compliance with federal certification standards. In particular, Relators do not point to anything even suggesting that either category of discovery supports their certification theory. This is unsurprising given that Relators' own certification expert, Michael Arrigo, does not rely on any Jira tickets or ███████████████ in support of his opinions—the lynchpin of Relators' certification theory. (Rep. of Michael Arrigo, Aug. 3, 2024 (Ex. 14).) Accordingly, the proposed sanction would not "restore" the purportedly prejudiced "party to the same position" absent the alleged discovery violation; rather, it would unfairly permit Relators to "profit" from it. *See Sovulj v. United States*, No. 98 CV 5550FBRML, 2005 WL 2290495, at *5 (E.D.N.Y. Sept. 20, 2005) (refusing to issue an adverse inference that an x-ray film of the plaintiff's deceased husband's lung, which was not produced despite several requests, would

---

565, 2016 U.S. Dist. LEXIS 199174, at *9-11 (E.D. Va. Nov. 16, 2016) (deeming damages to be "the only issue litigated at trial" is "too severe"; rather, "the appropriate sanction" for walking out of a deposition is "the fees and costs that Plaintiff incurred for filing and briefing this motion, for preparing and attending the hearing, and for having to conduct a second deposition"); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, No. 08–20424–CIV, 2009 WL 982460, at *7 (S.D. Fla. Apr. 9, 2009) (refusing to direct that certain matters be deemed admitted at trial and prohibiting defendant from supporting its affirmative defenses, even though defendant's performance in fulfilling discovery obligations was "clearly egregious" and "resulted from the grossly negligent oversights of counsel").

28

have shown a tumor because "no evidence has been presented to support such an inference of its contents"), *on reconsideration*, No. 98-CV-5550 (FB), 2008 WL 11449125 (E.D.N.Y. May 13, 2008).

Relators' principal authority—*Bates v. Michelin North America*—does not hold otherwise and again supports eCW, not Relators. 2012 WL 453233 (N.D. Ga. Jan. 13, 2012) (cited in Mot. at 28-29). In that case, the court issued a sanction deeming the subject tire defective in a product-liability case, but only after the court's "previous monetary sanction" for failing to produce highly relevant adjustment codes and data failed to stop the defendant's "pattern of prejudicial discovery abuse." *Id.* at *1. Of note, while the court imposed monetary sanctions in response to the plaintiff's first motion for sanctions, it "declined to impose issue preclusion sanctions" and expressly "cautioned" that any failure to respond fully in producing the documents "may result in the imposition of" such sanctions. *Id.* at *5. Only after the defendant flouted that warning, lied to the court and "repeatedly refused to produce documents" did the court impose a sanction deeming the product defective. *Id.* at *21.[20] As the *Bates* court explained in its second sanctions order, because the discovery all specifically related to the safety of the tire, a finding that the tire in question was defective was "narrowly tailored to remedy Michelin's violations" and proportionate under Rule 37(b). *Id.* at *23.[21]

---

[20]    Notably, courts have expressly distinguished *Bates* in cases where the untimely production of discovery "does not support a finding either of bad faith or that [defendant] has destroyed or hidden evidence that was harmful to its case." *In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. 1:09-MD-2089-TCB, 2014 WL 12625961, at *36 (N.D. Ga. Nov. 21, 2014) (*Bates* "made explicit findings of bad faith and the sanctioned party had failed to disclose or destroyed evidence that was clearly harmful to their case."), *report and recommendation adopted in relevant part.*

[21]    Most of the authorities cited in footnote 76 of Relators' motion did not even involve issue sanctions. *See, e.g.*, *SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 323 (D. Ariz. 2022) (precluding defendant from using certain previously undisclosed expert theories as a defense at trial); *Voyager Indem. Ins. Co. v. Zalman N., Inc.*, 668 F. Supp. 3d 990, 999 (C.D. Cal. 2023) (excluding evidence of a subcontract because "[t]he only conclusion the Court can reach . . . is that Zalman was entirely at fault for the failure to discover and produce the MRB Subcontract when required to do so, and that the failure persisted for approximately six months after Zalman's initial disclosures . . . ."); *Baring Indus. v. 3 Bp Prop. Owner LLC*, 580 F. Supp. 3d 41, 53 (S.D.N.Y. 2022) (excluding

*(cont'd)*

29

This case is nothing like *Bates*. Relators are unable to point to any "misrepresentations to the Court" or violation of any order. Nor do they seriously try to connect either category of information to their claims, which turn on alleged security issues that Relators can (and did) adequately address in their original expert reports. Rather, Relators assert that "something more than a fee and expenses award is necessary" because "[a]s an FCA case, attorney's fees and expenses are mandatory if eCW settles or pays a judgment." (Mot. at 30 (citing 31 U.S.C. § 3730(d)(1)).) This argument improperly assumes that Relators will prove their case at trial.

In short, even if any sanctions were proper, the only "proportional response" would be the payment of any additional costs Relators incurred as a result of the late production. For this reason as well, the Court should deny Relators' motion for sanctions.

## CONCLUSION

For all of these reasons, the Court should deny Relators' motion for sanctions.

Dated: September 17, 2024

Respectfully submitted,

*/s/ James W. Cobb*
James W. Cobb
Georgia Bar No. 420133
jcobb@caplancobb.com
Julia Blackburn Stone
Georgia Bar No. 200070
jstone@caplancobb.com
CAPLAN COBB LLC
75 Fourteenth Street N.E., Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

---

evidence that was not timely produced where other side moved for summary judgment "in part on the basis that" the information requested during discovery period did not exist). And while an issue sanction was imposed in *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993), " [t]he conduct there was so egregious that 'the district court considered [counsel's] behavior to be so willful and contumacious that it seriously considered disbarring [the attorney and holding him in criminal contempt.'" *Dallas Fallen Officer Found. v. Frazier*, No. 4:18-CV-00481, 2019 U.S. Dist. LEXIS 152872, at *18 n.5 (E.D. Tex. Sept. 9, 2019) ("*Chilcutt* serves as a reminder that sanctions are a serious affair that are to be used only in the most volatile of situations.").

30

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

Jessica Davidson (*pro hac vice*)
jessica.davidson@skadden.com
Richard T. Bernardo (*pro hac vice*)
richard.bernardo@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (917) 777-2000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 371-7000
Fax: (202) 393-5760

*Counsel for Defendant eClinicalWorks, LLC*

31

## CERTIFICATE OF SERVICE

I, James W. Cobb, hereby certify that the foregoing was served on counsel of record

through the CM/ECF system on September 17, 2024.

> /s/ *James W. Cobb*
> James W. Cobb
> Georgia Bar No. 420133
> jcobb@caplancobb.com
> Julia Blackburn Stone
> Georgia Bar No. 200070
> jstone@caplancobb.com
> CAPLAN COBB LLC
> 75 Fourteenth Street N.E., Suite 2700
> Atlanta, Georgia 30309
> Tel: (404) 596-5600
> Fax: (404) 596-5604
>
> *Counsel for Defendant eClinicalWorks, LLC*