UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>      Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>      Defendant. | CIVIL ACTION FILE<br><br>NUMBER 5:18-CV-382 |

## <u>RELATORS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS</u>

Robert H. Snyder, Jr.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
Hannah D. Amanuel
  Georgia Bar No. 922743
  hannah@cannellasnyder.com
Alexandra "Sachi" Cole
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
Devin L. Mashman
  Georgia Bar No. 257588
  devin@cannellasnyder.com
Chase Lyndale
  Georgia Bar No. 183762
  chase@cannellasnyder.com


CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Brian P. Adams
  Georgia Bar No. 142474
  brian@brianadamslaw.com
Mary Beth Hand
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com

ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

Anna Green Cross
  Georgia Bar No. 306674
  anna@crosskincaid.com
Meredith Kincaid
  Georgia Bar No. 148549
  meredith@crosskincaid.com

CROSS KINCAID LLC
315 W. Ponce de Leon Ave., Suite 715
Decatur, Georgia 30030
(404) 948-3022

**COUNSEL FOR RELATORS/PLAINTIFFS**

## I.    INTRODUCTION

About the only thing Relators and eCW agree on is that eCW failed to produce 11,000 JIRA security tickets for more than a year after they were requested.[1]  But after that first-sentence concession, eCW spends the rest of its brief (and 32 exhibits) attempting to downplay the significance of its failure to follow the Federal Rules and this Court's orders.  None of eCW's attempted explanations justify its conduct or provide any reason to deny Relator's motion.

For example, eCW claims that its failure to produce those 11,000 JIRA tickets is "an inevitability in a litigation of this magnitude"[2] despite the platoon of lawyers[3] and litigation consultants[4] it has employed in this case.[5]  Failing to follow the Rules and this Court's orders is only an "inevitability" when, as here, a party chooses to do so.

eCW even accuses the Relators of manufacturing this dispute because they purportedly lack the "resources" to drop everything and immediately review the evidence eCW improperly withheld.[6]  Admittedly, there is a massive resource disparity between eCW–a worldwide company with nearly a billion dollars a year in revenue and hundreds of developers–and the Relators, three Macon residents who manage IT for several local medical practices.  But that disparity has nothing to do with this dispute.  Relators and their counsel have devoted thousands of hours to advancing this case on behalf of the taxpayers.  They have and will continue to devote the resources necessary to prosecute this case to completion.  The problem is not the

---

[1] ECF No. 171, eCW Resp. Br. at 1 ("Defendant eClinicalWorks, LLC ("eCW") acknowledges that it made a mistake in responding to certain discovery in this case.").

[2] *Id.* at 2.

[3] As of today, 14 lawyers from five law firms (Skadden Arps, Ropes & Gray, Aaron Katz Law, Caplan Cobb, and James Bates) have entered an appearance on behalf of eCW.  Relators' counsel know of at least four other Skadden attorneys who are working on the case.  There likely are more they haven't met.

[4] *See* Downs Decl., ECF No. 171-1 (describing work done by Triality for eCW).

[5] eCW cannot seem to get its privilege log correct either.  *See* ECF No. 149 at 3-6 (describing eCW's four revised privilege logs).

[6] ECF No. 171, eCW Resp. Br. at 27.

parties' resource disparity, it is eCW's continued refusal to follow the Rules and this Court's orders and the absolute havoc that refusal has wreaked on this case.

Despite admitting that it failed to produce more than 11,000 JIRA security tickets in a case about eCW's many security failings, eCW claims that none of that evidence is significant. That is simply false. Using the recently produced Contrast Security data and JIRA tickets, Relators have identified new high severity vulnerabilities in the current version of the eCW's cloud software.[7] Those vulnerabilities affect millions of American patients, were flagged repeatedly by eCW's Contrast program, and were repeatedly, and incorrectly, marked by eCW as "fixed" or "not a problem." Those vulnerabilities prove that eCW misled the SQOO, the ONC, and the DOJ about the security of eCW's cloud customers. They also prove, yet again, that eCW's software cannot properly authenticate users and thus does not meet the certification requirements. Relators would need to spend many more hours reviewing the withheld evidence to know for sure but there likely are hundreds more such vulnerabilities that Relators have not yet discovered.

eCW's conduct has deprived Relators of the ability to use this crucial evidence throughout the discovery period. Discovery closes in two weeks. Dispositive motions are due in 29 days and trial is set for March 2025. Relators have already taken eight eCW depositions, two SQOO depositions, and two government agency depositions. They have produced twelve expert reports from four experts, and have deposed eight of eCW's ten disclosed experts. Most of that work is affected by the improperly withheld evidence. The course of discovery in this case would have been fundamentally different if eCW had complied with its obligations. Now

---

[7] As described in the attached Declaration of Chris Wheeler, Ex. A, he spent about 70 hours reviewing approximately two dozen Contrast vulnerabilities to locate these three problems. There are thousands more Contrast issues to review.

without the requested sanctions or another lengthy discovery extension, eCW's refusal to follow the Rules and this Court's orders will go unpunished and the taxpayers who are the ultimate beneficiaries of any recovery in this case may be deprived of a full recovery.

This would have been avoided if eCW had followed the Rules and this Court's orders. eCW agreed to produce everything it gave to the DOJ during its investigation and the Court included that agreement in the first Scheduling Order.[8] Those DOJ productions included a full copy of eCW's JIRA server, including the APPSEC project eCW now claims to have "forgotten." But when eCW produced the DOJ materials to Relators, it pulled that full JIRA server copy out of the production. When Relators questioned this, eCW falsely stated on three separate occasions that it had not produced its full JIRA server to the DOJ.[9] If eCW had produced the DOJ JIRA files to Relators in April 2023, Relators would have learned of the APPSEC project and understood the significance of Contrast more than a year earlier. But eCW didn't produce those files and then misled Relators three times about what it had done.

eCW now claims that it didn't produce the APPSEC JIRA tickets because the employee that was helping its lawyers "forgot" about the project. That explanation is not credible. Dozens of eCW developers were working on APPSEC tickets throughout 2022 and 2023 and every one of eCW's hundreds of developers could access the APPSEC project at all times.[10] The same employee who supposedly "forgot" about the existence of the APPSEC project—Bharat Satyanaryan—had produced the November 2019 copy of eCW's JIRA server that went to the

---

[8] ECF No. 100 at 5 ("Relators need not use a document request to seek eClinicalWorks' production of the documents that it previously produced to the DOJ during the DOJ's investigation. *EClinicalWorks has agreed to produce those documents without a formal request*." (emphasis added)).

[9] One of eCW's counsel unashamedly states in his declaration that he did not deem it necessary to make sure that what eCW's lawyers were telling Relators' counsel was correct. ECF No. 171-6 at 5, n.3 (Bernardo Decl.).

[10] ECF No. 157-3, Wheeler Decl. ¶¶ 3-4 and Exs. 1 and 2 thereto.

3

DOJ and that included the APPSEC Project.[11]  When eCW made its incomplete and unusable December 2023 JIRA production, it manually deleted the APPSEC project from the production, along with 83 other projects, before giving it to the Relators.  If eCW had "forgotten" about those projects before then, it certainly knew about them then when one of its employees spent three days manually deleting them before production to the Relators.[12]

Even if the Court credits eCW's claim that it "forgot" about this critical evidence, eCW still should be sanctioned.  If its explanation is true, the company and its lawyers relied on the representations of one employee—Mr. Satyanarayan—that 84 of 85 JIRA projects on the eCW server had nothing to do with Relators' claims.  A simple look at the names of projects like Security Enhancements/APPSEC, Regulatory Requirements, Fax, and Kiosk, would have shown that was not true.  eCW also knew that Relators believed this to be critical evidence—Relators requested the complete JIRA server in their first document request and JIRA was the subject of many conferences throughout 2023.[13]  Given the importance of the evidence, why did eCW supposedly limit its investigation to Mr. Satyanarayan when he does not even work in Application Security?[14]  Why did eCW not ask Rahul Jaiswal—eCW's Application Security director and the "Project Lead" of the APPSEC JIRA project—whether there might be other responsive JIRA tickets?[15]  eCW's excuse for why it failed to produce this information, if true,

---

[11] Ex. B, Mittenthal Dep. Vol. I at 64:1-65:4.

[12] eCW claims that the anomalous hour long delay around the deletion of the APPSEC project was because its employee was either "completing other work, taking breaks, or *sleeping*" on the job.  ECF 171, at 15 (emphasis added).  Relators don't know whether that's true or not.  But on November 22, 2023, that employee worked from 6:23 AM to 6:47 PM without ever taking a break longer than a few minutes except for when he was deleting the APPSEC project and a project called Regulatory Requirements.  ECF No. 171-16 at 2-6.

[13] eCW makes a lot of claims in its brief about how broad Relators' requests were.  That is not true generally, or specifically.  Relators sent one request for issue tracking software during the relevant time frame.

[14] Ex. B, Mittenthal Dep. Vol. I at 78:21-79:5 (security not "his specific mission").

[15] *Id.* at 78:8-20; Ex. C, (Ex. 104 to Mittenthal Dep. Vol. I)

proves the company did not seriously attempt to locate responsive evidence and should be sanctioned for that reason.

Relators respectfully submit that eCW has earned serious sanctions and that simply awarding fees is insufficient. Relators' requested sanction—issue preclusion on one element of Relators' FCA claims—is narrowly tied to eCW's misconduct and is not, as eCW claims, tantamount to default judgment. But if the Court believes that a lesser sanction is appropriate, Relators offer alternative potential sanctions for the Court's consideration below.

## II.    FACTUAL RESPONSE TO eCW'S BRIEF

### A.  eCW DID NOT PRODUCE COMPLETE, USABLE COPIES OF THE CONTRAST AND JIRA EVIDENCE UNTIL JUNE 28, 2024

eCW makes many factual statements in its brief and the attached declarations about its JIRA and Contrast productions. Relators won't respond to all those statements because most are irrelevant.[16] The following addresses the key misstatements made by eCW in its brief.

*First,* other than a footnote in one declaration, eCW does not address its repeated misstatements to Relators' counsel that it never produced a complete JIRA server to the DOJ. Relators' counsel asked that question when eCW stated that it had removed two JIRA files from the DOJ production, and then two more times during the lengthy meet and confer process. As noted in Mr. Snyder's declaration, if eCW had told him the truth about its DOJ JIRA production Relators would have insisted that the JIRA files be produced. That, in turn, would have revealed the APPSEC project and the significance of the integrated Contrast server more than a year before eCW belatedly produced that evidence to the Relators. But Relators' counsel relied on the representations of eCW's counsel, which eCW now admits were false.

---

[16] For example, eCW's discovery vendor Pamela Downs talks about health problems that were never raised with Relators. Relators sympathize with Ms. Downs and wish her well but do not understand what her health issues have to do with the present motion.

*Second,* eCW's continued claim that creating a copy of its JIRA server would be technically difficult or burdensome is simply not true.  As detailed in the attached Declaration of Alex Hogue, an engineer who worked for ten years for Atlassian, the company that makes JIRA, exporting a backup of a JIRA server with attachments is not difficult.[17]  JIRA has a built-in export function that essentially requires just a few clicks to export all the data in the server.[18]  Exporting attachments is also not difficult, although it may take some time and produce a large file.[19]  The native JIRA export creates one zip file containing two .xml files.[20]  The entities.xml file contains the ticket data but cannot be used on its own to create a working JIRA server and cannot easily be searched.[21]  The activeobjects.xml file contains other directory information, including the audit logs that would show any deletions from the server.[22]  Creating and providing those files could easily have been accomplished long before eCW actually did so.

*Third,* eCW did not complete production of its JIRA server until June 7, 2024, when it provided a hard drive with the last attachments for all requested projects.[23]  Before then, eCW had only provided incomplete and/or unusable productions.  eCW's initial August 24, 2023 production of 165 spreadsheets with "excerpts" of JIRA tickets was largely unusable and incomplete.[24]  Months later and only eight days before Relators' expert reports were due, eCW produced what it claimed was a complete copy of all relevant JIRA tickets on December 7, 2023. But that production also was unusable and incomplete.  It was unusable because eCW deleted the activeobjects.xml file necessary to create a working JIRA instance.  As described in the Hogue

---

[17] Ex. D, Hogue Decl. ¶¶ 9-10.
[18] *Id.* ¶ 9.
[19] *Id.* ¶¶ 9-10.
[20] *Id.* ¶ 9.
[21] *Id.* ¶ 12.
[22] *Id.*
[23] ECF No. 157-6 at 8 (discovery timeline).
[24] Ex. E, Snyder Decl. ¶ 14 (describing issues with spreadsheets).

declaration, eCW would have had to create a copy of its JIRA server, then un-zip that file, and delete the activeobjects.xml file before production.[25]  There was no reason for eCW to do that other than an attempt to hide information (such as the audit logs) or to make Relators work harder.[26]  It also was incomplete because eCW deleted the APPSEC project and 83 others before production.  It is true that Relators did not reference JIRA tickets in their initial December 15, 2023 report.  But that simply was not possible based on eCW's incomplete and unusable JIRA productions.  Relators intended to return to the JIRA issue before providing their rebuttal reports.  But before eCW served its own technical expert's report, it disclosed the existence of the withheld APPSEC tickets causing more than three months of back and forth discussions before eCW finally completed its full JIRA production.

Fourth, eCW attempts to downplay the significance of the withheld Contrast data by relegating its discussion of Contrast to a footnote.  Contrast essentially operates like a "spell-check" for eCW's source code, except instead of identifying misspellings it spots security vulnerabilities.[27]  The program notifies eCW of software vulnerabilities by automatically creating tickets in JIRA when it detects a vulnerability.[28]  eCW produced three Contrast spreadsheets in December 2023 that included more than 70,000 entries, but like its JIRA spreadsheet production the Contrast spreadsheets were incomplete and largely unusable.[29]  Once eCW produced the withheld APPSEC tickets it became clear that many details of security related JIRA tickets were stored in the Contrast server and were not included in the December

---

[25] Ex. D, Hogue Decl. ¶ 12.
[26] eCW only offered to produce that deleted file when its own expert asked for it because he also could not get the JIRA production to work.
[27] Ex. A, Wheeler Decl. ¶ 2.
[28] *Id.,* ¶ 3.
[29] Ex. E, Snyder Decl. ¶ 18.

spreadsheet productions.[30]  Relators immediately asked for complete access to the Contrast

server, which eCW provided on June 28, 2024.  Since then, Mr. Wheeler has spent about 70

hours reviewing Contrast issues and cross-referencing those issues against JIRA tickets,

including withheld APPSEC tickets.[31]  Doing so is labor intensive, so Mr. Wheeler has only been

able to review about 20 Contrast issues given his other obligations.

Despite that limited review, Mr. Wheeler discovered two extremely serious security

vulnerabilities in the current version of eCW's software that were flagged multiple times by

Contrast but marked as "fixed" or "not a problem" by eCW.[32]  For example, the two APPSEC

tickets attached to Mr. Snyder's declaration were created by Contrast and relate to vulnerabilities

that eCW previously marked as "fixed" but that still exist in the current version of the software.[33]

The newly discovered vulnerabilities are as serious as, or worse, than the most serious

vulnerabilities Relators previously discovered.  They also prove that factual statements eCW

made to the DOJ, to the SQOO, to the ONC, and to Relators in this case are not true.[34]

### B.  eCW IMPROPERLY WITHHELD PRODUCTION OF THE SQOO AGREEMENT

Although not as significant as other failures, eCW's explanation for its failure to produce

its secret ███████████████████████ is almost comical.  eCW claims Relators never

requested the Agreement, despite Relators' request for "all documents sent to or received from

any governmental entity or the SQOO, related to or referencing the matters alleged in this

lawsuit including, but not limited to the Relators' allegations, the security of the eCW's software,

---

[30] *Id.* ¶ 26-29 (describing Contrast data and problems with and omissions from the December production).
[31] Ex. A, Wheeler Decl. ¶ 10.
[32] *Id.* ¶ 11.
[33] *Id*. ¶¶ 11-13; Ex. E, Snyder Decl. ¶ 31.
[34] eCW has told the DOJ, the ONC, the SQOO, and Relators that it has "compensating controls" that make the vulnerabilities found by Relators unimportant or not a vulnerability at all.  With the recently produced Contrast evidence, Relators can prove those claims are false.  Ex. A, Wheeler Decl. ¶ 14.

and ONC certification of eCW's software."[35]  If eCW did not view the ████████████ as

responsive, why did it include multiple entries about the agreement on its many privilege logs?[36]

Either its log is wrong, ***again***, or eCW changed its view of what was responsive after Relators

questioned its production.  Both are sanctionable.

eCW's claim that Relators were not prejudiced because it eventually produced the

███████ is also untrue and irrelevant.  eCW's production of ████████ ***after*** the Ulrich

deposition, and ***after*** Relators brought the issue to the Court, does not cure prejudice.  *Agilysys,*

*Inc. v. Hall*, No. 1:16-CV-3557-ELR-JFK, 2019 WL 3483173, at *15 (N.D. Ga. May 29, 2019)

(sanctioning plaintiff despite production one day before and one supplement after deposition).

████████████████████████████████████████████████

██████████████████████ ██████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████ █████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████

---

[35] *See* ECF No. 157-4 at Req. 12-13, pp. 10.  ██████████████████████████

██████████████  ECF No. 157-18 at 7, ¶ 2(a).

[36] *See* Ex. F, Excerpt of eCW June 25, 2024 Privilege Log.

[37] ECF No. 171 at 21.

[38] Ex. G, Ulrich Dep. at 137:4-14.

[39] ECF No. 157-18 at 7, ¶ 2(a).  That may explain why Ulrich claimed to lack any recollection of the specifics of his work beyond what was written in reports many times.  *E.g.* Ex. G, Ulrich Dep. at 36:9-13; 38:19-23; 46:9-17; 51:1-7; 54:13-20; 62:20-63:4.

## III.    eCW HAS EARNED A SUBSTANTIAL SANCTION

### A.    eCW'S CONDUCT VIOLATED THE COURT'S ORDERS, WAS NOT JUSTIFIED, AND HAS HARMED RELATORS

eCW makes two primary arguments to avoid sanctions under Rules 16 and 37.  eCW first argues that its conduct was substantially justified and harmless.  As the non-disclosing party, eCW "bears the burden of establishing that [its] failure to disclose was substantially justified or harmless." *Eckhardt v. United States*, No. 5:19-CV-00266-TES, 2022 WL 16841587, at \*2 (M.D. Ga. Nov. 9, 2022).  It has failed to do so.

A party's actions are substantially justified if they are "a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Devaney v. Cont'l Am. Ins.,* 989 F.2d 1154, 1163 (11th Cir. 1993).  Reasonable people cannot differ about whether eCW's conduct was appropriate.  It was not reasonable for eCW to state three times that it had not produced its complete JIRA server to the DOJ without checking to see whether that was correct.  Even assuming eCW's claim that it "forgot" about 11,000 JIRA tickets is true, when that makes no sense, it was unreasonable for eCW to rely on the memory of one person to determine where to search for responsive JIRA tickets.  It was unreasonable for eCW not to simply look at the names of its own JIRA projects or to give its lawyers access to its JIRA server so they could review it for responsiveness.  It was unreasonable for eCW to assign the deletion of the 84 withheld JIRA projects to an employee without telling that employee why he was performing that work.[40]  And it was unreasonable to include privilege log entries about the

████████████████████████  but to then not produce the actual agreement because it was

---

[40] ECF No. 171-15 ¶ 3.  That employee, Mr. Patel, is eCW's JIRA administrator and he wasn't asked about relevant places to search either.

10

supposedly "not requested." eCW failed to take obvious steps to make sure it was gathering and producing responsive information. Its conduct is not substantially justified. *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003), aff'd sub nom. *Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264 (Fed. Cir. 2006) (defendant's failure to take obvious discovery steps warranted sanctions).

eCW's attempt to claim substantial justification based on the alleged quantity and complexity of the discovery requested also fails. eCW had already collected and produced its entire JIRA server to the DOJ. All it had to do was produce those files to the Relators. Instead, it withheld them from production then misled Relators about what the files were. And, as shown by the Hogue declaration, producing the entire JIRA server with attachments is not difficult. eCW itself made the process difficult by first exporting unusable and incomplete spreadsheets, then unnecessarily deleting highly relevant projects and necessary files from the production.

eCW's contention that its conduct is harmless because Relators allegedly have not been prejudiced also misses the mark. "A discovery mistake is harmless if it is honest, and is coupled with the other party having sufficient knowledge that the material has not been produced." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F.Supp.2d 1297, 1308 (N.D. Ga. 2003). "Whether the opposing party suffered prejudice underlies the harmlessness determination." *Pitts v. HP Pelzer Auto. Sys., Inc.*, 331 F.R.D. 688, 692 (S.D. Ga. 2019). As described above, eCW's alleged "mistakes" were not honest, and Relators did not know about the withheld evidence. Relators didn't know about the full DOJ JIRA production because eCW denied it existed. They didn't know about the APPSEC project. And they didn't know about the ███████████ beyond general references to a draft agreement in a privilege log.

eCW also claims that its production of the APPSEC materials beginning in late February

11

and the ▮▮▮▮▮▮▮▮▮▮▮▮ after the Ulrich deposition was within the discovery period, so

Relators suffered no harm.  That is not true.  As described above and in the attached declarations,

Relators did not have a full working copy of eCW's JIRA and Contrast servers until June 28,

2024.  Given the massive volume of evidence in those productions, the labor intensive review

needed, and their other obligations, Relators have only just begun to review that evidence.  But

that limited review has proven that the withheld evidence contains critical evidence that Relators

would have relied on if eCW had produced it when requested.  The Federal Rules don't give a

party "a right to produce information in a belated fashion."[41] *In re Delta/AirTran Baggage Fee

Antitrust Litig.*, 846 F. Supp. 2d 1335, 1355 (N.D. Ga. 2012).  And a "last-minute tender of documents

does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket

the opportunity to use the courts." *North Am. Watch Corp. Princess Ermine Jewels*, 786 F.2d

1447, 1451 (9th Cir.1986) (citations omitted).  eCW's conduct delayed and disrupted this

litigation, hampered discovery, interfered with the Court's scheduling Orders, and prejudiced

Relators.  *E.g. Githieya v. Glob. Tel\*Link Corp.*, 608 F. Supp. 3d 1290, 1328 (N.D. Ga. 2020)

(finding prejudice caused by discovery misconduct).  Its conduct was not harmless.

eCW's second argument that it violated no Court Orders making Rule 16 sanctions

unwarranted is just silly.  The Scheduling and Discovery Order entered on January 12, 2023,

required eCW to produce "the documents that it previously produced to the DOJ during the

DOJ's investigation."[42]  eCW violated that Order when it removed the JIRA files from its

production and then misled the Relators about what those files were.  Consistent with that

Order's requirement of early technical expert reports,[43] Relators served their technical expert

---

[41] Once Relators reached out to the Court about seeking sanctions, eCW began an even more aggressive
scramble to produce requested documents.
[42] ECF No. 100 at 5.
[43] *Id.* at 3.

reports on December 15, 2023, more than 6 months before eCW completed its belated production of JIRA and Contrast data. Another Order violation. The close of fact discovery and the ability to serve additional expert reports has now passed without Relators and their experts having the ability to meaningfully use the withheld evidence. That too violates the Court's Scheduling Orders. ECF No. 136. This Court's scheduling orders are not optional. *Robson v. Hallenbeck*, 81 F.3d 1, 4 (1st Cir. 1996) ("Calendars are simply too crowded for parties to treat scheduling orders as optional and to conduct trial preparations at their own convenience.") eCW's continued violations of those Scheduling Orders warrants sanctions under Rule 16.

## B.  eCW HAS ACTED IN BAD FAITH

The Court need only find bad faith if it sanctions eCW based on its inherent powers.[44] But Relators submit that eCW has acted in bad faith. A party demonstrates bad faith "by delaying or disrupting the litigation or hampering enforcement of a court order." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (quotation omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) (party acts in bad faith by "delay[ing] or disrupt[ing] the litigation"); *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 1000 & n. 5 (2d Cir. 2002) (reversing and remanding for further consideration of whether party's "purposefully sluggish" productions and its "at least careless, if not intentionally misleading, statements" were bad faith). eCW's conduct has delayed and disrupted this litigation. Its excuses make no sense, its "sluggish production" of crucial evidence, and its misstatements to Relators are bad faith and warrant sanctions. *Id.*; *see also In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1305 (11th Cir. 2006) (party's "dawdling and obfuscation in the response of the discovery

---

[44] *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994); *Andrews v. Autoliv Japan, Ltd*., No. 1:14-CV-3432 (SCJ), 2019 WL 13040493, at *3 (N.D. Ga. Sept. 20, 2019); *N. Am Factory for Technologically Advanced Aircraft, LLC v. Weatherly Aircraft Co*., No; 1:10-CV-037 (WLS) 2016 WL 11020711, at *5 (M.D. Ga. Mar. 31, 2016).

requests" coupled with other behavior warranted sanctions).

### C.  ISSUE PRECLUSION OR OTHER SERIOUS SANCTIONS ARE WARRANTED

eCW's conduct warrants actual sanctions.  Its own response effectively concedes that a monetary sanction would be appropriate.  But Relators submit that more is necessary.  If eCW's conduct is allowed to pass with no real consequence, "the discovery and judicial process would be stripped of all integrity and functionality."  *Githieya*, 608 F. Supp. 3d at 1329 (one permissible purpose of sanctions is "deterring others from engaging in similar conduct") (quotation omitted).  As Relators noted in their motion, eCW is already obligated to pay Relators' fees and expenses if it settles this case or pays a judgment.  And simply paying a monetary sanction, even a large one, has little deterrent effect on a company worth billions.

That is why Relators asked for issue preclusion on one discrete issue: whether eCW's software met the applicable certification requirements.  Such a finding is not a default judgment as eCW claims.[45]  Relators would still need to prove eCW's conduct was material to the government's decision making, that eCW acted knowingly, and that the government suffered damages.  The requested issue preclusion is also directly tied to eCW's misconduct.  As demonstrated by Relators' recent findings, the withheld evidence goes to the heart of the certification issue, as well as eCW's purported defenses.  *See In re Heritage Bond Litig.*, 223 F.R.D. 527, 531 (C.D. Cal. 2004) (precluding defendants from defending against one claim where defendants' discovery violations prevented plaintiff from preparing); *Brown v. Mitchell*, No. 4:06-CV-017PRC, 2008 WL 410573, at *8 (N.D. Ind. Feb. 11, 2008) (precluding defendant

---

[45] eCW cites *Young v. Vilsack*, No. CV 19-2144 (RC), 2023 WL 8083635, at *3 (D.D.C. Nov. 21, 2023) to support its argument that issue preclusion sanctions are the same as default judgment.  ECW No. 171 at 25. *Young* is distinguishable.  It was a racial discrimination case, and the requested adverse inference was that the defendant engaged in a pattern of race discrimination and a "a pattern of disparate treatment in discipline and targeting African American employees."  *Id.*  Those adverse inference would effectively decide the case for the Plaintiff.  The Court awarded monetary sanctions instead.  *Id.* at *4.

from arguing against breach where he failed to produce requested documents).

If the Court believes that such a sanction is too harsh, Relators suggest two possible alternatives in addition to a fee and expense award. *First*, the Court could instruct the jury that it can infer that eCW violated its discovery obligations because the withheld evidence supported Relators' allegations. *E.g., Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 574 (S.D. Fla. 2001) (considering and rejecting jury inference sanctions as "one of the least severe sanctions which the court can impose and, therefore, often have very little deterrent effect"). *Second*, the Court could preclude eCW from seeking summary judgment on the certification issue, allow Relators to finish their review of the withheld evidence, and offer supplemental expert opinions before the March trial. Such a sanction would allow eCW to present certification evidence at trial, and allow Relators to focus on other issues at this next most-pressing stage of the case. District courts have broad discretion to craft discovery sanctions and Rule 37 sanctions can apply "on a motion, at a hearing, or at trial" Fed. R. Civ. P. 37(c)(1); *c.f. Githieya*, 608 F. Supp. 3d at 1332 (striking portions of class certification motion response that relied on improperly withheld evidence); *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D. Ala. 2001) (striking summary judgment exhibits and awarding fees).

Relators respectfully submit that eCW has earned sanctions. They ask the Court to enter a sanction that reflects the severity of eCW's conduct and that appropriately punishes it for the delay and disruption it has caused.

Respectfully submitted this 1st day of October, 2024.

15

/s/ Robert H. Snyder, Jr.
ROBERT H. SNYDER, JR.
  Georgia Bar. No. 404522
  rob@cannellasnyder.com
HANNAH D. AMANUEL
  Georgia Bar No. 922743
  hannah@cannellansnyder.com
ALEXANDRA "SACHI" COLE
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
CHASE LYNDALE
  Georgia Bar No. 183762
  chase@cannellasnyder.com


CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

BRIAN P. ADAMS
  Georgia Bar. No. 142474
  brian@brianadamslaw.com
MARY BETH HAND
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com

ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

ANNA GREEN CROSS
  Georgia Bar No. 306674
  anna@crosskincaid.com
MEREDITH KINCAID
  Georgia Bar No. 148549
  meredith@crosskincaid.com

CROSS KINCAID LLC
315 W. Ponce de Leon Avenue, Suite 715
Decatur, GA 30030
(404) 948-3022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 1st day of October, 2024.

/s/ Robert H. Snyder Jr.
Robert H. Snyder Jr.
Georgia Bar No. 404522