# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ALEX PERMENTER, ERIC RODIGHIERO, and CHRIS WHEELER<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | **CIVIL ACTION FILE NO.**<br><br>**Case No. 5:18-CV-382** |

**DECLARATION OF CHRIS WHEELER**

Pursuant to 28 U.S.C. § 1746, I, Chris Wheeler, declare under penalty of perjury that the following is true to the best of my knowledge and recollection:

1.    I am over the age of 18 and competent to give the following testimony

2.    On the evening of June 26th, 2024, eCW finally provided full access to its Contrast server. Contrast is a source code security vulnerability scanning software.  Contrast essentially operates like a "spell-check" for eCW's source code, except instead of identifying misspellings it spots security vulnerabilities.  The Contrast data revealed many examples of eCW developers marking security problems as "false positive" or "fixed" when this was not actually the case.

3.    Contrast is a software used to notify eCW of software vulnerabilities by automatically creating tickets in Jira when it detects a vulnerability.  The Jira ticket links back to a report which details the source of the problem down to the exact filename and line number and provides a detailed explanation of why this is a problem and how to fix it.

1

4.      The Contrast program has been configured to scan multiple eCW products and they are divided within the Contrast interface.  For example, there are separate "application" sections in contrast for EMR-PM, ███████████████, etc.

5.      There is a separate application called "mobiledoc" which is not the name of an eCW product.  But for context, on an eCW server inside of the Tomcat application directory, "mobiledoc" is the name of their EMR-PM application.  I've confirmed that the "mobiledoc" application within Contrast contains vulnerability data about eCW's EMR-PM, and so does the "EMR-PM" application within Contrast.

6.      Contrast tickets can have various open and closed statuses.  An open ticket can be "Reported" or "Confirmed", and a closed ticket can be "Fixed", "Remediated", or "Not a Problem".

7.      Contrast also supports various severities for each of the tickets, including "Critical", "High", "Medium", "Low", and "Note".  These are set automatically by Contrast based on the kind of security vulnerability detected.

8.      Currently, the ██████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ ██████████████████████████

9.      ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████

10.      Analyzing the issues revealed by eCW's eventual production of Contrast is an overwhelming task.  Even narrowing my analysis to only high and critical severity vulnerabilities

still means that there are tens of thousands of vulnerabilities to review. An appropriate analysis of each vulnerability is a manual and labor-intensive task, which has so far taken about three hours per vulnerability on average.  Given that Relators have only had access to eCw Contrast for three months, combined with the other time-intensive requirements of both this case and my professional obligations, we have had less than 70 manhours dedicated to this analysis so far. Therefore, we have been able to analyze less than two dozen of the tens of thousands of Contrast-reported vulnerabilities.  Despite the extreme limits of our analysis, it's easy to point to specific examples of continuing and systemic deception and fraud.  Specifically, cross-referencing the Contrast and JIRA reported vulnerabilities demonstrates eCW's hiding of security flaws in its EMR software.

11.    After reviewing just a few dozen Contrast reported issues, I have been able to identity three high severity vulnerabilities present in the most current versions of the ECW software that were repeatedly reported by Contrast to ECW's developers and were repeatedly marked as "fixed" or "not a problem" when they were neither.

12.    Each of the three discovered vulnerabilities are extremely high severity vulnerabilities, two of which we were not previously aware of and one of which we had previously reported but can now show that eCW was already made aware of by their Contrast tool years prior and failed to fix.  Each vulnerability affects both ECW's cloud and locally hosted customers.  Two of the three vulnerabilities are at least as bad as the worst vulnerabilities that we previously reported to the DOJ while the case was under seal.

13.    These newly discovered vulnerabilities are detailed in a supplemental discovery response that is being produced to ECW along with this filing.  My sincere hope is that ECW will use that

3

disclosure to fix these high severity problems that exist in its software and that continue to jeopardize the highly sensitive medical records of millions of American patients.

14.     Since we filed this case, ECW has fixed many of the vulnerabilities that we reported. Despite fixing the problems, in many instances ECW told the DOJ, or other governmental agencies looking into the issues, that the problems were not actually that severe or were limited to ECW's locally hosted customers.  ECW has continued those arguments in this case and has had its hired experts continuously talk about so-called "compensating controls" that supposedly would protect against exploitation of the problems.

15.     Before discovery started, we had seen no evidence of any such compensating controls having any actual effect on stopping exploitation of security vulnerabilities.  We have stated on several occasions that we do not believe that the compensating controls exist or actually were doing anything.

16.     With access to the Contrast server and ECW' full JIRA database, I believe that we have now fully proven that ECW's so-called "compensating controls" do not work, and that ECW has been misleading the DOJ, the SQOO, and other governmental agencies about the security of its software.  The newly discovered vulnerabilities show that ECW has been ignoring security flaws that continue to allow ███████████████████████████████████████ ████████████     The explanation of how that is possible is technical and has been provided to ECW, but it is the same type of extremely startling discovery that prompted us to file this case in the first place.  And it shows that ECW is still recklessly handling the PHI of millions of Americans.  It also shows that to this day, ECW still does not meet the security certification requirements because ████████████████████████████████████████████████ ████████████████████████████████.

4

17.     I now know that ECW provided a full copy of its JIRA server to the DOJ in November 2019.  Once we learned of that production and ECW provided it to us, I created a working replica of what ECW produced to the DOJ.  That version of ECW's JIRA server includes approximately 65 projects, including the APPSEC project.

18.     If ECW had provided those files to us in April 2023 when it completed its production of DOJ produced materials, I would have immediately recognized several things.  First, I would have known that ECW had the long running APPSEC project and would have asked for an updated production of those materials.  Second, the significance of ECW's integrated use of Contrast in its JIRA system would have been immediately apparent, and I would have asked for full access to that server last year.  I could have spent the needed time to fully review the Contrast and JIRA materials and complete my assessment of ECW's ongoing security vulnerabilities.  I would have included those findings in my expert reports in this case and in responding to ECW's experts.  That information also would have been used to help my counsel seek additional discovery and prepare for depositions that already have been taken in this case.

19.     It is impossible to overstate the significance of the withheld JIRA and Contrast  evidence and how much it would have changed the course of this case.  And unless we are given months to essentially re-do all our expert work and take additional discovery while also having ECW reverse their cease-and-desist demand which bars us from investigation, then it is impossible to know what else we might discover in this evidence that was only briefly made available to us.

I declare under penalty of perjury that the foregoing is true and correct to the best of recollection.

This 1st day of October 2024.

/s/ Chris Wheeler
Chris Wheeler

5