**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*, <br><br>      Plaintiffs, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br>      Defendant. | No. 5:18-CV-382 <br><br> Honorable Marc T. Treadwell |

**<u>DEFENDANT eCLINICALWORKS LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE RELATORS FROM ANY QUANTIFICATION OF DAMAGES THAT FAILS TO ACCOUNT FOR MIPS RULES</u>**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ..............................................................................................................2

    A.    Automatic PI Category Exemptions ....................................................................2

        1.    Overview of MIPS Automatic Exemptions .................................................2

        2.    Ms. Wolfston's Failure to Account for Automatic Exemptions .................4

        3.    Reduced Damages Based on Updating Ms. Wolfston's Model to Reweight for Automatic Exemptions............................................................4

    B.    Covid-19 Automatic Exception .........................................................................5

    C.    MIPS Alternative Payment Models ...................................................................6

        1.    Overview of MIPS-APMs............................................................................6

        2.    Ms. Wolfston's Failure to Account for MIPS-APMs .................................7

        3.    Reduced Damages Based on Updating Ms. Wolfston's Model to Account for MIPS-APMs ............................................................................7

    D.    MIPS Covered Professional Services .................................................................7

ARGUMENT.....................................................................................................................9

CONCLUSION ...............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................................9

*Navelski v. International Paper Company*,
244 F. Supp. 3d 1275 (N.D. Fla. 2017)................................................................10

*United States v. City of Miami, Fla.*,
115 F.3d 870 (11th Cir. 1997) ...............................................................................9

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
746 F.3d 1008 (11th Cir. 2014) .............................................................................9

**Rules**

Fed. R. Evid. 702 ........................................................................................................9

**Other Authorities**

42 C.F.R. § 414.1415(a)(1)..........................................................................................6

Defendant eClinicalWorks, LLC ("eCW") submits this motion pursuant to the schedule for motions addressing admissibility issues relating to the quantification of damages set forth in the Court's Scheduling and Discovery Order, ECF No. 100, § V.C (the "Schedule").[1]

## **INTRODUCTION**

Relators' damages expert, Emily Wolfston, intends to testify to a damages model that indisputably fails to account for Merit-based Incentive Payment System ("MIPS") exemptions that are ***automatic*** and ***non-discretionary*** (that is, exemptions that an eligible healthcare provider automatically receives without having to do anything).

MIPS provides numerous exemptions from the Promoting Interoperability ("PI") category. Some of these exemptions require an eligible healthcare provider ***to apply*** in order to receive it. Others, however—including a Covid-19 exemption in several relevant years—are ***automatic*** and ***non-discretionary***, such that any eligible healthcare provider will receive the PI exemption without any action on the provider's part. In addition, the MIPS distinguishes between clinicians affiliated with Alternative Payment Models ("APMs") and those who are not affiliated with APMs—as to the former, the provider's individual PI score often does not affect the provider's MIPS score. But Ms. Wolfston's damages analysis does not account for either the automatic, non-discretionary PI exemptions or the distinction between providers who are affiliated with APMs and those who are not. By neglecting to incorporate these clear regulatory provisions in her damages analysis, Ms. Wolfston overcalculates the maximum possible damages ***by tens of millions of dollars***. This is further exacerbated by the fact that Ms. Wolfston relies on a total payment that is meaningfully higher than the relevant payment amount for the MIPS payment adjustment.

---

[1]    Under Section § V.C of the Schedule, "*Daubert* motions challenging an expert proffer pertaining solely to the quantification of alleged damages shall be filed by no later than 60 days after the Court rules on dispositive motions." (ECF No. 100.)

Accordingly, and as elaborated in this brief, the Court should exclude Ms. Wolfston's damages model in its entirety.[2]

## BACKGROUND

**A.    Automatic PI Category Exemptions**

          1.    Overview of MIPS Automatic Exemptions

MIPS adjusts payments to clinicians based on performance in four categories.  One is the PI category.[3]  In general, the PI category constituted 25% of a clinician's MIPS score in 2017, 2018 and 2019, and 30% of a clinician's MIPS score in 2020 and 2021.  To earn points for PI, clinicians are required to submit an attestation of use of a Certified Electronic Health Record Technology ("CEHRT").[4]  And when an EHR is not certified, the clinician is unable to submit data to MIPS because they will not have a CEHRT ID.[5]

Nevertheless, there are mechanisms by which the PI category could be reweighted to comprise 0% of the clinician's MIPS score.[6]  ***First***, clinicians can apply for a PI hardship exception

---

[2]      While the Court addressed related limitations in Ms. Wolfston's analysis previously, these limitations (unlike those previously addressed by the Court) generally operate ***automatically*** and do not require affirmative steps to be taken by the clinician.

[3]      The Promoting Interoperability category "promotes patient engagement and electronic exchange of information using certified electronic health."  *See* Center for Medicare & Medicaid Services ("CMS"), Promoting Interoperability: Traditional MIPS Requirements, https://qpp.cms.gov/mips/promoting-interoperability.

[4]      *See* CMS, Promoting Interoperability: Traditional MIPS Requirements, https://qpp.cms.gov/mips/promoting-interoperability?py=2021; CMS, Certified EHR Technology, https://www.cms.gov/medicare/regulations-guidance/promoting-interoperability-programs/certified-ehr-technology; CMS.

[5]      *See* Health IT, ONC CHPL 4.0 Overview – Generation of CMS EHR Certification ID, https://www.healthit.gov/sites/default/files/policy/chplcmsehrcertidinstructionsv41.pdf#:~:text=The%20CMS%20EHR%20Certification%20ID%20can%20only,programs%20once%20it%20has%20been%20successfully%20generated. ("The CMS EHR Certification ID can only be generated on the CHPL once the minimum program requirements are met by the combination of Certified Technology selected.  The CMS EHR Certification ID can be used to participate in CMS and other EHR Incentive programs once it has been successfully generated.").

[6]      *See* CMS, Promoting Interoperability: Traditional MIPS Requirements, https://qpp.cms.gov/mips/promoting-interoperability.

application ("Hardship Exception").[7]  **Second**, certain clinicians automatically qualify for one or more exemptions ("Automatic Exemptions"), which CMS automatically applies unless the clinician voluntarily submitted PI documentation, including attesting to the use of a CEHRT (with a reference to CEHRT ID number issued by ONC).  Thus, unlike the Hardship Exception, a clinician does not need to submit an application to receive an Automatic Exemption reweighting. Instead, the clinician is automatically exempted from having to submit data for this performance category.[8]  And because clinicians are registered within CMS according to their status, CMS **automatically** determines whether they qualify for an Automatic Exemption, and if so, applies it.[9]

Depending on the year, Automatic Exemptions applied to (1) specific clinician types and (2) clinicians in special status groups.  Eligible clinicians included physician assistants, nurse practitioners, clinical nurse specialists, certified registered nurse anesthetists, physical therapists, occupational therapists, clinical psychologists, qualified speech-language pathologists, qualified audiologists, registered dieticians or nutritionists and social workers.[10]  Clinicians in special status included those who practiced in ambulatory surgical centers ("ASCs") and hospitals, as well as clinicians who did not interact with patients (*e.g.* radiologists).[11]  These clinicians qualified for Automatic Exemptions in some or all of the relevant years here.  In addition, CMS sometimes

---

[7]     CMS, Quality Payment Program Exception Applications, https://qpp.cms.gov/mips/exception-applications#promotingInteroperabilityHardshipException-2025.

[8]     *See* Health IT, Quality Payment Program, MIPS 101 for the 2019 Performance Year, https://www.healthit.gov/sites/default/files/playbook/pdf/2019-MIPS-Overview-Webinar_%20Slides.pdf (the "MIPS 2019 Guide"); CMS, Quality Payment Program, Merit-based Incentive Payment System (MIPS) Scoring Guide for the 2020 Performance Year, https://qpp.cms.gov/resources/document/64eaec18-d113-4084-82d8-1340a388cef2 (the "MIPS 2020 Guide").

[9]     *See* CMS, Quality Payment Program: Special Statuses, https://qpp.cms.gov/mips/special-statuses?py=2021; CMS, Quality Payment Program: QPP Exception Applications, https://qpp.cms.gov/mips/exception-applications?py=2021.

[10]    *See generally* MIPS 2019 Guide and MIPS 2020 Guide; *see also* Rebuttal Rep. of Laurence C. Baker and David C. Grabowski ("Baker & Grabowski Rep."), Ex. 2, ECF No. 192-18.

[11]    *Id.*

automatically applied an Extreme and Uncontrollable Circumstances ("EUC") exception for, e.g., clinicians located in region affected by a FEMA-designated major disaster.[12]

2.    <u>Ms. Wolfston's Failure to Account for Automatic Exemptions</u>

Ms. Wolfston's damages model assumes that (1) every clinician who submitted a PI attestation for eCW's EHR software during the period 2017 through 2021 should have received a score of zero in the PI category and (2) these zero scores would have accounted for 25% (for years 2017–2019) or 30% (for years 2020–2021) of the clinician's total MIPS score. Ms. Wolfston applies this assumption even to clinicians who would have qualified for an Automatic Exemption. (*See* Wolfston Dep., Tr. 174:11-14, ECF No. 218-24.) This assumption is contrary to the underlying MIPS regulations.

3.    <u>Reduced Damages Based on Updating Ms. Wolfston's Model to Reweight for Automatic Exemptions</u>

Ms. Wolfston's data contained entries indicating each clinician's eligibility to claim an exemption in each of the categories noted above; she simply chose not to incorporate that data into her estimates. (*See* Wolfston Dep., Tr. 208:4-214:8, ECF No. 218-24; Expert Declaration of Laurence Baker ("Baker Decl."), August 25, 2025, ¶ 30 (Ex. A).) To correct this flaw in Ms. Wolfston's damages model, eCW's damages expert Dr. Laurence Baker conducted a targeted update to Ms. Wolfston's original model (limited to version 11) by reweighting scores for the clinicians who would have received an Automatic Exemption. (*See* Baker Decl., ¶ 30.) Specifically, Dr. Baker took Ms. Wolfston's model and filtered it for clinicians who actually used eCW's EHR software[13] and would have qualified for an Automatic Exemption during the relevant

---

[12]    CMS, QPP Exceptions Applications, https://qpp.cms.gov/mips/exception-applications?py=2021.

[13]    As described in a separate brief filed today, Ms. Wolfston's analysis includes many clinicians who were not eCW customers as well as eCW customers who could have attested to use of other versions of eCW's EHR software. Dr. Baker's adjustment for Automatic Exemptions excludes these clinicians.

4

years and reweighted their MIPS score. Dr. Baker approximates that damages under Ms. Wolfston's model (method 1) would be reduced to $29,259,765. (Baker Decl., ¶ 31.)

B.    **Covid-19 Automatic Exception**

Ms. Wolfston's damages model also fails to consider another critical aspect of the MIPS regulatory framework: the MIPS Covid-19 automatic exception. For Performance Years 2019, 2020, and 2021, MIPS-eligible clinicians were automatically eligible for an EUC (the "Automatic EUC").[14] These clinicians were automatically identified by CMS and did not have to apply.[15]

CMS's Automatic EUC policy meant that any performance category for which a MIPS eligible clinician did not submit data was automatically reweighted to 0%.[16] As a result, those categories did not contribute to the clinician's final MIPS score. In other words, MIPS-eligible clinicians who qualified for the Automatic EUC received automatic reweighting of one or more MIPS performance categories, including the PI category, due to Covid-19.

Ms. Wolfston's damages model also fails to account for Covid-19 Automatic EUC. Although she was aware that an exception was available for Covid-19 (Wolfston Dep., Tr. 64:9-65:1, ECF No. 218-24), she was unable to describe how it applied at her deposition (*id.* 227:20-229:4) and testified that she did not take it into account in her model (*id.* 229:5-9). This renders her analysis contrary to the applicable MIPS regulations. To account for Ms. Wolfston's failure

---

[14]    *See* CMS, The 2019 Merit-based Incentive Payment System (MIPS) Automatic Extreme and Uncontrollable Circumstances Policy, https://qpp-cm-prod-content.s3.amazonaws.com/uploads/749/2019%20MIPS%20Automatic%20EUC%20Fact%20Sheet.pdf; CMS, The 2020 Merit-based Incentive Payment System (MIPS) Automatic Extreme and Uncontrollable Circumstances Policy, https://qpp-cm-prod-content.s3.amazonaws.com/uploads/1198/2020%20MIPS%20Automatic%20EUC%20Fact%20Sheet.pdf; CMS, 2020 MIPS Extreme and Uncontrollable Circumstances Application Resources, https://qpp.cms.gov/resources/document/7798d35c-2581-40fe-b26b-f2ba5c66878f; CMS, QPP Exceptions Applications, https://qpp.cms.gov/mips/exception-applications?py=2021.

[15]    *See* CMS, QPP Exceptions Applications, https://qpp.cms.gov/mips/exception-applications?py=2021.

[16]    *Id.*

to consider clinicians who received automatic reweighting for hardships (including the Covid-19 Automatic EUC), Dr. Baker conducted a targeted update to Ms. Wolfston's original model (limited to eCW customers using version 11) by reweighting scores for all clinicians each Performance Year based on the assumption that they would have received an exemption for the PI category. Based on Dr. Baker's adjusted calculations under Ms. Wolfston's model for the years in which the Covid-19 automatic reweighting would apply (i.e., 2019, 2020, and 2021), her model would produce negative damages of $6,732,603.  (*See* Baker Decl., Ex. 2.)

C.    **MIPS Alternative Payment Models**

1.    Overview of MIPS-APMs

Ms. Wolfston's damages model also fails to account for another important aspect of the MIPS regulatory framework: the APM regulations.  Under those regulations, clinicians affiliated with an APM were eligible for certain scoring benefits under MIPS, and their MIPS scores were calculated differently than clinicians not affiliated with an APM.[17]  Specifically, for a clinician affiliated with an APM, his or her PI score was based on the performance of the APM's clinicians *as a group*.  Only a certain percentage of the MIPS-eligible clinicians in a participating APM need to use CEHRT to document clinical care in order for all APM members to qualify for reweighting in the PI performance category—50% for MIPS Performance Years 2017 and 2018, and 75% for MIPS Performance Years 2019-2021.[18]  Thus, in an APM where more than the minimum percentage of MIPS-eligible clinicians were using CEHRT, and only one clinician was using CEHRT that lost its certification, it is possible that the APM would maintain its eligibility for PI points based on the continued use of CEHRT by more than the required percentage of its clinicians.

---

[17]    *See* CMS, MIPS Alternative Payment Methods, https://qpp.cms.gov/apms/mips-apms.

[18]    42 C.F.R. § 414.1415(a)(1)(i).

6

2.    Ms. Wolfston's Failure to Account for MIPS-APMs

Ms. Wolfston's damages model fails to account for MIPS-APM. At her deposition, Ms. Wolfston was unable to articulate how she addressed APMs (if at all) in her model. (*See* Wolfston Dep., Tr. 34:12-35:15, ECF No. 218-24.) But it is clear from her report and spreadsheets that no account was made for the fact that APMs could maintain MIPS eligibility despite the failure of some of their clinicians to use CEHRT. Neither she nor Relators have provided any evidence that any APM affiliated with a clinician who is in eCW's customer data would have lost its eligibility for MIPS based solely on that clinician's alleged failure to use CEHRT.

3.    Reduced Damages Based on Updating Ms. Wolfston's Model to Account for MIPS-APMs

To account for Ms. Wolfston's failure to prove that APMs affiliated with eCW customers would have lost MIPS eligibility based on one clinician's alleged failure to use CEHRT, Dr. Baker conducted a targeted update to Ms. Wolfston's original model (limited to users of eCW's version 11) by removing Ms. Wolfston's overpayments for clinicians who are participants in MIPS-APM. This analysis utilized entries indicating each clinician's participation in a MIPS-APM in Ms. Wolfston's data. This calculation, by Dr. Baker (which made no adjustments for the Automatic Exemptions described above) arrived at damages of $25,698,185. (*See* Baker Decl., Ex. 4.)

D.    **MIPS Covered Professional Services**

Ms. Wolfston's model also overstates damages because it includes Medicare payments for drugs, lab costs, and other items that do not form the basis for MIPS payment adjustments. As a threshold matter, Relators have never presented actual evidence of any electronic remittance advice that would have quantified the exact MIPS adjustment for an NPI in any given year. It is that evidence that they would need to prove the presentation of a "false claim" and they do not

have it.[19]  Ms. Wolfston has sought to circumvent this lack of proof by estimating MIPS incentive payments based on raw CMS payment data.  But that effort fails for several reasons.

First, as of the 2018 Payment Year, the MIPS payment adjustment was only applicable to payments associated with "Covered Professional Services," which excludes drugs and other items that are not clinician services.[20]  There are no publicly available CMS data that carve out all of the excluded items.  At the very least, however, Ms. Wolfston should have excluded drug costs because the very spreadsheet on which she relied to identify Medicare payments differentiates between "Total Medicare Payment Amount"—on which Ms. Wolfston relied but which includes payments for drugs—and "Total *Medical* Medicare Payment Amount," which excludes such payments.[21]  She did not do so.  As a result, her estimates include reimbursements for Part B drugs, which are not eligible for MIPS payment adjustment, and significantly overstates damages for this reason, too.  Indeed, in the 2019 payment year, ***drug costs account for roughly 15%*** of the total Medicare payments reported in the spreadsheet on which Ms. Wolfston' relies.

Second, Ms. Wolfston's model does not account for situations in which a clinician splits time at multiple practices, only some of which attest to use of eCW software.  This circumstance

---

[19]      For this reason, as eCW previously argued, Relators should not be able to proceed to trial.

[20]      CMS, Quality Payment Program: Reporting Options Overview, https://qpp.cms.gov/mips/reporting-options-overview ("Under MIPS, you earn a payment adjustment for Medicare Part B-covered professional services," and "covered professional services" is defined as "Services provided by professionals like clinicians and doctors that are paid under or based on the Medicare Physician Fee Schedule.") (the "Covered Professional Services"); The Bipartisan Budget Act of 2018, Sec. 51003. Technical Amendments To Public Law 114–10, Medicare & Medicaid Guide 4104910 ("MIPS Transition…. striking 'items and services' and inserting 'covered professional services'".).

[21]      *See* Wolfston Rep. Ex. 3, ¶ 11, ECF No. 192-3 (citing https://data.cms.gov/provider-summary-by-type-of-service/medicare-physician-other-practitioners/medicare-physician-other-practitioners-by-provider/data/2019 ("CMS spreadsheet"); *see* CMS spreadsheet col. X ("Tot_Mdcr_Pymt_Amt") (the input for Ms. Wolfston's spreadsheet); *id.* col. AM ("Med_Mdcr_Pymt_Amt"); *see also id.* col. AE ("Drug_Mdcr_Pymt_Amt," which is equal to the difference between columns X and AM); CMS, Medicare Physician & Other Practitioners – by Provider Data Dictionary, Medicare Physician & Other Practitioners - by Provider Data Dictionary, https://data.cms.gov/sites/default/files/2025-03/972d9120-e10d-4281-b637-1a0d917f7503/MUP_PHY_RY25_20250312_DD_Prvdr_508.pdf (defining these datapoints).

is common—it affects approximately 11,000 NPIs contained in her spreadsheet, collectively accounting for approximately $1 billion in the Medicare payment data (which does not breakdown individual NPI billings by practice). But Ms. Wolfston's model does not account for it in any way.

## ARGUMENT

For expert testimony to be admissible under Rule 702, it must be reliable and relevant. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). "Opinions derived from erroneous data are appropriately excluded." *United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997). Courts are also tasked with excluding expert testimony that applies a legally incorrect assumption in calculating damages, as such errors also render the damages opinions unreliable and irrelevant. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1029 (11th Cir. 2014). Here, Ms. Wolfston's damages opinions should be excluded as both unreliable and irrelevant under the standards set forth by Rule 702 and *Daubert* because she fails to account for automatic and nondiscretionary MIPS exemptions.

*First*, Ms. Wolfston's damages model is premised on the legally and factually incorrect assumption that clinicians would not have received Automatic Exemptions under the PI category in a world in which eCW's EHR was not certified. This assumption is directly contradicted by the actual operation of the MIPS program, which provides for Automatic Exemptions for clinicians in the categories described above. In such circumstances, clinicians would not have needed to take any affirmative steps to receive an Automatic Exemption; rather, CMS would have automatically applied the exemption to any clinician who failed to submit the requisite PI documentation, as would have been the case if the clinician's EHR software lacked CEHRT status. By failing to account for these exemptions, Ms. Wolfston's model vastly overstates the number of clinicians who would have been subject to a reduced incentive payments.

***Second***, Ms. Wolfston's damages model also fails to account for the Covid-19 related Automatic EUC.  As with the Automatic Exemptions, Ms. Wolfston's damages calculation includes clinicians who would have ***automatically*** received a Covid-19-related EUC exception—and thus, reweighting—with no action required from the clinicians.  Again, by not accounting for this automatic EUC exemption, Ms. Wolfston's model overstates the number of clinicians who would have been subject to reduced incentive payments.

***Third***, Ms. Wolfston's damages model also fails to account for the distinct treatment of clinicians participating in APMs.  Ms. Wolfston's model does not distinguish between clinicians who were affiliated with APMs and clinicians who were not.  Her model therefore lacks a factual basis for assuming overpayments were made to individual clinicians participating in APMs.

***Fourth***, because of the fundamental error of using total CMS payments rather than payments attributed to Covered Professional Services, Ms. Wolfston's damages model overstates the payment amounts subject to MIPS payment adjustments.  Nor does Ms. Wolfston account for clinicians who billed Medicare at multiple practices.  Both omissions further overstate damages.

These fundamental flaws render Ms. Wolfston's opinions unreliable.  Moreover, because Ms. Wolfston's model is based on a legally incorrect premise, it is also irrelevant to the issues the jury must decide.  Thus, Ms. Wolfston's damages opinions should be excluded in their entirety.[22]

## CONCLUSION

WHEREFORE, eCW respectfully requests that the Court issue an order excluding the Ms. Wolfston's damages model.

---

[22]    Further, at a minimum, Drs. Baker and Grabowski, should also be permitted to opine on these matters, including the hardship exception that the Court previously addressed directly.  It remains Ms. Wolfston's burden to account for the but-for world, including what clinicians would have done, and Drs. Baker and Grabowski are entitled to raise questions and challenge her assumptions without being required to prove their alternative scenarios are more likely than not.  *See Navelski v. International Paper Company*, 244 F. Supp. 3d 1275, 1302-03 (N.D. Fla. 2017) (discussing the function of a rebuttal expert).

Dated: August 25, 2025                                    Respectfully submitted,

                                                           */s/ Duke R. Groover*
                                                           Duke R. Groover
                                                           Georgia Bar No. 313225
                                                           dgroover@jamesbatesllp.com
                                                           Donia Michel Meier
                                                           Georgia Bar No. 257282
                                                           dmeier@jamesbatesllp.com
                                                           JAMES BATES BRANNAN GROOVER
                                                           LLP
                                                           231 Riverside Drive
                                                           Suite 100
                                                           Macon, Georgia 31201
                                                           Tel: (478) 742-4280
                                                           Fax: (478) 742-8720

                                                           Geoffrey M. Wyatt (*pro hac vice*)
                                                           geoffrey.wyatt@kirkland.com
                                                           KIRKLAND & ELLIS LLP
                                                           1301 Pennsylvania Avenue, N.W.
                                                           Washington, D.C. 20004
                                                           Tel: (202) 389-3393

                                                           Jessica Davidson (*pro hac vice*)
                                                           jessica.davidson@kirkland.com
                                                           KIRKLAND & ELLIS LLP
                                                           601 Lexington Avenue
                                                           New York, New York 10022
                                                           Tel: (212) 446-4800

                                                           Allison M. Brown (*pro hac vice*)
                                                           alli.brown@kirkland.com
                                                           KIRKLAND & ELLIS LLP
                                                           2005 Market Street, Suite 1000
                                                           Philadelphia, Pennsylvania 19103
                                                           Tel: (215) 268-5000

                                                           Aaron Katz (*pro hac vice*)
                                                           akatz@aaronkatzlaw.com
                                                           AARON KATZ LAW LLC
                                                           399 Boylston Street, 6th Floor
                                                           Boston, Massachusetts 02116
                                                           Tel: (617) 915-6305

11

Richard T. Bernardo (*pro hac vice*)
richard.bernardo@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (917) 777-2000

*Counsel for Defendant eClinicalWorks, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 25 2025, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

13