# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*, | No. 5:18-CV-382 |
| Plaintiffs, | Honorable Marc T. Treadwell |
| v. | |
| eCLINICALWORKS, LLC, | |
| Defendant. | |

**DEFENDANT eCLINICALWORKS LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE RELATORS FROM INCLUDING NON-ECW USERS IN THEIR PROPOSED DAMAGES CALCULATION**

**TABLE OF CONTENTS**

**INTRODUCTION**................................................................................................................1

**BACKGROUND** ................................................................................................................2

**ARGUMENT**......................................................................................................................6

    I.      The Court Should Preclude Ms. Wolfston From Proffering at Trial Any Damages Figure That Includes Clinicians Who Were Not Users of eCW's EHR Software Or Who Practiced At Facilities Where eCW's EHR Software Was Not Used..........................................................................................7

    II.     The Court Should Preclude Ms. Wolfston From Inflating Her Damages Figure by Counting the Same Supposed Medicare "Overpayments" Multiple Times...................................................................................................7

**CONCLUSION** ..................................................................................................................8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..................................................................................................6

*United States v. City of Miami, Fla.*,
    115 F.3d 870 (11th Cir.1997) ..................................................................................6

*Irvine v. Murad Skin Research Lab.*,
    194 F.3d 313 (1st Cir. 1999) ...................................................................................6

**Rules**

Fed. R. Evid. 702 ..................................................................................................6, 7

Defendant eClinicalWorks, LLC ("eCW") submits this motion pursuant to the schedule for motions addressing admissibility issues relating to the quantification of damages set forth in the Court's Scheduling and Discovery Order, ECF No. 100, § V.C (the "Schedule").[1]

## INTRODUCTION

When it comes to calculating "damages" in this case, there is at least one fundamental tenet that Relators cannot plausibly deny: if a clinician was not a user of eCW's EHR software, then any Merit-based Incentive Payment System ("MIPS") payment adjustments that particular clinician received are completely irrelevant to any damages calculation. Shockingly, however, the single damages figure of ~$214 million that Relators' expert Emily Wolfston has proposed for "method 1" of her damages analysis appears to include *more than $125 million* in Medicare "overpayments" received by clinicians who *were not users of eCW's EHR software*. "Method 2" of her damages analysis includes the same exact error, and the error impacts the single damages figure for "method 2" to at least the same proportional extent. By including non-eCW users in her supposedly "conservative" damages calculation, Ms. Wolfston therefore has inflated her final damages figures by more than 300%.

We recently discovered this egregious error—an error that has all the hallmarks of a purposeful misrepresentation—in Ms. Wolfston's damages analysis during our preparation for trial. How did this error make its way into Ms. Wolfston's analysis? The answer is contained in Exhibit 3 to Ms. Wolfston's expert report. That exhibit describes the methodology that Relator Christopher Wheeler—whom Ms. Wolfston put in charge of collecting the Medicare payment data that served as the guts of her damages calculation—used to identify the Medicare payments that

---

[1] Under Section § V.C of the Schedule, "*Daubert* motions challenging an expert proffer pertaining solely to the quantification of alleged damages shall be filed by no later than 60 days after the Court rules on dispositive motions." (ECF No. 100.)

MIPS-attesting eCW users received during the 2018 to 2021 time period. The methodology that Mr. Wheeler concocted to generate his data set had preposterous results. Rather than generate an accurate dataset for Ms. Wolfston, Mr. Wheeler's methodology caused Ms. Wolfston to calculate a final damages figure that was composed primarily of MIPS positive payment adjustments that *non-eCW users* received. If Mr. Wheeler's goal was to artificially inflate Ms. Wolfston's final damages figure at the expense of its reliability, he certainly succeeded.

We considered waiting until our cross-examination of Ms. Wolfston at trial to unveil the error and maximize the impact of our discovery. But in the spirit of streamlining trial, we are alerting the Court to the issue now, so that the Court can preclude Ms. Wolfston from uttering to the jury a damages figure that is, without any doubt, factually and legally unsupportable. We also seek leave to re-depose Mr. Wheeler to understand his reasons for crafting a methodology that produced such an inflationary effect on Ms. Wolfston's damages estimates.

## BACKGROUND

During fact discovery, we provided Relators a comprehensive list of all U.S.-based clinicians who used eCW's software during the relevant time period. This comprehensive list was a ~180,000 row spreadsheet that identified every such clinician by name and his or her National Provider Identifier ("NPI") number. The list also identified the date each clinician started as an eCW user, as well as the date on which the clinician upgraded to Version 11 of the eCW EHR software (the version relevant to this case).

The entire purpose of providing Relators this comprehensive eCW user list was so that Relators' damages expert could determine on a clinician-by-clinician basis from CMS data (1) the Medicare payments that any eCW-using clinician received during the relevant time period, and (2) whether that eCW-using clinician received any MIPS positive payment adjustments based on his or her Promoting Interoperability scores.

Ms. Wolfston delegated to Mr. Wheeler the task of collecting the relevant Medicare payment and MIPS scoring data for clinicians who used eCW's EHR software during the relevant time period. Ms. Wolfston stated in her report that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Wolfston Rep. ¶ 22, ECF No. 192-3.) He also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶ 24.) Ms. Wolfston asserted in her report that Mr. Wheeler ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in order to ▮▮▮▮▮▮▮▮▮▮▮ including MIPS positive payment adjustments. (*Id.*) Ms. Wolfston repeatedly asserted in her report that she and Mr. Wheeler ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

To ensure that Ms. Wolfston's damages analysis was not tainted with irrelevant Medicare data, Mr. Wheeler needed to create a Medicare payment dataset that included only Medicare payments received by clinicians who actually were eCW users. This should have been simple, ministerial task for Mr. Wheeler to perform—he merely needed to pull the Medicare payment data for the clinicians listed on the comprehensive eCW user list that we provided to Relators during fact discovery. Instead, however, Mr. Wheeler chose to "iterate" his own proprietary "eCW customer list."[2] Though exhibit 3 to Ms. Wolfston's report is opaque in describing precisely what

---

[2] Mr. Wheeler's choice might charitably be described as inexplicable. Indeed, when the parties met and conferred on the customer list provided by eCW, counsel for eCW made clear that Relators needed to look at the *provider* NPI information, not *practice* information. To make certain the point was not lost, eCW's counsel sent a cover letter with the production that reiterated: "*As we previously discussed*, it is our understanding that eCW has

3

Mr. Wheeler did, it appears that Mr. Wheeler decided that if *any clinician* affiliated with a particular institution was a user of eCW's EHR software, then *every clinician* affiliated with that institution was a user of eCW's EHR software. But that is not how the world of healthcare works.

Take a clinician who sees patients in a private practice but also works at a large hospital, for example. If that clinician uses eCW's EHR software in private practice but he hospital uses another system, like Epic, it would make no sense to calculate an "overpayment" on behalf of the thousand hospital clinicians and attribute it to the clinician who uses eCW's EHR in private practice. That amount would dwarf any amount actually attributable to the clinician.

But that is precisely what Mr. Wheeler did. To illustrate, the comprehensive eCW user list that we provided to Relators included a nurse practitioner named Madeleine Lloyd. Ms. Lloyd is a behavioral health specialist. According to CMS's QPP data, Ms. Lloyd is affiliated both with the New York University College of Nursing and also a community health center organization called The Institute of Family Health. Mr. Wheeler apparently decided that, because Ms. Lloyd was an eCW user, he also should count as "eCW users" more than 1,000 *other clinicians* who Mr. Wheeler determined were affiliated somehow with New York University in 2019. But based on our preliminary review of several dozen of NPIs for 2019, *none* of these 1,000+ other clinicians appeared on the comprehensive eCW user list, *none* are listed as users of eCW's EHR software in the ONC's publicly available MIPS attestation data,[3] and *none* were eCW's users. Instead, NYU

---

NPI numbers *by provider*, not by customer." Letter from Amy St. Amand to Robert H. Snyder, Dec. 20, 2023 (Ex. C) (emphasis added). It is possible, however, that Mr. Wheeler chose to "iterate" his own proprietary eCW user list because he saw that the comprehensive list of *actual* eCW users that we provided during discovery would not generate a high-enough damages figure for his liking.

[3]    *See* ASTP, Certified Health Information Technology Reported by Clinicians for Promoting Interoperability Performance, https://www.healthit.gov/data/datasets/certified-health-information-technology-reported-clinicians-promoting (visited Aug. 22, 2025) (at the "Download" link). The .csv files available via link from this website identify which EHR software any particular clinician (identified by NPI number) used to attest to MIPS.

uses EPIC—indeed, **Ms. Lloyd herself attested to use of Epic**.[4]  Nevertheless, based on the faulty assumption that every one of these 1,000+ clinicians were users of eCW's EHR software, Ms. Wolfston attributed to these clinicians **~$11 million** in supposed Medicare "overpayments" for her "method 1" damages figure and **~$12 million** for "method 2" damages figure.  Ms. Wolfston cannot dispute that this what she did: the calculations are shown in column X of rows 2, 6, 7, 8, and 18 of exhibit 4 to her original report, as well as the corresponding cells of the spreadsheets she attached as exhibit A to her supplemental report.  Ms. Wolfston also has no basis to assert that each of these 1,000+ New York University clinicians were eCW users.

This mistake was neither isolated nor trivial.  To the contrary, the same mistake occurred repeatedly throughout Ms. Wolfston's damages calculation, and it massively inflated her final proposed single damages figures.  Based on preliminary analysis we have performed to date, Ms. Wolfston's proposed single damages figure of ~$214 million for her "method 1" includes **more than $125 million** in supposed "overpayments" that the Medicare program made to thousands of clinicians who **were not eCW users**.[5]  The error inflates Ms. Wolfston's "method 2" single damages figure to at least the same proportional extent.  The "overpayments" that Ms. Wolfston attributes to **non-eCW clinicians** includes tens of millions of dollars in MIPS positive payment adjustments received by clinicians affiliated with large academic hospitals, non-profit health systems, and corporate physician groups—such as Northwestern Medical (~$9 million), Washington University (~$6 million), Main Line Healthcare (~$4 million), and Baptist Memorial

---

[4]     *See id.* (.csv file "clinician-certified-technology-pi-2019-1.csv," rows 63,179-82, col. L); https://chpl.healthit.gov/#/resources/cms-lookup (searching CEHRT ID found for the NPI for 2019 at https://data.cms.gov/quality-of-care/quality-payment-program-experience/data/2019).

[5]     If the analysis is further narrowed only to version 11 for the reason set forth in a separate brief eCW has filed today, the overstatement is even more extreme, and the estimated damages under Ms. Wolfston's method 1 reduce to ***$40,314,227***. (Expert Declaration of Laurence Baker ("Baker Decl."), August 25, 2025, ¶ 10 (Ex. A).)

Medical Group, Inc. (~$820,000)—that are widely known to use Epic or Cerner as their EHR software.[6] As the attached PowerPoint exhibit illustrates using four cases from some of these institutions, all Ms. Wolfston and Mr. Wheeler had to do was look up these clinicians' NPI numbers in the ONC's public use files to see that the clinicians ***did not use eCW's EHR software***. (*See* Ex. B.)

The grievous, inexcusable methodological error that infects Ms. Wolfston's damages, though buried within the thousands of rows in her spreadsheets, is glaringly obvious once exposed. The materials she appended to her report show beyond any doubt that her final damages calculation includes thousands of clinicians who were not eCW users and tens of millions of dollars in supposed "overpayments" that the Medicare program made to them. That being said, determining the precise magnitude of the supposed "overpayments" that Ms. Wolfston wrongly included in her final damages figure is a painstaking exercise that remains ongoing. So far, we believe we have identified ***at least $125 million*** in supposed "overpayments" that Ms. Wolfston attributes to ***non-eCW users***. To put it mildly, this is not a trivial discrepancy.

## ARGUMENT

For expert testimony to be admissible under Rule 702, it must be reliable and relevant. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). An expert opinion that relies on factually incorrect data causes the expert's opinion to be unreliable and irrelevant *per se*. *See, e.g.*, *United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997) ("Opinions derived from erroneous data are appropriately excluded."); *Irvine v. Murad Skin Research Lab.*, 194 F.3d 313, 320-21 (1st Cir. 1999) (holding that the district court should have

---

[6] Northwestern: https://www.feinberg.northwestern.edu/research/research-tools/clinical-researcher-faq.html; Washington University: https://it.wustl.edu/items/accessing-epic/; Main Line: https://www.epic.com/epic/post/main-line-health-embarks-on-transformational-journey-with-epic/; Baptist Memorial: https://www.baptistonline.org/news/baptist-reaches-important-milestone-in-electronic-health-record-adoption.

6

excluded as unreliable an expert's damages calculation that was based on the demonstrably inaccurate "assumption that Murad products represented 100% of [Irvine's] sales of products and services throughout the entire year").

**I.   THE COURT SHOULD PRECLUDE MS. WOLFSTON FROM PROFFERING AT TRIAL ANY DAMAGES FIGURE THAT INCLUDES CLINICIANS WHO WERE NOT USERS OF ECW'S EHR SOFTWARE OR WHO PRACTICED AT FACILITIES WHERE ECW'S EHR SOFTWARE WAS NOT USED.**

In this case, the jury clearly will not be permitted to issue a damages award that is based on Medicare payments received by clinicians who *did not use* eCW's EHR software and were not eCW users during the relevant time period. That, however, is precisely what Ms. Wolfston did to calculate the single damages figure that she intends to proffer to the jury. This renders her damages figure patently unreliable and irrelevant under Rule 702. The Court should preclude Ms. Wolfston from proffering to the jury a damages figure that is demonstrably (and massively) inflated by the inclusion of supposed "overpayments" that the Medicare program made to clinicians who never used eCW's EHR software and were not eCW users.

**II.  THE COURT SHOULD PRECLUDE MS. WOLFSTON FROM INFLATING HER DAMAGES FIGURE BY COUNTING THE SAME SUPPOSED MEDICARE "OVERPAYMENTS" MULTIPLE TIMES.**

Ms. Wolfston's supplemental report contains another error that, if she is permitted to testify at trial, the Court should require her to correct: in several instances in "method 2" of her analysis, she double-counts, triple-counts, and even *quintuple-counts* supposed Medicare "overpayments" in her final damages calculation. Examples include the following:

- For "Performance Year 2019," Ms. Wolfston attributes $3,505,997.82 in "overpayments" to a medical practice called Hillside Medical Care PLLC and then also attributes that *same exact overpayment* to a medical practice called NYC-Metro Physician Services, PC.

- For "Performance Year 2018," Ms. Wolfston attributes $2,524,776.96 in "overpayments" to NYU College of Nursing Facility Practice and then also attributes that *same exact overpayment* to a physician named Rany Condos, M.D.

7

- and then *again* to a one-physician cardiovascular practice called Atlantic Cardiovascular Associates.[7]

- For "Performance Year 2018," Ms. Wolfston attributes $2,465,847.52 in "overpayments" *five separate times*—once each to Planned Parenthood of Greater New York, Hillside Medical Care PLLC, Harmony Cardiovascular Care PC, the Center for Comprehensive Health Practice, and AMS Primary Medical Care Housecalls PC.

Just these three examples (which are illustrative, not remotely exhaustive) represent $18,418.941.80 in clear, obvious, indisputable calculation errors.

These counting errors are a consequence of the same methodological flaw that caused Ms. Wolfston to include non-eCW users in her damages figures—the reason she counts the same "overpayments" multiple times is because she is calculating the supposed "overpayments" at an *institution level* rather than at the *eCW-user level*. These counting errors are thus emblematic of the general lack of reliability in Ms. Wolfston's methodology of calculating damages, underscore her lack of expertise in the field, and beg the question of whether Relators' damages expert is really Ms. Wolfston, or whether Ms. Wolfston is just an unthinking mouthpiece for Mr. Wheeler in his effort to artificially inflate purported damages.

## CONCLUSION

Plainly, any methodology that can ascribe *$11 to $12 million* in Medicare "overpayments" to a single nurse practitioner is not reliable and has no place at trial. For these reasons, eCW respectfully requests that the Court issue an order precluding Ms. Wolfston from proffering her damages opinion at trial. We further request that the Court grant leave to re-depose Mr. Wheeler to understand his reasons for crafting a methodology that produced such an inflationary effect on Ms. Wolfston's damages estimates.

---

[7] Notably, and almost certainly not unrelated, Rany Condos has an affiliation with NYU according to the QPP website. *See* CMS, QPP Participation Status, https://qpp.cms.gov/participation-lookup?npi=1053302117&py=2021.

Dated: August 25, 2025 Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
Donia Michel Meier
Georgia Bar No. 257282
dmeier@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Jessica Davidson (*pro hac vice*)
jessica.davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

        Richard T. Bernardo (*pro hac vice*)
        richard.bernardo@skadden.com
        SKADDEN, ARPS, SLATE, MEAGHER &
        FLOM LLP
        One Manhattan West
        New York, NY 10001
        Tel: (212) 735-3000
        Fax: (917) 777-2000

        *Counsel for Defendant eClinicalWorks, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 25, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720