UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NUMBER 5:18-CV-382 |

# RELATORS' AFFIRMATIVE MOTIONS IN LIMINE AND MEMORANDUM IN SUPPORT

Robert H. Snyder, Jr.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
Hannah D. Amanuel
  Georgia Bar No. 922743
  hannah@cannellasnyder.com
Alexandra "Sachi" Cole
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
Devin L. Mashman
  Georgia Bar No. 257588
  devin@cannellasnyder.com
Chase Lyndale
  Georgia Bar No. 183762
  chase@cannellasnyder.com
**CANNELLA SNYDER LLC**
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Brian P. Adams
  Georgia Bar No. 142474
  brian@brianadamslaw.com
Mary Beth Hand
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com
**ADAMS LAW FIRM**
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

Anna Green Cross
  Georgia Bar No. 306674
  anna@crosskincaid.com
Meredith Kincaid
  Georgia Bar No. 148549
  meredith@crosskincaid.com
**CROSS KINCAID BASKAM LLC**
315 W. Ponce de Leon Ave., Ste. 715
Decatur, Georgia 30030
(404) 948-3022

*COUNSEL FOR RELATORS/PLAINTIFFS*

## Table of Contents

**ARGUMENT** ................................................................................................................ 1

    1.    **Evidence related to the *Delaney* settlement, including the amount, is admissible** ...... 1

    2.    **Relators can refer to eCW's discovery misconduct and the Court's sanctions ruling at trial** ................................................................................................................ 5

    3.    **The Court may take judicial notice of MIPS data exhibits** ........................................ 9

    4.    **Quandary Peak's reports and assessments of eCW are admissible** ........................... 10

    5.    **eCW may designate only one corporate representative in accordance with Rule 615 of the Federal Rules of Evidence** ........................................................................ 12

## ARGUMENT

Relators ask the Court to enter an order that the following evidence will be admissible at the upcoming trial of this case.[1]

**1. Evidence related to the *Delaney* settlement, including the amount, is admissible**

In May 2017, "eCW settled an FCA lawsuit alleging that an earlier version of eCW's software failed to meet the certification criteria of earlier ONC Certification editions." Summary Judgment Order at 9, Doc. 345, citing *U.S. ex rel. Delaney v. eClinicalWorks, LLC*, No. 2:15-cv-95 Doc., 63-107 (D. Vt. May 1. "As part of the settlement, eCW entered a five-year Corporate Integrity Agreement ("CIA") with the government on May 30, 2017, and agreed to pay approximately $155 million." *Id.* (hereinafter the "*Delaney* settlement"). The fact that eCW entered into the *Delaney* settlement, the government's *Delaney* allegations, the amount of the settlement, and the CIA obligations that resulted from the settlement are admissible evidence.

eCW agrees that some information about the *Delaney* settlement is admissible and has agreed to stipulate that it "settled a case in which the government was a party, called the *Delaney* case, about an earlier version of eCW's EHR software," and that "at the same time, eCW also entered into a five-year Corporate Integrity Agreement…." *See* Parties' Proposed JPTO, Ex. A, ¶¶ 25-26. eCW agreed to those stipulations because its wants to rely on the CIA and its obligation that eCW hire a SQOO to support its purported "government knowledge" and materiality defenses.[2] But at the same time, eCW seeks to exclude reference to the fact that

---

[1] Motions *in limine* may be used to exclude *or* admit evidence in advance of trial. *See Bhoodai v. Emps. Assurance Co.*, No. 3:19-CV-111 (CAR), 2022 WL 4591239, at *15 (M.D. Ga. Sept. 29, 2022)("A motion in limine is a motion to exclude *or* admit 'evidence before the evidence is actually offered.'") (emphasis added); § 5037.10 The Motion in Limine, 21 Fed. Prac. & Proc. Evid. § 5037.10 (2d ed.) ("[T]he motion in limine can be used to get a ruling that evidence is admissible.").

[2] eCW also intends to rely on *Delaney* generally to support its public disclosure defense. As argued in Relators' trial brief, public disclosure is not a jury issue.

*Delaney* was a False Claims Act case alleging eCW fraudulently obtained certification of a previous version, and that the settlement was for $155 million. eCW should not have it both ways.

Instead, the full facts of the *Delaney* settlement are admissible because they are relevant to several disputed issues. Most importantly, the *Delaney* settlement is relevant to show that eCW had actual notice that its certification process was deeply flawed and had resulted in significant allegations of fraud. In addition to the allegation that eCW cheated on its certification testing, the government also alleged in *Delaney* that:

> -- "Certification testing does not confirm that each criteria and standard is satisfied in full and under every conceivable scenario.";
> -- "ECW could -- and did -- pass certification testing without fully implementing all the technological changes required for its 2014 Edition certification.";
> -- "ECW released software without adequate testing and overly relied on customers to identify bugs and other problems."
> --"Some bugs and problems -- even some identified as "critical" or "urgent" -- persisted on ECW's bug list for months and even years."; and
> --"ECW lacked reliable version control, so problems addressed in one version of the software or for one particular user could reappear in later versions or remain unaddressed for other customers."

Doc. 218-40 (*Delaney* Compl.) ¶¶ 35-37, 42-43, 56. As a result of those issues and others, the government alleged that "eCW falsely represented … that its software complied with the requirements for certification," and that if eCW had "disclosed that its software did not meet the certification criteria, it would not have been certified and its customers would not have been eligible for incentive payments." *Id.* ¶¶ 3, 4, & 6.

In short, by no later than May 2017, eCW had actual notice that the government believed its certification processes and procedures had resulted in the company fraudulently obtaining certification of its software and had caused the submission of numerous false claims. Relators will present extensive evidence at trial that despite those allegations, and the massive settlement

2

resulting therefrom, eCW did not correct the many issues alleged in *Delaney* but instead continued doing the very same things (and worse).

Allowing eCW to only admit that it settled some case involving the government in 2017 completely robs the *Delaney* settlement of its proper context and deprives Relators of important evidence that helps prove their claims. The *Delaney* settlement was not an administrative slap on the wrist involving a *de minimis* payment that eCW could write off as small cost of doing business. Instead, it ***should*** have been a stark instruction that the company needed to completely change the way it did business. eCW's refusal to do so is highly relevant evidence of its continued fraudulent intent and of its express knowledge that its certification and attestation processes were reckless or deliberately ignorant.

The *Delaney* settlement is not improper character evidence. Evidence of other wrong acts is admissible under Federal Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir. 2001) (emphasis added; internal quotation marks omitted); *see e.g. United States v. Garries*, 452 F. App'x 304, 308 (4th Cir. 2011) (admitting conviction for wire fraud in action concerning forging and altering of loan documents as "probative of his intent and knowledge on the various mail and wire fraud counts."). District courts have allowed parties to introduce evidence of prior wrongs or acts to support claims of retaliation,[3] predisposition,[4] and notice.[5] *See United States v.*

---

[3] *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (used to prove intent to discriminate and retaliate); *Guijosa-Silva v. Wendell Roberson Farms, Inc.*, No. 7:10-CV-17 HL, 2012 WL 2990016, at *4 (M.D. Ga. July 20, 2012) (allowing evidence of past settlements to prove intent).
[4] *United States v. Cervantes*, 706 F.3d 603, 616 (2013) (prior attempted armed home invasion probative to rebut entrapment defense because it was similar to charged act).
[5] *C.A. Associates v. Dow Chem. Co.*, 918 F.2d 1485, 1489 (10th Cir. 1990) (Federal courts "routinely permit

*Queen*, 132 F.3d 991, 996 (4th Cir. 1997) ("Once an act is assumed to be done, the prior doing of other similar acts is useful as reducing the possibility that the act in question was done with innocent intent." (internal quotation marks and alteration omitted)).[6]

Evidence of eCW's prior acts also is admissible to prove that eCW's routine practice included inadequate testing, software releases without proper quality checks, and an overreliance on customer reports to locate and fix issues in the software. Rule 406 provides for the admission of prior acts where doing so establishes routine practice. Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."). There is no precise formula for when an organization's practices become so consistent as to become routine or habitual, but courts have long looked at whether evidence reflects "a systematic response to specific situations . . . ." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1285 (11th Cir. 2008). When, as here, prior incidents are "'sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any, of prejudice and confusion, … they are admissible to establish a pattern or habit.'" *Id.* at 1285 (quoting *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1533 (11th Cir. 1985), internal citations omitted).

Finally, the *Delaney* settlement does not run afoul of Rule 408's prohibition on the admissibility of settlements to prove the "validity or amount of a disputed claim." Fed. R. Evid. 408. That is because Relators are not seeking to argue the *Delaney* settlement proves that eCW

---

introduction of substantially similar acts or occurrences in product liability actions to demonstrate the existence of a defect, to prove notice, or to refute testimony given by defense witnesses."); *Weeks v. Remington Arms Co.*, 733 F.2d 1485, 1491 (11th Cir. 1984) ("Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation.").

[6] Moreover, "[t]o the extent that such evidence is offered to prove notice, and is not offered for the truth of the matter asserted in the complaint, it is not hearsay." *Christiansen v. Wright Med. Tech. Inc. (In re Wright Med. Tech. Inc.)*, 2015 WL 6690046, at *7 (N.D. Ga. Oct. 30, 2015).

4

engaged in the actions alleged in *Delaney*. *See Smith v. NBC Universal*, No. 06 CIV. 5350 (SAS), 2008 WL 483604, at *4 (S.D.N.Y. Feb. 22, 2008) ("Facially, the Rule does not bar the introduction of a settlement in any action except the one that was resolved by that settlement."). Instead, Relators seek to present the evidence to prove notice, knowledge, lack of mistake, and motive. Like Rule 404(b), Rule 408(b) allows the Court to admit settlement evidence "for another purpose." Fed. R. Evid. 408(b); *see Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) (admitting evidence of similar settlements to prove intent and lack of mistake); *United States v. Jorgensen*, No. CRIM04-169(PAM/RLE), 2004 WL 1774529, at *3 (D. Minn. Aug. 8, 2004) (admitting evidence of settlement agreement to show notice); *D.J.'s Diamond Imports, LLC v. Silverman Consultants, LLC*, No. CIV.A. WMN-11-2027, 2014 WL 2114844, at *2 (D. Md. May 20, 2014) ("The Court will deny this motion as the Settlement Agreement's potential relevancy outweighs any potential prejudice. The agreement undeniably has some relevance to the factual basis of Plaintiffs' remaining claim")

In short, the *Delaney* settlement is highly relevant to several issues in this case and any purported prejudice does not substantially outweigh its probative value.

## 2. Relators can refer to eCW's discovery misconduct and the Court's sanctions ruling at trial

As the Court knows, eCW has concealed critical evidence and misstated facts throughout discovery. Doc. 188 (sanctioning eCW). Defendants like eCW who have concealed evidence and been caught frequently seek to exclude evidence or argument related to their misconduct as mere "discovery disputes." eCW has indicated that it intends to do so here. Relators should be allowed to present evidence and argument at trial about eCW's discovery abuses.

The Court is well aware of eCW's failure to produce AppSec Jira tickets and the SQOO settlement agreement. After extensive written presentations and a hearing, the Court found that

5

eCW's failure to produce the AppSec tickets "if not intentional, was reckless." Doc. 188. In addition to ordering eCW to pay Relators' attorneys' fees and expenses, the Court also ordered eCW to produce documents on its privilege log related to the SQOO settlement agreement. *Id*. Relators have also renewed their motion to exclude eCW expert Oren Wortman based on repeated failure to produce his complete expert file. Docs. 358 and 371. eCW's attempts to conceal the AppSec Jira tickets, the SQOO settlement agreement, and the foundation to its expert's opinions are relevant to the issues in this case and should be admitted.

Courts routinely allow parties to discuss the underlying facts of discovery disputes, even when, unlike here, sanctions are denied. *See Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1305 (S.D. Fla. 2015) (allowing plaintiff to present facts and arguments regarding underlying discovery dispute); *E.E.O.C. v. Suntrust Bank*, No. 8:12-CV-1325-T-33, 2014 WL 1364982, at *11 (M.D. Fla. Apr. 7, 2014) (refusing to grant sanction but allowing plaintiffs to present evidence of defendant's conduct that led to request for sanctions); *Clean Sweep Prods., Inc. v. Champions of Calhoun, LLC*, No. 4:20-CV-00227-WMR, 2022 WL 22865306, at *2 (N.D. Ga. Nov. 29, 2022) (denying party's requested sanction of informing the jury about discovery dispute because dispute could be raised with jury regardless of a court order as admissible admissions of party opponent).

eCW's discovery misconduct is relevant to its credibility, its knowledge, and to its intent. The AppSec tickets are some of the most critical evidence in the case of eCW's notice of security vulnerabilities that rendered the software uncertifiable. eCW's claim that it simply "forgot" about those 12,000 security issues is highly relevant to the company's credibility, because no-one could possibly believe that explanation. Even if eCW's "we forgot" claim could be believed, that claim itself is evidence that eCW's internal processes and systems are so

6

fundamentally flawed that they reflect a reckless or deliberate ignorance of the truth that supports a finding of knowledge/scienter under the False Claims Act. 31 U.S.C. § 3729(b)(1); *United States v. SuperValu Inc.*, 598 U.S. 739, 749 (2023) (FCA's reckless disregard standard addresses "the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted.").

      Evidence of eCW's credibility, knowledge, and intent is especially important because "plaintiffs cannot readily gain access to the minds of defendants" and therefore, "plaintiffs usually must rely on circumstantial evidence and inferences to allege and establish a mental element." *Sluder v. Amatucci*, No. 4:18-CV-284-RH/MJF, 2020 WL 4804841, at *3 (N.D. Fla. July 17, 2020), report and recommendation adopted, No. 4:18CV284-RH-MJF, 2020 WL 4803272 (N.D. Fla. Aug. 18, 2020); *see also Broussard-Wadkins v. Maples,* 895 F. Supp. 2d 1159, 1198 (N.D. Ala. 2012)*, aff'd sub nom. Broussard v. Maples,* 535 F. App'x 825 (11th Cir. 2013)*(*"Indeed, it is axiomatic that mental states such as "knowledge" must almost always be proven by circumstantial evidence."). In fact, there is almost never direct evidence of intent. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 1616725, at *11 (N.D. Ill. Apr. 4, 2018). However, direct evidence of intent is not needed and "circumstantial evidence will suffice." *Id.* ( "Supreme Court has repeatedly stressed that circumstantial evidence is often more certain, satisfying and persuasive than direct evidence"); *see also Alternative Materials, LLC v. Monroe*, No. 5:20-CV-239-AW/MJF, 2022 WL 2484566, at *8 (N.D. Fla. June 1, 2022), report and recommendation adopted sub nom. *Alternative Materials, LLC v. TCH Constr. Grp., Inc.*, No. 5:20-CV-239-AW-MJF, 2022 WL 2467222 (N.D. Fla. July 5, 2022) ("establishing intent frequently relies on the use of circumstantial evidence");

*Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1058 (9th Cir. 1983) ("intent is, for practical reasons, more commonly proven through circumstantial evidence").

eCW's attempt to conceal the secret SQOO settlement agreement is also relevant to its credibility and to disproving its claims that it fully cooperated with the SQOO, allowed the SQOO to work unhindered, and provided full access to the SQOO. As a result of the settlement agreement, the team leader and two other team members directly involved in security issues, and in responding to the DoJ's inquiries, were removed and placed under a gag order that was debated at length by eCW's lawyers. If, as eCW now claims, the settlement agreement was just a human resources related dispute there would have been no reason for eCW to conceal the agreement from Relators and to require that it not be disclosed to the government.

Finally, eCW's continued and ongoing attempts to conceal the work done by eCW's expert consultants at Sygnia case are relevant to both Mr. Wortman's and eCW's credibility. Mr. Wortman has now admitted to misleading the Court about the work Mr. Litwak did and "withdrawn" one of his opinions as a result. Doc. 363 (eCW's Resp. in Opp. To Relators' Supp. Brief to Exclude Mr. Wortman) at 4, n.5. In addition, several of Mr. Litwak's opinions contradict both Mr. Wortman's and eCW's assessment of the vulnerabilities discovered by Relators. Doc. 358 (Relators' Supp. Brief to Exclude Mr. Wortman). Relators should be allowed to present evidence and argument that eCW sought to conceal the work done by its own experts as further proof that its experts' opinions are baseless.

Relators do not intend to conduct a minitrial of the sanctions issues, but they should be allowed to offer evidence and argument that eCW's attempts to conceal critical evidence in this case is relevant to its credibility, its alleged defenses, and its continued intent to defraud.

8

3. **The Court may take judicial notice of MIPS data exhibits**

The Centers for Medicare and Medicaid Services (CMS) collects and publishes extensive data on the federal CMS.gov website.[7] That data includes information about Medicare payments to providers, MIPS participation data, and MIPS scores for individual providers and groups.[8] Relators' expert Emily Wolfston has gathered data from the CMS websites about the MIPS scores of eCW's customers and Medicare payments to those customers for use in her models. Relators ask the Court to take judicial notice of the data collected from the CMS.gov websites and used in Ms. Wolfston's models.

The Federal Rules permit the Court to take judicial notice of a fact "that is not subject to a reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonable questioned." Fed. R. Evid. 201(b). Once the Court has taken such notice, the court must instruct the jury to accept the noticed fact as conclusive. Fed. R. Evid. 201(f). Courts routinely take judicial notice of statements on government websites. *United States v. Griggers*, No. 22-310, 2024 WL 4265254, at *12, n.22 (M.D. Ga. Sept. 23, 2024) (Treadwell, J.) (taking judicial notice of USPS policy on its website that "package history and Proof of Delivery . . . are stored in the system' for two years at most" (citation omitted)); *see also id.* ("The Court may take judicial notice of government publications and website materials." (quoting *Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018))); *LaMonte v. City of Hampton*, 576 F. Supp. 3d 1314, 1327 n.12 (N.D. Ga. 2021)("It is established law that a court may take judicial notice of government websites.").

While eCW has challenged Ms. Wolfston's damages model and calculation, it has not

---

[7] *See generally* Data.CMS.Gov, available at https://data.cms.gov and Quality Payment Program, available at https://qpp.cms.gov.
[8] *Id.*

9

lodged any objection to the accuracy of the CMS data used in her models. Indeed, in the parties Joint Pre-Trial Order, eCW asked for, and Relators agreed, that the parties "be permitted to rely on websites maintained by both ONC, *CMS*, U.S. Department of Commerce National Institute of Standards and Technology ("NIST") and the U.S. Cybersecurity & Infrastructure Security Agency ("CISA") without specifically listing each and every page on their exhibit list." (emphasis added). And during the parties' conferences about this issue, eCW's counsel stated that eCW would not contest the authenticity of the data collected by Ms. Wolfston but would not agree that the data should be judicially noticed and accepted as true.

Relators do not ask the Court to take judicial notice of Ms. Wolfston's conclusions and instruct the jury that Ms. Wolfston is correct. Instead, they ask the Court to instruct the jury that the data on which Ms. Wolfston's analysis relies is established as true without the need for any further evidentiary foundation. CMS is the federal agency that administers both the Medicare payment programs and the MIPS program. The data it publishes is collected from submissions from providers and is the same information that Relators would have obtained if they had directly requested the information from CMS through a *Touhy* request. Forcing Relators to call a CMS witness or to lay some other evidentiary foundation to validate data that CMS publishes on its websites would be an unnecessary waste of the jury's and this Court's time.

**4. Quandary Peak's reports and assessments of eCW are admissible**

Pursuant to the Corporate Integrity Agreement in *Delaney*, eCW was required to hire an independent Software Quality Oversight Organization ("SQOO"). *See* Doc. 218-41 (*Delaney* CIA) at 28. As the Court knows, eCW hired Quandary Peak to serve as the SQOO. The SQOO was required to produce a variety of written reports and assessments, most notably the Baseline Report, which was then followed by Interval Assessment Reports every six months thereafter.

*Id.* at 34-36; *see e.g.* Docs. 270-1, 2, 3, 4, 5, 6, 7, 8, 12, & 13. The SQOO was also obligated to report concerns about eCW's progress under the CIA to the OIG in writing. *Id.* at 39; *see also* Docs. 266-22 & 99. As the Court knows, the SQOO issued a number of reports and assessments of eCW, including several interval assessments that express concerns about the safety of eCW's EHR and the progress (or lack thereof) toward making its software reasonably secure before the end of the CIA. *See* Doc. 345 (Summary Judgment Order) at 18-27. In addition to the interval reports, the SQOO team also frequently created reports of issues that were not otherwise encompassed within the interval reports, including at least one report about security issues raised by the Relators that was specifically requested by the ONC. Doc. 218-137.

eCW has stated that it will not object to the authenticity of SQOO materials and that it believes the reports are admissible to prove notice, knowledge, and that the SQOO held certain opinions at various times. But it has stated that it will object to the reports being admitted for the truth of the matters asserted in the reports. The reports are admissible for their truth, not simply to prove notice and knowledge because they are non-hearsay business records under Federal Rule of Evidence 803(6).

As described above, the reports were created at or near the time of the information included in the reports; the reports were drafted by a SQOO team member with direct knowledge of the issues discussed; and the reports were kept in the regular course of Quandary Peak as part of its engagement as the SQOO. Relators and eCW deposed both SQOO team leaders where both described the process of creating and drafting the SQOO reports. *See* Doc. 218-44 (2024-04-30 Ulrich Dep.), Ex. 1 at 44:1-10; 72:1-13; 74:15-21; 82:6-14; 86:14-90:25; Doc. 218-18 (2024-05-17 Dhavle Dep.), Ex. 2 at 41:19-47:6. In addition, both SQOO team leaders will testify by video deposition at the trial. Finally in light of eCW's stated intent to object to the

admissibility of the SQOO reports for their truth, Quandary Peak has agreed to provide a business records certification for the documents it produced in response to Relators' subpoenas in this case, which includes the reports.  That certification is forthcoming and will be filed upon receipt.  Based on the foregoing, Relators ask the Court to order that the SQOO reports, assessments, and statements of concern are not hearsay and thus may be considered for the truth of the matters asserted therein.

5. **eCW may designate only one corporate representative in accordance with Rule 615 of the Federal Rules of Evidence**

eCW designated five employees as its Rule 30(b)(6) representatives during discovery: Michael Laycob, Matt Lewis, Rahul Jaiswal, Nainil Chheda, and James Mittenthal.  eCW has now stated that its corporate representative at trial will be eCW Compliance Officer Michael Laycob.  But eCW recently asked whether Relators would insist that eCW owner and CEO Girish Navani be sequestered during trial.  Relators' counsel stated that it would insist on sequestration of all witnesses other than Mr. Laycob.  Given that discussion and for clarity at trial, Relators ask the Court to rule that eCW must designate only one corporate representative and that all other eCW employees or representatives that appear on either party's Will or May Call Lists must be sequestered until after they testify.  *See Stewart v. QuikTrip Corp.,* No. 1:21-CV-1974-MHC, 2023 WL 10406726, at *6 (N.D. Ga. Dec. 8, 2023) (granting motion in limine to enforce the rule of sequestration at trial).

Federal Rule of Evidence 615 requires sequestration of witnesses from the courtroom when a party requests it.  This rule is "mandatory in nature and makes exclusion of witnesses a matter of right to a requesting party . . . ."  *In re Shell Oil Refinery*, 136 F.R.D. 615, 616 (E.D. La. 1991).  For corporate defendants, the rule allows "*one* officer or employee" to remain in the Courtroom when the defendant designates that employee as the party's representative.  Fed. R.

Evid. 615(a)(2) (emphasis added). But the exception from sequestration for an entity representative "is limited to *one* designated representative per entity." Fed. R. Evid. 615. advisory committee notes to 2023 amendments. As a result, courts routinely reject arguments that a defendant may designate more than one corporate representative and thereby avoid sequestration of additional witnesses. *See Lumpkin v. Bi-Lo, Inc*., 117 F.R.D. 451, 454 (M.D. Ga. 1987) (because defendant may only have one corporate representative it was proper to exclude additional corporate employees from deposition); *Kaiser v. Monroe Clinic, Inc*., No. 19-CV-315-JDP, 2020 WL 4364179, at *10 (W.D. Wis. July 30, 2020) (instructing defendant to pick one witness to serve as witness);

Because eCW intends to designate Mr. Laycob as its representative at trial, it would be improper to allow any other eCW employees or representatives listed on the parties' Will or May Call lists to remain in the courtroom before they are called to testify. Relators therefore ask the Court to enforce the rule as to the following eCW employees and representatives: Girish Navani, Shilpa Hegde, Aarti Kriplani, Nainil Chheda, Rahul Jaiswal, Matt Lewis, Jordan Madhusudhan, Bharat Satyanarayan, Mark Rowan, Mark Speyer, and Nirvish Shah.

Respectfully submitted this 9th day of September, 2025.

/s/ Robert H. Snyder, Jr.
ROBERT H. SNYDER, JR.
  Georgia Bar. No. 404522
  rob@cannellasnyder.com
ALEXANDRA "SACHI" COLE
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
HANNAH D. AMANUEL
  Georgia Bar No. 922743
  hannah@cannellansnyder.com
CHASE LYNDALE
  Georgia Bar No. 183762
  chase@cannellasnyder.com

CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

BRIAN P. ADAMS
  Georgia Bar. No. 142474
  brian@brianadamslaw.com
MARY BETH HAND
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com

ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

ANNA GREEN CROSS
  Georgia Bar No. 306674
  anna@crosskincaid.com
MEREDITH KINCAID
  Georgia Bar No. 148549
  meredith@crosskincaid.com

CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Avenue, Suite 715
Decatur, GA 30030

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 9th day of September, 2025.

*/s/ Robert H. Snyder Jr.*
Robert H. Snyder Jr.
Georgia Bar No. 404522
