UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>　　　　Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>　　　　Defendant. | CIVIL ACTION FILE<br><br><br>NUMBER 5:18-CV-382 |

## RELATORS' MOTIONS IN LIMINE REGARDING
## ECW'S ATTACKS ON RELATORS AND MEMORANDUM IN SUPPORT

Robert H. Snyder, Jr.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
Hannah D. Amanuel
  Georgia Bar No. 922743
  hannah@cannellasnyder.com
Alexandra "Sachi" Cole
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
Devin L. Mashman
  Georgia Bar No. 257588
  devin@cannellasnyder.com
Chase Lyndale
  Georgia Bar No. 183762
  chase@cannellasnyder.com
**CANNELLA SNYDER LLC**
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Brian P. Adams
  Georgia Bar No. 142474
  brian@brianadamslaw.com
Mary Beth Hand
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com
**ADAMS LAW FIRM**
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231


Anna Green Cross
  Georgia Bar No. 306674
  anna@crosskincaid.com
Meredith Kincaid
  Georgia Bar No. 148549
  meredith@crosskincaid.com
**CROSS KINCAID BASKAM LLC**
315 W. Ponce de Leon Ave., Ste. 715
Decatur, Georgia 30030
(404) 948-3022

*COUNSEL FOR RELATORS/PLAINTIFFS*

# Table of Contents

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 3

1.  Online Statements about Tier2Technologies or any Relator ..................... 3

2.  Mischaracterizations of Relators as "hackers" or of their actions investigating
eCW's software vulnerabilities as "hacking," illegal, or criminal .................... 6

3.  Relators' character or motivation for bringing case .................................. 8

4.  Relators' alleged breach of contract of their customer agreements ............. 10

5.  Relators' alleged HIPAA breaches ............................................................ 11

6.  Argument, testimony, or evidence related to the incident that resulted in ███
██████████████████████████████████ ............................................... 12

7.  Irrelevant private and personal matters of Relators, witnesses, or family members 16

8.  Whether Relators told Tier2 customers about the vulnerabilities alleged in this case
17

9.  Communications between Relators and eCW or eCW and Tier2 customers not
related to allegations ............................................................................ 18

## **INTRODUCTION**

eCW's favorite defense is to blame someone else, but a close second is to throw mud on Relators.[1]  eCW would like to make this case about Relators so that it can paint them as the "bad guys" and discourage the jury from granting a large recovery.

To further this strategy, eCW has developed a litany of distracting side shows to turn the trial into a circus featuring Alex Permenter and Chris Wheeler—parties who are not on trial and who had no control over eCW's security, certification, or attestations.  Relators discovered eCW's fraud and brought the allegations to the government pursuant to a statutory scheme developed for exactly this purpose.  Yet eCW hopes this Court will allow it to cast this conduct as criminal and call Relators "hackers."  eCW's other featured side shows include accusing Relators' company of breaching contracts with its customers; accusing Relators of HIPAA breaches; dredging up a ████████████████████████████████; and using anonymous and random online posts that talk about Relators' company.  These are the side shows that eCW has unveiled—it has likely concealed at least some of the additional mud it plans to sling at Relators.  eCW has made clear, however, that it will continue those attacks and attempt to make the trial about the Relators' alleged hope for a "financial windfall."

The Court has ruled that testimony "trashing" a party is irrelevant and will not be allowed.[2]  Despite that, eCW has refused to exclude the matters discussed in this motion.  eCW has no defense that its character assassinations would be arguably relevant to anything: it withdrew its baseless "unclean hands" defense after Relators threatened to move to strike the

---

[1] The Court noted eCW has repeatedly turned to the argument that "it's all someone else's fault."  Doc. 346 (Order on MSJ), at 33. The DOJ made the same observation when it argued eCW was playing a game of "catch-me-if-you-can" by arguing the government should have "ferreted out [eCW's] alleged lies."  Doc. 292, (DoJ Stat. of Int.) at 8.
[2] Doc. 334 (June 4, 2025 Hrg. Tr. at 25:23).  While that comment was made regarding eCW, the Court also noted during the hearing that "what's sauce for the goose is sauce for the gander."  *Id*. at 31:15-16.

defense as unsupported.

eCW also ignores the fundamental truth of this case. The Relators are nominal parties, who bring these claims on behalf of the United States, the real party in interest. Relators' alleged conduct in investigating and disclosing claims, and their interactions with their company's customers, are irrelevant to whether eCW violated the FCA. *See, e.g., U.S. ex rel. Feldman v. van Gorp,* No. 03 CIV. 8135 (WHP), 2010 WL 2911606, at *5 (S.D.N.Y. July 8, 2010) (excluding "distractive detours into irrelevant aspects of Relator's life" because the government is the real party in interest and "the acts that make a person liable under [the False Claims Act] focus on the use of fraud to secure payment from the government") (quotation omitted).

In any trial—but especially a two-week trial—neither the jury nor the Court should be forced to endure evidence on issues that will not help the jury render a verdict. Any attack on Relators will require Relators to respond with testimony and evidence rebutting eCW's claims and characterizations. Excluding this evidence will save valuable time and resources at trial and foreclose an irrelevant and prejudicial topic that, once presented to the jury, cannot be forgotten. *See O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) ("You can throw a skunk into the jury box and instruct jurors not to smell it, but it doesn't do any good.").

eCW's strategy of distracting the jurors and prejudicing them against Relators is designed to reduce the verdict in the case unjustly. The evidence in this motion should not affect the verdict because the case is not about Relators' alleged conduct or what they might recover in the case. The case is about the United States Government, the taxpayers, and whether eCW caused the submission of false claims. Allowing eCW to attack Relators about matters that have no relevance will primarily harm the government. Relators ask this Court to prohibit eCW from trashing Relators in an improper attempt to reduce the award to the government.

2

## ARGUMENT

**1.  Online Statements about Tier2Technologies or any Relator**

At Mr. Permenter's deposition, eCW questioned Mr. Permenter about what it characterized as two online "customer reviews" of Relators' company Tier2Technologies[3] that supposedly ███████████████████████.  Doc. 218-101, (Permenter Dep.) at 54:6-56:9, Ex. 1.  eCW did not show these supposed "customer reviews" to Mr. Permenter and it has never produced a copy of them.  Still, Mr. Permenter testified that his company had previously investigated the "customer reviews" he thought eCW was referring to.  It determined that they were fake and not written by a Tier2 client or anyone that ever interacted with Tier2.  *Id.*

Evidence cannot be admitted unless it is (1) authentic, (2) relevant, (3) non-hearsay, and (4) not subject to exclusion under the Rules.  Any attempt by eCW to use any internet post or "customer review" should be prohibited, because the evidence fails each requirement.

*First*, eCW has not met, and cannot meet, its burden to show the posts are authentic.[4] There is no evidence that they are real reviews written by real Tier2 customers.  On the contrary, the only evidence in the record on this issue is they are *not* what they purport to be.  *Id.*  The statements eCW wants to use cannot be authenticated because they are not statements by the company on whose website they appear.  Instead, they are statements posted on Yelp.com *by unknown third parties*.  When a company publishes posts on its website that purport to be made by third parties, "the authenticity challenge is to provide enough information for a juror to believe that the [post] is made by a particular person."  Hon. Paul W. Grimm et al., *Authenticating Digital Evidence*, 69 Baylor L. Rev. 1, 22 (2017) (discussing social media and

---

[3] Formerly known as Alex's PC Solutions.
[4] If this Court excludes the "online reviews" eCW has been concealing, that decision will be upheld unless there is *no* competent evidence in the record to support it. *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012).

chatroom posts); *id*. ("Simply to show that a posting appears on a particular user's webpage is insufficient to authenticate the post as one written by the account holder.") (footnote omitted). Third party posts must be authenticated by more than just the username on the post—there must be something more to show that the purported user created the statement and was responsible for its contents. *Id*.; s*ee also United States v. Vayner*, 769 F.3d 125, 132 (2d Cir. 2014) (reversing district court's finding that social media post was authentic as abuse of discretion, even though user's profile contained defendant's picture and personal details because "there was no evidence that [defendant] had created the page or was responsible for its contents"); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 555 (D. Md. 2007) (expressing concern over authentication of posts on websites and suggesting proponent of evidence must show the post it attributable *to the owner of the site*). eCW has not made, and cannot make, any showing that the people who purportedly made the statements were the Tier2 customers they claimed to be. In fact, it has not even produced documents identifying the statements or their purported authors.

*Second*, the online statements are not relevant. They are not about certification or the software at issue. They are not about any Relator's character for truthfulness.

*Third,* these online statements contain two levels of inadmissible hearsay and eCW has established no exception to the hearsay rule for either level. The first level of hearsay is the so-called "customer's" statement. It is not a statement of a party opponent, and none of the other hearsay exceptions apply to it. The second level is Yelp's publication of that statement. That level of hearsay is not covered by the business records exception because (a) there is no evidence to establish the requirements of Rule 803(6); (b) the "review" was not a statement Yelp made in the course of its business; and (c) Mr. Permenter has presented evidence that indicates a lack of trustworthiness in the document. *See* Fed. R. Evid. 803(6); *see also Mathew Enter., Inc. v.*

*Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 11432038, at *2-3 (N.D. Cal. Sept. 21, 2016) (prohibiting Yelp pages and ratings from being offered for truth of the matter asserted and excluding Yelp Consumer Alert as improper character evidence); *Cody v. SoulCycle Inc.*, No. CV156457GHKJEMX, 2016 WL 4771392, at *7 n. 4 (C.D. Cal. Jan. 11, 2016) (same).[5]



. *See* Fed. R. Evid. 404 ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); *Reyes v. Mo. Pac. R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979) (character evidence is "of slight probative value yet very prejudicial").

That suggestion is baseless and designed to distract the jury from the enormous amount of evidence against eCW.

At best, these unsubstantiated, nonspecific statements are rank speculation about Mr. Permenter's character, and, at worst, they are a baseless targeted attack on Mr. Permenter.

And *fifth,* the alleged online statements are irrelevant and highly prejudicial and must be excluded under Rule 403. *Chapman v. Shook Auto, Inc.*, No. 5:20-CV-01168-CEH, 2022 WL 22895464, at *2-3 (N.D. Ohio Feb. 22, 2022) (excluding evidence of online reviews as the evidence was "not probative to anything at issue in this case" and did not "add value to the case at hand and, in fact, [had] great potential to prejudice Defendant."). Relators' company is not a

---

[5] *See also Fadul v. Sky Ridge Med. Ctr.*, No. 19-CV-1308-WJM-NRN, 2020 WL 6204259, at *6 (D. Colo. Oct. 22, 2020), amended, No. 19-CV-1308-WJM-NRN, 2020 WL 13897198 (D. Colo. Nov. 23, 2020) (Yelp reviews offered for truth of the matter asserted are "manifestly hearsay"); *Cameron v. Werner Enterprises, Inc.*, No. 2:13-CV-243-KS-JCG, 2016 WL 3030181, at *3 (S.D. Miss. May 25, 2016) (same).

party to this case.  Any purported review of the company is irrelevant to whether eCW

knowingly caused the submission of thousands of false claims because of the vulnerabilities in

its EHR software that rendered it uncertifiable.  ████████████████████████████

████████████████████████████  *See, e.g., Beck v. Koppers, Inc.*, No. CIV.A.

3:03CV60-P-D, 2006 WL 2228878, at *2 (N.D. Miss. Apr. 3, 2006) (evidence intimating racial

discrimination irrelevant and poses a substantial danger of confusing jury).  The prejudice will

not only be suffered by Mr. Permenter, the target of eCW's allegations but also the government,

which is the primary beneficiary of a recovery in this case.

      Relators therefore ask the Court to prohibit eCW from questioning any witness or

referencing any online statements about Tier2 or its former name Alex's PC Solutions, or any

Relator, including the statements eCW asked Mr. Permenter about during his deposition.

**2.  Mischaracterizations of Relators as "hackers" or of their actions investigating eCW's software vulnerabilities as "hacking," illegal, or criminal**

      Relators request that the Court preclude eCW from offering evidence, making argument,

eliciting testimony, or otherwise referring to the Relators as "hackers," characterizing Relators'

investigation of their allegations as "hacking," or suggesting that Relators' broke the law or did

anything illegal during their efforts to uncover security vulnerabilities in the eCW software.

      The allegations in eCW's September 23, 2024 cease and desist letter fall squarely within

this category of inadmissible evidence.  Doc. 318-6.  In that letter—which eCW sent both to the

DOJ and to Relators—eCW accused Mr. Wheeler of violating federal and state laws for the work

he did in this case to investigate "remote code executions."  Mr. Wheeler's testing was

performed on cloud instances of Tier2 customers, with whom Tier2 has a Business Associate

Agreement, and full access to all data stored therein.  Tier2 was hired to keep these systems

secured and had authorized access to the "instances" Mr. Wheeler examined.  Unsurprisingly, the

6

DOJ took no action after reviewing eCW's accusations, despite eCW's best efforts to convince it to. Simply put, eCW's accusations that Relators are "hackers," have "hacked" eCW's system, or have acted illegally or improperly in any way are devoid of any evidentiary support, and thus they have no probative value.

eCW cannot use its allegations to challenge Relators' character for truthfulness, because Relators' conduct was truthful and transparent. Relators have repeatedly disclosed their findings to the DOJ and eCW. Relators provided eCW with video evidence of the tests they performed. And eCW has known for years that Relators were conducting tests on Tier 2's customers' eCW instances, in part because eCW requested that Relators run tests for eCW's experts.[6]

The jury must decide issues regarding certification and fraud. eCW's unsupported allegations of "hacking" have no bearing on the issues here. Fed. R. Evid. 401(a); 402; 403.[7] The only conceivable purpose of raising these allegations is to introduce improper character evidence—*e.g.*, the Relators are evil "hackers"—and unfairly prejudice the jury against them. Fed. R. Evid. 404; *Reyes*, 589 F.2d at 793-794 (character evidence "very prejudicial"). That risk is substantial, given the negative connotations associated with calling someone a hacker and claiming Relators' work was improper or illegal.[8] Even if there were any probative value to this evidence, the unfair prejudice of using the terms "hacker," "hacking," "illegal," or "improper" would far outweigh it.[9]

---

[6] Doc. 316-5 (Jul. 8, 2024 Email from Bernardo to Snyder) (confirming eCW asked Mr. Wheeler to run program scripts on five eCW clients that are Tier2 customers).

[7] Doc. 334 (June 4, 2025 Hrg. Tr.) at 65:14-15 ("I'm skeptical of an opinion about the propriety of relators' conduct being admissible.").

[8] *See* Hack, Merriam-Webster, https://www.merriam-webster.com/dictionary/hack (last visited September 4, 2025) (defining "hack" as "to gain illegal access to (a computer network, system, etc.)").

[9] *See, e.g., Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-CV-22134-UU, 2016 WL 5942525, at *1 (S.D. Fla. May 31, 2016) (excluding use of term "copyright troll" as prejudicial); *Plain Bay Sales, LLC v. Gallaher*, No. 18-CV-80581, 2022 WL 22868069, at *2 (S.D. Fla. Feb. 15, 2022) (excluding terms "forgery" or "forged" as unfairly prejudicial); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG, 2014 WL 8096334, at *8 (C.D. Cal. Apr. 21, 2014) (excluding terms "knock-off," "pirated," and "predatory" as unduly prejudicial);

If eCW is permitted to launch these attacks at the Relators during trial, it would also be an enormous distraction. Relators will defend themselves. This would completely derail the proceedings, necessitating a mini trial with additional fact and expert testimony on matters that the jury does not need to decide.

There is a darker side of what eCW did when it unsuccessfully attempted to get the DOJ to "investigate" Relators actions. Trying to get Relators in *criminal trouble* for finding security vulnerabilities in its software sent a message to Relators about how far eCW will go to punish them. If it is allowed to pursue this litigation strategy at trial, it could be used to intimidate witnesses. It would also reward eCW for conduct that goes far beyond zealous advocacy in litigation. And allowing such conduct could chill the filing of future FCA cases if relators believe they could face the threat of jail time for disclosing fraud on the government. This not only contradicts the FCA's purpose, which provides protections for whistleblowers such as exceptions to HIPAA, but it also directly contradicts eCW's own fact witnesses and experts, who have both praised Relators' disclosures to the DOJ.[10]

eCW should be prohibited from offering evidence, making argument, eliciting testimony, or otherwise referring to Relators as "hackers," characterizing Relators' investigation as "hacking," or suggesting Relators' broke the law.

### 3. Relators' character or motivation for bringing case

Relators move to prohibit argument or evidence that Relators allegedly brought this case for their own personal financial gain. eCW has engaged in character assassination of Relators.

---

*Green v. Logan's Roadhouse, Inc.*, No. 2:13-CV-238-KS-MTP, 2015 WL 268831, at *1 (S.D. Miss. Jan. 21, 2015) (prohibiting defense from referring to actions as "crime" or referring to plaintiff as "thief" or "criminal" where no criminal charges were filed); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1797, 2016 WL 5929051, at *1 (E.D. Pa. Jan. 21, 2016) (precluding use of "payoff," "bribe," or "unethical" due to risk of unfair prejudice or jury confusion).
[10] Doc. 266-4 (30(b)(6) Dep. (Jaiswal) at 190:15-20, Ex. 5 (thanking Relators for reporting a vulnerability); (Bort Dep.) at 173:5-21, Ex. 6 ("I also think it's worth commending that this was raised through the proper channel.").

One flavor of those attacks has tried to portray Relators as greedy, disgruntled criminals who conspired with their attorneys to file this case to financially benefit in the wake of the *Delaney* settlement.  As Relators have testified, they had no specific knowledge of *Delaney* and did not know the details of the case.[11] eCW has presented no evidence to the contrary, but that has not stopped eCW from making baseless allegations.

eCW has already agreed not to discuss the financial interest of either parties' *attorneys*.[12] Courts have held that the financial interest of Relators is also irrelevant.  *See U.S. ex rel. McCandliss v. Sekendur*, 282 F. App'x 439, 443 (7th Cir. 2008) ("because the district court was presented with ample evidence to conclude that [defendant] violated the FCA, [relator]'s motivation in pursuing this case is not relevant" (citation omitted)); Fed. R. Evid. 402, 403. Allowing such references or speculation about the Relators' motivation will not further either party's claims or defenses and instead would only undermine the unique purposes underlying the FCA, which is designed to *incentivize* whistleblowers and root out fraud against the government. Allowing eCW to attack Relators for doing the very thing the statute intends makes no sense. *See id.* (noting "FCA relies, in part, on private individuals to help uncover fraud against the government").  It would also amount to unfair prejudice against the government.

Generally, whether a plaintiff's intent in filing a suit is praiseworthy, altruistic, or selfish is irrelevant to the merits of its claims.  *Est. of Rink by Rink v. VICOF II Tr.*, No. 5:20-CV-00039-KDB, 2022 WL 1445233, at *3 (W.D.N.C. May 6, 2022); *Braxton v. Eldorado Lounge, Inc.*, No. CV ELH-15-3661, 2017 WL 11441948, at *3 (D. Md. June 27, 2017) ("plaintiffs' possible motivations for filing suit, such as revenge or a desire to obtain a settlement, are not

---

[11] Doc. 266-2 at p. 47, ¶ 103.
[12] Relators ask the Court to include in its Order a prohibition against suggestion or argument that Relators' counsel was motivated by money, greed, or self interest in filing the case, as a precaution that eCW may argue the Joint Motion does not include that.

9

probative of a valid defense"); *Samsung Elecs. Co. v. NVIDIA Corp.*, No. 3:14CV757, 2016 WL 754547, at *1–2 (E.D. Va. Feb. 24, 2016) ("where a suitor is entitled to relief … his motives are immaterial [and] the legal pursuit of his rights, no matter what his motive … cannot be deemed either illegal or inequitable."); *Caldwell v. Wal-Mart Stores, Inc.*, No. 99-2272, 2000 WL 1335564, at *5 (10th Cir. 2000) ("evidence of … financial motivation to bring the suit was not relevant." (citations omitted)).

Congress made the policy decision long ago that a relator who brings a successful qui tam case should be rewarded financially for doing so. eCW should not be allowed to subvert that rational policy decision by arguing Relators are greedy for doing the very thing the statute encouraged and rewards them for doing. If eCW has concerns about the share provisions, it should write its Senators and Representatives, not attempt to prejudice the jury.

Relators move for an Order prohibiting eCW from suggesting, making arguments, eliciting evidence or testimony about the following topics:

- how much of the government's recovery could go to Relators, their counsel, or relators or lawyers in an FCA case in general;
- whether Relators or their counsel are "greedy" or were motivated by personal gain or financial benefit in filing this lawsuit;
- whether Relators or their counsel knew about the *Delaney* case; and
- whether Relators or their counsel are going to "get rich," "hit the litigation lottery," or otherwise benefit financially from a verdict against eCW.

## 4.  Relators' alleged breach of contract of their customer agreements

eCW refused to consent to excluding evidence or argument about its suggestion that Relators "breached" contracts with Tier2 customers—even though this Court has already ruled "opinions about breach of contract . . . are not admissible." *See* Doc. 334, June 4, 2025 Hrg. Tr. at 44:22. eCW wants to tell the jury a conspiracy story it concocted about Relators nefariously running tests on eCW software without their clients' permission and somehow compromising their clients' businesses. This is not only untrue but also completely irrelevant to this case. It

threatens to cause undue prejudice to Relators and the government by falsely casting Relators as seedy businessmen.  It would also confuse and mislead the jury as it tries to understand whether Relators so-called "breach of contract" prohibited a verdict in the government's favor.  Fed. R. Evid. 402, 403.  Relators' interactions with Tier2's customers are not relevant, so any discussion of Tier2's customer contracts should be excluded.

## 5.  Relators' alleged HIPAA breaches

eCW has falsely accused Relators of violating HIPAA throughout this litigation.  eCW should not be permitted to inject such baseless and prejudicial accusations against the Relators at trial because they are completely irrelevant, would cause significant confusion, and would prejudice the jury.  Fed. R. Evid. 402; 403.  *See ROC ASAP, LLC v. Starnet Ins. Co*., No. CIV-12-461-D, 2014 WL 4631121, at *6 (W.D. Okla. Sept. 15, 2014) (granting plaintiff's motion in limine and "deem[ing] inadmissible argument or unsubstantiated allegations" that plaintiff committed a crime); *Couturier v. Bard Peripheral Vascular, Inc*., No. CV 19-12497, 2021 WL 3187368, at *4 (E.D. La. July 28, 2021) (granting motion in limine "to exclude evidence regarding . . . unsubstantiated allegations" because "accepting the allegations at issue would lend to undue prejudice and bias").

eCW cannot articulate any relevance to its argument that Relators' testing and disclosures in this case amounted to some vague HIPAA violation.  Even if eCW was correct (it is not), an alleged HIPAA violation by Relators has nothing to do with the claims against eCW or its defenses.  Its only possible relevance is to suggest Relators are bad people who have violated health record privacy in the past.  Such use is inadmissible character evidence.  *See* Fed. R. Evid. 404.  It also is prejudicial and likely to confuse the jury into believing that Relators' conduct is relevant to any issue in the case.  Fed. R. Evid. 403.

Besides being prejudicial, the allegation of alleged HIPAA breach is likely to result in undue delay and a waste of time at trial. Relators' company is a Business Associate of the practices it services so has full authorized access to patient data, and the Court entered a stipulated HIPAA protective order that allowed ***any party*** to "produce Confidential Health Information in unredacted form, subject to [the] Protective Order." Doc. 101 (Stipulated Conf. Order) at ¶ 5(a). In short, there was no breach. But to respond to eCW's baseless allegations, Relators will have to introduce testimony about HIPAA privacy rules and regulations, presumably from an expert, and then testify about their understanding of HIPAA rules, the Court's Order, and why they believed it was appropriate to produce very limited PHI in this case. Thus, in addition to being prejudicial, evidence or argument about alleged HIPAA breaches will cause undue delay and wasted time at a trial that will already be long.

Allowing eCW to interject this issue during trial would confuse and prejudice the jury into believing that the Relators are bad actors and kick off a mini trial on what HIPAA is and why Relators did not violate it. Evidence, argument, and questioning regarding Relators' so-called HIPAA violations should be excluded.

**6.  Argument, testimony, or evidence related to the incident that resulted in** ███████████
█████████████████████

As this Court is aware, in 2010 ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████  Ex. 2, REL000547; Ex. 3, 2023-12-22 Rel.'s Supp. Resp. to eCW's 3d Interrogs. at 9. Throughout this litigation, eCW has used this fifteen-year-old incident to improperly characterize ███████████████████

████████ eCW plans to continue that at trial—it has marked a news article about this issue as the first exhibit on its trial exhibit list.

Any evidence ████████████ is inadmissible because (1) it is improper character (or "propensity") evidence, Fed. R. Evid. 404; (2) any marginal relevance is heavily outweighed by the potential for unfair prejudice, Fed. R. Evid. 403; and (3) it does not meet the requirements for use as impeachment under Rule 406.

Rule 404(b), which governs admission of crimes, wrongs, and other acts, provides in relevant part:

> (1) Prohibited Uses: Evidence of a crime, wrong, other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

The general rule of exclusion of character evidence "is based upon the assumption that such evidence is of slight probative value yet very prejudicial." *Reyes*, 589 F.2d at 793-794 (prior misdemeanor conviction inadmissible character evidence under Rule 404). eCW has not articulated any relevance of this evidence aside from using it to characterize Mr. Wheeler as a "criminal" and "hacker." Any attempt to use ████████ prior conduct to show a propensity to engage in conduct that is not at issue in this case is clearly improper and prejudicial.[13]

If eCW attempts to introduce this evidence through impeachment, this too is improper for two separate reasons. First, under Rule 609(a), ████████████████████

████████████████████████ *U.S. v. Eubanks*, 876 F.2d 1514, 1516-17 (11th Cir. 1989) (inappropriate for prosecutor to question defendant about prior arrests that did not result in convictions); *U.S. v. Labarbera*, 581 F.2d 107, 108-09 (5th Cir. 1978) (mere

---

[13] It also has no relation to what happened here. ████████████████████████ Here, he filed a False Claims Act case that this Court has twice refused to dismiss and is now on the verge of trial.

arrest without conviction for any offense inadmissible to show general lack of credibility);

*Jenkins v. Gen. Motors Corp.*, 446 F.2d 377, 381 (5th Cir. 1971) ("[i]t is clear, however, under

the law of Georgia and in the federal courts that it is improper for impeachment purposes to

show the accusation, arrest, or indictment for a crime to use against a witness in a civil or

criminal case.").



Finally, the conduct that led to ▮▮▮▮▮▮▮▮ did not involve false statements or dishonesty.  Instead, it was the opposite.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Introducing this evidence will serve no purpose other than to prejudice the jury against ▮▮▮▮▮▮ .  Relators ask the Court to exclude

evidence of ████████████████████████████████████████

████████████████████████████████████████

### 7. Irrelevant private and personal matters of Relators, witnesses, or family members

The personal, private matters of Relators, their family and friends, and any witnesses are irrelevant. Relators do not intend to present evidence or argument about these issues as to any eCW witness, but eCW refused to agree to this motion. Therefore, the Court should prohibit any statement or argument about unrelated private personal matters of the same. For example, any argument or statement about Relators' marriages, divorces, or other relationship issues, and any litigation in which a Relator or witness was a party. Those topics are irrelevant, and the prejudice caused by statements or arguments about them would substantially outweigh their probative value, if any. Fed. R. Evid. 401(a), 402, 403.

Courts generally "will not permit distractive detours into irrelevant aspects of Relator's personal life." *See U.S. ex rel. Feldman*, 2010 WL 2911606, at *5. Likewise, a witness' relationships, current or past living arrangements, and romantic relationships are not probative of any fact at issue in this case and could only seek to unfairly denigrate the witness by attacking his or her irrelevant private lives and not the veracity of their testimonies. *See* Fed. R. Evid. 402.[15] An inquiry into this type of irrelevant prior act on cross-examination is also precluded under Rule 608(b) because it is not probative of truthfulness. Finally, whether any witnesses

---

[15] *See Candonoza v. Royston*, No. 4:16-cv-48-HLM, 2018 WL 5023425, at *1-3 (N.D. Ga. Mar. 5, 2018) (evidence of criminal charges and sexual orientation excluded as irrelevant and prejudicial); *Lincoln Benefit Life Co. v. Stamps*, No. 1:04-cv-1272-JEC, 2008 WL 11336942, at *3 (N.D. Ga. Sept. 23, 2008) (excluding evidence of remarriage and divorce); *Doe v. NCL (Bahamas) LTD.*, No. 11-22230-CIV, 2012 WL 12844743, at *1 (S.D. Fla. Nov. 27, 2012) (excluding "reference to acts of infidelity or any basis for Plaintiff's divorce."); *Lanni v. New Jersey*, 177 F.R.D. 295, 304 (D.N.J. 1998) ("prejudicial fact of divorce, through either testimony or divorce complaints, substantially outweighs any probative value"); *Sanderson v. Burlington N. & Santa Fe R.R.*, No. CV-05-5030-EFS, 2006 WL 8437875, at *1 (E.D. Wash. Aug. 7, 2006) ("excluding evidence, testimony, or exhibits that refer to Plaintiff's divorce history"); *Barclay v. Mercy Health Servs.-Iowa Corp.*, No. 07-cv-4074, 2009 WL 2462296 (N.D. Iowa Aug. 12, 2009) (even though plaintiff's mental condition was at issue, "[r]eliance . . . on evidence of early marriage and pregnancy, the paternity of her third child, and her divorce and marital infidelity, in light of this record, suggest precisely that it is the *salacious quality of this evidence, not its probative value*" (emphasis added)).

have been a party to unrelated litigation is also irrelevant and would only distract the jury.  Fed. R. Evid. 402, 403.[16]

This Court should prohibit any statement or argument about unrelated private personal matters of Relators, their family and friends, and any witnesses.

## 8. Whether Relators told Tier2 customers about the vulnerabilities alleged in this case

eCW appears set on arguing that Relators acted improperly by bringing their concerns directly to the government through this lawsuit and by not violating the Court's seal by disclosing their allegations to their customers.[17] *See* 31 U.S.C. § 3730(b)(2) (seal on FCA cases). eCW questioned Relators about whether they informed their customers about the security vulnerabilities identified in this lawsuit, advised their customers to stop using eCW's software, or obtained permission to perform security testing on the Tier2's customers' eCW instances. eCW claims that such questions are relevant to whether Relators believed that the vulnerabilities they discovered were serious.  They did, and have explained why they did not disclose the issues to Tier2 customers,[18] but that is beside the point.  The Court has ruled that "opinions about disclosure risk to thousands or millions of individuals are speculative and … inadmissible." Doc. 334, June 4, 2025 Hrg. Tr. at 44:6-13.  Thus, what Relators did with the vulnerabilities they

---

[16] *See Bunch v. Pac. Cycle, Inc.*, No. 4:13-cv-36-HLM, 2015 WL 11622952, at *8 (N.D. Ga. Apr. 27, 2015) (excluding evidence of unrelated lawsuits); *Jean-Laurent v. Wilkinson*, No. 05-cv-583, 2009 WL 666832 (S.D.N.Y. Mar. 13, 2009) (granting "request to exclude evidence of unrelated lawsuits"); *Ernst v. HB Aspen, Inc.*, No. CV0701070MMMCWX, 2008 WL 11337009, at *2 (C.D. Cal. Feb. 4, 2008) (excluding evidence of prior legal proceedings and explaining "that evidence … is both irrelevant and prejudicial"); *Morris v. Lanpher*, No. 05-0362-CVW-FJG, 2007 WL 1026324, at *1 (W.D. Mo. Mar. 27, 2007) (excluding unrelated lawsuits).

[17] *See e.g.* Doc. 218-101 (Permenter Dep.) at 37:10-22, Ex. 1 (questioning Relators about what they told customers).

[18] Relators did not raise the security vulnerabilities with their clients for several reasons—but getting into all those reasons will be distracting and time-consuming, and it could result in the admission of even more irrelevant and prejudicial evidence.  Relators were worried that a "leak" about the vulnerabilities before eCW fixed them could put the private PHI of millions of Americans at risk, so the risk of disclosing these issues broadly outweighed any potential reason to do so.  Regardless, a mini trial on this issue would be a substantial diversion.

discovered, or whether they believed those vulnerabilities to require disclosure to their customers is irrelevant, confusing, and prejudicial.  Fed. R. Evid. 402; 403.

Allowing eCW to introduce these irrelevant conversations at trial would mislead and confuse the jury.  And the prejudicial effect of such evidence greatly exceeds any probative value.  This case is about eCW knowingly causing the submission of thousands of false claims because the vulnerabilities in its EHR software made it uncertifiable.  How Relators advised their clients, or even whether they believed the vulnerabilities to be severe,[19] is irrelevant. To avoid undue prejudice, jury confusion and distraction, eCW should be prohibited from making argument, eliciting testimony, or introducing evidence about whether Relators had discussions with Tier2 customers about security vulnerabilities they identified, the security of eCW's software, or whether Tier2 customers should have abandoned their large investment in eCW's EHR.  Relators did nothing wrong or improper by filing this case.  Any evidence or argument that Relators should have disclosed the vulnerabilities they uncovered to their clients in some way other than disclosing them to DOJ by filing suit is irrelevant and should be excluded.

### 9. Communications between Relators and eCW or eCW and Tier2 customers not related to allegations

eCW may attempt to do at trial what it has already done in depositions: use emails that are unrelated to this case to try to make Relators look like bad people.[20]  Any such efforts are irrelevant, confusing, prejudicial, and improper character evidence.  Fed. R. Evid. 402, 403, 404(a).  For example, eCW asked Mr. Permenter about emails between himself and an eCW employee that eCW's counsel characterized as "unprofessional."  In those emails, Mr. Permenter expressed frustration with language barriers and the employee's inability to resolve an important

---

[19] They did.
[20] Relators' counsel is also concerned their use could also intimidate Relators on the witness stand if some communication could be seen as possibly damaging to Relators' relationships with customers.

issue.  Doc. 218-101 (Permenter Dep.) at 52:1-54:4, Ex. 1.  Whether a Relator sent an email that eCW calls "unprofessional" is completely irrelevant to anything in this case.

eCW may have more communications it plans to use to throw mud on Relators at trial. Relators do not know what they are (or even if they exist), but they cannot be relevant or admissible.  That is because:

(a) there are no communications between Relators (or Tier2 customers) and eCW *about the allegations in this case*: Relators do not recall any, have not found any, and eCW has not produced any.  If eCW tries to use communications that are not about the allegations in the case, they would be irrelevant.

(b) Communications between eCW and anyone but Relators would be inadmissible hearsay, regardless of the topic.  This includes communications by Tier2 employees (other than a Relator) and communications by Tier2 customers.

(c) Introduction of any of these communications would severely prejudice the Relators and require them to provide additional irrelevant testimony and call witnesses to defend against eCW's improper attacks.  It would allow eCW to derail the trial, focus on issues that do not matter, and distract and confuse the jury from the issues they need to decide.

Finally, eCW has included more than two hundred recorded phone calls between eCW's help desk and Tier2 employees about issues unrelated to this case, as well as three calls with Relators about issues unrelated to this case.  *See* eCW Proposed Exhibit List, JPTO Ex. D at entries D4703, 4731, and 5256 to 5503.  Other than wasting the Court's and Relators' counsel's time reviewing all those calls, there is no reason for them to be included on eCW's exhibit list. The calls with Tier2 employees are inadmissible because they are not a party statement, and thus are irrelevant hearsay.  And the calls with Relators are unrelated to any issue in this case and thus are irrelevant.

Relators ask the Court to exclude all communications (whether written or recorded) involving Relators, Tier2, or its customers and eCW, unless the communication specifically addresses the security vulnerabilities or certification issues at issue here, and is subject to a

hearsay exception. This request includes the recorded calls described above and any other communication that has not been produced by eCW.

Respectfully submitted this 9th day of September, 2025.

/s/ Robert H. Snyder, Jr.

ROBERT H. SNYDER, JR.
  Georgia Bar. No. 404522
  rob@cannellasnyder.com
ALEXANDRA "SACHI" COLE
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
HANNAH D. AMANUEL
  Georgia Bar No. 922743
  hannah@cannellansnyder.com
CHASE LYNDALE
  Georgia Bar No. 183762
  chase@cannellasnyder.com

CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

BRIAN P. ADAMS
  Georgia Bar. No. 142474
  brian@brianadamslaw.com
MARY BETH HAND
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com

ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

ANNA GREEN CROSS
  Georgia Bar No. 306674
  anna@crosskincaid.com
MEREDITH KINCAID
  Georgia Bar No. 148549
  meredith@crosskincaid.com

CROSS KINCAID BASKAM LLC
20

315 W. Ponce de Leon Avenue, Suite 715
Decatur, GA 30030
(404) 948-3022

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 9th day of September, 2025.

*/s/ Robert H. Snyder Jr.*
Robert H. Snyder Jr.
Georgia Bar No. 404522