UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>     Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>     Defendant. | CIVIL ACTION FILE<br><br><br>NUMBER 5:18-CV-382 |

## **RELATORS' OMNIBUS MOTIONS IN LIMINE**

Robert H. Snyder, Jr.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
Hannah D. Amanuel
  Georgia Bar No. 922743
  hannah@cannellasnyder.com
Alexandra "Sachi" Cole
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
Devin L. Mashman
  Georgia Bar No. 257588
  devin@cannellasnyder.com
Chase Lyndale
  Georgia Bar No. 183762
  chase@cannellasnyder.com
**CANNELLA SNYDER LLC**
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Brian P. Adams
  Georgia Bar No. 142474
  brian@brianadamslaw.com
Mary Beth Hand
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com
**ADAMS LAW FIRM**
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231


Anna Green Cross
  Georgia Bar No. 306674
  anna@crosskincaid.com
Meredith Kincaid
  Georgia Bar No. 148549
  meredith@crosskincaid.com
**CROSS KINCAID BASKAM LLC**
315 W. Ponce de Leon Ave., Ste. 715
Decatur, Georgia 30030
(404) 948-3022


*COUNSEL FOR RELATORS/PLAINTIFFS*

# Table of Contents

INTRODUCTION ................................................................................................ 1

THE FAMILIAR FRAMEWORK ...................................................................... 1

ARGUMENT ..................................................................................................... 2

1.  eCW's alleged good character or reputation.................................... 2

2.  Government's non-intervention decision........................................ 4

3.  Speculation on why the government did or did not take specific actions.......................... 5

4.  Hearsay or improper expert testimony that misstates the Government or Drummond's "position" on matters to be decided by the jury ........................ 7

5.  Absence of harm to patients based on a purported lack of actual data breaches ............... 8

6.  eCW's counsel represents "employees" of eCW ............................ 9

7.  Financial harm or potential adverse effects to eCW by a judgment ................................ 10

8.  Reference to pleadings, motions, or court rulings on issues that will not be presented at trial including the HIPAA-based claim .......................... 11

9.  "Budget neutrality" or eCW's "counter-factual" scenario................ 12

10.  Treble damages, statutory penalties, and attorneys' fees.................. 14

11.  Documents not produced in discovery............................................ 16

12.  eCW's current security and certification processes and practices, and changes to its Software Development Life Cycle after 2021.......................... 17

# INTRODUCTION

Relators anticipate eCW will try to proffer statements, ask questions, introduce evidence, use demonstratives, argue or make suggestions or insinuations about subjects that are improper, are irrelevant, or are highly prejudicial and of no (or little) probative value.  Sustaining objections or offering jury instructions after the fact will merely reinforce the prejudicial value of irrelevant and inadmissible evidence.  *See McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) (recognizing that "curative instructions do not always eradicate the prejudice resulting from an improper argument"); *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977) (reiterating the district court's observation that "[y]ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good").

Relators therefore respectfully ask the Court to prohibit argument, testimony, evidence, insinuations, interrogation of witnesses, comments to jurors or prospective jurors, or offers of evidence about the matters that follow.

# THE FAMILIAR FRAMEWORK

A motion in limine is a pretrial motion by which a litigant seeks to exclude inadmissible or prejudicial evidence or argument before it is actually offered or made at trial.  *Benson v. Facemyer*, No. 1:13-CV-595-WSD, 2017 WL 1400558, at *1 (N.D. Ga. Apr. 19, 2017) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)); *see also Soto v. Geico Indem. Co.*, No. 6:13-CV-181-ORL-40KR, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014) ("The real purpose of a Motion in Limine is to give the trial judge notice of the movants' position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial." (citation and internal quotation marks omitted)).

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules. "The 'major function' of Rule 403 'is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *U.S. v. Cross*, 928 F. 2d 1030, 1048 (11th Cir. 1991) (quoting *U.S. v. Sawyer*, 799 F.2d 1494, 1506 (11th Cir. 1986)). Additionally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a). This Court may exclude evidence in limine when it is clearly inadmissible on all potential grounds and for any purpose. *Luce*, 469 U.S. 38, 41 n.4 (1984) (noting federal district courts have authority to make in limine rulings pursuant to their authority to manage trials).

## ARGUMENT

### 1. eCW's alleged good character or reputation

eCW will try to engender sympathy with the jury by characterizing itself as a "good" corporate entity in various ways. eCW has already made this clear in motion practice by describing itself as a "family-owned company" and a "true American success story." Doc. 216-1 (eCW MSJ) at 3. eCW also may offer evidence of charitable donations or other good deeds, all of which should be excluded. It also asked its witnesses how much they liked working at eCW and how good the company was as an employer.

Evidence of a defendant's "good" reputation is irrelevant and should be excluded. *See Ruberti v. Ethicon, Inc.*, 2:20-CV-874-WKW, 2022 WL 17887527, at *7 (M.D. Ala. Dec. 22, 2022) (excluding evidence of company's "community employment" as irrelevant and prejudicial); *Kaiser v. Monroe Clinic, Inc.*, No. 19-CV-315-JDP, 2020 WL 4364179, at *9 (W.D.

Wis. July 30, 2020) (excluding evidence of defendants' "good character or reputation"); *Howell v. Dorn*, No. 3:09CV371, 2010 WL 8815884, at *1 (E.D. Va. Apr. 15, 2010) (excluding "Evidence, Argument, and/or Comment Concerning the Defendant's Reputation as a Health Care Provider"); *Bartlett v. Mut. Pharm. Co.*, No. 08-CV-358-JL, 2010 WL 3156555, at *4 (D.N.H. July 26, 2010) (excluding references to "any good acts done by" defendant because "such 'unrelated good acts' evidence . . . is not relevant"); *Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 994-95 (N.D. Iowa 2006) (evidence of "good acts" excluded as irrelevant).

The sole purpose of introducing evidence relating to eCW's purported good character— which has nothing to do with the issues before the jury—would be to improperly persuade the jury that eCW is less likely to have submitted false claims or to have created software that did not comply with the certification requirements because of its supposed "good" character. That is a textbook example of inadmissible and improper character evidence. Fed. R. Evid. 404; *In re Gregg*, No. 11-40125-JTL, 2013 WL 3989061, at *6 (Bankr. M.D. Ga. July 2, 2013) ("The Court will sua sponte exclude the affidavit's statements regarding the debtor's and defendant's character [where c]haracter is not in issue (i.e. character is not an element of the cause of action and a good character is not a defense to the trustee's claims).").

In an FCA case, any supposed "good acts" of a defendant are irrelevant to the alleged scheme or whether a defendant knowingly caused the submission of false claims. *U.S. ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484-RSWL-PLAX, 2019 WL 2869186, at *4 (C.D. Cal. July 3, 2019) (excluding evidence of supposed "good acts" and explaining that court did "not foresee that any such evidence would be relevant to a witness's propensity to be truthful"). This is exactly why this same type of evidence was properly excluded in another FCA case involving the same defense counsel last year. *U.S. ex rel. Penelow v. Janssen Products, L.P.*, No. CV 23-

7758-ZNQ-JBD (D. N.J. Jun. 28, 2023), ECF No. 331 at 3 (excluding any comment, reference, or evidence related to defendant's good character or reputation), attached as Ex. 1. The Court should not allow testimony, evidence, or argument that eCW is a "good" corporate entity, it is a "family-owned company," it gives charitable donations, does good deeds, or is a good employer.

**2. Government's non-intervention decision**

"[T]he government's decision not to intervene [is] not relevant in an FCA action brought by a private party." *U.S. ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 457, (4th Cir. 2011); *U.S. ex rel. Feldman v. Van Gorp*. No. 03 Civ. 8135 (WHP) 2010 WL 2911606, at *2-3 (S.D.N.Y. July 8, 2010) (excluding government's intervention decision as irrelevant); *U.S. ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484-RSWL-PLAX, 2019 WL 2869186, at *2 (C.D. Cal. July 3, 2019) (excluding government's intervention decision because "evidence is irrelevant and would be highly prejudicial in that it could allow the jury to draw the inference that Relator's claim is substantively weak").

There are many reasons why the government may decline to intervene in an FCA case—most have nothing to do with the case's merits. *See U.S. ex rel. Atkins v. McInteer*, 470 F. 3d 1350, 1360 n.17 (11th Cir. 2006) ("In any given [FCA] case, the government may have a host of reasons for not pursuing a claim."); *see also U.S. ex rel. Berge v. Bd. Of Trustees*, 104 F.3d 1453, 1458 (4th Cir. 1997) ("[T]he plain language of the Act clearly anticipates that even after the Attorney General has 'diligently' investigated a violation [of the FCA], the Government will not necessarily pursue all meritorious claims; otherwise there is little purpose to the qui tam provision permitting private attorneys general."); *U.S. ex rel. DeCarlo v. Kiewit/AFC Enters*., 937 F. Supp. 1039, 1047 (S.D.N.Y. 1996) ("[n]on-intervention does not necessarily signal governmental disinterest in an action"). Indeed, the implication that non-intervention means the government looked unfavorably on a qui tam action "would seem antithetical to the purpose of

4

the qui tam provision – to encourage private parties to litigate on behalf of the government."

*U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 21 (D.D.C. 2008).

For these reasons, courts have overwhelmingly held that evidence of the government's non-intervention is not probative of any material fact in a False Claims Act action. *See, e.g.*, *U.S. ex rel. Penelow,* ECF No. 331 at 3, Ex. 1*; U.S. ex rel. El-Amin*, 533 F. Supp. 2d at 22 ("simple fact that the government did not intervene has no probative value and is not relevant"); *U.S. ex rel. Raven*, No. 1:11-cv-00994-CAP, 2021 WL 4080863, at \*2 (N.D. Ga. Mar. 30, 2021) (same); *U.S. ex rel. Feldman,* 2010 WL 2911606, at \*2 ("same).

Relators ask the Court to prohibit eCW and its counsel from referring to or introducing evidence on the government's non-intervention decision here or on the government's absence at trial. *See* Fed. R. Evid. 401, 402, and 403. There is a significant risk that the jury will interpret the government's non-intervention decision as an indication that the government thinks Relators should lose.

### 3.  Speculation on why the government did or did not take specific actions

eCW should be prohibited from speculating as to why the government did or did not take any actions in this case. eCW has offered purported expert testimony regarding enforcement tools available to government agencies and speculation as to why those offices did not take actions here. The Court has already granted Relators' Omnibus Motion to Exclude this testimony of eCW's experts Kim, Skipper, and Weiss (Doc. 333). Any other evidence or argument about why the government did or did not take certain actions should also be excluded as irrelevant, confusing, and entirely speculative. Fed. R. Evid. 402; 403; 602.

This case did not arise out of an administrative complaint filed within HHS or its agencies, including the OCR, ONC or CMS. Rather, it arose as a qui tam action submitted to the DOJ. Opinions about how agency offices *may* have resolved or addressed Relators' allegations

*if* the allegations had arisen through a *hypothetical* administrative complaint or alternative mechanism are pure speculation. They are also not relevant to whether eCW's software violates the certification requirements. *See, e.g.*, *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 473 (S.D.N.Y. 2005) (excluding testimony of former AUSA that federal prosecutor would likely investigate and prosecute certain individuals because such matters "have no relevance"); *see also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1029 (11th Cir. 2014) (expert's testimony was unhelpful where testimony required jury "to bridge too broad a logical gap"); *U.S. ex rel. Lawson v. Aegis Therapies, Inc.*, No. CV 210-072, 2015 WL 1541491, at *8 (S.D. Ga. Mar. 31, 2015) (excluding expert testimony that analyzes "the wrong problem and therefore do[es] not assist the trier of fact to determine a fact in issue in this case" (internal quotation marks and citation omitted)).

The FCA's materiality and causation elements do not transform such speculative testimony or argument into admissible evidence. If there is any question about the government's views on whether Relators' allegations, if proven, are material to the government, **the government itself has expressly answered that question in the affirmative**. The government's statement of interest says: "Fraudulently Obtaining Certification Under a Government Program Is Material to the Government's Payment of Claims Dependent on that Certification." Doc. 292 at 8-12 (Gov't Stat. of Interest) at 7. Where the government itself has removed any doubt as to whether Relators' allegations, if proven, are material, eCW should not be permitted to offer testimony, argument, or other forms of speculation by witnesses (or counsel) not authorized to testify on behalf of the government to contradict that direct evidence.

The same is true for causation. In an inducement case like this, the Eleventh Circuit requires Relators to show only that eCW's false statements *influenced* the Government's

6

decision to certify the software and pay claims. *See Marsteller*, 880 F.3d at 1314. The false statements at issue in this case are (1) eCW's attestations that its software met security requirements, which not only "influenced" the government but were *necessary* to obtain ONC certification and (2) the statements of eCW customers participating in the MIPS program that they were using certified software, when unbeknownst to them, they were not.

Furthermore, eCW has made clear based on its *Touhy* requests and witness lists that it intends to call witnesses from both ONC and CMS at trial. There is thus no need for speculative testimony from eCW's experts or anyone else about why the government purportedly did or did not do something. Not only is such speculation irrelevant, but it violates Rule 403, as such speculation is likely to confuse the issues and mislead the jury. Whether presented in the form of expert testimony or not, rank speculation on why the Government did or did not take certain actions or whether the allegations would be material to the Government (when the Government has already affirmatively stated they are) runs the risk of misleading and confusing the jury, far outweighing any marginal probative value, in violation of Rule 403. Such references or speculation as to the Government's motivations should therefore be excluded.

**4. Hearsay or improper expert testimony that misstates the Government or Drummond's "position" on matters to be decided by the jury**

During discovery, and Motion to Exclude briefing and argument, eCW made clear that it seeks to elicit testimony from government witnesses about what an agency does "in situations like this." June 4, 2025 Hrg. Tr., at 72:1-2. Although the Court has already ruled that expert testimony on this subject is improper, the Court was clear in its instruction that "[i]f everything you say is admissible, get a witness from OIG to come testify instead of an expert to speculate about what happened. That's what you're asking [the expert] to do." *Id*. at 75:22-25*; see also id*. at 76:1-9 ("Now, if all you're going to do is put him on the stand to say what the enforcement

7

mechanisms are, then that's fine. But that's clearly not what you want to do. You want to put him on the stand and say, "Here's what can be done based upon my experience here, it's how this happens, nothing was done here." That's – that's not proper testimony. Again, that's a matter of fact. If it's an admissible fact, get your witness to testify to it. It is not a matter of expert opinion."). Similarly, Relators' Motion to Exclude eCW's certification expert Kyle Meadors was based in part on any opinions that speculated as to what "Drummond would have done" or "how he would have done it at Drummond." *Id*. at 30:4-6.

eCW's witnesses cannot make representations about what the Government or Drummond as eCW's Authorized Certification Body would or would not have done as it would improperly mislead the jury and suggest that the Government either directly, or acting through Drummond, had taken (or not taken) a position about the certification of eCW's software that had not, in fact, occurred. *See* Fed. R. Evid. 401; 403. In short, no witness other than one from the Government or Drummond should be allowed to speculate about the Government or Drummond's views on the allegations here.

## 5. Absence of harm to patients based on a purported lack of actual data breaches

eCW may argue at trial that because there allegedly has never been any actual or demonstrable breach of eCW's software, no harm has been suffered.[1] Any evidence in support of this "no harm, no foul" argument should be excluded from trial as it is legally incorrect, irrelevant to any issue the jury must decide, confusing, unfairly prejudicial and speculative. *See* Fed. R. Evid. 401, 402, 403, 602.[2] The Court has already ruled that opinions regarding an

---

[1] *See, e.g.,* Doc. 218-8, (2024-06-20 Wheeler Dep.) at 78:2-18, Ex. 2 (line of questioning designed to obtain admission that Relators have no evidence that anyone has actually stolen PHI from eCW); Doc. 218-5, (eCW 30(b)(6) (Jaiswal) Dep.) at 291:4-19, Ex. 3 ("It has never been breached.").

[2] In the FCA's legislative history, Congress specifically rejected a "no harm, no foul" argument: "A false claim for reimbursement under the Medicare, Medicaid or similar program is actionable under the act, . . . and such claim[] may be false even though the services are provided as claimed if, for example, the claimant is ineligible to

alleged lack of breach are generally irrelevant and that "whether there's been hacks or not hacks, that's not relevant to the issue whether attestations made by eCW to get its software certified" and "whether the software met the relevant certification criteria.."[3]  It has also ruled that evidence or testimony about the likelihood of a breach of the software is inadmissible unless a proper foundation is established that the alleged lack of a breach was something the government viewed as relevant to materiality.[4]

Besides being irrelevant, evidence of the alleged absence of a breach would be unfairly prejudicial under Rule 403.  Allowing such argument or evidence at trial would confuse the jury into thinking that Relators must prove a vulnerability that made the software uncertifiable also must have been exploited.

Relators therefore ask that eCW be precluded from making any argument or eliciting any testimony about the alleged lack of a breach of its software unless and until it establishes a proper foundation that such testimony is relevant to the materiality analysis.  Relators further ask that eCW instruct its witnesses not to blurt out that the software has not been breached while being questioned by any party since such a statement cannot be unheard by the jury.

**6.  eCW's counsel represents "employees" of eCW**

Relators have sued eCW, the limited liability company, not any of its employees, developers, or technicians.  In this action, eCW's counsel do not represent the "employees of eCW" or the "developers at eCW," or the "technicians at eCW."  eCW's counsel represents eCW.  There is a difference.  *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 805 n.16 (1987) ("A lawyer employed or retained by a corporation or similar entity owes his

---

participate in the program . . ."  S. Rep. No. 99-345, at 9 (cited in *U.S. v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003)).
[3] June 4, 2025 Hrg. Tr., at 6:22-7:2, 64:11-16.
[4] *Id.* at 64:2-16.

allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity.").

Defense lawyers love to stand up and announce that they represent the "fine men and women" of their corporate conduct, or some other similarly false statement.  Liability for eCW's conduct will be the responsibility of eCW, not its employees.  And suggesting that a ruling against eCW would also be a ruling against eCW's employees is simply false and prejudicial.  As such, Relators respectfully request an order precluding eCW and its counsel from making arguments or implying that counsel represents eCW's individual employees or "the men and women of eCW."  Fed. R. Evid. 401, 402, 403.

**7.  Financial harm or potential adverse effects to eCW by a judgment**

Relators anticipate that eCW will tell the jury that an adverse verdict will cause eCW to lay off workers, go into bankruptcy, close company offices, or "outsource" jobs.  eCW counsel has stated that he intends to refer to treble damages under the FCA to illustrate the large verdict likely to result in this case and the "deterrent" effect of those damages.  The possible effects of a verdict against eCW on its employees and company operations are irrelevant.

Arguments to the jury must be supported by evidence introduced at trial.  There will be no evidence about the financial consequences on eCW from a verdict for Relators.  And "[i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task." *Shannon v. United States,* 512 U.S. 573, 579 (1994).  Any statement or argument about the effect of an adverse verdict would be irrelevant, unfairly prejudicial, and misleading and thus should be prohibited.  Fed. R. Evid. 402, 403; *U.S. ex rel. Penelow*, ECF No. 331 at 3 (excluding reference to collateral consequences of verdict such as putting company out of business), Ex. 1; *Brogdon v. Ford Motor Co*., No. 4:23-CV-88 (CDL), 2024 WL 5145451, at *5 (M.D. Ga. Dec. 17, 2024) (excluding "[a]ny reference to or insinuation about the supposed effects a verdict against Ford

will have on employees and operations"), *decision clarified on reconsideration*, No.4:23-CV-88 (CDL), 2025 WL 297677 (M.D. Ga. Jan. 24, 2025); *Swoope v. CSX Transp., Inc.*, No. 4:13-cv-307-HLM, 2015 WL 12564948, at *14 (N.D. Ga. July 29, 2015) ( "evidence or argument" about verdict's effect "clearly improper"); *Bunch v. Pac. Cycle, Inc*., No. 4:13-CV-0036-HLM, 2015 WL 11622954, at *6 (N.D. Ga. Apr. 27, 2015) (same).  The result should be no different here and any argument about the potential financial implications or effects of a judgment against eCW is properly excluded.

**8.  Reference to pleadings, motions, or court rulings on issues that will not be presented at trial including the HIPAA-based claim**

This case has been pending since 2018, during which time Relators have amended their complaint twice and responded to a motion to dismiss and for summary judgment on all claims. Docs. 3, 17, 94.  The earlier versions of the complaint or any claims, counts, or theories, that are not presently before the jury, including Relators' dismissed HIPAA-based claim, are irrelevant to the jury's task and could only confuse or unfairly prejudice the jury.  Fed. R. Evid. 402; 403.[5]  If the jury were informed of this procedural history, a distracting side show would ensue about what claims were dismissed, which ones were kept, and the legal reasons for those decisions— even though none of those things would help the jury render a verdict here.[6]

---

[5] *See, e.g.*, *Ariza v. Loomis Armored U.S., LLC,* No. 13-419, 2016 WL 297702, at *3 (M.D. La. Jan. 22, 2016) ( introduction of evidence for e purpose of defending claims that are not at issue "can only conflate the precise issues before the jury . . . either confusing them unnecessarily or inviting them to ignore directly relevant evidence on the basis of a wholly separate claim"); *see also* Fed. R. Evid. 402, 403.

[6] *See also Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 84 (D.N.H. 2009) (ruling "evidence that a pleading was amended should generally be excluded under Rule 403" because "pleadings are often amended for reasons unrelated to the accuracy or completeness of the prior allegations" and therefore are "usually not probative of the pleader's credibility" and ordering defendant to "approach the bench with an appropriate proffer before referring to earlier versions of the complaint or the fact they were amended"); *Johnstown Feed & Seed, Inc. v. Cont'l. Western Ins. Co*., No. 07-cv-00290, 2010 WL 582182, *1 (D. Colo. Feb. 17, 2010) (granting motion in limine because prior complaints "have no probative value to the questions at issue" and "would be more likely to confuse the issues and mislead the jury").

**9.  "Budget neutrality" or eCW's "counter-factual" scenario**

eCW claims the MIPS program is "budget-neutral," and as a result the government suffered no damages from eCW's fraudulent certification of its EHR software.[7]  It also argues a made up "counter factual," in which eCW speculates about how providers would have reacted to its software being decertified.  Neither theory is admissible.

"Budget neutrality" is not admissible because (a) it is irrelevant, under this Court's Order on Summary Judgment; (b) eCW has not laid, and cannot lay, the factual predicate for its admission; and (c) eCW's claim about "budget neutrality" is simply wrong. The Court rejected eCW's budget neutrality argument because "the government suffers harm when it pays money because of fraudulent conduct, even if it would have paid as much or more to other parties absent the fraud."  Doc. 345, Order on Def.'s Mot. for Summ. J. at 51.  "Budget neutrality" is no defense to the claims, and therefore the jury should not have to listen to evidence or argument about it.  *See* Rule 402; 403.

The Court also observed that admission of any testimony regarding "budget neutrality" would require eCW to lay the required factual predicate, *i.e.*, a government employee with personal knowledge would have to testify that—*because of* "budget neutrality"—the government would have paid MIPS payments to other participants, even if it had known about eCW's false attestations.[8]  Many government witnesses have testified in this case, but none have ever said this.

There is also undisputed record evidence that "budget neutrality" is a myth.  The MIPS program was not actually budget neutral during any of the years at issue in this case.  Relators'

---

[7] "Budget neutrality" as eCW uses it means the incentives paid out were offset by an equal amount of aggregate penalties assessed.  In practice, however, the program is not actually budget neutral.
[8] June 4, 2025 Hrg. Tr. at 102:3-105:5.

expert Emily Wolfson testified that money Congress appropriated (*i.e.*, taxpayer money) to other funds is used to supplement the MIPS fund and pay participating health care providers.  Doc. 291-1, Wolfston Dep. at 236:20-237:1, Ex. 4 ("[T]here are additional programs . . . that add to the amount of money that is dispersed . . . one of them is like the exceptional bonus program, where that money is not coming from the penalties.  It's a separate fund.").  Under just one of those programs, the "exceptional bonus program," CMS paid up to $500 million per year from 2019 to 2024 into the MIPS program.  Doc. 218-107, Baker & Grabowski Reb. Rep. at 40.  This $500 million per year is funded separately from Congress, not by the positive and negative payment adjustments of MIPS participants and are not subject to budget neutrality requirements.[9]  Thus, the MIPS program is not budget neutral for every year in Relators' damages model (2019-2024) because Congress appropriated taxpayer dollars to it for exceptional performance bonuses ($2.5 billion total).  Doc. 266 at 40.  "Budget neutrality" would be inadmissible even if the program were truly budget neutral— but because it is not budget neutral, its admission would be even more confusing and unfairly prejudicial.

Relators therefore ask the Court to order that evidence or arguments pertaining to "budget neutrality" or claiming "budget neutrality" are excluded under Rules 401, 402, and 403.  If eCW does obtain testimony from a competent government witness that the program was actually budget neutral and that budget neutrality affects CMS decisions whether or not to deny incentive payments, then this issue can be revisited.  But until then references to budget neutrality should be excluded.

eCW will also take the jury along for its "thought experiment" regarding what would

---

[9] Doc. 266-16, 2019 Quality Payment Program Experience Rep. at 23 ("MACRA directed the Secretary of HHS to provide $500 million annually in exceptional performance bonuses for performance years 2017 through 2022.  Exceptional performance bonuses are not subject to budget neutrality requirements."); 2020 Rep. at 23 ("Exceptional performance adjustments aren't subject to budget neutrality requirements,….").

have happened if the government had decertified the software. *See* June 4, 2025 Hearing Trans. at 98:22-99:3. eCW speculates in its made-up counterfactual scenario that *if* its fraud had been discovered and *if* the software was decertified, *then* some eCW customers would have been eligible for hardship exemptions or able to claim exemptions from reporting and *may have* applied for these exemptions and received MIPS payments anyway.

What would have happened if the government had decertified the software "is a matter of fact that you need a witness for, not a matter of speculation by somebody who has no personal knowledge of the fact." *Id*. at 104:6-12. eCW does not have a single entry on its witness list for an eCW customer. Thus, eCW will not present admissible testimony about what *even one* eCW customer would have done in the alternate universe where eCW was decertified—let alone what its thousands of customers would have done. eCW should not be permitted to solicit any testimony, present any evidence, or make any argument on this issue because it would be rank speculation.[10]

## 10. Treble damages, statutory penalties, and attorneys' fees

eCW and its counsel should be precluded from proffering any evidence or commenting on the fact that the False Claims Act provides for treble damages and penalties for each false claim, or that it allows a relator to recover reasonable attorneys' fees, expenses and costs. *U.S. ex rel. Penelow*, ECF No. 331 at 3, Ex. 1 (granting relators' motion to exclude reference to trebling and penalties); *U.S. ex rel. Raven*, No. 1:11-cv-00994-CAP, 2021 WL 4080863, at *3-4 (N.D. Ga. Mar. 30, 2021) (excluding evidence of treble damages, penalties attorneys' fees,

---

[10] The Court already precluded Drs. Baker and Grabowski from opining about these fanciful counter-factual scenarios that eCW has imagined. *See* June 4, 2025 Hrg. Tr. at 104:6-12 ("But I don't see a role for Baker and Grabowski to opine on this issue that I'm raising. And that is, what would have happened if the government had decertified the software. That may be a theory you can work in some way. I don't think you need him to do that anyway. Again, it is a matter of fact that you need a witness for, not a matter of speculation by somebody who has no personal knowledge of the fact.").

expenses, and costs under the FCA). These matters are irrelevant to the issues to be decided by

the jury and create a substantial risk that the jury may reduce its damage award to offset the

effect of such provisions. They are therefore properly excluded under Rules 401, 402, and 403.

In an FCA case, "the jury's job in this case will be to determine the number of violations

and fix the amount of **actual** damages, if any." *U.S. ex rel. Raven*, 2021 WL 4080863, at \*4

(emphasis added) (citing *U.S. ex rel. Miller v. Bill Harbert Int'l Const. Inc.*, No. CV 95-1231-

RCL, 2007 WL 851868, at \*2 (D.D.C. Mar. 14, 2007)). The application of statutory penalties

and trebling damages, in contrast, are actions within the exclusive province of the Court. *Cook*

*Cty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 132 (2003) (in FCA case the jury's "instruction is to

return a verdict for actual damages, for which the court alone then determines any multiplier, just

as the court alone sets any separate penalty").

As one District of Columbia District Court noted: "[t]here is scarce little probative value

in schooling a jury on penalties and trebling, but a real risk that a jury so schooled might invade

the Court's domain by reducing its damages figure or the number of violations it finds in order to

offset the effect of penalties and trebling." *U.S. ex rel. Miller*, 2007 WL 851868, at \*2.

Therefore, the "risk that a jury could use knowledge of the trebling of damages and statutory

penalties 'as an intimation to keep the damages at a low level, in view of the fact that the amount

allowed by the jury would be multiplied by three.'" *U.S. ex rel. Scutellaro v. Capitol Supply,*

*Inc.*, CV 10-1094 (BAH), 2017 WL 9889370, at \*1 (D.D.C. Sept. 20, 2017) (citation omitted).

An award of attorneys' fees and expenses under the FCA also is a matter for the district

court and not for the jury. 31 U.S.C. § 3730(d)(2) (relators "shall also receive an amount for

reasonable expenses which the *court* finds to have been necessarily incurred, plus reasonable

attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the

defendant." (emphasis added)); *U.S. v. Patrol Servs., Inc.*, 202 F. App'x 357, 359 (11th Cir. 2006) (discussing district court's computation of attorney's fees FCA).  Other courts considering this question have excluded all references to recovery of attorneys' fees and expenses under the FCA.  *U.S. ex rel. Penelow*, ECF No. 331 at 3, Ex. 1 (granting "Relators' Motion to exclude any comment, reference, or evidence relating to Relators' fee agreement with counsel or Relators' ability to recover attorneys' fees, costs, and expenses under the FCA"); *U.S. ex rel. Kiro v. Jiaherb, Inc.,* No. CV 14-2484-RSWL-PLAX, 2019 WL 2869186, at *2 (C.D. Cal. July 3, 2019) (excluding reference to attorneys' fees and expenses under the FCA); *U.S. ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-cv-05002-SMJ, 2021 WL 802125, at *2 (E.D. Wash. Jan. 11, 2021) (excluding reference to treble damages, expenses, attorney fees, and penalties).

## 11. Documents not produced in discovery

eCW should be precluded from using documents it did not produce in discovery.  *See* Fed. R. Civ. P. 37(c)(1).  A party that "fails to provide information ... as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence . . . . at trial unless the failure was substantially justified or is harmless."  *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008); *see also Carrera v. EMD Dales, Inc.*, No CV JKB-17-3066, 2021 WL 5763140, at *2 (D. Md. Feb., 22, 2021) (excluding undisclosed documents); *Rakip v. Paradis Awnings Corp.*, No. 10-200004-CIV, 2010 WL 11469123, at *2 (S.D. Fla. Nov. 8, 2010) (same); *Davis v. Green*, No. 1:12-CV-3549-WSD, 2015 WL 3604891, at *2 (N.D. Ga. June 8, 2015) (same).

After years of discovery and multiple motions to compel against eCW, if eCW failed to disclose something, it can be neither justified nor harmless.

16

**12. eCW's current security and certification processes and practices, and changes to its Software Development Life Cycle after 2021**

eCW will try to introduce evidence about its current security and certification practices and the changes it has made to its software development life cycle ("SDLC") long after the time period at issue. Any argument, testimony, or evidence discussing eCW's current security and certification processes, and changes to its SDLC after 2021 are irrelevant and pose a substantial risk of confusing the jury. This case is about eCW's conduct between 2016 and the end of 2021. *See* Doc. 266-1, ¶ 89. The relevant policies, procedures, and SDLC are those eCW had in place during that time, not several years later. Any updates to eCW's processes after 2021 have no bearing on eCW's certification and security processes between 2016 and 2021 and would only confuse the jury. eCW cannot fill in the gaps in its earlier security and certification infrastructure by introducing evidence of improvements made years later.

The only possible purpose eCW could have for boasting about its current security and certification standards and practices is to convince the jury that what it does now has some relation to what it was doing eight years ago. It needs to do so because it is undisputed that eCW lacked policies and procedures on security and certification when the SQOO began its work in 2017 and its current processes are the result of the CIA compelling eCW to put some policies in place.[11] Not only is the information about eCW's current policies irrelevant, and a misrepresentation of the record, but it is nothing more than eCW's attempt to bolster its past conduct through character evidence of what it claims to be doing now. "Evidence of a person's

---

[11] Doc. 346 (MSJ Order) at 41-42 (noting eCW had no formal compliance structure before the CIA, had no useful documentation of security policies, no well-documented risk management plan, and systemic issues in eCW's quality assurance processes); *see also id.* at 42 (noting eCW failed to implement a traceability matrix proposed by the SQOO until years after it was proposed).

character or character trait is not admissible to prove that on a particular occasion the person

acted in accordance with the character or trait." Fed. R. Evid. 404.

Introducing evidence of eCW's current security and certification practices or the work

that it has done to improve its SDLC will confuse the jury, and unnecessarily lengthen the trial.

It should be excluded under Rules 401, 403, and 404.

Respectfully submitted this 9th day of September, 2025.

/s/ Robert H. Snyder, Jr.
ROBERT H. SNYDER, JR.
  Georgia Bar. No. 404522
  rob@cannellasnyder.com
ALEXANDRA "SACHI" COLE
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
HANNAH D. AMANUEL
  Georgia Bar No. 922743
  hannah@cannellansnyder.com
CHASE LYNDALE
  Georgia Bar No. 183762
  chase@cannellasnyder.com

CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

BRIAN P. ADAMS
  Georgia Bar. No. 142474
  brian@brianadamslaw.com
MARY BETH HAND
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com

ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

ANNA GREEN CROSS
  Georgia Bar No. 306674

18

anna@crosskincaid.com
MEREDITH KINCAID
  Georgia Bar No. 148549
  meredith@crosskincaid.com

CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Avenue, Suite 715
Decatur, GA 30030
(404) 948-3022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 9th day of September, 2025.

*/s/ Robert H. Snyder Jr.*
Robert H. Snyder Jr.
Georgia Bar No. 404522

20