UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>   Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>   Defendant. | CASE NO. 5:18-CV-382 |

**RELATORS' OMNIBUS TRIAL BRIEFS**

Robert H. Snyder, Jr.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
Hannah D. Amanuel
  Georgia Bar No. 922743
  hannah@cannellasnyder.com
Alexandra "Sachi" Cole
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
Devin L. Mashman
  Georgia Bar No. 257588
  devin@cannellasnyder.com
Chase Lyndale
  Georgia Bar No. 183762
  chase@cannellasnyder.com
**CANNELLA SNYDER LLC**
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Brian P. Adams
  Georgia Bar No. 142474
  brian@brianadamslaw.com
Mary Beth Hand
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com
**ADAMS LAW FIRM**
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

Anna Green Cross
  Georgia Bar No. 306674
  anna@crosskincaid.com
Meredith Kincaid
  Georgia Bar No. 148549
  meredith@crosskincaid.com
**CROSS KINCAID BASKAM LLC**
315 W. Ponce de Leon Ave., Ste. 715
Decatur, Georgia 30030
(404) 948-3022

*COUNSEL FOR RELATORS/PLAINTIFFS*

# **Table of Contents**

1.  Relators may Cross-Examine eCW Employees and Representatives about Statements Made in Briefing, Hearings, and Discovery Responses............................................................................ 1

    A.  Statements made in discovery responses, briefs, and at oral argument are admissions in judicio and are conclusive against eCW. ................................................................................ 1

    B.  Statements made by eCW and its counsel are statements of a party opponent and are not hearsay..................................................................................................................................... 2

    C.  eCW interrogatory responses may be used as evidence. ................................................... 2

2.  Trebling and Penalty Assessment by the Court Following a Determination of Liability by the Fact-Finder ............................................................................................................................. 3

3.  *SuperValu* did not change the scienter standard ..................................................................... 5

4.  Evidence Related to Security Beyond that Specifically Tied to a Certification Requirement 8

5.  Admissibility of Evidence Related to eCW's Settlement Agreement with SQOO ................ 9

6.  Government Witnesses and Deliberative Process Privilege .................................................. 11

7.  Relators May Play Video Depositions of Defendant Witnesses Even if eCW Calls Them Live during its Case in Chief ........................................................................................................ 13

8.  Government action and public disclosure bars are not jury issues ....................................... 15

Pursuant to the Court's Order for Pretrial Submissions dated July 16, 2025 (Doc. 349), Relators submit this consolidated trial brief to address issues that may arise during the upcoming trial of this False Claims Act case.

1. **Relators may Cross-Examine eCW Employees and Representatives about Statements Made in Briefing, Hearings, and Discovery Responses**

    Relators may cross-examine eCW employees or representatives about eCW's statements made in briefing, at hearings, and in its discovery responses because (1) statements made in discovery responses, briefs, or during court proceedings are deemed admissions in judicio; (2) any statements made by eCW directly or through its counsel constitute an admission of a party opponent under Fed. R. Evid. 801(d)(2)(A), (D); and (3) Fed. R. Civ. P. 33(b)(3) specifically contemplates that interrogatory responses may be used "to the extent allowed by the Federal Rules of Evidence."

    A. Statements made in discovery responses, briefs, and at oral argument are admissions in judicio and are conclusive against eCW.

    In the Eleventh Circuit, "the general rule [is] that a party is bound by the admissions in his pleadings." *Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983). Such "clear, deliberate, and unequivocal factual assertions- whether made in pleadings, stipulations, responses, to discovery, or orally in trial or court proceedings" – constitute binding admissions in judicio. *In re Malia*, No. 09-42273-MGD, 2012 WL 909738, at *2 (Bankr. N.D. Ga. Feb. 8, 2012).

    "Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Merdian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (quoting *Hill v. Federal Trade Comm'n.*, 124 F.2d 104, 106 (5th Cir. 1941)); *see also Rahn v. Olens*, No. 1:14-cv-3660-RWS, 2015 WL 4717448, at *3 (N.D. Ga. Aug. 7, 2015) ("Admissions or allegations appearing in

1

pleadings are treated as admissions in judicio and, if not withdrawn, are conclusive of the facts contained therein."). Accordingly, Relators may use eCW's admissions in questioning its employees and representatives.

    B. Statements made by eCW and its counsel are statements of a party opponent and are not hearsay.

Any statements made by eCW and its counsel in its discovery responses or briefing in this case are also statements of a party opponent because the statements were either (1) made by eCW directly, or (2) were made by counsel concerning a matter within the scope of the agency - the relevant representation – and were made during the existence of the relationships. *See* Fed. R. Evid. 801(d)(2)(A), (D) (a statement is excluded from the rule against hearsay if it (A) "was made by the part in an individual or representative capacity" or (D) was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed"); *see also Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989) (letter from defense attorney to plaintiff's counsel stating that if the defendant truck driver would not have been able to see pedestrian plaintiff if the plaintiff were directly in front of defendant's truck when traffic light change was properly admitted as an admission of a party opponent). Thus, beyond being admissions in judicio, statements by eCW and its counsel are not hearsay because they are statements of a party opponent.

    C. eCW interrogatory responses may be used as evidence.

Finally, eCW's interrogatory responses may be used as evidence because the Federal Rules of Civil Procedure specifically contemplate such use. Fed. R. Civ. P. 33(c) ("An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence."); *see also AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875, 881 (8th Cir. 2011) ("[I]nterrogatory answers are sworn statements and 'may be used to the extent allowed by the Federal Rules of

Evidence.' Fed. R. Civ. P. 33(c)… Accordingly, the district court did not err in approving AMCO's reliance – and in relying itself – on 3M's interrogatories as a source of actual facts outside the complaint to make coverage determinations."); *Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301, 302 (E.D. Pa. 1971) ("answers to interrogatories posited to a corporation are admissible where they are based on the statements of corporate agents given within the scope of their authority."); *Evans v. Local Union 2127, Int'l Bhd. of Elec. Workers AFL-CIO*, 313 F. Supp. 1354, 1361-62 (N.D. Ga. 1969) ("One purpose of Rule 33 is to allow one party to obtain admissions from another, and thereby save time in preparation and at trial…" (emphasis added)). Because these statements are admissions in judicio or by a party opponent, the interrogatories may be used at trial.

2. **Trebling and Penalty Assessment by the Court Following a Determination of Liability by the Fact-Finder**

In a False Claims Act case, "the jury's job in this case will be to determine the number of violations and fix the amount of actual damages, if any." *U.S. ex rel. Raven*, 2021 WL 4080863, at *4 (citing *U.S. ex rel. Miller v. Bill Harbert Int'l Const. Inc.*, No. CV 95-1231-RCL, 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007)). When the jury finds a defendant to be liable under the False Claims Act, the Act then provides that:

> any person who—
>
> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim
>
> . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of

the act of that person.

31 U.S.C. § 3729(a)(1); *see also United States v. Brekke*, 97 F.3d 1043, 1048 (8th Cir. 1996) ("A multiple recovery of this type is compensatory rather than punitive . . . ."). In other words, once a fact-finder has found liability and determined actual damages and the number of FCA violations by the defendant, the trebling of damages is mandatory,[1] as are the application of civil penalties for each violation. *Cf. Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021) ("all monetary awards in FCA qui tam actions are imposed by the United States because they are mandated by the FCA, a federal law enacted by Congress").

The application of statutory penalties and trebling damages are mandatory actions properly within the exclusive province of the district court alone. *Cook Cty. v. U.S. ex rel. Chandler*, 538 U.S. 119, 132 (2003) (in an FCA case, the jury's "instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty"). The trebling of damages is straightforward—the Court simply multiplies the actual damages determined by the fact-finder by three. *See* 31 U.S.C. § 3729(a)(1) ("3 times the amount of damages which the Government sustains because of the act of that person").

Civil penalties are mandatory and must be imposed on a finding that the defendant violated the FCA. *Id.* (defendant "is liable for a civil penalty"). The monetary range per FCA violation is "adjusted as set forth in the fifth column of table 1 to [28 C.F.R. § 85.5]."[2] 28 C.F.R. § 85.5. This table sets the civil penalty range at **$14,308 to $28,619 per violation** for False

---

[1] There is one inapplicable statutory exception to this—if the relator also committed the violation, but cooperated sufficiently with the government, the damages awarded by the fact-finder are to be doubled, rather than tripled. *See* 31 U.S.C. § 3729(a)(2). This exception does not apply here.

[2] In 2015, Congress passed the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, which requires federal agencies to adjust civil payments to account for inflation. *See* Bipartisan Budget Act of 2015, Pub. L. 114-74, § 701, 129 Stat. 584, 599 (2015) (codified at 28 U.S.C. § 2461 note).

4

Claims Act "civil penalties assessed after July 3, 2025, whose associated [False Claims Act] violations occurred after November 2, 2015." *Id.* The Court determines the appropriate penalty to impose within the statutory framework.

As argued by Relators in their Omnibus Motions in Limine, discussion of trebling damages, penalties, and attorneys' fees and expenses should excluded from the jury trial. If the jury returns a verdict in Relators' favor, then the Court will treble the damages found by the jury, calculate the appropriate penalties, and determine the amount of attorneys' fees and expenses to award before entering a final judgment. This is typically done through a submission of post-trial briefs and the parties have agreed that should be the process here if the Court approves of that procedure.

### 3. *SuperValu* did not change the scienter standard

Based on eCW's representations to this Court and its draft proposed jury charges,[3] eCW will attempt at trial to undermine well-established scienter principles through a misapplication of *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751, 753 (2023). Under the FCA a defendant must act "knowingly."[4] The statute expressly defines "knowingly" to include three mental states: that a person "has actual knowledge of the information;" that a person "acts in deliberate ignorance of the truth or falsity of the information;" and that a person "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §§ 3729(b)(1)(A)(i)-(iii). Like the other FCA elements, a relator can prove scienter using circumstantial evidence.[5]

---

[3] *See, e.g.*, June 4, 2025 Hrg. Tr. at 14:17-25 (eCW counsel describing as "a *SuperValu* question" whether eCW was "subjectively reasonable when it determined that its design choice complied with the regulation, even if the Court's interpretation of the regulation means that there was a nonconformity").
[4] 31 U.S.C. §§ 3729(a)(1)(A) (liability for those "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval"); (a)(1)(B) (liability for those "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim").
[5] *See, e.g.*, *United States v. Adams*, No. 4:18-CV-00191-WMR, 2023 U.S. Dist. LEXIS 198536, at *18-20 (N.D. Ga. Aug. 25, 2023) ("the right to recover under the FCA can be established by circumstantial evidence" (citing *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1977 (5th Cir. 1977))); *United States ex rel. Heath*, 92 F.4th at 663 ("A

5

eCW's statements on knowledge try to undermine the applicable FCA states of mind. eCW's draft jury instructions cite *SuperValu* for the proposition that "[w]hat matters for this purpose is what eCW itself thought and believed" and "[i]f eCW held a belief that its conduct was lawful that proves to have been wrong based on an honest mistake,[6] that is not a sufficient basis to find that it had knowledge of false claims." If eCW's *SuperValu* interpretation is right then "reckless disregard" as proof of knowledge has been deleted from the statute, because in every case without a document admitting fraud the defendant will claim to have "reasonably" believed it complied, and, in eCW's view, thereby avoid liability.

Because eCW has not raised this issue before, Relators are filing this trial brief to explain why eCW's forthcoming arguments misstate both *SuperValu* and the FCA's knowledge standard. In *SuperValu*, the Supreme Court considered whether a defendant's subjective belief that it was submitting false claims must **also** be "objectively unreasonable, as a legal matter, before a defendant could be held liable for 'knowingly' submitting a false claim."[7] *SuperValu*, 598 U.S. at 743. The Court held that objective unreasonableness is not part of the knowledge requirement—rather, proving a defendant "actually thought their claims were false" is sufficient. *Id.* at 748-49. The Supreme Court then reaffirmed that a subjective belief (*i.e.*, actual knowledge) is sufficient, but **not necessary** to prove an FCA violation:

> Under the FCA, petitioners may establish scienter by showing that respondents

---

relator may of course rely on circumstantial evidence to prove *scienter* under the False Claims Act." (citing *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 231 (5th Cir. 2008))).

[6] A defendant cannot manufacture an "honest mistake" by recklessly disregarding the law or burying their head in the sand in order to remain in the dark about whether it is violating the FCA. *See United States v. Middle Ga. Fam. Rehab, LLC*, No. 5:18-cv-00378-TES, 2022 LX 57831, at *34 (M.D. Ga. Apr. 20, 2022) ("the Court finds it difficult to accept the argument that this was just an 'honest mistake' [n]o, this epitomizes 'reckless disregard' of the truth because she 'kn[ew] or ha[d] reason to know of facts that would lead a reasonable person to realize that harm [would be] the likely result.'" (citation omitted))

[7] *SuperValu* considered whether defendant pharmacies had overbilled Medicare for prescription drug sales, when they "are required to bill Medicare and Medicare for their 'usual and customary' drug prices"; thus the jury would ultimately evaluate whether the defendants "correctly understood the relevant standard" of Medicare's usual and customary drug prices and whether SuperValu "submitted inaccurate claims anyway." *SuperValu*, 598 U.S. at 743.

> **(1) actually knew** that their reported prices were not their "usual and customary" prices when they reported those prices, **(2) were aware of a substantial risk** that their higher, retail prices were not their "usual and customary" prices **and intentionally avoided learning whether their reports were accurate**, or **(3) were aware of such a substantial and unjustifiable risk but submitted the claims anyway**. § 3729(b)(1)(A). If petitioners can make that showing, then it does not matter whether some other, objectively reasonable interpretation of "usual and customary" would point to respondents' higher prices. For scienter, it is enough if respondents believed that their claims were not accurate.

*Id.* at 757 (emphasis added). *SuperValu* did not eliminate reckless disregard or deliberate ignorance as states of mind that can support an FCA violation. It simply clarified that the defendant's knowledge is the relevant consideration. Thus, a defendant cannot avoid FCA liability by concocting a post-facto "objectively reasonable" explanation for its conduct if the defendant subjectively believed that it was committing fraud.

    The reckless disregard knowledge standard, however, does not look to only what a defendant claims to have "known" or believed, but what it should have known or believed.[8] *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015) (describing reckless disregard as "extreme version of ordinary negligence"); *see also United States ex rel. Heath v. Wisconsin Bell, Inc.*, 92 F.4th 654, 663 (7th Cir.) (*SuperValu* relates to defendant's beliefs but did not change reckless disregard standard), cert. granted sub nom., aff'd and remanded, 145 S. Ct. 498, 221 L. Ed. 2d 24 (2025). *SuperValu* did not open the doors to allowing defendants to win every case by calling a witness to testify that the company did not "believe" it was committing fraud. Instead, Relators still can prove through direct *or* circumstantial evidence that eCW either actually knew it was committing fraud, should have known it was committing fraud, or deliberately ignored the possibility that it was committing fraud. For both reckless disregard and

---

[8] This is true to a lesser extent for the "deliberate ignorance" standard. Deliberate ignorance is a higher standard of knowledge than reckless disregard, *Urquilla-Diaz*, 780 F. 3d at 1058, n. 15, but still something less than "actual knowledge."

7

deliberate ignorance, what the company claims to have "actually" known is irrelevant. Relators object to eCW's effort to misstate *SuperValu* to mislead the jury about the knowledge standard under the FCA.

4. **Evidence Related to Security Beyond that Specifically Tied to a Certification Requirement**

The Court has made clear that the primary scope of relevant evidence is "whether the software met the relevant certification criteria." *See* June 4, 2025 Hrg. Tr. at 6:21-23. The Court also expressed concern about admitting extensive evidence related to software industry standards and hacking risks, because the relevance of such evidence is not apparent. *See id*. at 41:7-10 (industry standards), 44:7-13 (disclosure risk), 46:23-24 ("The risk or lack of risk flowing from the alleged vulnerabilities, I don't see how that's relevant in the case."), 49:22-24 ("competing expert opinions about the likelihood of hacks" not admissible). At the same time, the Court recognized that some of this type of evidence could be relevant to other elements or admissible for other purposes. Because those issues were not before the Court at that time (outside the *Daubert* context), Relators submit there is some utility in addressing those evidentiary issues more broadly before trial. *See id*. at 63:2-64:16.

For example, eCW appears intent on introducing evidence on its processes and procedures relating to EHR software security, apparently intending to leave the jury with the impression that eCW's security was generally robust, and that the company could not have knowingly submitted false statements or caused false claims to be submitted. *Id*. at 48:1-5. If eCW is permitted to introduce evidence about its purportedly vigorous security-related processes as evidence that it did not intend to falsely attest its compliance with the certification criteria, then Relators must have some opportunity to counter that position with evidence that eCW's security-related processes actually show that it acted with reckless disregard, deliberate

8

ignorance, and perhaps even actual knowledge that its software did not satisfy the certification criteria. *Id*. at 51:8-53:1.

Relators understand there are limits to the scope of what is reasonably admissible on this topic. For example, eCW's processes, procedures, and industry standards unrelated to security and certification issues would not be relevant to scienter and are not properly before the jury. But evidence that eCW would only address easy fixes or implement partial fixes while ignoring larger more cumbersome issues is relevant to whether it could accurately attest that its software complied with the certification requirements. That type of evidence (both direct and circumstantial) demonstrates eCW's state of mind and whether it acted with reckless disregard, or remained deliberately ignorant of whether its software actually complied with the certification requirements to which it attested. Relators recognize that generalized opinions about whether eCW was meeting industry standards are inadmissible, but Relators' experts should be permitted to offer opinions in this limited area, and Relators should be allowed to cross-examine about eCW's security processes to help a jury evaluate whether eCW's approach to the serious security vulnerabilities identified in its software amounted to reckless disregard or deliberate ignorance.

**5. Admissibility of Evidence Related to eCW's Settlement Agreement with SQOO**

The issue of what evidence and testimony should be admitted related to eCW's 2021 settlement with Quandary Peak[9] has been on the Court's radar for some time. *See* Doc. 157 (Rel. Mot. for Sanctions); Doc. 171 (Def. Opp. to Mot. for Sanctions); Doc. 180 (Rel. Reply); Doc. 185 (Oct. 10, 2024 Hrg. Tr.) at 64-80, 88-89; *see also* Doc. 185 at 78:15-18, 22-23 (Court: "eCW wanted these SQOO employees removed[; t]hat's how it's going to get played if it gets played, and anybody who reads this [settlement agreement] would know that"; A. Katz: "[w]e're

---

[9] The Software Quality Oversight Organization ("SQOO") mandated to oversee eCW in the wake of the *Delaney* False Claims Act settlement.

9

prepared to confront that . . . at trial."). This is an important issue, but Relators are sensitive to avoid a minitrial. Relators have identified a limited number of documents that they may introduce at trial on this topic, which demonstrate the positions of eCW, Quandary Peak, and HHS-OIG. Those documents include:

- Aug. 15, 2020 Letter from eCW to Office of Inspector General ("OIG") seeking removal of SQOO;
- Oct. 16, 2020 eCW letter to Quandary Peak asking SQOO to resign, with attachments;
- Oct. 27, 2020 Quandary Peak letter responding eCW allegations, with attachments;
- Nov. 6, 2020 OIG letter to eCW;
- November 30, 2020 email chain among eCW outside counsel, eCW CFO, and Compliance Officer;
- March 2021 Settlement Agreement between Quandary Peak and eCW; and
- March 2021 Individual Settlement Agreement Signed by Brad Ulrich

Additionally, four witnesses have testified via trial depositions regarding this matter that Relators anticipate introducing, including two members of the SQOO, Brad Ulrich and Ajit Dhavle, and two eCW employees Mr. Jaiswal and Mr. Lewis. This is the full extent of the evidence that Relators intend to present to the jury. eCW did not produce any additional documents related to the settlement agreement and no other documents or witnesses have been disclosed or produced on its exhibit or witness lists. As a result, the universe of documents about this issue that might be used at trial are those listed above. *See* Fed. R. 26(a); *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (A party that "fails to provide information ... as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence . . . . at trial unless the failure was substantially justified or is harmless.").

Relators therefore propose that evidence at trial on this topic should be limited to the documents described above and to questions of witnesses about those documents. Limiting this known universe of information is a reasonable approach that allows the parties to address

10

critically relevant arguments related to this key issue without spending needless time at trial.

The Court is well within its discretion to conclude that the limited evidence of eCW's attempt to have Quandary Peak removed as its SQOO and the restrictions placed on Quandary Peak's employees after March 2021 settlement agreement are relevant, that such evidence's probative value is not substantially outweighed by the risk of unfairly prejudicing eCW, and that limiting the universe of documents and witnesses who can testify on this issue will avoid a needless waste of time.

**6. Government Witnesses and Deliberative Process Privilege**

eCW served *Touhy* trial subpoenas on government witnesses from CMS, HHS, ONC, and OIG. It has since narrowed those witnesses to only CMS and ONC in the pretrial order. Both the ONC and CMS witnesses have been approved to testify at trial with some restrictions, including those imposed by *Touhy*. *See United States ex rel Touhy v. Ragen*, 340 U.S. 468-70 (1951) (upholding regulation prohibiting agency employees from releasing documents without consent of agency head); 45 C.F.R. Part 2 (outlining the appropriate procedures that must be followed when documents and/or testimony are requested from an agency).

Most importantly, the government witnesses have not been authorized to testify about any privileged communications and/or information, which includes information, and communications covered by the deliberative process privilege. The deliberative process privilege exists so that officials can candidly communicate among themselves and have an "open and frank discussion" necessary for effective agency decision making. *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 523 U.S. 1, 8-9 (2001). The Supreme Court has held that exposing such materials and considerations to outside review would tend to inhibit the candid discussion necessary for effective government. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975); *EPA v. Mink*, 410 U.S. 73, 87 (1973). The deliberative process

privilege protects evidence from disclosure if it is both pre-decisional and deliberative in nature, containing opinions, recommendations, or advice about agency decisions. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). The privilege covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" as well as testimony about those topics. *In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 695 (N.D. Ga. 1998) (Murphy, J.) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)); *United States v. Zak*, No. 1:18-CV-5774-AT, 2021 WL 4259037, at *2 (N.D. Ga. July 8, 2021).

Relevant here, the deliberative processes privilege will prevent both the ONC and CMS witnesses from testifying about why ONC and CMS did, or did not, take specific action against eCW or eCW customers at any point in time. Understandably, the jury would likely want to hear such testimony, but the deliberative process privilege prevents it. As a result, the jury may be left with an improper impression that the ONC and CMS witnesses' silence on these issues, or their refusal to testify if either party asks a question to which the Court sustains a privilege objection, means that the agency did, or did not, have opinions about eCW's conduct. Given the possibility for a misunderstanding in the jury's mind, Relators request that the jury be given a charge before any government witness testifies as to the scope of authorized testimony that the government witness is permitted to give under *Touhy* rules including the application of the deliberative process privilege, so the jury does not make any inference for, or against, either party based on a government witness's limited testimony.

If allowed, Relators will confer with eCW and the DOJ about an appropriate agreed upon jury charge to submit to the Court before trial.

7. **Relators May Play Video Depositions of Defendant Witnesses Even if eCW Calls Them Live during its Case in Chief**

eCW objects to Relators playing trial video depositions of any witness who eCW produces at trial. Presently that includes eCW's CEO Girish Navani and Chief Compliance Officer Michael Laycob.[10] Despite eCW's objections, Relators should be permitted to play both the Navani and Laycob trial depositions during their case in chief regardless of whether eCW says they will appear at trial.

Under Federal Rule of Civil Procedure 32(a)(1), "all or part of a deposition may be used against a party … [if] the party was present or represented at the taking of the deposition; it is used to the extent it would be admissible under the Federal Rules of Evidence; and the use is allowed by Rule 32(a)(2) through (8)." Rule 32 provides several allowable uses of depositions at trial. Notably here "an adverse party may use for *any purpose* the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6)." That objection applies to both Mr. Navani (eCW CEO) and Mr. Laycob (eCW Chief Compliance Officer and Treasurer).[11]

eCW's objection to Relators' playing the Navani and Laycob depositions is based on an obvious attempt to force the jury to sit through a lengthy and off topic direct examination of those witnesses during Relators' case in chief. When eCW first objected to Relators' notice of trial deposition of Mr. Navani it offered to produce him at trial, but refused to agree that eCW produce him only for cross-examination only during Relators' case. *See* Jan. 10, 2025 email from Geoff Wyatt to Kim Tavalero. But Relators bear the burden of proof and get to decide how

---

[10] There are several other witnesses that both parties have agreed can be presented by video deposition, but who appear on the parties' may call list. Those are Rahul Jaiswal, Matt Lewis, and Jordan Madhusudhan.
[11] Rule 32(b)(4) also allows the deposition to be used at trial if the witness is more than 100 miles from the trial. All the eCW witnesses live in Massachusetts and thus are more than 100 miles from Macon.

13

they present their case. *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 297 (S.D.N.Y. 2009) (modifying standard order of proof would prejudice plaintiff's priority at trial as party bearing burden of proof and exacerbate jury confusion). That extends to which witnesses to call during their case in chief, the order of those witnesses, which questions to ask, and what evidence to present. It also extends to limiting eCW's ability to conduct full direct examinations of its own witnesses during Relators' case in chief. If eCW wants to examine its own witnesses at trial, it should do so during its case. *See, e.g., Benson v. Facemyer*, No. 1:13-CV-595 (WSD), 2015 WL 5737340, at *3, n. 9 (N.D. Ga. Sept. 30, 2015) (defendant called on cross for plaintiff's case-in-chief and was called again during defendant's case-in-chief); *Coachman v. Seattle Auto Mgmt. Inc.*, No. 17-187 (RSM), 2018 WL 4510067, at *2 (W.D. Wash. Sept. 20, 2018) ("The Court is not inclined to allow Defendants to conduct direct examination during Plaintiff's case-in-chief without stipulation between the parties."); *Argentine v. United Steelworkers of Am.*, AFL-CIO, 287 F.3d 476, 486 (6th Cir. 2002) (affirming trial court's decision to delay examination of a witness called during the plaintiff's case-in-chief until the defense's own case-in-chief where the witness was "essentially a [defense] witness" and thus the questioning would be a cross-examination in form only); *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 728 (E.D. Wis. 2008) ("one-appearance" rule would not apply to key witness since scope of direct examination was likely to be time-consuming and to distract from presentation of plaintiff's case).

With respect to playing of Mr. Navani's deposition during Relators' case, any basis for eCW to object is now long gone. After the Court stated that Relators could depose Mr. Navani for trial over eCW's objection, Relators agreed to limit their examination to no more than three hours and to provide a draft exhibit list before the deposition. Relators completed Mr. Navani's

14

deposition in less than three hours as agreed.  Because eCW did not question Mr. Navani at the deposition, eCW necessarily will have to call him at trial.  Thus, Relators can play their trial deposition of Mr. Navani during their case in chief.  If eCW wants to call Mr. Navani live it can do so during its case (subject to additional cross-examination) and he will only be required to testify once at trial.  That is proper and makes perfect sense.

Unlike Mr. Navani, eCW has stated that Mr. Laycob will attend the entire trial as eCW's corporate representative.  Relators are considering whether they will call Mr. Laycob on cross-examination during their case in chief since he will be present in the Court during their case in chief.  If they do so, this argument would be moot.  But if Relators choose not to call Mr. Laycob live during their case in chief, they should be allowed to play their individual trial video cross of Mr. Laycob.  If eCW opts to call Mr. Laycob live, it can do so during its case without any disruption to Mr. Laycob's schedule.

## 8. Government action and public disclosure bars are not jury issues

eCW has submitted proposed jury charges on the public disclosure and the government action bars.  But both the government action and public disclosure bars are issues properly decided by the Court, not the jury.  *See, e.g.,* 31 U.S.C.A. § 3730(e)(3)-(4).  Therefore, there should be no argument made or evidence presented to the jury concerning either bar, nor should the jury be charged on either issue.

The text of the public disclosure bar makes it clear that this is a decision that the Court makes, *i.e.* "the ***court shall dismiss*** an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C.A. § 3730(e)(4)(A).  Legal scholars agree that "no jury

15

instructions are needed on the Act's public disclosure and original source provisions."[12] Further, courts throughout the country have repeatedly recognized that it is the **court**, not a jury, that makes the decision regarding whether these bars apply.[13] Finally, based upon Relators' counsel's review, no case has even contemplated these bars being an issue for jury determination.

Here, the Court properly evaluated both bars and properly rejected dismissal. *See* Doc. 345 pp. 53-54. When considering eCW's government action and public disclosure bar arguments, the Court held that "the Court cannot say as a matter of law that Relators' false CEHRT attestation allegations are barred in their entirety." *Id.* That is the end of both issues because a jury cannot dismiss Relators' case under either bar.

---

[12] James B. Helmer, Jr. & Erin M. Campbell, Jury Instructions for False Claims Act Cases, 84 U. Cin. L. Rev. 943, 1021 (2016) ("Since this 2010 amendment to the False Claims Act's public disclosure bar made that bar no longer jurisdictional, but only a matter for consideration on a motion to dismiss (31 U.S.C. § 3730(e)(4)(A) (2010)), no jury instructions are needed on the Act's public disclosure and original source provisions.").

[13] *See, e.g., United States v. Molina Healthcare of New Mexico, Inc.,* CIV 16-1148 JB/KK, 2024 WL 4002950, at *21 (D.N.M. Aug. 30, 2024) (emphasis added) ("To decide whether the public disclosure bar requires dismissal of a relator's claims, ***the Court examines*** whether the claims in the complaint involve 'substantially the same allegations or transactions' as the publicly disclosed information, and whether the disclosures at issue are made public in one of the FCA's specified sources."); *United States ex rel. Schnupp v. Blair Pharmacy*, CV ELH-17-2335, 2025 WL 1331906, at *3 (D. Md. May 7, 2025) (emphasis added) "(The public disclosure bar ***requires the Court to consider*** three questions: (1) is there a qualifying public disclosure? (2) if yes, is the disclosed information the basis of the relator's suit? (3) and, if so, is the relator the original source of that information?"); *United States v. Coloplast Corp.*, 327 F. Supp. 3d 358, 362 (D. Mass. 2018) (emphasis added) ("Proceeding cautiously, therefore, ***this court determines applicability of the government action bar***…."); *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 267-268 (E.D. Pa. 2020) (**district court** determining whether the public disclosure and government action bars apply).

16

Respectfully submitted this 9th day of September, 2025.

/s/ Robert H. Snyder, Jr.
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 9th day of September 2025.

>*/s/ Robert H. Snyder, Jr.*
>Robert H. Snyder, Jr.
>Georgia Bar No. 404522
>
>*Counsel for Relators/Plaintiffs*