**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.,* | ) | No. 5:18-CV-382 |
| ALEX PERMENTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | Honorable Marc T. Treadwell |
| eCLINICALWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**DEFENDANT eCLINICALWORKS, LLC'S TRIAL BRIEF**</u>

<u>**TABLE OF CONTENTS**</u>

I.    SCOPE OF RELEVANT EVIDENCE ...............................................................................1

II.   RELATORS BEAR THE BURDEN TO PROVE ALL SUBSTANTIVE
      ELEMENTS OF THEIR FCA CLAIM. ..........................................................................2

      A.    *Falsity:* "Falsity" requires more than a difference of opinion. ...............................3

      B.    *Scienter:* Relators must prove subjective knowledge of wrongdoing and
            that government inaction did not negate scienter. ...................................................4

            1.    Good-faith efforts to comply with regulations negate scienter. ..................4

            2.    Disclosure to the government, followed by no government action,
                  defeats scienter. ...............................................................................6

      C.    *Causation:* Causation is a distinct element from materiality. ..................................7

      D.    *Materiality:* A false statement that does not affect the government's
            payment decisions or go to the essence of the bargain with the government
            is not material under the FCA. ..................................................................8

III.  RELATORS MUST PROVE DAMAGES AND NUMBER OF CLAIMS, IF
      ANY. ..............................................................................................................11

      A.    Relators must prove harm to the government. ......................................................11

      B.    Relators must prove the number of false claims based on a rational
            relationship to eCW's conduct. ..........................................................................13

      C.    Any value received by the government mitigates damages. ...................................14

IV.   PUBLIC DISCLOSURE BAR AND ORIGINAL SOURCE REQUIREMENTS
      MUST BE CONSIDERED. ............................................................................................15

      A.    Substantially similar allegations to prior government actions or reported
            allegations do not clear the public disclosure bar. .................................................15

      B.    Relators must be the original source of their allegations to properly bring
            an FCA case on behalf of the government. ............................................................16

V.    THE COURT SHOULD INSTRUCT THE JURY ON THE REQUIREMENTS
      OF EACH CERTIFICATION. ........................................................................................17

VI.   RELATORS' FINANCIAL INCENTIVE IS ADMISSIBLE BIAS EVIDENCE. ...........19

CONCLUSION .......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Aegis Therapies, Inc.*,
    2015 WL 1541491 (S.D. Ga. Mar. 31, 2015) ...................................................................3

*United States v. Approximately 64,695 Pounds of Shark Fins*,
    520 F.3d 976 (9th Cir. 2008) ......................................................................................3

*United States v. AseraCare Inc*,
    2015 WL 12830401 (N.D. Ala. May 20, 2015)............................................................4

*United States v. AseraCare, Inc.*,
    938 F.3d 1278 (11th Cir. 2019) ...........................................................................3, 19

*United States v. Hibbs*,
    568 F.2d 347 (3d Cir. 1977)...............................................................................14, 15

*United States v. NEC Corp.*,
    11 F.3d 136 (11th Cir. 1993) .....................................................................................8

*United States v. Saavedra*,
    661 F. App'x 37 (2d Cir. 2016) ...............................................................................14

*United States v. Sanford-Brown, Ltd.*,
    840 F.3d 445 (7th Cir. 2016) ...................................................................................11

*United States v. Sci. Appls Int'l Corp.*,
    626 F.3d 1257 (D.D.C. 2010) ..................................................................................12

*Abbott v. Mega Trucking, LLC*,
    2023 WL 2640203 (M.D. Ala. Mar. 24, 2023)........................................................18

*United States ex rel. Adams v. Dell Comput. Corp.*,
    496 F. Supp. 3d 91 (D.D.C. 2020) ...........................................................................10

*United States ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*,
    816 F.3d 428 (6th Cir. 2016) ...................................................................................16

*Allison v. McGhan Med. Corp.*,
    184 F.3d 1300 (11th Cir. 1999) .................................................................................1

*AMTEC Corp. v. Non-Lethal Def., Inc.*,
    2018 WL 5602906 (N.D. Fla. May 24, 2018) ..........................................................17

*Anderson v. FCA U.S., LLC*,
   2019 WL 826479 (M.D. Ga. Feb. 21, 2019)................................................1

*United States ex rel. Bagley v. TRW, Inc.*,
   2001 WL 35936683 (C.D. Cal. Oct. 17, 2001)............................................18

*Bammerlin v. Navistar Int'l Transp. Corp.*,
   30 F.3d 898 (7th Cir. 1994) .....................................................................17

*United States ex rel. Barber v. Paychex, Inc.*,
   2010 WL 2836333 (S.D. Fla. July 15, 2010)..............................................16

*United States ex rel. Bibby v. Mortg. Invs. Corp.*,
   987 F.3d 1340 (11th Cir. 2021) ............................................................9, 10

*United States ex rel. Bonzani v. United Techs. Corp.*,
   662 F. Supp. 3d 217 (D. Conn. 2023)...................................................9, 11

*United States ex rel. Brown v. BankUnited Tr. 2005-1*,
   235 F.Supp.3d 1343 (S.D. Fla. 2017) ......................................................17

*United States ex rel. Brown v. Walt Disney World Co.*,
   361 F. App'x 66 (11th Cir. 2010) ............................................................16

*United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
   2011 WL 5005313 (E.D. Va. Oct. 19, 2011) .............................................13

*United States ex rel. Cimino v. Int'l Bus. Machs. Corp.*,
   3 F.4th 412 (D.C. Cir. 2021)..................................................................7, 8

*Clausen v. Lab'y Corp. of Am.*,
   290 F.3d 1301 (11th Cir. 2002) ................................................................8

*Corsello v. Lincare, Inc.*,
   428 F.3d 1008 (11th Cir. 2005) ...............................................................13

*United States ex rel. Costner v. U.S.*,
   317 F.3d 883 (8th Cir. 2003) ....................................................................6

*D'Agostino v. ev3, Inc.*,
   845 F.3d 1 (1st Cir. 2016)......................................................................7, 8

*United States ex rel. Davis v. District of Columbia*,
   679 F.3d 832 (D.C. Cir. 2012)................................................................12

*Doe v. Effingham Health Sys. Found., Inc.*,
   2024 WL 3461063 (S.D. Ga. July 17, 2024) .............................................10

*United States ex rel. Doe v. Staples, Inc.*,
    773 F.3d 83 (D.C. Cir. 2014) ............................................................................16

*Dotson v. United States*,
    30 F.4th 1259 (11th Cir. 2022) ........................................................................18

*United States ex rel. DRC, Inc. v. Custer Battles, LLC*,
    472 F. Supp. 2d 787 (E.D. Va. 2007) ................................................................4

*United States ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*,
    370 F. Supp. 2d 18 (D.D.C. 2005) ..................................................................11

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe County*,
    402 F.3d 1092 (11th Cir. 2005) ..........................................................................1

*United States ex rel. Fahn v. GardaWorld Fed. Servs. LLC*,
    2024 WL 1605313 (M.D. Ga. Apr. 12, 2024) ...................................................5

*Graves v. Plaza Med. Ctrs., Corp.*,
    2017 WL 3895438 (S.D. Fla. Sept. 6, 2017) ...................................................19

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*,
    352 F.3d 908 (4th Cir. 2003) ...........................................................................12

*Hays v. Hoffman*,
    325 F.3d 982 (8th Cir. 2003) ...........................................................................14

*United States ex rel. Hearrell v. Allergan, Inc.*,
    2025 WL 675445 (E.D. Tex. Mar. 3, 2025) ......................................................6

*United States ex rel. Hunt v. Cochise Consultancy, Inc.*,
    2025 WL 863466 (N.D. Ala. Mar. 19, 2025) ....................................................6

*Hutchins v. Wilnetz, Goldman & Spitzer*,
    253 F.3d 176 (3d Cir. 2001).............................................................................12

*United States ex rel. Int'l Broth. of Elec. Workers, Local Union No. 98 v. Fairfield Co.*,
    2013 WL 3327505 (E.D. Penn. July 2, 2013)..................................................11

*United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*,
    113 F.4th 1294 (11th Cir. 2024) ......................................................................17

*United States ex rel. Jones v. Mass. Gen. Hosp.*,
    780 F.3d 479 (1st Cir. 2015).............................................................................19

*United States ex rel. Kiro v. Jiaherb, Inc.*,
    2019 WL 2869186 (C.D. Cal. July 3, 2019)....................................................19

*Kisor v. Wilkie*,
    588 U.S. 558 (2019)............................................................................................18

*United States ex rel. Marsteller v. MD Helicopters, Inc.*,
    2021 WL 4409093 (N.D. Ala. Sept. 27, 2021) ..............................................11, 15

*United States ex rel. O'Connor v. USCC Wireless Inv., Inc.*,
    128 F.4th 276 (D.C. Cir. 2025)..........................................................................16

*Olhausen v. Arriva Medical, LLC*,
    124 F.4th 851 (11th Cir. 2024) .........................................................................13

*United States ex rel. Oliver v. The Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) .............................................................................19

*United States ex rel. Petratos v. Genentech Inc.*,
    855 F.3d 481 (3d Cir. 2017)............................................................................9, 10

*United States ex rel. Phalp v. Lincare Holdings, Inc.*,
    116 F. Supp. 3d 1326 (S.D. Fla. 2015) ...............................................................2

*United States ex rel. Phalp v. Lincare Holdings, Inc.*,
    857 F.3d 1148 (11th Cir. 2017) ...........................................................................5

*Ruckh v. Salus Rehab., LLC*,
    963 F.3d 1089 (11th Cir. 2020) .......................................................................8, 10

*United States ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023)......................................................................................3, 4, 5

*United States ex rel. Se. Carpenters Reg'l Council v. Fulton County*,
    2016 WL 4158392 (N.D. Ga. Aug. 5, 2016) ......................................................4

*United States ex rel. Skibo v. Greer Lab'ys, Inc.*,
    841 F. App'x 527 (4th Cir. 2010) (per curiam) ..................................................5

*Surry v. Spears*,
    2012 WL 12931981 (N.D. Ga. Sept. 25, 2012) ................................................18

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
    76 F.4th 1164 (9th Cir. 2023) ...........................................................................15

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    579 U.S. 176 (2016)...................................................................................8, 9, 10

*Urquilla-Diaz v. Kaplan Univ.*,
    780 F.3d 1039 (11th Cir. 2015) .......................................................................5, 6

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ................................................................3

*United States ex rel. Zizic v. Q2Adm'rs, LLC*,
    728 F.3d 228 (3d Cir. 2013)................................................................16

**Statutes**

31 U.S.C. § 3729 *et seq.*............................................................... *passim*

31 U.S.C. § 3730(d)(2) ...........................................................................19

31 U.S.C. § 3730(e)(4)(A) ................................................................ 15-16

31 U.S.C. § 3731(d) ..................................................................................2

42 U.S.C. § 300jj-11(b)...........................................................................10

42 U.S.C. § 1395w-4(q)(6)(F)(i), (ii)......................................................12

**Rules**

Fed. R. Evid. 401 ......................................................................................1

Fed. R. Evid. 403 ......................................................................................1

**Other Authorities**

45 C.F.R. § 170.315(d) ......................................................................17, 19

MEDICARE & MEDICAID SERVS QUALITY PAYMENT PROGRAM, 2025 Special
    Statuses, https://qpp.cms.gov/mips/special-statuses (last visited Aug. 15,
    2025) .................................................................................................12

eClinicalWorks, LLC ("eCW") respectfully submits this trial brief addressing various issues pertinent to the upcoming trial in the above-captioned matter, pursuant to the Court's Order for pretrial submissions (Dkt. No. 349).

## I.    SCOPE OF RELEVANT EVIDENCE

The most fundamental rule of evidence is that of relevance: evidence is only admissible if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401 Adv. Comm. Note, 402; *see also* Fed. R. Evid. 403 (even relevant evidence should be excluded if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). This bedrock principle applies to fact and expert evidence and testimony, alike. *See, e.g.*, *Cook ex rel. Est. of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1111-12 (11th Cir. 2005) ("[A] trial court may exclude expert testimony that is 'imprecise and unspecific'" including testimony that is "not relevant to any fact in issue," or "[w]ithout any explanation of . . . how it may be relevant") (citation omitted). The Court plays an important role as gatekeeper to "keep [such] unreliable and irrelevant information from the jury." *See Anderson v. FCA U.S., LLC*, 2019 WL 826479, at *5 (M.D. Ga. Feb. 21, 2019) (Treadwell, J.) (quoting *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999)).

In this case, the Court has been clear regarding what does and does not fall within the scope of relevant evidence: all evidence offered at trial must be directly linked to a certification criterion at issue in this case. *See* 6/4/25 Hr'g Tr. 25:19-26:11, Dkt. No. 334. As such, Relators should be foreclosed from introducing extraneous, irrelevant evidence that is not directly tied to their certification allegations. Relators' exhibit list—much of which has no clear bearing on certification issues—raises profound concerns that they will seek introduction of evidence

1

on matters this Court has already ruled are irrelevant in an improper attempt to "trash" eCW. *See id.* 25:19-26:1.

Relatedly, ONC's technical requirements, which are at the core of this case, are complex and beyond the ken of lay jurors—and even beyond that of Relators themselves. For that reason, the Court has ruled that Relators may not offer any regulatory opinions. *See id.* 5:20-22, 9:8, 26:7. Guarding against the introduction of such evidence is especially critical here given the serious potential for confusing and misleading testimony and Relators' record in this case of offering their own subjective opinions on certification—despite their own admission that neither possesses any legal or regulatory expertise. *See* Mem. in Supp. of Def. Mot. to Exclude Expert Test. of Relators at 6-7, Dkt. No. 196. For similar reasons, Relators must also be prohibited from offering opinions on extraneous technical points that have not been plausibly connected to the regulatory requirements at issue (which comprises many of the technical opinions offered to date). *See* 6/4/25 Hr'g Tr. 26:7-11; eCW's Mot. to Exclude Rels.' Tech. Allegations Untethered to Cert. Req'ts at 6, Dkt. No. 378. They must not be permitted to introduce this kind of inadmissible evidence.

## II. RELATORS BEAR THE BURDEN TO PROVE ALL SUBSTANTIVE ELEMENTS OF THEIR FCA CLAIM.

To prove their certification claims, Relators must prove all elements of a False Claims Act ("FCA") violation by a preponderance of the evidence. *See* 31 U.S.C. § 3731(d); *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1344 (S.D. Fla. 2015). Here, it is not enough to show that one of their alleged nonconformities existed in Version 11 of eCW's certified EHR software (the "Software"). They must also show that eCW made a ***false statement*** that the Software met ONC's certification criteria; *and* it did so ***knowingly***; *and* the false statement ***caused*** ONC to certify the Software; *and* the false statement was ***material*** to the

government's payment decision (here, for MIPS); *and* the false statement resulted in the government's reimbursement of ***false*** claims for federal incentive payments—payment it would not have otherwise made. *See generally United States v. AseraCare, Inc.*, 938 F.3d 1278, 1284 (11th Cir. 2019); *see also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749-50 (2023). Relators have made myriad allegations throughout this case, and at trial they will have the burden of proving each FCA element for each of the technical allegations they choose to pursue. If they fail on any one element, then there can be no FCA liability.

    A.    *Falsity:* **"Falsity" requires more than a difference of opinion.**

Satisfaction of the falsity requirement in an FCA case "requires proof of an objective falsehood." *United States v. Aegis Therapies, Inc.*, 2015 WL 1541491, at *11 (S.D. Ga. Mar. 31, 2015) (citation and internal quotation marks omitted). As such, "[a] properly formed and sincerely held [ ] judgment is not untrue even if a different [expert] later contends that the judgment is wrong." *AseraCare, Inc.*, 938 F.3d at 1297, 1298 n.11 ("[D]ifferences in interpretation growing out of a disputed legal question are [ ] not false under the FCA."); *accord United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008) ("An FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise [regulatory] provision."). This comports with common sense in the face of a federal law that carries severe penalties and consequences for parties found in violation. It is for that reason that the bar for falsity is set high—at objective falsity. Otherwise, the risk that parties could find themselves liable under the FCA without ever having known they were out of compliance—and therefore with no fair opportunity to cure—would be intolerably high in a system that is built on basic fairness principles, such as proper notice. *See generally United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 980 (9th Cir. 2008)

("[W]here the regulation is not sufficiently clear to warn a party about what is expected of it" or "to know what is prohibited," notice is not sufficient.).

Therefore, to meet their burden of proving objective falsity, Relators must offer more than a reasonable difference of opinion when it comes to these rarely litigated, complex and technical certification criteria. To do so, they will have to overcome evidence such as, *inter alia*, testimony from SQOO team leader, Brad Ulrich, that the language of the security-related certification at issue does not always provide for "black and white answer[s]" about what is required for compliance.  As he explained, the open-ended and subjective nature of the certification criteria at issue invites "differences of opinions" as to whether a certification standard is met.  Ulrich Dep. 144:2-11, Apr. 30, 2024, Dkt. 218-44.  If Relators fail to offer more than evidence demonstrating that reasonable minds can differ, then they will have failed to prove falsity, and therefore their FCA claim, as a matter of law.  *United States v. AseraCare Inc*, 2015 WL 12830401, at *2 (N.D. Ala. May 20, 2015) ("Without a false claim, no FCA liability exists."); *see also United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 472 F. Supp. 2d 787, 797 (E.D. Va. 2007) ("It is well-established that the FCA requires proof of an objective falsehood.").

**B.**    ***Scienter:*** **Relators must prove subjective knowledge of wrongdoing and that government inaction did not negate scienter.**

**1.**    **Good-faith efforts to comply with regulations negate scienter.**

As the Supreme Court has made clear, "[t]he FCA's scienter element refers to [a defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *SuperValu*, 598 U.S. at 749.  Indeed, the FCA is "not intended to 'punish[ ] honest mistakes or incorrect claims submitted through mere negligence.'" *United States ex rel. Se. Carpenters Reg'l Council v. Fulton County*, 2016 WL 4158392, at *11 (N.D.

Ga. Aug. 5, 2016) (quoting *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015)).  Absent evidence that a defendant "*knowingly* disregard[ed] the proper interpretation of an ambiguous regulation," the defendant's honest efforts to comply with the law must defeat scienter as a matter of law.  *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1155-56 (11th Cir. 2017) (emphasis added); *see also United States ex rel. Skibo v. Greer Lab'ys, Inc.*, 841 F. App'x 527, 534-35 (4th Cir. 2010) (per curiam) (affirming summary judgment because relators failed to establish scienter where there were no clear prohibitions of the defendant's conduct in the relevant regulations).

As recognized by this Court, to establish scienter, Relators "must demonstrate 'either actual knowledge, deliberate ignorance, or recklessness.'"  *United States ex rel. Fahn v. GardaWorld Fed. Servs. LLC*, 2024 WL 1605313, at *7 (M.D. Ga. Apr. 12, 2024) (Treadwell, C.J.) (quoting *SuperValu*, 598 U.S. at 750).  Neither Relators' beliefs regarding how an objectively reasonable person would have interpreted the regulations at issue nor their own personal interpretations are relevant.  Rather, the relevant standard is whether eCW knew or "was subjectively 'conscious of a substantial and unjustifiable risk that'" its representations about the regulatory compliance of its EHR software were false but made the representations anyway.  *Id.*

Here, to meet its burden of proving eCW acted with the requisite scienter to be held liable, Relators will have to overcome evidence of eCW's industry-leading approach to compliance, including, *inter alia*, its years-long commitment to meeting certification criteria and consistent collaboration with multiple agencies overseeing its certification processes and enforcing the Corporate Integrity Agreement ("CIA") it entered as part of the *Delaney* settlement (if admitted).  If they cannot, Relators will fall short of their burden on scienter, and their FCA

claim will fail as a matter of law.  Indeed, "the [FCA] statute's language makes plain that liability does not attach to innocent mistakes or simple negligence[.]" *Urquilla-Diaz*, 780 F.3d at 1058.

### 2.   Disclosure to the government, followed by no government action, defeats scienter.

Because a defendant cannot *know* that it is making a false statement when it understands its actions to be approved by the government, when a defendant makes a disclosure in compliance with a CIA and the government takes no action following the report, scienter is negated.  *See, e.g.*, *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 2025 WL 863466, at *5 (N.D. Ala. Mar. 19, 2025), *appeal docketed*, No. 25-11147 (11th Cir. Apr. 9, 2025) ("[B]ecause scienter is a necessary element of [a] false certification claim, government knowledge of specific problems with a claim before the claim is submitted can wipe out the FCA's required scienter element, and therefore the entire false certification claim.") (citation and internal quotation marks omitted); *United States ex rel. Costner v. U.S.*, 317 F.3d 883, 888 (8th Cir. 2003) ("A contractor that is open with the government regarding problems and limitations and engages in a cooperative effort with the government to find a solution lacks the intent required by the Act.") (citation omitted); *see also United States ex rel. Hearrell v. Allergan, Inc.*, 2025 WL 675445, at *2 (E.D. Tex. Mar. 3, 2025) ("If the government knows the particulars of a claim and approves it, that claim cannot be fraudulent.").

Here, where eCW was subject to a CIA that included consistent oversight from the government-appointed SQOO, Relators will have to prove scienter in the face of evidence detailing significant government access to eCW's processes and the government's unfettered ability to undertake surveillance and oversight into any issues that may have arisen in eCW's Software.  If they are not able to carry their burden of proving eCW made any false statements

with this requisite knowledge, including based on government knowledge of potential issues in the Software, then they will fail to prove scienter, and therefore their FCA claim.

**C.**    *Causation:* **Causation is a distinct element from materiality.**

Causation is a necessary, independent element of the FCA that requires proof of "both actual and proximate cause." *United States ex rel. Cimino v. Int'l Bus. Machs. Corp.*, 3 F.4th 412, 420 (D.C. Cir. 2021). "Actual cause is practically synonymous with but-for cause." *Id.* To meet their burden under this element, Relators must show that eCW caused false statements to be made to ONC about the conformity of its Software with the ONC criteria, and as a result, eCW obtained or maintained certification from ONC for its Software that it otherwise would not have. *See D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) (When a relator alleges that a defendant made fraudulent misrepresentations regarding the conformity of its product with government regulations, the relator must prove that the fraud "actually cause[d] the [regulatory agency] to grant approval it otherwise would not have.").

Relators have attempted to frame the causation inquiry as focused on whether the certification of eCW's EHR software led the government to pay doctors MIPS incentive payments they otherwise would not have received. *See, e.g.*, Rels. Resp. to eCW Mot. Sum. J. at 15-16, Dkt. No. 266. But this framing improperly conflates causation with materiality—distinct elements under the FCA. *See Cimino*, 3 F. 4th at 419 ("[M]ateriality and causation are not the same"; materiality means "having a natural tendency to influence," while causation "refers to whether fraud in fact caused the government" to act.) (citation and internal quotation marks omitted). Thus, Relators have the burden of proving at least two things to establish causation: (1) ONC would not have certified or maintained certification of eCW's software but for eCW's representations regarding the conformity of its software with ONC certification criteria, and (2) ONC's certification of eCW's software was a reasonably foreseeable outcome of eCW's alleged

conduct.  *See id.*  On this point, Relators will need to overcome evidence, for example, that eCW did not receive any notice of nonconformity, and that ONC never withdrew or suspended certification of its Software.  *See D'Agostino*, 845 F.3d at 7 (finding the government's "failure . . . to withdraw its approval of [defendant's product] in the face of [a relator's] allegations precludes" a relator from proving a causal relationship).  If they do not, their claim will fail for lack of causation.

**D.    *Materiality:* A false statement that does not affect the government's payment decisions or go to the essence of the bargain with the government is not material under the FCA.**

One of the primary purposes of the FCA is to make the government whole for payments it would not have made had it known of certain fraudulent activity. *Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (noting that the FCA "does not create liability merely [for] disregard[ing] … Government regulations" instead, liability attaches when the "Government [is made] to pay amounts it does not owe."); *see also United States v. NEC Corp.*, 11 F.3d 136, 138 (11th Cir. 1993), as amended (Jan. 12, 1994) ("[T]he chief purpose of the [FCA] statutes [is] to provide for restitution to the government of money taken from it by fraud, and … to make sure that the government would be made completely whole") (internal quotation marks and citation omitted).  The FCA is "not a wide-ranging tool to combat failures to comply with even important government regulations."  *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1109 (11th Cir. 2020). The materiality standard thus seeks to weed out "garden-variety … regulatory violations" and "minor or insubstantial noncompliance."  *Id*. (citation and internal quotation marks omitted).

Therefore, to satisfy the materiality requirement—which the Supreme Court has deemed "demanding" and "rigorous," *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016)—Relators must show that the government's knowing about eCW's alleged misrepresentations regarding the conformity of its Software with the certification criteria

would have affected its decision to make incentive payments to health care providers attesting to use of a CEHRT based on their use of the Software. *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492 (3d Cir. 2017) ("Because the False Claims Act was passed to protect the federal treasury, and since the Government decides on payment, it is the Government's materiality decision that ultimately matters.") (citations omitted).

As part of this showing, Relators must demonstrate not merely that the government would raise objections to certification nonconformities, but that such nonconformities would be so intolerable as to compel the government to refuse to make payments as a result of them. *United States ex rel. Bonzani v. United Techs. Corp.*, 662 F. Supp. 3d 217, 232-33, 235 (D. Conn. 2023) ("[M]ere speculation about how alleged violations 'may' or 'could cause negative consequences'" is not sufficient to prove "that the violations go to the heart of the bargain."). Indeed, the Supreme Court has made clear that "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment" or because "the Government would have the ***option*** to decline to pay if it knew of the defendant's noncompliance." *Escobar*, 579 U.S. at 194 (emphasis added). Quite the opposite: "The False Claims Act does not adopt such an extraordinarily expansive view of liability." *Id.* at 196.

FCA materiality analysis balances three relevant factors: "(1) whether the requirement is a condition of the government's payment; (2) whether the misrepresentations went to the 'essence of the bargain' with the government; and (3) to the extent the government had actual knowledge of the misrepresentations, the effect on the government's behavior." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021).

As to factors 1 and 3, Relators must show not merely that MIPS payments **technically** require certification on paper, but that CMS **in practice** rejects claims based on nonconformity. *Ruckh*, 963 F.3d at 1109 (finding no materiality where "relator did not introduce evidence that the state in fact declines to pay claims when it learns [of the alleged fraud]"). That will be a tall order in light of the undisputed evidence in the record that CMS has never refused to make MIPS incentive payments based on any perceived violations. *Id.* (noting that the government's "actual knowledge" of a violation without "ever declin[ing] payment for, or otherwise enforc[ing], these types of violations" is, as the *Escobar* court noted, "very strong evidence that those requirements are not material"); *see also Petratos*, 855 F.3d at 490 ("[A] misrepresentation is not 'material to the Government's payment decision,' when … the Government would have paid the claims with full knowledge of the alleged noncompliance.") (citation omitted).

The second factor requires that the alleged misrepresentations go to the "essence of the bargain with the government." *See Bibby*, 987 F.3d at 1347. For this, Relators must look to the Health Information Technology for Economic and Clinical Health (HITECH) Act's purpose, which is to promote the use of EHRs, which facilitate efficient workflows, reduce the likelihood of human error, and significantly improve patient outcomes. *Doe v. Effingham Health Sys. Found., Inc.*, 2024 WL 3461063, at *4 (S.D. Ga. July 17, 2024) ("[Congress's] goal [in enacting the HITECH Act] was to encourage healthcare providers to adopt and use health information technology, such as electronic health records (EHR).") (citing 42 U.S.C. § 300jj-11(b)). The purpose of the HITECH Act is not to prevent every software program with technical compliance problems from reaching the public. *Cf. United States ex rel. Adams v. Dell Comput. Corp.*, 496 F. Supp. 3d 91, 100 (D.D.C. 2020) (finding government security policies did "not require defect-free products, merely that the [companies] limit the vulnerabilities and attempt to remedy them if

located.").  As such, Relators must show that the purported bugs they claim to have identified in the software actually had an "impact" on the "goals" set forth in the HITECH Act.  *Bonzani*, 662 F. Supp. at 232-33, 235.  If they fail to show by a preponderance of the evidence that eCW's conduct tips the balance of these three materiality factors to their side, they cannot prove materiality.  *See generally, e.g.*, *United States v. Sanford-Brown, Ltd*., 840 F.3d 445, 447 (7th Cir. 2016) (affirming summary judgment for lack of materiality where "the subsidizing agency and other federal agencies" had "already examined [defendant] multiple times over" and concluded "neither administrative penalties nor termination was warranted.") (internal quotations omitted).

## III.    RELATORS MUST PROVE DAMAGES AND NUMBER OF CLAIMS, IF ANY.

Under the FCA, damages must be proven with reasonable certainty.  *See generally, e.g.*, *U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*, 370 F. Supp. 2d 18, 55 (D.D.C. 2005) ("Thus, a relator must establish both that the fact of the damages is certain and that the amount of damages can be reasonably computed").  Where the "amount may [be] difficult to quantify," the parties must "present evidence to aid the jury in determining what the government may have lost or gained. . ."  *United States ex rel. Marsteller v. MD Helicopters, Inc.*, 2021 WL 4409093, at *6 (N.D. Ala. Sept. 27, 2021) (holding that jury was permitted to weigh the value of the services and goods provided, even if it was difficult to quantify in determining actual damages under the contracts).

### A.    Relators must prove harm to the government.

Before the jury calculates damages, Relators bear the burden of proving that the government actually suffered financial harm as a result of eCW's actions.  *See U.S. ex rel. Int'l Broth. of Elec. Workers, Local Union No. 98 v. Fairfield Co.*, 2013 WL 3327505, at *5 (E.D. Penn. July 2, 2013) ("To recover damages under this theory, the [Relator] must show that the government has paid a 'claim' based on a certificate containing false information which has

resulted in damages sustained by reason of the doing or committing the act.") (internal quotations omitted); *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 839 (D.C. Cir. 2012) ("False Claims Act damages are meant to 'put[ ] the government in the same position as it would have been if the defendant's claims had not been false.'") (alteration in original) (quoting *United States v. Sci. Appls Int'l Corp.*, 626 F.3d 1257, 1278 (D.D.C. 2010)).

The existence of other circumstances that would have resulted in the government's making the same payments, even without any false statements by a defendant, will result in the failure of that FCA claim. *Hutchins v. Wilnetz, Goldman & Spitzer*, 253 F.3d 176, 184 (3d Cir. 2001) ("[S]ubmission of false claims to the United States government for approval which do not or would not cause financial loss to the government are not within the purview of the False Claims Act."). Here, myriad exceptions and exemptions exist for health care providers who are not using a CEHRT, but are seeking MIPS payments anyway. *See* CENTERS FOR MEDICARE & MEDICAID SERVS QUALITY PAYMENT PROGRAM, 2025 Special Statuses, https://qpp.cms.gov/mips/special-statuses (last visited Aug. 15, 2025). Moreover, the MIPS incentive program was designed to be budget neutral. 42 U.S.C. § 1395w-4(q)(6)(F)(i), (ii). To carry their burden on the threshold issue of government harm, Relators must prove that the government would not have made these same payments or expended the same amount of money, regardless of eCW's certification status. If they cannot, no reasonable jury can find any damages associated with those health care providers. *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922-23 (4th Cir. 2003) (affirming award of zero damages because relator "presented no evidence that the government did not get what it paid for or that another firm could have performed the work for less."); *see also Davis*, 679 F.3d at 839-40 (holding that "[t]he government got what it paid for and there are no damages" in an FCA case

involving false claims for Medicaid-reimbursable transportation services for special education students).

**B.**    **Relators must prove the number of false claims based on a rational relationship to eCW's conduct.**

If Relators can clear the hurdle of harm to the government, then they next bear the burden to prove the number of false claims submitted. *See United States ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2011 WL 5005313, at *7–8 (E.D. Va. Oct. 19, 2011) ("[T]he government needed to prove the number of vouchers that the defendants caused the freight forwarders to file[.]"). The jury cannot speculate on the number of false claims. *See id.* at 7, 13 (overturning jury verdict where government did not introduce evidence "to establish the number of [claims] that caused or in any way related to the $865,000 in damages" and thus, there "was insufficient evidence from which a jury could determine without speculating the number of false claims filed"). Relators intend to argue that the jury should count the number of claims submitted by health care providers for MIPS payments; however, counting the claims submitted by health care providers would result in an arbitrary number, as well as statutory penalties for claims that *are not false* and represent services that *were provided to patients*. Indeed, there is no allegation of any falsity in the claims themselves—the health care providers attested to use of a CEHRT and eCW's Software *was certified* for services they *did provide* to their patients. *See, e.g.*, *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) ("Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government."); *see also Olhausen v. Arriva Medical, LLC*, 124 F.4th 851, 861 (11th Cir. 2024) ("The bottom line is that a relator must provide some indicia of reliability ... to support the allegation of an *actual false claim* for payment being made to the Government." (internal citation and quotation omitted)).

13

For purposes of quantifying the number of claims, and therefore statutory penalties (if any) for an FCA claim, "one-time" regulatory violations cannot be used to amass damages for thousands of false claims with "no rational relationship" to a defendant's conduct. *See Hays v. Hoffman*, 325 F.3d 982, 993–94 (8th Cir. 2003) (reducing penalties where the district court determined an excessive number of claims stemming from only eight initial falsities). Instead, the jury should only impose penalties based on "the number of false statements." *United States v. Saavedra*, 661 F. App'x 37, 45 (2d Cir. 2016). "[N]othing in the statute requires the court to impose penalties based on the number of false *claims* under § 3729(a)(1)(A), instead of the number of false *statements* under § 3729(a)(1)(B)." *Id*. This is because "it is [the] conduct of the [defendant], not the disposition of the claims by the government, that creates FCA liability." *Hays*, 325 F.3d at 993–94. Therefore, the proper quantification of any false claims a jury may find in this case, if any, is the number of false statements made by eCW regarding the certification conformity of its Software. This is this the only measure that bears any "rational relationship" to its alleged conduct. *Id.*

**C.    Any value received by the government mitigates damages.**

Congress, in passing the FCA, "intended to be fair in determining what damages the United States may recover[.]" *United States v. Hibbs*, 568 F.2d 347, 349 (3d Cir. 1977). Thus, "decisional law sets the damages as the difference in cost between that contracted for and that received." *Id*. at 351. Simply put, the government is "required to pay for … that part of the [product] which met the requirements of the statute under consideration." *Id*. at 352.

Because the government must pay for value it received, it is improper for Relators to seek damages in the form of a full refund on behalf of the government when the product at issue did, in fact, provide value. For instance, in *Hibbs*, the defendant was a "real estate broker who submitted certifications to the Federal Housing Administration misrepresenting the condition of

certain residential properties," including regarding "standards and conditions prescribed by [certain] regulations." *Id.* at 349. The agency acted on those misrepresentations and "was later required to pay the mortgages when defaults occurred." *Id.* But apart from the false certification, the homes were what the government contracted for, so the government could not recover full refunds. *See id.* at 351 (finding the "government's actual damage was the decrease in worth … measured by the difference in value between the houses as falsely represented, and as they actually were.").

Similarly, to establish FCA damages Relators bear the burden of "present[ing] some evidence to establish the difference in value between the goods as actually provided and as promised." *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1175 (9th Cir. 2023) (holding that the government was not entitled to damages where it did not present evidence about how "noncompliance with industry standards calculably correlated" with a loss in value). Here, the jury must decide the value of the Software that healthcare providers used to their, and the government's, benefit, and subtract that from any damages award it may ultimately assess, if any. *See, e.g.*, *United States ex rel. Marstellar v. MD Helicopters, Inc.*, 2021 WL 4409093, at *7 (N.D. Ala. Sept. 27, 2021) (holding that "whether and to what extent value was actually conferred" to the government "was not for the court to decide").

## IV.    PUBLIC DISCLOSURE BAR AND ORIGINAL SOURCE REQUIREMENTS MUST BE CONSIDERED.

### A.    Substantially similar allegations to prior government actions or reported allegations do not clear the public disclosure bar.

The FCA provides that a *qui tam* action must be dismissed if "substantially the same allegations or transaction as alleged in the action . . . were publicly disclosed (i) in a Federal criminal, civil or administrative hearing in which the Government or its agent [was] a party; (ii) in a . . . Federal report, hearing, audit, or investigation; or (iii) from the news media." 31 U.S.C.

§ 3730(e)(4)(A). The Eleventh Circuit has interpreted this provision to "preclude[] suits based *in any part* on publicly disclosed information." *United States ex rel. Barber v. Paychex, Inc.*, 2010 WL 2836333, at *8 (S.D. Fla. July 15, 2010) (quoting *United States ex rel. Brown v. Walt Disney World Co.*, 361 F. App'x 66, 68 (11th Cir. 2010)) (emphasis added).

The public disclosure bar precludes claims that fail to do more than "describe[] a [scheme] that is merely a continuation of, and therefore substantially the same as, the scheme disclosed in the [prior] *qui tam* action." *United States ex rel. O'Connor v. USCC Wireless Inv., Inc.*, 128 F.4th 276, 286 (D.C. Cir. 2025); *United States ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 432 (6th Cir. 2016) (dismissing *qui tam* action because conduct at issue was merely a type of conduct alleged in broad strokes in prior public disclosure). It is not enough that a new Relator's complaint contains "some additional facts." *O'Connor*, 128 F.4th at 286. Accordingly, Relators must overcome the fact that the allegations in *Delaney* and the scope of the CIA[1] "could at least have alerted law-enforcement authorities to the likelihood of wrongdoing" and therefore that the "government already ha[d] enough information to investigate the case," such that it was already doing so when Relators filed. *United States ex rel. Doe v. Staples, Inc.*, 773 F.3d 83, 86 (D.C. Cir. 2014).

**B.    Relators must be the original source of their allegations to properly bring an FCA case on behalf of the government.**

Relators who bring claims based on information they "gained through the application of expertise to information publicly disclosed" are not original sources, pursuant to FCA requirements. *United States ex rel. Zizic v. Q2Adm'rs, LLC*, 728 F.3d 228, 240 (3d Cir. 2013);

---

[1]    The *Delaney* complaint included allegations that eCW falsely represented to customers that its EHR system complied with certification criteria based on various alleged technical issues. (Summ. J. Order 9 , Dkt. No 345.) The CIA, publicly available via the DOJ online press release, expressly stated that the federal government would ensure that eCW software "compli[ed] with applicable ONC" Health IT Certification Program requirements thereafter and that the SQOO would have access to the entire eCW source code. (*Id.* at 9-10, 18.)

*United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 113 F.4th 1294, 1303 (11th Cir. 2024) (If the public disclosures are "already sufficient to give rise to an inference" of fraud, cumulative allegations do "not materially add to the public disclosures") (internal quotation marks omitted); *United States ex rel. Brown v. BankUnited Tr. 2005–1*, 235 F.Supp.3d 1343, 1359 (S.D. Fla. 2017) ("A relator's personal investigation and research into public information that is available to anyone who wished to use it for the same purpose" does not qualify the relator as an original source.) (citation and internal quotation marks omitted). Therefore, unless Relators can show that they brought new information to the table, beyond the source code that was in the government's possession through *Delaney*, they cannot be approved as proper "original sources," and their FCA claim must fail.

## V.      THE COURT SHOULD INSTRUCT THE JURY ON THE REQUIREMENTS OF EACH CERTIFICATION.

eCW's proposed jury instructions include charges on each of the proposed regulatory requirements codified in 45 C.F.R. § 170.315(d) that are at issue in this case.[2]  The Court should accept those instructions after determining, as a matter of law, what the regulations mean and what they require.  At the *Daubert* hearing, the Court properly set the important guardrails that "no expert will be testifying to the ultimate question of whether the software met regulatory requirements."  (June 4, 2025 Hr'g Tr. 5:20–22, Dkt. No. 334.)  Because "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts" but "a question of law, to be resolved by the court," the Court should decide the meaning of the regulations and instruct the jury as such.  *See AMTEC Corp. v. Non-Lethal Def., Inc.*, 2018 WL 5602906, at *2 (N.D. Fla. May 24, 2018) (quoting *Bammerlin v. Navistar Int'l Transp. Corp.,* 30

---

[2]       The scope of precisely which alleged technical nonconformities, and the ONC certification criteria to which they are directly linked, is the subject of ongoing briefing pending before the Court. *See*, Dkt. No. 378.

F.3d 898, 900 (7th Cir. 1994), *abrogated on other grounds by Kaiser v. Johnson*, 947 F.3d 996 (7th Cir. 2020)).

It is well-settled that questions of "regulatory interpretation are legal issues," which courts decide as a matter of law. *Dotson v. United States*, 30 F.4th 1259, 1264 (11th Cir. 2022); *Surry v. Spears*, 2012 WL 12931981, at *10 (N.D. Ga. Sept. 25, 2012) ("The interpretation of a regulation is a question of law to be resolved by the court."). In fact, there is a "persuasive consensus among district courts that the meaning of a federal regulation and whether a party has violated that regulation are questions of law for the court." *Abbott v. Mega Trucking, LLC*, 2023 WL 2640203, at *6 (M.D. Ala. Mar. 24, 2023) (collecting cases).

Nothing about the FCA, or the fact that the regulations at issue are technical, changes that consensus. If anything, the technical complexity of the ONC certification regulations at issue makes it even more important that the jury receive clear, objective instructions from the court regarding the framework that governs their factual decisions. *See generally Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (instructing courts to look to a regulation's "text, structure, history, and purpose" to find their meaning, which is the purview of the court even when facing "hard interpretive conundrums" and "complex rules").

Here, the meaning and scope of the certification regulations at issue is a gating issue to the jury's ultimate determination of whether eCW "can be held liable under the False Claims Act depends in part upon whether [it] violated applicable [software] regulations." *United States ex rel. Bagley v. TRW, Inc.*, 2001 WL 35936683, at *5, 10 (C.D. Cal. Oct. 17, 2001) (interpreting tax regulations to determine whether false claim was submitted). Even if those regulations are "unquestionably technical and complex," the regulations' "meaning is ultimately the subject of judicial interpretation, and it is [a defendant's] compliance with these regulations, as interpreted

this court, that determines whether its [actions] resulted in the submission of a 'false claim' under the Act." *United States ex rel. Oliver v. The Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999) (emphasis added); *see also, e.g., AseraCare*, 938 F.3d at 1294–95 (deciding the meaning of Medicare regulations as a prerequisite to determining falsity under FCA).

Deciding the meaning of the regulations prior to trial will streamline the issues presented, prevent improper expert testimony on legal issues, and minimize juror confusion. Thus, the Court should accept eCW's instructions pertaining to the § 170.315(d) certification standards.

## VI.    RELATORS' FINANCIAL INCENTIVE IS ADMISSIBLE BIAS EVIDENCE.

If successful, Relators will take home 25–30% of the government's recovery. *See* 31 U.S.C. § 3730(d)(2). It is a longstanding principle that the jury can and should consider any potential bias that plaintiffs or relators have in bringing a case when assessing their credibility. Thus, in the context of FCA cases, "should a relator testify, cross-examination as to [his] financial interest is allowed as it goes to the witnesses' bias." *Id.*; *United States ex rel. Jones v. Mass. Gen. Hosp.*, 780 F.3d 479, 495 (1st Cir. 2015) (affirming trial court's decision to permit questioning on relator's financial interest).

The probative value of cross-examination about Relators' financial bias is especially strong where, as here, he "intends to call himself as an expert witness" (*United States ex rel. Kiro v. Jiaherb, Inc.*, 2019 WL 2869186, at *4 (C.D. Cal. July 3, 2019)), or where "his testimony and credibility [are] critical to the FCA claim." *Jones*, 780 F.3d at 495. For that reason, given the unique nature of Relators' dual roles as fact and expert witnesses in this case, the jury should consider evidence of the FCA's treble damages and statutory penalties provisions as part of evaluating Relators' financial bias because Relators are entitled to a portion of the *total* recovery, inclusive of treble damages, penalties, and interest. *See Graves v. Plaza Med. Ctrs., Corp.*, 2017 WL 3895438, at *2 (S.D. Fla. Sept. 6, 2017) (allowing defendants to "offer evidence of the

trebling of damages and penalties under the False Claims Act as well as the relator's entitlement to a percentage share of any damages recovery"). Although some courts have excluded reference to such matters, such a ruling here would unfairly remove from the jury's consideration critical evidence going to Relators' credibility as fact and expert witnesses in this matter. Certainly, every other expert witness will be questioned with respect to compensation with a high degree of specificity. The rule should be no different for Relators.

## <u>CONCLUSION</u>

eCW appreciates the Court's attention to these key matters before trial. If Relators fail to meet their burden of proving any of the elements discussed herein by a preponderance of the evidence, or damages to a reasonable degree of certainty, eCW submits that judgment as a matter of law in its favor may be proper and will move accordingly. Moreover, given the complex and highly technical nature of Relators' allegations in this case, as well as the sprawling scope of the technical violations Relators seek to introduce, eCW maintains the importance of clear, detailed instructions and guardrails for the jury to ensure a fair trial and clear record.

Dated: September 9, 2025

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza,
Chicago, IL 60654
Tel: (312) 862-7170
martin.roth@kirkland.com

Allison M. Brown *(pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
dgroover@jamesbatesllp.com
JAMES BATES LLP
231 Riverside Drive
Suite 100
Macon, GA 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filing to all counsel of record.

James W. Cobb
CAPLAN COBB LLC
75 Fourteenth Street N.E., Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604

*Attorney for Defendant eClinicalWorks, LLC*