UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>    Defendant. | No. 5:18-CV-382<br><br>Honorable Marc T. Treadwell |

**eCLINICALWORKS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2 TO PRECLUDE RELATORS FROM INTRODUCING THE SETTLEMENT BETWEEN eCW AND QUANDARY PEAK**

Defendant eClinicalWorks, LLC ("eCW") respectfully submits this motion *in limine* to preclude Relators from introducing at trial (1) the March 2021 settlement between eCW and Quandary Peak Research, Inc. (the "Quandary Peak Settlement") that resulted in the removal of Brad Ulrich and Dean Sittig from the Software Quality Oversight Organization ("SQOO") team, and (2) the August 2020 letter from eCW's outside counsel Ropes & Gray to the Office of the Inspector General of the Department of Health and Human Services ("OIG") that conveyed concerns with certain instances of perceived racial and ethnic bias of certain SQOO team members (the "Ropes Letter"). Despite this Court's clear warning to Relators that introducing this evidence at trial would result in a "quagmire," it is very clear from Relators' pretrial submissions that they intend to do precisely that. But as explained further below, Relators cannot demonstrate that either the Quandary Peak Settlement or the Ropes Letter are relevant. Moreover, any marginal relevance is substantially outweighed by the risk that introducing this evidence will cause jury confusion and waste valuable trial time.

## BACKGROUND

As the Court is aware, in March 2021, eCW and Quandary Peak entered into a settlement agreement to resolve concerns that certain members of the SQOO team had engaged in unprofessional treatment of eCW employees, including (but not limited to) treatment that exhibited racial and ethnic bias. The settlement agreement included a provision requiring the removal of certain individuals from the SQOO team, including Brad Ulrich and Dean Sittig. The settlement followed an August 2020 letter that eCW's outside counsel Ropes & Gray sent to the OIG conveying concerns about the conduct of certain SQOO team members.

Relators have included the Quandary Peak Settlement, the Ropes Letter, and other related correspondence on their proposed trial exhibit list.[1] And they have designated deposition testimony related to the Quandary Peak Settlement. (*See, e.g.*, 4/30/2024 Ulrich Dep. 132:4-133:7, ECF No. 218-44 (designated by Relators).)[2] Relators repeatedly have suggested that eCW concocted baseless allegations of racial and ethnic bias against Quandary Peak and that the Ropes Letter and Quandary Peak Settlement were designed to impede the OIG's enforcement of the Corporate Integrity Agreement ("CIA") or the DOJ's investigation of Relators' *qui tam* allegation; and to impede Quandary Peak's work as the SQOO. In fact, both the Quandary Peak Settlement and the Ropes Letter arose from legitimate concerns regarding racial and ethnic bias, and were not intended to obstruct the work of the CIA or interfere with any government investigation.

Unless the Court precludes Relators from doing so, Relators will precipitate a mini-trial on whether eCW's concerns with certain SQOO team members' unprofessional conduct had merit and whether the Ropes Letter and Quandary Peak Settlement were motivated by obstructive intent. The Court previously warned Relators of the potential perils of introducing these issues at trial. (10/10/24 Hr'g Tr. 105:10-15 ("You need to think about if—and if so, how—you might use this settlement agreement. . . . Right now I see it as a quagmire. Again, the look is bad, there is no question about that. But a bad look doesn't make it admissible. There's got to be more there.").) That warning plainly went unheeded, and the Court now should bar such a sideshow and exclude evidence or argument concerning the Quandary Peak Settlement from trial.

---

[1] The parties' deposition designations and exhibit lists will be submitted in accordance with the Court's Pre-Trial Deadlines Order, ECF No. 349.

[2] eCW does not intend to introduce the issue of racial and ethnic bias at trial, either as an explanation for the SQOO's various criticisms of eCW or for any other reason. eCW's counsel already has informed Relators' counsel of this.

**ARGUMENT**

**I.    NEITHER THE QUANDARY PEAK SETTLEMENT NOR THE ROPES LETTER IS RELEVANT.**

If evidence is not relevant, it is not admissible. Fed. R. Evid. 402. Thus, prior to admitting any evidence, the Court must inquire into whether "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b).

Here, Relators' sole theory of relevance for the Quandary Peak Settlement and the Ropes Letter is that eCW fabricated baseless allegations of racial and ethnic bias in order to impede the government's oversight of eCW's software security, including the DOJ's investigation of Relators' security-related *qui tam* allegations. This theory of relevance is not supported by evidence, but rather is premised entirely on speculation. Relators' theory also suffers from several insurmountable factual flaws that render the theory totally implausible.

***First***, the Ropes Letter was sent to the OIG in August 2020. This was nearly two years after eCW first learned of the DOJ's investigation of Relators' *qui tam* allegations, approximately nine months after SQOO team members (with eCW's knowledge and permission) first met with the DOJ to discuss Relators' *qui tam* allegations, and approximately four months after SQOO team members met with the DOJ for a second time. (*See* ECW_GA000609688 (November 2019 email chain between eCW's Chief Compliance Officer Michael Laycob and Brad Ulrich); OIG1-00002575 (April 2020 email chain between Assistant U.S. Attorney Todd Swanson and Brad Ulrich).) And by March 2021, which is when the Quandary Peak Settlement was executed (*see* Quandary Peak Settlement, ECF No. 266-41), the DOJ's investigation was well past the point at

4

which removing Ulrich and Sittig from the SQOO team plausibly could have interfered with it. Moreover, Quandary Peak's counsel informed OIG about the settlement upon its execution,

██████████████████████████████████████████████████████████████

██████████ (*see id.* at § 3).  There is no evidence that OIG objected to the removal of those individuals, let alone that OIG raised concerns that their removal would impede the SQOO's oversight of eCW's cybersecurity or the OIG's own investigation of Relators' *qui tam* allegations.

**Second**, although the Quandary Peak Settlement resulted in the removal of Ulrich and Sittig from the SQOO team, the terms of the settlement expressly permitted them to continue to

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████ (Quandary Peak Settlement, ECF No. 266-41.)  This provision is completely inconsistent with Relators' speculation that eCW's intent was to kneecap the SQOO's ability to assist with the DOJ's investigation of Relators' *qui tam* allegations.

**Third**, the SQOO team member with the principal responsibility for overseeing the security-related aspects of eCW's software was Collin Morrell, who was neither the subject of racial bias allegations nor removed from the SQOO team as part of the Quandary Peak Settlement.

In short, there is no evidentiary basis for the story Relators wish to tell based on the Quandary Peak Settlement.  It has no tendency at all to prove what Relators must show in this case—i.e., that version 11 of eCW's certified electronic health records ("EHR") software did not conform to certification requirements.  On this basis alone, the evidence should be excluded.

## II.   ALLOWING RELATORS TO INTRODUCE THE QUANDARY PEAK SETTLEMENT OR ROPES LETTER WOULD CREATE A SUBSTANTIAL RISK OF UNFAIR PREJUDICE AND JUROR CONFUSION, AND IT ALSO WOULD WASTE VALUABLE TRIAL TIME.

Federal Rule of Evidence 403 empowers a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" Fed. R. Evid. 403.  Here, even if Relators were able to demonstrate the relevance of the Quandary Peak Settlement and Ropes Letter (which they cannot), the relevance is so marginal that it is substantially outweighed by the risk of unfair prejudice and juror confusion.

In the current political environment, race is one of the true third-rail topics.  This is especially true where, as here, race intersects with ethnicity and nationality.  If the Court permits Relators to introduce the Quandary Peak Settlement and Ropes Letter into evidence, there is a serious danger that the jury's verdict will not be based on whether the trial evidence establishes (or fails to establish) violations of the False Claims Act (i.e., falsity, materiality, scienter, causation, and damages), but instead will be based on whether the jury believes that certain SQOO team members were racially biased and that eCW's complaints to the OIG about those team members' conduct were valid.  *See G&G Closed-Circuit Events, LLC v. Castillo*, 2018 U.S. Dist. LEXIS 243127, at *4-5 (N.D. Ill. Dec. 16, 2018) ("[E]vidence of alleged racial bias poses the significant dangers barred by Rule 403.  Allegations of race discrimination create the significant risk that the jury will decide the case based on general character rather than facts, not to mention the time wasted on G&G offering evidence to rebut the allegations.").  That is not a risk that either the parties or the Court should take.[3]

---

[3]     For similar reasons, the Court should exclude reference to the fact that eCW has offices or employees in India, as set forth in greater detail in eCW's separately filed motion in limine #10 to Exclude Evidence And Testimony Regarding Nationalities And Locations Of, And Relationships Between, eCW, eCW's Co-Founders, Employees, And

Allowing Relators to argue to the jury that eCW trumped up baseless claims of racial and ethnic bias against Quandary Peak would also necessarily entail a sideshow at trial—and a potentially lengthy one at that. Witnesses—including witnesses who add nothing directly relevant to the security-related issues that ought to be the focus of the trial—would be called to testify regarding various instances of unprofessional conduct (such as one SQOO team member referring to eCW's engineers as Special Olympians) and ethnically tone-deaf comments (such as another SQOO team member comparing eCW's engineers to Bollywood actors) that they observed or to which they were subjected. The Court should prevent such a waste of valuable trial time, so that the jury can stay focused on the truly relevant issues at hand.

### III.   IF THE COURT PERMITS RELATORS TO INTRODUCE THE ROPES LETTER INTO EVIDENCE AT TRIAL, THE COURT SHOULD REQUIRE RELATORS TO REDACT THE AUTHOR'S NAME AND PRECLUDE THE RELATORS FROM REFERRING TO THE AUTHOR AT TRIAL.

The author of the Ropes Letter was Aaron Katz, who was a partner at Ropes & Gray at the time. As the Court is aware, Mr. Katz is also one of eCW's trial counsel in this matter and will be at counsel table during trial. If the Court permits Relators to introduce the Ropes Letter into evidence (which it should not), the Court should require Mr. Katz's name to be redacted from the letter and should not permit Relators to disclose to the jury that Mr. Katz authored the letter. That Mr. Katz—as opposed to some other lawyer at Ropes & Gray—authored the letter is not relevant to any issue in the case. And it would be unfairly prejudicial to eCW to permit Relators to insinuate (wrongly) that one of eCW's trial counsel—who, because he is trial counsel, would not be available to testify regarding the Ropes Letter—was, in Relators' telling, involved in fabricating baseless claims of racial and ethnic bias.

---

Offices. The more extensive authority set forth in that motion amplifies the basis for excluding evidence or arguments about racism that have nothing to do with the merits of the case and further support the arguments made here.

IV.  **IF THE COURT PERMITS RELATORS TO INTRODUCE THE ROPES LETTER INTO EVIDENCE AT TRIAL, THE COURT ALSO SHOULD REQUIRE RELATORS TO REDACT ALL SETTLEMENT OFFERS CONTAINED IN THE LETTER.**

The Ropes Letter principally was an offer to settle the OIG's October 2019 stipulated penalties demand—a demand that was not related to any of Relators' cybersecurity-related allegations and therefore should be deemed irrelevant its own right.[4]  The Ropes Letter made a formal settlement offer, including a monetary payment of $730,000.  The Ropes Letter was stamped as a "Confidential Settlement Communication" pursuant to "Fed. R. Evid. 408."

Rule 408 provides that any "statement made during compromise negotiations" about a claim are "not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim."  If the Court permits Relators to introduce the Ropes Letter into evidence (which it should not), the Court also should require Relators to redact all portions of the letter that can only be construed as offers of settlement or compromise of the OIG's October 2019 stipulated penalties demand.  Those portions of the letter clearly are inadmissible under Rule 408, as they would serve no purpose other than to suggest the validity of the OIG's October 2019 stipulated penalties demand and the allegations underlying that demand.

## CONCLUSION

For the reasons set forth above, the Court should preclude Relators from introducing the Quandary Peak Settlement and Ropes Letter at trial.

---

[4]  In responses to written deposition questions, the OIG has confirmed that the October 2019 stipulated penalties demand had nothing to do with Relators' cybersecurity allegations.  For this reason, as elaborated in eCW's separately filed motion in limine #7, concerning Evidence And Argument Concerning Patient Safety, the Court should exclude reference to the stipulated penalties demands altogether.

Dated: September 9, 2025

    Respectfully submitted,

    */s/ Duke R. Groover*
    Duke R. Groover
    Georgia Bar No. 313225
    dgroover@jamesbatesllp.com
    JAMES BATES BRANNAN GROOVER LLP
    231 Riverside Drive
    Suite 100
    Macon, Georgia 31201
    Tel: (478) 742-4280
    Fax: (478) 742-8720

    Allison M. Brown (*pro hac vice*)
    alli.brown@kirkland.com
    KIRKLAND & ELLIS LLP
    2005 Market Street, Suite 1000
    Philadelphia, Pennsylvania 19103
    Tel: (215) 268-5000

    Geoffrey M. Wyatt (*pro hac vice)*
    geoffrey.wyatt@kirkland.com
    KIRKLAND & ELLIS LLP
    1301 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
    Tel: (202) 389-3393

    Martin L. Roth (*pro hac vice*)
    martin.roth@kirkland.com
    KIRKLAND & ELLIS LLP
    333 West Wolf Point Plaza
    Chicago, Illinois 60654
    Tel: (312) 862-7170

    Aaron Katz (*pro hac vice)*
    akatz@aaronkatzlaw.com
    AARON KATZ LAW LLC
    399 Boylston Street, 6th Floor
    Boston, Massachusetts 02116
    Tel: (617) 915-6305

    *Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

*Counsel for Defendant eClinicalWorks, LLC*
