# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br> Defendant. | No. 5:18-CV-382 <br><br> Honorable Marc T. Treadwell |

**eCLINICALWORKS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 3 TO PRECLUDE RELATORS FROM INTRODUCING EVIDENCE AND ARGUMENTS REGARDING OTHER eCW SOFTWARE VERSIONS AND CONDUCT UNRELATED TO CERTIFICATION CRITERIA**

At summary judgment, this Court recognized two key factual limitations on Relators' remaining claim. First, the Court observed that only "Version 11 of eCW's software is at issue here." (Mot. Summ. J. Order at 6, ECF No. 345.) Second, the Court explained that the only certification criteria at issue concern Relators' claim that "eCW represented that its electronic health record ('EHR') software complied with 45 C.F.R. § 170.315(d)(1) through (e)(2)." (*Id.* at 32.) Despite these limitations, Relators seek to introduce extensive evidence about *other* versions of eCW's software and eCW's compliance with *other* certification criteria, including such allegations referenced in Software Quality Oversight Organization ("SQOO") reports, correspondence, and documentation; allegations that eCW had an ineffective application security ("AppSec") department, and many other examples. Such evidence is irrelevant, unfairly prejudicial, and would require nothing but sideshows from the issues the jury must decide. *See* Fed. R. Evid. 401, 402, 403.

Accordingly, eCW respectfully moves this Court to preclude Relators from offering any evidence, making any argument, or presenting any testimony that does not pertain to the conformity of version 11 of eCW's EHR software with certification criteria (d)(1) through (e)(2).

## BACKGROUND

Following summary judgment, Relators are limited in the claims they can present to the jury. The Court "preclude[ed] Relators from relying on HIPAA as a basis for recovery," "mean[ing] the fraud, if any, must arise from the CEHRT certification process." (Letter to Counsel, ECF No. 330.) For that reason, "the scope of relevant evidence is precisely … whether the software met the relevant certification criteria." (6/4/25 *Daubert* Hr'g Tr. 6:21-23, ECF No. 334.) As the Court's order made clear, the "relevant certification criteria" at issue here are "(d)(1)

through (e)(2)."[1]  (*Id.*; Mot. Summ. J. Order at 32, ECF No. 345.)  And the only version of "eCW's software at issue here" is version 11—the "only relevant software certified under the ONC's 2015 Certification Standards."  (Mot. Summ. J. Order at 6, ECF No. 345.)  Further, as this Court recognized, there is "a lot of information" in documents related to SQOO, eCW's other products and services, and other ancillary aspects of the eCW EHR software.  (6/4/25 *Daubert* Hr'g Tr. 50:7-16, ECF No. 334.)  And further, as this Court has emphasized, "trashing eCW" is not pertinent to the question at issue.  (*Id.* 25:19-26:1.)

Despite those limitations and the understanding of the scope of information that has been made available throughout discovery, Relators apparently intend to introduce volumes of evidence at trial that go well beyond version 11 of eCW's software and the relevant certification criteria.

**Other Versions of eCW's EHR Software.**  Based on Relators' proposed trial exhibit list and deposition designations, it appears that Relators plan to introduce documents that contain information unrelated to version 11 of the software.[2]

For example, in 2017, eCW voluntarily entered into a Corporate Integrity Agreement ("CIA") that required eCW to "retain an appropriately qualified Software Quality Oversight Organization" (the "SQOO") (*see* 2017 Corporate Integrity Agreement at 28, ECF No. 217-41), a role filled by Quandary Peak Research, Inc. ("Quandary Peak").  Under the CIA, the SQOO was responsible for assessing the "effectiveness, reliability, and thoroughness" of "Patient Safety, Certification Issues, and any other potential deficiencies of the EHR Software."  (*Id.* at 28-29.)  The SQOO issued periodic reports, including a Baseline Report and Interval Improvements

---

[1] Relators recently conceded they would drop all allegations related to criterion (d)(6). (*See* eCW's Mot. to Exclude Relators' Technical Allegations Untethered to Certification Requirements, ECF No. 378.)

[2] Parties' exhibit lists and deposition designations will be submitted in accordance with the Court's Pre-Trial Deadlines Order, ECF No. 349.

Assessments (the "Interval Assessments"), covering many aspects of eCW's EHR products, including prior versions of eCW's EHR software (e.g., V10.0, V10 SP2).  Additionally, prior to its appointment as SQOO, Quandary Peak produced an Independent Consultative Expert ("ICE") Report addressing similar issues.

Relators apparently plan to introduce evidence from such documents that are unrelated to version 11.  For example, Relators plan to introduce Interval Assessment 2 which notes that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Interval Assessment 2, ECW_GA000019251, at –19340, ECF No. 218-62.)  Further, Relators' deposition designations of several witnesses include designations relating to versions other than version 11 of the software.  (*See, e.g.*, 5/10/24 Lewis Dep. 60:7-61:7, ECF No. 218-2 (testimony regarding technical aspects of version 10 of eCW EHR software); 4/19/24 Laycob 30(b)(6) Dep. 39:20-40:7, ECF No. 218-20 (testimony regarding certification attestations of version 12 of eCW EHR software) (all designated by Relators).)  None of this relates to version 11—the only version of eCW's EHR software at-issue in this case.

**Allegations Unrelated to The Relevant Certification Requirements.**  Based on Relators' proposed trial exhibit list and deposition designations, Relators also plan to introduce documents that contain information unrelated to the relevant certification requirements.

For example, Relators intend to introduce evidence about how eCW tests its codebase (*See, e.g.*, ECW_PER000270352 at –0682, ECF No. 218-72) and eCW's general "management, standards, planning, and budgetary processes" (*id.* at –0536).  Moreover, Relators intend to present evidence from their putative certification expert, Michael Arrigo, who repeatedly points to SQOO's reports regarding topics such as the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▇▇▇▇▇▇ (*See* 8/3/24 Expert Rep. of Michael Arrigo at 9, ECF No. 217-29.) None of these subjects relate to the specific certification criteria covered by (d)(1) through (e)(2).

eCW also anticipates that Relators will attempt to introduce evidence related to eCW's EHR software deployed in foreign jurisdictions that are not subject to U.S. regulations and policies broadly implicating eCW's web services that are nonspecific to its EHR technology. (*See* Ex. C, 9/3/25 Jaiswal Dep. 40:12-42:22 (discussing Emirates and dnata Electronic Patient Record Application Security Review Report); *id.* 46:6-47:21 (discussing policy manual generally referring to eCW web services).) Again, this has nothing to do with the certifications at issue here.

**Generalized Allegations About eCW's Management, Operations, and Unrelated Software Functions.** Based on Relators' proposed trial exhibit list and deposition designations, Relators plan to introduce documents describing eCW's software development and maintenance, management and operations, customer support activities, medication ordering and e-prescribing functions, and its work in clinical risk management—topics that are unrelated to any issue in the case. They are simply generalized allegations, whether about the conduct or the software, that are unrelated to the question at hand.

For example, the SQOO issued documents relating to these topics and Relators have included documents that reference management operations and customer support activities. (*See* Interval Assessment Report 6, ECW_PER000270352 at –0549, –0613, ECF No. 218-72.)

Unrelated to the SQOO, Relators seek to introduce evidence and testimony supporting highly generalized allegations that eCW had an inefficient or ineffective AppSec department. Relators have extensively questioned eCW witnesses about its AppSec Department. In 2015, eCW formalized its security engineers and security team leads into its AppSec Department for purposes of security certifications and overseeing of eCW's technology group. AppSec had no role in the

4

certification of eCW's EHR software, but instead was responsible for security of eCW's technology, such as maintaining documentation of security policies and procedures related to application and database security. (6/18/24 Jaiswal Dep. 60:8-61:2; 19:17-20:1, ECF No. 218-5.) None of the generalized statements about the AppSec Department purport to tie the criticisms at issue to anything specific about certification or awareness of the specific technical issues that Relators have tied to certification requirements.

Relators affirmatively designated testimony from eCW's Girish Navani, among other witnesses, raising allegations from SQOO's Interval Assessment 6 that "AppSec leadership has repeatedly failed to acknowledge the pervasive security problems that continue to exist within eCW's software and present risks to patient safety and privacy." (*See, e.g.*, Ex. A, 8/12/25 Navani Dep. 76:8-76:12; 76:24-77:22 (designated by Relators).) Relators also designated numerous pages of testimony regarding AppSec generally and how it functions, its role within eCW and how it was allegedly deficient. (*See, e.g.*, 6/18/24 Jaiswal Dep. 42:2-44:6, 272:17-275:4, ECF No. 218-5; 4/30/24 Ulrich Dep. 52:19-55:19, 81:9-82:5, ECF No. 218-44 (designated by Relators).) None of this information related to AppSec is relevant to the remaining claims in this case.

Relators also seek to introduce evidence and testimony related to two SQOO investigations, one involving the head of the AppSec Department. As to the first investigation, in June 2020, an anonymous employee submitted a complaint to EthicsPoint at eCW alleging that two employees were submitting falsified third-party testing results to the SQOO. eCW investigated the complaint, including interviewing the relevant parties. Unrelated to that complaint, after a random audit in October 2020, two eCW employees were found to have manipulated certain dependency check reports (reports relating to testing security vulnerabilities) for the months of July, August, and September of 2020. eCW investigated the allegations and fired the two individuals in October

5

2020.

Throughout discovery, Relators have questioned multiple witnesses about these investigations and relied on a SQOO report that conflates these separate investigations (although notably the SQOO admits eCW responded quickly when false reports were discovered). Relators included the EthicsPoint complaint on their proposed trial exhibit list. Relators also included on their exhibit list the July 2020 emails and memoranda from SQOO to OIG on these topics. While both involved the alleged falsification of reports from eCW's security teams, they relate to generalized allegations about the conduct of eCW employees. Neither of these investigations bear on version 11 and the relevant certification requirements at issue here.

Further, Relators have added previously *undisclosed* witnesses onto their proposed witness list: Thomas Murray and Paul Dittrich. During the relevant time-period, Thomas Murray was Director of Information Security at eCW; and Paul Dittrich was employed in eCW's IT and Services Solutions department. In Relators' deposition designations, they designated material related to Murray and Dittrich about their time at eCW, including their conduct and statements that were completely unrelated to version 11 or the certification criteria at issue here. (*See, e.g.*, 5/10/24 Lewis Dep. 91:10-18, ECF No. 218-2 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (designated by Relators).)

## ARGUMENT

Evidence about certification criteria *other than* criteria (d)(1) through (e)(2) and eCW software versions *other than* version 11 should be excluded from trial two main reasons: (1) it is irrelevant to whether eCW's certification of version 11 of its software complied with these specific criteria; and (2) it will only serve to waste the jury's time, confuse the issues, and unfairly prejudice

6

eCW without any probative value for the issues the jury will decide.

**I.      ALLEGATIONS ABOUT OTHER SOFTWARE VERSIONS AND CONDUCT UNRELATED TO CERTIFICATION CRITERIA ARE IRRELEVANT.**

Evidence is only admissible if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402.  Evidence regarding prior versions of eCW's EHR software and conduct involving SQOO and others unrelated to ONC certification criteria do not make any "fact [that] is of consequence … more or less probable."

Courts across the country exclude evidence of alleged product flaws unrelated to the specific product flaws at issue at trial.  *See, e.g.*, *Arevalo v. Coloplast Corp.*, 2020 WL 3958505, at *21 (N.D. Fla. July 7, 2020) (excluding testimony by experts about "devices manufactured by Defendant that are not at issue in this case[] … [because] testimony about Defendant's devices other than [ones at issue] would not be helpful to understanding the evidence or determining a fact at issue"); *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2014 WL 505234, at *9 (S.D. W. Va. Feb. 5, 2014) (excluding evidence of the recall of a similar device because it would necessitate discussing the differences between the products and how they were nonetheless "'substantially similar' under the 510(k) premarketing process").  Here, the discussions of prior versions of eCW's software have no bearing on allegations about version 11 of eCW's EHR software.

Further, courts have excluded testimony and evidence of alleged violations that are separate and distinct from the violation alleged in a given case.  *See, e.g.*, *Celestine v. FCA US LLC*, 2019 WL 2615719, at *6-7 (E.D. Cal. June 26, 2019) (excluding "[e]vidence concerning problems not experienced by or not directly related to plaintiff's type of vehicle" because it "is irrelevant"). Here, the same reasoning should apply because none of the above make it more likely or not that

version 11 complied with 45 C.F.R. § 170.315(d)(1) through (e)(2).

Relators' proposed evidence, including SQOO reports, deposition designations, and other documents referencing other versions of eCW's software (such as version 10 and version 12), does not pertain to version 11—and is therefore, irrelevant. For example, as described above, Relators seek to introduce Interval Assessments that discuss eCW's handling of version 10, and deposition testimony about version 12's certification. These facts are not probative of whether version 11 met the specific certification criteria at issue. Similarly, evidence about eCW's technical flaws that do not relate to the certification criteria are also irrelevant—they do not matter for the ONC certification criteria at issue. Moreover, generalized evidence about eCW's AppSec Department, including allegations of inefficiency or internal investigations, is unrelated to ONC certification for version 11. Thus, such evidence is irrelevant under Rules 401 and 402.

## II. EVIDENCE AND ARGUMENTS THIS MOTION SEEKS TO EXCLUDE ARE PREJUDICIAL.

Even assuming this evidence were relevant, any minimal probative value would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts routinely exclude evidence of earlier iterations or different versions of a defendant's products under Rule 403. *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 4279833, at *3 (D. Ariz. Sept. 7, 2018) (excluding evidence related to earlier generations of product at-issue under Rule 403); *see also Dalbotten v. C. R. Bard, Inc.*, 2023 WL 1778793, at *1 (D. Mont. Feb. 6, 2023) (excluding portions of warning letters referring to defendant's other IVC filters not at issue in the case because their "relevance is substantially outweighed by [their] risk of confusing the jury as to the issues"). The same is true for allegations of *other* distinct violations. *See, e.g.*, *Celestine*, 2019 WL 2615719, at *6-7 (excluding "[e]vidence concerning problems not experienced by or not

8

directly related to plaintiff's type of vehicle" because it "is irrelevant, confusing and unduly prejudicial"); *Long v. TRW Vehicle Safety Sys. Inc.*, 2011 U.S. Dist. LEXIS 119111, at *11-12 (D. Ariz. Oct. 14, 2011) (excluding evidence that a different seatbelt buckle was recalled because it "would present a substantial risk of unfair prejudice to TRW on the question of dangerousness").

Relators' intent to introduce evidence about other software versions, unrelated certification criteria, and eCW's internal operations would require eCW to defend its conduct and products that are not at issue. For example, if Relators present evidence about version 10's alleged deficiencies or AppSec's Department functions or eCW personnel investigations, eCW would be forced to explain the differences between software versions, the scope of AppSec's responsibilities and how it undertook those responsibilities seriously, and the irrelevance of these issues to version 11's certification. Thus, eCW would be forced to devote trial time to defending that software's compliance and eCW's conduct, even though it has nothing to do with whether software version 11 met the relevant certification criteria. This would also create a substantial risk of confusing the jury, as they may conflate issues related to other versions or internal operations with the specific question of whether version 11 met the ONC certification criteria.

## CONCLUSION

Accordingly, eCW respectfully requests that the Court exclude the introduction of any evidence or testimony or argument that do not pertain to the conformity of version 11 of eCW's EHR software with certification criteria (d)(1) through (e)(2).

9

Dated: September 9, 2025

    Respectfully submitted,

    */s/ Duke R. Groover*
    Duke R. Groover
    Georgia Bar No. 313225
    dgroover@jamesbatesllp.com
    JAMES BATES BRANNAN GROOVER LLP
    231 Riverside Drive
    Suite 100
    Macon, Georgia 31201
    Tel: (478) 742-4280
    Fax: (478) 742-8720

    Allison M. Brown (*pro hac vice*)
    alli.brown@kirkland.com
    KIRKLAND & ELLIS LLP
    2005 Market Street, Suite 1000
    Philadelphia, Pennsylvania 19103
    Tel: (215) 268-5000

    Geoffrey M. Wyatt (*pro hac vice)*
    geoffrey.wyatt@kirkland.com
    KIRKLAND & ELLIS LLP
    1301 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
    Tel: (202) 389-3393

    Martin L. Roth (*pro hac vice*)
    martin.roth@kirkland.com
    KIRKLAND & ELLIS LLP
    333 West Wolf Point Plaza
    Chicago, Illinois 60654
    Tel: (312) 862-7170

    Aaron Katz (*pro hac vice)*
    akatz@aaronkatzlaw.com
    AARON KATZ LAW LLC
    399 Boylston Street, 6th Floor
    Boston, Massachusetts 02116
    Tel: (617) 915-6305

    *Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 9, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

*Counsel for Defendant eClinicalWorks, LLC*