UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br> *Defendant*. | Civil Action No. 5:18-CV-00382-MTT <br><br> Hon. Marc T. Treadwell |

**eCLINICALWORKS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO.7 TO PRECLUDE RELATORS FROM INTRODUCING EVIDENCE AND ARGUMENTS CONCERNING PATIENT SAFETY**

Defendant eClinicalWorks, LLC ("eCW") respectfully moves *in limine* to preclude Relators from offering evidence or arguments concerning patient safety issues, including—but not limited to—the number of patient-safety reportable events. Relators appear to concede that patient safety, as a general matter, is not relevant to the issues the jury must decide here. Nevertheless, they seek to introduce evidence and arguments regarding this topic—including the number of safety-related reportable events and stipulated penalties demands issued by the Office of the Inspector General for the U.S. Department of Health and Human Services ("OIG")—presumably to suggest some broader implication about eCW's certified electronic health records ("EHR") software. The Court should bar such evidence and argument as irrelevant and unfairly prejudicial.

*First*, this evidence is wholly irrelevant and should be excluded under Federal Rules of Evidence 401 and 402, as it does not make any fact of consequence in this action more or less probable. *See* Fed. R. Evid. 401, 402. The issue for resolution in this case is whether version 11 of eCW's EHR software conforms with certification criteria (d)(1) through (e)(2). Neither the number or nature of patient-safety reportable events nor stipulated-penalty demands that the OIG has affirmatively stated have anything to do with the security allegations in this case, and are therefore irrelevant to that question.

*Second*, even if such evidence had any marginal relevance, it should be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* Fed. R. Evid. 403. The introduction of patient safety generally is prejudicial because it preys on juror fears that have no bearing on the issues to be decided here. Its introduction is even worse if it includes evidence of raw numbers of reportable events, without any standard for comparison or explanation of the applicable standard. Without a clear benchmark, references to numbers of reportable events have no meaning, and even the

reference to these events could be misconstrued as evidence of actual patient harm, even though the definition of such events is broad and does not require actual patient harm. This lack of context increases the risk that jurors will be misled or will improperly infer that the mere existence of reportable events equates to actual patient harm or eCW wrongdoing. Reference to stipulated-penalty demands likewise poses a risk that the jury will understand such government action as supportive of materiality when, if anything, it suggests the opposite since OIG pursued such demands on certain issues but *not* as to Relators' allegations. Such information invites the jury to speculate and to draw improper conclusions about the safety or quality of eCW's EHR software—issues that are not part of the claims or defenses in this case. The only purpose of such evidence would be to inflame the jury and distract from the actual factual disputes to be resolved at trial.

Accordingly, all evidence and argument concerning patient safety, including the number of patient-safety reportable events, should be excluded.

## BACKGROUND

From the outset, Relators have alleged that eCW's "fundamental security flaws" involve "matters of life and death as malicious actors could *access and alter* the PHI of American patients." (Relators' First Am. Compl., ECF No. 17, at ¶ 7.) To embellish this hyperbole, Relators offer the following fictional anecdote:



(*Id.*) Under the guise of the fantastical "malicious actor," Relators advance many possible ways a patient could be harmed. (*See, e.g., id.* at ¶ 46

2



*see also id.* ¶ 90.)

The Court has since determined that the trial will turn on a single inquiry: "Relators' claim that eCW's false attestations that its EHR software complied with ONC's certification criteria fraudulently induced providers to submit false claims." (Mot. Summ. J. ("MSJ") Order, at 30, ECF No. 345; *see also* 6/4/2025 *Daubert* Hr'g Tr. 6:21-23, ECF No. 334 (observing that "the scope of relevant evidence is precisely that—whether the software met the relevant certification criteria").) Accordingly, evidence is only relevant if it is probative and of consequence as to whether eCW's version 11 meets regulatory requirements. (*See* 6/4/2025 *Daubert* Hr'g Tr. 7:14-15, ECF No. 334 ("The testimony has to be tethered, as they said, to whether the ONC certification criteria were met.").)

This inquiry has nothing to do with patient safety. Yet Relators' proposed exhibit list is nevertheless replete with materials containing information about patient safety, including the number of patient-safety reportable events.[1] As a prime example, Relators seek to introduce a spreadsheet tracking patient-safety advisories issued in 2018 and 2019, corrective actions taken by eCW, and resolution of those events. (*See* OIG1-00001613.) As another example, Relators seek to introduce multiple reports from the Software Quality Oversight Organization ("SQOO"), which address patient-safety topics and enumerate patient-safety reportable events. The SQOO's role

---

[1] The parties' deposition designations and exhibit lists will be submitted in accordance with the Court's Pre-Trial Deadlines Order, ECF No. 349.

3

was to conduct semiannual assessments of eCW's software, policies, and procedures, to issue recommendations, and to monitor eCW's compliance with certification and patient-safety requirements. (MSJ Order, at 18, ECF No. 345.)  Among the exhibits identified by Relators are the SQOO's Interval Assessment Reports, which discuss patient-safety issues at length. (*See, e.g.*, Internal Interval Assessment 3, ECW_GA000606300, ECF No. 218-64, at 1-5; Interval Assessment 4, OIG2-00003764, at 4-5; Interval Assessment 6, ECW_PER000270352, at –0417 - –0418, ECF No. 218-72.)  These reports address patient safety in general terms, but some also cite specific figures for patient-safety reportable events. (*See e.g.*, *id.*, ECW_GA000606300, at –6302, ECF No. 218-64 (referencing a particular number of patient-safety reportable events).)  Relators have also identified on their proposed exhibit list communications between ONC and SQOO related to eCW's response to various reported patient-safety issues. (*See* QPR-19466.)

Relators also include Demands for Stipulation Penalties from HHS-OIG that eCW received—even though, per the OIG itself, these demands do not relate to the issues in this action. On July 5, 2018, eCW received a Demand for Stipulation Penalties from HHS-OIG concerning alleged patient safety issues, which included figures related to reportable event notifications. (*See* 7/5/2018 Demand for Stipulated Penalties (the "First Demand Letter"), ECW_PER001948478, ECF No. 218-91.)  According to the OIG, the First Demand Letter was not issued due to any security vulnerabilities in eCW's software. (*See* OIG Trenton Williams Decl. ¶ 14, ECF No. 171-29.)  Later, on October 1, 2019, eCW received a second Demand for Stipulated Penalties from HHS-OIG, again, related to patient safety. (*See* REL000108 (the "Second Demand Letter"), ECF No. 218-94.)  As with the First Demand Letter, the OIG explicitly stated that the Second Demand Letter was not related to securities vulnerabilities of eCW's software.  In fact, the OIG explicitly stated that the Second Demand Letter was unrelated to the allegations of securities vulnerabilities

4

alleged in *United States ex rel. Permenter, et al. v. eClinicalWorks, LLC*. (*See* OIG Trenton Williams Decl. ¶ 16, ECF No. 171-29 ("HHS-OIG did not issue the October 2019 stipulated penalties demand letter, issued under the CIA between eCW and HHS-OIG, because of the security vulnerabilities allegations in *United States ex rel. Permenter, et al. v. eClinicalWorks, LLC*.").)

## ARGUMENT

### I. PRESENTATION OF EVIDENCE REGARDING ALLEGED PATIENT SAFETY IS IRRELEVANT UNDER RULES 401 AND 402.

Rule 402 provides that "'[e]vidence which is not relevant is not admissible.'" *Anderson v. FCA U.S., LLC*, 2019 WL 826479, at *5 (M.D. Ga. Feb. 21, 2019) (quoting Fed. R. Evid. 402). Evidence is relevant only if it makes any "fact . . . of consequence . . . more or less probable than it would be without the evidence." Fed. R. Evid. 401. Additionally, "[i]mplicit in the definition of relevancy are two distinct requirements: '(1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.'" *Doe v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 624 F. Supp. 3d 1292, 1297–98 (S.D. Fla. 2022); *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) ("'The evidence must be probative of the proposition it is offered to prove,' and the proposition 'must be one that is of consequence to the determination of the action.'") (quoting *United States v. Glasser*, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985)).

Here, the question before the jury is not whether the software had any potential impact on patient safety. Instead, the Court has given clear directive that the only evidence relevant to the jury's determination is that which bears directly on whether version 11 of eCW's EHR software satisfied the ONC certification criteria related to security. (*See* 6/4/2025 Hr'g Tr. 7:14-15, ECF No. 334 ("The testimony has to be tethered, as they said, to whether the ONC certification criteria were met.").) Thus, evidence or testimony about the mere possibility of patient-safety risks, or the

5

number of patient-safety reportable events, or stipulated-penalty demands that pertain to patient-safety or other issues having nothing to do with security or certification, does not inform the jury's evaluation of the relevant technical certification criteria.

Relators may argue that such evidence is relevant to scienter, but generalized references to patient-safety concerns, the number of reportable events, and the stipulated-penalties demands have nothing to do with security or certification issues and thus do not go to the state of mind with respect to the relevant certification requirements. The jury is not being asked to determine whether eCW's software was safe or unsafe, whether eCW's conduct affected patient outcomes, or whether or how it resolved unrelated disputes with OIG. Rather, the focus is on whether Relators can prove that eCW knowingly misrepresented its software's compliance with the ONC's security-related certification requirements. (*See* 6/4/2025 Hr'g Tr. 6:21–7:1, ECF No. 334 (observing that "the scope of relevant evidence is precisely that – whether the software met the relevant certification criteria").) Evidence outside the scope of the case is regularly excluded by Courts under Rules 401 and 402. *United States v. Ray*, 681 F. App'x 807, 809 (11th Cir. 2017) ("Irrelevant evidence is inadmissible.") (citing Fed. R. Evid. 402).

## II. EVIDENCE OF OR REFERENCE TO ALLEGED PATIENT SAFETY IS UNFAIRLY PREJUDICIAL AND WASTE OF TIME.

Even if patient-safety issues had limited probative value—which they do not—relevant evidence should be excluded where "the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury." *Anderson*, 2019 WL 826479, at *5 (citing Fed. R. Evid. 403); *see, e.g.*, *Faulk v. Dimerco Express USA Corp.*, 2024 WL 3861324, at *9 (N.D. Ga. July 10, 2024) (finding no clear error in excluding evidence because presentation to the jury "presented a substantial risk that the jury would render a verdict based on emotion or outrage rather than the evidence in this case"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*,

6

2021 WL 918214, at *4 (N.D. Fla. Mar. 10, 2021) (excluding "[e]vidence of physical or emotional injury of any person other than [p]laintiffs" because such evidence "is not relevant, and any marginal probative value it may have is substantially outweighed by the danger of unfair prejudice").

Topics pertaining to patient safety squarely implicate these concerns. For example, to the extent that Relators reference fictional patients or hypothetical harms (as they do in their complaint), such references could only serve to inflame the jury's emotions and distract from the actual legal questions. To attempt to mitigate this unfair prejudice, eCW would be forced to present additional evidence and testimony concerning patient safety issues, extending the trial, and threatening to confuse the jury as to its task. Such allegations are untethered from the ultimate issue of regulatory compliance and thus can only serve to cause prejudice and should be excluded. *See, e.g.*, *United States v. Holland*, 396 F. Supp. 3d 1210, 1242-48 (N.D. Ga. 2019) (excluding "evidence of risk of harm to patients" because "this Court … concludes that the unfair prejudice of that evidence outweighs its probative value").

References to the numbers of safety-related reportable events likewise can only cause unfair prejudice and delay. eCW anticipates that Relators' plan is to present evidence of "thousands" of such issues in the hopes that the jury will be impressed by the number, without any metric by which to evaluate it. Importantly, a reportable event may arise in innumerable ways that do not require the existence of actual patient harm or injury because they are based on a broad and unique reporting standard that is not tied to specific adverse outcomes. Such evidence and argument is profoundly misleading and risks inviting the jury to speculate about eCW's EHR software's overall safety or to infer wrongdoing based on the volume of reports alone, rather than focusing on the specific technical compliance issues that are actually at issue. It invites the jury

7

to conflate the existence of safety-related reportable events with noncompliance, when the two have nothing to do with one another.

Finally, references to OIG stipulated-penalties demands that have nothing to do with security or certification issues risk unfair prejudice and pointless delay for the same reasons. The obvious purpose of injecting such evidence at trial is to paint eCW as a bad actor that, because it became involved in disputes with OIG on other issues, must also have run afoul of its obligation as to security and certification issues on which OIG never acted (despite being fully aware of Relators' allegations). Any such argument would be highly misleading since OIG has attested in this case that the stipulated-penalties demands had nothing to do with security issues or Relators' allegations; indeed, if anything, OIG's inaction on Relators' allegations against the backdrop of twice seeking penalties based on other issues strongly suggests that Relators' allegations lack merit or were deemed immaterial by the government (or both). Relators should not be permitted to suggest otherwise.

## CONCLUSION

For the foregoing reasons, the Court should grant eCW's motion *in limine* to preclude Relators from offering evidence or argument concerning patient safety generally, the number of patient-safety reportable events, or stipulated-penalty demands by OIG.

Dated: September 9, 2025

                                                Respectfully submitted,

                                                */s/ Duke R. Groover*
                                                Duke R. Groover
                                                Georgia Bar No. 313225
                                                dgroover@jamesbatesllp.com
                                                JAMES BATES BRANNAN GROOVER LLP
                                                231 Riverside Drive

Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice)*
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

9

**CERTIFICATE OF SERVICE**

 I hereby certify that, on September 9, 2025, a copy of the foregoing was served on all parties of record via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

*Counsel for Defendant eClinicalWorks, LLC*