# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br> *Defendant.* | Civil Action No. 5:18-CV-00382-MTT <br><br> Hon. Marc T. Treadwell |

**eCLINICALWORKS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 14 FOR PREADMISSION OF EVIDENCE AND ARGUMENT CONCERNING RELATORS' NONDISCLOSURE OF THEIR ALLEGATIONS IN THIS CASE, AND TO PRECLUDE RELATORS FROM PRESENTING EVIDENCE OR ARGUMENT TO THE CONTRARY**

Defendant eClinicalWorks, LLC ("eCW") submits this motion *in limine* for a ruling admitting evidence and argument that Relators failed to identify the very issues they claim that eCW hid from ONC and their customers when Relators were asked by customers to advise on security risk assessments that their customers had to perform to document compliance with federal requirements (the "Relators' Nondisclosures").  Additionally, given Relators' sworn discovery statements claiming that they had no communications with their customers about specific eCW security vulnerabilities, and their failure to preserve for litigation other communications that they apparently had, eCW requests the Court preclude Relators from presenting evidence or argument that they did, in fact, tell their customers about eCW security vulnerabilities.

## BACKGROUND

Seeking to understand what Relators themselves believed about the alleged vulnerabilities they found in eCW's software, eCW has consistently sought to discover what they told their clients about this case and the vulnerabilities at issue in it.  To that end, in its Second Set of Requests for Production dated November 3, 2023, eCW asked for, among other things, "all communications between [Relators] and [Relators'] clients concerning … (iv) any security vulnerabilities in eCW's software, (v) the supposed failure of eCW's software to satisfy federal certification requirements, [and] (vi) whether the use of eCW's software constituted a violation of federal or state patient privacy laws or regulations." (Relators' Resp. to Def. eCW's Second Set of Reqs. for Produc. to Relators (Nov. 3, 2023), at 5 (attached as Ex. D) ("Request No. 7").)  In response, Relators stated:

> [we] believe that ***no responsive documents exist***. Relators advise Alex's PC Solutions' customers generally about security concerns but ***did not have any communications with the customers regarding this case or any specific eCW security vulnerabilities***.

(*Id.* at 8 (emphases added).)  Nowhere in their response did Relators suggest that such communications may have occurred in a non-written manner.

It later emerged that Relators **had communicated** with their customers about the security of eCW's software—in writing—in the form security risk assessments (or "SRAs") for which Relators provided written input regarding the security of eCW's certified electronic health records ("EHR") software—including on issues that Relators themselves claim are relevant to ONC certification requirements. Specifically, between December 2017 and December 2018 (i.e., between 10 months before and 2 months after Relators filed their first complaint in this case (*see* First Sealed Compl., ECF No. 3), Relator Eric Rodighiero assisted at least two clients (and potentially others) with SRAs. (Relators' Supp. Resps. to Def. eClinicalworks LLC's Fifth Set of Reqs. for Produc. to Relators (Aug. 5, 2024) ("Supp. Resp."), at 3-4 (attached as Ex. E)); 6/21/24 Rodighiero Dep. 26:25-27:3, ECF No. 218-27 (testifying he performed no more than a dozen security risk assessments for clients of Alex's PC Solutions).) As Mr. Rodighiero explained, the SRAs were intended to determine whether each practice complied with federally mandated requirements related to security. (6/21/24 Rodighiero Dep. 24:24-25:10, ECF No. 218-27.)

Given their obvious relevance to the case, eCW asked Relators to produce documentation of those audits on June 28, 2024, one week after Mr. Rodighiero's deposition. (*See* Def. eClinicalworks LLC's Fifth Set of Reqs. for Produc. to Relators (June 28, 2024) ("eCW's 5th Req."), at 2-3 (attached as Ex. F.) In response, Relators falsely claimed that "no responsive documents exist" given "[a]ll results and documentation of such security risk assessments completed by Tier2Technologies' customers who use eClinicalWorks's Electronic Health Records software belong entirely to the customers and are not retained by the Relators." (Supp. Resp., at 2.)

When eCW pushed back during a meet and confer and asked Relators to look for documentation again, Relators' counsel "discovered" that Mr. Rodighiero still had spreadsheets

2

detailing the results of two audits. Rather than producing them, however, Relators refused, claiming among other things that they were irrelevant. (*Id.* at 3.) However, this Court rejected that claim and ordered their production. (*Id.*)

The SRAs are highly relevant. They document Mr. Rodighiero's analysis of, among other things: (1) whether ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████ (*See* REL000927; REL000928.)[1]

Notably, despite Relators' assertions in this lawsuit that the alleged vulnerabilities they had found were so severe that using eCW's EHR caused doctors to violate federal requirements (*see generally* Sec. Am. Compl., ECF No. 94), there was not a single mention of those concerns in either assessment. (*See generally* REL000927, REL000928.) **To the contrary**, Mr. Rodighiero indicated that both practices had met all authentication and auditing requirements, including those for which each practice's response explicitly relied upon the use of eCW's EHR software.

Relators' advice on the SRAs is highly relevant despite the Court's dismissal of Relators' HIPAA claims because the SRAs cover the very security functions that Relators make central to their claims in this case. Indeed, Relators have linked well over half of their alleged security vulnerabilities to ONC authentication and auditing requirements.

For example, the SRAs assert that authentication requirements are satisfied because the practices require ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

---

[1] Parties' exhibit lists and deposition designations will be submitted in accordance with the Court's Pre-Trial Deadlines Order, ECF No. 349. REL000927 and REL000928 are included in the proposed exhibit lists.

3

███████████████████████████████████████████████████ REL000928, at -932 & -942 (same).)  That functionality relates to 45 C.F.R. § 170.315(d)(1) and is precisely what Relators claims in this lawsuit is deficient and is connected to numerous alleged security vulnerabilities.

The SRAs also assert that eCW's EHR is capable of performing audit functions.  They state, for example, that ███████████████████████████████████████ ████████ (REL000927, Cell F16; *see also* REL000928, at -930 (same).)  And they also state that the ████████████████████████████████████████████████ (REL000927, Cell F76; *see also* REL000928, at -941 (same).)  These capabilities relate to the requirements of 45 C.F.R. § 170.315(d)(2) & (3) and, again, are the subject of Relators' claims of alleged vulnerabilities in this case.

Importantly, Relators have never confirmed what other practices Mr. Rodighiero performed security risk assessments for, or when those risk assessments occurred.  While Relators told eCW that no other SRAs were "retained by the Relators" (Dec. 2, 2024 Email, Letter Br. to the Court Regarding Relators' Improper Failure to Produce Relevant Evidence), when eCW asserted that Relators' failure to retain documents obviously relevant to litigation they initiated constituted improper spoliation, Relators responded that they "have not destroyed any evidence" regarding SRAs (*id.* at 2).

Subsequently, Relators also refused to answer multiple requests for admissions regarding whether they communicated to their clients about their investigation into the security issues in eCW's software.  Specifically, they refused, on relevance grounds, to respond to the following requests, among others:

4

> Admit that You did not report to Vineville Internal Medicine the results of your investigation of security vulnerabilities in eCW's Electronic Health Records software. …
>
> Admit that You did not report to one or more of Tier2 customers that utilize the cloud instance of eCW's Electronic Health Records software the results of Your investigation of security vulnerabilities in eCW's Electronic Health Records software.

(Relators' Resp. to Def. eCW's First Req. for Admis. to Relators (Aug. 5, 2024), at 5, 28 (attached as Ex. G).)

## ARGUMENT

The Court should admit the SRAs and any questioning regarding Relators' failure to share their asserted security concerns with their customers. Such evidence of prior inconsistent statements obviously bears on critical issues of bias, credibility and motivation. Simply put: if Relators really believe that eCW's software does not have proper access controls or audit functionality, then they helped their clients lie on federally mandated SRAs about those topics. Alternatively, Relators were telling the truth in the SRA statements and do not believe what they plan to tell the jury about alleged vulnerabilities in eCW's software. Either way there is a material inconsistency and the jury should be permitted to consider such a material inconsistency. And given Relators' failure to retain any other documentary evidence that they ever told any customer a single word about the security issues they raise in this case, they should not be permitted to testify that they conveyed unspecified security concerns to unnamed customers at trial.

### I. EVIDENCE RELATED TO RELATORS' NONDISCLOSURE IS CLEARLY RELEVANT.

***First***, all evidence concerning Relators' Nondisclosure (including the SRAs and their written discovery responses) is relevant and admissible.

Evidence is relevant and admissible if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining

5

the action. Fed. R. Evid. 401, 402. That bar is easily cleared here given evidence of Relators' Nondisclosure: (1) calls into question a central element of Relators' claim—falsity; (2) constitutes a prior inconsistent statement; and (3) shows Relators' bias and lack of credibility. *See, e.g., Addison v. Arnett*, 2016 WL 3676621, at *3 (S.D. Ga. July 6, 2016) (denying motion *in limine* to exclude evidence of prior inconsistent statements given "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible" under Fed. R. Evid. 613(b))[2]; *Travis v. Exel, Inc.*, 2013 WL 12109758, at *2 (N.D. Ga. May 31, 2013) (denying motion *in limine* seeking to exclude extrinsic evidence of a witness's prior conduct given under Rule 608 parties may use "extrinsic evidence for other impeachment purposes, such as to show bias, to contradict a witness's testimony, or to demonstrate that the witness has made prior inconsistent statements" as well as "to prove or disprove a specific fact that is material to the case") (citing *United States v. Taylor*, 426 F.. App'x 702, 705 (11th Cir. 2011)).

In this case, evidence of Relators' Nondisclosure severely undermines Relators' assertion – and one of the necessary elements of their claim under the False Claims Act – that the security issues they uncovered made eCW's statements that its EHR software conformed with certification requirements like (d)(1), (d)(2) and (d)(3) false. Despite now claiming that eCW should not have been certified under any of these criteria (*see generally* Relators' Opp. Mot. Summ. J., ECF No. 266), Mr. Rodighiero helped complete two SRAs, one of which is dated **two months** after Relators filed this case, that concluded eCW's EHR had at least some of the functionalities required by those regulations that Relators now claim it did not have. (*See* Background *supra* (citing REL000927 and REL000928).) Not only that, but those two SRAs in turn were used by those

---

[2]   While Rule 613(b) does not apply to statements of party opponents, the principle set forth by that rule is even more applicable in this case given statements by a party opponent like Relators are not subject to the same hearsay concerns that would otherwise generally preclude extrinsic evidence of a witness's prior inconsistent statements.

practices to document their compliance with governmental requirements. If Relators believe the vulnerabilities they found were so concerning that eCW's EHR should not have been certified, their decision not to warn their clients of those potential risks is inexplicable. Worse yet, ***when Relators were affirmatively asked for their input,*** it makes no sense that individuals who claim to have brought this suit to vindicate the federal government's interests would have facilitated false documentation of compliance with federal requirements on behalf of their customers. Evidence of Relators' Nondisclosures tends to "disprove a specific fact that is material to the case" and is therefore admissible. *Travis*, 2013 WL 12109758, at *2.

Similarly, to the extent that Relators themselves intend to testify that they believe that eCW's software should not have been certified – which they are not qualified to do – the evidence outlined above should be admissible as prior inconsistent statements. *See, e.g.*, *Addison*, 2016 WL 3676621, at *3. The same is true with regard to Relators' anticipated testimony that their investigations in this case were motivated by concern for their clients. Presumably, technology professionals who are concerned for their clients would not knowingly make false statements in federally mandated documentation concerning the security of their EHR systems. These contradictions go to the core of Relators' motivations, bias, and credibility and therefore must be admitted. *See Travis*, 2013 WL 12109758, at *2.

In light of the above, the Court should rule that evidence and argument related to Relators' Nondisclosure is clearly relevant and admissible under Rules 401 and 402.

II. **RELATORS SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE OR ARGUMENT, CONTRARY TO SWORN DISCOVERY RESPONSES, THAT THEY DID WARN ANY CUSTOMER ABOUT RELEVANT SECURITY ISSUES IN ECW'S EHR SOFTWARE.**

***Second***, the Court should preclude Relators from presenting evidence (whether through their own testimony, testimony of their customers, or any other means) that they ***did*** have

7

communications with the customers regarding relevant security vulnerabilities in eCW's EHR software when their own affirmative statements in written discovery stated the exact opposite. (Request No. 7, at 5-8 ("[Relators] *did not* have any communications with the customers regarding this case or any specific eCW security vulnerabilities.") (emphasis added).)

Courts both within and outside the Eleventh Circuit have excluded evidence that contradicts sworn discovery responses. *See*, *e.g.*, *Bemesderfer v. United Parcel Serv., Inc.*, 2024 WL 149927, at *5 (M.D. Fla. Jan. 12, 2024) (granting motion in limine to exclude evidence where its proponent "fail[ed] to explain why it should be permitted to offer evidence at trial that contradicts its discovery responses"); *Hopman v. Union Pac. R.R.*, 2021 WL 2694236, at *10 (E.D. Ark. June 30, 2021) (granting motion *in limine* prohibiting defendant "from presenting testimony, evidence, or argument that contradicts [its] stipulations, written discovery responses, and Rule 30(b)(6) deposition testimony provided by designated witnesses … to the extent the stipulations, discovery responses, and deposition testimony have not been properly supplemented as required").

The Court should do the same here. In their Response to eCW's Fifth Set of Requests, Relators swore that they "did not have any communications with the customers regarding this case or any specific eCW security vulnerabilities." (Supp. Resp, at 2-3.) Given that sworn response, which has never been updated despite the discovery of the two SRAs discussed above, Relators should not be allowed to testify, or present any other evidence, that they had communications with customers about any aspect of the allegations in this case. *See Bemesderfer*, 2024 WL 149927, at *5; *Hopman*, 2021 WL 2694236, at *10. eCW has concern that they may attempt to do so because Messrs. Permenter and Wheeler have already attempted to walk back the response in their depositions by making exceedingly vague references to undefined security concerns that might

8

have been expressed to unidentified customers. (*See, e.g.*, 6/21/24 Permenter Dep. 20:18-25, ECF No. 218-101 (claiming that he had "certainly told clients that [he] did not think it was secure piece of software," but that he "probably did not go into a lot of detail"); 6/20/24 Wheeler Dep. 132:6-133:20, ECF No. 218-8 (claiming Mr. Permenter told customers to switch from eCW's software for security reasons).) Allowing them to testify similarly at trial, or present otherwise contrary evidence, would be particularly unfair (1) given Relators have categorically refused to answer any of eCW's requests for admission regarding what they did or did not tell their customers regarding the results of their investigations into the security; (2) failed to retain other SRAs that it is now clear would likely undermine their claims. And such testimony would in any event be irrelevant because it in no way suggests that Relators ever identified the specific technical issues they raise in this case to their customers, or that they ever expressed to their customers a concern that eCW's EHR software might not be properly certified or threaten their eligibility for MIPS incentive payments.

In sum, fundamental fairness requires the preclusion of any argument or evidence that contradicts Relators' sworn statement that: they "did not have any communications with the customers regarding this case or any specific eCW security vulnerabilities." (Request No. 7, at 5.)

## **CONCLUSION**

For all of these reasons, the Court should preadmit evidence and argument regarding Relators' Nondisclosure and preclude Relators from presenting contrary evidence.

Dated: September 9, 2025

        Respectfully submitted,

        */s/ Duke R. Groover*
        Duke R. Groover
        Georgia Bar No. 313225
        dgroover@jamesbatesllp.com
        JAMES BATES BRANNAN GROOVER LLP
        231 Riverside Drive
        Suite 100
        Macon, Georgia 31201
        Tel: (478) 742-4280
        Fax: (478) 742-8720

        Allison M. Brown (*pro hac vice*)
        alli.brown@kirkland.com
        KIRKLAND & ELLIS LLP
        2005 Market Street, Suite 1000
        Philadelphia, Pennsylvania 19103
        Tel: (215) 268-5000

        Geoffrey M. Wyatt (*pro hac vice)*
        geoffrey.wyatt@kirkland.com
        KIRKLAND & ELLIS LLP
        1301 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004
        Tel: (202) 389-3393

        Martin L. Roth (*pro hac vice*)
        martin.roth@kirkland.com
        KIRKLAND & ELLIS LLP
        333 West Wolf Point Plaza
        Chicago, Illinois 60654
        Tel: (312) 862-7170

        Aaron Katz (*pro hac vice)*
        akatz@aaronkatzlaw.com
        AARON KATZ LAW LLC
        399 Boylston Street, 6th Floor
        Boston, Massachusetts 02116
        Tel: (617) 915-6305

        *Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 9, 2025, a copy of the foregoing was served on all parties of record via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

*Counsel for Defendant eClinicalWorks, LLC*