# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> eCLINICALWORKS LLC, <br><br> Defendant. | No. 5:18-CV-382 <br><br> Honorable Marc T. Treadwell |

# DEFENDANT eCLINICALWORKS LLC'S OPPOSITION BRIEF TO RELATORS' MOTION TO STRIKE

Relators' motion to strike eClinicalWorks LLC's ("eCW's") motions to exclude the opinions of their damage expert Emily Wolfston should be denied. Relators' arguments depend on a misreading of this Court's orders. The Court set a separate due date for *Daubert* motions "pertaining solely to the quantification of alleged damages" of "60 days after the Court rules on dispositive motions." (Scheduling and Discovery Order ("Scheduling Order") § V.C, ECF No. 100.) The benefit of this sequencing is that it permits the parties to account for changes in the scope of the case, which frequently result from rulings on summary judgment motions.

That is precisely what happened here. Relators' case previously encompassed versions 10, 11 and 12 of eCW's certified electronic health records ("EHR") software. But on summary judgment, Relators narrowed their claims to version 11, as reflected in this Court's order on summary judgment. And Ms. Wolfston has a damages model based on the assumption that all three versions are in the case—and she expressly testified that she had no ability to account for a case in which fewer versions were at issue.

eCW prepared a motion based on this development to address the new lack of fit between Ms. Wolfston's opinions and Relators' liability theory. (*See* ECF No. 364-1.) eCW's damages expert, Dr. Laurence Baker, also prepared calculations to show the impact on Ms. Wolfston's model of restricting the case to version 11. (*Id.*) And eCW asked Dr. Baker to adapt his prior re-weighting analysis to a version-11-only adaptation of Ms. Wolfston's model, as well as to extend that analysis to other MIPS provisions he had raised in his prior reports. (*See* ECF No. 365-1.)

While preparing its motion, eCW made the shocking discovery that Ms. Wolfston's damages model seeks to penalize eCW for millions in supposed "overpayments" to clinicians who ***never used eCW's EHR software***, thus inflating Relators' damages by ***more than 300%***. (ECF No. 367-1.) The data supporting this conclusion were buried within more than 800,000 cells of

data in Ms. Wolfston's spreadsheets.  (*Id.*)  Because this error obviously relates to the "quantification of alleged damages," and because it is highly misleading and had not been previously discovered, eCW included it as a basis for exclusion.

These grounds for exclusion are timely under the Court's Scheduling Order, precipitated by changed circumstances, and highly meritorious.  No doubt Relators would prefer the Court not address them, but their motion to strike is without merit and should be denied.

***First***, the motions are timely under the Scheduling Order.  Relators' argument that the Scheduling Order was amended to eliminate the *Daubert* damages deadline is incorrect.  Their alternative argument that eCW somehow forfeited its right to bring post-summary-judgment *Daubert* motions on damages by filing an initial motion prior to summary judgment is also wrong.  The Scheduling Order contains no such proviso, and in any event Relators' argument fails to account for the changed circumstances following summary judgment.

***Second***, even if eCW's motions are viewed as motions for reconsideration, they should still be considered on the merits.  They easily meet the standard for reconsideration, and Eleventh Circuit precedent disfavors striking such motions on timeliness grounds.  Striking the motions would also be profoundly inefficient because the issues they raise must be addressed at some point.  It is better to do so now than after a jury is presented with misleading damages estimates that do not match Relators' revised liability theory.

## ARGUMENT

### I. THE MOTIONS ARE TIMELY UNDER THE SCHEDULING ORDER.

Relators first assert that eCW's motions are not timely under the Scheduling Order because (1) it was amended to eliminate the deadline for post-dispositive-motion *Daubert* motions on damages; and (2) eCW in any event forfeited the right to file such motions by filing a motion as to Ms. Wolfston prior to summary judgment. (Mot. at 3-4.)  Neither contention is correct.

2

*First*, the deadline for post-dispositive motions *Daubert* challenges to damages experts has never been amended. The Scheduling Order provides that "*Daubert* motions challenging an expert proffer pertaining solely to the quantification of alleged damages shall be filed by no later than 60 days after the Court rules on dispositive motions." (Scheduling Order, § V.C, ECF No. 100.) It is not disputed that eCW met this deadline: it filed the Wolfston Motions challenging Ms. Wolfston's quantification of damages on August 25, 2025, within 60 days of this Court's June 25, 2025 Motion for Summary Judgment Order.[1]

Relators argue that "none of [this Court's] later Orders maintained separate deadlines and the operative scheduling Order required all *Daubert* motions be filed on or before October 30, 2024" (Mot. at 3), referring to this Court's various amendments to the Scheduling Order. But that ignores the scope of the amendments. An amended scheduling order that "intend[s] to reset only [some] dates" does not amend other deadlines that it does not mention. *See Nobles v. Rural Community Ins. Servs*, 303 F. Supp. 2d 1279, 1283 (M.D. Ala. 2004) (order amending pretrial and trial dates did not amend dates to add parties or amend pleadings because "[h]ad the court wanted to enter an entirely new scheduling order . . . it would have done so explicitly, rather than amending [the prior] order."). And here the amendments moved specific deadlines, never including the deadline for post-summary-judgment *Daubert* motions on damages.

The parties' very first joint motion to amend the Scheduling Order expressly sought to extend the "July 8, 2024" deadline for "*Daubert* motions." (ECF No. 113, at 3.) Although they did not distinguish between liability and damages motions, it is clear that this reference was only to liability motions because those are the motions that were due on July 8, 2024, under the original

---

[1] The Scheduling Order distinguishes *Daubert* motions challenging an expert proffer "pertaining to liability" and those "pertaining solely to the quantification of alleged damages." (*Id.*) The former (relating to liability) is subject to a fixed deadline, while the latter (relating to damages) must be filed "no later than 60 days after the Court rules on dispositive motions." (*Id.*)

3

Scheduling Order. (*See* Scheduling Order, § V.C, ECF No. 100 ("*Daubert* motions challenging an expert proffer pertaining to liability shall be filed by no later than July 8, 2024 . . . .").) It is that same deadline that has been extended in each amendment. And that makes good sense. There was no reason in any of the amendments for the parties or the Court to extend the post-dispositive-motion deadline for damages *Daubert* motions because that deadline was tied to an event (resolution of dispositive motions) that had not happened yet, and thus no one was in need of more time to file such motions.

***Second***, Relators' alternative argument that eCW "abandoned any right to hold certain damages arguments until after summary judgment was denied when it made the strategic decision to move to exclude Ms. Wolfston's" opinions "at the first deadline" (Mot. at 4) also lacks merit. For one thing, the Scheduling Order makes no such proviso. But even if it did, the premise of Relators' argument—that eCW made a "strategic decision" to "hold certain damages arguments"—is false. eCW's motions respond to developments in the case: Relators' decision, ***after*** eCW's motions for summary judgment and to exclude Ms. Wolfston were filed, to limit their case to version 11; and eCW's discovery, buried in Ms. Wolfston's spreadsheets, that a significant majority of her estimated damages are based on MIPS payments to non-eCW clinicians.

Indeed, it is ***Relators*** who seek to secure an unfair "strategic" advantage of the schedule they imagine applies here. They knew that Ms. Wolfston's model is premised on multiple versions of eCW's software—a fact (as they highlight) that came out at Ms. Wolfston's deposition. (*See* Mot. at 1 n.3.) But they only chose to disclose their decision to limit the scope of their liability theory to version 11 in response to eCW's summary judgment motion—and after eCW had moved to exclude Ms. Wolfston—apparently to help support their argument that their claims should not be subject to the public-disclosure bar. Relators sheepishly insist in a footnote that "discovery in

4

this case has always focused on Version 11" (Mot. at 1 n.1)—but that begs the question of why they would have their damages expert proffer a model that depends on proof of liability as to version 10 of the software and has no means of separating it out. The obvious answer is that Relators *did not* intend to focus only on version 11 at the time Ms. Wolfston proffered her model—or at the time she supplemented it. But now they wish to insulate Ms. Wolfston's necessarily inflated damages estimates from scrutiny on the ground that eCW failed to anticipate something Relators had never previously disclosed. That argument is frivolous and should be rejected.

Equally without merit is any suggestion that eCW should have raised arguments about the misleading inclusion of non-eCW customers in Ms. Wolfston's model. The idea that eCW should have been on notice that Ms. Wolfston based her damages estimates in substantial part on non-eCW customers is an outrageous suggestion that notably finds no support in Relators' motion. eCW provided Relators with a list of its customers in discovery and had every reason to believe that Ms. Wolfston's model would be based on that list and would not modify it to sweep vast numbers of non-eCW customers into her damages estimates. eCW did not discover this modification until after the Court's summary judgment ruling, when it was preparing its motion on the version 11 issue. The facts that give rise to this misrepresentation—the NPI numbers of individual clinicians buried in certain cells in column X of tab 1 of Ms. Wolfston's supplemental spreadsheet, which must be checked individually on one government website and then cross-referenced on another to ascertain the software to which they attested for MIPS eligibility—are needles in a digital haystack. There can be no legal basis—regardless of timing—for holding eCW responsible for customers that are not its own, and Relators' self-serving assertion that the clock has run out cannot change this fundamental principle, particularly when the Scheduling Order

5

plainly does not support their position.[2]

In short, eCW's motions are timely under the Scheduling Order, both as written and notwithstanding eCW's earlier motion to exclude Ms. Wolfston. For this reason alone, the Court should deny the motion to strike.[3]

## II. THE MOTIONS SHOULD NOT BE STRICKEN AS UNTIMELY RECONSIDERATION MOTIONS.

Relators' argument that the motions are really motions for reconsideration that neither meet the standard nor are timely filed (Mot. at 2-3) also lack merit.

At the threshold, for all the reasons just explained, eCW's motions ***do not*** seek reconsideration of prior *Daubert* rulings; instead, they raise new issues premised on recent developments that had not occurred at the time prior motions were due. But even assuming the reconsideration standard applies, that would be no reason to strike them.

***First***, the motions easily satisfy the standard Relators claim applies to reconsideration. Relators contend that eCW raises arguments that the Court has "already rejected" or "could have been made when eCW filed its first motion" (Mot. at 3), but neither is true. As discussed above, neither the version 11 nor the non-eCW-customer motions could have been brought previously. And the third motion, while somewhat overlapping conceptually with eCW's original *Daubert* motion, clarifies the operation of automatic exemptions and other MIPS provisions and applies

---

[2] For similar reasons, eCW should be permitted to re-raise challenges to Ms. Wolfston's failure to account for various features of MIPS based on how her model would operate, if it is permitted to proceed at all, based on corrections for the relevant version and actual eCW customers.

[3] The cases cited by Relators in support of their proposition are inapplicable, even assuming (incorrectly) that eCW's motions were untimely. In *Allen v. BAC Home Loans Servicing LP*, unlike here, the plaintiff did not oppose the defendant's motion to strike plaintiff's untimely response. 2010 WL 3950980, at *1 (M.D. Ga. Oct. 7, 2010) (cited in Mot. at 2). In *Doe e. rel. Doe v. Colquitt County Schools*, the court granted the motion to strike specifically because the plaintiffs "neither requested an extension nor explained their late filing." 2020 WL 1929839, at *1 (M.D. Ga. Apr. 21, 2020) (cited in Mot. at 2). Here, by contrast, and as previously explained both above and in eCW's motions, eCW has provided clear explanations for its filings, even assuming, for the sake of argument, that any were untimely.

those arguments to Ms. Wolfston's model as it would have to be revised to address the inclusion of irrelevant versions and noncustomers.[4]

*Second*, the motions should not be deemed untimely under L.R. 7.6 even if the Scheduling Order does not apply. For starters, eCW's motions are supported by multiple grounds recognized in Rule 60(b), under which they would be timely. These include (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered previously; and (3) fraud, misrepresentation, or misconduct of the opposing party. As argued above, eCW was not on notice of essential facts at the time it filed its initial motion to exclude Ms. Wolfston's testimony. As to version 11, that is because Relators had not disclosed that they were narrowing their liability theory to that version. As to the non-eCW customers, eCW had not discovered the misleading nature of Relators' damages model despite extensive efforts to understand it. And as to the MIPS exemptions, this motion's arguments are framed in terms of the re-calculation of Ms. Wolfston's model that would be necessary in light of the issues presented in the other two motions. Rule 60 expressly provides parties a year following the Court's order to bring a motion on these grounds. *See* Fed. R. Civ. P. 60(c).[5]

Furthermore, even assuming the motions were deemed to be untimely motions for reconsideration under L.R. 7.6, striking the motions would not be a proper remedy. Courts have repeatedly held that motions to strike are a "drastic remedy". *Towns v. Walmart Stores E. LP*, 2017 WL 2541412, at *1-2 (M.D. Ga. June 12, 2017) (denying motion to strike and explaining

---

[4] While this Court has previously addressed Ms. Wolfston's assumptions related to exceptions that require affirmative steps to be taken by clinicians (i.e., the hardship exception), the Court has not considered Ms. Wolfston's treatment of the automatic exemptions at issue in the third motion. (*See* 6/4/2025 *Daubert* Hr'g 97:14-100:12, ECF No. 334; ECF No. 365-1.)

[5] Decisions of this Court have recognized that "[m]otions under Rule 60(b) and motions for reconsideration are decided under different standards," including as to the applicable time limitation. *See Smith v. Fye*, 2020 WL 6689198, at *1 n.2 (M.D. Ga. Nov. 12, 2020).

7

that a "motion to strike is a drastic remedy to be resorted to only when required for the purposes of justice, and prejudice against the moving party is an important part of the analysis"); *see also Korsing v. United States*, 2017 WL 7794276, at *2 (S.D. Fla. Aug. 24, 2017) (accepting an untimely *Daubert* motion after finding no prejudice "will befall the Parties or the Court" and where "Defendant has been provided an opportunity to fully respond"). Such drastic remedies should be avoided here, where eCW had a good-faith basis for believing a different deadline set out in a court order was controlling.

Relators' preferred remedy would be all the more improper here, where denying the motions on purely procedural grounds would risk presenting the jury with an inflated and unsupported damages figure. As courts have recognized, it is essential to prevent the jury from being "expose[d] . . . to an exaggerated sum of damages." *Simmons v. USI Ins. Servs., Inc.*, 721 F. Supp. 3d 1333, 1340 (M.D. Fla. 2024) (quoting *Children's Broad. Corp. v. The Walt Disney Co.*, 245 F.3d 1008, 1017-18 (8th Cir. 2001)). This principle is reinforced by the court's reasoning in *Ratcliffe v. BRP U.S., Inc.*, 2024 WL 4665597, at *2-4 (D. Me. Nov. 4, 2024), where, despite the defendant's untimely *Daubert* motions, the court declined to strike them, emphasizing its gatekeeping responsibility under Rule 702 to ensure that only admissible expert evidence is presented at trial. The Court explained that resolving expert witness issues—even if raised late—ultimately benefits all parties, as the trial should proceed only with admissible evidence. *Id.* Under Relators' proposed course, the jury would be presented with misleading and inaccurate damages estimates—a suggestion that makes no sense, as it would introduce error that would then have to be corrected somehow after the fact. Thus, rigorous scrutiny of damages evidence is not only procedurally appropriate but also necessary to safeguard the integrity of the trial process.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Relators' Motion to Strike.

Dated: September 18, 2025

                                        Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice)*
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice)*
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 18, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720