## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.,* ALEX PERMENTER, et al., | ) ) | No. 5:18-CV-382 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | Honorable Marc T. Treadwell |
| eCLINICALWORKS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT eCLINICALWORKS, LLC'S RESPONSE
## TO RELATORS' TRIAL BRIEF

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I.     Statements Of Counsel And Responses To Document Requests Do Not Constitute Admissible Evidence And Interrogatories Must be Assessed Individually ............................................................................................................ 2

II.    Damages And Penalties Must Be Proven To A Reasonable Certainty And Must Not Be Unconstitutionally Excessive. ..................................................... 4

III.   *SuperValu* Demonstrates That The Jury Must Consider Subjective Scienter Evidence. ................................................................................................................. 6

IV.    eCW Can Present Evidence Related To Its Processes And Procedures. ..................... 8

V.    eCW's Settlement Agreement With SQOO Is Inadmissible. ........................................ 9

VI.   The Deliberative Process Privilege Does Not Prevent Government Witnesses' Testimony ............................................................................................................... 10

VII.  Relators Should Not Be Allowed To Play Video DepositionS Of Witnesses It Can Call Live. ....................................................................................................... 13

VIII. The Government Action And Public Disclosure Bars Are Jury Issues. .................... 17

CONCLUSION ............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATD-Am. Co. v. Krueger Int'l, Inc.*,
  2014 WL 3952848 (E.D. Penn. Aug. 12, 2014) ....................................................15

*Austin v. United States*,
  509 U.S. 602 (1993)..............................................................................................5

*Bishop v. City of Birmingham Police Dep't*,
  361 F.3d 607 (11th Cir. 2004) ............................................................................18

*U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
  2011 WL 5005313 (E.D. Va. Oct. 19, 2011) .......................................................4

*Chavis v. Wise*,
  2013 WL 3287104 (M.D. Ala. June 28, 2013) .....................................................2

*Dozier v. Waffle House, Inc.*,
  2005 WL 8154449 (N.D. Ga. Oct. 31, 2005) .....................................................14

*U.S. ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*,
  2019 WL 1254554 (D. Mass. Mar. 19, 2019)...............................................11, 13

*U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*,
  370 F. Supp. 2d 18 (D.D.C. 2005) .......................................................................4

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*,
  2021 WL 2279917 (N.D. Ga. Mar. 5, 2021)......................................................16

*Fed. Trade Comm'n v. On Point Global LLC*,
  2021 WL 10381352 (S.D. Fla. Oct. 14, 2021)....................................................15

*Gardner v. Liberty Ins. Corp.*,
  2023 WL 7002781 (S.D. Ohio Oct. 23, 2023)....................................................14

*Georgia by Dep't of Cmty. Health v. Leavitt*,
  2006 WL 8432760 (N.D. Ga. May 18, 2006) .....................................................10

*United States ex rel. GNGH2 Inc. v. XLD Century LLC*,
  2024 WL 3625147 (C.D. Cal. July 31, 2024)........................................................7

*Granger v. Babin*,
  2014 WL 4211309 (M.D. La. Aug. 25, 2014) .......................................................3

*Grant on behalf of United States v. Zorn*,
  107 F.4th 782 (8th Cir. 2024) ..............................................................................5

*Graves v. Plaza Med. Ctrs. Corp.*,
2017 WL 3895438 (S.D. Fla. Sept. 6, 2017) .............................................................6

*Harrigan ex rel. Harrigan v. Marion Cnty.*,
2013 WL 5274407 (D. Or. Sept. 18, 2013) .............................................................16

*U.S. ex rel. Hartpence v. Kinetic Concepts Inc.*,
2018 WL 7568578 (C.D. Cal. July 30, 2018) ................................................11, 12, 13

*Haugabrook v. Valdosta City Sch.*,
2012 WL 1014789 (M.D. Ga. Mar. 22, 2012), *aff'd sub nom. Haugabrook v.
Cason*, 518 F. App'x 803 (11th Cir. 2013) ..............................................................2

*Hays v. Hoffman*,
325 F.3d 982 (8th Cir. 2003) ..................................................................................4

*Higgs v. Transp. Specialist Sanford*,
2009 WL 1939026 (W.D. Ky. July 6, 2009) .............................................................3

*Hurtado v. Balerno Int'l Ltd.*,
408 F. Supp. 3d 1315 (S.D. Fla. 2019) ...................................................................3

*Int'l Brominated Solvents Assoc. v. Am. Conf. of Gov't Industrial Hygienists, Inc.*,
2007 WL 9751885 (M.D. Ga. June 29, 2007) ........................................................12

*U.S. ex rel. Int'l Broth. of Elec. Workers, Local Union No. 98 v. Fairfield Co.*,
2013 WL 3327505 (E.D. Penn. July 2, 2013) ..........................................................4

*KST Data, Inc. v. DXC Tech. Co.*,
2018 WL 6071371 (C.D. Cal. Oct. 11, 2018) .........................................................10

*Kulhawik v. Holder*,
571 F.3d 296 (2d Cir. 2009) ..................................................................................2

*LaCourse v. Def. Support Servs. LLC*,
2019 WL 8165261 (N.D. Fla. Aug. 29, 2019), *aff'd sub nom. LaCourse v.
PAE Worldwide Inc.*, 980 F.3d 1350 (11th Cir. 2020) .............................................2

*League of United Latin Am. Citizens v. Abbott*,
2022 WL 3233406 (W.D. Tex. Aug. 10, 2022) .......................................................10

*LeClair v. Raymond*,
2022 WL 219609 (N.D.N.Y. Jan. 25, 2022) ..........................................................2, 3

*Lindsey v. Normet*,
405 U.S. 56 (1972) ...............................................................................................10

*United States ex rel. Lovato v. Kindred Healthcare, Inc.*,
   2020 WL 9160872 (D. Colo. Dec. 14, 2020)........................................................18

*Malam v. Adducci*,
   2020 WL 12739427 (E.D. Mich. Aug. 4, 2020) ...............................................11

*McCabe v. Macaulay*,
   2008 WL 2980013 (N.D. Iowa Aug. 1, 2008) .................................................16

*Mighty v. Miami-Dade Cnty.*,
   2021 WL 4022616 (11th Cir. Sept. 3, 2021) ...................................................16

*Miller v. Gizmodo Media Grp., LLC*,
   407 F. Supp. 3d 1300 (S.D. Fla. 2019), *aff'd*, 994 F.3d 1328 (11th Cir. 2021).......................17

*Matter of Nelson*,
   131 F.R.D. 161 (D. Neb. 1989)........................................................................10

*Obester v. Lucas Assocs., Inc. v. N.A.*,
   2011 WL 13167912 (N.D. Ga. Apr. 26, 2011) ...............................................14

*Pantages v. Cardinal Health 200, Inc.*,
   2009 WL 10670298 (M.D. Fla. July 8, 2009) ...................................................3

*Peterson v. Weinberger*,
   508 F.2d 45 (5th Cir. 1975) ..............................................................................5

*Reynolds v. Gen. Motors Corp.*,
   2007 WL 2908564 (N.D. Ga. Sept. 28, 2007) ..................................................6

*Sam Kholi Enters., Inc. v. Thompson*,
   2009 WL 10669140 (W.D. Tex. Feb. 4, 2009)................................................17

*United States ex rel. Schutte v. SuperValu Inc.*
   598 U.S. 739 (2023)......................................................................................6, 7

*Stansbury v. Hopkins Hardwoods, Inc.*,
   2018 WL 2977439 (W.D. Ky. Mar. 2, 2018) .................................................15

*U.S. ex rel. Taylor v. Healthcare Assocs. of Texas, LLC*,
   2025 WL 624493 (N.D. Tex. Feb. 26, 2025).....................................................5

*United States v. Advance Tool Co.*,
   902 F. Supp. 1011 (W.D. Mo. 1995), *aff'd*, 86 F.3d 1159 (8th Cir. 1996)...........................5, 6

*United States v. Allergan, Inc.*,
   2024 WL 3344627 (D. Md. July 9, 2024)........................................................17

*United States v. Hibbs*,
    568 F.2d 347 (3d Cir. 1977) ........................................................................... 4

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ................................................................. 10

*United States v. Saavedra*,
    661 F. App'x 37 (2d Cir. 2016) .................................................................... 4

*Whiteside v. Geico Indem. Co.*,
    2018 WL 1535484 (M.D. Ga. Mar. 29, 2018) ....................................... 14

*Williams v. Comm'r of Social Security*,
    2022 WL 791711 (11th Cir. Mar. 16, 2022) ............................................. 2

*Yates v. Pinellas Hematology & Oncology, P.A.*,
    21 F.4th 1288 (11th Cir. 2021) ..................................................................... 5

**Statutes**

31 U.S.C. § 3729(a)(1)(A) .................................................................................. 4

31 U.S.C. § 3729(a)(1)(B) .................................................................................. 4

**Rules**

Fed. R. Civ. P. 32 ................................................................................................ 14

Fed. R. Evid. 401 ................................................................................................ 3

Fed. R. Evid. 403 ................................................................................................ 9

Fed. R. Evid. 602 ................................................................................................ 3

Fed. R. Evid. 611 ................................................................................................ 14

## INTRODUCTION

Relators' trial brief makes their trial strategy clear: create as many sideshows as possible for the jury, while attempting to block eCW from presenting relevant evidence regarding the actual issues in this case. The examples pervade all of Relators' Trial Brief's arguments: they seek rulings from the Court (1) that Relators can introduce *lawyer* statements in briefs and from oral argument to the jury as though they are evidence; (2) that Relators' own potential bias and motivation to drive up the damages are irrelevant and that the government's action is only admissible when favorable to Relators; (3) that the jury should ignore any evidence that eCW subjectively acted in good faith, even though that is indisputably relevant to scienter; (4) that Relators should be able to present evidence on non-certification "industry standards," but eCW should be prohibited from presenting the same category of evidence—that it exceeds the very same standards; (5) that Relators can put on a minitrial, presenting *four* separate witnesses to testify about eCW's settlement with the Software Quality Oversight Organization ("SQOO") regarding claims of discrimination—an issue not relevant to any claim or defense in this case; (6) that eCW cannot elicit government testimony about why the government never denied claims or de-certified eCW despite full knowledge of Relators' allegations, which touches on all four elements of Relators' claim; (7) that Relators are somehow entitled to two bites at the apple in cross-examining eCW's witnesses that are making the effort to appear live; and (8) that eCW's public-disclosure and government-action bar defenses have somehow disappeared altogether, despite Relators' never moving on them. These arguments lack merit. As the Court has held, this trial must focus on the merits of Relators' claims—which are about conformity with ONC certification criteria— not a set of distractions and unfairly prejudicial sideshows designed to enflame the jury and handicap eCW's defenses.

## ARGUMENT

I.     **STATEMENTS OF COUNSEL AND RESPONSES TO DOCUMENT REQUESTS DO NOT CONSTITUTE ADMISSIBLE EVIDENCE AND INTERROGATORIES MUST BE ASSESSED INDIVIDUALLY.**

Relators' argument that the Court should admit "briefs," statements made "at oral argument," and "statements made by eCW['s] … counsel" (Rels.' Trial Br. ("RTB"), Dkt. No. 387, at 1–2) demonstrates the improper sideshow Relators intend to put on at trial.  The Court should reject it.  It is "*well established*" that "*statements made by counsel during argument are not testimony or any other kind of evidence*."  *Haugabrook v. Valdosta City Sch.*, 2012 WL 1014789, at *1, n.1 (M.D. Ga. Mar. 22, 2012), *aff'd sub nom. Haugabrook v. Cason*, 518 F. App'x 803 (11th Cir. 2013) (precluding plaintiff from "rely[ing] on statements made by opposing counsel [at a hearing] to establish her case") (emphasis added).  Nor are "statements by counsel in briefs."  *Williams v. Comm'r of Social Security*, 2022 WL 791711, at *6 (11th Cir. Mar. 16, 2022).  Courts regularly exclude counsels' statements for this reason.  *E.g.*, *LaCourse v. Def. Support Servs. LLC*, 2019 WL 8165261, at *2 (N.D. Fla. Aug. 29, 2019), *aff'd sub nom. LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350 (11th Cir. 2020) ("[S]tatements by counsel made in briefs and at oral argument are not evidence.") (internal citation omitted); *Chavis v. Wise*, 2013 WL 3287104, at *10 (M.D. Ala. June 28, 2013) ("It is axiomatic that statements made by lawyers during the course of a hearing is not evidence."); *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence."); *LeClair v. Raymond*, 2022 WL 219609, at *8 (N.D.N.Y. Jan. 25, 2022) (excluding briefs from evidence because "an attorney's unsworn statements and arguments in papers filed with the Court are not evidence").[1]

---

[1] Relators' argument regarding hearsay is inapposite, as the attorney statements they target are not admissible evidence in the first instance.

Well-settled law belies Relators' suggestion that all discovery responses are admissible judicial admissions.  For example, interrogatory responses are not judicial admissions.  *Compare* RTB at 3 (describing interrogatories as "admissions in judicio") *with Hurtado v. Balerno Int'l Ltd.*, 408 F. Supp. 3d 1315, 1329 (S.D. Fla. 2019) ("Courts have held that … interrogatory answers do not rise to the level of judicial admissions.").  And responses to requests for production are not admissible evidence at all.  *Pantages v. Cardinal Health 200, Inc.*, 2009 WL 10670298, at *2 (M.D. Fla. July 8, 2009) ("[T]here is ***no possibility*** that the responses [to requests for production] could be used as evidence at trial." (emphasis added)).

With respect to the limited set of discovery responses that may sometimes be admissible (*see* RTB at 2–3), the Court should decline to make broad rulings about the admissibility of categories of discovery in advance of trial, before each exhibit is offered into evidence.  Even when courts determine that a particular type of discovery response is non-hearsay, "determination[s] of whether particular discovery responses are admissible is best made at trial at the time of attempted introduction."  *Higgs v. Transp. Specialist Sanford*, 2009 WL 1939026, at *1 (W.D. Ky. July 6, 2009).  Courts regularly apply this principle by declining to exclude or admit discovery responses in broad strokes.  *E.g.*, *Granger v. Babin*, 2014 WL 4211309, at *3 (M.D. La. Aug. 25, 2014) (denying motion in limine to rule on the admissibility of all of defendant's statements and discovery responses); *LeClair*, 2022 WL 219609, at *9 (holding that party's response to discovery request "is not relevant" and therefore "not admissible").  The Court can and should evaluate each discovery response on an individual basis to determine whether it is relevant and whether the proffering witnesses has foundation to discuss it.  Fed. R. Evid. 401, 602.

## II.    DAMAGES AND PENALTIES MUST BE PROVEN TO A REASONABLE CERTAINTY AND MUST NOT BE UNCONSTITUTIONALLY EXCESSIVE.

As explained in greater detail in eCW's Trial Brief ("eTB," Dkt. No. 389, at 11–15), Relators must prove both the government's financial harm and the number of false claims.  (eTB at 11–14 (citing *U.S. ex rel. Int'l Broth. of Elec. Workers, Local Union No. 98 v. Fairfield Co.*, 2013 WL 3327505, at *5 (E.D. Penn. July 2, 2013) and *U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2011 WL 5005313, at *7–8 (E.D. Va. Oct. 19, 2011)).)  And they must do so at a high degree of certainty to collect any damages: Realtors must "establish both that the fact of the damages is certain and that the amount of damages can be reasonably computed" by the jury.  (eTB at 11 (quoting *U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*, 370 F. Supp. 2d 18, 55 (D.D.C. 2005)).)  Even if they can meet their high burden there, any value the government received from eCW's software mitigates damages.  (eTB at 14–15 (citing *United States v. Hibbs*, 568 F.2d 347, 349 (3d Cir. 1977)).)

Relatedly, when quantifying the FCA violations, if any, the proper measure would be the "number of false statements" made by eCW to the government. *United States v. Saavedra*, 661 F. App'x 37, 45 (2d Cir. 2016).  Any other measure, including the number of claims submitted by attesting health care providers, would bear "no rational relationship" to eCW's conduct, which would be improper.  *Hays v. Hoffman*, 325 F.3d 982, 993–94 (8th Cir. 2003) (reducing penalties where the district court determined an excessive number of claims stemming from only eight initial falsities).  Indeed, "nothing in the statute requires the court to impose penalties based on the number of false claims under § 3729(a)(1)(A), instead of the number of false statements under § 3729(a)(1)(B)."  *Saavedra*, 661 F. App'x at 45 (emphasis in original).  (*See* eTB at 13-14.)

The Eighth Amendment limits any potential penalty award.  It prohibits "excessive fines imposed," which the Supreme Court has held "limits the government's power to extract payments,

whether in cash or in kind, as punishment for some offense." U.S. Const., amdt. 8; *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1307 (11th Cir. 2021) (citing *Austin v. United States*, 509 U.S. 602, 609-10 (1993)). The Eleventh Circuit has held that "the damages and statutory penalties awarded in a non-intervened FCA qui tam action are subject to the Eighth Amendment's prohibition on excessive fines." *Yates*, 21 F.4th at 1307. Thus, "[t]he court may exercise discretion where the imposition of forfeitures might prove excessive and out of proportion to the damages sustained by the Government." *Peterson v. Weinberger*, 508 F.2d 45, 55 (5th Cir. 1975). And courts have repeatedly done so. *E.g.*, *id.*; *U.S. ex rel. Taylor v. Healthcare Assocs. of Texas, LLC*, 2025 WL 624493, at *7–8 (N.D. Tex. Feb. 26, 2025); *Grant on behalf of United States v. Zorn*, 107 F.4th 782, 799–800 (8th Cir. 2024) , *cert. denied,* 145 S. Ct. 2812 (2025), and *cert. denied sub nom. Zorn v. Grant,* 145 S. Ct. 2816 (2025); *United States v. Advance Tool Co.*, 902 F. Supp. 1011, 1018 (W.D. Mo. 1995), *aff'd,* 86 F.3d 1159 (8th Cir. 1996).

Although there are many reasons a Court may strike down or limit an FCA penalty award as unconstitutionally excessive, two are worth noting here, at the outset and before any issue of damages is up for argument. First, penalties that are double the amount of actual damages can be excessive under the Eighth Amendment, particularly where the damages result from "purely economic harm." *Zorn*, 107 F.4th at 799–800. This is because "purely economic" loss "is less reprehensible than [other] tortious conduct." *Id.* at 799 (cleaned up). And second, a Court may choose to limit penalties where the number of claims submitted leads to excessive fines. For example, in *Advance Tool Co.*, the district court declined to award penalties based on the number of claims submitted, totaling 686 invoices for tools submitted to the government. 902 F. Supp. at 1017. Instead, it imposed penalties based on the number of tools the defendant made for the government, where defendant submitted claims for tools without meeting the government's criteria

and without obtaining the required advanced approval by the government for a deviation from those criteria. *Id.* at 1014–15, 1017.

eCW otherwise agrees that the parties can address the exact quantities associated with trebling and penalties in post-trial briefing *if* the jury awards penalties. eCW will comment on the applicable statutory range and the appropriate point in that range at that time, if necessary, and reserves all arguments until that time.

Finally, eCW's response to Relators' misplaced and incorrect argument regarding the admissibility of trebled damages, penalties and attorneys' fees in this particular case—where Relators are also serving as their own experts—is forthcoming in its Opposition to Relators' Omnibus Motions in Limine. *See e.g.*, *Graves v. Plaza Med. Ctrs. Corp.*, 2017 WL 3895438, at *2 (S.D. Fla. Sept. 6, 2017) (on a motion in limine, holding that defendants could offer evidence on trebling of damages and penalties under the False Claims Act as well as the relator's entitlement to a percentage share of the damages); *Reynolds v. Gen. Motors Corp.*, 2007 WL 2908564, at *2 (N.D. Ga. Sept. 28, 2007) ("Whether an expert has an ongoing relationship with a party and whether the expert earns a significant amount of income from testifying on behalf of that party is relevant and discoverable information … to a witness's credibility and may be useful in cross-examination of an expert witness.").

## III.    *SUPERVALU* DEMONSTRATES THAT THE JURY MUST CONSIDER SUBJECTIVE SCIENTER EVIDENCE.

Contrary to Relators' assertion that eCW "has not raised this issue before" (RTB at 6), eCW has long argued that its genuine good-faith efforts to comply with EHR certification regulations negate a finding of scienter under *United States ex rel. Schutte v. SuperValu Inc*. 598 U.S. 739 (2023). (*E.g.,* eCW Mem. ISO Mot. For Summ. J., Dkt. No. 215-1 at 27–28; 6/4/25 Hr'g Tr. 14:17-25, Dkt. No. 334.) eCW continues to raise the argument because it is correct and well-

supported by the case law, as discussed in eCW's Trial Brief. (eTB at 4–6.) Simply put, if a defendant makes a genuine, good-faith effort to comply with the law, as eCW has here, then that negates scienter. (*See id.* (collecting cases).)

Relators erroneously contend that the logical extension of that argument is to essentially "delete[]" the reckless disregard standard from the statute. (RTB at 6.) Not so. Relators' own proffered case, *United States ex rel. Walthour v. Middle Georgia Family Rehab, LLC*, held that where the defendant subjectively thought she complied with regulations because she "regularly sought guidance from the Medicare and TRICARE programs on how to properly comply with its regulations" and was "advised to submit the claims in the manner in which she did," she ***did not act with "actual knowledge or reckless disregard as to those claims.*** " 2022 WL 1182817, at *9 (M.D. Ga. Apr. 20, 2022) (emphasis added) (cited in RTB at 6 n.6). That holding engages in the very subjective analysis of scienter required under *SuperValu,* which eCW has been advancing in this case. Although the *Walthour* Court did find reckless disregard, it did so because it found that it would have been ***subjectively*** impossible for defendant's scienter defense to be true. *See id.* at *10–11 (holding that eight months of submitting claims from terminated employee could not have been an honest mistake where defendants did ***not*** rely on guidance from Medicare or its consultants).

Relators argue that "what the company claims to have 'actually' known is ***irrelevant***." (RTB at 8.) This reveals a fundamental misunderstanding of the law given the clear, directly contradictory holding in *Supervalu* that "[t]he FCA's scienter element refers to [a defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Supervalu*, 598 U.S. at 749; *see also, e.g.*, *United States ex rel. GNGH2 Inc. v. XLD Century LLC*, 2024 WL 3625147, at *3–4 (C.D. Cal. July 31, 2024) ("[T]he Court finds that

Relator has failed to show that [defendant's] misrepresentation was based on anything other than a genuine misunderstanding of the certification's confusingly drafted language.  Thus, Relator has not established the requisite element of scienter, as defined [by the FCA].").

## IV.    ECW CAN PRESENT EVIDENCE RELATED TO ITS PROCESSES AND PROCEDURES.

eCW agrees with Relators' statement that the Court "has made clear that the primary scope of relevant evidence is 'whether the software met the relevant certification criteria.'"  (RTB at 8 (citing 6/4/2025 Hr'g Tr. at 6:21–23, Dkt. No. 334).)  But Relators plainly seek to sidestep the Court's ruling by suggesting that they can introduce evidence not related to the certification criteria to try to disprove certain categories of eCW's scienter evidence.  (*Id.*)  Efforts like these by Relators are precisely why eCW moved in limine to preclude them from introducing evidence or making arguments that do not pertain to the conformity of version 11 of eCW's EHR software with certification criteria (d)(1) through (e)(2).  (*See* eCW MIL No. 3, Dkt. Nos. 392, 392-1.)

Not only would the ruling Relators seek run afoul of this Court's order, but it would also operate in an entirely one-sided fashion.  (*Compare, e.g.,* RTB at 9 ("eCW's processes, procedures, and industry standards unrelated to security and certification issues would not be relevant to scienter and are not properly before the jury") *with id.* (arguing that Relators' experts should be permitted to testify "about whether eCW was meeting industry standards").)  This request defies the bounds of reason and fairness.  The outcome Relators seek is to put on a case in which they not only stray far away from relevant evidence but also prevent eCW from mounting any meaningful defense on the very same and other ***actually relevant*** issues.  It must not be permitted.

eCW properly intends to present evidence about its policies and procedures that were in place and pertain to version 11 of its EHR software certification because, as Relators recognize, it goes to eCW's scienter—an essential element of the FCA, on which Relators bear the burden.

(*See, e.g.*, eTB at 5-6.)  This is fundamentally relevant evidence that should be admitted, and Relators can explore it by cross-examining eCW witnesses at trial.  But for all the reasons articulated in eCW's motion *in limine*, Relators should not be permitted during such cross-examination to introduce any non-certification-related evidence that it admits the Court has already determined is irrelevant.  (*See* eCW MIL No. 3, Dkt. Nos. 392, 392-1.)

## V.    ECW'S SETTLEMENT AGREEMENT WITH SQOO IS INADMISSIBLE.

As explained in eCW's second motion *in limine* regarding the inadmissibility of the SQOO discrimination settlement (Dkt. Nos.  391, 391-1), Relators' plan to introduce evidence related to eCW's settlement with the SQOO is designed to create a sideshow that enflames the jury and distracts from the dearth of evidence on the merits of Relators' claims.  Relators' attempts in their Trial Brief to downplay the irrelevant "minitrial" this issue would instigate fall flat, as they explain in the very next sentence their intention to introduce "limited" evidence—***seven*** separate exhibits on the subject—in addition to ***four*** separate witnesses' testimony.  (RTB at 10.)  Notably, Relators cite zero cases supporting the propriety of having a minitrial on an irrelevant settlement.  (*See id.*)  For the reasons more fully articulated in eCW's motion in limine, the Court should not permit Relators to spend what would likely amount to at least a full day of their one week of trial time on a topic that is not only unduly prejudicial and simply irrelevant, in contravention of Rule 403, but also, as the Court has put it, a "quagmire."  (*See* MIL No. 2, Dkt. No. 391-1 at 3 (quoting 10/10/24 Hr'g Tr. 105:10-15, Dkt. No. 185); Fed. R. Evid. 403.)

Of course, if Relators are nevertheless permitted to pursue this minitrial, eCW must be permitted to put on a full defense that includes a response to this category of evidence from Relators.  Incredibly, Relators propose to limit the evidence on this topic to the documents and witnesses ***they*** have identified.  (*See* RTB at 10 ("Relators therefore propose that evidence at trial on this topic should be limited to the documents [identified by Relators] and to questions of

witnesses about those documents.").)  But eCW has a due process right to present "every available defense," *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citation omitted), which it could not do if limited to Relators' preferred exhibits or witnesses.  eCW must be allowed to respond by presenting any witness with personal knowledge of the settlement, who can provide the jury with additional context.[2]  Each such witness should be permitted to testify about any exhibit on eCW's exhibit list that relates to the settlement, so long as the witness has foundation to do so.  Any other result would arm Relators while tying eCW's hands behind its back.

## VI.    THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT PREVENT GOVERNMENT WITNESSES' TESTIMONY.

The Court should also reject Relators' attempt to invoke the deliberative process privilege to prevent eCW from eliciting testimony from government witnesses about why their agencies acted (or refrained from acting) as they did.  (RTB at 11-12.)  As a threshold matter, Relators lack standing to assert the deliberative process privilege on the government's behalf.  The privilege "belongs only to the government; private parties can neither assert nor waive [it]."  *KST Data, Inc. v. DXC Tech. Co.*, 2018 WL 6071371, at *1 (C.D. Cal. Oct. 11, 2018) (cleaned up); *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998); *Matter of Nelson*, 131 F.R.D. 161 (D. Neb. 1989). In fact, the deliberative process privilege requires "a formal claim of privilege, lodged by the head of the department which has control over the matter."  *Georgia by Dep't of Cmty. Health v. Leavitt*, 2006 WL 8432760, at *3 (N.D. Ga. May 18, 2006); *League of United Latin Am. Citizens v. Abbott*, 2022 WL 3233406, at *3 (W.D. Tex. Aug. 10, 2022) ("Trial counsel cannot invoke the [deliberative process] privilege on [the Office of the Governor's] behalf.").  As a result, a government agent with authority must assert the deliberative process privilege specifically in

---

[2] eCW reserves the right to list additional witnesses with personal knowledge of these matters if Relators are going to be permitted to address this issue at trial.

response to testimony as it comes in. *See Malam v. Adducci*, 2020 WL 12739427, at *4 (E.D. Mich. Aug. 4, 2020) ("[The government] may invoke the deliberative process privilege regarding specific testimony at the deposition….").

Moreover, the deliberative process privilege does not apply here and cannot prevent government witnesses from explaining why the government chose not to take any given action against eCW.[3]  "Post-decisional records," and thus post-decisional testimony, "fall outside the deliberative process privilege if they follow a final decision and are designed to explain a decision already made." *U.S. ex rel. Hartpence v. Kinetic Concepts Inc.*, 2018 WL 7568578, at *2 (C.D. Cal. July 30, 2018).  For example, post-hoc testimony about ONC's and CMS's decisions not to decertify the version of eCW's software at issue, or to continue paying claims, both "follow a final decision" and are "designed to explain a decision already made." *Cf. id.*; *see also United States ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*, 2019 WL 1254554, at *2-3 (D. Mass. Mar. 19, 2019) (holding that government could not prevent testimony about its decisions not to audit FCA defendant because "[a]n informal decision not to pursue a matter to a conclusion . . . is not what the deliberative privilege exists to protect").

And finally, even if the deliberative process privilege applied to government witness testimony in this case—and it does not—the "deliberative process privilege is a qualified one." *See Hartpence*, 2018 WL 7568578, at *2.  "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.* (quotations omitted).  For this balancing analysis, the Court considers four relevant factors: (1) "the relevance of the evidence"; (2) "the availability of other evidence"; (3)

---

[3] Relators incorrectly assert that eCW has "narrowed [government] witnesses to only CMS and ONC."  RTB at 11. eCW also plans to call an OIG witness, Trenton Williams, whose *Touhy* request the OIG approved on September 18, 2025.  *See*, Joint Pretrial Order (submitted Sept. 9, 2025, pursuant to Dkt. No. 349).

"the government's role in the litigation"; and (4) "the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* All factors weigh heavily in favor of permitting government testimony here.

**First**, the government's testimony about why it maintained eCW's software certification, for example, is not only "relevant," but highly probative of materiality. *Id.* This is particularly true because CMS, ONC, and OIG's testimony about why they each chose not to take action against eCW despite full knowledge of Relators' claims goes directly to materiality and causation:

> Allowing the Government to use the deliberative process privilege . . . that may be ***directly relevant to materiality and damages*** would potentially ***permit the Government to benefit financially from a Relator's pursuit of a False Claims Act case even when the Government itself decided to pay certain categories of claims***, or was aware of Defendant's [certification] practices and knowingly paid the claims anyway.

*Id.* at *3 (emphasis added). That is why courts in this circuit have held that the deliberative process privilege does not apply when the government's intent is at issue. *See, e.g.*, *Int'l Brominated Solvents Assoc. v. Am. Conf. of Gov't Industrial Hygienists, Inc.*, 2007 WL 9751885, at *3 (M.D. Ga. June 29, 2007).

**Second**, as the Court has observed, it is these government witnesses who have the firsthand knowledge to testify about government decision-making—indeed, the Court barred eCW from attempting to elicit related testimony from its experts—which shows that there is no other source for this evidence that is equally probative and helpful to the fact finder on these questions. (*See* 6/4/2025 Hr'g Tr. 75:22-79:9, Dkt. No. 334 ("…it's unavoidable that we are going to be talking about what the government did or didn't do;" and instructing eCW to "get a witness from [the government]" to testify, rather than an expert, as to questions of typical government responses to issues of potential nonconformity).)

*Third*, the government's "role in the litigation" could not be greater in an FCA case: it "is the real party in interest in the underlying action." *Hartpence*, 2018 WL 7568578, at *2–3.

And ***fourth***, Relators have also "not made a showing that disclosure would hinder frank and independent discussion regarding contemplated decisions." *Id.* at *4. In fact, ***none*** of the underlying reasons supporting the deliberative process privilege apply here. A government witness testifying live about why the government chose not to take a particular action would not "[]inhibit[] opinions and recommendations" for "fear of later being subject to public ridicule or criticism," as the decision is already public. *Drennen*, 2019 WL 1254554, at *3. Nor would it lead to "premature disclosure of proposed policies" for the same reason. *Id.* And it would not "confus[e] the issues and mislead[] the public by disseminat[ing] documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action," as the government can testify as to its ultimate rationale for not de-certifying eCW's software or taking other enforcement actions. *See id.*

As a result, even to the extent Relators could raise this privilege ***and*** the deliberative process is applicable in the first instance—neither of which is true—all factors would weigh heavily in favor of requiring government testimony about why it chose not to utilize readily available enforcement tools.

## VII.    RELATORS SHOULD NOT BE ALLOWED TO PLAY VIDEO DEPOSITIONS OF WITNESSES IT CAN CALL LIVE.

Relators seek to force the jury to be subjected to repeated testimony by individual eCW witnesses—once by video, and once live. (RTB at 13-15.) This inefficient proposal for a trial that the parties agree should be limited to two weeks should be rejected.

Rule 611(a) of the Federal Rules of Evidence provides that the Court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as

to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). The Court can effectuate those ends by requiring that a witness testify live, not by video deposition, if they are made available, and by requiring that the witnesses each testify only once.

Under Rule 32, it is a "long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." *See Obester v. Lucas Assocs., Inc. v. N.A.*, 2011 WL 13167912, at *6 (N.D. Ga. Apr. 26, 2011) (internal quotations and citations omitted); Fed. R. Civ. P. 32(a)(1)(C) ("At a hearing or trial, all or part of a deposition may be used against a party on these conditions … (c) the use is allowed by Rule 32(a)(2) through (8)"); 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: [that the witness is unavailable]"). As such, courts routinely find and order that if a witness is available, he or she should testify live, not via deposition designation. *See, e.g., Dozier v. Waffle House, Inc.*, 2005 WL 8154449, at *5 (N.D. Ga. Oct. 31, 2005) (noting that "[u]nder Rule 32(a)(3), deposition testimony may not be used in place of live testimony at trial unless one of the listed exceptions applies"); *Obester*, 2011 WL 13167912, at *6 (holding that party could only play video deposition if it proves that witness is unavailable to testify at trial); *Whiteside v. Geico Indem. Co.*, 2018 WL 1535484, at *7 (M.D. Ga. Mar. 29, 2018) (sustaining all objections to deposition designations to witness who would be available to testify at trial). Live testimony is the most efficient way to present evidence and avoids duplicative testimony and juror confusion. *Gardner v. Liberty Ins. Corp.*, 2023 WL 7002781, at *4 (S.D. Ohio Oct. 23, 2023) ("Using video deposition in lieu of [witness] testimony runs the risk of confusing the jury and disrupting trial efficiency.").

Relators claim they should be permitted to also play depositions of 30(b)(6) witnesses regardless of availability because Rule 32(a)(3) allows them to use a Rule 30(b)(6) deposition "for any purpose." (RTB at 13.) But "while it is true that Fed. R. Civ. P. 32(a)(3) allows Plaintiffs to use [30(b)(6)] testimony, *courts routinely limit that option when the witness is available for trial*" based on the same strong preference for live testimony and streamlined procedure. *Gardner*, 2023 WL 7002781, at *3–4 (emphasis added) (internal quotations omitted) (collecting cases and excluding video deposition of 30(b)(6) witness who was available to testify live); *see also Fed. Trade Comm'n v. On Point Global LLC*, 2021 WL 10381352, *1 (S.D. Fla. Oct. 14, 2021) (declining to rule on deposition objections for witnesses who would appear live, including witnesses who previously sat for deposition under Rule 30(b)(6)); *Stansbury v. Hopkins Hardwoods, Inc.*, 2018 WL 2977439, at *5 (W.D. Ky. Mar. 2, 2018) (granting motion to exclude 30(b)(6) testimony where witness would testify live). Concerns about confusing the jury are heightened for a witness who previously testified in a 30(b)(6) capacity, where the witness will be sitting in the courtroom while their video is played, as is true here. *Gardner*, 2023 WL 7002781, at *3–4. Courts hold real "concern[s that] the jury will speculate as to why witnesses who are sitting in the courtroom are not testifying or wonder if they should give some special emphasis to the recorded testimony as opposed to the later, live testimony." *Id.* (internal quotations omitted); *ATD-Am. Co. v. Krueger Int'l, Inc.*, 2014 WL 3952848, at *20 (E.D. Penn. Aug. 12, 2014) (holding court properly exercised its discretion by excluding 30(b)(6) testimony where witness would testify live because the court has "authority to rein in counsel and ensure that the jury is not subject to a haphazard and rambling presentation of redundant videotaped clips of a deposition"). And there can be no risk of prejudice where Relators can use the deposition transcripts to impeach any

inconsistent testimony from the witnesses who testify live.  *E.g.*, *ATD-Am. Co.*, 2014 WL 3952848, at *20.

For similar reasons, if Relators call an eCW witness during its case-in-chief, then eCW should be permitted to conduct a direct examination at that time so that each witness is only called once.  *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 2021 WL 2279917, at *1 (N.D. Ga. Mar. 5, 2021) (permitting defendants to choose whether to conduct its direct examination in plaintiff's case-in-chief).  Examining each witness once, even if that is during Relators' case-in-chief, prevents duplicative testimony, juror confusion, and the unnecessary burden and costs for witnesses, as many witnesses live and work outside Georgia.  *See, e.g.*, *Harrigan ex rel. Harrigan v. Marion Cnty.*, 2013 WL 5274407, at *2 (D. Or. Sept. 18, 2013) (permitting defendants to conduct direct examination during plaintiff's case-in-chief "in the interest of efficiently trying this case before a jury").

If the Court determines that it instead prefers each eCW witness to be called twice, then Relators should not be permitted to ask eCW's witnesses leading questions during their initial direct examination to avoid the unfair result of two cross-examinations.  *See Mighty v. Miami-Dade Cnty.*, 2021 WL 4022616, at *9 (11th Cir. Sept. 3, 2021) (holding that district court was well within its Rule 611 discretion by preventing Plaintiff from asking leading questions of defendant-witness in its case-in-chief where the defendant was to be recalled in his own case because "the court saw no reason to allow [d]efendant to be cross-examined twice"); *McCabe v. Macaulay*, 2008 WL 2980013, at *12 (N.D. Iowa Aug. 1, 2008) (disallowing plaintiff to ask leading questions in its case-in-chief of witnesses that would be called in defendant's case twice).

## VIII.   THE GOVERNMENT ACTION AND PUBLIC DISCLOSURE BARS ARE JURY ISSUES.

Relators' final argument that "both the government action and public disclosure bars are issues properly decided by the Court, not the jury" and that the Court's ruling on summary judgment marked "the end of both issues" (RTB at 15-16) also should be rejected.

The Court denied eCW's motion for summary judgment on the public-disclosure and government-action bars and held that it "could not say as a matter of law that Relators' false CEHRT attestation allegations are barred in their entirety" based on eCW's government action and public disclosure bar arguments, because there may be factual differences between the underlying facts of *Delaney* (as one example) and the facts at issue in this case, including the content on cited public websites.  (SJ Order, Dkt. No. 345, at 53-54.)  On its face, the ruling was one that a potential dispute of fact exists—it did not ***decide*** that dispute.  As a general matter, unless summary judgment is ***granted***, a jury decides the remaining issues.  *Sam Kholi Enters., Inc. v. Thompson*, 2009 WL 10669140, at *2 (W.D. Tex. Feb. 4, 2009) ("The case shall proceed to trial on the issues for which summary judgment is not granted."); *Miller v. Gizmodo Media Grp., LLC*, 407 F. Supp. 3d 1300, 1307 (S.D. Fla. 2019), *aff'd,* 994 F.3d 1328 (11th Cir. 2021) ("If there are any factual issues, summary judgment must be denied and the case proceeds to trial.").  As Relators did not move for summary judgment on eCW's public-disclosure or government-action bar arguments that serves as bases for dismissal, they remain in the case.  (*See* eTB at 15–17.)  As a result, the issues remain live for the jury to decide.  *See, e.g.*, *United States v. Allergan, Inc.*, 2024 WL 3344627, at *2 (D. Md. July 9, 2024) ("With respect to Relator's post-amendment allegations, the Court determined that a genuine issue of material fact existed regarding the publication of numerical quotas for inclusion on the Locator on Lapband.com, and that ***a jury would have to determine that factual question before the Court could analyze other facets of the post-***

*amendment public disclosure bar*." (emphasis added)); *United States ex rel. Lovato v. Kindred Healthcare, Inc.*, 2020 WL 9160872, at *7 (D. Colo. Dec. 14, 2020) ("*[A]ny public disclosure bar analysis is more appropriately done* on a narrower basis *at … trial*." (emphasis added)); *see also,* eTB at 15–17.  The text of the False Claims Act does not instruct otherwise, as the Court could still dismiss Relators' claims on a Rule 50 motion.[4]  *Cf Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004) (noting that granting a Rule 50 motion leads to dismissal of the action).

At a minimum, even if the bars present issues for judicial resolution, no such resolution has yet occurred *on the merits*, and the Court should revisit them and make factual findings after hearing the evidence at trial.

## <u>CONCLUSION</u>

For the above-mentioned reasons, in addition to the impropriety of seeking relief in the Trial Brief in the first instance, eCW opposes Relators' Trial Brief and respectfully requests that the Court deny any relief sought—directly or indirectly—by Relators in their Trial Brief.

---

[4] Relators' citation to one singular University of Cincinnati Law Review article noting that generally the public disclosure bar is decided on a motion to dismiss does not apply to the present case, where that did not occur, and certainly does not demonstrate that "legal scholars agree."  (RTB at 15–16 & n.12.)  None of the other cases cited by Relators (RTB at 16 n.13) stand for the proposition that a court may only decide the public disclosure bar on summary judgment; they merely do so in those instances.

Dated: September 18, 2025

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza,
Chicago, IL 60654
Tel: (312) 862-7170
martin.roth@kirkland.com

Allison M. Brown *(pro hac vice)*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
dgroover@jamesbatesllp.com
JAMES BATES LLP
231 Riverside Drive
Suite 100
Macon, GA 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 18, 2025, the foregoing document was filed with the Clerk of the U.S. District Court for the Middle District of Georgia, Macon Division, using the Court's electronic filing system ("ECF"), and that all counsel of record received the same via ECF.

*/s/ Duke R. Groover*

Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720
