**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

UNITED STATES OF AMERICA *ex rel.*,
ALEX PERMENTER, et al.

       Plaintiffs,

v.

eCLINICALWORKS, LLC,

       Defendant.

CASE NO. 5:18-CV-382

**RELATORS' RESPONSE TO ECW'S MOTION FOR**
**RECONSIDERATION MISLEADINGLY TITLED AS A**
**"MOTION TO EXCLUDE RELATORS' TECHNICAL ALLEGATIONS"**

Robert H. Snyder, Jr.
  Georgia Bar No. 404522
  rob@cannellasnyder.com
Hannah D. Amanuel
  Georgia Bar No. 922743
  hannah@cannellasnyder.com
Alexandra "Sachi" Cole
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
Devin L. Mashman
  Georgia Bar No. 257588
  devin@cannellasnyder.com
Chase Lyndale
  Georgia Bar No. 183762
  chase@cannellasnyder.com
**CANNELLA SNYDER LLC**
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

Brian P. Adams
  Georgia Bar No. 142474
  brian@brianadamslaw.com
Mary Beth Hand
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com
**ADAMS LAW FIRM**
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

Anna Green Cross
  Georgia Bar No. 306674
  anna@crosskincaid.com
Meredith Kincaid
  Georgia Bar No. 148549
  meredith@crosskincaid.com
**CROSS KINCAID BASKAM LLC**
315 W. Ponce de Leon Ave., Ste. 715
Decatur, Georgia 30030
(404) 948-3022

*COUNSEL FOR RELATORS/PLAINTIFFS*

I.     INTRODUCTION

eCW has filed what it called a "Motion to Exclude Relators' Technical Allegations Untethered To Certification Requirements."  Doc. 376 (the "Motion").  That is a blatant misnomer.  What eCW filed is an untimely and baseless motion to reconsider the Court's denial of eCW's motion to exclude Michael Arrigo's opinions and its motion for summary judgment on falsity.  eCW's Motion is yet another waste of Relators' and the Court's time.

eCW claims its Motion is appropriate because the Court ordered Relators' counsel to: (1) prepare "a revised (Relators') report which does not add any opinions but which confine[s] itself to the scope … discussed"; and (2) "link the alleged flaw[s identified in Relators' reports] with the certification criteria that Relators' attorneys contend applies."  June 4, 2025 Hrg. Tr.at 27-28. After that Order, Relators' counsel told eCW that they planned to redact the Relators' reports as directed and annotate the remaining vulnerabilities with the criteria they contended applied.  *See* Ex. 1, 2025-07-17 Letter from Snyder to Court at 1.  eCW did not object to that procedure. Relators' counsel produced revised reports to eCW and the Court on June 18th.  Doc. 342.  The Court did not notify Relators of any deficiencies or instruct Relators to file anything else.

About a month after Relators submitted those revisions, eCW asked the Court for permission to submit a brief raising alleged concerns with the revisions.  Ex. 2, 2025-07-15 Letter from G. Wyatt to Court.  As Relators noted then, eCW's letter had nothing to do with the reports, but was instead a request to "reopen argument on Daubert and summary judgment issues that have been extensively briefed, argued, and ruled upon."  Ex. 1,  at 1.  Relators did not believe then, or now, that eCW's alleged "concerns" warranted additional briefing.  *Id.* at 3.  The Court did not respond to eCW's request to allow further briefing.

Despite that, eCW filed its so-called "Technical Allegations" motion on September 3rd,

when it knew Relators' counsel were extremely busy finalizing the PTO, taking trial depositions, responding to eCW's three other new *Daubert* motions, and filing motions in limine. As predicted, eCW's Motion has nothing to do with Relators' revised reports. Instead, eCW attacks the Court's Order allowing Mr. Arrigo to testify and denying summary judgment on Relators' certification claim. eCW's argument summary makes its renewed attack on Mr. Arrigo plain, claiming: "***Mr. Arrigo*** still fails to link several technical issues to any specific certification criteria"; Mr. Arrigo's "attempts to link vulnerabilities to a criterion [are] foreclosed by the regulation's plain text, contradicted by regulatory guidance, or rejected by ONC"; and "***Mr. Arrigo's*** plan[] to tell the jury that there are certification non-conformities…confirms the unreliability of his opinions." Doc. 378-1 at 2 (emphasis added).

eCW's attack on the Court's summary judgment Order is also plain. eCW argues that several vulnerabilities the Court expressly relied on as examples of certification non-conformities that required a trial are not actually non-conformities, including, among others, the fax server vulnerability. *Compare* Order (Doc. 345) at 10, 34 (identifying EHR fax vulnerability that allowed unauthenticated PHI access as disputed certification non-conformity) with Motion (Doc. 378-1) at 24 (arguing fax vulnerability is inadmissible).

Those issues have already been decided. eCW submitted more than 305[1] pages of written filings and nearly 200 exhibits in support of its motions to exclude Mr. Arrigo and for summary judgment. The Court denied eCW's motion to exclude Mr. Arrigo after a lengthy hearing. Doc. 333. Unlike Relators, the Court did not order Mr. Arrigo to modify his reports. Instead, it ruled that (like eCW's expert Mr. Meadors) Mr. Arrigo may testify about what the certification criteria are and whether vulnerabilities otherwise in evidence overlap with those

---

[1] *See* Docs. 200-1 and 306 (Arrigo br. and reply); 216-1, 216-2, 300, and 300-1 (MSJ br., Reply, SUMF, and Resp. to Relators' SUMF).

criteria. June 4, 2025 Hrg. Tr. at 6:8-20; 22:23-23:10. The Court also ruled that any further criticisms of Mr. Arrigo's opinions are "fodder for cross-examination" at trial. *Id.* at 23:5-10; 25:1-4. The Court also addressed eCW's summary judgment arguments about certification issues in a comprehensive 59-page Order. Doc. 345. eCW had a more than extensive chance to argue Mr. Arrigo's opinions are inadmissible and that summary judgment should be granted on Relators' certification claims. It lost those issues and nothing about Relators' revised reports changes that. eCW's motion should be denied as an improper, untimely, and baseless motion for reconsideration.

eCW's Motion also has no merit and misrepresents Mr. Arrigo's opinions. He reviewed and relied on Relators' and Dr. Cole's reports, as well as thousands of other documents, to form his opinion that eCW did not meet the subsection (d) requirements of 45 C.F.R. § 170.315. In his report and deposition, Mr. Arrigo provided examples of these deficiencies. He was not obligated to explicitly "tie" every vulnerability identified by an expert to a specific certification. At trial he will follow the Court's instruction and do what "experts commonly do"—explain the certifications and opine about how vulnerabilities ***in the record*** overlap with the certifications. June 4, 2025 Hrg. Tr. at 22:18-23:4.

In short, eCW's Motion should be denied because it is procedurally wrong and baseless.[2]

## II.    ARGUMENT

### A.  eCW's Motion is an Untimely Motion for Reconsideration of the Court's Order Allowing Mr. Arrigo to Testify About Certification Issues

Although eCW called it something else, eCW's Motion should be construed as a motion for reconsideration. *Starling v. Royal*, No. 5:09-CV-393(HL), 2010 WL 2950812, at *1 (M.D.

---

[2] Given the Court's rejection of most of the arguments eCW makes again in the Motion, Relators provide only a short discussion of why eCW's vulnerability arguments are, at a minimum, disputed. If the Court wants additional argument beyond what Relators offer herein, they will provide it. Relators respectfully submit that unnecessary.

Ga. July 23, 2010) (construing motion to strike as a motion for reconsideration and denying same).[3] eCW's Motion argues that portions of Mr. Arrigo's testimony fail to meet the *Daubert* standard for the same reasons it argued before.  *Compare* Doc. 200-1 with Doc. 378-1.  The Court rejected eCW's arguments that Mr. Arrigo's methodology is unreliable and his opinions unsupported.  Doc. 333.  That should be the end of this issue.

eCW's Motion opens with the same legal standard as its first *Daubert* motion.  *Compare* Doc. 200-1 at 6 (discussing bounds of Rule 702) with Doc. 378-1 (same).  Again, just as the Court has already rejected eCW's argument that Mr. Arrigo's opinion is unreliable and unsupported, it also rejected the argument that Mr. Arrigo's opinion should be excluded under Rule 702.  *See* Doc. 201-1 at 7 (arguing that Mr. Arrigo's testimony should be excluded under Rule 702).  Both motions contain the same quote from the same case about the inadmissibility of *ipse dixit* opinions.  *Compare* Doc. 200-1 at 7 (quoting and citing *De Los Santos v. Johnson & Johnson*, No. 21-01208, 2024 WL 3700205, at *11 (N.D. Ala. Aug. 7, 2024)) with and Doc. 378-1 at 6 (same).

In its denied *Daubert* Motion, eCW broadly argued that Mr. Arrigo's opinions "lack any reliable basis" and that he did not use "an established methodology."  Doc. 201-1 at 8-12.  eCW contended that Mr. Arrigo's opinions were "supported by nothing more than his own *ipse dixit*" and "Mr. Arrigo never explains how or why the purported software flaws violate the various regulatory requirements."  *Id.* at 10-11.  eCW argues ***again*** that Mr. Arrigo "lacks any reliable method."  Doc. 378-1 at 11, 19-21.  And that "Mr. Arrigo's reports are simply conclusions—without analysis—that eCW's software violated various criteria" and "wholly conclusory, and

---

[3] *See also Moore v. Comm'r of Ga. Dep't. of Corr.*, No. 5:19-CV-473 (MTT), 2022 WL 3579873, at *1 (M.D. Ga. Aug. 19, 2022) (construing motion with different title as motion for reconsideration and denying motion because movant simply argued that the prior order was wrong for a variety of reasons).

lack[] the methodology and support necessary to be helpful to a jury." *Id.* at 5. Again, it argues that "[Mr. Arrigo] is an expert, he looked at the available evidence, and deduced what happened. Quite simply, [Relators] rel[y] on [expert's] unreliable *ipse dixit*." *Id.* at 10. The Court has already rejected those arguments. Doc. 333.

eCW also claims that Mr. Arrigo's explanations linking local storage of PHI, "Automatic Access Timeout," "Audit Logs Do Not Work," "Default FTP Credentials," the fax server, and download refund JSP, are insufficient. 378-1 at 11-12. Those opinions were all included in Mr. Arrigo's reports and could have been specifically addressed before. *See* Doc. 218-29 (Arrigo Rep.) at 54-57 (discussing local storage); 52-54, 101-102, 139-140 (fax server); 65 (refund report JSP); 57-58, 105-107 (automatic timeout); 59-60, 138-140 (audit logs); Doc. 200-7 (Arrigo Reb. Rep.) at 43-45 (automatic access time out) and 5-13 (audit logs). Rather than addressing those issues specifically, eCW made a general argument that all of Mr. Arrigo's opinions were inadequately supported. *See* Doc. 200-1 at 10-14; Doc. 306 at 4 ("Mr. Arrigo does not explain in any meaningful way how the business records he reviewed support his conclusion that eCW violated the applicable federal regulations."). Again, the Court rejected that argument.

The *Daubert* hearing transcript is helpful here. Before argument, the Court ruled that Mr. Arrigo is "qualified to address the ONC certification criteria" and "can testify based upon [his] technical expertise with regard to a technical requirement." June 4, 2025 Hrg. Tr. at 9:9-14. Despite that, eCW's counsel argued that Mr. Arrigo should not be able to discuss vulnerabilities that Relators found and why that demonstrates how eCW's software does not comply with the certifications. *Id.* at 10:13-16. And they argued that Mr. Arrigo should be precluded from testifying about what the regulations mean. *Id.* at 16:4-7. The Court rejected both arguments

and ruled that "this [case] can't be tried without expert testimony explaining the technical aspects of this case, and that includes the technical specifications." *Id.* at 21:14-17.

Unsatisfied with the Court's ruling, eCW's counsel then challenged the interplay between Mr. Arrigo's and the Relators work, including any assumptions he relied on from Relators. *Id*. at 22:18-22.  The Court responded that this was an appropriate area "for cross-examination." *Id*. at 23:5-6.  eCW's counsel then asked whether if "relators found something … does [Mr. Arrigo] then get to say … my opinion is the software failed to comply with that certification criteria?" *Id*. at 24:4-8.  The Court responded:

> [Y]es, if there is evidence that the software does not do this, then based upon his experience, he can testify that because it can do that or because it allows that, the software does not verify against – this may not be the best example, but I'll use it anyway -- must verify against a unique identified. So, it just gets us back to the issue we just addressed. Against, I don't have -- and it may be that his qualifications on cross-examination can call that into question, but -- so, no, where we are on that, Mr. Katz, is yes, that's fodder for cross-examination.

*Id*. at 24:19-25:4.

While it pretends the Motion is not a motion for reconsideration, eCW even asks the Court to revisit one of its rulings.  Doc. 378-1 at 12 fn. 3.  In a footnote, eCW acknowledges that "the Court ruled on June 4, 2025 that interpreting ONC's regulations is a matter of fact to be argued to the jury, not a matter of law for the Court to decide." *Id.*  But it then asks the Court to change its ruling and preclude Mr. Arrigo from testifying about the ONC certifications. *Id.*

In short, the Motion seeks reconsideration of the Court's Order allowing Mr. Arrigo to testify.  Under L.R. 7.6, a motion for reconsideration must be filed within 14 days of the order.  The Court held a hearing on the motions to exclude on June 4, 2025 and issued oral rulings and a minute sheet that same day.  Doc. 333.  If eCW wanted to ask the Court to reconsider its Order denying Mr. Arrigo's exclusion, it had until June 18, 2025, to do so.  L.R. 7.6.  eCW missed that

deadline by 68 days.  As a result, the Motion should be stricken as untimely and contrary to the

Local Rules.  *See*, *e.g.*, *Allen v. BAC Home Loans Servicing LP*, No. 5:10-CV-181-MTT, 2010

WL 3950980, at *1 (M.D. Ga. Oct. 7, 2010) (striking filing that did not comply with Loc. Rules).

Even if timely eCW cannot meet the standard for reconsideration.  "Reconsideration of a

previous order is an extraordinary remedy to be employed sparingly."  *Moore*, 2022 WL

3579873, at *1.  "Reconsideration is appropriate only if (1) … there has been an intervening

change in the law, (2) … new evidence has been discovered which was not previously available

to the parties in the exercise of due diligence, or (3) … the court made a clear error of law."

*Bingham v. Nelson*, 2010 WL 339806, at *1 (M.D. Ga. 2010) (internal quotation marks and

citation omitted).  "To demonstrate clear error, the party moving for reconsideration must do

more than simply restate his prior arguments, and any arguments which the party inadvertently

failed to raise earlier are deemed waived."  *McCoy v. Macon Water Auth.*, 966 F.Supp. 1209,

1222–23 (M. D. Ga. 1997).

Reconsideration is inappropriate here because Mr. Arrigo's report and supporting

materials were all produced more than year ago.  eCW deposed him at length before it filed its

first *Daubert* motion in 2024.  *See* Docs. 200-6 (Aug. 3, 2024 Arrigo Rep.); 200-5 (Arrigo Sept.

25. 2025 Dep. Excerpts).  eCW prepared a rebuttal report.  Doc. 218-21.  And it filed a lengthy

motion to exclude all his opinions.  Doc. 200.  Mr. Arrigo's opinions have not changed. Nor has

the law.  Arguments eCW made and lost do not warrant reconsideration.  And any new

arguments it now seeks to make were waived long ago.  *McCoy*, 966 F. Supp. at 1222–23.

Because there has been no change in the law or the facts and the Court did not commit any error

by ordering this case to trial, the Motion should be denied.

**B.  eCW's Also Seeks Reconsideration of the Court's Summary Judgment Order**

eCW had a full and fair opportunity to present its arguments in favor of summary judgment.  The Court even allowed eCW more pages for its summary judgment brief than it allowed Relators in response.  A large part of eCW's briefing was devoted to Relators' alleged failure to tie security vulnerabilities to certification requirements.  *See, e.g.,* Doc. 216-1 at 23-27.  eCW also argued that Relators could not prove objective falsity, even with Mr. Arrigo's opinions.  *Id.* at 24-26.  The Court disagreed.  In its Order denying eCW's motion for summary judgment, the Court ruled "Relators have produced evidence that eCW's software transmitted PHI unencrypted, allowed access to PHI without proper authentication, failed to enforce access controls, stored PHI locally, and improperly stored and displayed sensitive data. Given the requirements of ONC certification criteria, these flaws cannot be explained away as mere differences of opinion."  Doc. 345 at 40.

In its Motion, eCW seeks reconsideration of those rulings.  For example, eCW claims that Mr. Arrigo cannot link local storage of PHI to a certification capability.  Doc. 378-1 at 22.  But the Court explained that "170.315(d)(7) requires EHR software to be designed to either encrypt locally stored PHI after a session ends or prevent local storage entirely."  Doc. 345 at 37.  The Court then discussed evidence that eCW designed its software to store PHI, such as scanned documents, locally in a folder, and that this meant PHI is not encrypted and can be accessed without logging into the software.  *Id.* at 37-38.  Thus, the Court ruled, "a reasonable jury could find that eCW's attestations of compliance with § 170.315(d)(7) were false."  *Id.* at 38.

eCW also argues that all of Mr. Arrigo's opinions related to § 170.315(d)(1) are inadmissible because that subsection has no connection to unauthorized users.  Doc. 378-1 at 18.  The Court has rejected that argument twice and explained in its Summary Judgment Order that

the expectation of § 170.315(d)(1) is that "the system will deny unauthorized requests by verifying the permissions assigned to the user's unique identifier." Doc. 345 at 34.[4]  It also ruled, "the Court cannot say as a matter of law that eCW's attestations of compliance with 45 C.F.R.§170.315(d)(1) were not false." *Id.* at 35.  The Court based that ruling on evidence that: (1) users could set their own access levels; (2) the EHR fax function allowed access to PHI without a username or password; (3) eCW's use of "sessionless" URLs provided paths into the software without authentication; (4) eCW's shared cloud instances allowed access to PHI of all practices on the cloud; (5) the software's blindly accepted "client" side requests for access rather than checking on the server side; and (6) the software allows users to alter their permissions and access restricted data by manipulating client-side requests. *Id.* at 34-35.

eCW now claims that Mr. Arrigo cannot link the fax server vulnerability to any certification criteria. Doc. 378-1 at 24.  As identified above, however, the Court ruled that the fax server vulnerability directly impacted (d)(1). Doc. 345 at 10.[5]  It was one of several reasons that the Court found that it was a question of fact whether eCW falsely attested to compliance with (d)(1).  At trial, both parties will have an opportunity to present evidence on this issue to the jury.

Next, eCW argues that Mr. Arrigo cannot link eCW's audit logging vulnerabilities to a certification requirement because his opinions are supposedly contrary to the facts.  Doc. 378-1 at 19.  Yet when discussing auditable events, tamper-resistance, and audit reports, the Court explained that 170.315(d)(2) and 170.315(d)(3) "require EHR software to have audit logging capabilities to track access and changes to PHI." Doc. 345 at 35.  And Relators presented

---

[4] *Citing* Meadors Rep. (Doc. 218-14) at 16; Meadors Dep. (Doc. 238) at 137:16-138:12; ONC Testing (Doc. 259-6) at 3.
[5] *Citing* Rels.' Dec. 15, 2023 Expert Rep. (Doc. 218-7) at 11-12; Wheeler Dep. (Doc. 218-8 at 31:22-32:8); Rels.' Supp. Resp. and Objs. to eCW's Am. First Interrogs. (Doc. 218-104) at 24.

"evidence that eCW's software did not meet 170.315(d)'s audit logging requirement because design flaws allowed downloads of PHI without logging and the logs could be evaded and/or lacked necessary entries." *Id.* at 36.[6]  Therefore, "a reasonable jury could find that eCW's attestations of compliance with § 170.315(d)'s audit logging requirements were false." *Id.* at 37.

More generally, throughout its Motion eCW repeatedly makes the argument that the (d) criteria do not apply to unauthorized users or "hackers" categorically.  Doc. 378-1 at 11, 17, 25, and 26.  eCW is again asking the Court to overrule itself.  In its Order denying eCW's Motion to Dismiss, the Court explained that "eClinicalWorks' interpretation of the ONC's user verification and access control requirements leads to absurd results."  Doc. 90 at 13.  In its summary judgment order, the Court held "the ONC criteria assume systems will face some unauthorized access attempts or other threats."  Doc. 345 at 33.  As with the Arrigo issues, eCW points to no change in the law or facts that would warrant the Court revisiting its conclusion that the vulnerabilities identified by Relators and relied upon by Mr. Arrigo are, at a minimum, disputed issues that must be presented to the jury.  As a result, reconsideration of those issues should be denied.

Allowing eCW to make arguments that eCW could have previously raised, and which are similar (or identical) to vulnerabilities the Court ruled create questions of fact would also give eCW a "second bite at the summary judgment apple that is both unwarranted and prejudicial." *Smith v. Safelite Fulfillment, Inc*., No. 1:21-CV-2547-SEG, 2024 WL 3164648, at *4 (N.D. Ga. May 3, 2024) (striking second motion for summary judgment).  Courts have "discretion to strike a defendant's 'eve-of-trial' attempt[] to raise new arguments in a successive motion for summary judgment where no new facts or previously unavailable legal arguments were offered, and no

---

[6] *See* Doc. 345 at 36, n. 44 (*citing* Relators' Dec. 15, 2023 Expert Rep. (Doc. 218-7) ⁋ 43, Wheeler Dep., (Doc. 218-8) at 75:12-78:4; Rodighiero Dep. (Doc. 218-27) at 59:8-60:4, 63:19; 67:18).

good cause has been shown." *Cap. Holdings USA, LLC v. Am. Paramount Fin.*, No. 10-CV-80393, 2012 WL 13018351, at *1 (S.D. Fla. Feb. 3, 2012). If courts allow repetitive summary judgment arguments it "litigants [can] treat their initial summary judgment motions as a 'dry run' which they would have an opportunity to redo or supplement—at considerable additional cost to opposing parties and at a considerable drain to scarce judicial resources." *Cap. Holdings USA, LLC*, 2012 WL 13018351, at *1 ("Plaintiff should not be forced to respond—and the Court should not be forced to consider—Defendants' piecemeal [arguments].").

eCW is not entitled to a do-over because it wants to repeat arguments it lost or to raise new arguments it decided not to make in its previous 50-page motion. eCW could have raised every new issue it now raises in its first summary judgment motion. Thus, Relators also ask the Court to strike the Motion as an improper second attempt at summary judgment. *See Kelsey v. Withers*, 718 F. App'x 817, 820 (11th Cir. 2017) (affirming order striking second motion for summary judgment).

### III.    eCW's Motion Ignores the Court's Orders, Mr. Arrigo's Report and Deposition, and is Factually and Legally Incorrect

eCW makes three arguments in its motion. eCW first claims that Mr. Arrigo did not link technical issues to specific certification criteria or provide sufficient explanation of the linkage. *Id.* Next, eCW argues that the allegations that Mr. Arrigo did link to certification criteria are supposedly foreclosed by the regulation's plain text, regulatory guidance, or rejected by the ONC. *Id.* Finally, eCW argues that Relators plan to have Mr. Arrigo tell the jury about technical allegations that fall outside of eCW's specific certified capabilities and software. *Id.* Each argument ignores the Court's Orders and established law.

As discussed above, Relators' counsel complied with the Court's Order at the June 4th hearing. They filed revised Relators' reports linking the remaining vulnerabilities with the

certification criterion that Relators' counsel contend applies.  Doc. 342.  The revised reports

narrowed the scope of the issues at trial significantly.  In the reports with numbered paragraphs,

Relators deleted 120 paragraphs and revised 43.  Docs. 342-1, 342-3, 342-4.  In the rest, Relators

deleted 11 pages and revised 22.  Docs. 342-2, 342-5.  For every remaining vulnerability,

Relators identified the specific subsection of 45 C.F.R. § 170.315(d) that applies. Docs. 342-1-5.

Nothing more was, or is, required.  The Court did not order Relators to submit a

supplemental report **_from Mr. Arrigo_** also linking every single vulnerability identified by

Relators to a certification criterion.  That is not required and is contrary to the Court's rulings

about Mr. Arrigo's trial testimony.  At best, this a is a proper area for trial and "fodder" for

cross-examination.  June 4, 2025 Hrg. Tr.at 23:5-6; 24:19-25:4.

eCW conceded that Mr. Arrigo can rely on Relators' findings but argued it was improper

for Mr. Arrigo to state that, based on what Relators found, eCW's software does not comply with

the certification criteria.  *Id.* at 24:4-11.  The Court rejected eCW's argument and said, "if there

is evidence that the software does not do this [authenticate users], then based upon [Mr.

Arrigo's] experience, he can testify that because it can do that or because it allows that, the

software does not verify against … must verify against a unique identifier." *Id.* at 24:19-25.  At

trial Relators (and Dr. Cole) will testify about vulnerabilities they identified.  Relators will also

present other evidence of vulnerabilities through fact witness testimony from Mr. Navani. Mr.

Jaiswal, and the SQOO witnesses. Mr. Arrigo can rely on that evidence to opine about whether

those vulnerabilities implicate the certifications.

The Court's ruling is, of course, correct and in line with the Federal Rules of Evidence.

Rule 703 allows experts to base their opinions "on facts or data in the case that the expert has

been made aware of."  Fed. R. Evid. 703.  The "facts or data upon which expert opinions are

based may, under the rule, be derived from three possible sources." *Id.* One of those possible

sources is "presentation at the trial" and parties can have "the expert attend the trial and hear the

testimony establishing the facts." *Id.* The Eleventh Circuit has affirmed that an expert can base

her opinion on facts presented at trial. *Powell v. W & W Hauling, Inc.*, 226 F. App'x 950, 954

(11th Cir. 2007) (allowing expert testimony where "Defendants already had introduced evidence

of … intoxication at trial, [and expert] could use that evidence as part of the basis of his own

expert opinion"). Courts throughout the country agree. *Asetek Danmark A/S v. CoolIT Sys. Inc.*,

No. 19-CV-00410-EMC, 2022 WL 21306657, at *6 (N.D. Cal. Oct. 4, 2022) ("The advisory

committee notes…clarify the…facts or data upon which expert opinions may be based on…

having the expert attend…trial and hear…testimony.").[7] Thus, after Relators present evidence of

security vulnerabilities in eCW's software through expert testimony or otherwise, Mr. Arrigo can

opine about whether those vulnerabilities implicate certification issues.

eCW's argument that Mr. Arrigo allegedly omitted mention of ten specific

vulnerabilities[8] in his report misses the point. Mr. Arrigo declared repeatedly in his report that

the basis for his opinions included "Relators reports and testimony," including Relators'

identification of deficiencies in the software that he "was able to map…to CEHRT certification

standards to confirm that according to relators eCW failed to meet certification standards." Doc.

218-29 3,4, 6, 11,16, 29, 33 and 52. He explained his mapping process and discussed exactly

which documents and findings of Relators he was relying on. *Id.* at 52-59. In addition to this

mapping, he made clear that he "was able to independently verify that Relator's findings were

---

[7] *See also D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, at *7 (W.D. Tex. Apr. 7, 2017) (same); *United States v. Forehand*, 943 F. Supp. 2d 1329, 1330 (M.D. Ala. 2013) (same); *MCI Commc'ns Serv. Inc. v. KC Trucking & Equip. LLC*, 403 F. Supp. 3d 548, 556 (W.D. La. 2019) ("Fed. R. Evid. 703 contemplates that an expert may base his opinion on facts or data presented at trial."); *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) (We can discern no error in admitting expert opinion offered in response to prior trial testimony.").

[8] Doc. 378-1 at 7.

accurate and aligned with deficiencies in certification standards: eCW failed to meet § 170.315 (d)(1-9), § 170.315 (d)(11-13)." *Id.* at 3, 7, 11, 39, and 60. At his deposition, Mr. Arrigo explained his process for eCW's counsel: "Relators identified several deficiencies in eCW certification, and I was able to map those deficiencies to certified electronic health record technology certification standards to confirm that according to relators, eClinicalWorks failed to meet certification standards. (d)(1) through (d)(12), et cetera. And then I give ***examples*** of that." Doc. 218-105 (Arrigo Dep.) at 38:3-18 (emphasis added).

"Rule 26 requires litigants to share certain information regarding their expert witnesses." *SFR Servs. LLC v. Elec. Ins. Co.*, No. 8:19-CV-2013-CPT, 2021 WL 1193284, at *3 (M.D. Fla. Mar. 30, 2021) "The purpose of such expert disclosures is 'to provide opposing parties [a] reasonable opportunity to prepare for effective cross[-]examination and [to] arrange for expert testimony from other witnesses.'" *Id.* (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)). That purpose was vindicated here because eCW prepared rebuttal reports, deposed Mr. Arrigo, and moved to Exclude. eCW will not be prejudiced if Mr. Arrigo discusses any vulnerability it now claims was not specifically listed in his report or any other vulnerability disclosed by Relators. eCW has always known that the basis for Mr. Arrigo's opinions included Relators' findings. And because of the Court ordered revision, eCW now knows precisely which certification criteria Relators contend apply to each vulnerability, an addition to Mr. Arrigo's independent findings in his Reports.

## IV.    Relators' Brief Response to eCW's Renewed Technical Arguments

Attempting to respond specifically to every "Technical Allegation" eCW raises (or re-raises) would take dozens of pages. That is unnecessary given the extensive briefing already

submitted and ruled on.  Relators briefly respond to all but one issue below.[9]

**Automatic Log Off and (d)(5):** Subsection (d)(5) requires a developer to show its software can "[a]utomatically stop user access to health information after a predetermined period of inactivity." 45 C.F.R. 170.415(d)(5).  Relators have produced evidence of several ways that the software did not meet this requirement.  Doc. 218-29 (Arrigo Rep.) at 57-58 (describing lack of screen blackout); 200-7 (Arrigo Reb. Rep.) at 43-45 (describing broken screen lock function on large monitors and when using resource scheduler).  eCW attacks only one of those issues: the lack of a full screen blackout when the software locks.  Citing NIST and ONC guidance, eCW argues that (d)(5) does not require the program to conceal PHI on the screen if the program prompts users to log back in.  Doc. 378-1 at 14-17.  Mr. Arrigo explained at length in his rebuttal report why he disagrees. Doc. 218-29 at 43-44 (describing HIPAA de-identification standards applicable to (d)(5)).  ***eCW's own expert Mr. Meadors agrees and expressly told eCW that in 2017***, before Version 11 was certified.  Doc. 238 (Meadors Dep.) at 91:25-92:4 (Meadors told eCW in 2017 that "access means view" based on "2014 Edition Final rule").

eCW also argues that even if a screen blackout is required, the program could do so once enabled on request.  Doc. 378-1 at 14-17. eCW cites, but does not attach, JIRA ticket PE-162077 to support that statement. Doc. 378-1 at 16.  But eCW omits that JIRA ticket was opened on December 22, ***2021*** and not resolved until March 7, ***2022***, which means the software did not have the required function until more than four years after eCW attested it did and throughout the entire damages period.  *See* Ex. 3, PE162077.[10]   This is a disputed issue that can be presented at

---

[9] To streamline trial, Relators will present no evidence related to eCW's non-conformity with (d)(9) based on its failure to enable TLS/HTTPS for locally hosted customers.  As a result, Relators need not respond to eCW's arguments on that issue.  Doc. 378-1 at 13-14.

[10] In another JIRA ticket, eCW described its screen lock function as allowing "an unauthorized user [to] view sensitive information of the application which was left open by a previous user. Confidentiality is partially compromised."  JIRA PE-1527521.

trial.

**Audit Logging and (d)(2)**:  eCW claims Mr. Arrigo should be barred from testifying about eCW's incomplete audit logs because it claims that he was "mistaken" about whether multiple different eCW logs can be cobbled together to meet the applicable ONC and ASTM logging standards.  Doc. 378-1 at 19-20.  Mr. Arrigo opined in his opening and rebuttal reports that eCW's audit logs do not meet the applicable standards.  Doc. 218-29 at 59-60, 69-85; 200-7 at 5-13.  Despite eCW's new argument, Mr. Arrigo expressly acknowledged that eCW creates multiple logs and was questioned over more than forty pages of his transcript on that exact issue.  Doc. 218-105 (Arrigo Dep.) at 132-172.  Mr. Arrigo has testified at length about why he disagrees with eCW about its audit logging functions, and has cited his experience, industry practice, the certifications, and the ASTM to support his opinion.  *Id.*  This is a disputed issue that can be presented at trial.  *See* Doc. 345 at 35-37 (denying summary judgment in part because of audit logging non-conformity evidence).

**Default FTP Credentials**:  eCW disputes Mr. Arrigo's opinion that eCW's use of a FTP password that could allow the download of all PHI outside the EHR software implicates audit logging requirements.  Doc. 378-1 at 17-19.  The Court rejected that very argument in its Order denying summary judgment.  Doc. 345 at 35, n. 43 (rejecting eCW's argument that actions bypassing audit logs and reports fall outside subsection (d) requirements as an unavailing attempt to shift blame to users). This is a disputed issue that can be presented at trial.

**Encryption of authentication credentials and (d)(12)**:  eCW argues that Mr. Arrigo should not be allowed to testify about this non-conformity for two reasons.  It first argues that (d)(12) was not part of the certifications when Version 11 was first certified.  Doc. 378-1 at 21.  That has never been disputed.  But as Relators expressly stated in their summary judgment

response, "eCW has attested to th[e] requirement since 2020," and there are "documented numerous examples of passwords, authentication keys, and other authentication credentials stored inside the EHR that are encrypted with an outdated and cracked hashing algorithm or are not encrypted at all, despite eCW's attestation to the contrary." Doc. 322-6 at 38 ¶¶ 210-212. There is a dispute about whether eCW's attestation was false, ***after*** 2020. *See also* Doc. 345 at 38-39 (denying summary judgment in part because of eCW's storage of passwords in plain text).

eCW next argues that even if its attestation is false, that is irrelevant since the ONC only requires the developer to attest whether it does or does not encrypt credentials. Doc. 378-1 at 21. That contradicts ONC's own testimony that once a developer attests to compliance with criteria "they are then accountable for performance to those criteria." Doc. 218-17 (ONC Dep.) at 72:24-74:6; 145:6-13. This too is a disputed issue that can be presented at trial.

**Local storage of PHI and (d)(7)**: eCW argues that its decision to locally store hundreds (or thousands) of diagnostic tests in an unencrypted local folder does not violate (d)(7)'s prohibition on local storage of PHI. Doc. 378-1 at 22-24. eCW misstates the evidence and the law on this issue. As the Court noted in its summary judgment order, "eCW's expert testified that this action—a doctor viewing a test result stored within the EHR—is within the scope of (d)(7)'s end user device encryption requirement." Doc. 345 at 38. That admission, ***at a minimum***, creates an issue for trial. Mr. Arrigo agrees. Doc. 218-29 at 111-119. eCW's argument is also contradicted by ONC guidance that developers are responsible for non-conformities resulting from "aspects of third-party technology" if the developer was the "substantial cause of the failure, even if there were other contributing factors." Doc. 266-31, ONC Program Policy Resource # 18-01 at 22-23 ("Developers are required to take reasonable steps to ensure that third-party products that the developer anticipates will be used with its

certified product perform in accordance with the requirements of the product's certification."). eCW not only had complete control of this non-conformity, it "it designed its software to create and locally store these documents without encryption." Doc. 345 at 38. This is a disputed issue that can be presented at trial. *See also* Doc. 345 at 36-37 (denying summary judgment in part because of local storage of PHI evidence).

 **Fax Server and (d)(1), (d)(4), (d)(7), and (d)(11)**: eCW throws a handful of arguments about the fax server vulnerability against the wall to see what might stick, presumably because its own Application Security Director and its $2,000 an hour expert agree the vulnerability was extremely serious. Doc. 378-1 at 24-27. eCW first recycles its argument that it had no obligation to stop unauthorized access under (d)(1). The Court has roundly rejected that multiple times. Doc. 345 at 33-34; 35, fn. 43. Even if the Court had not done so, ONC itself has clarified that a "user" who must have a unique identifier and password under (d)(1) includes a piece of software, like, *e.g.*, the fax server.[11] eCW admitted that authenticating as a fax server did not require entry of a username and password, and the software itself disclosed the information needed to authenticate to anyone who asked before logging in. Doc. 218-5 (eCW Dep. (Jaiswal)) at 192:5-20. Although unnecessary, Mr. Arrigo also described in his report how this vulnerability also affects three other certification requirements, (d)(4), (d)(7), and (d)(11). Doc. 218-29 at 101-102, 111-116, 139-140. eCW's disagreement about those opinions does not make this an issue that cannot be presented to the jury. *See also* Doc. 345 at 34, 36, fn. 45 (denying summary judgment in part because of eCW's fax vulnerability).

---

[11] *See* §170.315(d)(1) Authentication, access control, authorization ("A user could … ***be a software program or service***."), available at https://www.healthit.gov/test-method/authentication-access-control-authorization (last visited Sep. 24, 2025).

**Download Refund Report and (d)(1):**  eCW claims that this vulnerability, which allowed an unauthenticated user to download PHI, does not implicate (d)(1) because the specific JSP file at issue was allegedly in eCW's billing software.  Doc. 378-1 at 28.  Mr. Arrigo disagrees and has so opined.  Doc. 218-29 at 65.  Mr. Arrigo's opinions are also supported by the ONC and by the Court.  *See* Doc. 266-31 (describing requirement that developer account for non-conformities caused by interactions with other software); Doc. 345 at 35, fn. 43 (denying summary judgment and citing 81 Fed. Reg. 72404, 72425 (Oct. 19, 2016) for proposition that "[w]here certified capabilities do not perform in such a manner due to factors that the developer could have reasonably influenced or controlled, the certified capabilities do not conform to the requirements of the Program.").  And ONC itself directed the SQOO to investigate this issue after it was disclosed. *See* Doc. 218-137 (SQOO report answering ONC questions about the at issue JSP); *see also* Doc. 218-17 (ONC Dep.) at 94:7-95:5 (ONC does not act on issues outside the scope of certification).  This is a disputed issue that can be presented at trial.

V.    **CONCLUSION**

Enough is enough.  eCW asked the Court to exclude Mr. Arrigo and to grant summary judgment.  It lost. The Court should deny eCW's second request for that same relief.  The parties need to focus on issues this Court has not already decided and continue getting ready for trial.

Respectfully submitted this 24th day of September, 2025.

*/s/ Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743

hannah@cannellasnyder.com
Chase C. Lyndale
Georgia Bar No. 183762
chase@cannellasnyder.com

CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 24[th day] of September 2025.

<u>*/s/ Robert H. Snyder, Jr.*</u>
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*