UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NUMBER 5:18-CV-382 |

**RELATORS' MOTION FOR LEAVE TO SUPPLEMENT
THE EXPERT REPORT OF EMILY WOLFSTON**

Pursuant to the Court's Scheduling Order, Relators move for leave to supplement the expert report of Emily Wolfston, showing the Court as follows:

Under the Court's amended and modified scheduling order and the parties' agreements, the parties' affirmative expert reports were due on or before August 2, 2024, rebuttal reports were due September 16, 2024, and the parties were required to complete all expert discovery by October 14, 2024. Docs. 100, 135, 136. Plaintiffs disclosed Emily Wolfston's report and related documents on August 2, 2024. Doc. 192-3. eCW deposed her on August 30, 3024. eCW disclosed its rebuttal expert report of Drs. Baker and Grabowski on September 16, 2024. Doc. 192-18. On October 15, 2024, Ms. Wolfston produced a revised report and damages spreadsheets to account for new data eCW produced after her deposition that allowed her to match more eCW customers. Doc. 192-6. Drs. Baker and Grabowski produced a second

1

rebuttal on November 14, 2024.  Doc. 294-1.  Neither of eCW's rebuttal reports raised any criticism of Ms. Wolfston's method for matching eCW customers to MIPS and CMS data.  eCW moved to exclude Ms. Wolfston on October 30, 2024.  Doc. 192.  It did not raise any issue with Ms. Wolfston's customer matching methodology in that motion either.  On June 4, 2025, the Court denied eCW's motion to exclude.  Jun. 4, 2025 Hrg. Tr. at 98:1-5.

On August 25, 2025, ***11 months and 11 days after the deadline for eCW rebuttal opinions***, eCW filed three new Motions attacking Ms. Wolfston's expert opinions under the *Daubert* standard.  Docs. 364, 365, 367.  eCW supported each of the motions with a 35-paragraph declaration from its expert Dr. Baker.  Docs. 364-3, 365-3, 367-3.  In that declaration, Dr. Baker purports to criticize Ms. Wolfston's damages model for issues that were not included in either of his previous reports, including the inclusion of alleged non-eCW customers, non-eCW Version 11 users, and several other alleged issues.  *Id.*  Dr. Baker also purports to re-quantify the amount of damages that he claims eCW caused.  *Id.*  eCW did not seek Relators' consent or leave of Court to supplement its expert's opinions nearly a year after the deadline to do so.  Doc. 100 at IV(F) ("Expert reports may not be supplemented without the consent of all parties or leave of Court.").

As described more fully in Relators' response to eCW's damages Motions, eCW raised three primary issues: (1) the alleged failure to account for "MIPS rules"; (2) the inclusion of non-Version 11 eCW users; and (3) the alleged inclusion of non-eCW customers in the model.  Doc. 429.  eCW again asks the Court to completely strike Ms. Wolfston's opinions, or, alternatively, to require Ms. Wolfston to supplement her damages models to account for the issues it now raises.  Doc. 364-1 at 6, n.8 (asking Court to "exclude her opinion or, at minimum, limit Ms. Wolfston's model" and seeking leave to supplement its own expert reports if Ms. Wolfston is

2

allowed to supplement). Relators moved to strike the damages motions as untimely under the Scheduling Order. Doc. 372. That motion is pending and will be heard on October 23, 2025.

Even so, Relators have carefully reviewed eCW's filings and agree that Ms. Wolfston should supplement her report to account for *some* of the issues eCW raises. Ms. Wolfston agrees that she should:

a. Remove non-Version 11 users from the models;[1]

b. For performance years 2019-2021,[2] confirm that providers matched to the eCW customer list reported to CMS they were using eCW, remove practices that reported using some other software, and for those practices only include damages from individual providers that eCW expressly identified as customers;[3] and

c. Substitute the "Total Medical Medicare Payment Amounts" used to calculate damages for some providers in Model 2 for the "Total Medicare Payment Amount" she originally used.[4]

As described more fully in their omnibus response to eCW's damages motions, that supplementation addresses the issues belatedly raised by eCW that Relators agree should be addressed. Doc. 429.

Ms. Wolfston also proposes to include two additional supplementations. First, eCW argued that Ms. Wolfston should have used an ONC database that collected the Certified EHR Technology (CEHRT) ID numbers that some practices reported to CMS for 2019-2021 to

---

[1] This is the result of the liability case narrowing to only Version 11 eCW users.
[2] The database eCW suggests Relators should use to do this only has data for 2019-2023. *See Certified Health Information Technology Reported by Clinicians for Promoting Interoperability Performance*, https://www.healthit.gov/data/datasets/certified-health-information-technology-reported-clinicians-promoting
[3] This issue affects less than 10% of the practices in the model. Relators have not been able to decipher why known provider groups that included known eCW customers reported using a different software to CMS.
[4] eCW argued in one of its motions that using the Total Medicare Payment Amount may result in the inclusion of some non-service costs, such as drugs, for some providers thus resulting in a potential slight overstatement of damages. Doc. 365. Relators agree that it is appropriate to use this number instead.

confirm that eCW customers in her model reported using eCW to CMS. Ms. Wolfston has agreed to consider that database to confirm that groups in the model should remain in the model. But the database has also allowed her to identify other groups and individuals who reported using eCW but who were not previously matched to eCW's customer list. Ms. Wolfston proposes to include those newly confirmed eCW users in her damages model as well as eliminating groups who did not report using eCW.

Ms. Wolfston also seeks to include Medicare claims payments data for 2023 that was not publicly available when she produced her first reports in 2024. Medicare claims payment data is released about 16 months after the end of the calendar year in which the payments are made. Thus, the 2023 claims payment data was not published until April 8, 2025.[5] In her October 2024 report, Ms. Wolfston identified groups and providers who received a 2023 overpayment but did not know the precise amount of the overpayments because the data was not available. In her first supplemental expert report, Ms. Wolfston expressly acknowledged that if she received the 2023 payment date before trial, she would update her calculations. Doc. 192-6, ¶ 6. Now that the data is available, it should be included in the model.

Supplementation of damages calculations is a common practice. *See, e.g., Davis v. Little Giant Ladder Sys., LLC*, No. 2:19-CV-780-SPC-NPM, 2022 WL 2111499, at *1 (M.D. Fla. May 11, 2022) (denying motion to strike supplemental damages report and noting "as a general matter, parties may supplement to update damages calculations"). Federal Rule 26(e) requires supplementation of expert reports "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

---

[5] The 2023 claims payment data was not published until April 8, 2025. *See Medicare Physician & Other Practitioners - by Provider,* https://data.cms.gov/provider-summary-by-type-of-service/medicare-physician-other-practitioners/medicare-physician-other-practitioners-by-provider.

4

information has not otherwise been made known to the other parties during the discovery process or as ordered by the Court." Fed. R. Civ. P. 26(e)(1)(A). Here, eCW did not raise any issues related to alleged customer matching issues, or the use of the "Total Medical Medicare Payment Amounts" during the discovery process, despite eCW having all the information it needed to do so. Relators would have supplemented Ms. Wolfston's report during the discovery period if eCW had raised those issues before last year. Since eCW did not raise these issues until a month ago (through an unauthorized supplemental report), Relators should be allowed to supplement to account for these belated rebuttal critiques. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS MANX, 2011 WL 4852305, at *4 (C.D. Cal. Oct. 13, 2011) (denying motion to exclude expert's declaration where expert updated damages model to address criticisms raised by opposing expert).

In addition, the Medicare claims data from 2023 was unavailable when Ms. Wolfston produced her expert report and the scope of the liability case had not narrowed to Version 11 users only. Over a year has passed since Ms. Wolfston prepared her original report, new Medicare data is available, the case has narrowed, and eCW has apparently now clarified information on its own customer lists. All these factors support supplementation. *See Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 14 (2001) (permitting supplementation after court narrowed case); *see also U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 887 (8th Cir. 2015) (supplement made after close of discovery was timely where party did not possess information before close of discovery).

Before filing this motion, Relators asked eCW to consent to the supplementation Relators propose herein. eCW refused, stating they would seek attorneys' fees and expenses if Relators

5

supplemented their damages model, because any supplementation would be untimely.[6]  eCW refuses to admit that it did not raise these issues for nearly a year after the rebuttal deadline, then did so with its own untimely rebuttal report attached to motions demanding exclusion of Ms. Wolfston, or, alternatively, a supplement.  A party should not be able to belatedly produce an expert report, demand supplementation through a motion, and then object when the other party agrees to supplement.  *See, e.g., Jones v. RealPage, Inc.*, No. 3:19-CV-2087-B, 2020 WL 6149969, at *5 (N.D. Tex. Oct. 19, 2020) (rejecting exclusion of supplement demanded by party); *Previto v. Ryobi N. Am., Inc.*, No. 1:08-CV-177-HSO-JMR, 2010 WL 5185070, at *2 (S.D. Miss. Dec. 16, 2010) (refusing to strike expert disclosure after discovery deadline when disclosure was prompted by moving party's questions during deposition).  What eCW really is after is reconsideration of the Court's order denying exclusion of Ms. Wolfston, instead of a revised damages model.  As discussed more fully in Relators' motion to strike, that is improper.

      Relators are loath to do anything that makes this case more complicated than it already is.  But it is important that the amount of damages is revised before trial.  The parties have submitted their PTO but no trial date has been set.  Relators will produce their supplement before the October 23 hearing and will work with eCW to timely handle any additional discovery or further rebuttal that may be necessary.  Thus, any delay should be avoided.  And despite eCW's claims to the contrary, the supplementation will not require further briefing.[7]  Adding additional matched customers to a model that the Court has already ruled to be admissible changes nothing about the Court's *Daubert* ruling.  And including more specific claims data for a payment year

---

[6] Ex. 1, September 2025 email exchange between Geoff Wyatt and Robert Snyder.
[7] *Id.* (claiming "any recalculation that seeks to include new customers, new years, or new data would require yet more expert discovery and a new round of summary judgment briefing on materiality and scienter, which is not contemplated by the Court's schedule.").  eCW is dead set on seeking reconsideration of the Court's summary judgment order through any pretextual means it can conjure.  It has already done so.  *See* Doc. 432 at 9-11 (Rels.' Resp. to eCW's so-called "technical allegations" motion).

(2023) that was already in Ms. Wolfston's damages model does not impact the Court's ruling that disputed issues of material fact preclude summary judgment on liability.

In short, Relators respectfully submit they should be allowed to provide the supplementation eCW has demanded and to update their damages models to account for information that was unavailable when Ms. Wolfston produced the reports last year.

Respectfully submitted this 1st day of October, 2025.

/s/ Robert H. Snyder, Jr.
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549

        meredith@crosskincaid.com
        CROSS KINCAID LLC
        315 W. Ponce de Leon Ave, Suite 715
        Decatur, Georgia 30030
        Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 1st day of October, 2025.

*/s/ Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*