UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | CASE NO. 5:18-CV-382 |

**RELATORS' RESPONSE TO eCW's MOTION IN LIMINE NO. 4 TO PRECLUDE RELATORS FROM INTRODUCING EVIDENCE AND ARGUMENTS INTENDED OR LIKELY TO INFLAME THE JURY, INCLUDING EXPLOITING JURORS' FEELINGS ABOUT DATA BREACHES, PUBLIC SAFETY, OR PAYING TAXES**

It is not clear what eCW asks the Court to exclude in this motion. Indeed, Relators have already withdrawn some of the evidence that eCW cites as examples of allegedly problematic evidence and argument. *Compare* Doc. 395-1 (citing ¶ 88 of Relators expert report) *with* 342-1, Revised 2023-12-15 Expert Rep. at p. 16 (striking ¶ 88). The other examples eCW cites on page 1 are: April 2024 deposition testimony that Relators have not designated to play at trial; and Relators' summary judgment response from more than six months before the Court excluded references to breach severity. *Compare* Doc. 395-1 at 1 (citing Ulrich at 60:10-13) *with* Doc. 436 at 8 (Rels.' Dep. Des. for Brad Ulrich, skipping page 60).

The purpose of motions in limine is to identify *specific* testimony and evidence that is off limits at trial, not to seek broad edicts about what litigation strategies opposing counsel may adopt. eCW even trots out reference to the "Reptile Theory"—a book that Relators' lead trial counsel has never read and that he has only been forced to learn about because every defense lawyer now includes it in their motions in limine in every case.

eCW does not say what evidence it claims to be admissible or what arguments are allegedly improper other than blanket statements about inflaming the jury. Its motion makes non-specific references to evidence of patient safety issues, PHI breaches, and the fact that this is a case about fraudulently inflated Medicare and MIPS payments that are funded by taxpayers.[1] But the motion is far too broad and vague to ever be granted. *See Underwood v. Scarbrough*, No. 7:21-CV-00040 (WLS), 2023 WL 2392733, at *4 (M.D. Ga. Mar. 7, 2023) (quotation omitted) ("Motions in limine that are 'broad, vague,' and include 'speculative categories of evidence and argument of which the Court cannot predetermine the admissibility' are due to be denied.").

Courts frequently deny motions in limine seeking broad non-specific exclusion of evidence based on the "Reptile Theory." *Hensley v. Methodist Healthcare Hosps.*, 2015 WL 5076982, at *4-5 (W.D. Tenn. Aug. 27, 2015) (denying "Reptile Theory" motion because "Defendants have again not identified the specific evidence that is sought to be excluded"); *Jackson v. Asplundh Constr. Corp.*, 2016 WL 5941937, at *1 (E.D. Mo. Oct. 13, 2016) (declining to issue ruling on motion based on the "reptile theory"). The cases eCW cites do not require a different outcome. *Brooks* involved product liability allegations. *Brooks v. Caterpillar Global Mining Am.*, 2017 WL 3401476, at *1 (W.D. Ky. Aug. 8, 2017). Though the district court granted the defendant's motion concerning "reptile theory," it excluded from that ruling argument and evidence about whether the product was safe—the key issue in the case—and found it "entirely appropriate for Plaintiffs' counsel to contend at trial that the product was not safe." *Id.* at *9. *Lopez* offered no analysis for its ruling but was explicit that the only arguments

---

[1] There is one reference to "Golden Rule" type arguments. While Relators agree such arguments are off limits, counsel is struggling to understand how they would have any application in a case like this where Relators have suffered no injury. Does eCW think counsel will ask the jury to put themselves in the shoes of ONC and CMS?

2

precluded were that the jury was the "conscience of the community" or that the jury should "send a message." *Lopez v. Costco Wholesale Corp.*, 2022 WL 19331090, at *2 (S.D. Fla. June 23, 2022).[2] And finally, *Maley v. Corizon Health, Inc.*, cited by eCW for the proposition that "[e]vidence appealing to jurors' emotions is irrelevant because it does not go to the issue of liability," provides no support. Doc. 395-1 at 4. The district court there held "[b]ecause Defendants have not offered any specific testimony for this Court's consideration, [] this Court must defer ruling on Defendants' motion" about "reptile theory." 2019 WL 1370860, at *7 (S.D. Ga. Mar. 26, 2019).

eCW's motion turns the admissibility standard on its head—instead of the longstanding balance "struck in favor of admissibility,"[3] eCW proposes an analysis paralyzed by the possibility of any juror reaction whatsoever. That is not the law. Juror reactions are inevitable. That is why Rule 403 exists. The possibility that evidence will stir juror feelings does not result in its exclusion—only where its probative value is "substantially outweighed" by the danger of "unfair" prejudice, confusion, or misleading the jury should a court exclude relevant evidence. Fed. R. Evid. 403. Ultimately, "unfair prejudice" requires "a genuine risk that the emotions will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993). This is a difficult threshold to reach.[4]

---

[2] Relators' counsel understand these basic rules of evidence and will of course not make either of those arguments to the jury here.
[3] *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002), quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir.1989).
[4] By illustration, the Eleventh Circuit recently upheld a district court's finding that the probative value of child pornography outweighed any "unfair" prejudice because the quantity and substance of those photographs and video were probative of whether the defendant "knowingly" possessed child pornography. *United States v. Ewing*, 140 F.4th 1339, 1351 (11th Cir. 2025).

eCW includes only three loosely defined categories of evidence that it claims will "inflame" the jury.

*First*, eCW refers to patient safety issues. As discussed in Relators' response to eCW's motion in limine No. 7, Relators do not intend to offer evidence of specific patient safety issues at trial. Instead, they will only offer evidence of the volume of such issues as described more fully in Relators' response to MIL No. 7. Doc. 443.

*Second,* eCW refers to the fear that a juror may feel given the software's reckless exposure of PHI. The Court definitively excluded evidence of breach and the potential severity of any such breach at the June 4th hearing. Relators will say nothing about that issue, unless eCW opens the door. And counsel will make no arguments suggesting the jury should be afraid of their own PHI being at risk.

*Third,* eCW suggests that Relators should be precluded from arguing that decertifying eCW's software would be disruptive. But eCW will argue that the government does not view conformity with security rules as material because it never decertified eCW's software. That is not the law, as a "finding of materiality" does not require the government to have taken "the strongest action possible" but only that "some enforcement action is taken." *United States ex rel. Bibby v. Mort. Inv. Co.*, 987 F. 3d 1340, 1352 (11th Cir. 2021). Regardless, ONC itself states that it considers the negative impact that decertification would have on providers in its decertification analysis. Doc. 270-9 at 3. Relators should be allowed to argue that ONC's decision not to impose the "death penalty" on eCW's software could have been motivated by ONC's own statement that it considers negative impacts on providers when deciding how to proceed.

*Fourth,* eCW takes issue with Relators use of the word "taxpayers" in various filings and questions. This is a False Claims Act case relating to improperly inflated Medicare payments and MIPS incentives. Medicare and MIPS are taxpayer funded programs.[5] That is a fact.

Moreover, the False Claim Act specifically authorizes *qui tam* actions "to strengthen enforcement and to protect **taxpayers'** money." *United States v. Novo* A/S, 5 F.4th 47, 50 (D.C. Cir. 2021) (emphasis added). Numerous courts have acknowledged that the very purpose of the FCA is to protect taxpayer funds. *United States ex rel. Morgan v. Champion Fitness, Inc.*, 368 F. Supp. 3d 1198, 1207 (C.D. Ill. 2019) ("The FCA seeks to protect **taxpayer** funds from being wrongfully obtained through fraud on the government") (emphasis added); *U.S. ex rel. Graber v. City of New York*, 8 F. Supp. 2d 343, 345 (S.D.N.Y. 1998) ("The False Claims Act was passed to protect the **taxpayers**") (emphasis added); *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 305 (S.D.N.Y. 2013) (recognizing that the FCA was intended to protect taxpayer funds). The FCA legislative history drives the point home that the FCA is designed to "recover **taxpayer** funds lost to fraud." *U.S. ex rel. Taylor v. Gabelli*, No. 03 CIV 8762 (PAC), 2005 WL 2978921, at *12 (S.D.N.Y. Nov. 4, 2005) (emphasis added). Indeed "'without a relator's participation,…' 'the government would often be unable to hold accountable those who violate the FCA and defraud this nation's **taxpayers** and its government.'" *U.S. ex rel. El-Amin v. George Washington Univ.*, No. CIV A 95-2000 JGP, 2007 WL 1302597, at *5 (D.D.C. May 2, 2007) (emphasis added). eCW's argument that Relators cannot dare to mention that they are seeking to recover taxpayer money is ridiculous given the very purpose of the FCA.

---

[5] This case relates to Medicare Part B payments and MIPS incentives, both funded by Congress. *See* How is Medicare funded, https://www.medicare.gov/about-us/how-is-medicare-funded. A full 95% of government revenue comes from taxes. *See* How much revenue has the U.S. government collected this year?, https://fiscaldata.treasury.gov/americas-finance-guide/government-revenue/

And though district courts have precluded parties from arguing specifically that "taxpayers" were a defendant's victim in other types of cases, those same courts allowed the proponent to explain how the relevant programs were funded. *See e.g. Ahmed*, 2016 WL 3647686, at *11 (cited by eCW for precluding reference to "taxpayers" but explicitly allowing government to explain how Medicare operates, including that it "is a federally funded health insurance program," and that "the payments to providers are made from the Medicare Trust Fund.").[6]

Relators will not argue that any specific juror's taxes are at issue, or suggest that eCW stole directly from a juror, or argue that because of eCW's fraud some other government program might not be funded. But they must be allowed to explain that government money largely collected from taxpayers pays for the inflated MIPS incentives and Medicare claims payments at issue here. *See*, *e.g.*, *United States v. An Easement & Right-of-Way Over 4.42 Acres of Land, More or Less, in Whitfield Cnty., Georgia*, No. 4:16-CV-0314-HLM, 2018 WL 8131100, at *3 (N.D. Ga. Sept. 11, 2018) (denying motion in limine to extent that it precludes evidence or argument concerning the public nature of TVA).

Evidence that eCW's conduct caused the government damage is not just relevant, it is an actual element Relators must prove if they want to collect the treble damages that the statute authorizes. eCW's suggestion that evidence on these topics is not relevant is simply not serious.[7] And its prejudice arguments are based entirely on non-False Claims Act cases.[8] Those courts'

---

[6] The Medicare Trust Fund is largely funded by taxpayer money. *Supra* note 5.
[7] None of the cases eCW cites for this relevance argument are False Claims Act cases. *See e.g. Brooks*, 2017 WL 3401476 (product liability suit); *Lopez*, 2022 WL 19331090 (a single-incident personal injury case); *Benson v. Facemyer*, 2017 WL 1400558, at *1 (6 (N.D. Ga. Apr. 19, 2017) (fourth amendment § 1983 claim); *Maley*, 2019 WL 1370860 (alleging denial of access to medical care); *U.S. v. Palma*, 473 F.3d 899, 900 (appeal of a federal criminal conspiracy conviction); *United States v. Ahmed,* 2016 WL 3647686, at *11 (E.D.N.Y. July 1, 2016) (criminal Medicare fraud case against individual doctors).
[8] *See e.g. Kirksey v. Schindler Elevator Corp.*, 2016 WL 7116223, at *11 (S.D. Ala. Dec. 6, 2016) (personal injury elevator case); *Elkins v. Automatic Data Processing, Inc.*, 2023 WL 7354621, at *1 (C.D. Cal. Apr. 19, 2023)

6

weighing of the probative and prejudicial value of government expenditures has absolutely no application in a False Claims Act case where it is essential to explain that the government was damaged by the defendant's fraud.

Respectfully submitted this 3rd day of October, 2025.

/s/ Robert H. Snyder, Jr.
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
Chase Lyndale
Georgia Bar No. 183762
chase@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202

---

(California FEHA case); *United States v. Hunte*, 559 Fed. Appx. 825 (11th Cir. 2014) (income tax fraud case); *Buck v. Rigdon*, 2024 WL 3470372, *4 (S.D. Ill. 2022) (excessive force); *McGuire v. Cooper*, 2018 WL 3935053, at *3 (D. Neb. Aug. 16, 2018) (sexual assault); *Peters v. Wakefield*, 1998 WL 904293, at *1 (Neb. Ct. App. Nov. 17, 1998) (injury at rodeo); *McCoy v. Mennerich*, 584 F. Supp. 3d 635, 639 (S.D. Ill. 2022) (§ 1983 excessive force claim); *Hale Cnty. A & M Transp., LLC v. City of Kansas City, Mo.*, 2014 WL 545779, at *1 (W.D. Mo. Feb. 11, 2014) (plane accident property damage); *Chandler v. Bexar Cnty.*, 258 S.W.2d 439, 439 (Tex. Civ. App. 1953), (appeal of condemnation award); *Jordan v. Smith*, 23-CV-61-JDP, 2025 WL 1411121, at *1 (W.D. Wis. Apr. 4, 2025) (inmate eighth amendment claim); *Taylor v. Wexford Health Sources, Inc.*, 2024 WL 3098162, at *1 (S.D.W. Va. June 21, 2024) (case relating to opioid overdose).

Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 3rd day of October, 2025.

*/s/ Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*
