UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES OF AMERICA *ex rel.*,
ALEX PERMENTER, et al.

    Plaintiffs,

v.

eCLINICALWORKS, LLC,

    Defendant.

CASE NO. 5:18-CV-382

**RELATORS' RESPONSE TO ECW'S MOTION IN LIMINE NO. 12 TO PRECLUDE RELATORS FROM INTRODUCING EVIDENCE AND ARGUMENTS CONCERNING ALLEGATIONS THAT PREDATE THE RELEVANT TIME PERIOD**

In perhaps its broadest motion in limine, eCW seeks to "preclude Relators from offering evidence, testimony, or argument concerning or arising from irrelevant factual allegations that predate the relevant time period, which begins, at the earliest, in December 2017—i.e., when the software at issue was certified." Doc. 406-1. eCW ignores the evidence in making that argument. Jordan Madhushudhan—the inexperienced former intern eCW put in charge of obtaining certification of Version 11—testified that she began working on obtaining certification of (what ultimately became) Version 11 in April 2016. *See e.g.*, Ex. 1, Sep. 3, 2025 Dep. of Jordan Madhusudhan at 18:19-19:12; 22:4-6. If granted, Relators can present no evidence of the 20 months of preparation eCW allegedly engaged in to get Version 11 certified in December 2017.[1] In addition, and as the Court detailed in its summary judgment order, many of the software vulnerabilities in the EHR were present long before December 2017. Doc. 345 at 16-18 (describing security issues dating back as far as 2010). That is crucial evidence that eCW had

---

[1] Presumably, eCW will present some evidence of what it did to get Version 11 certified as well.

actual knowledge of security and design flaws that affected the software's certification compliance, and never disclosed those issues to "ONC or [eCW's] ONC-ACB prior to obtaining certification for Version 11 of its software." *Id.* at 18.

So too is evidence that before 2015, eCW had "informal" security procedures, and that when it created an Application Security department it placed Rahul Jaiswal—one of the owner's relatives who had no relevant experience or training and previously ran eCW's call center—in charge of the newly formed department. *Id.* at 17, n. 24. It's no wonder that six years later that same team "was consistently unable to answer what [the] SQOO considered fundamental questions about eCW's AppSec security posture." *Id.* at 44. It's also no wonder that security vulnerabilities caused by reckless design decisions that predated the formation of the department continued through the entirety of the damages period, with some persisting today.

If eCW's motion is granted, then Relators will be precluded from introducing any evidence of eCW's dysfunction, its lack of security procedures, and its inadequate certification processes that prove eCW's reckless and deliberately ignorant attestations of compliance with regulatory requirements. In eCW's view, the company wrote the software, tested it for vulnerabilities and certification compliance, then applied for and was granted certification all on one day—December 28, 2017. Doc. 406-1 at 5 (arguing "conduct by eCW personnel, the existence of departments or the lack thereof, and other factual allegations that pre-date December 28, 2017" are irrelevant to whether software met requirements). That is so ridiculous that it almost warrants no further response.

eCW repeats its arguments from MIL 3 about Version 10 of the software, suggesting that evidence of vulnerabilities in that earlier Version is irrelevant. That is not true and is addressed more in Relators' response to MIL 3. Evidence of vulnerabilities in earlier versions of the

2

Case 5:18-cv-00382-MTT   Document 446   Filed 10/03/25   Page 3 of 7

software that were carried over to Version 11 is undoubtedly relevant to establishing eCW's actual knowledge, reckless disregard, or deliberate ignorance of Version 11's non-compliance with regulatory requirements. Without offering evidence of what eCW knew or should have known about the many non-conformities in the software, how can Relators ever prove eCW had the requisite intent to defraud when it falsely attested to non-compliance?

The cases cited by eCW are inapposite. The relevant years of activity predating certification that eCW seeks to exclude are distinguishable from the time frames discussed in the cases eCW cites. *See, e.g., Novello v. Progressive Express Ins. Co.*, 2021 WL 1845241, *1, *4 (M.D. Fla. May 7, 2021) (insurance bad faith case where relevant period was cut off when lawsuit was filed, because filing of suit extinguished insurance company's opportunity to settle); *McCaskill v. Ray*, 279 Fed. Appx. 913, 915 (11th Cir. 2008) (relevant time in copyright case turning on access to documents during employment was during defendant's employment); *Casey v. 1400 Northside Drive, Inc.*, 2018 WL 5003471, *1-2 (N.D. Ga. April 4, 2018) (excluding evidence of defendant's financial condition at time of trial, where case was about whether defendants believed they were complying with FLSA several years earlier); *G.H. v. Marstiller*, 2020 WL 13228155, *1-*4 (N.D. Fla. Mar. 24, 2020) (limiting medical records request to five years before each plaintiffs' detention in case related to injuries suffered in solitary confinement); *King v. Catholic Charities of Northwest Florida, Inc.*, 2018 WL 3848819, at *2 (N.D. Fla. Aug. 12, 2018) (disability accommodation case cutting off medical evidence six months after accommodation request because later evidence was not probative of plaintiff's condition at time of request).

In each case eCW cites, there was a clear temporal cut off point directly related to the claims at issue. Here, Relators must prove that eCW met the knowledge requirement when it

3

falsely attested to compliance with ONC rules in December 2017.  That proof necessarily requires Relators to prove what eCW knew (or should have known) about its software in December 2017 and when it had that knowledge, as well as the processes and procedures (or total lack thereof) eCW had in place in the time leading up to Version 11 certification.  Some of the evidence Relators will present predates 2017 because eCW knew or should have known for a very long time that its software did not meet the requirements.  And unlike the cases eCW cites, evidence that significantly predates December 2017 is actually more relevant than later evidence because it shows eCW knew about issues in its software that affected certification for a very long time before its false December 2017 attestations of compliance.  That is beyond reckless.

      eCW argues that "it is not possible at this pretrial stage to determine all possible evidence or testimony predating December 2017 that Relators may elect to introduce or reference."  Doc. 406-1 at 2.  Such overly broad and unspecific motions in limine are properly denied.  *See Underwood v. Scarbrough*, No. 7:21-CV-00040 (WLS), 2023 WL 2392733, at *4 (M.D. Ga. Mar. 7, 2023) (quotation omitted) ("Motions in limine that are 'broad, vague,' and include 'speculative categories of evidence and argument of which the Court cannot predetermine the admissibility' are due to be denied.").  Even the five examples listed in its brief are uncompelling.  Doc. 406-1 at 2-3.  The first cited by eCW is misleading as it falsely conflates questions about eCW's lack of formal security procedures until 2015, with questions about an interview CEO Girish Navani gave in 2010 about the massive growth his company expected from the introduction of federal subsidies.  *Id*. at 2[2]; *compare* Doc. 416-1, 2025-08-12 Navani

---

[2] "Reference to a 2010 interview in the recent deposition of eCW's CEO, Girish Navani.  (*See* [Doc. 416-1, 2025-08-12] Navani Dep. 64:15-21 ████████████████████████████████████████

Dep. at 64:15-21 with 137:4-12.[3] Regardless, both pieces of evidence are admissible—one to prove eCW's lack of procedures and dysfunction, and the other to prove eCW's fraud was driven by the availability of federal stimulus money requiring the use of certified software.

In short, eCW's overly broad MIL should be denied. Relators must be able to present evidence to prove their case, and much of that evidence predates December 28, 2017.

Respectfully submitted this 3rd day of October, 2025.

/s/ Robert H. Snyder, Jr.
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142

---

[3] The other examples eCW lists are also wrong. Doc. 406-1 at 2-3. The lack of an Application Security department and formal security procedures is discussed above. The 2015 Drummond Group certification issues are relevant to Mr. Meadors' testimony since he was the Drummond Group employee eCW lied to when it cheated on certification tests in 2015. Testimony related to Version 10 proved eCW understood its use of the MD5 hashing algorithm—which continued well past December 28, 2017—was a vulnerability. And the 2016 emails eCW cites are internal discussions about eCW's lack of appropriate security procedures (ECW_GA000731799 (February 2016 email noting ████████████████████████████████████████████████████████████████ and flagging the existence of hard coded login credentials in April 2016 as a ████████████ more than two years before Relators filed this case and made similar allegations. ECW_GA000731942.

Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 3rd day of October, 2025.

/s/ *Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*