UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | CASE NO. 5:18-CV-382 |

## RELATORS' RESPONSE TO eCW's MOTION IN LIMINE NO. 1

eCW's Motion relies on a fundamental misrepresentation of the reasons Relators will present evidence of *Delaney*. Relators will not, and have never, asserted that the allegations in *Delaney* somehow prove the validity of the Relators' own claims. But the Delaney case is **highly relevant** to proving other aspects of Relators' case and excluding all evidence of *Delaney* would prejudice Relators by robbing them of a full and fair opportunity to present their claims.

*Notice*. Prior acts, including prior settlements, have long been admissible to establish notice.[1] Specific prior settlements involving similar facts or processes "may provide the necessary factual support" to establish constructive notice.[2] Relators have already outlined how *Delaney* is relevant to notice in their Affirmative Motion in Limine No. 1, so they will not

---

[1] *See Weeks v. Remington Arms Co.*, 733 F.2d 1485, 1491 (11th Cir. 1984) quoting *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338-39 (5th Cir. 1980) ("Evidence of similar accidents might be relevant to the defendant's notice..."); *United States v. Jorgensen*, No. CRIM04-169(PAM/RLE), 2004 WL 1774529, at *3 (D. Minn. Aug. 8, 2004) (admitting evidence of settlement agreement to show notice); *C.A. Associates v. Dow Chem. Co.*, 918 F.2d 1485, 1489 (10th Cir. 1990) (federal courts "routinely permit introduction of substantially similar acts or occurrences" to prove notice).
[2] *See Parmar v. City of Aurora*, Colorado, 2020 WL 7260745, at *3 (D. Colo. Dec. 10, 2020) (finding prior settlements admissible for many purposes, including "to show the defendant was on notice of the problem"); *see also Barnes v. District of Columbia*, 924 F. Supp. 2d 74 (D.D.C. 2013) (evidence of a prior class action settlement "clearly relevant" and admissible to show notice of the problem).

belabor this point.³ *Delaney* proves eCW's actual notice that its certification process was deeply flawed and resulted in the United States accusing it of fraud. So, by no later than May 2017, eCW had *actual* notice that the government believed its certification process and testing were insufficient. Despite this *actual* notice, eCW chose not to make any changes to its process for Version 11.

*Intent*. eCW's decision not to make any changes to its process after *Delaney* is directly relevant to proving intent. Evidence of other wrongs or acts is admissible to show intent.⁴ *Delaney* is crucial to demonstrating that in fraudulently obtaining certification of Version 11, eCW acted with actual knowledge,⁵ deliberate indifference, or reckless disregard that its software did not meet the certification requirements. In the wake of the *Delaney* settlement, and while actively preparing to certify Version 11, eCW made no improvements to its faulty certification process that led to the *Delaney* settlement. Its ACB testing team remained focused on *solely* passing the pre-disclosed certification test cases,⁶ it ignored warnings from the SQOO that it had not conducted enough testing to confirm its product met the 2015 edition certification criteria,⁷

---

³ Doc. 381 at 1-5. Relators also examined the relevance of *Delaney* to demonstrating routine practice under Fed. R. Evid. 406 at length in their Affirmative Motion in Limine No. 1, so will not repeat that argument here. *See* Doc. 381 at 4.
⁴ *See Guijosa-Silva v. Wendell Roberson Farms, Inc.*, No. 7:10-CV-17 HL, 2012 WL 2990016, at *4 (M.D. Ga. July 20, 2012) (allowing evidence of past settlements to prove intent); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (evidence of discrimination against coworkers used to prove intent to discriminate); *Hooks v. Langston*, 2007 WL 1831800 (S.D. Ga. 2007) (prior assaults by correctional officer admissible to show intent to harm and common plan to abuse inmates); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) (affirming district court's decision to admit evidence of other similar acts to show lack of mistake and intent); *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997) ("Once an act is assumed to be done, the prior doing of other similar acts is useful as reducing the possibility that the act in question was done with innocent intent." (internal quotation marks and alteration omitted)).
⁵ eCW's trial brief contains an entire section misrepresenting the Supreme Court's holding in *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023). Doc. 389 at 4-5. In doing so, eCW argues that Relators must prove eCW's subjective knowledge of wrongdoing to establish scienter. *Id.* While Relators disagree, if eCW presents such an argument at trial, Relators must be permitted the opportunity to present evidence about *Delaney*, so the jury can understand what eCW actually knew when it fraudulently obtained certification of Version 11.
⁶ Doc. 266-15, QP Baseline Assessment, p. 15.
⁷ *Id.* at p. 7 ("[REDACTED]").

put a project manager who had no prior experience with the ONC certification process in charge of certifying Version 11,[8] and created a compliance committee that included Jagan Vaithilingam, *the developer who had to individually pay a settlement as part of Delaney*.[9] All of these facts, with the context of *Delaney*, demonstrate the "ostrich" type situation where a defendant buries its head in the sand and fails to make necessary improvements or put the right people in place to make those changes. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015).

*Meadors*. Relators will also use evidence of *Delaney* to impeach the credibility of eCW's certification expert Kyle Meadors. eCW hired Mr. Meadors to opine that Version 11 met the certification standards. But Mr. Meadors had a long history with eCW. He worked at Drummond Group, eCW's Authorized Certification Body, where he *made the certification decision for the version of eCW's software that resulted in the Delaney settlement*.[10] Mr. Meadors agrees that eCW misled him about its software during the certification process at issue in *Delaney*, calling eCW's conduct in the *Delaney* case a "moral failing."[11] His experience and prior statements related to *Delaney* are in stark contrast to what he says now as eCW's paid gun. eCW chose to hire Mr. Meadors as its certification expert, knowing the baggage he came with, so Relators may properly cross him about the facts of *Delaney*—a fact this Court seemingly agrees with. *See* Jun. 4, 2025 Hrg. Tr. at 29: 4-6 ("what a minefield putting [Mr. Meadors] on the stand is going to be); *id*. at 32:23-25 ("He may come with more credibility based upon his experience on that side of the [certification] process. He may come with less. That's the cross issue, I guess.").

---

[8] Ex. 1, Dep. of Jordan Madhusudhan at 18:22-19-3; *id*. at 20:1-2; *id*. at 38:11-21.
[9] *See* Ex. 2, 2023-07-18 S. Porwal to Compliance Committee (ECW_PER000233438) (identifying Mr. Vaithilingam as compliance committee member); U.S. Dep't of Justice, Electronic Health Records Vendor to Pay $155 Million to Settle False Claims Act Allegations (May 31, 2017), https://www.justice.gov/archives/opa/pr/electronic-health-records-vendor-pay-155-million-settle-false-claims-act-allegations (Mr. Vaithilingam individually settled).
[10] Doc. 206-1, Meadors Report at 9-10; Doc. 228, Dep. of K. Meadors at 70:2-23.
[11] Doc. 228, Meadors Dep. at 86:18-24; *id*. at 180:12-21; Doc. 266-59, Meadors Blog Post.

***eCW Witnesses***.  *Delaney* is also relevant to impeach eCW's witnesses at trial.  After the settlement (and to this day), eCW's CEO Girish Navani disputes the allegations in *Delaney*, stating eCW settled only to avoid the expense of litigation.[12]  Internally, however, eCW employees called its outside vendors to acknowledge that what eCW did was wrong and assure the vendors it would not do it again.[13]  That eCW said one thing publicly to its customers, and something different to its vendors, is relevant to the jury's determination of scienter and falsity.

***Delaney Settlement Amount.***  In addition to the facts of *Delaney*, the amount of the settlement is relevant and important context for the jury.  The law recognizes that different sums and penalties motivate defendants in different ways (hence the existence of punitive and treble damage awards).  The *Delaney* settlement was not a meager fine or a rounding error that eCW's leadership could note on the balance sheet and ignore.  It was a record-breaking sum that had to be paid not only by the company, but by certain individual employees as well.  A settlement of that size should have been a wake-up call for the company to wholly revamp its certification and software development processes.  But it was not.  eCW failed to make any meaningful improvements to its certification process and continued to employ those who were forced to individually settle in *Delaney*.

Relators' do not intend to introduce the settlement amount to, as eCW suggests, prove that eCW previously defrauded the government in that amount, or to suggest that a jury should award such a sum here.[14]  Instead, the significant size of the settlement (which is publicly

---

[12] Tom Sullivan, *eClinicalWorks to Pay $155 Million to Settle Suit Alleging It Faked Meaningful Use Certification*, Healthcare IT News (May 31, 2017), https://www.healthcareitnews.com/news/eclinicalworks-pay-155-million-settle-suit-alleging-it-faked-meaningful-use-certification.

[13] Doc. 228, Meadors Dep. at 88:2-16.

[14]  Relators' damages model actually supports a much higher potential judgment, as is to be expected – the *Delaney* settlement was a compromise amount, not a jury verdict.

4

available[15]) is relevant to establish the impact of the settlement on eCW—giving the company actual notice that its certification processes needed evaluation and improvement, and that the government can be expected to treat problems with an EHR's certification requirements extremely seriously.

      eCW even admits that parts of *Delaney* are relevant at trial. But it seeks to rob it of all context by only presenting the parts it claims are relevant to its defenses, while crying unfair prejudice as to the rest. Presenting a half picture of *Delaney* will confuse the jury and in turn unduly prejudice the Relators. For example, eCW states the CIA will "clearly" be discussed but argues the underlying allegations and settlement triggering the CIA are irrelevant. Doc. 388-1 at 6. But eCW relies on the CIA to defend against the elements of falsity and materiality, so "what is sauce for the goose is sauce for the gander." Jun. 4, 2024 Hrg. Tr. 31:15-16. The jury *does* need to be aware of the context for the CIA as it is that context which gave rise to eCW's notice of the problems in its certification processes. And if eCW is going to reference *Delaney* in its case for any purpose, including its defenses, that opens the door for Relators to do the same.[16]

      Any argument that the *Delaney* allegations and settlement are prejudicial, and therefore should be excluded, fails.[17] That *Delaney* may be harmful to eCW's purported defenses does not require its exclusion unless the evidence is **unfairly** prejudicial. *See U.S. v. Heatherly*, 985 F.3d

---

[15] https://www.justice.gov/archives/opa/pr/electronic-health-records-vendor-pay-155-million-settle-false-claims-act-allegations (last accessed Sept. 23, 2025).

[16] Allegations in a complaint may be used for impeachment if a litigant opens the door to their use at trial. *See, e.g.*, *Gutierrez v. Galiano Enterprises of Miami, Corp.*, 2019 WL 3302325, at *4 (S.D. Fla. July 23, 2019) (denying plaintiffs' motion to the extent it sought to exclude testimony or evidence of prior lawsuits for impeachment purposes because, "'depending on the evidence offered at trial, evidence of other lawsuits might be used for impeachment,' if the evidence is relevant and undermines the allegations presented."); *see also Rushing v. Wells Fargo Bank, N.A.*, 2012 WL 3155790, at *1 (M.D. Fla. Aug. 3, 2012) ("[] [D]epending on the evidence offered at trial, evidence of other lawsuits might be used for impeachment.").

[17] There is also no support for eCW's argument that evidence concerning the *Delaney* settlement would violate Rule 404(b)'s bar on propensity evidence. This evidence comports with the exception allowing evidence of prior acts to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b)(2).

5

254, 266 (3rd Cir. 2021) (Rule 403 "bar[s] not all prejudice, but only unfair prejudice.  It does not protect defendants from devastating evidence in general.").[18]  That is not the case here.  As outlined above, there is no doubt that *Delaney* is relevant to several elements of Relators' claims.[19]  And the risk of ***unfair*** prejudice to eCW is nonexistent because, at trial, eCW can ask its witnesses about *Delaney* and can continue to deny the allegations or argue other mitigating circumstances.[20]  Granting eCW's motion would prejudice Relators as it would provide an inaccurate and incomplete portrayal of the *Delaney* settlement and run a substantial risk of confusing the jurors based on improperly limited information.

Respectfully submitted this 3rd day of October, 2025.

/s/ *Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
Chase C. Lyndale
Georgia Bar No. 183762
chase@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

---

[18] *See also Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, 1:13-CV-195 (WLS), 2016 WL 9243594, at *1 (M.D. Ga. Oct. 4, 2016) ("Even though harmful evidence is 'inherently prejudicial,' it is only the 'unfair prejudice substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'").
[19] *See D.J.'s Diamond Imports, LLC v. Silverman Consultants, LLC*, No. CIV.A. WMN-11-2027, 2014 WL 2114844, at *2 (D. Md. May 20, 2014) ("The Court will deny this motion as the Settlement Agreement's potential relevancy outweighs any potential prejudice.  The agreement undeniably has some relevance to the factual basis of Plaintiffs' remaining claim").
[20] *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1366 (10th Cir. 1987) (trial court's conclusion that probative value of similar complaints outweighed the risk of prejudice was not abuse of discretion in part because defendant had a full opportunity to explore the complaints at trial through its own witnesses).

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 3rd day of October, 2025.

*/s/ Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*
