UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | CASE NO. 5:18-CV-382 |

**RELATORS' RESPONSE TO eCW's MOTION IN LIMINE NO. 5
TO PRECLUDE RELATORS FROM INTRODUCING RELATOR
<u>CHRISTOPHER WHEELER'S VIDEO DEMONSTRATIONS</u>**

eCW's Motion is yet again far too vague and broad to be granted. It seeks the exclusion of all nine videos created by Mr. Wheeler (some dating back more than 7 years), totaling over 145 minutes, but only cites six allegedly improper statements within those nine videos. Doc. 397-1 at 2. eCW does not say what specific "inflammatory" and "irrelevant" comments are made in each of the nine videos that would require their exclusion. Because the Motion is overly broad and unspecific it must be denied. *See Underwood v. Scarbrough*, No. 7:21-CV-00040 (WLS), 2023 WL 2392733, at *4 (M.D. Ga. Mar. 7, 2023) (quotation omitted) ("Motions in limine that are 'broad, vague,' and include 'speculative categories of evidence and argument of which the Court cannot predetermine the admissibility' are due to be denied.").

eCW likely did not provide a list of specific statements because doing so would force it to admit that any alleged problems are not as pervasive as eCW claims. eCW alleges Mr. Wheeler's videos are "laced with inflammatory and irrelevant commentary denigrating eCW," but it could only come up with ***four examples from two videos*** to make that argument. Doc.

1

397-1 at 2.[1]  eCW does not cite, and in fact, Relators' counsel could not identify, **any** "inflammatory" or "denigrating" commentary in Mr. Wheeler's **seven** other videos, which account for most of his total video runtime.  eCW also omits that one of Mr. Wheeler's videos has **no sound at all** so it could not possibly have any "inflammatory" commentary.  In reality, most of Mr. Wheeler's narrations are simple descriptions of what he is doing and contain nothing that could be construed as "inflammatory."  But to avoid any accusation of improper commentary, Relators will play the videos without sound.  Mr. Wheeler can narrate the videos as they are played and will avoid making any comment beyond describing what the video demonstrates.

Relators do not dispute that what they present at trial must be tied to a relevant certification criteria.  eCW broadly asserts that Mr. Wheeler's narrations are "replete" with technical allegations unrelated to any certification criteria, but cites only two examples.  Again, if his narrations were "replete" with such allegations, then surely eCW could have come up with more than **two examples** to support its position.  Relators produced marked up versions of Mr. Wheeler's reports and discovery supplements that clearly tie each video to a specific certification criterion.  Most of the videos are already narrowly tailored to a vulnerability linked to certification criteria.  To the extent they are not, the video can be edited or removed from the exhibit list.

Animations and videos are regularly admitted as nonhearsay evidence that will help the jury understand aspects of a case.  *See e.g. Birren v. Royal Caribbean Cruises, Ltd.*, 20-CV-22783, 2022 WL 985574, at *2 (S.D. Fla. Apr. 1, 2022) ("The Court is confident that the jury will understand that the animations are intended for demonstrative purposes to illustrate

---

[1] *See* Oct. 1, 2024 Relators' Second Supplemental Response and Objections to eCW's Am. First Interrogs. Exs. eCW RCE 2 (REL000665) and eCW cross-server phi leak (REL000664).

Plaintiffs' theory of the case, rather than a depiction of actual events that the jurors are bound to accept as true."); *Banford v. Entergy Nuclear Operations, Inc.*, 2:12-CV-131, 2014 WL 4566717, at *3 (D. Vt. Sept. 15, 2014) (admitting tabletop training video because it "may help the jury visualize and better comprehend witness testimony about how the plant is laid out and what a tabletop exercise entails."); *State v. Lanham*, 731 So. 2d 936, 942 (2d Cir. 1999) ("video was relevant and admissible as demonstrative evidence of the State's representation of the speed, distance and time relationships involved in the accident."). Mr. Wheeler's videos are no less admissible and no more transformed into hearsay by virtue of being in video, rather than photograph, format. *See e.g. United States v. Clotaire*, 963 F.3d 1288, 1293-94 (11th Cir. 2020) ("an otherwise-admissible business record does not become a new, inadmissible record merely because its format is adapted for trial display."); *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 171 (2d. Cir. 2000) ("We see no reason to deprive a jury of authoritative learning simply because it is presented in a visual, rather than printed, format. In this age of visual communication a videotape may often be the most helpful way to illuminate the truth in the spirit of Rule 102.").

Because Mr. Wheeler's videos will be played silently, the cases cited by eCW do not apply. *See e.g. Foster v. United States*, 2023 WL 12083205, at *9 (E.D. Ky. Oct. 14, 2023) ("text that is superimposed on the images included in those exhibits" constituted admissible hearsay, not the videos or photographs themselves); *Davies v. Benbenek*, 2014 WL 12660537, at *6 (N.D. Ill. May 28, 2014) (excluding "***audio*** narration of the video," not video itself) (emphasis added).

The *Hill* and *In re Gen. Motors LLC Ignition Switch Litig.* cases eCW cites also are inapplicable. In *Hill*, the court excluded a presentation because the plaintiff had not laid any foundation through expert testimony that the presentation was a learned treatise. *Hill v. Hill*, 10

3

Neb. App. 570, 576 (2001). In the same vein, the videos excluded in *In re Gen. Motors LLC Ignition Switch Litig.*, were created by a non-expert. 2017 WL 2493143, at *4 (S.D.N.Y. June 9, 2017).[2] *Id.* Here, Mr. Wheeler has been cleared to offer expert testimony about technical vulnerabilities in eCW's software and he will lay an appropriate foundation for the videos when he testifies live at trial.

The jury will benefit from this demonstrative evidence. "There is not a single agreed upon definition of the term 'demonstrative evidence,'" but one accepted definition is "'an object or document that could be displayed to the jurors to help them understand the substantive evidence (testimony or other objects or documents) by interpreting, summarizing, or explaining it, but that would not be available during deliberations.'" *Van Loo v. United States*, 2025 WL 691648, *2 (W.D. Wash. March 4, 2025), quoting *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013). Another definition is a "visual (or other sensory) aid."[3] Mr. Wheeler's videos clearly fall under either of those definitions.

"The analysis governing the use of demonstrative aids in trials involves several steps, beginning with Rule 611… which grants trial courts broad discretion in exercising control over the presentation of evidence in the course of a trial." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 535 F. Supp. 2d 580, 584 (E.D. Va. Feb. 21, 2008). A district court's decision to allow demonstrative aids is reviewed for abuse of discretion. *Sanchez v. Disc. Rock & Sand, Inc.*, 84 F.4th 1283, 1298, n.7 (11th Cir. 2023) (trial court did not abuse discretion by allowing publication of an incident animation because opponent failed to show it was inherently confusing

---

[2] The court also ruled the videos were "totally irrelevant" or "only marginally probative" because they showed the intentional application of force to a keychain, when the plaintiff alleged his accident was caused by inadvertent rotation. *Id.*

[3] *See* Robert D. Brain & Daniel J. Broderick, The Derivative Relevance of Demonstrative Evidence; Charting its Proper Evidentiary Status, 25 U.C. Davis L. Rev. 957, 968-69 (1992).

or misleading). Demonstratives may "assist the jurors in understanding the complicated and technical issues involved" and "thereby aid in the ascertainment of the truth" and "avoid needless consumption of time that might otherwise be required to ensure jury comprehension." *Id*. This is exactly the purpose of Mr. Wheeler's videos. As this Court knows, explaining these security vulnerabilities and technical issues is difficult because the material is dense. Mr. Wheeler's videos provide a workable solution that will help make complex issues "understandable to the triers of fact."[4]

    eCW attempts to categorize Mr. Wheeler's videos as "reenactments" because reenactments are held to a more stringent standard than demonstrative evidence. *See Muth v. Ford Motor Co.*, 461 F.3d 557, 566 (5th Cir. 2006) (demonstrative evidence illustrative only of general scientific principles and not as a re-enactment of disputed events need not pass the "substantial similarity" test). eCW is incorrect. These videos are not a "reenactment." They are an entirely different exercise than, for example, crash-testing or animations created or used in the product liability cases cited by eCW. In those cases, the courts found that the demonstratives were similar enough to the underlying incident that juries would believe they were reenactments of the subject crash itself leading to juror confusion. *See e.g. Graves v. Toyota Motor Corp.*, 2012 WL 13019013, at *4 (S.D. Miss. Jan. 12, 2012). Mr. Wheeler is not attempting to recreate or reenact a specific incident wherein eCW's software was breached. That is obvious from the videos themselves and from his testimony about them. His videos are visual illustrations of software vulnerabilities. In essence, they are simply video representations of the screenshots eCW's expert Oren Wortman included in his report.[5] Without the video aids, the jury has little chance of understanding how vulnerabilities in the eCW source code actually present themselves

---

[4] *See* Brain & Broderick, supra at 964.
[5] Doc. 210-1, ¶¶84-85 (Wortman report incorporating Litwak screen shots).

to a user. The videos will aid the jury's understanding of complicated technical principles in a far more efficient manner. That is exactly what demonstrative evidence is for and why these videos should be published to the jury.

While Mr. Wheeler will testify at trial, it would be a waste of the Court's and jury's time to require Mr. Wheeler to attempt to recreate each demonstration live instead of simply narrating the videos already produced. Requiring Mr. Wheeler to perform the demonstrations live involves additional time and potential technological concerns. Additionally, for at least one video, it is not possible for Mr. Wheeler to recreate the demonstration. In the eCW cloud 2018 video produced with Mr. Wheeler's Rebuttal Report, Mr. Wheeler demonstrated vulnerabilities that existed in the software in late 2018 soon after this case was filed. That version of the cloud software no longer exists so the demonstration cannot be recreated. So, in addition to demonstrating the vulnerabilities identified by Mr. Wheeler, it is also admissible to prove that vulnerabilities existed in Version 11 at a particular time. That is relevant to several issues, including that eCW should have known about the issues by no later than 2018.

That Mr. Wheeler's videos which plainly document existing security vulnerabilities in eCW's software might be prejudicial to eCW does not require their exclusion. The question is whether Mr. Wheeler's videos are ***unfairly*** prejudicial. *See Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, 1:13-CV-195 (WLS), 2016 WL 9243594, at *1 (M.D. Ga. Oct. 4, 2016) ("Even though harmful evidence is 'inherently prejudicial,' it is only the 'unfair prejudice substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'"). The risk of unfair prejudice to eCW is nonexistent. eCW can examine Mr. Wheeler about his videos[6] and his findings and it can present its own rebuttal evidence.

---

[6] Mr. Katz did so extensively at Mr. Wheeler's second deposition.

As noted above, Relators agree to play any videos without the pre-recorded narration and edited (if necessary) to remove references to any issue now outside the scope of this case. Relators will tell eCW well in advance of trial which videos they intend to use and provide any edited versions at that time. The videos are appropriate, will help the jury, and are not unduly prejudicial to eCW. The motion should be denied.

Respectfully submitted this 3rd day of October, 2025.

/s/ Robert H. Snyder, Jr.
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
Chase Lyndale
Georgia Bar No. 183762
chase@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

                                               Anna Green Cross
                                               Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 3rd day of October, 2025.

/s/ *Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*