UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES OF AMERICA *ex rel.*,
ALEX PERMENTER, et al.

    Plaintiffs,

v.

eCLINICALWORKS, LLC,

    Defendant.

CASE NO. 5:18-CV-382

**RELATORS' RESPONSE TO eCW's MOTION IN LIMINE NO. 2
TO PRECLUDE RELATORS FROM INTRODUCING THE SETTLEMENT
BETWEEN eCW AND QUANDARY PEAK**

Defendant's MIL No. 2 asks the Court to exclude the limited evidence and trial testimony Relators propose to introduce related to the settlement agreement between eCW and Quandary Peak.[1] In its motion, eCW argues out of all sides of its mouth. It first argues the settlement and related documents are not relevant. Then it argues that maybe they are a little relevant, but they are too prejudicial. And it finally argues that even if they are not actually too prejudicial to be allowed, they must still be redacted. Each of eCW's arguments is meritless. For all the reasons identified in Relators' trial brief on this issue, the limited evidence identified for this topic is appropriate and admissible. Doc. 387 at 12.

---

[1] Although eCW's MIL only moves to preclude Relators from introducing "(1) the March 2021 settlement between eCW and Quandary Peak… and (2) the August 2020 letter from eCW's outside counsel Ropes & Gray to the Office of the Inspector General of the Department of Health and Human services (Doc. 391-1 at 2), Relators filed a trial brief on the admissibility of evidence related to eCW's settlement agreement with the SQOO (Doc. 387 at 11-14). Relators identified a limited number of documents they intended to introduce at trial, specifically 7 documents, and portions of four witnesses who testified via video trial deposition. *Id.* at 12. In addition, Relators also identify ECW_PER001908524-525 Oct. 8, 2020 Heimer to Katz re.ing eClinicalWorks, LLC – Corporate Integrity Agreement and limited portions of Mr. Laycob's deposition. *See* Doc. 218-84, 2024-07-16 Laycob Dep. at 139:8-144:21.

1

The timing, terms, and practical effects of the QP-eCW settlement are relevant to issues Relators' must prove at trial.  *First*, the QP-eCW settlement is particularly compelling to rebut eCW's purported scienter defenses.  On August 7, 2020, following a critical fifth interval assessment issued in July 2020 (Doc. 270-3), the SQOO issued a second formal Expression of Concern to OIG stating that eCW systematically failed to meet its obligations under the CIA and routinely missed deadlines or abandoned required activities altogether.  Doc. 266-99.  The SQOO repeated its concern that "eCW's EHR [wa]s unsafe, its progress ha[d] been unacceptable, and it [wa]s not on a trajectory that w[ould] render its software reasonably safe before the end of the CIA.  *Id*. at 1.  Only then, and for the first time, more than three years into the CIA, did eCW tell OIG about the alleged racial bias from team members on the SQOO, just eight days after the second Expression of Concern.  *See* Doc. 206-106.  eCW's attempts to remove Quandary Peak as its SQOO after these damning findings ties directly to its intent to defraud the government.  It also rebuts eCW's continued refrain that it cooperated with the SQOO and that the SQOO knew everything it needed to know to determine whether Relators' allegations were certification non-conformities.  It also shows that eCW received repeated notice of issues with its software and its certification process and, instead of fixing the problems, chose to seek removal of those raising these concerns in the first place.

*Second,* the terms of the settlement agreement and its practical implications are, again, relevant to eCW's intent and to materiality.  After what appears to be protracted negotiations, eCW and the SQOO entered into a Settlement Agreement that removed members from the SQOO team that were most critical of eCW and focused on software security, including team lead Brad Ulrich, and team members Isaac Pflaum, Dean Sittig, and Adam Wright.  Doc. 266-2,

¶ 314.[2]  *Id*., ¶ 320.

Unsurprisingly, the SQOO's post-settlement interval assessments were far less critical of eCW. Doc. 266-2, ¶¶ 278-279, 322. The terms of the agreement had nothing to do with supposed ethnic bias, but instead, sought to shackle the SQOO from criticizing eCW further.

The settlement agreement and related evidence are therefore offered as evidence of eCW's continued resistance not only to the SQOO but also to addressing and correcting ongoing security issues as discussed in the SQOO's interval assessments.

In addition to these substantive reasons, eCW's attempt to remove the SQOO and the subsequent settlement agreement is relevant to impeach the testimony of eCW personnel expected to testify that the company was cooperative with the SQOO, welcomed the guidance and assistance it provided, and had no antagonistic relationship with the mandated oversight

---

[2] Two of the "banned" team members made up two-thirds of the SQOO team who could review source code. *See* Doc. 416-2, 2025-08-26 Ulrich. Dep. at 146:24-147:11, excerpt attached as Ex. 1.
[3] eCW required this despite the ousted SQOO team lead never viewing the SQOO's role as punishing eCW. Ex. 1, Ulrich Dep. at 150:20-24.

organization.  *See United States v. Stockton,* 788 F.2d 210, 219 n. 15 (4th Cir. 1986) (recognizing impeachment is one of the other purposes for which evidence of prior acts could be admissible). eCW did have an antagonistic relationship with the SQOO once the SQOO's assessments of eCW proved critical.  Relators should be permitted to cross eCW's witnesses at trial if they attempt to paint eCW's cooperation with the SQOO as anything but combative.

eCW claims that Relators' theory of relevance is not supported by evidence.  Doc. 391-1 at 4.  eCW is wrong.  The SQOO itself explicitly refuted each of eCW's claims of bias and concluded eCW ***manufactured the claims to have the SQOO removed.***  Doc. 266-108.  The OIG reviewed eCW's allegations and the SQOO's response and ***declined to remove the SQOO***.  Doc. 266-109.  Both SQOO team leaders testified that the SQOO was not prejudiced against eCW and they had never seen a SQOO team member demonstrate any ethnic bias against eCW.  Outside of its initial letters to the OIG and SQOO, eCW has not produced any documentary support its allegations of ethnic bias.  Relators have more than enough evidentiary support for their argument as to why this evidence is relevant.  The jury will be presented with both arguments at trial and will be free to believe whichever story it believes is the most credible.  This is no basis for exclusion.

Additionally, any alleged "prejudice" that eCW may complain of is misplaced.  That evidence of eCW's allegations of racial bias might be harmful to eCW does not automatically require its exclusion unless it is unfairly prejudicial.  *See U.S. v. Heatherly*, 985 F.3d 254, 266 (3rd Cir. 2021) (Rule 403 "bar[s] not all prejudice, but only unfair prejudice. It does not protect defendants from devastating evidence in general.").[4]  It is not.  While allegations of racism are

---

[4] *See also Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, 1:13-CV-195 (WLS), 2016 WL 9243594, at *1 (M.D. Ga. Oct. 4, 2016) ("Even though harmful evidence is 'inherently prejudicial,' it is only the 'unfair prejudice substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'").

4

certainly a valid area of concern for prejudice, here, the allegations of racism are not made against eCW but against the SQOO. [5]  There is little risk of unfair prejudice against eCW for simply accusing the SQOO of racism.  Nor is there a risk of unfair prejudice in Relators' accusing eCW of fabricating those allegations because eCW will have an opportunity to question its witnesses about the allegations.

There is also no need to redact portions of the settlement agreement and related correspondence to omit the name of Aaron Katz, current attorney for eCW, who penned the August 2020 letter to OIG, and who eCW represents "will be at counsel table." Mot. at 7.  eCW offers absolutely no legal authority supporting this request.  Mr. Katz's participation in eCW's interaction with OIG and involvement with the SQOO has been flagged by the Court and the parties for some time, with no apparent effort on eCW's part to reconcile Mr. Katz's dual roles.  Doc. 185 (Oct. 10, 2024 Hrg. Trans.) at 97 (Court: "If a lawyer is going to be a fact witness, they need to withdraw from this case."), *id*. at 100 (Court: "Well, of course, Mr. Katz, you fall in this category [of attorneys with knowledge and personal involvement in Quandary Peak settlement], too.").

eCW retained Mr. Katz in this litigation despite his previous involvement in the Quandary Peak settlement negotiations (and many other issues) throughout the CIA.[6]  His role at

---

[5] Unlike the allegations of racism in Relators' motion in limine involving customer reviews that supposedly accused one of the Relators of racism, Doc. 384 at 3-5, the allegations here do not relate to a party.  Motion at 6 (Doc. 391-1).  This is tacitly admitted by eCW as the only case they cite for the proposition that "evidence of alleged racial bias poses the risk that the jury will decide the case based on a general character rather than facts, not to mention the time wasted on [the plaintiff] offering evidence to rebut the allegations" related to a motion in limine where evidence of **the plaintiff's** alleged racial bias was excluded.  See *G&G Closed-Cir. Events, LLC v. Castillo*, No. 14 C 02073, 2018 WL 11265763, at *1-2 (N.D. Ill. Dec. 16, 2018) (excluding evidence that plaintiff targeted business establishments owned by persons of Latino descent for multiple reasons including it not being relevant to violation of 47 U.S.C. 605(a), defendant failing to proffer sufficient evidence beyond speculation, evidence lacking foundation, personal knowledge, and inadmissible hearsay, and under 403.)  Here, we have a very different situation because the alleged racial bias is against the SQOO, not a party to the litigation, and relevance has clearly laid out.

[6] The Ropes & Gray letter is not the only document on Relators' exhibit list that includes Mr. Katz's name.

trial is entirely within eCW's control, and any alleged "prejudice" is entirely of eCW's own making. There is no basis to redact Mr. Katz's name from the August 2020 letter to OIG seeking to remove Quandary Peak as the SQOO.

Finally, the August 2020 Ropes letter is offered neither as evidence of settlement discussions nor to prove eCW had in fact breached its obligations under the CIA—*i.e.*, no prohibited purpose. Fed. R. Evid. 408(a). Settlement negotiations may be admissible for other purposes, most relevantly here to show knowledge, lack of mistake, and motive. Fed. R. Evid. 408(b); *see Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987) (admitting evidence of settlement to show intent and lack of mistake). Nevertheless, Relators agree that the settlement offer amount in the letter can be redacted to avoid any further accusation of prejudice.

In short, the limited evidence of eCW's attempt to have Quandary Peak removed as its SQOO and the restrictions placed on Quandary Peak as part of the March 2021 settlement agreement are relevant, and its probative value is not substantially outweighed by the risk of unfairly prejudicing eCW, confusing the issues, misleading the jury, or wasting time.

Respectfully submitted this 3rd day of October, 2025.

/s/ *Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
Chase Lyndale
Georgia Bar No. 183762
chase@cannellasnyder.com

CANNELLA SNYDER LLC

6

315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 3rd day of October, 2025.

*/s/ Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522

*Counsel for Relators/Plaintiffs*
