**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br> Defendant. | No. 5:18-CV-382 <br><br> Honorable Marc T. Treadwell |

## eCLINICALWORKS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO RELATORS' OMNIBUS MOTIONS *IN LIMINE*

**TABLE OF CONTENTS**

**Page**

I.  EVIDENCE ABOUT eCW's BACKGROUND AND GOOD FAITH IS
    ADMISSIBLE AND IS NOT CHARACTER EVIDENCE. ...............................................2

II. THE GOVERNMENT'S DECISION NOT TO INTERVENE IS ADMISSIBLE. ............4

III. EVIDENCE THAT THE GOVERNMENT DID NOT TAKE SPECIFIC
    ENFORCEMENT ACTIONS AGAINST eCW AND EVIDENCE FROM FACT
    WITNESSEES ABOUT WHY IT DID NOT DO SO IS ADMISSIBLE. .........................6

IV. WITNESSES, INCLUDING MEADORS, CAN TESTIFY BASED ON THEIR
    PERSONAL EXPERIENCE WITH DRUMMOND AND THE GOVERNMENT. .........8

V.  EVIDENCE OF NO BREACH OF eCW'S SOFTWARE IS ADMISSIBLE. ..................9

VI. EVIDENCE THAT PEOPLE WORK AT eCW IS ADMISSIBLE. ...............................11

VII. REBUTTAL OF RELATORS' ARGUMENTS ABOUT eCW'S FINANCIAL
    CONDITION AND CORRESPONDING MOTIVATIONS IS ADMISSIBLE. ..............11

VIII. EVIDENCE ABOUT THE EXISTENCE OF THE PRIOR HIPAA CLAIM IS
    ADMISSIBLE IF RELATORS PRESENT OTHER IRRELEVANT
    PLEADINGS. ................................................................................................................12

IX. EVIDENCE ABOUT WHETHER ALLEGED NONCONFORMITIES WOULD
    HAVE BROUGHT AN END TO MIPS PAYMENTS IS ADMISSIBLE. .....................14

X.  EVIDENCE ABOUT TREBLE DAMAGES, STATUTORY PENALTIES, AND
    ATTORNEYS' FEES IS ADMISSIBLE AS EVIDENCE OF RELATORS'
    BIAS AS DUAL FACT AND EXPERT WITNESSES. ..............................................16

XI. THE RULES OF CIVIL PROCEDURE PROVIDE FOR THE USE OF
    DOCUMENTS NOT PRODUCED IN DISCOVERY ON A CASE-BY-CASE
    BASIS. ..........................................................................................................................18

XII. EVIDENCE ABOUT eCW's CURRENT SECURITY AND CERTIFICATION
    PROCESSES AND PRACTICES AFTER 2021 IS ADMISSIBLE. ................................19

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Surety Co. v. Baldwin*,
    287 U.S. 156 (1932)................................................................................2

*Bank One, N.A. v. Echo Acceptance Corp.*,
    2008 WL 1766891 (S.D. Ohio Apr. 11, 2008) .......................................19

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2018 WL 934795 (D. Ariz. Feb. 15, 2018)............................................3, 4

*Bartlett v. Mut. Pharm. Co.*,
    2010 WL 3156555 (D.N.H. July 26, 2010) ...........................................4

*Beving* v. *Union Pacific R.R. Co.*,
    2020 WL 6051598 (S.D. Iowa Sept. 8, 2020) .......................................11

*United States ex rel. Bibby v. Mortg. Invs. Corp.*,
    987 F.3d 1340 (11th Cir. 2021) ..............................................................6

*Bolden v. Rushing*,
    2025 WL 1827284 (M.D. Fla. July 1, 2025) .........................................18

*United States ex rel. Bonzani v. United Techs. Corp.*,
    662 F. Supp. 3d 217 (D. Conn. 2023)....................................................10

*Carrel* v. *Nat'l Cord & Braid Corp.*,
    852 N.E.2d 100 (Mass. 2006) ............................................................3, 11

*Chavis v. Clayton Cnty. Sch. Dist.*,
    147 F. App'x 865 (11th Cir. 2005) .........................................................1

*Compton v. Bach*,
    374 F. Supp. 3d 1296 (N.D. Ga. Feb. 28, 2019)....................................3

*Conroy v. Abraham Chevrolet-Tampa, Inc.*,
    375 F.3d 1228 (11th Cir. 2004) ...................................................6, 11, 20

*United States ex rel. Cressman v. Solid Waste Servs., Inc.*,
    2018 WL 1693349 (E.D. Pa. Apr. 6, 2018) ...........................................5

*D'Agostino v. ev3, Inc.*,
    845 F.3d 1 (1st Cir. 2016).......................................................................7

*Dagostino v. Fed. Express Corp.*,
2023 WL 5498862 (M.D. Fla. Aug. 25, 2023) ...................................................................2

*United States ex rel. Davis v. District of Columbia*,
679 F.3d 832 (D.C. Cir. 2012) .........................................................................................14

*In re DePuy Orthopaedics, Inc. v. Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018) .............................................................................................4

*Estate of Fornadley v. Safeco Ins. Co. of Am.*,
2017 WL 10379310 (C.D. Cal. Dec. 21, 2017) ...............................................................12

*Fowler v. State Farm Fire & Cas. Co.*,
2008 WL 3050417 (S.D. Miss. July 25, 2008) ................................................................13

*United States ex rel. GNGH2 Inc. v. XLD Century LLC*,
2024 WL 3625147 (C.D. Cal. July 31, 2024) ...............................................................3, 10

*Golding v. Wal-Mart Stores East, LP*,
2021 WL 5035030 (M.D. Ga. May 5, 2021) ...............................................2, 9, 15, 19

*Graves v. Plaza Med. Centers, Corp.*,
2017 WL 3895438 (S.D. Fla. Sept. 6, 2017) ...................................................................16

*In re Gregg*,
2013 WL 3989061 (Bankr. M.D. Ga. July 2, 2013) .........................................................4

*Harris v. Wingo*,
2021 WL 5028201 (M.D. Fla. Oct. 29, 2021) ...................................................................2

*Highland Cap. Mgmt. L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005) ...............................................................................8

*United States ex rel. Holland v. DaVita, Inc.*,
2021 WL 4948076 (M.D. Fla. Aug. 10, 2021) ...........................................................10, 15

*Holley v. BBS/Mendoza, LLC*,
2024 WL 3856932 (S.D. Ohio Aug. 19, 2024)...........................................................18, 19

*Howell v. Dorn*,
2010 WL 8815884 (E.D. Va. Apr. 15, 2010) ....................................................................4

*United States ex rel. Hunt v. Cochise Consultancy, Inc.*,
2025 WL 863466 (N.D. Ala. Mar. 19, 2025), *appeal docketed*, No. 25-11147
(11th Cir. Apr. 9, 2025) ......................................................................................................7

*Hutchins v. Wilnetz, Goldman & Spitzer*,
253 F.3d 176 (3d Cir. 2001)..............................................................................................14

*Johnson v. C.R. Bard, Inc.*,
    2021 WL 2070448 (W.D. Wis. May 24, 2021) .......................................................................3

*United States ex rel. Jones v. Mass. Gen. Hosp.*,
    780 F.3d 479 (1st Cir. 2015) ...................................................................................................3, 16

*Kaiser v. Monroe Clinic, Inc.*,
    2020 WL 4364179 (W.D. Wis. July 30, 2020) ......................................................................4

*United States ex rel. Kiro v. Jiaherb, Inc.*,
    2019 WL 2869186 (C.D. Cal. July 3, 2019) .....................................................................4, 17

*United States ex rel. Krahling v. Merck & Co., Inc.*,
    2023 WL 8367939 (E.D. Pa. July 27, 2023).........................................................................8

*United States ex rel. Lawson v. Aegis Therapies*,
    2015 WL 1541491 (S.D. Ga. Mar. 31, 2015) .......................................................................8

*Leonard v. Stemtech Health Sci, Inc.*,
    981 F. Supp. 2d 273 (D. Del. 2013).......................................................................................13

*Lindsey v. Normet*,
    405 U.S. 56 (1972)...................................................................................................................2

*Niver v. Travelers Indem. Co. of Illinois*,
    433 F. Supp. 2d 968 (N.D. Iowa 2006)..................................................................................4

*United States ex rel. Oliver v. Parsons Co.*,
    195 F.3d 457 (9th Cir. 1999) .................................................................................................3

*United States ex rel. Penelow v. Janssen Products, L.P.*,
    No. 12-7758-ZNQ-JBD (D.N.J. June 28, 2023) ..................................................................4

*United States ex rel. Petratos v. Genentech*,
    855 F.3d 481 (3d Cir. 2017).....................................................................................................5

*Polansky v. Executive Health Res., Inc.*,
    422 F. Supp. 3d 916 (E.D. Pa. Nov. 5, 2019), *aff'd in part, vacated in part on*
    *other grounds*, 17 F.4th 376 (3d Cir. 2021), *aff'd on other grounds sub nom.*
    *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) ....................5

*Portis v. State Farm and Cas. Co.*,
    2017 WL 11629104 (N.D. Ga. July 31, 2017)......................................................................12

*Reynolds v. Gen. Motors Corp.*,
    2007 WL 2908564 (N.D. Ga. Sept. 28, 2007) ......................................................................16

*Ruberti v. Ethicon, Inc.*,
  2022 WL 17887527 (M.D. Ala. Dec. 22, 2022) .................................................4

*United States ex rel. Schutte v. SuperValu Inc.*,
  598 U.S. 739 (2023) .................................................................................3, 10

*In re Seroquel Prod. Liability Litig.*,
  601 F. Supp. 2d 1313 (M.D. Fla. Mar. 11, 2009) ..........................................20

*Shaps v. Provident Life & Accident Co.*,
  244 F.3d 876 (11th Cir. 2001) .....................................................................12

*Sperberg v. Goodyear Tire & Rubber Co.*,
  519 F.2d 708 (6th Cir. 1975) .......................................................................18

*United States ex rel. Stebbins v. Vascular Access Centers, LLC*,
  2024 WL 3069902 (W.D. Pa. June 20, 2024) ..................................................5

*Thomas v. Garcia*,
  2013 WL 3773861 (E.D. Cal. July 17, 2013) ................................................13

*United States v. Hawley*,
  562 F. Supp. 2d 1017 (N.D. Iowa June 23, 2008) .........................................20

*United States v. Hibbs*,
  568 F.2d 347 (3d Cir. 1977)....................................................................10, 17

*United States v. Khan*,
  2019 WL 764026 (M.D. Fla. Feb. 21, 2019) .................................................18

*United States v. Kindred Healthcare*,
  469 F. Supp. 3d 431 (E.D. Pa. June 29, 2020).................................................5

*United States v. Myles*,
  314 F. App'x 164 (11th Cir. 2008) ...............................................................12

*United States v. Pacquette*,
  557 F. App'x 933 (11th Cir. 2014) .................................................................6

*United States v. Sci. Applications Int'l Corp.*,
  626 F.3d 1257 (D.C. Cir. 2010) .....................................................................3

*Marsteller ex rel. United States v. Tilton*,
  880 F.3d 1302 (11th Cir. 2018) .....................................................................8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016).................................................................................6, 15

*Urquilla-Diaz v. Kaplan Univ.*,
   780 F.3d 1039 (11th Cir. 2015) ...................................................................3

*Wilson as Trustee of Peter J. Rodrigues Irrevocable Life Ins. Trust v. Jackson*
   *Nat. Life Ins. Co.*,
   2018 WL 4956738 (S.D. Fla. Feb. 2, 2018) .......................................19

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
   746 F.3d 1008 (11th Cir. 2014) ...................................................................8

*Young v. United States ex rel. Vuitton et Fils S.A.*,
   481 U.S. 787 (1987).........................................................................................11

**Statutes**

42 U.S.C. § 1395w-4(q)(6)(F)(i)-(ii) ...............................................................14

**Rules**

Fed. R. Civ. P. 26............................................................................................17, 18

Fed. R. Evid. 404 .............................................................................................3, 20

Fed. R. Evid. 602 ...............................................................................................9

**Other Authorities**

CMS Servs Quality Payment Program, 2025 Special Statuses,
   https://qpp.cms.gov/mips/special-statuses (last visited Aug. 15, 2025) ...................................14

Relators' Omnibus Motions *in Limine* (ECF No. 386) is the next in a line of examples that illustrate Relators' plan for trial:  prevent eClinicalWorks, LLC ("eCW") from mounting its legitimate defenses, while orchestrating sideshows meant to "trash" eCW, in direct contravention of the Court's order.  (*See* 6/4/25 Hr'g Tr. 25:19-25, ECF No. 334.)  Taken collectively, Relators' motions would bar eCW from presenting the jury with (1) basic information about itself, including the fact that eCW consists of individual people (whose actions Relators have put at issue); (2) evidence that eCW lacked the requisite scienter; (3) evidence that the government has repeatedly declined to take action against eCW because the alleged nonconformities are not material; (4) testimony from expert witness Kyle Meadors that the Court has already deemed to be proper expert testimony; (5) evidence that the government would have paid the MIPS incentives at issue regardless of any alleged nonconformities, which also goes to the required element of materiality; (6) evidence that the Relators are not disinterested experts, but rather that they have a significant financial stake in the case; (7) documents that the Rules of Civil Procedure permit eCW to use; and (8) evidence that eCW has a genuine commitment to compliance, which goes to scienter.

Even while seeking to prevent eCW from presenting such evidence, Relators seek to argue—***unrebutted***—that (9) the Department of Justice ("DOJ") has taken Relators' side; (10) eCW is motivated to avoid a judgment because of its financial condition; (11) Relators, but not eCW, have been successful in the case thus far; and (12) eCW only improved its security and certification practices because the Corporate Integrity Agreement ("CIA") forced it to do so.

The Court should reject Relators' bid at ensuring a one-sided trial that is focused on only sideshows, rather than the merits of the case.  *See Chavis v. Clayton Cnty. Sch. Dist.*, 147 F. App'x 865, 868 (11th Cir. 2005) (per curiam) (affirming district court's exclusion of evidence that would

have "allowed th[e] trial to become a set of mini-trials" and "these mini-trials could have confused the jurors into thinking that the mini-trials were the main case"); *Dagostino v. Fed. Express Corp.*, 2023 WL 5498862, at *1 (M.D. Fla. Aug. 25, 2023) ("Nor may a party use a MIL to sterilize the other party's presentation of the case." (quoting *Harris v. Wingo*, 2021 WL 5028201, at *1 (M.D. Fla. Oct. 29, 2021))); *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense." (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932))).[1]

At a minimum, none of the evidence that Relators challenge is so "clearly inadmissible" that it justifies a departure from the normal rule that "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Golding v. Wal-Mart Stores East, LP*, 2021 WL 5035030, at *1 (M.D. Ga. May 5, 2021) (internal citation and quotation omitted) (collecting cases).

## I. EVIDENCE ABOUT eCW's BACKGROUND AND GOOD FAITH IS ADMISSIBLE AND IS NOT CHARACTER EVIDENCE.

Relators seek to exclude all evidence that could depict eCW as a "good" corporate entity, including its status as a family-owned company.  (Rels.' Mot. at 2–4, ECF No. 386.)  But not all evidence along these lines is irrelevant and inadmissible, as the jury is entitled to hear basic background about both parties.  Moreover, evidence going to eCW's good faith is further admissible for the non-character purpose of negating one of the elements Relators must prove: scienter.

***First***, courts regularly admit background evidence about a corporate defendant's business,

---

[1] (*See also* 6/4/25 Hr'g Tr. 6:21–7:10, ECF No. 334 ("[T]he scope of relevant evidence is precisely that—whether the software met the relevant certification criteria. . . . The question, as some of these experts propose to opine on, of whether eCW is an industry leader or just the opposite or whether industry standards not found in the certification criteria were met is just not relevant to the issue at hand.").)

recognizing that "[t]he jury [is] entitled to know the identity and nature of the parties appearing before it." *Carrel* v. *Nat'l Cord & Braid Corp.*, 852 N.E.2d 100, 112–13 (Mass. 2006) (affirming trial court's ruling that evidence about defendant company's date of founding, number of employees, status as a family business, number of customers, and scope of operations was admissible background information); *see also Compton v. Bach*, 374 F. Supp. 3d 1296, 1301 (N.D. Ga. 2019) ("A party . . . is permitted to present basic information about himself to the jury."); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) (admitting evidence "regarding the nature of Defendants' business" as "relevant to the jury's understanding of the issues in the case"). The Court should do the same here rather than deprive the jury of proper context merely because that context might reflect well on eCW.

*Second*, Relators are incorrect that the "sole purpose" of evidence about eCW's intentions at this forthcoming trial would be to establish an improper propensity inference about eCW's character not to violate the False Claims Act ("FCA"). (Rels.' Mot. at 3, ECF No. 386.) Rather, it is black-letter law that good faith is central to the scienter analysis, and not impermissible character evidence under Rule 404. *See United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 (11th Cir. 2015) (holding that the FCA does not "punish[] honest mistakes or incorrect claims submitted through mere negligence" (quoting *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010))); *United States ex rel. GNGH2 Inc. v. XLD Century LLC*, 2024 WL 3625147, at *3 (C.D. Cal. July 31, 2024) ("A party relying on a good faith interpretation of the relevant language is not liable under the FCA because her good faith 'forecloses the possibility that the scienter requirement is met'" (quoting *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999))); *see also Johnson v. C.R. Bard, Inc.*, 2021 WL 2070448, at *8 (W.D. Wis. May 24,

2021) (admitting evidence about "the nature and usefulness of [the defendant's] products, as well as the conscientiousness of its employees, particularly to rebut plaintiff's evidence that defendants knowingly disregarded patient safety"); *Bard IVC*, 2018 WL 934795, at *2 (admitting evidence and holding that defendants "must be permitted to rebut Plaintiffs' themes, stated repeatedly throughout briefing on the expert motions, that Defendants knowingly disregarded patient safety, used patients for experimentation, and placed profits over safety").[2]

**Finally**, because eCW's intention in introducing such evidence is not to prove its good character, but rather to negate Relators' scienter arguments, any purported evidence Relators have regarding eCW's supposed bad character remains irrelevant and inadmissible. *See In re DePuy Orthopaedics, Inc. v. Pinnacle Hip Implant Prod. Liab. Litig.,* 888 F.3d 753, 784-86 (5th Cir. 2018) (holding that "testimony on [defendant's] corporate culture and marketing practices" did not open the door to evidence of prior bad acts offered to prove bad character).

## II.    THE GOVERNMENT'S DECISION NOT TO INTERVENE IS ADMISSIBLE.

Relators seek exclusion of the DOJ's decision not to intervene in this case. (Rels.' Mot. at

---

[2] (*See also* eCW's Trial Br. ("eTB") at 4–5, ECF No. 389); (eCW's Resp. to Rels.' Trial Brief ("Resp. to RTB") at 6–8, ECF No. 427.). Relators proffer no reason to believe that the admission of routine, background evidence and evidence to negate the required element of scienter would open the floodgates to a minitrial about the moral status of eCW as Relators suggest. (Rels.' Mot. at 2–4, ECF No. 386.) And the cases on which Relators rely largely arise in non-FCA cases, and in the FCA cases they cite, the relevance of background evidence to scienter was not addressed. *See Ruberti v. Ethicon, Inc.*, 2022 WL 17887527, at *7 (M.D. Ala. Dec. 22, 2022) (rejecting argument that evidence about "community employment, charitable donations, and medical contributions" was admissible as background in non-FCA case); *Kaiser v. Monroe Clinic, Inc.*, 2020 WL 4364179, at *9 (W.D. Wis. July 30, 2020) (excluding evidence about professional reputation but including testimony about "medical knowledge, training, experience, and professional acumen" as background information in non-FCA case); *Howell v. Dorn*, 2010 WL 8815884, at *1 (E.D. Va. Apr. 15, 2010) (excluding evidence about defendant's reputation, including honors and awards, in non-FCA case); *Bartlett v. Mut. Pharm. Co.*, 2010 WL 3156555, at *4 (D.N.H. July 26, 2010) (in products liability case, admitting relevant background information and not addressing whether good-acts evidence was relevant to scienter); *Niver v. Travelers Indem. Co. of Ill.*, 433 F. Supp. 2d 968, 994–95 (N.D. Iowa 2006) (granting unopposed motion to exclude irrelevant evidence of "charitable" acts in non-FCA case); *In re Gregg*, 2013 WL 3989061, at *6 (Bankr. M.D. Ga. July 2, 2013) (excluding evidence of character in bankruptcy case); *United States ex rel. Kiro v. Jiaherb, Inc.*, 2019 WL 2869186, at *4 (C.D. Cal. July 3, 2019) (holding only that evidence would not be admissible to show character for truthfulness); *United States ex rel. Penelow v. Janssen Products, L.P.*, No. 12-7758-ZNQ-JBD, ECF No. 330, at 20–21 (D.N.J. June 28, 2023) ("*Penelow* Order") (granting unopposed motion). (All cited in Rels.' Mot. at 2–3, ECF No. 386.)

4-5, ECF No. 386.)  The Court should reject this argument.  At the threshold, the DOJ's decision

not to intervene is relevant because it supports an inference that the DOJ does not believe in the

merits of the case.  Although other courts have disagreed with this conclusion, these decisions defy

basic logic and should not be followed.  A jury can decide for itself whether DOJ's nonintervention

likely stemmed from immateriality of the alleged wrongdoing or some other reason.  Moreover,

other courts have found, in certain circumstances, that nonintervention can be relevant to

materiality, particularly when, as here, it is coupled with evidence regarding the government's

action or inaction.[3]

And regardless of whether nonintervention is ***generally*** admissible or relevant, it certainly

becomes so when Relators put the DOJ's other actions at issue, as Relators intend to do here.  Over

eCW's objections, Relators plan to present the DOJ's 2018 letter, which was sent to eCW after

this suit was filed and discusses Relators' allegations.  (*See* ECW_GA000613791, ECF No. 218-

110.)  Although eCW maintains this letter is inadmissible (eCW's MIL No. 8, ECF No. 402),

if it comes in, it "opens the door" to allow eCW to respond with other evidence of DOJ action (or,

inaction): namely, eCW must be able to respond that the government decided not to intervene in

this suit.  If eCW were deprived of its chance to provide context regarding government decision-

making here, Relators would leave the jury with the misimpression that DOJ has affirmatively

sided with them, an inference that is both unfairly prejudicial and factually incorrect.  *Penelow*

Order at 18-19 (holding that government's decision not to intervene was admissible if "Relators

present evidence or argument at trial that 'opens the door' as to the Government's involvement or

---

[3] *See United States ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 490 (3d Cir. 2017); *Polansky v. Exec. Health Res., Inc.*, 422 F. Supp. 3d 916, 938–39 (E.D. Pa. 2019), *aff'd in part, vacated in part on other grounds*, 17 F.4th 376 (3d Cir. 2021), *aff'd on other grounds sub nom. United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023); *United States v. Kindred Healthcare*, 469 F. Supp. 3d 431, 450 (E.D. Pa. 2020); *United States ex rel. Stebbins v. Vascular Access Ctrs., LLC*, 2024 WL 3069902, at *9–10 (W.D. Pa. June 20, 2024); *United States ex rel. Cressman v. Solid Waste Servs., Inc.*, 2018 WL 1693349, at *6 (E.D. Pa. Apr. 6, 2018).

lack thereof"); *see also Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004) ("[E]vidence which normally would be inadmissible is indeed admissible if the opposing party opens the door . . . ." (citation omitted)).

The rule of completeness also supports this conclusion. Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Here, the DOJ's decision not to intervene is the clear sequel of its initial communication with eCW about the action, and because of the risk of prejudice to the jury in admitting only the DOJ's initial statement, the two must be considered together to avoid an unduly prejudicial inference. *See United States v. Pacquette*, 557 F. App'x 933, 937 (11th Cir. 2014) (admitting defendant's later statement repudiating his earlier statement as necessary context for the earlier statement). Accordingly, Relators' motion should be denied.

## III. EVIDENCE THAT THE GOVERNMENT DID NOT TAKE SPECIFIC ENFORCEMENT ACTIONS AGAINST eCW AND EVIDENCE FROM FACT WITNESSEES ABOUT WHY IT DID NOT DO SO IS ADMISSIBLE.

Relators next seek to exclude all evidence of government inaction on the ground that it would be purely "speculative" to infer anything from such inaction. (Rels.' Mot. at 5–7, ECF No. 386.) This argument is contrary to U.S. Supreme Court precedent, which recognizes that the government's decision not to take enforcement action against a defendant in the FCA context is "strong evidence" in the materiality analysis. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194–95 (2016) ("[I]f the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material"); *see also United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1347 (11th Cir. 2021)

(holding that the materiality analysis balances three factors including "to the extent the government had actual knowledge of the misrepresentations, the effect on the government's behavior").

Government inaction is also relevant to scienter, causation and falsity. *See, e.g.*, *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 2025 WL 863466, at *5 (N.D. Ala. Mar. 19, 2025), *appeal docketed*, No. 25-11147 (11th Cir. Apr. 9, 2025) ("[B]ecause scienter is a necessary element of [a] false certification claim, government knowledge of specific problems with a claim before the claim is submitted can wipe out the FCA's required scienter element, and therefore the entire false certification claim." (citations and internal quotations omitted)); (eTB at 6–8, ECF No. 389 (citing, *inter alia*, *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016))). Indeed, the Court has determined that witnesses can testify to the available government enforcement mechanisms, how they work, and whether the government took action against eCW: "Now, if all you're going to do is put [the witness] on the stand to say what the enforcement mechanisms are, then that's fine . . . it's unavoidable that we are going to be talking about what the government did or didn't do." (6/4/25 Hr'g. Tr. 76:1–3, 78:19–21.)[4] The jury can then choose to draw inferences about the government's underlying motivations regarding their actions and not finding a nonconformity, and eCW can argue for those inferences at closing.[5]

---

[4] The Court has also suggested that ONC, CMS, and OIG witnesses should be able to testify based on their firsthand knowledge as to why the government did not take action against eCW. *See id.* at 75:22–24, 79:5–7 ("[G]et a witness from OIG to come testify instead of an expert to speculate about what happened . . . That's a matter of fact that is subject to proof by evidence of those facts."). In their Trial Brief, however, Relators argue that this relevant evidence should not come in either because it is protected by the deliberative process privilege. (*See* Rels.' Trial Br. ("RTB") at 12, ECF No. 387.) Relators cannot have it both ways, and they are incorrect about the scope of the deliberative process privilege in any event. (*See* Resp. to RTB at 10–13, ECF No. 427.) Again, Relators attempt gamesmanship meant to block eCW's legitimate defenses.

[5] To the extent Relators' invocation of DOJ's statement of interest in this case is an argument that the statement should be admissible at trial (*see* Rels.' Mot. at 6, ECF No. 386), that argument should be rejected. The statement is neither admissible nor an expression of the government's view of the appropriate resolution of materiality by a jury in this case. Rather, it is a work of legal advocacy that conveys the DOJ's views on the proper interpretation of the FCA and its materiality requirement. (*See* DOJ Statement of Int. at 1-2, ECF No. 292 (stating its position on the constitutionality of the *qui tam* provisions of the FCA, the materiality of fraudulent conduct in order to obtain certification, and whether the government suffers damages even when it would have paid as much or more to other parties had the fraud not

*(cont'd)*

Relators' cited cases are inapposite: two are not FCA cases and lack any analogous materiality requirement, and none address government decision-making processes. *See United States ex rel. Lawson v. Aegis Therapies*, 2015 WL 1541491, at *8 (S.D. Ga. Mar. 31, 2015) (holding that expert testimony applied the wrong regulatory standard); *Highland Cap. Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 462 (S.D.N.Y. 2005) (breach of contract/tortious interference); *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1015 (11th Cir. 2014) (restrictive covenants). Relators also briefly cite *Marsteller ex rel. United States v. Tilton*, 880 F.3d 1302 (11th Cir. 2018), for the proposition that evidence about the government's decision-making is not relevant to the causation prong because Relators need only show that (1) eCW's allegedly false attestations were necessary to the government's certification decision and (2) to receive MIPS payments, customers had to represent that they were using certified software. (Rels.' Mot. at 6–7, ECF No. 386.) *Marsteller* is not on point. It evaluated the sufficiency of fraud-in-the-inducement allegations, not the admissibility of evidence about the government's decision making on causation or materiality. If anything, *Marsteller*'s analysis centers on exactly what Relators seek to exclude: the government's reasoning. *See Marsteller,* 880 F.3d at 1314–15. (*See also* eTB at 7–8, ECF No. 389.) Accordingly, the motion should be denied.

## IV.    WITNESSES, INCLUDING MEADORS, CAN TESTIFY BASED ON THEIR PERSONAL EXPERIENCE WITH DRUMMOND AND THE GOVERNMENT.

Relators next assert that the Court should bar nongovernment witnesses from testifying about their understanding of the position of the government or Drummond on any matter. (Rels.' Mot. at 7-8, ECF No. 386.) But such testimony is not inadmissible or hearsay, and certainly not

---

occurred, but "tak[ing] no position on the other arguments raised by Defendant in its Motion for Summary Judgment"); *see also United States ex rel. Krahling v. Merck & Co., Inc.*, 2023 WL 8367939, at *14 (E.D. Pa. July 27, 2023) (rejecting argument that DOJ statements of interest in an FCA case are relevant to materiality as opposed to indicating "simply the DOJ's continuing advocacy in the interpretation of a statute which generates significant recovery for the Government").

as a categorical matter capable of resolution before trial. *See, e.g.*, *Golding,* 2021 WL 5035030, at *1 (holding that generally "admissibility questions should be ruled upon as they arise at trial") (internal citations and quotations omitted). Relators refer to this Court's ruling pertaining to expert testimony not based on personal knowledge about the government's state of mind (*see* 6/4/25 Hr'g. Tr. 79:5–7) ("[W]hat they think the government was thinking or not thinking. Or what they think the government thought was important. That's a matter of fact that is subject to proof by evidence of those facts. If it can be obtained.")), but that ruling does not bar witnesses from testifying about matters squarely within their personal knowledge, *see* Fed. R. Evid. 602. The Court has also determined that expert witnesses can testify based on their personal experience in the certification process Relators have put at issue, including Kyle Meadors's experience at Drummond: "So necessarily, [Meadors's] Drummond experience is part of the basis for his testimony . . . his background is on that side of the process, and that gives him insight into the process." (6/4/25 Hr'g. Tr. 32:14-19.)[6] And finally, the subjective beliefs of eCW witnesses regarding the government's position on particular matters (e.g., the meaning of a certification requirement) is obviously relevant to scienter. Thus, the Court should deny this motion.

## V.    EVIDENCE OF NO BREACH OF eCW'S SOFTWARE IS ADMISSIBLE.

Relators are wrong that evidence that eCW's software has never been breached is irrelevant and could only suggest to the jury that Relators must prove harm to patients as a result of the alleged nonconformities. (*See* Rels.' Mot. at 8-9, ECF No. 386.) This motion should be denied.

*First*, evidence that eCW's software has never been breached is squarely relevant to scienter, bolstering the reasonableness of eCW's belief that its software had the functionality

---

[6] Relators' argument appears to be an effort to get a second bite at the apple at excluding Kyle Meadors, which the Court already denied. (6/4/25 Hr'g Tr. 32:8-33:5.). Indeed, Relators cite directly to their *Daubert* motion to exclude Mr. Meadors in support of this argument (Rels.' Mot. at 8, ECF No. 386), apparently hoping to raise it—improperly—for the Court's reconsideration. That attempt is inappropriate and untimely.

needed to be compliant with the at-issue criteria.  *See, e.g.*, *SuperValu*, 598 U.S. at 749-52; *GNGH2*, 2024 WL 3625147, at *3.  Showing no breach also undermines materiality, as the jury may conclude that if the actual risk of breach was low, any supposed nonconformities may be less (or not) material to the government.  *See United States ex rel. Bonzani v. United Techs. Corp.*, 662 F. Supp. 3d 217, 232–33 (D. Conn. 2023) (holding that "mere speculation about how alleged violations 'may' or 'could' cause negative consequences is not enough to establish substantiality," a factor in materiality analysis (internal citations and quotations omitted); *United States ex rel. Holland v. DaVita, Inc.*, 2021 WL 4948076, at *4 (M.D. Fla. Aug. 10, 2021) (holding that alleged violations did not go to the essence of the bargain where "the Government . . . has shown it will live with at least some risk").  Moreover, the Court has acknowledged that it is satisfied that "to the extent that there's evidence that suggests that level of risk was—I'll say a part of, not material to, but a part of the government's assessment of what was going on here, that's necessarily relevant evidence."[7]  (6/4/25 Hr'g. Tr. 63:21-25.)

   ***Second***, the level of actual risk is relevant as part of the jury's value assessment of eCW's software, and therefore damages mitigation.  *See, e.g.*, *United States v. Hibbs*, 568 F.2d 347, 351 (3d Cir. 1977) ("decisional law sets the damages as the difference in cost between that contracted for and that received"); (*see also* eTB, at 14–15, ECF No. 389).  For both reasons, the motion should be denied.

---

[7] Relators also quote as support the Court's recent statement that "whether there's been hacks or not hacks, that's not relevant to the issue whether attestations made by eCW to get its software [certified]" and "whether the software met the relevant certification criteria."  (Rels.' Mot. at 8–9, ECF No. 386 (quoting 6/4/25 Hr'g. Tr. 63:21-25).)  Relators take this statement out of context, framing it as a ruling on this issue rather than what it was: a statement that eCW's status as an industry leader does not relate to ***one*** issue for trial.  (*See* 6/4/25 Hr'g Tr. 6:21-7:1) ("[T]he scope of relevant evidence is precisely that—whether the software met the relevant certification criteria.  Whether or not eCW is an industry leader or a pariah or whether there's been hacks or not hacks, that's not relevant to the issue whether attestations made by eCW to get its software [certified] . . . The question, as some of these experts propose to opine on, of whether eCW is an industry leader or just the opposite or whether industry standards not found in the certification criteria were met is just not relevant to the issue at hand.").)

## VI.    EVIDENCE THAT PEOPLE WORK AT eCW IS ADMISSIBLE.

Apparently seeking to frame this case as a David-vs.-Goliath story that pits the individual Relators against a faceless company, Relators seek to preclude eCW's counsel from stating that they represent the people who make up eCW.  (Rels.' Mot. at 9–10, ECF No. 386.)  This argument ignores the obvious reality that eCW is indeed made up of individual people and fails to cite a single relevant case.  The Court should reject this argument.  Practically speaking, corporations are made up of people, and neither party will be able to introduce evidence about eCW's actions— the subject of Relators' allegations—without talking about individual employees.[8]  *See, e.g.*, *Beving* v. *Union Pac. R.R. Co.*, 2020 WL 6051598, at *7 (S.D. Iowa Sept. 8, 2020) (denying motion *in limine* seeking to prevent defendant from asserting that it represented the "men and women" or "employees" of the company, because "[d]efense counsel obviously represents Defendant, which of course includes some of Defendant's employees," and "Counsel is entitled to refer to their client"); *Carrel*, 852 N.E.2d at 112-13 (affirming trial court's ruling that "the jurors need to know who . . . the legal people before them [are]" (alterations in original)).  Moreover, since Relators' allegations are all ultimately about the acts of individual employees, eCW must be able to respond.  *See Conroy*, 375 F.3d at 1232 (holding evidence becomes admissible when party opens the door).  It would be both unduly and unfairly prejudicial to eCW—and confusing to the jury—to require eCW to present itself as having no relationship to its own employees.

## VII.   REBUTTAL OF RELATORS' ARGUMENTS ABOUT eCW'S FINANCIAL CONDITION AND CORRESPONDING MOTIVATIONS IS ADMISSIBLE.

Relators seek to exclude any discussion of the financial impact an adverse verdict might have on eCW.  (Rels.' Mot. at 10–11, ECF No. 386.)  eCW had no intention of addressing such

---

[8] Relators' cited case, *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), is inapposite: *Young* establishes only the uncontroversial proposition that a lawyer representing a corporation or similar entity represents that entity, and not any individual connected with the entity, personally.  *See id.* at 805 n. 16.

matters, but Relators refused to agree not to inject evidence concerning eCW's financial condition into the case, in an obvious ploy to prejudice the jury against an out-of-state company based on its financial assets. Such evidence has no place in this FCA trial, where (as Relators' own motion points out) a defendant's ability to pay has no relevance to liability or damages. But if Relators are permitted to address these issues, eCW must be able to respond and offer its own evidence about the implications of a judgment and eCW's motivations in seeking to avoid one. *See Shaps v. Provident Life & Accident Ins. Co.*, 244 F.3d 876, 886 (11th Cir. 2001) (holding that, because a plaintiff "initiated discussion of her financial condition," the defendant could elicit testimony about that financial condition); *Portis v. State Farm and Cas. Co.*, 2017 WL 11629104, at \*3 (N.D. Ga. July 31, 2017) (holding that if one party "opens the door to the issue of" the other's "financial condition," that other party "may raise this issue at trial"). Accordingly, this motion should be denied unless Relators agree to refrain from putting financial condition at issue.[9]

## VIII.    EVIDENCE ABOUT THE EXISTENCE OF THE PRIOR HIPAA CLAIM IS ADMISSIBLE IF RELATORS PRESENT OTHER IRRELEVANT PLEADINGS.

In another example of Relators trying to have it both ways, they seek exclusion of the failure of their HIPAA claim at summary judgment despite arguing for the admissibility of other motions with dispositions they like—such as eCW's motion to transfer and motion to dismiss. (*Compare* Rels.' Mot. at 11, ECF No. 386, *with* RTB at 1–2.) As argued in eCW's MIL No. 11, pleadings and prior motion practice are typically inadmissible.[10] *See United States v. Myles*, 314 F. App'x 164, 166 (11th Cir. 2008) (recognizing that defendant's answer to a civil complaint was

---

[9] Relators assert that eCW intends to refer to trebling "to illustrate . . . the 'deterrent' effect of those damages." (Rels.' Mot. at 10, ECF No. 386.) That is not an accurate statement of eCW's position. Trebling should be admissible because it goes to Relators' bias and motivations. (*See infra* § X.) It is separately admissible on the issue of deterrence if Relators open the door to the issue by arguing that companies have no incentive to comply with the FCA.

[10] The exception is when those pleadings contain party admissions. *See Est. of Fornadley v. Safeco Ins. Co. of Am.*, 2017 WL 10379310, at \*5 (C.D. Cal. Dec. 21, 2017) ("Defendant then correctly argues that admissions in an opposing party's pleadings, even if unverified, constitute admissible evidence").

not admissible under the hearsay rules); *Thomas v. Garcia*, 2013 WL 3773861, at *4-5 (E.D. Cal. July 17, 2013) (holding that official court pleadings and docket sheets were inadmissible; (*see also* Resp. to RTB at 2–3, ECF No. 427) (statements by counsel are inadmissible).  But that rule must apply in both directions.  If Relators are permitted to put in testimony about earlier denials of eCW's motion to transfer and motion to dismiss, which they have designated to play at trial (*see* eCW MIL No. 11, Ex. A., 8/12/25 Navani Dep. Tr. 19:15-23, ECF No. 416-1; Rel.'s Am. Consolidated Dep. Desig. at 32, ECF No. 436), then eCW must be able to address the failure of Relators' overreaching HIPAA claim.[11]  The alternative would be to leave the jury with the mistaken and prejudicial impression that only Relators, not eCW, have been successful in the litigation thus far.  *See Fowler v. State Farm Fire & Cas. Co.*, 2008 WL 3050417, at *5 (S.D. Miss. July 25, 2008) (holding that admitting evidence about party's prior unsuccessful motion to transfer would present a danger of unfair prejudice).

Relators' motion should separately be denied because its scope is ambiguous.  They seek exclusion of "theories . . . that are not presently before the jury" (Rels.' Mot. at 11, ECF No. 386), a category that lacks clarity regarding exactly which evidence they want to exclude (to the extent it covers more than their HIPAA claims).  *See Leonard v. Stemtech Health Sci, Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (denying MIL where "the Court lacks the necessary specificity with respect to the questioned evidence to determine that it is 'clearly admissible on all potential grounds'").

---

[11] Of course, discussions of eCW's policies and procedures may involve passing mentions of HIPAA as a concept, but since there would be no need to mention what Relators describe as "earlier versions of the complaint or any claims, counts, or theories" to present this evidence (Rels.' Mot. at 11, ECF No. 386), there would be no question of prejudice to the jury.

IX.    **EVIDENCE ABOUT WHETHER ALLEGED NONCONFORMITIES WOULD HAVE BROUGHT AN END TO MIPS PAYMENTS IS ADMISSIBLE.**

Relators seek to exclude evidence about budget-neutrality and the so-called "counter-factual" scenario (i.e., what eCW customers would have done in a but-for world where eCW's software was not certified).  (Rels.' Mot. at 12–14, ECF No. 386.)  Notwithstanding Relators' attempt to invoke this Court's prior rulings, both categories of evidence are relevant to damages and materiality.

***First***, as the Court has noted, "if the government had discovered the fraud and pulled Version 11's CEHRT certification, some providers still might have been able to receive MIPS incentives," which is "evidence to mitigate Relators' claimed damages."  (*See* SJ Order at 51, ECF No. 345; *see also* 6/4/25 Hr'g. Tr. 82:18-19 ("If there's an admissible argument in mitigation that eCW can make around [providers' available hardship exceptions], that's fine.").)  To determine damages (if any), the jury will need to decide whether the government has been financially harmed, and if so, in what amount.  The latter question implicates the government's ***net*** loss (if any).  *See United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 839 (D.C. Cir. 2012) ("[FCA] damages are meant to 'put[] the government in the same position as it would have been if the defendant's claims had not been false.'" (alteration in original) (citation omitted)).

That health care providers can obtain MIPS payments through exceptions and exemptions without using a CEHRT—some of which are automatic—is both highly relevant to that inquiry and not speculative: the jury cannot award damages for payments that the government would have made, whether or not eCW met the criteria.  *See* CMS SERVS QUALITY PAYMENT PROGRAM, 2025 SPECIAL STATUSES, https://qpp.cms.gov/mips/special-statuses (last visited Aug. 15, 2025); *Hutchins v. Wilnetz, Goldman & Spitzer*, 253 F.3d 176, 184 (3d Cir. 2001) ("[S]ubmission of false claims to the [ ] government for approval which do not or would not cause financial loss to the

government are not within the purview of the [FCA].").  Evidence that MIPS was designed to be budget-neutral under 42 U.S.C. § 1395w-4(q)(6)(F)(i)-(ii) is similarly non-speculative,[12] and it is relevant to the question of how much financial loss, if any, that the government has incurred.[13]

  **_Second_**, the question whether any alleged nonconformities would necessarily affect CMS's continued MIPS payments to eCW customers may also be relevant to materiality, as the Court has noted.  (*See generally* 6/4/25 Hr'g Tr. 103:25-104:5 ("[P]erhaps you can adduce evidence from fact witnesses at trial [about budget neutrality] that would bear on . . . the issue of materiality.  That's fine.").)  Budget-neutrality and MIPS exceptions and exemptions all bear on this question because they furnish plausible reasons the government could conclude that suspending payment makes no sense as a means of addressing nonconformities with certification requirements and to deem material only those nonconformities that justify suspension of certification.  The Supreme Court has held that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."  *Escobar*, 579 U.S. at 195.  As such, evidence that CMS would have continued to pay even if it had known of alleged nonconformities is relevant, including evidence about regulatory structure and when payments are typically withheld.  *See DaVita*, 2021 WL 4948076, at *4 (determining that because regulations did not require that every potential violation result in

---

[12] Relators' argument that budget neutrality is a "myth" (Rels.' Mot. at 12, ECF No. 386) is incorrect as applied to this case and is inappropriate for resolution on a motion *in limine*.  eCW can argue that the program was **_designed_** to be budget neutral, *see* 42 U.S.C. § 1395w-4(q)(6)(F)(i)-(ii); (eTB at 12, ECF No. 389), and to the extent Relators disagree, they may explore the point **_at trial_** on cross of eCW witnesses.  The Court need not, and should not, resolve this factual, summary judgment-type argument in the current posture.  *See Golding*, 2021 WL 5035030, at *2 ("The Court will not entertain motions *in limine* brought for inappropriate purposes, like resolving substantive issues, resolving factual disputes . . . or substituting for a motion for summary judgment." (citation omitted)).

[13] As to laying a factual predicate for both concepts, eCW will call a CMS witness who will testify as to whether CMS has ever denied or reduced MIPS payments on the ground that the certified software had a nonconformity with the certification criteria, a security flaw or other but akin to those alleged in this case.

the suspension of services, alleged noncompliance did not go to the essence of the bargain and, therefore, weighed against materiality).  For all these reasons, this motion should be denied.

## X.   EVIDENCE ABOUT TREBLE DAMAGES, STATUTORY PENALTIES, AND ATTORNEYS' FEES IS ADMISSIBLE AS EVIDENCE OF RELATORS' BIAS AS DUAL FACT AND EXPERT WITNESSES.

Relators seek to exclude reference to treble damages, statutory penalties, and attorneys' fees.  (Rels.' Mot. at 14–16, ECF No. 386.)  But all are directly relevant to Relators' financial stake here, a key issue for bias, credibility and motive.  Courts frequently permit cross-examination of Relators about their potential bias, including their financial interest.  *See, e.g.*, *United States ex rel. Jones v. Mass. Gen. Hosp.*, 780 F.3d 479, 495 (1st Cir. 2015) (holding that district court correctly permitted cross-examination of relator regarding his financial interest, since "bias is fertile territory for cross-examination" and to the jury "information as to bias can be of great assistance in making [credibility] determinations" (citation omitted)).  Courts have further held in the FCA context in particular that evidence about treble damages and penalties can be admissible as relevant to a relator's share of the potential recovery.  *See Graves v. Plaza Med. Centers, Corp.*, 2017 WL 3895438, at *2 (S.D. Fla. Sept. 6, 2017) (on a motion *in limine*, holding that defendants could offer evidence on trebling of damages and penalties under the FCA as well as the relator's entitlement to a percentage share of the damages).[14]

At the same time, an expert's precise financial stake in the litigation is a classic target for cross-examination.  *See, e.g.*, *Reynolds v. Gen. Motors Corp.*, 2007 WL 2908564, at *2 (N.D. Ga. Sept. 28, 2007) ("Whether an expert has an ongoing relationship with a party and whether the expert earns a significant amount of income from testifying on behalf of that party is relevant and

---

[14] *Graves* barred reference to attorneys' fees because the Relators themselves would not receive any share of such recovery.  Relators here do not say how fees would be handled.

discoverable information. . . . Such information is certainly relevant to a witness's credibility and may be useful in the cross-examination of an expert witness.") (citations omitted); *Hill v. State Farm Mut. Auto Ins. Co.*, 2015 WL 12843866, at *2 (M.D. Fla. Jan. 20, 2015) (admitting evidence quantifying an expert's financial stake in the litigation). Unusually here, Relators are not only testifying but are testifying as their own experts, so inquiry about the extent of their financial interest in the litigation—which cannot be quantified without reference to treble damages, statutory penalties, and attorneys' fees—is admissible and has heightened relevance given their dual roles. If the evidence is not admitted, the jury could significantly underestimate the Relators' financial stake in the litigation and mis-assess their credibility as experts.

The nature of Relators' expert testimony makes this evidence even more critical. As argued in eCW's trial briefing, evaluating damages requires the jury to determine the value of the software that healthcare providers used to their, and the government's benefit; and subtract from that any damages based on deficiencies in the software. *See Hibbs*, 568 F.2d at 349, 351 (noting that "decisional law sets the damages as the difference in cost between that contracted for and that received"). Since Relators will testify about specific alleged deficiencies in eCW's software, their testimony has a direct relationship to the amount of damages that could be awarded, and therefore, to the amount that they could ultimately collect. (*See* Wheeler & Rodighiero Report, ECF No. 196-2, at 13-16.) Indeed, for each dollar any damages award increases based on Relators' testimony about any given alleged deficiency, Relators would pocket that additional dollar after accounting for treble damages. The jury is entitled to understand that underlying math when assessing Relators' credibility as they attempt to drive up damages at trial.[15]

---

[15] Relators' cited cases are inapposite. In one case, the motion to exclude attorneys' fees was unopposed, and the Court held in any event that the relator could be crossed about potentially prejudicial information as evidence of bias because he intended to testify as his own expert. *See United States ex rel. Kiro v. Jiaherb, Inc.*, 2019 WL 2869186, at *2, *4 (C.D. Cal. July 3, 2019). Otherwise, Relators' cases do not address the issue of relators testifying as experts.

## XI. THE RULES OF CIVIL PROCEDURE PROVIDE FOR THE USE OF DOCUMENTS NOT PRODUCED IN DISCOVERY ON A CASE-BY-CASE BASIS.

Relators broadly seek exclusion of any document eCW "did not produce in discovery." (Rels.' Mot. at 16, ECF No. 386.)  The Court should deny this motion as duplicative (and misrepresentative) of the provisions of Rules 26 and 37, which are adequate to address the issue of unproduced documents should it arise.  Rule 26 establishes the general rule that parties must disclose information about certain evidence they plan to rely on at trial, and Rule 37 provides that a party may use previously unprovided information at trial if the failure to produce that information earlier "was substantially justified or is harmless." *See* Fed. R. Civ. P. 26(a)(3); 37(c)(1). That determination requires a case-by-case analysis, so granting Relators' motion—which seeks a blanket ban on unproduced documents—is improper. *See Holley v. BBS/Mendoza, LLC*, 2024 WL 3856932, at *2 (S.D. Ohio Aug. 19, 2024) (denying motion for an order prohibiting the defendant from using all unproduced documents, since "[o]rders in limine which exclude broad categories of evidence should rarely be employed" (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975))).

As one example of when unproduced documents could be used, courts have held that publicly available documents are "harmless" under Rule 37 and may be used despite not having been produced earlier. *See, e.g.*, *Bolden v. Rushing*, 2025 WL 1827284, at *3 (M.D. Fla. July 1, 2025) (holding that exhibits "printed from the Florida Retirement System web site" were "a matter of public record," so plaintiff's "failure to disclose is harmless"); *United States v. Khan*, 2019 WL 764026, at *20 (M.D. Fla. Feb. 21, 2019) ("Regarding the press release and DHS OIG report, assuming without deciding [defendant] should have disclosed them under Rules 26(a)(1)(A) and 26(e)(1)(A) despite their public availability and government authorship, a Rule 37(c) sanction is unwarranted because failing to disclose them is harmless." (footnote omitted)).  As another

example, Rule 26 explicitly allows parties not to disclose impeachment evidence, produced or otherwise. *See* Fed. R. Civ. P. 26(a)(3) ("[A] party must provide to the other parties and promptly file the following information about the evidence that it may present at trial ***other than solely for impeachment*** . . . " (emphasis added)).[16]

There is no need for an order restating the requirements of Rules 26 and 37. *See Golding*, 2021 WL 5035030, at *2 (determining that motions *in limine* "should be limited to specific pieces of evidence and not serve as reinforcement regarding the various rules governing trial" (quoting *Wilson as Trustee of Peter J. Rodrigues Irrevocable Life Ins. Trust v. Jackson Nat. Life Ins. Co.*, 2018 WL 4956738, at *1 (M.D. Fla. Feb. 2, 2018))); *Holley*, 2024 WL 3856932, at *2 ("'[T]he Court will not grant a general prohibition that merely restates the rules' of evidence or civil procedure." (alteration in original) (quoting *Bank One, N.A. v. Echo Acceptance Corp.*, 2008 WL 1766891, at *2 (S.D. Ohio Apr. 11, 2008))). eCW fully intends to comply with the Rules and expects Relators to do the same.

## XII.    EVIDENCE ABOUT eCW's CURRENT SECURITY AND CERTIFICATION PROCESSES AND PRACTICES AFTER 2021 IS ADMISSIBLE.

Relators seek to exclude any reference to eCW's security efforts after 2021. (Rels.' Mot. at 17–18, ECF No. 386.) But once again, Relators' planned arguments in this case blow open the door they wish to shut. It is explicit that they intend to argue that eCW only ever made improvements in its security and certification standards and practices because the CIA required it. (*See id.* at 17 ("[I]t is undisputed that eCW lacked policies and procedures on security and certification when the SQOO began its work in 2017 and its current processes are the result of the CIA compelling eCW to put some policies in place.").) Evidence that eCW continues to make

---

[16] eCW can also rely on documents cited by its experts. It can rely on documents Relators or third parties produced. The imprecision of Relators' motion underscores its unsuitability to substitute for the Federal Rules.

affirmative efforts to ensure the security of its software even without the compulsion of the CIA tends to negate such unfounded accusations.  eCW should thus be able to show that it has hired even more personnel and expended more resources in service of security and certification practices even though the CIA is no longer in place.

That is all the more so to the extent Relators intend to argue—as eCW anticipates they will—that some alleged issue in eCW's certified EHR software persists "to this day."  (Rels.' Resp. to SJ at 1, ECF No. 266-1.)  Such argument could encourage the jury to unfairly punish alleged conduct that is not the subject of this lawsuit.  *See generally In re Seroquel Prod. Liability Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. Mar. 11, 2009) (noting that evidence introduced without "background and context" can be unduly prejudicial if it could lead the jury to "abdicate its responsibilities" and decide the case on improper grounds); *United States v. Hawley*, 562 F. Supp. 2d 1017, 1047–48 (N.D. Iowa June 23, 2008) (in an FCA case, excluding evidence about supposed fraud not the subject of the allegations since it "would tend to invite a jury to punish [the defendant] for conduct that is not at issue in this case, instead of considering evidence of [alleged] misconduct that is at issue here").  Such evidence and argument should not be permitted in the first place.  But if Relators make such arguments, eCW must be permitted to respond with evidence about eCW's ongoing and genuine commitment to compliance, including evidence demonstrating that eCW's commitment to compliance continued after the CIA ended and was not, in fact, an artifact of the CIA's requirements.  *See Conroy*, 375 F.3d at 1232.  Moreover, because evidence in this context would be offered in rebuttal of Relators' scienter allegations and not as proof of good character, it is admissible under 404(b) for non-character purposes.  *See* Fed. R. Evid. 404(b).

## **CONCLUSION**

For these reasons, as well as those stated more fully in related pre-trial briefing from eCW, the Court should deny Relators' Omnibus Motions *in Limine*.

Dated: October 3, 2025

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 3, 2025, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

*Counsel for Defendant eClinicalWorks, LLC*