**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>      Defendant. | No. 5:18-CV-382<br><br>Honorable Marc T. Treadwell |

<u>**DEFENDANT eCLINICALWORKS, LLC'S MEMORANDUM IN LAW IN OPPOSITION TO RELATORS' AFFIRMATIVE MOTIONS *IN LIMINE***</u>

# TABLE OF CONTENTS

**Page**

I.    CERTAIN EVIDENCE RELATING TO THE *DELANEY* SETTLEMENT, INCLUDING AMOUNT, IS INADMISSIBLE. ............................................................1

II.    EVIDENCE RELATED TO THE DISCOVERY DISPUTES HAS NO BEARING ON CREDIBILITY, KNOWLEDGE, OR INTENT. .................................6

III.    JUDICIAL NOTICE IS INAPPLICABLE TO MIPS DATA EXHIBITS. ...............11

IV.    EVIDENCE RELATING TO QUANDARY PEAK REPORTS AND ASSESSMENTS OF eCW ARE INADMISSIBLE HEARSAY................................13

V.    eCW MAY DESIGNATE MORE THAN ONE CORPORATE REPRESENTATIVE UNDER RULE 615.................................................................16

CONCLUSION .............................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
   2021 WL 848074 (N.D. Fla. Mar. 7, 2021)...................................................................2

*ADT LLC v. Vivint Smart Home, Inc.*,
   2023 WL 3568117 (S.D. Fla. May 19, 2023) ...........................................................2

*Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co.*,
   48 So. 3d 976 (Fla. Dist. Ct. App. 2010)................................................................6

*U.S. ex rel. Bahrani v. ConAgra, Inc.*,
   624 F.3d 1275 (10th Cir. 2010)......................................................................17, 18

*Borden v. Saxon Mortg. Servs., Inc.*,
   2010 WL 3834609 (S.D. Fla. Sept. 28, 2010) ......................................................11

*Candy Craft Creations, LLC v. Gartner*,
   2015 WL 6391202 (S.D. Ga. Oct. 22, 2015) .......................................................7, 8

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   2008 WL 9358563 (N.D. Ga. Apr. 23, 2008)........................................................5

*In re DePuy Orthopedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
   888 F.3d 753 (5th Cir. 2018) ...............................................................................4

*G.M. Brod & Co. v. U.S. Home Corp.*,
   759 F.2d 1526 (11th Cir. 1985)............................................................................3

*Gaddy v. Terex Corp.*,
   2018 WL 11350558 (N.D. Ga. Dec. 18, 2018)......................................................9

*Gambardella v. Tricam Indus., Inc.*,
   2020 WL 5548825 (S.D.N.Y. Sept. 16, 2020)......................................................12

*Gonzalez v. GEICO Gen. Ins. Co.*,
   2016 WL 7157551 (M.D. Fla. Dec. 8, 2016)........................................................8

*Greater Hall Temple Church of God in Christ, Inc. v. S. Mut. Church Ins. Co.*,
   2021 WL 8533939 (S.D. Ga. Apr. 1, 2021) .......................................................10

*Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*,
   2022 WL 16950475 (S.D. Fla. Nov. 15, 2022)......................................................2

*Kaiser v. Monroe Clinic*,
    2020 WL 4364179 (W.D. Wis. July 30, 2020) ........................................................ 19

*United States ex rel. Landis v. Tailwind Sports Corp.*,
    292 F. Supp. 3d 211 (D.D.C. 2017) ...................................................................... 14

*Lopez v. Gibson*,
    2018 WL 11350477 (M.D. Fla. Mar. 12, 2018) ................................................... 18

*Lumpkin v. Bi-Lo, Inc.*,
    117 F.R.D. 451 (M.D. Ga. 1987) ........................................................................ 18

*Mannino v. McKee Auto Ctr., Inc.*,
    753 F. Supp. 3d 723 (S.D. Iowa 2024) .................................................................. 3

*MidAmerica C2L Inc. v. Siemens Energy Inc.*,
    2023 WL 2733512 (11th Cir. Mar. 31, 2023) ..................................................... 12

*Miller ex rel. Miller v. Ford Motor Co.*,
    2004 WL 4054843 (M.D. Fla. July 22, 2004) ....................................................... 5

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    828 F. Supp. 1114 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (2d Cir. 1994) .............. 15

*Perez v. Fla. Pop, LLC*,
    2022 WL 18023483 (S.D. Fla. Sept. 9, 2022) ..................................................... 11

*Siam v. Potter*,
    2006 WL 1530155 (N.D. Cal. June 5, 2006) .................................................. 16, 19

*Smith v. E-backgroundchecks.com, Inc.*,
    2015 WL 11233453 (N.D. Ga. June 4, 2015) ........................................................ 5

*State Farm Mut. Auto. Ins. Co. v. Larocca*,
    2023 WL 6292448 (M.D. Fla. Sept. 21, 2023) ...................................................... 7

*State v. Carmack*,
    694 S.E.2d 224 (S.C. App. Ct. 2010) ................................................................. 19

*Swoope v. CSX Transp., Inc.*,
    2015 WL 12564948 (N.D. Ga. July 29, 2015) ...................................................... 8

*Trahan v. Martin*,
    2005 WL 8244658 (N.D. Ga. June 23, 2005) ....................................................... 2

*U.S. E.E.O.C. v. Suntrust Bank*,
    2014 WL 1364982 (M.D. Fla. Apr. 7, 2014) ........................................................ 9

*U.S. v. Arayatanon*,
    980 F.3d 444 (5th Cir. 2020) ................................................. 17

*United States v. Forehand*,
    943 F. Supp. 2d 1329 (M.D. Ala. 2013) ................................. 17

*United States v. Lepore*,
    2016 WL 4473125 (N.D. Ga. Aug. 25, 2016) ........................ 10

*United States v. Macrina*,
    2022 WL 4594993 (N.D. Ga. Sept. 30, 2022) ....................... 11

*United States v. Mills*,
    138 F.3d 928 (11th Cir. 1998) ................................................. 4

*Wandner v. American Airlines*,
    79 F. Supp. 3d 1285 (S.D. Fla. 2015) ..................................... 8

## Rules

Fed. R. Evid. 201 ..................................................................... 11

Fed. R. Evid. 402 ....................................................................... 3

Fed. R. Evid. 403 ................................................................... 3, 9

Fed. R. Evid. 404 ............................................................. 4, 5, 9

Fed. R. Evid. 406 ....................................................................... 3

Fed. R. Evid. 408 ....................................................................... 5

Fed. R. Evid. 615 ......................................................... 16, 17, 19

Fed. R. Evid. 801 ..................................................................... 14

Fed. R. Evid. 802 ..................................................................... 13

Fed. R. Evid. 803 ......................................................... 14, 15, 16

## Other Authorities

45 C.F.R. § 170.314(b)(3) .......................................................... 2

Relators' affirmative motions *in limine* imagine a one-sided trial presentation that would (1) prejudice the jury against eClinicalWorks, LLC ("eCW") and force it to defend two lawsuits in one by injecting allegations and a settlement amount from a prior False Claims Act ("FCA") case; (2) distract the jury with extensive and misleading sideshows about the various discovery disputes in this case; (3) excuse Relators' putative damages expert, Emily Wolfston, from having to explain how data she did not understand at her deposition supports her opinions; (4) treat hundreds of pages of reports rife with subjective opinions of eCW's oversight organization as proof of the matters they assert; and (5) limit eCW to a single corporate representative in attendance for most of trial.  The Court should reject this fanciful wish-list and deny Relators' motion in full.

## I.    CERTAIN EVIDENCE RELATING TO THE *DELANEY* SETTLEMENT, INCLUDING AMOUNT, IS INADMISSIBLE.

Relators first seek admission of evidence concerning the allegations and settlement amount of the *Delaney* matter.  Their obvious purpose is to suggest to the jury that *Delaney*'s **allegations** were true, and to prime the jury to accept their damages model in this case by emphasizing the nine-digit settlement of that one.  Relators' argument ignores the fact that eCW expressly denied liability and never conceded the government's allegations in *Delaney*.  As such, *Delaney*'s allegations and settlement amount have zero probative value and would cause significant unfair prejudice to eCW and should be excluded for the reasons eCW has set forth in greater detail in its own motion *in limine* on this subject.  (ECF No. 388-1.)  Relators' contrary arguments lack merit.

**First**, Relators suggest that eCW has somehow opened the door to *Delaney* because the parties have referenced the corporate integrity agreement ("CIA") and the Software Quality Oversight Organization ("SQOO") it appointed.  (Rels.' Mot. at 1-2, ECF No. 382.)  That is not correct.  The relevance of the CIA is, as Relators recognize, to demonstrate that the government

had broad oversight and knowledge of eCW's conduct and certification process, including eCW's response to Relators' allegations when those allegations were relayed to it by the Department of Justice, which bears on materiality, among other issues.  (*See id.* at 1.)

Nothing about the fact that the CIA arose from a settlement—or the allegations underlying that settlement—provides relevant context to what the government knew based on information it received during the CIA.  The government's test-cheating allegations in *Delaney* are not probative of any element of relators' claims here—eCW did not admit to the allegations; the government did not prove the allegations; and the allegations in any event related to a different time period (2014), version of eCW's software (version 10), and certification criterion (45 C.F.R. § 170.314(b)(3)), and even an edition of the certification criteria (2014) that are irrelevant to Relators' claims.  Thus, it simply is not the case that eCW would be "hav[ing] it both ways" to address the CIA while barring admission of the *Delaney* allegations or settlement amount.[1]

If Relators were permitted to use the government's allegations in *Delaney* to support their claims, it would certainly lead to a mini-trial (or worse) about whether the allegations were true.  The allegations and the settlement amount would only serve to prejudice the jury.[2]  If the Court believes that the jury needs to have some context for why eCW entered into the CIA, it would be

---

[1]    Relators also assert that eCW intends to rely on *Delaney* in to support a public-disclosure defense (Rels.' Mot. at 1 n.2, ECF No. 382.).  But eCW's own motion *in limine* states that it "**has not yet determined** whether to assert a public disclosure bar defense at trial."  (ECF No. 388-1 at 4 (emphasis added).)

[2]    *See, e.g.*, *Trahan v. Martin*, 2005 WL 8244658, at *2 (N.D. Ga. June 23, 2005) (holding that "evidence as to prior lawsuits, claims, or settlements . . . is highly prejudicial to [d]efendants, and its prejudicial value substantially outweighs any probative value of the evidence"); *ADT LLC v. Vivint Smart Home, Inc.*, 2023 WL 3568117, at *11-12 (S.D. Fla. May 19, 2023) (holding that, if evidence of prior settlements were introduced, it would create "a risk that the primary focus of the trial would deviate from the instant case to a series of mini-trial addressing the validity of the unsubstantiated allegations in other lawsuits and investigations"); *Hyundai Motor Am. Corp. v. EFN W. Palm Motor Sales, LLC*, 2022 WL 16950475, at *2 (S.D. Fla. Nov. 15, 2022) (holding that evidence of prior settlements "would confuse the issues, mislead the jury, cause undue delay, and waste time"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 848074, at *1 (N.D. Fla. Mar. 7, 2021) ("Further, the settlement amount is not probative of Plaintiffs' allegations and any probative value is substantially outweighed by the danger of undue prejudice and jury confusion.").

sufficient for the Court to explain to the jury, either via a stipulation or an instruction, that the CIA was part of a settlement that eCW and the government entered into to resolve a prior dispute.  The jury does not need to be apprised of the specific details of the prior dispute (i.e., that it involved allegations of test cheating) or further details of how that dispute was resolved.

**Second**, Relators' argument that *Delaney* is admissible as "habit" evidence under Rule 406 (Rels.' Mot. at 4, ECF No. 382) misapplies that Rule.  Rule 406 requires proof of a "regular practice" of meeting a particular kind of situation with "a specific type of conduct."  Fed. R. Evid. 406, advisory committee note.  The Eleventh Circuit allows evidence under 406 only where examples offered to establish such pattern of conduct or habit are "'numerous enough to base an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation'."  *G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1533 (11th Cir. 1985) (citation omitted).

Relators cannot point to "numerous" examples.  Indeed, they cannot point even to ***one*** example because *Delaney* was just a set of ***allegations***—which are hearsay and thus not proof of anything.[3]  Moreover, Relators point only to ***one*** suit and settlement to try to establish eCW's "routine practice."  Courts have consistently refused to admit evidence of a single lawsuit as habit. *See, e.g.*, *Mannino v. McKee Auto Ctr., Inc.*, 753 F. Supp. 3d 723, 729 (S.D. Iowa 2024) (excluding evidence or argument regarding prior lawsuits or the litigation history of the parties under Rules 402, 403, and 406, noting that "[t]he fact that other individuals have sued Defendants does not establish anything about Defendants' conduct and therefore cannot constitute evidence of habit or a routine practice").  Rule 406 does not support Relators' requested relief.

---

[3]     Confusingly, Relators concede that they "are not seeking to argue that the *Delaney* settlement proves that eCW engaged in actions alleged in *Delaney*."  (Rels.' Mot. at 5-6, ECF No. 382.)  That concession dooms their Rule 406 argument.

**Third**, Relators invoke Rule 404(b) (Rels.' Mot. at 3-4, ECF No. 382), but their intended use of the *Delaney* settlement to imply that eCW has a propensity to defraud and violate the FCA is precisely what Rule 404(b) forbids. *See, e.g.*, *United States v. Mills*, 138 F.3d 928, 936 (11th Cir. 1998) (rejecting admission of prior falsification to show person is "disposed to lie" and therefore more likely to commit a subsequent falsification because that is "precisely [an inference] that Rule 404(b) prohibits"); *In re DePuy Orthopedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 785–86 (5th Cir. 2018) (holding that admission of a DePuy affiliate's deferred prosecution agreement violated Rule 404(b) and warranted a new trial given its potential to create unfair prejudice to the defendant).

Relators attempt to avoid this conclusion by laundry-listing the exceptions to Rule 404(b) (*see* Rels.' Mot. at 3, ECF No. 382), but they fail to identify which of them applies here, and none does. For example, they emphasize "retaliation, predisposition, and notice," each of which lacks merit. (*Id.* (footnotes omitted).) Retaliation is an odd first choice since Relators have not alleged that any of the conduct claimed here is "retaliation" for anything that happened in connection with *Delaney*. Predisposition makes no sense because, in the abstract, this is merely another way of describing the "propensity" evidence.[4] And Relators' notice argument contradicts its public-disclosure-bar argument. Relators argued—and won—that eCW's bar argument did not entitle it to summary judgment based in part on their assertion that "the *Delaney* allegations are different 'than the ones in this case.'" (ECF No. 266 at 32; *see also* ECF No. 345 at 53-54 (order denying summary judgment on this ground).) As a matter of basic fairness, they cannot now argue that the issues in *Delaney* put eCW on notice of allegations they now assert here. *See New Hampshire v.*

---

[4]     The case on which Relators rely for this point is inapposite because it involved an entrapment defense, which puts predisposition at issue. *See United States v. Cervantes*, 706 F.3d 603, 616 (5th Cir. 2013) ("Since Milan claimed entrapment, it became the government's burden to show predisposition[.]") (cited in Rels.' Mot. at 3-4 n.4, ECF No. 382).

*Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him") (citation omitted).

**Fourth**, Relators argue that introducing the *Delaney* settlement does not run afoul of Rule 408 because Relators seek to present the *Delaney* settlement "to prove notice, knowledge, lack of mistake, and motive," rather than "to argue the *Delaney* settlement proves that eCW engaged in the actions alleged in *Delaney*." (Rels.' Mot. at 4-5, ECF No. 382.) This is a distinction without a difference. Relators intend to rely on the allegations from *Delaney* to argue that eCW had "actual notice" of design flaws. (*Id.* at 2.) That argument fails for the same reason as with Relators' 404(b) argument above. In addition, courts routinely reject the introduction of prior lawsuits as ostensible evidence of notice under Rule 408's prohibition on the admissibility of settlements to prove the validity or amount of disputed claim. *See, e.g.*, *Smith v. E-backgroundchecks.com, Inc.*, 2015 WL 11233453, at *1 (N.D. Ga. June 4, 2015) (excluding evidence of other lawsuits and rejecting plaintiff's argument that evidence of prior lawsuits filed against defendant involving claims for conduct that is substantially similar to that at issue in this case is admissible "to show notice or knowledge of defects in [defendant]'s procedures for preparing [its product] … and specifically permitted under Rule 404(b)(2)" where plaintiff "has not contested [the] contention that 'in no other lawsuit has a court or jury ever found that [defendant] violated the FCRA'"); *Miller ex rel. Miller v. Ford Motor Co.*, 2004 WL 4054843, at *12 (M.D. Fla. July 22, 2004) (excluding evidence of lawsuits, claims and accidents involving other vehicles as irrelevant and unduly prejudicial and rejecting argument that evidence was probative to "notice"); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 9358563, at *3, 6 (N.D. Ga. Apr. 23, 2008)

(rejecting plaintiff's argument that SEC order "memorializing a settlement agreement" demonstrated that defendants were "on notice" because the order was "not evidence of other crimes, wrongs, or acts; it is the legal conclusion of an outside party regarding precisely one of the matters at issue before this Court"); *Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co.*, 48 So. 3d 976, 994 (Fla. Dist. Ct. App. 2010) (finding trial court erroneously ruled that evidence of settlements "can be used to show notice to a party that there was a problem with [defendant's product]" and that "prejudicial evidence of settlements did not allow [defendant] to receive a fair trial").

**Finally**, Relators fail to address the obvious unfair prejudice of what they intend to do: to trumpet the government's allegations and the settlement amount to suggest that *Delaney*'s allegations were proven and thereby bolster their own claims in this case. (*See* Rels.' Mot. at 2, ECF No. 382 (reciting in a bulleted list the government's allegations in *Delaney*); *see also id.* at 3 (arguing that the settlement was not a *de minimis* payment).) Relators' arguments demonstrate exactly why these aspects (as well as the full scope) of the *Delaney* settlement should be excluded: they are either irrelevant or will only serve to prejudice or confuse the jury. Relators should be excluded from introducing irrelevant and unfairly prejudicial details of *Delaney* or making unfairly prejudicial arguments regarding *Delaney*—including the nature of the government's allegations in *Delaney* and that eCW settled *Delaney* for $155 million. For these and all the reasons set forth above, the Court should deny Relators' motion as to the *Delaney* settlement.

## II. EVIDENCE RELATED TO THE DISCOVERY DISPUTES HAS NO BEARING ON CREDIBILITY, KNOWLEDGE, OR INTENT.

Relators next seek leave to parade fact and expert discovery disputes and discovery-related Court orders in this action (the "Discovery Disputes") before the jury. (Rels.' Mot. at 5-8, ECF No. 382.) Relators mischaracterize these events, and the Court should exclude them from offering

6

evidence, testimony, or argument concerning or arising from the Discovery Disputes, including, but not limited to (1) eCW's late discovery and production of certain JIRA tickets, (2) counsel's determination that the Quandary Peak settlement agreement were not responsive to Relators' discovery requests, (3) arguments or testimony seeking to relitigate Relators' attempt to exclude Oren Wortman as an expert witness, or (4) the Court's sanctions ruling.  Injection of these topics would run afoul of settled principles concerning the admissibility of discovery disputes as well as this Court's admonition that "trashing eCW" is not an acceptable mode of proof at trial.  (6/4/25 *Daubert* Hr'g Tr. 25:19-26:1, ECF No. 334.)  Relators argue that the Discovery Disputes should be admitted because they are relevant to eCW's "credibility, its knowledge, and to its intent." (Rels.' Mot. at 6, ECF No. 382.)  But that is not correct.  The only conceivable purpose of injecting these matters into the trial is to attempt to prejudice the jurors against eCW and its counsel, which is improper.

  ***First***, the notion that the Discovery Disputes have any relevance to an issue to be decided in this case is wrong.  Courts have considered and rejected the argument advanced by Relators here that discovery conduct somehow bears on questions of knowledge or intent.  *See, e.g.*, *Candy Craft Creations, LLC v. Gartner*, 2015 WL 6391202, at *7-8 (S.D. Ga. Oct. 22, 2015) (excluding evidence that defendants withheld documents during discovery because "the potential to cause unfair prejudice, confuse the issues, mislead the jury, unduly delay the trial of this case, and waste time substantially outweighs the minimal probative value that evidence of Defendants' withholding of documents" would have as to defendants' prelitigation knowledge and intent); *State Farm Mut. Auto. Ins. Co. v. Larocca*, 2023 WL 6292448, at *3 (M.D. Fla. Sept. 21, 2023) (excluding "any alleged discovery violations" because they "are not relevant to the issues [of

whether Defendants engaged in insurance fraud] [that] the jury will have to decide").[5]  As one court explained, "[t]here could be a number of reasons that Defendants withheld documents other than a guilty mind." *Gartner*, 2015 WL 6391202, at *7.

Relators' alternative framing of the belated production of AppSec tickets as evidence of recklessness fares no better.  The fact that individuals at eCW who were responsible for compiling materials to respond to discovery requests in litigation missed the AppSec tickets in their initial efforts says nothing at all about how JIRA systems that were never designed with litigation in mind function in the normal course of business.  Relators also omit the fact that the AppSec tickets in question resided in an archived library that had not been in active use (and tickets that were active at the time of its decommissioning were transferred over to another repository that ***was*** timely produced).  In short, Relators' assertion that eCW acted recklessly in discovery simply has no bearing on the scienter issues they must prove at trial; these issues are apples and oranges.

The cases Relators cite are readily distinguishable or inapposite because they relate to ***destruction of or failure to provide*** video evidence in response to a specific preservation request. For example, in *Wandner v. American Airline*s, the discovery misconduct at issue related to spoliation of video surveillance evidence of an arrest that the plaintiff previously sought to be preserved.  79 F. Supp. 3d 1285, 1287 (S.D. Fla. 2015).  The Court denied plaintiff's request for spoliation sanctions but declined to preclude him from "presenting the facts (and related, permissible arguments) surrounding his preservation requests."  *Id.* at 1305.  *U.S. E.E.O.C. v. SunTrust Bank* is similarly inapposite because there, the issue was evidence related to SunTrust's video surveillance system, SunTrust's policies relating to the use and preservation of video

---

[5]    *See also, e.g.*, *Swoope v. CSX Transp., Inc.*, 2015 WL 12564948, at *5 (N.D. Ga. July 29, 2015) (discovery disputes or alleged refusals to produce evidence or documents are irrelevant"); *Gonzalez v. GEICO Gen. Ins. Co.*, 2016 WL 7157551, at *4 (M.D. Fla. Dec. 8, 2016) ("contentious discovery disputes in this case are irrelevant.").

surveillance footage, and SunTrust's failure to preserve the video footage at issue. 2014 WL 1364982 (M.D. Fla. Apr. 7, 2014) (citing Rels.' Mot. at 8, ECF No. 382).

Unlike in *Wandner* or *SunTrust Bank*, there is no spoliation or lost evidence here. For example, with respect to the JIRA tickets, eCW voluntarily disclosed the relevant information as soon as it was identified. To the extent Relators were harmed by delay, they have been made whole through the Court's sanction order. In short, despite their current arguments, Relators were able to conduct the discovery they needed. The discovery process was robust, and Relators had ample opportunity to seek and obtain the information necessary to support their claims. Any suggestion that Relators were deprived of discovery is not supported by the record.

**Second**, evidence relating to the Discovery Disputes implicate all of the concerns of prejudice, confusion, misleading the jury and waste of time articulated under Rule 403. (ECF No. 398.) As an initial matter, Relators' primary purpose of raising each of these Discovery Disputes is to convince the jury that eCW is not to be trusted and has a propensity to lie and mislead and therefore must have committed fraud in order to obtain or maintain its certification. (*See* Rels.' Mot. at 7-8, ECF No. 382.) The obvious propensity inference that can be derived from Discovery Disputes is precisely why evidence of such disputes is routinely excluded under Rule 403 and runs afoul of 404(b)(1). *See, e.g., Gaddy v. Terex Corp.*, 2018 WL 11350558, at *4 (N.D. Ga. Dec. 18, 2018) (excluding evidence related to "discovery disputes, including discovery motions, discovery objections, or the timing of document productions" because it "is improper and prejudicial" and barring party from "complain[ing] to the jury about allegedly insufficient responses or productions").

Evidence and argument concerning the Discovery Disputes also would be unfairly prejudicial as they would present only a distorted fragment of the pretrial process without further

context when the jury does not have expertise in pretrial protocol and may be confused or misled. As explained in *United States v. Lepore*, "commentary on discovery matters by either party in the presence of the jury could create the impression that the opposing party is withholding information." 2016 WL 4473125, at *7 (N.D. Ga. Aug. 25, 2016) (internal citation omitted). Accordingly, any alleged deficiency in responses to discovery requests should be resolved by "the Court's discovery dispute resolution process"—not through the presentation of discovery disputes before the jury at a trial. *Greater Hall Temple Church of God in Christ, Inc. v. S. Mut. Church Ins. Co.*, 2021 WL 8533939, at *8 (S.D. Ga. Apr. 1, 2021) (collecting cases). That is what happened here: the Court spent considerable time and resources resolving each of the Discovery Disputes, and Relators should not be given another opportunity to relitigate the dispute. Indeed, the Court already imposed a sanction in connection with the JIRA dispute and ordered eCW to produce otherwise privileged communications as a sanction as to the Quandary Peak settlement dispute. (Min. Order, ECF No. 188 (granting attorney fees in connection with "APPSEC project not being produced"; ordering the production of "documents identified at Tab 60 of eCW's September 5, 2024 submission of documents for in camera review.").) To allow Relators to continue to relitigate the same issue at trial would be duplicative and unfairly prejudicial to eCW. The sanctions ruling should be the final word on this matter.

Moreover, opening the door to evidence and argument concerning the Discovery Disputes would create an enormous side show and needlessly extend the proceedings. It is evident from Relators' motion *in limine* that they are planning detailed presentations on Discovery Disputes. In response, eCW would have to call multiple witnesses to provide background and context from which the jurors can evaluate Relators' claims. eCW's presentation would necessarily involve testimony regarding how the discovery process works and eCW's efforts to comply with it—

among many other issues that Relators' designations raise. These presentations could consume hours and hours of testimony, plainly derailing and distracting the jury from the ultimate questions at trial. *See, e.g.*, *Perez v. Fla. Pop, LLC*, 2022 WL 18023483, at *2 (S.D. Fla. Sept. 9, 2022). The Court should avoid this trial-within-a-trial on Discovery Disputes that have no relevance.

For all of these reasons, courts in this Circuit routinely reject similar attempts to weaponize discovery disputes. *See United States v. Macrina*, 2022 WL 4594993, at *2 (N.D. Ga. Sept. 30, 2022) (holding that all discovery issues will be addressed outside of the jury's presence and affirming the parties' contention that, "such issues 'are irrelevant to the jury's function and may create the impression that one party has suppressed information to seek an unfair tactical advantage at trial'"); *Borden v. Saxon Mortg. Servs., Inc.*, 2010 WL 3834609, at *1-2 (S.D. Fla. Sept. 28, 2010) (excluding the presentation of any testimony or evidence regarding "any discovery disputes between the parties" and rejecting plaintiff's argument that "evidence of discovery disputes is necessary to show the jury the Defendants' efforts to frustrate their pursuit of justice"). This Court should do the same and deny Relators' affirmative motion *in limine* seeking to introduce evidence, testimony, or argument concerning or arising from the Discovery Disputes.

## III.    JUDICIAL NOTICE IS INAPPLICABLE TO MIPS DATA EXHIBITS.

The Court should deny Relators' request that the Court instruct the jury that the Centers for Medicare and Medicaid Services ("CMS") Merit-based Incentive Payment System ("MIPS") program "data on which Ms. Wolfston's analysis relies is true without the need for any further evidentiary foundation" (Rels.' Mot. at 10, ECF No. 382) for several reasons.

***First***, as a threshold matter, Relators attempt to frame their motion as one for judicial notice under Federal Rule of Evidence 201. But that is not what Relators are actually seeking; and eCW does not contest the authenticity or admissibility of MIPS data obtained from the CMS website. Instead, Relators seek to circumvent the foundational requirements for expert testimony by

11

excusing Ms. Wolfston, their damages expert, from explaining and establishing the relevance and reliability of the MIPS data upon which her opinions are based.  That request exceeds the scope of judicial notice.  *See TMF Tr. Ltd. v. M/T Megacore Philomena*, 2018 WL 6266593, at \*2 (C.D. Cal. Oct. 30, 2018), *aff'd*, 792 F. App'x 472 (9th Cir. 2019) ("[Plaintiff] cannot avoid laying a foundation for expert opinion by requesting judicial notice").

The proper role of an expert witness is to provide the necessary foundation for the data and methodologies underlying their opinions.  An expert must give some explanation of the data, studies, or reasoning used.  *MidAmerica C2L Inc. v. Siemens Energy Inc.*, 2023 WL 2733512, at \*9 (11th Cir. Mar. 31, 2023) (noting that "[o]ur caselaw makes clear that, in order for a methodology to be reliable, the expert must be able to adequately explain how the data he relied on led him to his conclusions"); *see also Gambardella v. Tricam Indus., Inc.*, 2020 WL 5548825, at \*3 (S.D.N.Y. Sept. 16, 2020) (the expert "provide[d] no explanation of what data and facts he relied on, or what methods and principles he applied," which is inappropriate).  Here, Ms. Wolfston relies on data from CMS for MIPS data, as well as eCW customer data.  (8/2/24 Wolfston Rep. ¶ 22, ECF No. 218-106.)  Thus, it is incumbent upon Ms. Wolfston to explain what the MIPS data is, how she used these data sources, why they are relevant, and how they support her conclusions.

This is no small matter because the evidence indicates Ms. Wolfston will have a difficult time accomplishing this task.  In her report, Ms. Wolfston only recited how ***Mr. Wheeler*** gathered this data—not how the data support her opinions or conclusions.  (*See id.*(██████████████

███████████████████████████████████████

██████████████████████████); *id.* ¶ 24 ████████

███████████████████████████████████████

12

██████████████████████).)  At her deposition, Ms. Wolfston also could not explain the relevance of the CMS data that she relied on in her report.  (8/30/24 Wolfston Dep. 105:16-20, ECF No. 218-24 (Regarding materials Ms. Wolfston relied on in creating her report, including "reli[ance] upon the CMS website," "Q. And what was the relevance of these materials to your opinion? A. I would have to look over them again. But, again this is just documents considered, not necessarily included, so like in my opinion and report").)  Ms. Wolfston also could not explain the reliability of such data.  (*Id.* 140:18-141:2 ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ (emphasis added).)  Relators' request would improperly relieve Ms. Wolfston of having to testify on these matters, depriving the jury of the opportunity to assess her knowledge on MIPS data and determine whether to credit her testimony.

Moreover, Relators' assertion that eCW is "[f]orcing Relators to call a CMS witness or lay some other evidentiary foundation to validate data that CMS publishes on its websites" (Rels.' Mot. at 10, ECF No. 382) is simply incorrect.  Rather, eCW's position, as articulated above, is that, while the MIPS data may be admissible, it remains Ms. Wolfston's responsibility as an expert to lay the proper foundation for her use of those data and to explain its significance to her opinions.

## IV.    EVIDENCE RELATING TO QUANDARY PEAK REPORTS AND ASSESSMENTS OF eCW ARE INADMISSIBLE HEARSAY.

The Court should deny Relators' motion to admit all SQOO reports wholesale for the truth of the matters they assert.  (*See* Rels.' Mot. at 10-12, ECF No. 382.)  Under Federal Rule of Evidence 802, substantial portions of these documents are inadmissible hearsay.

Under the CIA, the SQOO issued periodic reports and assessments replete with opinions regarding the eCW EHR software (the "SQOO Reports").  (ECF No. 216-2 at 49-50, ¶¶ 233-235 (regarding SQOO's "onsite visits to evaluate eCW's operations" and issuance of "regular reports" and baseline interval assessments); *id*. at 51, ¶ 239 ( "[The SQOO] reports detail recommendations made by the SQOO and provide updates on how eCW has carried out the recommendations, documentary evidence of the compliance and commentary on eCW's efforts"); *id*. at 54-55, ¶¶ 252, 254 (regarding SQOO's opinions on eCW's progress and whether eCW "substantially fulfilled the SQOO's recommendations").)  To be clear, eCW acknowledges that some contents of the SQOO reports may be admissible for notice of what the SQOO believed about an issue—which will have to be addressed on a case-by-case basis.  But the SQOO reports are unquestionably out-of-court statements of a non-party offered "in evidence to prove the truth of the matter asserted" and are not admissible for that purpose unless some exception to the hearsay rule is satisfied.  Fed. R. Evid. 801(c).  Relators argue the SQOO reports are admissible as business records (*see* Rels.' Mot. at 10-12, ECF No. 382), but that is incorrect for multiple reasons.

**First**, the SQOO reports do not satisfy the express requirement of Rule 803(6)(E) that business records must be trustworthy and reliable to be admissible for the truth of the matter asserted.  Courts have consistently recognized that the presence of opinions or evaluative statements within a business record undermines its trustworthiness and, therefore, its admissibility for the truth of the matter asserted.  *See United States ex rel. Landis v. Tailwind Sports Corp.*, 292 F. Supp. 3d 211, 220-21 (D.D.C. 2017) ("commissioned studies generated for clients are not sufficiently 'systematic[ ]' or 'routine' to fall within the business-records exception…. [T]hey may not have been prepared in anticipation of litigation, but they were prepared with a particular client and goal in mind, which raises similar concerns about their trustworthiness").  The rationale is

14

clear: opinions, by their very nature, are inherently subjective and lack the objective reliability that the business records exception is designed to safeguard. Here, the SQOO reports are replete with opinions and the subjective beliefs of Quandary Peak and contain minimal facts. And the trustworthiness of the SQOO reports is further called into question by the fact that eCW's ability to respond to, clarify, or contest the opinions and conclusions contained in these reports was limited. This lack of opportunity to address or rebut the subjective content of the SQOO reports only amplifies the unreliability of admitting them under the business records exception.

**Second**, the SQOO reports also do not meet at least some of the other requirements of Rule 803(6). Relators argue that SQOO team leaders described the methodology and process in creating the SQOO Reports. (Rels.' Mot. at 11, ECF No. 382.) But the testimony that Relators point to does not "elaborat[e] on procedure, methodology, or accountability" in creation of the SQOO reports, as would be required to establish that the documents were created "in the course of a regularly conducted activity of a business" under Rule 803(6)(B). *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1120-21 (S.D.N.Y. 1993) (excluding reports describing market surveys as hearsay because of lack of foundation where witness "only testified that reports such as these are prepared in the 'regular course of business' without elaborating on procedure, methodology, or accountability."), *aff'd*, 32 F.3d 690 (2d Cir. 1994) (footnote omitted). Instead, much of the testimony Relators have designated and point to in their motion consists of asking SQOO team members if they recall certain SQOO reports and then presenting such reports—rather than asking about the methodology or creation of the reports. (*See, e.g.*, 4/30/24 Ulrich Dep. 44:1-10, ECF No. 218-44 ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███     5/17/24 Dhavle Dep. 46:16-20, ECF No. 218-18 ████████

████████████████████████████████████████████████████████

████ ).)

In sum, Relators' attempt to shoehorn the SQOO Reports into Rule 803(6) is unavailing, as they do not meet the core requirements of trustworthiness and reliability that are essential for the hearsay exception to apply.[6]

## V.    eCW MAY DESIGNATE MORE THAN ONE CORPORATE REPRESENTATIVE UNDER RULE 615.

The Court should deny Relators' motion seeking to sequester the co-founder and Chief Executive Officer of eCW, Mr. Girish Navani and eCW's Vice President of Engineering, Ms. Shelpa Hegde (Rels.' Mot. at 12-13, ECF No. 382) because Federal Rule of Evidence 615 provides several exceptions to the general rule that witnesses are to be "excluded from the courtroom so that they cannot hear other witnesses' testimony." *See* Fed. R. Evid. 615(a). The Court has discretion "to exempt particular witnesses from an exclusion order" under Rule 615. *Siam v. Potter*, 2006 WL 1530155, at \*5 (N.D. Cal. June 5, 2006) (citation omitted). As eCW's designated corporate representative, Mr. Michael Laycob is exempt from an order of sequestration.[7] *See* Fed. R. Evid. 615(a)(2). But as individuals essential to eCW's defense, Mr. Navani and Ms.

---

[6]    Further, as articulated in eCW's Motions *in Limine,* including Nos. 3 (ECF No. 392-1) and No. 7 (ECF No. 399-1), the SQOO reports, among other documents, contain opinions and information that do not pertain to the conformity of version 11 of eCW's EHR software with certification criteria (d)(1) through (e)(2), and therefore, that renders at least some portions of the SQOO reports irrelevant, unfairly prejudicial, and would require a sideshow of the issues that a jury will not be deciding.

[7]    Relators have not disputed that eCW's Chief Compliance Officer, Michael Laycob, is permitted to remain in the courtroom throughout trial. (ECF No. 382 at 12 ("Relators' counsel stated that it would insist on sequestration of all witnesses other than Mr. Laycob.").)

Hegde should also be deemed exempt from an order of sequestration pursuant to Fed. R. Evid. 615(a)(3) because of his intimate knowledge of central aspects of eCW's case.[8]

*First*, Mr. Navani should be exempt from sequestration because his role is "essential to presenting [eCW's]… defense." *See* Fed. R. Evid. 615(a)(3). An exception to the general rule outlined in Federal Rule of Evidence 615 permits the presence of "any person whose presence a party shows to be essential to presenting the party's claim or defense." *Id.* A witness is considered essential when "he is needed in the courtroom when he is not testifying." *United States v. Forehand*, 943 F. Supp. 2d 1329, 1331 (M.D. Ala. 2013) (citation omitted). In *United States ex rel. Bahrani v. ConAgra, Inc.,* the Tenth Circuit upheld the district court's decision in an FCA case to permit an employee of the defendant to remain in the courtroom at trial as a person "essential" to the defense because he was "the person most knowledgeable about the history and complex factual details of the matters at issue, and with whom counsel needed to confer during trial…. the employee responsible for coordinating the [government] investigation, and . . . the only witness with direct personal knowledge about the scope of that investigation…." 624 F.3d 1275, 1296-97 (10th Cir. 2010). In particular, the employee's knowledge of the scope of the government investigation was a "critical issue" that was relevant to the defendant's "government knowledge" defense. *Id.*

Similarly, here, Mr. Navani is essential to eCW's defense because he is the "most knowledgeable" on a range of issues given that he established eCW and has been with the company for over twenty-five years. (ECF No. 216-2 at 3.) As CEO, Mr. Navani is actively involved in

---

[8] Both Mr. Laycob and Mr. Navani may be excluded from the general rule of sequestration. "Nothing in the [2023] amendment [to Rule 615] prohibits a court from exempting from exclusion multiple witnesses." Fed. R. Evid. 615, advisory committee notes to 2023 amendments. *See United States v. Arayatanon*, 980 F.3d 444, 448-49 (5th Cir. 2020) (upholding district court's decision to exempt two government case agents from sequestration as "necessary to the presentation of [the government's] case," and rejecting defense claim that FRE 615 authorizes exemption of only one).

security initiatives and has familiarity on central aspects of the case. (*See e.g.*, 5/10/24 Lewis Fact Dep. 167:8-168:12, ECF No. 218-2.)   Given Mr. Navani's extensive knowledge about eCW's software and internal business affairs, Mr. Navani is a person "with whom counsel need[s] to confer during trial."   *See Bahrani,* 624 F.3d at 1296-97.   Mr. Navani has "direct personal knowledge about the scope of th[e] [OIG] investigation," *id.*, and eCW's efforts to comply with security measures for its software.  (8/12/25 Navani Dep. 60:13-21, ECF No. 416-1 ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████  Further, like the employee in *ConAgra*, whose knowledge of the scope of the government investigation was relevant to the "government knowledge" defense, here, Mr. Navani's knowledge of the CIA period, including government-led investigations and the lack of any effort to de-certify eCW's software, is directly relevant to eCW's defense on materiality. *See Bahrani,* 624 F.3d at 1296-97; Navani Dep. at 128:8-131:13, ECF No. 416-1 (discussing oversight from OIG and ONC).  Lastly, Mr. Navani has critical knowledge about Relators' damages claims given his familiarity with eCW's customers.  Therefore, Mr. Navani's specialized knowledge of eCW's product and efforts to comply with security measures—a critical issue at trial—is "essential to the presentation of [eCW's] . . . defense," and thus falls within the exception outlined in Rule 615(a)(3).

Relators' authority is not to the contrary.  They cite *Lumpkin v. Bi-Lo, Inc.*, 117 F.R.D. 451 (M.D. Ga. 1987) (cited in Rels.' Mot. at 13, ECF No. 382), which excluded additional corporate employees from a ***deposition***, not from trial.[9]   Here, at ***trial***, eCW's counsel will require

---

[9]       Despite the Court's finding in *Lumpkin* that Rule 615 applies to depositions, the Federal Rules of Civil Procedure were amended in 1993 to clarify that Rule 615 does not apply to depositions. *See Lopez v. Gibson*, 2018 WL 11350477, at *2 (M.D. Fla. Mar. 12, 2018) (discussing Fed. R. Civ. P. 30(c) Advisory Committee Notes to 1993 Amendment and noting that "with regard to the exclusion of witnesses at a deposition, Rule 615 does not apply").

Mr. Navani's intimate knowledge of the facts and his input to adjust trial strategy as needed based on the evidence admitted. *See Siam*, 2006 WL 1530155, at *5 (finding that former employee who was "in plaintiff's chain of supervision during the relevant time period and ha[d] knowledge which was absolutely central to the presentation of defendant's case" was permitted to attend trial under 615(a)(3)). Relators also point to *Kaiser v. Monroe Clinic, Inc.*, 2020 WL 4364179, at *10 (W.D. Wis. July 30, 2020) (cited in Rels.' Mot. at 13, ECF No. 382), but in that case the court did not address, nor did the parties argue, whether the witnesses were essential to the claims or defenses and could be exempt under Rule 615(a)(3). Further, the corporate witnesses in *Kaiser* were nurses who were employed by the defendant—not CEOs or company founders with extensive knowledge of the defendant's business. (Defs.' Resp. to Pl.'s Mot. in Lim. at 41–42, *Kaiser v. Monroe Clinic, Inc.*, 2020 WL 4364179 (W.D. Wis. July 30, 2020), ECF No. 213 at 41-42.)

**Second**, when a witness has previously given a sworn statement (such as a deposition), sequestration is no longer necessary. *See State v. Carmack*, 694 S.E.2d 224, 227–28 (S.C. App. Ct. 2010) (finding that a trial judge did not abuse his discretionary authority by ruling that "only witnesses who had not previously given written statements needed to be sequestered" and that "the threat of exposure to other testimony would taint subsequent testimony was alleviated by affording [the defendant] the opportunity to impeach any witness who altered their accounts by way of their previous written statements."). Mr. Navani was deposed on August 12, 2025. (8/12/25 Navani Dep., ECF No. 416-1.) Therefore, there is no threat that his subsequent testimony will be tainted— the very concerns underlying Rule 615's rationale are not present here.

**Third**, and similarly, Ms. Hegde should be exempt from sequestration because her role is "essential to presenting [eCW's] . . . defense." *See* Fed. R. Evid. 615(a)(3).[10] Ms. Hedge has been

---

[10]    The fact that Mr. Navani and Ms. Hegde both qualify as essential witnesses and therefore exempt from sequestration is permissible under Rule 615(a)(3). *See United States v. Cooper*, 283 F. Supp. 2d 1215, 1226 (D. Kan.

a part of eCW since 2005, first as Team Lead, Senior Software Engineer, then as Director of Research and Development, and currently, as Vice President of Engineering.  Her longstanding tenure at eCW, particularly in roles related to the eCW software and the certifications at issue here, uniquely position her as a key figure for presenting eCW's defense.  For example, Ms. Hegde played a critical role in reviewing and responding to the SQOO interval assessments as it relates to security.  (*See* 6/18/24 Jaiswal Dep. 68:4-22, 73:17-74:12, 77:15-78:2, ECF No. ECF No. 218-5.)  This direct involvement means she possesses first-hand knowledge of eCW's software, and particularly, the rationale behind key decisions and the context in which those decisions were made.  To ensure that she has a reasonable opportunity to respond to Relators' allegations in this case, she needs to be present to hear their testimony regarding the alleged technical and certification issues, as to which she had insight and input.

For all these reasons and pursuant to Rule 615(a)(3), the Court should deny Relators' motion to sequester Mr. Navani and Ms. Hegde and permit Mr. Navani and Ms. Hegde to be present in the courtroom as needed during trial.

## <u>CONCLUSION</u>

For these reasons, as well as those stated more fully in related pre-trial briefing from eCW and eCW's Motions *in Limine*, the Court should deny Relators' Affirmative Motions *in Limine*.

---

2003)  ("Rule 615(a)(3) does not restrict the number of witnesses who may be deemed 'essential to the presentation of [a] party's cause.'"); *see also* § 6245 Exceptions to Required Exclusion, 29 Fed. Prac. & Proc. Evid. § 6245 (2d ed.) ("Clearly, a trial court may designate more than one witness as 'essential'").

Dated: October 3, 2025

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

21

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

<u>/s/ *Duke R. Groover*</u>
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720