**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., | No. 5:18-CV-382 |
| *Plaintiffs*, | |
| v. | Honorable Marc T. Treadwell |
| eCLINICALWORKS, LLC, | |
| *Defendant.* | |

## DEFENDANT eCLINICALWORKS, LLC'S RESPONSE IN OPPOSITION TO RELATORS' MOTIONS IN LIMINE REGARDING ECW'S ATTACKS ON RELATORS

## TABLE OF CONTENTS

**Page**

1.  **The Court Should Deny Relators' Motion #1 Regarding Evidence Of Their Racial Bias Because Such Bias Is Relevant**......................................................2

2.  **The Court Should Deny Relators' Motion #2 To Exclude References To Their Hacking Because It Seeks To Immunize Relators From Cross-Examination Regarding Their Improper Extrajudicial Discovery Efforts.** ......................................3

3.  **The Court Should Deny Relators' Motion #3 To Exclude All Evidence That Relators May Benefit Financially From This Case.** ....................................................7

4.  **The Court Should Deny Relators' Motion #4 To Exclude Evidence That They Abused Their Access To Their Customers' eCW Instances To Promote Their Litigation Ends.** ..........................................................................................................8

5.  **The Court Should Deny Relators' Motion #5 To Exclude Reference To Their Gratuitous Exfiltration And Production Of Protected Identifying Information**.....................................................................................................................10

6.  **The Court Should Deny Relators' Motion #6 To Exclude Evidence Or Argument Concerning Mr. Wheeler's Prior Arrest For Deceptive Misuse Of Computer Systems.** .............................................................................................11

7.  **The Court Should Deny Relators' Motion #7 To Broadly Exclude All Questions About "Personal Matters."** ............................................................16

8.  **The Court Should Deny Relators' Motion #8 To Bar Any Reference To Whether Relators Told Tier2 Customers About The Vulnerabilities Alleged In This Case Because Such Evidence Is Highly Relevant To Their Credibility**............17

9.  **The Court Should Deny Relators' Motion #9 To Exclude Reference To Relators' Abusive And Derogatory Statements To eCW Employees Because They Show Relators' Bias Against The Company And Motivation For Bringing Suit.**..................................................................................................................19

**CONCLUSION** ............................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*American Civil Liberties Union v. Holder*,
    673 F.3d 245 (4th Cir. 2011) ........................................................................... 18

*Braxton v. Eldorado Lounge, Inc.*,
    2017 WL 11441948 (D. Md. June 27, 2017) ...................................................... 8

*Caldwell v. Wal-Mart Stores, Inc.*,
    2000 WL 1335564 (10th Cir. Sept. 15, 2000) ................................................... 8

*Erhart v. BofI Holding, Inc.*,
    2017 WL 588390 (S.D. Cal. Feb. 14, 2017) ................................................ 5, 10

*Estate of Rink by Rink v. VICOF II Trust*,
    2022 WL 1445233 (W.D.N.C. May 6, 2022) .................................................... 8

*Fuller v. Mercury Insurance Co. of Georgia*,
    708 F. App'x 637 (11th Cir. 2018) ................................................................. 15

*Henry v. Speckard*,
    22 F.3d 1209 (2d Cir. 1994) ......................................................................... 1, 4

*Hightower v. General Motors Corp.*,
    255 Ga. 349 (1986) ....................................................................................... 13

*Johnson v. Marshall*,
    2018 WL 11222673 (N.D. Ill. July 9, 2018) ..................................................... 2

*Lindsey v. Normet*,
    405 U.S. 56 (1972) ....................................................................................... 1, 6

*Markel Insurance Co. v. Bowen*,
    2024 WL 5134369 (N.D. Ga. Nov. 4, 2024) ................................................... 15

*Martin v. Perkins*,
    2020 WL 13573505 (N.D. Ga. July 15, 2020) ................................................ 12

*Mims v. Exclusive Ass'n Management*,
    372 Ga. App. 777 (2024) .............................................................................. 15

*Ouhrabka v. Exeltis USA, Inc.*,
    2021 WL 3215121 (E.D. Tex. June 28, 2021) ................................................... 3

*Ramey v. District 141, International Ass'n of Machinists & Aerospace Workers,*
    378 F.3d 269 (2d Cir. 2004) ................................................................................... 1, 3, 20

*Samsung Electronics Co. v. NVIDIA Corp.,*
    2016 WL 754547 (E.D. Va. Feb. 23, 2016) ................................................................ 8

*Siebert v. Gene Security Network, Inc.,*
    2013 WL 5645309 (N.D. Cal. Oct. 16, 2013) ............................................................. 5

*Travis v. Exel, Inc.,*
    2013 WL 12109758 (N.D. Ga. May 31, 2013) ........................................................... 19

*Trustgard Insurance Co. v. Herndon,*
    338 Ga. App. 347 (2016) ..................................................................................... 13, 15

*United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ............................................................................. 5, 10

*United States ex rel. Feldman v. van Gorp,*
    2010 WL 2911606 (S.D.N.Y. July 8, 2010) ................................................. 7, 16, 17, 20

*United States ex rel. Kiro v. Jiaherb, Inc.,*
    2019 WL 2869186 (C.D. Cal. July 3, 2019) ........................................................*passim*

*United States ex rel. McCandliss v. Sekendur,*
    282 F. App'x 439 (7th Cir. 2008) .............................................................................. 8

*United States ex rel. Miller v. Bill Harbert International Construction, Inc.,*
    2007 WL 851868 (D.D.C. Mar. 14, 2007) ................................................................ 4, 7

*United States ex rel. Raven v. Georgia Cancer Specialists I, P.C.,*
    2021 WL 4080863 (N.D. Ga. Mar. 30, 2021) ............................................................. 7

*United States v. Abel,*
    469 U.S. 45 (1984) ............................................................................................... 1, 4

*United States v. Brillhart,*
    2023 WL 6794229 (M.D. Fla. Oct. 13, 2023) ........................................................... 14

*United States v. Cruz,*
    2022 WL 808008 (11th Cir. Mar. 17, 2022) .......................................................... 14, 15

*United States v. Frye,*
    193 F. App'x 948 (11th Cir. 2006) ......................................................................... 13

*United States v. Smalley*,
    754 F.2d 944 (11th Cir. 1985) ...................................................................................... 14

*United States v. Taylor*,
    426 F. App'x 702 (11th Cir. 2011) ............................................................................... 19

*United States v. Williams*,
    2007 WL 9724681 (S.D. Ga. Jan. 9, 2007) ................................................................. 13

*White v. Dolgencorp, LLC*,
    2023 WL 2703612 (S.D. Miss. Mar. 29, 2023) ............................................................ 17

*Wilson v. Attaway*,
    757 F.2d 1227 (11th Cir. 1985) ................................................................................... 15

## OTHER AUTHORITIES

18 U.S.C. § 1030 ..................................................................................................................... 14

Ga. Code Ann. § 16-9-93 .............................................................................................. 13, 14, 15

Fed. R. Evid. 404 .............................................................................................................. 12, 13

Fed. R. Evid. 608 ................................................................................................. 9, 12, 15, 19

Fed. R. Evid. 801 ................................................................................................................... 19

45 C.F.R. § 170.315(d)(1) ...................................................................................................... 19

45 C.F.R. § 170.315(d)(2) ...................................................................................................... 19

45 C.F.R. § 170.315(d)(3) ...................................................................................................... 19

This Court cannot allow a one-sided trial in which Relators are permitted to attack eClinicalWorks's ("eCW's") character but eCW cannot do the same.  Relators seek to preadmit evidence on a host of irrelevant matters related to the character of eCW.  (*See generally* Rels.' Affirmative Mots. in Lim. (ECF No. 382) (seeking to admit, *inter alia*, (1) the amount of the *Delaney* settlement; (2) evidence of eCW's "discovery misconduct"; and (3) the entirety of Quandary Peak's reports and assessments).)  At the same time, Relators argue in this motion that ***any*** attempt to probe into their bias, credibility, or motives would be improper.  Relators are wrong.

Where relators "will testify at trial, as here, a defendant is permitted to 'raise to the jury any challenges to [relators'] credibility.'"  *United States ex rel. Kiro v. Jiaherb, Inc.*, 2019 WL 2869186, at *4 (C.D. Cal. July 3, 2019) (quoting *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004)).  Indeed, "the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] testimony."  *United States v. Abel*, 469 U.S. 45, 52 (1984).  Central to this inquiry is the "motivation of a witness in testifying, including [his] possible self-interest and any bias or prejudice against the defendant."  *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994).  Thus, when a relator testifies, and particularly when a relator testifies as an expert witness like Messrs. Wheeler and Rodighiero plan to do here, courts consistently admit "evidence of potential bias."  *E.g.*, *Kiro*, 2019 WL 2869186, at *4.

Here, the vast majority of the evidence targeted for exclusion by Relators' Motions *in Limine* Regarding eCW's Attacks on Relators directly relates to their bias, credibility, and/or motives.  Because Relators have made themselves the central witnesses to their case, eCW must be permitted to challenge the credibility and reliability of their testimony.  A contrary result would violate eCW's due process rights.  *See Lindsey v. Normet*, 405 U.S. 56, 66 (1972).

1. **The Court Should Deny Relators' Motion #1 Regarding Evidence Of Their Racial Bias Because Such Bias Is Relevant.**

Relators' first motion at first appears tailored to two online "customer reviews" containing ███████████████████████████████████ If that is all they seek to exclude, the Court should deny the motion as moot because eCW will not introduce them. But Relators' motion sweeps much more broadly: it asserts that evidence about racial bias generally may not be introduced *as to Relators* because it is "improper character evidence." That broader claim is wrong.

*First*, evidence of a witness's racial animus is relevant to the witness's credibility and potential bias against the opposing party. *See, e.g.*, *Johnson v. Marshall*, 2018 WL 11222673, at *4 (N.D. Ill. July 9, 2018) (evidence of witness's racial animus was "relevant and admissible for the limited purpose of assessing the credibility of [the witness's] testimony and his potential bias against [the plaintiff]"). There is real evidence of racial bias in this case—for example, Mr. Permenter's reference at his deposition to eCW's ███████████████████ in India. (6/21/24 Permenter Dep. 39:19-40:1, ECF No. 218-101.) Given Mr. Permenter's hostility toward eCW owing at least in part to its employment of Indian nationals, it is a question for the jury to decide whether to believe his testimony or to discredit it because it is the product of racial biases.

*Second*, although such evidence has independent relevance for the reason just stated, Relators have also opened the door further to it by deciding to make this case about eCW's operations in India. (Rels.' Consol. Dep. Designations at 32-33, ECF No. 417 (designating portions of the August 12, 2025 deposition of Girish Navani regarding eCW's operations in India).) There is no reason this fact has any relevance, other than to leverage possible racial or "America First" biases they believe may be held by some jurors in an effort to diminish eCW's credibility or that of its witnesses. Having opened this door, Relators cannot argue that they should be shielded from

inquiry into their own credibility on racial issues. *Cf. Ouhrabka v. Exeltis USA, Inc.*, 2021 WL 3215121, at *2 (E.D. Tex. June 28, 2021) (holding that defendant could introduce evidence of a racially disparaging comment by plaintiff if plaintiff opened the door). For both reasons, the Court should deny the motion.

**2.   The Court Should Deny Relators' Motion #2 To Exclude References To Their Hacking Because It Seeks To Immunize Relators From Cross-Examination Regarding Their Improper Extrajudicial Discovery Efforts.**

Relators seek to exclude all evidence or argument that their efforts to hack into eCW's software outside the legitimate discovery process was improper. That motion should be denied. The evidence of Relators' misconduct in this case is ample and well-documented. There is evidence that (1) Relators engaged in unauthorized and improper use of eCW's servers and software, (2) Relators attempted to cover their tracks by deleting potentially relevant evidence, and (3) their actions created potential patient safety issues. The jury should hear this evidence. There is a body of case law governing Relator misconduct—none of which is cited in Relators' brief— that endorses cross-examination on such issues, which goes directly to Relators' bias, credibility, and motive. Case law also rejects Relators' unsupported policy argument that such cross-examination would somehow undermine the False Claims Act ("FCA"). eCW would also be severely prejudiced if barred from addressing these issues at trial. The Court should therefore deny this motion.

***First***, evidence regarding Relators' actions is highly relevant to their bias, credibility, and motives. "[W]hen a relator . . . testif[ies] at trial, as here, a defendant is permitted to 'raise to the jury any challenges to [the relator's] credibility.'" *Kiro*, 2019 WL 2869186, at *4 (quoting *Ramey*, 378 F.3d at 283). As the U.S. Supreme Court has recognized, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness'[s] testimony."

*Abel*, 469 U.S. at 52.  That same rule applies to relators in FCA cases.  *E.g.*, *Kiro*, 2019 WL 2869186, at *4 (citing *Abel*); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231 (RCL), 2007 WL 851868, at *1 (D.D.C. Mar. 14, 2007) (noting evidence that "pertains to relator's potential bias" is "fair game for cross-examination").

In *Kiro*, for example, the relator sought to exclude evidence about himself, including among other facts that "he took [the] [d]efendant's customer lists or other documents."  2019 WL 2869186, at *4.  The court rejected this argument.  Noting that the relator was planning to testify at trial, the court explained that such evidence was relevant because a defendant has a right to test the credibility of a testifying relator, and "[c]entral to this line of questioning is the 'motivation of a witness in testifying, including [his] possible self-interest and any bias or prejudice against the defendant.'"  *Id.* (second alteration in original) (quoting *Henry*, 22 F.3d at 1214).

The same is true here.  Relators are placing their credibility at issue by testifying.  They have made claims about vulnerabilities in eCW's software and the real-world impact of those vulnerabilities.  Consequently, eCW must be free to elicit evidence that bears on their bias, credibility, and motives.  And the evidence here—that Relators were willing to engage in lawless, unauthorized, and reckless tactics to access information and systems that they would not have otherwise had access to goes to these issues.[1]  If Relators were willing to deceive to obtain such access, eCW must be permitted to ask the jury whether they were also deceptive in their testimony. Similarly, if Relators were so motivated to find evidence that they believe supports their claims,

---

[1]    Relators suggest that the Department of Justice's ("DOJ") decision not to prosecute Mr. Wheeler for inappropriately accessing eCW's servers despite eCW's alleged "best efforts" shows that his actions were appropriate. (Rels.' Mot. at 6-7, ECF No. 384.)  Not so.  First, the premise is wrong: eCW has not made best efforts to persuade DOJ to do anything about Mr. Wheeler's misconduct.  eCW raised this issue with the Civil Division, as it is the party in interest here.  eCW has not raised the issue with DOJ's Criminal Division.  Second, Relators' argument is self-contradictory.  In another motion filed the same day, Relators argue that DOJ's inaction (in the form of a declination to intervene here) does not prove anything about DOJ's view on the merits of the allegations.  (*See* Rels.' Omnibus Mots. in. Lim., No. 2, ECF No. 385 (seeking to exclude such evidence).)  Relators cannot have it both ways.

eCW is entitled to ask the jury to consider whether this "win at all costs" attitude should color its understanding of their testimony, particularly given Relators' plan to serve as their own experts.

**Second**, Relators' self-serving contention that they have always acted for the greater good and that allowing cross-examination on their misconduct would "contradict[] the FCA's purpose" (Rels.' Mot. at 8, ECF No. 384) should be rejected. Courts have repeatedly held that the FCA does not place relators above the law and that there are limits to the "self-help" in which relators may engage to seek evidence to support their claim. *See, e.g.*, *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061-62 (9th Cir. 2011) (rejecting a public policy exception to confidentiality agreements for relators and explaining any exception would require relators "to justify why removal of the documents was reasonably necessary to pursue an FCA" claim); *Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *7-8 (N.D. Cal. Oct. 16, 2013) (similar); *Erhart v. BofI Holding, Inc.*, 2017 WL 588390, at *12 (S.D. Cal. Feb. 14, 2017) ("[T]he burden is on the party seeking to invoke the public policy exception [to a confidentiality agreement] 'to justify why removal of the documents was reasonably necessary' to support the allegations of wrongdoing") (citation omitted).

For example, in *Cafasso*, the district court granted summary judgment against the relator on the defendant's counterclaim that the relator had violated a confidentiality agreement by taking electronic documents and files to support her FCA claim. 637 F.3d at 1061. On appeal, the relator urged the Ninth Circuit to adopt "a public policy exception to [the] enforcement of such contracts that would allow relators to disclose confidential information in furtherance of an FCA action." *Id.* at 1062. Declining to do so, the court noted that even if it had adopted such a *per se* exception, it would not help the relator "given her vast and indiscriminate appropriation" of the defendant's files. *Id.* As the Ninth Circuit noted, "[a]n exception broad enough to protect the scope of [the

relator's] massive document gather in this case would make all confidentiality agreements unenforceable as long as the employee later files a qui tam action." *Id.*

The same concerns apply here. Contrary to Relators' claims (Rels.' Mot. at 6-7, ECF No. 384), Mr. Wheeler did not just "test" eCW's systems and software. Rather, he inappropriately attempted to execute unauthorized code on **eCW's live servers**, rather than use the test server that was provided for Mr. Wheeler to test his theories. Mr. Wheeler's actions crashed **all** the servers of one of the medical practices for whom he claims to work, creating a potential patient-safety issue. (ECF No. 318-8 at 1.) Given these facts, eCW seeks to present evidence and argument that (1) Mr. Wheeler's actions were unauthorized by eCW or Relators' clients, (2) Mr. Wheeler attempted to cover his tracks by deleting potentially relevant evidence, and (3) Mr. Wheeler's actions were potentially dangerous. Forbidding eCW from presenting such evidence would encourage Relators to take brazen risks that could potentially put patients at risk, which as *Cafasso* and the other cases outlined above make clear, the FCA simply does not countenance.

**Third**, exclusion of this evidence and argument would unfairly prejudice eCW's defense. As the U.S. Supreme Court made clear in *Abel*, issues of bias, credibility, and motives are fair game "almost always," and nothing suggests a different rule should apply here. "Due process requires that there be an opportunity to present every available defense." *Lindsey*, 405 U.S. at 66 (citation omitted). Stripping eCW of its right to address the credibility of Relators—the principal witnesses in their own case—would violate its due-process right to defend itself.

**Finally**, to the extent Relators seek exclusion of specific descriptors of Relators' conduct (e.g., "hacking"), the Court should also deny the motion. The words "hacker" and "hacking" are in common parlance and not inherently pejorative (e.g., "white hat hacker"). The real reason Relators seek exclusion of such phrasing is their disagreement that their conduct was improper.

6

But there is more than sufficient evidence to support a contrary conclusion, and it should be up to the jury to decide whether Relators' conduct constitutes improper "hacking" or not.

**3.   The Court Should Deny Relators' Motion #3 To Exclude All Evidence That Relators May Benefit Financially From This Case.**

Relators seek to exclude any reference to the fact that they may benefit financially from a favorable verdict in this case.  The argument is contrary to law and would deprive eCW of its due-process rights, and it should be rejected.  Courts both within and outside this Circuit have found that where, as here, Relators testify in support of their case, particularly as experts, their motivations are relevant and proper grounds for cross-examination.

*First*, financial interest in the outcome is always relevant to a plaintiff's credibility.  Even if there were a different general rule for relators—and there should not be—a relator who chooses to testify opens the door to cross-examination regarding his or her financial incentives for bringing this case.  *See United States ex rel. Raven v. Ga. Cancer Specialists I, P.C.*, 2021 WL 4080863, at *4 (N.D. Ga. Mar. 30, 2021) ("[T]his court agrees with its sister courts that should a relator testify, cross-examination as to her financial interest is allowed as it goes to the witnesses' bias . . . ."); *accord Miller*, 2007 WL 851868, at *1 (similar); *see generally Kiro*, 2019 WL 2869186, at *4 (finding evidence of potential bias admissible); *United States ex rel. Feldman v. van Gorp*, 2010 WL 2911606, at *5 (S.D.N.Y. July 8, 2010)(cited in Rels.' Mot. at 2, ECF No. 384) ("[B]ecause [r]elator will testify at trial, [d]efendants are permitted to 'raise to the jury any challenges to [his] credibility.'") (citation omitted).

Relators have cited *no* case law that contradicts the common-sense outcome of the cases that have evaluated this issue in the context of a testifying relator.  To the contrary, *Samsung Electronics Co. v. NVIDIA Corp.* specifically noted that establishing a witness's bias is a specific exception to the "general rule" that a plaintiff's motive for bringing suit is usually irrelevant.  2016

WL 754547, at *2 (E.D. Va. Feb. 23, 2016) (cited in Rels.' Mot. at 10, ECF No. 384) (noting that as "a general rule: a plaintiff's motive for bringing suit is irrelevant, except in the face of certain equitable defenses, bad faith, or questions of witness bias" and finding none of the exceptions applied). Relators' other cases are inapposite.[2]

**Second**, if the amount of the *Delaney* settlement is admitted into the case—which it should not be for the reasons set forth in eCW's motion *in limine* on this topic (ECF No. 388-1)—then eCW must be permitted to cross-examine Relators regarding their knowledge of the amount of such settlement. Relators' knowledge of the *Delaney* settlement is directly relevant to their expected benefit from this case. Knowing that eCW has already settled one FCA case for a substantial sum must feed directly into Relators' recovery expectations in this case and goes directly to their motives. For this reason too, the Court should deny Relators' motion.

## 4. The Court Should Deny Relators' Motion #4 To Exclude Evidence That They Abused Their Access To Their Customers' eCW Instances To Promote Their Litigation Ends.

Relators seek to conceal from the jury the fact that they ran "tests on eCW software without their clients' permission" and "compromis[ed] their clients' businesses" on the ground that such evidence is "untrue" and "irrelevant." (Rels.' Mot. at 10, ECF No. 384.) It is neither.

**First**, there is strong evidence that Relators engaged in such conduct. For example, Relators lacked express permission to use their access to their customers' eCW instances to

---

[2]    *E.g.*, *United States ex rel. McCandliss v. Sekendur*, 282 F. App'x 439, 441, 443 (7th Cir. 2008) (cited in Rels.' Mot. at 9, ECF No. 384) (not addressing admissibility of cross-examination questions inquiring into the financial motivations of a testifying relator, and instead rejecting the argument that the lawsuit itself was somehow improper because the relator allegedly had "a personal vendetta against" the defendant); *Est. of Rink by Rink v. VICOF II Tr.*, 2022 WL 1445233, at *3 (W.D.N.C. May 6, 2022) (cited in Rels.' Mot. at 9) (generally agreeing "that [an] Estate's 'motivation' in filing suit or alleged 'greed' is not relevant," but reserving on the issue until presented with the specific evidence); *Braxton v. Eldorado Lounge, Inc.*, 2017 WL 11441948, at *3 (D. Md. June 27, 2017) (cited in Rels.' Mot. at 9) (striking **allegations** from a defendant's answer regarding "plaintiffs' possible motivations for filing suit"); *Caldwell v. Wal-Mart Stores, Inc.*, 2000 WL1335564, at *5 (10th Cir. Sept. 15, 2000) (cited in Rels.' Mot. at 10) (holding that "[a]bsent some evidence of fraud on [plaintiff's] part **(and none was proffered)**, evidence of . . . financial motivation to bring the suit was not relevant") (emphasis added).

execute foreign code on eCW's cloud servers. Relators' own customers lack authority to run such code, so they cannot possibly have authorized Relators to do so. (ECF No. 318-8 at 1.) Similarly, Relators had no authority from their clients to conduct experiments that exposed hundreds of patients' personal identifying information ("PII"), which happened during discovery in this case. (July 11-23, 2024 Correspondence (attached as Ex. A).) And Mr. Wheeler's testimony makes clear that Tier2's customers did not know he was using their eCW installations to make videos to advance his theories in this case. (1/29/25 Wheeler Dep. 24:25-25:14, ECF No. 337.) While Relators contend that their customer agreements gave them a blank check to pursue any security testing they wanted in the name of making their customers' systems more secure (*e.g.*, *id.* 25:19-23), it is for the jury to decide whether that explanation is credible, or whether instead to conclude that Relators' concealment of this activity was tantamount to lying to their customers, which bears directly on the veracity of their testimony in this case. *See* Fed. R. Evid. 608(b).[3]

*Second*, Relators' concealment of their activities from their customers is highly relevant to their bias, credibility, and motive. *See generally Kiro*, 2019 WL 2869186, at *4 (collecting cases). For example, in *Kiro* the court found evidence of "allegations that [the relator] took [d]efendant's customer lists or other documents" "admissible as evidence of potential bias and for purposes of impeachment." *Id.* That is because relators may only remove documents as whistleblowers where they can show their "'removal of the documents was reasonably necessary' to support [their] allegations of wrongdoing." *Erhart*, 2017 WL 588390, *12 (citation omitted). Accessing "vast

---

[3]      Contrary to Relators' suggestion, no evidence of "breach of contract" in the sense of reviewing the actual terms of Relators' contracts with their customers is necessary to demonstrate this point. eCW does not intend to make a legal argument to the jury about breaches of specific contractual provisions unless the door to such evidence is opened. As such, the Court's prior ruling that ***expert*** opinions about breach of contract are inadmissible (relied on in Rels.' Mot. at 10, ECF No. 384) does not support Relators' motion here.

and indiscriminate amounts of" documents outside relators' own possession in search of evidence to support an FCA claim is not proper. *Cafasso*, 637 F.3d at 1061-62.

Similarly here, the jury is entitled to decide whether Relators' "testing" of eCW's systems amounted to a "vast and indiscriminate" collection of documents that was inappropriate, and whether their actions should have any bearing on their evaluation of their credibility. *See Kiro*, 2019 WL 2869186, at *4. The Court should not preclude the jury from doing so.

## 5. The Court Should Deny Relators' Motion #5 To Exclude Reference To Their Gratuitous Exfiltration And Production Of Protected Identifying Information.

Relators seek to shield their reckless conduct in extracting PII of their clients' patients and producing it in discovery on the ground that it is somehow not relevant. The motion should be denied because the conduct is admissible to prove bias, credibility, and motives. *Kiro*, 2019 WL 2869186, at *4 (collecting cases).

As noted above, courts have admitted evidence and argument that a relator stole customer lists and other documents on the ground that it is fair for the jury to evaluate the credibility of such a relator's testimony in light of overzealous actions taken to win a lawsuit for money. *Kiro*, 2019 WL 2869186, at *4. The same principles apply here. Despite their professed interest in protecting patient PII, Relators showed no regard for the protection of such information when it got in the way of trying to win their lawsuit. Indeed, "when Mr. Wheeler formulated his query to generate Exhibits 6-19 of his May 31, 2024 rebuttal report, he specifically enumerated the fields to be retrieved to include social security numbers, dates of birth, addresses and other personal identifying information," even though such sensitive information was completely irrelevant to his report. (July 11-23, 2024 Correspondence.) Thereafter, thousands of rows of these highly sensitive data were produced to eCW's counsel. When eCW expressed concern that the production would require Relators to give a notice of a breach under HIPAA, Relators demurred, claiming

that it did not qualify as a breach, and refused to inform their clients that there had been a breach. (*Id.*) If Relators were so motivated to find evidence that they were willing to risk the security of patients' information, eCW is entitled to ask the jury to consider whether this "no holds barred" approach to discovery should color the credibility of Mr. Wheeler's testimony, particularly given that he will be testifying as an expert.

Separately, such evidence and argument should be all the more admissible if Relators are correct that evidence of conduct during discovery is categorically admissible, as they argue in another motion filed on the same day as this one. (*See* Rels.' Affirmative Mots. in Lim. at 5-8, ECF No. 382.) Although eCW strongly opposes that motion, the rule has to apply to both sides if it is granted. Thus, if Relators are permitted to present evidence of "the underlying facts" regarding the parties' disputes concerning JIRA tickets and the SQOO settlement, that is an independent reason that eCW must be allowed to introduce evidence of Relators' HIPAA breach.

## 6. The Court Should Deny Relators' Motion #6 To Exclude Evidence Or Argument Concerning Mr. Wheeler's Prior Arrest For Deceptive Misuse Of Computer Systems.

Relators seek to exclude evidence or argument concerning Mr. Wheeler's prior arrest for hacking. The Court should deny this motion. It previously overruled Relators' efforts to shield Mr. Wheeler's criminal conviction from discovery, holding that "defendant can inquire into [his] First Offender conviction related to hacking." (ECF No. 122 at 2.) Given Mr. Wheeler's status as a Relator and an expert witness in this litigation, his prior guilty plea will be admissible for multiple, independent reasons under Federal Rules of Evidence 404(b) and 608.

Relators allege that " █████████████████████████████████████

████████████████████████████████████████████████████████

████████████ (First Am. Compl. ("FAC") ¶ 2, ECF No. 17.) To respond to this allegation, eCW must be able to show the extreme lengths to which Relators have gone to try to create alleged

security problems, which bear directly on Relators' credibility and refute any argument these alleged technical issues were "so basic and obvious" that eCW had to have known about them.

For example, as just noted, Mr. Wheeler unlawfully accessed, collected, and produced patient PII from his customers' computer systems in his zeal to manufacture allegations of eCW's software vulnerabilities. He created multiple exhibits for his expert report containing the social security numbers, dates of birth, addresses, and other PII for hundreds of patients. (July 11-23, 2024 Correspondence.) Notably, Mr. Wheeler's exhibits were produced with table columns containing this PII collapsed, suggesting he made an intentional choice to conceal this information in the files he exported and produced. (*Id.*) Mr. Wheeler had no authorization to access his customers' computer networks to create evidence for this litigation. And when challenged about these tactics, Mr. Wheeler has defended his unauthorized access of patient PII by arguing this misappropriation was "unintentional" or an "inadvertent" mistake. (*Id.*)

These claims open the door to Mr. Wheeler's conviction, which shows he knew his access was unlawful and rebuts his assertions that hacking his customers' systems to obtain PII was an accident or mistake. *See* Fed. R. Evid. 404(b); *Martin v. Perkins*, 2020 WL 13573505, at *5 (N.D. Ga. July 15, 2020) (convictions are admissible to rebut claims of accident or mistake under Rule 404(b)). This is not "propensity" evidence (*see* Rels.' Mot. at 13, ECF No. 384)—it is within the admissible uses listed in Rule 404(b). To be admissible under Rule 404(b): (1) "the evidence must be relevant to an issue other than the defendant's character"; (2) "the evidence must be sufficient to support a finding that the defendant actually committed the extrinsic act"; and (3) "the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice." *United States v. Frye*, 193 F. App'x 948, 951 (11th Cir. 2006) (per curiam).

All three criteria are satisfied.  Consistent with Georgia law, "a guilty plea as to which a plaintiff in a civil case has been granted first offender treatment is admissible in evidence to disprove and contradict such party's testimony given in the civil case." *Hightower v. Gen. Motors Corp.*, 255 Ga. 349, 351 (1986); *accord United States v. Williams*, 2007 WL 9724681, at *1 (S.D. Ga. Jan. 9, 2007) ("In civil cases, Georgia courts allow First Offender Act records to disprove or contradict testimony."); *Trustgard Ins. Co. v. Herndon*, 338 Ga. App. 347, 352 (2016) (admitting first offender offense "when a civil party takes a litigation position contrary to what has been previously admitted").  It is undisputed that Mr. Wheeler pled guilty to ███████████████████ ████████████████████████████████████████████████ (Rels.' Mot. at 12, at ECF No. 384.)  And in Georgia, computer theft law prohibits:

> us[ing] a computer or computer network with knowledge that such use is without authority and with the intention of: (1) [t]aking or appropriating any property of another, whether or not with the intention of depriving the owner of possession; (2) [o]btaining property by any deceitful means or artful practice; or (3) [c]onverting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property.

Ga. Code Ann. § 16-9-93(a).

Computer invasion-of-privacy law similarly prohibits "us[ing] a computer or computer network with the intention of examining . . . medical . . . or personal data relating to any other person with knowledge that such examination is without authority." *Id.* § 16-9-93(c).  By claiming his decision to access his customers' computer networks without authorization and with the intent to convert patient PII to his own uses in this litigation was an "inadvertent" mistake, Mr. Wheeler opens the door to cross-examination on his knowledge and criminal history confirming this conduct was no mistake at all.  This highly relevant evidence easily clears the bar under Rule 403 given Mr. Wheeler is the one who produced these exhibits to support ***his*** expert opinions and has tried to minimize any misconduct he engaged in by dismissing them as mere mistakes.  *See United*

13

*States v. Brillhart*, 2023 WL 6794229, at *2 (M.D. Fla. Oct. 13, 2023) ("[P]rior conviction has

high probative value" and is admissible under Rule 403 given "[s]imilarity" of issues, which makes

it "probative of knowledge and absence of mistake").

This incident is not the only example that opens the door to Mr. Wheeler's hacking

convictions.  For example, Relators conducted unauthorized ███████████ attacks on live

cloud instances of eCW's clients.  Mr. Wheeler attempted to extract all data (136MB) from the

███████ and deleted evidence of what appeared to be hundreds of attempts he made to ███

███████████ on eCW's systems.  (ECF No. 318-8 at 1.)  This conduct violates the same

criminal statutes to which Mr. Wheeler previously pled guilty.  *See* Ga. Code Ann. § 16-9-93.[4]

Relators have taken the position that "[i]f eCW wants to cross-examine Mr. Wheeler at trial about

the alleged impropriety of him identifying, testing, and disclosing ongoing security vulnerabilities

so they can be fixed, it is free to do so."  (ECF No. 338 at 6.)  "Matters affecting the credibility of

the witness are always relevant on cross-examination," and Mr. Wheeler's computer theft and

computer invasion-of-privacy criminal pleas are indispensable to cross-examining him that he

knowingly broke the same laws again to try to develop evidence against eCW.  *United States v.*

*Smalley*, 754 F.2d 944, 951 (11th Cir. 1985); *United States v. Cruz*, 2022 WL 808008, at *5 (11th

Cir. Mar. 17, 2022) (per curiam) (affirming admission of credit card charge under Rule 608(b)

"[b]ecause the Government sought to impeach [defendant's] credibility and did not seek to present

any extrinsic evidence while doing so").  Eliciting testimony that Mr. Wheeler had to break the

law to try to develop this evidence undermines his allegation that these alleged security flaws were

"basic and obvious," as he claims.  (FAC ¶ 2.)

---

[4]    It also violates the federal Computer Fraud and Abuse Act.  *See* 18 U.S.C. § 1030.

To the extent Relators assert ██████████████████████████████████████ ████████████████████████████████ (Rels.' Mot. at 13-14, ECF No. 384), that is wrong. "A guilty plea under the first-offender statute is still a guilty plea." *Markel Ins. Co. v. Bowen*, 2024 WL 5134369, at *11 & n.9 (N.D. Ga. Nov. 4, 2024) (accepting first offender plea as evidence at summary judgment). "In Georgia, a guilty plea to a criminal charge is admissible in a civil action because, 'a guilty plea is an admission against interest and prima facie evidence of the facts admitted.'" *Mims v. Exclusive Ass'n Mgmt.*, 372 Ga. App. 777, 778 (2024) (citation omitted); *accord Trustgard*, 338 Ga. App. at 351 ("First offender pleas, although they do not necessarily constitute convictions, are considered guilty pleas to the underlying offenses."). Here, Mr. Wheeler's "plea of guilty constitute[s] an 'admission that [Relator] committed the crime charged against [him],'" and he can be crossed on that admission. *Fuller v. Mercury Ins. Co. of Ga.*, 708 F. App'x 637, 638 (11th Cir. 2018) (per curiam) (citation omitted); *Wilson v. Attaway*, 757 F.2d 1227, 1244 (11th Cir. 1985) (affirming admission of first offender evidence under Rule 609).[5]

In short, Mr. Wheeler is free to tell the jury he ██████████████████████████████ ██████████ when he pled guilty to theft by taking, computer theft, and computer invasion of privacy by hacking into the Houston County Hospital systems' networks. (Rels.' Mot. at 12-13 & n.13, ECF No. 384.) But by misusing his access credentials to obtain unauthorized access to his customers' computer systems in this case, expropriating patient personal information and injecting malicious code for purposes of preparing his expert opinions, and then claiming any misconduct

---

[5]     Because eCW does not seek to admit extrinsic evidence about this criminal conviction simply as evidence "attacking" Mr. Wheeler's "character for truthfulness," Relators' arguments regarding Rule 609 are irrelevant. As Relators' counsel conceded, this criminal history is still admissible under Rule 608 without resort to Rule 609. (Dec. 4, 2023 R. Snyder Email (attached as Ex. B) ("Even if ECW could show that Mr. Wheeler's incident would meet the definition of a prior act of untruthfulness under Rule 608, then ECW still cannot introduce any extrinsic evidence of that incident, but could only, at best, ask him questions about the incident.").) Mr. Wheeler's plea to computer theft, which includes the element of "obtaining property by any deceitful means or artful practice," Ga. Code Ann. § 16-9-93(a), would qualify as a specific instance of conduct admissible under Rule 608, *Cruz*, 2022 WL 808008, at *5.

was an "inadvertent" mistake as part of his quest to uncover "obvious" security problems, Mr. Wheeler puts at issue his relevant criminal history, which undermines all of these assertions.

### 7. The Court Should Deny Relators' Motion #7 To Broadly Exclude All Questions About "Personal Matters."

Relators broadly seek exclusion of cross-examination on "private and personal matters." This motion should be denied because (1) it seeks to impose a one-way rule in which Relators are allowed to introduce such evidence while eCW is not, and (2) the scope of the motion is vague.

*First*, the motion is one-sided. Relators have elicited and subsequently designated testimony regarding, among other things: (1) the family relationships of eCW's employees; (2) the national origin of eCW's employees; (3) where eCW employees live, and (4) whether eCW fabricated accusations that employees were victims of racial discrimination. (*See, e.g.*, Rels.' Consol. Dep. Designations at 32-37, ECF No. 417 (designating portions of the August 12, 2025 deposition of Girish Navani on these topics).) If Relators are allowed to pursue such topics, eCW must be allowed to respond in kind given "what's sauce for the goose is sauce for the gander." (Rels.' Mot. at 1 n.2, ECF No. 384 (citation omitted).) Moreover, courts routinely admit evidence regarding a witness's "private and personal matters" if they are relevant to a witness's bias, credibility, or motives. *See, e.g.*, *Feldman*, 2010 WL 2911606, at *5 (cited in Rels.' Mot. at 2, ECF No. 384) (admitting evidence of relators' personal relationship with defendant for impeachment purposes and to show bias).

*Second*, Relators' request to exclude all evidence and argument related to "personal, private matters of Relators, their family and friends, and any witnesses" (Rels.' Mot. at 16, ECF No. 384) is simply too broad and ill-defined to be granted preemptively. Rather, such evidence is better examined on a case-by-case basis as it arises. *See, e.g.*, *White v. Dolgencorp, LLC*, 2023 WL 2703612, at *1 (S.D. Miss. Mar. 29, 2023) ("[E]videntiary rulings addressing broad classes

16

of evidence 'should often be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in proper context.'") (citation omitted); *Feldman*, 2010 WL 2911606, at *5 (similar).  Without knowing exactly how Relators or other witnesses will testify at trial (or what they subjectively believe to constitute a "private or personal matter"), it is impossible to know for certain that no such information will be relevant.  For example, if any Relator had a "personal issue" that imposes a financial burden, eCW should be allowed to point to his need for revenue as a potential source of bias in his testimony.  Accordingly, the Court should deny this motion at this time with instructions to raise any potentially covered matter before presenting such evidence during trial for later adjudication by the Court.

**8.  The Court Should Deny Relators' Motion #8 To Bar Any Reference To Whether Relators Told Tier2 Customers About The Vulnerabilities Alleged In This Case Because Such Evidence Is Highly Relevant To Their Credibility.**

Relators seek to hide from the jury that, at the very same time they were telling DOJ that eCW's EHR contained a raft of vulnerabilities—including ███████████████████ ████████—they were signing off on their customers' government-mandated security risk assessments ("SRAs") that asserted the same EHR had (among other things) satisfactory ███████ █████████████████████████  It is hard to imagine more relevant evidence.  Relators' motion should therefore be denied.  (*See also* ECF No. 414-1 (seeking preadmission of same).)

Relators argue that they could not share details with their customers because their case was under seal and that their position is consistent with the Court's ruling that the ***risks*** of possible data breach are not relevant.  (Rels.' Mot. at 17-18, ECF No. 384.)  Neither argument has merit.

At the threshold, there is no support for the proposition that because Relators' complaint was under seal they had to include statements on their customers' government-mandated SRAs that Relators believed to be false.  The FCA's seal provision "only preclude[s] a qui tam relator . . . from discussing ***the FCA complaint***"; it "does not bar the qui tam relator from discussing the

*underlying fraud*."  *Am. C.L. Union v. Holder*, 673 F.3d 245, 256 (4th Cir. 2011) (emphases added).  If Relators genuinely believed otherwise, they were misinformed, and are free to explain that to the jury on redirect.

Moreover, the evidence in question is not about the risks of breach.  Instead, Relators' failure to advise clients that Relators believed the statements in the SRAs to be false (or to tell them they needed to take remedial measures in light of alleged deficits in eCW software or simply to switch vendors) is highly relevant because (1) it calls into question a central element of Relators' claim—falsity; and (2) it contradicts relators' other statements and shows Relators' bias and lack of credibility.  (*See* ECF No. 414-1 at 6 (collecting cases).)[6]

***First***, this evidence is relevant to disprove Relators' allegation of falsity.  The SRAs (one of which is dated two months after Relators filed this case) assert that eCW's EHR has functional ██████████████████████████████.  (*See* ECF No. 414-1 at 6-7.)  Those statements contradict Relators' assertion in this case that eCW's EHR lacks such functionality and therefore made attestations of compliance with 45 C.F.R. § 170.315(d)(1), (d)(2) and (d)(3) false.  And because the SRAs contain prior statements of Relators, they are admissible as substantive evidence on these points against them.  Fed. R. Evid. 801(d)(2).  In sum, this evidence tends to "disprove a specific fact that is material to the case," and is therefore admissible.  *Travis v. Exel, Inc.*, 2013 WL 12109758, at *2 (N.D. Ga. May 31, 2013) (denying motion *in limine* seeking to exclude extrinsic evidence of a witness's prior conduct given that under Rule 608, parties may use "extrinsic evidence to prove or disprove a specific fact that is material to the case") (quoting *United States v. Taylor*, 426 F. App'x 702, 705 (11th Cir. 2011) (per curiam)).

---

[6]     Relators' interrogatory responses confirming that they never communicated any of the specific vulnerabilities at issue in this case should also be admitted.  (*See* ECF No. 414-1.)

***Second***, Relators' prior statements to their customers (or lack thereof) are also relevant to their bias, credibility, and motive.  They claim they did not share their true beliefs with their customers because they "were worried that a 'leak' about the vulnerabilities before eCW fixed them could put the private PHI of millions of Americans at risk."  (Rels.' Mot. at 17 n.18, ECF No. 384.)  But the statements in the SRAs completely undermine that claim.  If Relators were so worried about their clients, why would Relators knowingly make false statements in federally mandated documentation concerning the security of their EHR systems?  And why would they refuse—***to this day, many years after the complaint was unsealed***—to tell customers they believe are attesting to use of certified software that Relators believe that such attestations constitute false claims?  These contradictions go to the core of Relators' bias, credibility, and motives and therefore must be admitted.  *Travis*, 2013 WL 12109758, at *2 (explaining extrinsic evidence of a witness's prior conduct may be used "to show bias, to contradict a witness's testimony, or to demonstrate that the witness has made prior inconsistent statements") (citation omitted).  It is up to the jury to decide whether the explanation Relators proffer in their brief is credible.  For all these reasons, the Court should deny this motion as well.

9.  **The Court Should Deny Relators' Motion #9 To Exclude Reference To Relators' Abusive And Derogatory Statements To eCW Employees Because They Show Relators' Bias Against The Company And Motivation For Bringing Suit.**

Relators ask this Court "to exclude all communications (whether written or recorded) involving Relators, Tier2, or its customers and eCW, unless the communication specifically addresses the security vulnerabilities or certification issues at issue here, and is subject to a hearsay exception."  (Rels.' Mot. at 19-20, ECF No. 384.)  That is likely because Relators have made some harsh statements to eCW employees over the years, including completely inappropriate remarks about fluency in English that reflect animus and bias.  Because such evidence is obviously relevant to Relators' bias, credibility, and motive, it should be admitted.

19

Relators' own authority illustrates the admissibility of this evidence. In *United States ex rel. Feldman v. van Gorp*, the relator alleged that a professor and his institution had made false statements in submissions to the government that resulted in fraudulent payments. 2010 WL 2911606, at *5 (cited in Rels.' Mot. at 2, ECF No. 384). The relator moved to exclude evidence about his relationship with the professor. *Id.* While the court noted that the relator's relationship with the professor was not relevant to any elements of an FCA claim, the court nonetheless denied the motion, ruling that the relationship was admissible as "evidence of bias and for purposes of impeachment." *Id.* The court explained that "because [r]elator will testify at trial, [d]efendants are permitted to 'raise to the jury *any* challenges to [his] credibility.'" *Id.* (quoting *Ramey*, 378 F.3d at 283) (emphasis added). Indeed, "[t]he motivation of a witness in testifying, including [his] possible self-interest and any bias or prejudice against the defendant, is one of the principal subjects for cross-examination." *Id.* (citation omitted).

So too here. Relators have put their credibility at issue by choosing to testify. They have made claims about (1) vulnerabilities in eCW's software, (2) the real-world impact of those vulnerabilities, and (3) eCW's alleged knowledge of and unwillingness to fix issues in its software. Consequently, eCW must be allowed to elicit testimony and present evidence that puts Relators' bias, credibility, and motives into question. And the evidence at issue here—for example, that Mr. Permenter admitted during his deposition to sending aggressive emails to eCW, including one in which he stated, "you don't know what the [expletive] you are doing, you can't speak a word of English" (6/21/24 Permenter Dep. 51:22-52:6, ECF No. 218-101)—is extremely probative of Relators' bias toward eCW. Accordingly, this motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Relators' motions.

Dated: October 3, 2025

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

21

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on October 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

<u>/s/ *Duke R. Groover*</u>
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720