**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.,* ALEX PERMENTER, ERIC RODIGHIERO, and CHRIS WHEELER,<br><br>   Plaintiffs,<br><br> v.<br><br>eCLINICALWORKS, LLC,<br><br>   Defendant. | Case No. 5:18-cv-382 (MTT)<br><br>Honorable Marc T. Treadwell |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE
RELATORS' TECHNICAL ALLEGATIONS UNTETHERED
TO CERTIFICATION REQUIREMENTS**

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................2

I.    IT IS UNCONTESTED THAT MR. ARRIGO FAILS TO DISCUSS OR LINK MULTIPLE TECHICAL ALLEGATIONS TO CERTIFICATION CRITERIA. ..............2

II.   THE FEW TECHINCAL ALLEGATIONS RELATORS ADDRESS CONFIRMS THEY ARE DISCONNECTED FROM ANY CERTIFICATION CRITERIA. ........................................................................................................................4

III.  eCW'S MOTION SEEKS TO ENFORCE THE COURT'S JUNE 2025 ORDERS. ........................................................................................................................9

CONCLUSION ...................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.,*
  402 F.3d 1092 (11th Cir. 2005) ...................................................................................3

*Knepfle v. J-Tech Corp.,*
  48 F.4th 1282 (11th Cir. 2022) ..................................................................................10

*N. Star Mut. Ins. Co. v. Zurich Ins. Co.,*
  269 F. Supp. 2d 1140 (D. Minn. 2003) ........................................................................4

*New Hampshire Ins. Co. v. Blue Water Off Shore, L.L.C.,*
  2009 WL 1509459 (S.D. Ala. May 4, 2009) ................................................................3

*Smith v. Carnival Corp.,*
  2025 WL 1793417 (S.D. Fla. June 30, 2025) ..........................................................3,4

*Snac Lite, L.L.C. v. Nuts 'N More, L.L.C.,*
  2016 WL 6778268 (N.D. Ala. Nov. 16, 2016) .............................................................1

*Trahan v. Martin,*
  2005 WL 8244658 (N.D. Ga. June 23, 2005) ..............................................................3

**Other Authorities**

45 C.F.R. § 164.514(b)(1) ...................................................................................................5

45 C.F.R. § 164.514(b)(2) ...................................................................................................5

45 C.F.R. § 170.315 ............................................................................................................5

45 C.F.R. § 170.315(d)(12) .................................................................................................7

45 C.F.R. § 171.102 ............................................................................................................5

77 Fed. Reg. 54,163 (Sept. 4, 2012) .................................................................................6,8

79 Fed. Reg. 54,430 (Sept. 11, 2014) ..................................................................................5

80 Fed. Reg. 62,602 (Oct. 16, 2015) ............................................................................1,5,7,8

Relators' brief confirms that they have no argument as to how the vast majority of their remaining technical allegations have any *evidence-backed* link to ONC certification criteria.  In June, the Court ordered Relators to submit a "revised [expert] report [that] will link the alleged flaw with the certification criterion that Relators' attorneys contend it applies." (*See* 6/4/25 Hr'g Tr. 28:16-18, ECF No. 334.)  The Court also prohibited Relators from "issu[ing] regulatory opinions" or "even talk[ing] about … the certification criteria." (*Id.* at 26:7-8.)  That leaves Relators' certification expert, Michael Arrigo, as their sole option for providing admissible expert opinions that reliably connect Relators' technical allegations with certification criteria.

Mr. Arrigo's reports fail this requirement.  It is undisputed that Mr. Arrigo's reports do not mention several technical allegations.  Relators do not disagree that Mr. Arrigo invokes irrelevant criteria that are not at issue in this case.  Nor do they even try to defend how listing allegations in a chart and putting an "X" to signify that a criterion was violated meets the requirements of Rule 702 and *Daubert*.  It does not under undisputed law.  *See, e.g.*, *Snac Lite, L.L.C. v. Nuts 'N More, L.L.C.*, 2016 WL 6778268, at *7-8 (N.D. Ala. Nov. 16, 2016).  Indeed, Relators do not engage with almost any of the regulations or guidance documents that eCW cites to show Mr. Arrigo's opinions are divorced from and in conflict with ONC's regulations.  And fundamentally, Relators do not contest that the (d)-criteria are not free-floating, generic privacy and security requirements, but "conditional" criteria expressly tied to the specific software capabilities for the specific health IT products that a developer has "presented for certification," which forecloses many of Relators' other technical allegations.  80 Fed. Reg. 62,602, 62,616 (Oct. 16, 2015).

Instead, Relators try to invent hurdles to dissuade the Court from enforcing its June order requiring a link between the technical allegations and certification criteria discussed at trial.  Relators argue that Mr. Arrigo "was not obligated to explicitly 'tie' every vulnerability identified

1

by an expert to a specific certification" and the Court's June order was directed solely at Relators' expert reports (Opp. at 3, ECF No. 432)—even though the Court expressly precluded Relators from "even talk[ing] about … the certification criteria." (6/4/25 Hr'g Tr. 26:7-8.) Relators argue that it is optional for Mr. Arrigo to disclose his opinions in his Rule 26 expert reports because he can simply provide "examples" (Opp. at 3, 14)—a position for which Relators lack any support, is foreclosed by countless cases, and would balloon the length of this trial well beyond the currently proposed two weeks. (*See* Proposed Joint Pretrial Order at 3.) And Relators spend pages asserting that their violations of the Court's June order are actually an attempt by eCW to relitigate the Courts' summary judgment and *Daubert* decisions, ignoring that this Court ordered Relators—in conjunction with those decisions—to submit a "revised report" providing the necessary reliable link between technical allegations and ONC criteria. (*See* 6/4/25 Hr'g Tr. 28:16-18.) Relators' position that they can ignore that order without consequences or challenge is meritless, and their undisputed failure to link technical allegations to certification criteria as this Court ordered requires exclusion of those allegations.

## ARGUMENT

**I.  IT IS UNCONTESTED THAT MR. ARRIGO FAILS TO DISCUSS OR LINK MULTIPLE TECHICAL ALLEGATIONS TO CERTIFICATION CRITERIA.**

Relators do not dispute that Mr. Arrigo's reports lack any reference to Relators' ███ ███████████████████████████████████████████████████ (*See* eCW Br. at 7, ECF No. 378-1.) If Mr. Arrigo had disclosed opinions on those allegations, Relators would have

quoted them in their brief. They do not because his reports lack any such opinions.

Relators also have no response to Mr. Arrigo's failure to link the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ allegation to *any* (d)-criteria, or that his only mention of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is to screenshot Relators' reports or list them in a table without explanation. (eCW Br. at 7-8.) "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005). "[I]t was [Relators'] burden—not that of the trial court—to lay the foundation for admission of [Mr. Arrigo's] testimony," and conclusions "unsubstantiated by any proffered facts, explanation, or analysis" are not admissible. *Id.* at 1112, 1114. Because these arguments are uncontested, these technical allegations should be excluded.

Rather than demonstrate that Mr. Arrigo's report includes reliable opinions on these 14 technical allegations, Relators argue that eCW "misses the point" because Mr. Arrigo need only disclose "examples" of his opinions and can launch into new opinions at trial because he stated "the basis for his opinions included 'Relators reports and testimony.'" (Opp. at 13-14.) That is meritless. "The rules required [a party] to disclose *all* of the opinions that [their expert] would offer and the bases therefor." *New Hampshire Ins. Co. v. Blue Water Off Shore, L.L.C.*, 2009 WL 1509459, at *4 (S.D. Ala. May 4, 2009) (emphasis added). "[T]hose rules would be eviscerated could a party disclose only some of those opinions and later sandbag its opponent at trial with additional, undisclosed opinions by blaming the opponent for relying on the report and not aggressively probing the expert for other opinions he might hold and might ultimately assert." *Id.*; accord *Trahan v. Martin*, 2005 WL 8244658, at *9 (N.D. Ga. June 23, 2005) (excluding undisclosed expert opinions "to prevent unfair surprise to Defendants"); *Smith v. Carnival Corp.*,

3

2025 WL 1793417, at *1 (S.D. Fla. June 30, 2025) (barring expert from offering opinions "not disclosed in their expert witness reports or depositions"). That conclusion is reinforced by the Court's June order that Relators revise the relevant expert reports so they are only offering opinions where there is a link between the technical allegation and the certification criteria. Relators do not cite a single case permitting an expert to disclose new affirmative opinions at trial, rather than account for new facts in connection with disclosed opinions. (*See* Opp. at 13.) The notion that Relators can instead sandbag eCW at trial with new undisclosed certification opinions violates the letter and spirt of this Court's order and Rule 26.

## II.   THE FEW TECHINCAL ALLEGATIONS RELATORS ADDRESS CONFIRMS THEY ARE DISCONNECTED FROM ANY CERTIFICATION CRITERIA.

For the remaining technical allegations in eCW's motion—████████████████████████████████████████████████████████████████████—Relators do not engage with the criterion text, regulatory guidance, and ONC interpretations that foreclose any link to the certification criteria. (*See* eCW Br. at 12-28.)[1] Instead, Relators' arguments largely underscore Mr. Arrigo's failure to ground his opinion in any regulatory guidance, "any treatise, any industry code of conduct, or anything outside of his self-professed opinion, to demonstrate that the opinion has any legitimacy." *N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1148 (D. Minn. 2003).

████████████. Relators lack any response to the fact that ONC expressly states that "[t]here is no standard required" for compliance with (d)(5) and views ████████ like a ████████ as a "control enhancement," not a basic default that must be present to comply with (d)(5). (*See* Exs. 1-3 to eCW Br., ECF No. 378-3 to -5.) Despite those undisputed

---

[1]   Relators have withdrawn their ████████ allegation as it relates to criterion (d)(9). (*See* Opp. at 15 n.9.)

4

points, Relators note that eCW's expert, Kyle Meadors, said "before Version 11 was certified" that the term "access means view" when interpreting the "*2014* Edition Final Rule," which Relators interpret to mean there is a ▇▇▇▇▇▇▇ requirement. (Opp. at 15 (emphasis added).) But the *2015* Edition applies to Version 11 of eCW's software, and ONC made clear when promulgating the 2015 regulations that it would not be "overly prescriptive" and was accounting for the "common practice" that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[2] Regardless, Relators omit that Mr. Meadors rejected during this same discussion that imposing blackout screens is ▇▇▇▇▇▇▇ stating ▇▇▇▇▇▇▇▇▇▇ (8/22/24 Meadors Dep. 92:5-16, ECF No. 238.)

Relators also claim that Mr. Arrigo "explained at length in his rebuttal report" why (d)(5) requires ▇▇▇▇▇▇▇ because he asserts the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ apply to ONC regulations. (Opp. at 15.) But Mr. Arrigo's entire "explanation" that ▇▇▇▇▇▇▇▇▇ ▇▇▇▇ is a cursory table that assumes that conclusion. (Arrigo Rebuttal Rpt. at 43-44, ECF No. 200-7.) He cites ***nothing*** to substantiate that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; (Ex. 1 to eCW Br., ECF No. 378-3); *see also* 45 C.F.R. § 164.514(b)(1), (2) (merely providing how a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).[3]

---

[2]   Even under the inapplicable 2014 Edition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

[3]   Relators lack any evidence that eCW's software was not "able" to provide a ▇▇▇▇▇▇▇, or that eCW "attested" the software had ***this*** "function." 45 C.F.R. § 170.315; (Opp. at 15). Moreover, the JIRA ticket

5

███████████. Relators "acknowledge[] that eCW creates multiple ██," do not dispute that eCW's ███████████████████████████████, and do not dispute that ONC expressly permits using ███████████████ (Opp. at 16; eCW Br. at 20.) Still, Relators assert that Mr. Arrigo "disagrees with eCW about its ███████████████" without ever articulating what ONC-required information ███████████████ (Opp. at 16.) Relators generally cite back to Mr. Arrigo's deposition, but his position there was that he ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (9/26/24 Arrigo Dep. 168:24-25, 169:18-22, ECF No. 218-105 (emphasis added).) Again, it is undisputed that ONC guidance states eCW ███████████████████████ (Ex. 5 to eCW Br., ECF No. 378-7.) Mr. Arrigo's persistent failure to explain *how* (d)(2) was not satisfied requires exclusion of this allegation.

███████████████████ Relators' response on the ███████████████ allegation is three sentences. (Opp. at 16.) They do not explain what these allegations have to do with (d)(1) or (d)(5), and cannot dispute that the Court recognized "[c]learly, malicious actors fall outside t[he] definition[]" of "user" under (d)(2), which applies equally to (d)(3). (eCW Br. at 17-18; Mot. to Dismiss Order at 14, ECF No. 90.) Rather than address eCW's arguments, Relators cite to the Court's statement █████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████. But Relators' ██████████████████████████████

---

Relators attach is evidence that the software *is* able to provide this option, and as Mr. Meadors opined, ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Meadors Rpt. at 24, ECF No. 218-14.)

6

██████. (*See* Rels. Rpt. ¶ 39, ECF No. 342-1.) Other than screenshots of Relators' allegations and asserting that "eCW Failed to meet Standard § 170.315(d)(3)"—a conclusion this Court has already excluded—Mr. Arrigo lacks any explanation how that allegation implicates (d)(3).

**Encryption of Authentication Credentials.** Relators acknowledge that criterion (d)(12) is relevant only to eCW attestations after June 2020, and they cannot dispute that ONC "***does not*** require certified health IT to have [(d)(12)] capabilities or for health IT developers to implement these capabilities for a specific use case or any use case." (Opp. at 16; eCW Br. at 21 (emphasis added).) Since any answer complies with (d)(12), Relators were required to explain how changing a "yes" to "no" would affect eCW's certification. They cannot. Relators' sole effort to do so is to invoke generic testimony from ONC's representative that developers are "accountable for performance" with criteria if they "attest[] compliance with" that criteria. (Opp. at 17.) Not only is that testimony not about (d)(12), but it cannot change that ONC "does not" require any "capabilities" for "any use case" as part of (d)(12), since answering "No – the Health IT Module does not encrypt stored authentication credentials" is an equally compliant response for purposes of receiving certification. 45 C.F.R. § 170.315(d)(12); (Ex. 6 to eCW Br., ECF No. 378-8).

████████████████████████████████████████████████████████████ Relators cannot dispute that Mr. Arrigo's opinions ignore ONC's regulatory framework. (eCW Br. at 3-4.) ONC regulations are clear that the "EHR Incentive Programs" only require "Health IT Modules" to satisfy (d)-criteria specific to the particular "capabilities for certification." 80 Fed. Reg. 62,602, 62,705-706. To that end, the "2015 Edition Privacy and Security Certification Framework" confirms "the regulation of third party applications is outside the scope of certification, unless those applications are seeking certification as Health IT Modules." *Id.* at

62,676, 62,705-06. Relators never explain how the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are within the scope of the *software capabilities that eCW certified*. Because they cannot explain how Mr. Arrigo's opinions satisfy that foundational requirement, they fail to show his opinions have any reliable link to the ONC certification criteria.

In addition to those threshold problems, Relators' arguments on all three of these technical allegations fail. For their ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ allegations, Relators ignore ONC's statement that (d)(7) only applies to "storage capabilities that are *designed* for use with developer provided or supported technologies" and does *not* apply to patient data that a user elects to share with another device, including "an individual or isolated user action to save or export a file to their personal electronic storage media." (Ex. 7 to eCW Br., ECF No. 378-9 (emphasis added)); 77 Fed. Reg. 54,163, 54,238. Relators also do not dispute ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ given they deemed "information that has been sent to a print queue or downloaded by the user (such as downloading a PDF report) to no longer be managed by the EHR technology." 77 Fed. Reg. 54,163, 54,238-39. As this guidance makes clear, ▮▮▮▮▮▮▮▮▮▮ are not the kind of third-party products that implicate certification.

On ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ allegations, Relators also do not dispute that criterion (d)(1) requires only that "when [a] set of [known user] credentials is provided, the system [can] perform the authentication [of those credentials] properly," and has nothing to do with imposters gaining access with stolen credentials. (9/20/24 Posnack Dep. 49:4-25, ECF No. 218-17.) Relators do not contest the fact that (d)(4) concerns only amendments requested by *patients* and not by other entities such as ▮▮▮▮▮▮ or a malicious user, and (d)(11) concerns only access to information specifically "for treatment, payment and health care operations," ▮

8

▇▇▇▇▇▇▇.  (eCW Br. at 26-27.)  The fact that Relators largely ignore these many objective sources refuting any reliable link between Relators' technical allegations and any certification criteria confirms that Mr. Arrigo has no reliable opinion on these topics.

### III. eCW'S MOTION SEEKS TO ENFORCE THE COURT'S JUNE 2025 ORDERS.

Because Relators cannot explain how the opinions in Mr. Arrigo's reports reliably connect Relators' technical allegations to certification criteria, they spend most of their brief launching procedural objections.[4]  They characterize this motion as a "misleadingly titled," "untimely," and "blatant" reconsideration motion.  (Opp. at cover page, 1, 3-11.)  But this motion is none of those things:  The Court *agreed* with eCW that, notwithstanding its *Daubert* and then-pending summary judgment motion, Relators were required to submit a "revised [expert] report [that] will link the alleged flaw with the certification criterion that Relators' attorneys contend it applies."  (6/4/25 Hr'g Tr. 28:16-18.)  This order was distinct from summary judgment, which the Court decided with all "inferences … drawn in … favor" of Relators.  (Summ. J. Order at 28-29.)  It was also distinct from the Court's *Daubert* rulings, which—contrary to Relators' assertion (Opp. at 4-5)—did *not* address whether Mr. Arrigo offered reliable opinions linked to certification criteria.  (*See, e.g.*, 6/4/25 Hr'g Tr. 9:6-18 (addressing Arrigo's qualifications); *id.* at 22:18-23:4 (addressing whether Arrigo could rely on work done by Relators and be crossed on those assumptions).)  In other words, this motion does not seek reconsideration of the Court's prior decisions; it asks this Court to *enforce* its June order to the extent that Mr. Arrigo's reports fail to "link the alleged flaw with the certification criterion."  (*Id.* at 28:16-18.)

Relators' reconsideration arguments are all surface deep.  Relators note that eCW's motion cites "the same legal standard as its first *Daubert* motion."  (Opp. at 4.)  But the fact that

---

[4] eCW is not asking "ask[ing] the Court to revisit one of its rulings" by reiterating its position for preservation purposes that "the legal interpretation of ONC regulations is a question of law for this Court, and no expert should be permitted to instruct the jury how to read these regulations."  (eCW Br. at 12 n.3.)

9

the same legal standard applies to Mr. Arrigo's failure to offer reliable expert opinions in compliance with the Court's *June 2025* order hardly makes that a motion for reconsideration. The Court issued a *separate* order requiring Relators to meet specific obligations that their experts have not met. Relators also contend eCW should have raised Relators' failure to link ███████████████████████████████████████████████████████ ███████████████████████████████████████████ in its summary judgment briefing. (Opp. at 5.) But the Court had not yet dismissed Relators' HIPAA liability theory, barred Relators themselves from opining on regulatory issues, and ordered revised expert reports that link the technical allegations to a certification criterion. With those issues settled, Relators cannot show Mr. Arrigo's opinions clear the requirements for admissibility under Rule 702. *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1296 (11th Cir. 2022) (affirming exclusion of expert whose "entire claim distills to the contentions that [he] is an expert, he looked at the available evidence, and deduced what happened"). eCW respectfully urges the Court to hold Relators to their failure to provide the necessary, objective, and reliable link to ONC regulations.

## CONCLUSION

Permitting dozens of technical allegations to proceed to trial when Relators' sole certification expert admittedly lacks any disclosed opinion on them or offers opinions directly contradicted by ONC guidance and regulations serves no one—especially the jury. The fact that Relators' plan is to have Mr. Arrigo make up for these failures by spontaneously offering multiple new, undisclosed opinions at trial will add weeks of time and complexity to a trial that already threatens to be extremely complex. The Federal Rules and this Court's orders required Relators to link their technical allegations to criteria. They did not. For these reasons, eCW respectfully requests that the Court enforce its June order and exclude Relators' technical allegations that Mr. Arrigo failed to reliably link to any security-related (d)-criteria.

10

Dated: October 8, 2025

                                      Respectfully submitted,

                                      */s/ Duke R. Groover*
                                      Duke R. Groover
                                      Georgia Bar No. 313225
                                      dgroover@jamesbatesllp.com
                                      JAMES BATES BRANNAN GROOVER LLP
                                      231 Riverside Drive
                                      Suite 100
                                      Macon, Georgia 31201
                                      Tel: (478) 742-4280
                                      Fax: (478) 742-8720

                                      Allison M. Brown (*pro hac vice*)
                                      alli.brown@kirkland.com
                                      KIRKLAND & ELLIS LLP
                                      2005 Market Street, Suite 1000
                                      Philadelphia, Pennsylvania 19103
                                      Tel: (215) 268-5000

                                      Geoffrey M. Wyatt (*pro hac vice)*
                                      geoffrey.wyatt@kirkland.com
                                      KIRKLAND & ELLIS LLP
                                      1301 Pennsylvania Avenue, N.W.
                                      Washington, D.C. 20004
                                      Tel: (202) 389-3393

                                      Martin L. Roth (*pro hac vice*)
                                      martin.roth@kirkland.com
                                      KIRKLAND & ELLIS LLP
                                      333 West Wolf Point Plaza
                                      Chicago, Illinois 60654
                                      Tel: (312) 862-7170

                                      Aaron Katz (*pro hac vice)*
                                      akatz@aaronkatzlaw.com
                                      AARON KATZ LAW LLC
                                      399 Boylston Street, 6th Floor
                                      Boston, Massachusetts 02116
                                      Tel: (617) 915-6305

                                      *Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720