## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>      Defendant. | No. 5:18-CV-382<br><br>Honorable Marc T. Treadwell |

## eCLINICALWORKS, LLC'S OPPOSITION TO RELATORS' MOTION TO SUPPLEMENT WOLFSTON'S DAMAGES MODEL

## TABLE OF CONTENTS

INTRODUCTION.....................................................................................................................1

ARGUMENT ........................................................................................................................2

I.   RELATORS SHOULD NOT BE PERMITTED TO FIX THE SIGNIFICANT
     ERRORS IN MS. WOLFSTON'S ANALYSIS UNDER THE GUISE OF
     SUPPLEMENTATION. ..........................................................................................2

     A.   Relators' Proposal Is Neither Timely Nor A "Supplement" Under
          Rule 26(e). ......................................................................................................2

     B.   Relators' Arguments Lack Merit. .....................................................................5

II.  MS. WOLFSTON SHOULD NOT BE GIVEN THE OPPORTUNITY TO
     ADD ADDITIONAL DATA TO HER DAMAGES MODEL...................................8

CONCLUSION ...................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Innovative Props. v. Dupont Dow Elastomers, LLC*,
  2005 WL 6007042 (D. Minn. Aug. 29, 2005) ....................................................3, 4

*Andrews v. United States*,
  2021 WL 7452225 (N.D. Fla. June 2, 2021) ...........................................................7

*Bell v. Guardian Auto. Corp.*,
  2021 WL 3017987 (N.D. Ga. Jan. 21, 2021) .......................................................3, 5

*Buchl v. Gascoyne Materials Handling & Recycling L.L.C.*,
  2021 WL 9975874 (D.N.D. Sept. 9, 2021)..............................................................2

*Cent. Mut. Ins. Co. v. Ace Am. Ins. Co.*,
  2022 WL 18956200 (S.D. Fla. Dec. 14, 2022) .......................................................9

*Coast Federal Bank FSB v. United States*,
  49 Fed. Cl. 11 (2001) ..............................................................................................4

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
  2016 WL 3102225 (S.D. Fla. June 2, 2016) ...........................................................6

*Davis v. Little Giant Ladder*,
  2022 WL 2111499 (M.D. Fla. May 11, 2022)..........................................................4

*Durden v. Citicorp Tr. Bank, FSB*,
  2008 WL 11318338 (M.D. Fla. Nov. 25, 2008) .......................................................7

*Ford of Kendall, LLC v. Lemus*,
  2024 WL 4449455 (11th Cir. Oct. 9, 2024).............................................................6

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
  2016 WL 11756862 (C.D. Cal. Oct. 24, 2016)........................................................7

*Goodbys Creek, LLC v. Arch Ins. Co.*,
  2009 WL 1139575 (M.D. Fla. Apr. 27, 2009) ......................................................3, 6

*GRV Aviation, Inc. v. Hale Aircraft, Inc.*,
  2003 WL 25672798 (N.D. Ga. Jan. 31, 2003).........................................................7

*Guevara v. NCL (Bahamas) Ltd.*,
  920 F.3d 710 (11th Cir. 2019) .........................................................................2, 3, 8

*Miller v. Burton*,
    2025 WL 2608655 (N.D. Ala. Sept. 9, 2025) ...........................................................9

*Negrete v. Allianz Life Insurance*,
    2011 WL 4852305 (C.D. Cal. Oct. 13, 2011) ...........................................................4

*Oasis Capital, LLC v. Nason*,
    2025 WL 385550 (S.D. Fla. Jan. 15, 2025) .............................................................7

*Oklahoma v. Tyson Foods*,
    2009 WL 2252129 (N.D. Okla. July 24, 2009) .......................................................7

*Pit Row, Inc. v. Costco Wholesale Corp.*,
    101 F.4th 493 (7th Cir. 2024) ...................................................................................2

*Stevenson v. Cyprus Amax Mins. Co.*,
    2018 WL 8608320 (M.D. Fla. May 8, 2018) ...........................................................8

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................2

Fed. R. Civ. P. 37 ............................................................................................................7

Fed. R. Evid. 702 ............................................................................................................1

## INTRODUCTION

Relators say they want to "supplement" the opinions of their putative damages expert, Emily Wolfston, but what they are really asking for is a do-over. Relators concede that Ms. Wolfston's model is based on irrelevant versions, includes vast numbers of non-eCW customers, and relies on inapposite Medicare data. These missteps mark not minor errors or gaps in data but are fundamental and egregious flaws.

Unreliable methods have one available remedy under Rule 702: exclusion. Relators insist that they should be granted leave to "supplement" their way out of Ms. Wolfston's flawed methods, arguing that supplementation of damages models is commonplace. But such supplementation of this timing and type is ***not*** typical. Rule 26(e)(2) expressly mandates that such supplementation "must" occur prior to pretrial disclosure deadlines, which have passed. And courts routinely reject efforts to rescue expert opinions from methodological flaws under the guise of supplementation. Where the required information was available at the time of the first report, supplementation is improper. That is the case here. Ms. Wolfston had access from the start to all the data that Relators now wish her to use to fix the errors in her model. She should not be allowed to revise her methods now—both as a matter of basic fairness to eCW and as a matter of judicial economy given the new round of expert discovery such "supplementation" would unleash.

Relators' request to supplement Ms. Wolfston's model with additional eCW customers and CMS data must also be denied for similar reasons. This request is also unduly late. The pretrial disclosure deadlines have passed; the customer data existed in CMS and ONC databases from the outset; and the "new" CMS payment data were released nearly six months ago. And the request is inequitable: it would permit Relators to profit from the significant errors hidden in Ms. Wolfston's original model by using the delay these errors created to try to prop up Ms. Wolfston's damages estimates. The Court should not countenance such a result.

**ARGUMENT**

I.    **RELATORS SHOULD NOT BE PERMITTED TO FIX THE SIGNIFICANT ERRORS IN MS. WOLFSTON'S ANALYSIS UNDER THE GUISE OF SUPPLEMENTATION.**

A.    **Relators' Proposal Is Neither Timely Nor A "Supplement" Under Rule 26(e).**

Relators are not entitled to redo Ms. Wolfston's damages model to correct fundamental errors that they knew or should have known about at the time it was first conceived. Supplementation of expert reports is permitted prior to the pretrial disclosure deadline to fix minor inaccuracies or take account of new information, not to avoid exclusion under *Daubert*.

Rule 26(e) "imposes a duty on an expert to supplement her report 'in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019) (quoting Fed. R. Civ. P. 26(e)(1)(A)). "'[A]ny additions or changes to' the expert report '*must* be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.'" *Id.* (quoting Fed. R. Civ. P. 26(e)(2)).

Relators' proposal fails at the threshold because even if it would otherwise be a proper supplement in substance, it is too late. Rule 26(e)(2) sets a deadline for updates to expert reports—the due date for pretrial disclosures, which in this case was September 12, 2025 at the latest. (*See* Order, ECF No. 349 (filed July 16, 2025).) Allowing supplementation at such a late date also would be profoundly prejudicial to eCW. Unsurprisingly, courts have excluded untimely supplemental reports that would "significantly modify the revenue and expense calculations" on the eve of trial. *E.g.*, *Buchl v. Gascoyne Materials Handling & Recycling L.L.C.*, 2021 WL 9975874, at *2 (D.N.D. Sept. 9, 2021). The Seventh Circuit recently affirmed exclusion of a supplemental expert report because "allowing the supplement would be prejudicial to [the defendant's] efforts to prepare its defense." *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 503 (7th Cir. 2024) (excluding supplemental expert report because "allowing the supplement

would be prejudicial to [the defendant's] efforts to prepare its defense.").  And supplementation would further prejudice eCW by requiring it to depose Ms. Wolfston and Mr. Wheeler; prepare responsive expert reports; and (if appropriate) pursue further *Daubert* briefing.  For this reason alone, Relators' motion should be denied.

Nor do the other requirements of Rule 26(e) support Relators' request to "supplement" Ms. Wolfston's opinions.  Supplementation means just that:  to supplement, not to replace, fix, or try again.  Rule 26(e) does not permit "supplementation to add points that could have been made in the original expert report or to otherwise shore up weakness or inadequacies." *Bell v. Guardian Auto. Corp.*, 2021 WL 3017987, at *3 (N.D. Ga. Jan. 21, 2021) (internal citation and quotation omitted).  The Rule is not intended to be a "safe harbor" for an expert's "lack of diligence," especially where the data informing the supplementation was known or available to the proponent of the witness all along.  *3M Innovative Props. v. Dupont Dow Elastomers, LLC*, 2005 WL 6007042, at *4 (D. Minn. Aug. 29, 2005); *see also Goodbys Creek, LLC v. Arch Ins. Co.*, 2009 WL 1139575, at *2-3 (M.D. Fla. Apr. 27, 2009) (excluding an untimely expert supplement because a "report that suffers from a major omission cannot be cured by the use of supplementation" and "Rule 26(e) . . . does not cover failures of omission because the expert did an inadequate or incomplete preparation") (citation and quotation marks omitted).

Thus, when experts propose not merely to supplement but to expand, fix, or redo their analyses, courts routinely reject invocation of Rule 26(e)'s supplementation provisions.  In *Guevara*, for example, the Eleventh Circuit excluded an "unreasonably delayed" supplemental report because the expert waited more than "five weeks after he received [contradictory information], over a month after the close of discovery, and three days after the district court's deadline for dispositive and *Daubert* motions."  920 F.3d at 719.  Similarly, in *3M Innovative*

3

*Properties*, the defendant's expert sought to "supplement" his deposition testimony through additional testing designed to respond to criticisms raised at the deposition, which the court rejected as improper, explaining that the tests "could have been performed prior to the [] discovery deadline" and thus the information they generated was constructively available to the expert at the time of the initial report.  2005 WL 6007042, at *5.[1]

Relators' proposals to "supplement" Ms. Wolfston's damages model by having her remove non-eCW customers, substitute proper Medicare payment data, and restrict the model to Version 11 suffer from the same flaws.  Each of these issues was or should have been known to Relators and Ms. Wolfston well before now—and Relators' offer to "supplement" her model to address them is patently an improper attempt to make up for (at best) lack of diligence and respond to criticisms of her methods.  Relators have known since at least August 2, 2024—the date of the initial report—that Ms. Wolfston's model improperly included non-eCW customers.  The relevant Medicare payment data have likewise been available to Relators since that time.  And Relators narrowed their liability theory to Version 11 nearly a year ago, in November 2024,[2] yet continued to rely on a damages model that included irrelevant software versions until eCW raised the issue.[3]

---

[1]    Relators' cases do not address such circumstances and are therefore inapposite.  In *Davis v. Little Giant Ladder*, 2022 WL 2111499, at *1 (M.D. Fla. May 11, 2022) (cited in Mot. at 4), for example, supplementation was permitted to account for "developments during a substantial delay," not to correct errors that were apparent from the outset.  Here, every fact relevant to Relators' proposed supplementation was known to them for nearly a year.  And in *Negrete v. Allianz Life Insurance*, 2011 WL 4852305, at *4 (C.D. Cal. Oct. 13, 2011) (cited in Mot. at 5), the expert defended his methodology, but here, Relators concede they cannot defend Ms. Wolfston's 15-step methodology that caused the incorporation of thousands of irrelevant customers, and instead seek to rewrite it.  (ECF No. 429 at 13.)

[2]    On November 21, 2024, in response to eCW's motion for summary judgment, Relators narrowed their theory of liability to single version of eCW's EHR software.  (*See* Relators' Mot. Summ. J. Response, ECF No. 266 at 32 ("Relators' claims here are about Version 11 of eCW's software certified in December 2017").)

[3]    For this reason, Relators' citation to *Coast Federal Bank FSB v. United States*, 49 Fed. Cl. 11, 14 (2001) (cited in Mot. at 5) for the proposition that the fact that the "case has narrowed . . . support[s] supplementation" (*id.*) is misplaced.  In *Coast Federal Bank*, supplementation was permitted only after the court itself rejected a damages claim, not where, as here, the party narrowed its own case in response to a summary judgment motion and then waited nearly a year, after a motion was filed, to offer to update its damages model.

In short, because Ms. Wolfston could have done everything Relators are now proposing to have her do in her initial report or in the October 2024 supplement following her deposition, Relators' requested supplementation on these matters is nothing more than an attempt to "shore up" inadequacies they have known about for over a year. *Bell*, 2021 WL 3017987, at *3. That is not proper under Rule 26(e)—particularly now that the deadline for pretrial disclosures has passed.

**B.    Relators' Arguments Lack Merit.**

Relators offer a hodgepodge of arguments in support of their request to supplement, most of which only succeed in underscoring the impropriety of their proposal, and none of which supports it.

*First*, Relators' argument that eCW did not raise issues until recently (Mot. at 4-5) is unavailing. Rule 26(e) imposes a continuing duty on Relators to supplement "if [Relators] learn[] that in some material respect the[ir] disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). That duty is not triggered by an adversary's objection; it is triggered by the party's own knowledge. *See id.* Moreover, eCW did not alert Relators to any new facts. Relators were the ones who narrowed their liability theory to Version 11, which should have prompted immediate correction of Ms. Wolfston's report. Instead, they did nothing until eCW filed its motions. And the CMS and ONC data they now intend to have Ms. Wolfston consult have been available all along. Notably, Mr. Wheeler helped create the very spreadsheets and "matching" methodology that Relators now admit swept in thousands of irrelevant non-eCW customers. (*See* ECF No. 192.) And Relators also admit they considered and disregarded the ONC database on which they now seek to rely. (*See* ECF No. 429 at 15 (admitting that they were aware of the ONC database identifying the CEHRT used by MIPS participants but "ultimately decided not to use it").) In another brief, Relators claim they dismissed this database as "vastly under inclusive" (*id.*), yet they now seek leave to have Ms. Wolfston rely on this very same database to "confirm" the exclusion

5

of non-eCW customers in their proposed supplemental model, and even to add new clinicians. (ECF No. 434 at 3-4.)  Relators' belated concession that they should change course is not the result of new information, but of strategic delay.  And even if the matter is one of diligence rather than strategy, courts in this Circuit do not permit supplementation for "failures of omissions [where] the expert did an inadequate or incomplete preparation." *Goodbys Creek, LLC*, 2009 WL 1139575, at *2-3 (citation omitted); *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) ("a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report").

**Second**, Relators' claim that eCW has somehow invited or demanded supplementation is contrary to the record and established case law in this Circuit.  eCW's primary requested relief has been the exclusion of Ms. Wolfston's damages model in its entirety.  (ECF No. 364-1 at 5 (Version 11 brief arguing that the "Court should exclude Ms. Wolfston's damages opinions … because her opinions rest on a mistaken premise about which versions of the software remain at issue and thus do not 'fit' that theory of liability"); ECF No. 365-1 at 10 (MIPS brief arguing that "Ms. Wolfston's damages opinion should be excluded in their entirety"); ECF No. 366-1 at 8 (non-eCW customers brief arguing that "the Court [should] issue an order precluding Ms. Wolfston from proffering her damages opinion at trial").)  The fact that eCW argued **in the alternative** that supplementation should be required is not inconsistent with and does not undermine its primary position that exclusion is the proper remedy.  *See Ford of Kendall, LLC v. Lemus*, 2024 WL 4449455, at *4 (11th Cir. Oct. 9, 2024) (noting that "[a] party does not waive or forfeit an argument he's adequately argued by making another argument in the alternative").[4]

---

[4]     If the Court permits Relators to submit a supplemental damages model to address the errors eCW has identified and/or to add damages based on data, eCW should be allowed to submit revised opinions from Dr. Baker and Dr. Grabowski, as well as depose Ms. Wolfston and Mr. Wheeler.  These updated opinions along with depositions are essential to respond to Relators' new methodology and recalculated damages, ensuring the record is both accurate

**Third**, Relators' attempt to justify their proposed supplementation by pointing to eCW's use of Dr. Baker's declarations in support of its motions (Mot. at 2, 6) is misplaced. The purpose of Dr. Baker's declaration is to support eCW's motions to exclude—it is not to supplement his prior reports. It is well established that a declaration submitted with a motion to clarify or explain arguments is not equivalent to a revised or supplemental expert opinion. As courts have made clear, expert declarations consisting of "critiques of [the plaintiff's] expert reports" are permissible "inasmuch as these opinions may assist the court in evaluating the reliability of the challenged expert's opinion." *Oklahoma v. Tyson Foods*, 2009 WL 2252129, at *5, 9 (N.D. Okla. July 24, 2009); *see also, e.g.*, *Oasis Capital, LLC v. Nason*, 2025 WL 385550, at *12 (S.D. Fla. Jan. 15, 2025) (permitting an expert declaration in support of a *Daubert* motion because it provided "context" for the motion and was sufficiently related to the expert's "original and rebuttal reports"); *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 11756862, at *3 (C.D. Cal. Oct. 24, 2016) (permitting plaintiff's expert declaration in support of its *Daubert* motion). That is precisely the role of Dr. Baker's declaration, which grows directly out of his

---

and complete. eCW should also be permitted to cross-examine Ms. Wolfston and Mr. Wheeler at trial on the defunct damages model. And eCW reserves the right to seek compensation for fees and costs incurred to address supplementation, including the need to file its motions raising the issues; to oppose the motion to strike; to oppose this motion; to argue the motions; to obtain further reports and testimony from its own experts; and for any motion practice required to test the admissibility of the new opinions or to seek summary judgment in any part based on them. *See Durden v. Citicorp Tr. Bank, FSB*, 2008 WL 11318338, at *8 (M.D. Fla. Nov. 25, 2008) (holding that "any additional attorneys' fees and costs resulting from Plaintiff's failure to provide [an] expert report fully and timely should be charged to Plaintiff" (citing Fed. R. Civ. P. 37(c)(1)(A))); *GRV Aviation, Inc. v. Hale Aircraft, Inc.*, 2003 WL 25672798, at *4 (N.D. Ga. Jan. 31, 2003) (awarding "reasonable expenses and fees inclined in connection with [a] motion [to exclude] and in connection with" certain "earlier" related efforts); *Andrews v. United States*, 2021 WL 7452225, at *6 (N.D. Fla. June 2, 2021) (holding that "Plaintiff and her counsel will be responsible for paying the reasonable fees and expenses of the Defendant related to the filing and prosecution of the motion to strike and the taking of [a] deposition" incurred after Plaintiff's untimely expert disclosure).

reports and responds to the narrowed liability theory and revelations about Relators' inclusion of noncustomers that were not available to him at the time of his reports.[5]

In short, Relators' continuing efforts to try to blame eCW for the inexplicable and highly impactful errors in Ms. Wolfston's damages model are improper and unavailing.  They should not cloud the proper resolution of their motion, which is to deny it.

## II.    MS. WOLFSTON SHOULD NOT BE GIVEN THE OPPORTUNITY TO ADD ADDITIONAL DATA TO HER DAMAGES MODEL.

Relators' attempt to inject new customers and 2023 payment data into their model is equally improper and prejudicial for many of the same reasons.  First, it too is untimely both under Rule 26(e)(2) and as a matter of undue delay.  The new customers Relators propose to have added are those they have ostensibly identified on the same ONC database that Relators were aware of but elected not to use for Ms. Wolfston's initial report.  And the "new" payment data is not new. Relators admit these data were publicly available on April 8, 2025 (Mot. at 4 n.5), but they waited nearly six months, after eCW filed its motions seeking to exclude Ms. Wolfston, to seek supplementation.  Such delay should preclude supplementation.  *See Guevara*, 920 F.3d at 719 (affirming exclusion where a party waited "more than five weeks after [its expert] received" new information to supplement); *Stevenson v. Cyprus Amax Mins. Co.*, 2018 WL 8608320, at *4 (M.D. Fla. May 8, 2018) (denying leave to file a supplemental expert report where "Plaintiff waited nearly one month after she received" new documents "to seek leave" to supplement).  Further, to the extent Relators deemed the latest CMS data critical to Ms. Wolfston's damages model, they should have sought discovery from CMS directly rather than waiting for the data to be published.

---

[5]    Of course, if Relators are granted leave to reinvent Ms. Wolfston's damages models, eCW must be granted leave to do the same as a matter of basic fairness, at which point the issues raised in Dr. Baker's declarations (among others) will be included in a "supplemental" report.

The fact that they did not do so belies the assertion that these data were ever important to them and further underscores the untimeliness of their request.

***Second***, the addition of new customers and data for the entirety of the 2021 Performance Year would further prejudice eCW by requiring it to depose Ms. Wolfston and Mr. Wheeler on these issues, to prepare responsive expert reports, and (if appropriate) to pursue additional *Daubert* briefing. The new payment data pose additional burdens. The government declined to intervene in this case in the fall of 2021, giving rise to additional defenses as to alleged payments made based on use of eCW's software in the end of that year. The government's decision not to intervene after a complete investigation—and its continued payment after that date notwithstanding full knowledge of Relators' allegations—gives rise to materially different defenses based on government knowledge, which relates both to the scienter and materiality elements of Relators' case. (*See* ECF No. 216-1 at 17-18 (arguing that relevant factors for materiality in an FCA case include the extent of the government's knowledge of the alleged misrepresentations and their effect on the government's behavior).) eCW would have also changed the scope of its *Touhy* requests and subpoenas to inquire about the government's decisions not to deny payments to eCW's physician customers and de-certify eCW's software, notwithstanding the government's knowledge of Relators' allegations during the 2023 performance year. *See Miller v. Burton*, 2025 WL 2608655, at *2 (N.D. Ala. Sept. 9, 2025) (excluding an expert affidavit because the "late disclosure prejudiced Defendants by denying them access to the substance of his opinion until after they had already moved for summary judgment"); *Cent. Mut. Ins. Co. v. Ace Am. Ins. Co.*, 2022 WL 18956200, at *3 (S.D. Fla. Dec. 14, 2022) (excluding an untimely expert report because "Defendant was . . . not afforded adequate opportunity to prepare counterarguments . . . where

information pertaining to Plaintiff's expert was offered late in the game"). Revisiting these issues promises substantial additional delay and expense, which the Court should not permit.

That is all the more true given the equities of the situation. In essence, Relators are seeking to capitalize on the revelation of the severe deficiencies in their damages model by taking advantage of the delay *their* supplementation request would cause if granted. It is clear that Relators are attempting to salvage a damages model that, even if permitted to be propped up via "supplementation," will fall far short of the sky-high numbers Ms. Wolfston originally calculated. But it is not the office of Rule 26(e) to protect a party's damages expectations that were never valid to begin with—especially when that party had the information needed to make a better damages estimate in the first place. For this reason too, the Court should deny Relators' motion.

<u>**CONCLUSION**</u>

Relators' motion for leave to supplement should be denied and Ms. Wolfston's damages opinions excluded.

10

Dated: October 16, 2025

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 16, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720