UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>Defendant. | CASE NO. 5:18-CV-382 |

**RELATORS' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT**[1]

eCW claims Relators should have anticipated **in August 2024** issues eCW raised **for the first time on August 28, 2025**, just 12 days before the pre-trial exchange deadline.[2] It argues that Ms. Wolfston should have known the liability case (about which she has no opinions) would narrow to Version 11 or that her models built on eCW's own customer list included purported non-eCW users. If Ms. Wolfston should have known about those supposed issues fourteen months ago, there is no reason eCW could not have raised them in Dr. Bakers' 2024 rebuttal reports, or eCW's 2024, *Daubert* motion. eCW's strategic decision not to raise these issues until the eve of trial is pure gamesmanship aimed at causing as much chaos as possible.

The Court already ruled that Ms. Wolfston's overpayment formulas and matching methodology were reliable and admissible. Doc. 333 (June 4, 2025 minute sheet). Ms. Wolfston's supplement does not materially change either of those methods. eCW's response to Relators' motion to supplement makes clear that its late filed damages motions have nothing to

---

[1] The Court granted Relators' motion to supplement by text entry and directed Relators to file/serve Ms. Wolfston's supplemental report by October 20th. Doc. 470. Relators have done so. Doc. 478. After entering the text order, the Court clarified that the Order allowed service of the supplement, but did not rule on its propriety.

[2] eCW filed its renewed *Daubert* motions on August 28th, 12 days before the parties' September 9th PTO deadline.

1

do with ensuring complete damages information is presented at trial. If that were so, eCW would have approached Relators to discuss the issues before filing its motions and would not object to Ms. Wolfston's supplementing her opinions to address eCW's late-raised concerns. eCW's motions, instead, only seek reconsideration of the Court's Order denying its first motion to exclude. Doc. 474 (arguing "eCW's primary requested relief has been the exclusion of Ms. Wolfston's damages model in its entirety."). Given that admission and eCW's other arguments, the Court should grant Relators' motion to strike eCW's motions. Doc. 372.

eCW's filings also ignore fundamental truths. Factually, while the pre-trial submissions have been made, no trial date has been sent. And eCW's own lead counsel told Relators that she was unavailable for trial until at least April 2026. There is more than enough time to handle (through limited discovery) Ms. Wolfston's supplementation. And this Court has vast discretion to supervise discovery and manage its docket. *Crawford-El v. Britton*, 523 U.S. 574, 598-599 (1998). Rule 26(a)(2)(D) provides that expert disclosures must be made "at the times and in the sequence that the court orders." "There is a preference in the federal system that trials be determined on the merits, and not on constructions of the Federal Rules … that operate needlessly … to deprive a party of its right to have a merits-based determination." *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006). eCW's arguments turn Rule 26(e) on its head. Rule 26(e) "imposes duties on the parties," but does not limit a court's discretion to direct the timing in which expert reports can be filed or supplemented. *Id.* at 421. Courts interpret Rule 26 "in light of the overarching proposition that 'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise.'" *Deltona Transformer Corp. v. NOCO Co.*, No. 6:19-CV-308-CEM-LRH, 2021 WL 4444000, at *3 (M.D. Fla. July 1, 2021) citing *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). "Allowing as a

discretionary matter, the filing of a supplemental report that fully informs the recipient of the anticipated testimony of the expert accomplishes that very purpose." *Talbert*, 236 F.R.D. at 421. Interpreting Rule 26 as eCW does "disserves the desideratum of the Rule and effectively eliminates the discretion [the Rule] grants" to Courts. *See, e.g., id*.

Damages models are routinely updated to address new data, rebuttal opinions, and liability rulings. This case is no different, no matter how hard eCW tries to spin the facts or distort the law.

## ARGUMENT

### I.     The Pretrial Disclosure Deadline is Not Inflexible.

eCW's argument that supplementation is barred because the pretrial disclosure deadline has passed is incorrect. Rule 26(e)(2) establishes the timing for expert supplements, but Rule 37(c)(1) governs consequences, if any, for allegedly late supplementation. Rule 37(c)(1) makes clear that the harsh sanction of exclusion is not appropriate if the supplementation was "substantially justified" or "harmless." Courts routinely hold that a supplement filed after the pretrial deadline may be considered when justified or harmless.[3] Ms. Wolfston's is both.

### II.    The Supplemental Report is Justified.

The timing of the supplement is justified for at least three reasons: (1) the relevant data did not exist or was not known when Ms. Wolfston prepared her reports; (2) eCW's untimely second *Daubert* motions and supplemental rebuttal opinions raised new issues; and (3) the case materially changed after the Court's summary judgment ruling. Each circumstance independently supports a finding of substantial justification.

---

[3] *See, e.g., Action Nissan, Inc. v. Hyundai Motor Am. & Genesis Motor Am.*, No. 6:18-CV-380-WWB-EJK, 2021 WL 4783314, at *1-2 (M.D. Fla. Sept. 23, 2021) (denying motion to strike expert supplement filed after pretrial disclosure deadline because late disclosure was harmless); *Lack v. Caesar's Ent. Corp.*, No. 20 CV 5394 (VB), 2024 WL 1995220, at *2-3 (S.D.N.Y. May 6, 2024) (same); *Smart Mktg. Grp., Inc. v. Publications Int'l, Ltd.*, No. 04 C 0146, 2009 WL 10700187, at *5 (N.D. Ill. Jan. 20, 2009) (same).

*First*, the Medicare claims payment data for 2023 was not published until April 8, 2025, long after Ms. Wolfston submitted her initial and first supplemental expert reports. Despite eCW's claims to the contrary, Relators did seek the 2023 payment information directly from the government before Ms. Wolfston's 2024 reports but were told the 2023 payment data did not and would not exist until May 2025.[4] But when that data was released, eCW's summary judgment and *Daubert* motions were pending. Relators reasonably waited to see whether the case, and Ms. Wolfston's testimony, would survive those rulings before undertaking additional expert work.

The Court did not rule on summary judgment until June 25, 2025. Only then did supplementation become necessary, or even appropriate. Three weeks later, the Court set the pretrial disclosure deadlines for September 9, 2025. Doc. 349. Those filings were no small undertaking, requiring hundreds of hours of work, while the parties were also taking six trial preservation depositions. Thus, while Relators had access to the 2023 payment data before the September 9th pretrial disclosure deadline, the combination of case uncertainty, limited time, and the other burdens of trial preparation made supplementation by that date difficult. *Action Nissan, Inc.*, 2021 WL 4783314 at *2 ("while Plaintiffs could and should have disclosed the supplement sooner, the failure to do so does not warrant exclusion."). It is now complete and disclosed before trial, or a pretrial conference, has even been set.

Ms. Wolfston also was unaware of the ASTP database that eCW faults her for not using to verify that a limited number of customers she matched to eCW's list actually reported using eCW's CEHRT.[5] Ms. Wolfston knew about the Quality Payment Program (QPP) database and

---

[4] Ex. 1, April 24, 2024 email from Howard Cohen to Rob Snyder (responding to Relators' draft *Touhy* request seeking payment data for 2023 and stating "[b]ecause entities that render services reimbursed by Medicare Part B have one year from the date of service to submit claims, the dataset pertaining to CY 2023 will not even start to be constructed until after the claim run-out period on 31 December 2024, so the earliest that dataset would become available would be roughly May 2025. Since these items just do not exist, they cannot be produced.").

[5] It appears eCW and its experts were also unaware of this database given it was not raised at any point during expert discovery or in eCW's initial *Daubert* motion. Adding a "check" of the ASTP database to matched customers

4

the CHPL database—the two datasets from which the ASTP database is derived. The QPP database included a CEHRT ID field entry for some of the entries and Ms. Wolfston attempted to correlate that field to the CHPL website but was unable to do so.[6] The first time Relators and Ms. Wolfston heard of the ASTP dataset with "cleaned up" CEHRT IDs was on August 25, 2025, when eCW filed its three new *Daubert* motions. Ms. Wolfston promptly reviewed the database and agreed to incorporate it as a "check" against her customer matches.

*Second*, before eCW filed its renewed *Daubert* motions **two weeks** before the pretrial deadline, it did not raise any issues with Ms. Wolfston's matching methodology or her use of "Total Medicare Payment Amounts" in her Damages Model 1. Ms. Wolfston has now considered those issues and deemed it appropriate to address them. But this was impossible to do earlier as Relators could not have anticipated issues eCW itself had not disclosed. Surely, if any party in this case knows who eCW's customers are it is eCW itself, but it didn't raise matching issues until a year after Ms. Wolfston's first report.

*Third*, while Relators narrowed their certification claims on summary judgment, eCW forgets that Relators also had a HIPAA based claim with a broader damages theory than the certification claim. If that claim survived summary judgment, Relators could have included payments related to all versions of the software in its damages theory. Thus, it was appropriate to include non-Version 11 users in Ms. Wolfston's 2024 models.

### III. Ms. Wolfston's Supplemental Report is Harmless.

Even if Ms. Wolfston's supplement was unjustified, it is harmless. Her supplement is not, as eCW alleges, a "do-over." It does not introduce new theories, change her core

---

resulted in the removal of only 636 customers from models that now include 11,018 and 7,846 respectively—an "error" rate of between 5.7% and 8.1%.

[6] ASTP noted that it had to use a "fuzzy" algorithm and then manually correct some of the CEHRT IDs in the dataset.

methodology, or alter the foundation of her opinions. It uses the same overpayment formula previously disclosed but simply updates the Medicare payment amount that is used (to eCW's benefit no less). Her supplement largely uses the same customer matching methodology previously disclosed but now with a few more sub-steps. And it incorporates new payment information and adds additional eCW customers using the ASTP database eCW agrees should be considered.

In exercising its broad discretion to determine if a supplement is harmless, "a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Wynn v. Henry Cnty. Sch. Dist.*, No. 1:18-CV-2638-CAP, 2021 WL 4817815, at *3 (N.D. Ga. Mar. 25, 2021) (citation and punctuation omitted). Each factor favors Relators.

There is no surprise because Ms. Wolfston's supplement does not change her methodology or introduce new theories, and the data it is based on was either publicly available or known to eCW.[7] *See, e.g., Action Nissan, Inc.*, 2021 WL 4783314 at *2 (any surprise to defendants was limited where the supplemental opinions were "logical extensions" of the expert's prior opinions and based on data produced by or publicly available to defendants). Most of the changes made in the supplement were made at the request of eCW. And Relators will work with eCW to produce Ms. Wolfston and Mr. Wheeler for deposition as soon as possible. Given that, eCW has ample time to prepare any cross examination before trial. *See, e.g., Lack*,

---

[7] This is particularly true for the Version 11 issue. eCW could have easily filtered the data itself, but Ms. Wolfston had already done so in her October 2024 supplemental damages models by including columns identifying the version of eCW's software in use by each customer.

2024 WL 1995220 at *3 (noting five weeks before trial was sufficient time to prepare to cross-examine expert on supplemental report).

This issue is also very important, favoring supplementation. The case involves money owed to the Government and the taxpayers. It is therefore imperative that the damages information presented is fulsome and accurate. It has always been Ms. Wolfston's goal to provide accurate opinions and this supplement further ensures that. *See, e.g., Action Nissan, Inc.*, 2021 WL 4783314 at *2 (importance of damages evidence weighed against exclusion).

Because the supplement is based on issues that were largely unknown to Relators until twelve days before the pretrial disclosure deadline or data that was unavailable when Ms. Wolfston's initial reports were filed, any delay is reasonable. *See, e.g., Action Nissan, Inc.*, 2021 WL 4783314 at *2 (finding "while Plaintiffs could and should have disclosed the supplement sooner, the failure to do so does not warrant exclusion" where supplement was based on unavailable data and continuances caused reports to become outdated); *Smart Mktg. Grp., Inc.*, 2009 WL 10700187 at *5 (supplement harmless where it would have been timely if court followed default thirty-day pre-trial disclosure deadline outlined in Rule 26).

Under these factors, the supplement is plainly harmless and should not be excluded.

## IV.     eCW's Claimed Prejudice is Overstated and Incorrect.

eCW's argument that supplementation requires new *Daubert* briefing or significant additional discovery is exaggerated. Ms. Wolfston's overpayment calculation and matching methodology was already subjected to *Daubert* scrutiny and passed. Adding or removing a small subset of customers, updating payment data, and substituting a Medicare payment amount does not change that ruling. And Relators will produce Ms. Wolfston and Mr. Wheeler for deposition.

In a Hail Mary attempt to establish prejudice, eCW makes its third or fourth attempt (Relators have lost count) to seek reconsideration of the Court's summary judgment ruling on

materiality. It argues that supplementing to include more specific 2023 payment data somehow raises new or different materiality defenses. eCW is wrong. Payments made after the DOJ's intervention decision *have been at issue since Ms. Wolfston's very first report.* In her first report, Ms. Wolfston included payments made to eCW customers in 2022—the year after the declination decision. Doc. 192-3 (Wolfston Aug. 2, 2024 Rep. ¶ 28 (noting Damages Model 1 included claims payment data for 2018-2022)). And her supplemental October 2024 report, Ms. Wolfston "calculated new MIPS scores and overpayment amounts for known eCW customers … for the 2021 performance year." Doc. 192-6 ¶ 6 (Wolfston Oct. 15, 2024 Supp. Rep.). Because specific payment information was not available for 2023 she calculated 2023 overpayments using the minimum MIPS threshold, something eCW's experts responded to in a supplemental rebuttal. Doc. 294 ¶ 6 (Nov. 2024 Baker & Grabowski Suppl. Reb.). In other words, eCW knew that 2022 and 2023 payments were in Ms. Wolfston's models when it moved for summary judgment in October 2024. Any argument that including more specific 2023 payments requires the reopening of summary judgment briefing is as wrong as the rest of eCW's arguments.

## CONCLUSION

Relators respectfully request that the Court grant Relators' leave to supplement Ms. Wolfson's expert report.

Respectfully submitted this 20th day of October, 2025.

*/s/ Robert H. Snyder, Jr.*
Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com

Chase Lyndale
Georgia Bar No. 183762
chase@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

*Counsel for Relators/Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 20th day of October, 2025.

>   */s/ Robert H. Snyder, Jr.*
>   Robert H. Snyder, Jr.
>   Georgia Bar No. 404522
>
>   *Counsel for Relators/Plaintiffs*