**Response To Relators' Submission Regarding Annotated Report**

**Introduction**

There is no legal, factual or logical basis for Relators' proposed annotations to the report of Oren Wortman. The underlying premise of Relators' overreaching annotations and accompanying submission is that if both Mr. Wortman and Mr. Litwak even ***considered*** the same allegation, any of Mr. Wortman's opinions regarding that allegation should be struck. Relators take this uncompromising position: (i) regardless of the work Mr. Wortman personally conducted regarding the allegation, (ii) regardless of the fact that Mr. Wortman's opinions go far beyond Mr. Litwak's opinions, and (iii) notwithstanding the reality that for most of Relators' allegations, Mr. Litwak did not even have access to the majority of the materials that Mr. Wortman considered in formulating his opinions. Moreover, Relators concede that ***dozens*** of paragraphs in Mr. Wortman's report do not rely, contradict, or relate in any way to the consulting work done by Mr. Litwak yet they inexplicably ask this Court to exclude Mr. Wortman's opinions ***in their entirety***. (*See* Annotated O. Wortman Report & Explanations ("AR&E") (ECF No. 485-1), at 3 (listing 7 of 18 subsections in Section V of Mr. Wortman's report as "unaffected").) For these reasons, and those explained below, the Court should deny their request for sanctions, and deny their request to strike any portion of Mr. Wortman's report.[1] As explained below, the most appropriate remedy, if any is required, is to reopen Mr. Wortman's and/or Mr. Litwak's deposition.

---

[1] Although eCW does not agree that ***any*** paragraphs of Mr. Wortman's report should be struck for the reasons set forth below, it will withdraw paragraphs 84, 91, and 92 of Mr. Wortman's report, which are the only remaining paragraphs containing "verbatim" material.

Relators ignore the following indisputable facts that fully undercut their proposed relief:

- The opinions in Mr. Wortman's report go far beyond Mr. Litwak's preliminary assessment of Relators' allegations.[2]

- Mr. Wortman personally reviewed and analyzed source code, JIRA tickets, client presentations and demonstrations, and other materials to formulate his opinions.[3]

- The only testing involving the use of automated tools performed by Mr. Litwak and referenced in Mr. Wortman's report was limited to four alleged vulnerabilities.[4]

- Many of Mr. Wortman's opinions address developments and facts that emerged after Mr. Litwak presented his initial findings.[5]

In addition, Relators' submission takes inconsistent positions that create a "heads Relators' win, tails eCW loses" outcome. On the one hand, Relators argue that if Mr. Wortman and Mr. Litwak covered the same topic and agreed, Mr. Wortman must have simply adopted Mr. Litwak's work and therefore failed to properly disclose his reliance on Mr. Litwak. (*See* AR&E, at 5, 7 (§§ II & IV).) On the other hand, Relators argue that if Mr. Wortman and Mr. Litwak covered the same topic and disagreed (which inherently suggests that Mr. Wortman *did not* rely on Mr. Litwak's prior consulting work), Mr. Wortman's opinions should still be struck. (*See*

---

[2] *See generally infra* Sections 3 and 4 (setting forth numerous opinions of Mr. Wortman that go far beyond Mr. Litwak's opinions and the work done by Mr. Litwak).

[3] (*See, e.g.*, Wortman Dep. (ECF No. 237), at 67:5-22 (explicitly disclaiming that he reviewed any "conclusions" from Mr. Litwak, and testifying he personally reviewed and analyzed the portions of the source code he asked Mr. Litwak to identify for him); Wortman Rep. (ECF No. 210-1), at ¶ 150 ▮▮▮▮▮▮▮▮▮▮; *id.* ¶ 153 ▮▮▮▮▮▮▮▮▮▮); *id.* ¶ 16 (explaining he had "many calls with ECW to evaluate the adequacy of steps it has taken and continues to take in regard to security"); *id.* App. B at No. 337 (listing as a considered material "poc_presentation.pdf").)

[4] (*See* Litwak Dep. (ECF No. 361), at 65:3-25 (testifying the only four allegations that Mr. Wortman specifically asked him to validate were ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮).)

[5] (*See* AR&E, at 3 (listing seven sections of Mr. Wortman's report as "Litwak did not test/analyze" and conceding that "[t]he seven unaffected sections [of Mr. Wortman's report] respond to issues raised by Dr. Cole in his January 2024 report").)

AR&E, at 5-6 (arguing for the exclusion of multiple sections of Mr. Wortman's report that purportedly disagree with Mr. Litwak given the "concealment" of the PowerPoint presentation Mr. Litwak put together).)[6]

Even where Relators show that Mr. Wortman's opinions overlap with those of Mr. Litwak or that he relied on Mr. Litwak's work, even partially, the proper remedy is for Relators to cross-examine Mr. Wortman and probe whether he can reliably provide the opinion himself, not to exclude it.[7]  For example, rather than strike the three non-withdrawn paragraphs of Mr.

---

[6] eCW continues to maintain that this document was properly withheld and not originally identified because it is garden variety work product that Mr. Wortman did not have access to, review, or rely on in formulating his opinions or drafting his report.  Relators' characterization of the document as "concealed" ignores this reality.  It also ignores the fact that eCW in any event affirmatively pointed it out **prior to** Mr. Litwak's deposition in response to an overly broad document request in his deposition notice to which it was responsive.  (*See* Exhibit D at 4.)  In its response, eCW used the word "report."  (*Id.*)  However, Relators subsequently leveraged that characterization to imply that eCW's counsel lied to the Court at the June 4, 2025 hearing when counsel commented on the absence of a report.  (ECF No. 485-2, at 9 (quoting June 4, 2025 Hr'g Tr.).)  As is evident from the transcript, counsel's comment was in response to Relators' repeated incorrect assertion (in their brief and at argument) that automated testing conducted by Mr. Litwak must have resulted in reports given to Mr. Wortman in the course of preparing his report that he thereafter destroyed.  (ECF No. 334, 38:17-40:13.)  That is simply not true.  Therefore, to clarify the confusion created by Relators' unfounded accusations, eCW referred to the document as the Sygnia PowerPoint Presentation, which is more precisely what it is.  In addition, eCW disagrees with Relators' continued comparison of the opinions therein to Mr. Wortman's opinions as if the PowerPoint document were somehow akin to another expert report of the sort contemplated by Rule 26(a)(2)(B).  It is not.  It does not provide any methodology; it does not discuss what it relied on other than source code and other screenshots; it does not provide any explanation whatsoever of the meaning of or basis for any opinion to which Relators cite.  (*See generally* ECF No. 358-3.)  It is nothing more than a PowerPoint presentation that was used to facilitate a discussion with counsel—in which Mr. Wortman did not participate—and its significance has been blown wildly out of proportion by Relators.  Accordingly, eCW will continue to refer to the document as the "PowerPoint" to continue to distinguish it from a report.

[7] Relators claim that having to reopen depositions would be unfairly prejudicial rings particularly hollow given (1) they abandoned their initial request to depose Mr. Litwak after Mr. Wortman's deposition (*see* ECF No. 210-4 at 6-7), and (2) they did not oppose eCW's withholding of the PowerPoint after eCW specifically disclosed its existence prior to Mr. Litwak's deposition (*see* Exhibit D at 4).

3

Wortman's report that contain material identical to material found in the PowerPoint, Relators could easily ask Mr. Wortman to explain the significance of that material and how it relates to his opinions. Indeed, Mr. Wortman has already done so with regard to the purportedly "copied" material in the section of his report regarding ▇▇▇▇▇▇ Specifically, at his deposition Mr. Wortman: (1) explained the significance of the material in paragraph 84 of his report, and (2) explained how the material showed Relators were incorrect. (*See* Wortman Dep. 207:9-214:2.) Then, in his declaration, Mr. Wortman explained that his opinion that Relators were mistaken about ▇▇▇▇▇▇ relied on much more than just the screenshots and descriptions at issue. (*See* Wortman Decl. (ECF No. 264-3), ¶ 6.) If Relators think it is critical to draw out the fact that the images and descriptions were created by another individual—eCW disagrees that it is[8]—they can have the opportunity to so. Regardless, the inclusion of the same or similar material in both documents is simply not enough to justify excluding Mr. Wortman's opinions.

      The fact of the matter is that Relators have not suffered any real prejudice, and even if they have, the proper remedy is not exclusion, but reopening Mr. Wortman's deposition. A further deposition of Mr. Wortman would allow (1) Mr. Wortman to demonstrate to Relators that he came to his opinions independently and can articulate the reasons for the inclusion of each and every fact discussed in the report, and (2) Relators to cross-examine Mr. Wortman with the PowerPoint and to explore any alleged differences in opinion. Mr. Wortman's reopened deposition would cure any possible prejudice Relators have suffered and is more appropriate relief than preventing the jury from hearing what he has to say.

---

[8] Indeed, Relators have never articulated how the fact that Mr. Wortman did not disclose that (1) three paragraphs used illustrations and descriptions identical to those used in the PowerPoint, and (2) another paragraph included a finding that was identical to one listed in the PowerPoint, prevented them from adequately crossing him regarding those paragraphs.

In sum, Relators' annotations are wholly inappropriate. Set forth below is eCW's specific response to each of the four bases Relators assert in support of their annotations. To assist the Court in evaluating the parties' respective positions, eCW has attached a copy of Relators' summary table and added a short explanation of how and why Relators' proposed limitations are too broad (Exhibit A). In addition, eCW has attached a more detailed table which describes each reason why Relators' proposed limitations are too broad and identifies the specific paragraphs, or paragraph sections, in Mr. Wortman's report that should not be excluded for the reason provided (Exhibit B). As shown in Exhibit B, just 16 of the 82 paragraphs in Mr. Wortman's report even contain material that could potentially overlap Mr. Litwak's previous work.[9] Relators have provided no basis for the Court to conclude that the 12 non-withdrawn paragraphs relied upon Mr. Litwak's work. And even then, as noted above, the proper remedy is not exclusion given that Mr. Wortman *disclosed* those opinions. Sanctions are also clearly not warranted.

Finally, eCW has attached a further marked-up version of Relators' annotated report (Exhibit C) that includes responses to the statements they included in comment bubbles and strikeouts through the portions of Mr. Wortman's report that eCW agrees to withdraw.

1. <u>Mr. Wortman Performed Significant Independent Analysis And Should Be Permitted To Testify Regarding The Work That He Did And The Opinions He Formed.</u>

Relators baselessly assert that the entirety of Mr. Wortman's opinions rely on the limited analysis conducted by Mr. Litwak. As an initial matter, Mr. Litwak testified that the only allegations Mr. Wortman asked him to specifically validate were those related to: ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. (Litwak

---

[9] eCW disputes that the Court has wholly excluded Mr. Wortman's opinions set forth in paragraphs 30-59 but agrees for purposes of this exercise they are irrelevant.

5

Dep. 65:8-25.) Moreover, Mr. Wortman was upfront at his deposition and conceded that it was possible that Mr. Litwak may have performed some of the testing that he asked him to do to validate those allegations previously, and in that case "from an efficiency perspective, it wouldn't make sense for [Mr. Litwak] to redo the same thing twice if it was already conducted once." (Wortman Dep. 245:6-13.)

Although Mr. Wortman did rely on Mr. Litwak's work in part for his opinion regarding ▮▮▮▮▮▮ the substance of which he disclosed, Mr. Wortman's work went much further. (Wortman Decl. ¶ 6.) He "personally conducted significant analysis and investigation of the ▮▮▮▮▮▮ including, but not limited to, [his] review and analysis of eCW's source code; [his] review and analysis of videos Relators created regarding ▮▮▮▮▮▮; and [his] many hours of detailed interviews of company employees during which they demonstrated how ▮▮▮▮▮▮ works in their software." (*Id.*) Indeed, Mr. Wortman spent approximately 130 hours in connection with formulating his expert opinions and preparing his expert report. (Wortman Billing (ECF No. 362-2).) That work included a review and analysis of hundreds of documents that were not provided to Mr. Litwak. (*See* Wortman Rep., App. B (listing more than 250 documents Mr. Wortman considered).)

Furthermore, Relators seek to strike paragraphs in which Mr. Wortman opines on materials he reviewed that were ***not even created*** at the time Mr. Litwak conducted his consulting work. For example, numerous paragraphs that Relators annotated as "rel[ying] on Litwak" discuss Mr. Wortman's opinions relating to Relators' and Dr. Cole's expert reports. (*See, e.g.*, AR&E, at 44 (¶ 81, in which Mr. Wortman notes that Relators have "not presented any factual evidence of" the alleged ▮▮▮▮▮▮ vulnerability in their "expert witness report"); *id.* at 44 (¶ 82, in which Mr. Wortman describes allegations in Relators' expert report); *id.* at 47 (¶ 88,

6

in which Mr. Wortman describes allegations in Dr. Cole's report).)  However, Relators' expert report was served in December 2023 (ECF No. 196-2), and Dr. Cole's report was served in January 2024 (ECF No. 194-2), each more than six months ***after*** the PowerPoint was delivered to eCW's counsel on May 9, 2023.  (ECF No. 358-3.)  Thus, Mr. Wortman cannot have relied upon the PowerPoint, or Mr. Litwak's work in connection with the PowerPoint, for analysis of either report.  Similarly, in at least one instance, Relators have sought to strike one of Mr. Wortman's opinions that clearly relies on material, ***in the same paragraph***, that they concede Mr. Litwak could not have reviewed.  (*See* AR&E, at 50 (¶ 97, seeking to strike an opinion in the first section of a paragraph as relying on Mr. Litwak, while leaving unchallenged a second section of the paragraph containing the material upon which the opinion clearly relies).)  Likewise, Relators seek to strike multiple opinions of Mr. Wortman as purportedly contradicting Mr. Litwak, but the opinions clearly rely on materials that Relators themselves concede Mr. Litwak could not have considered.  (*See, e.g.*, AR&E, at 75 (¶ 150, in which Mr. Wortman lays out an opinion based on JIRA tickets); *id.* at 76 (¶ 153) (same); *id.* at 48 (¶ 93, unchallenged paragraph in which Mr. Wortman offers an opinion based on a review of JIRA tickets).)

    In sum, the bulk of Mr. Wortman's opinions rely on independent work he personally conducted, and he should be permitted to testify about that work and the opinions he reached as a result of that work.  Relators' proposal to strike those sections of Mr. Wortman's report that say as much has no real basis and should be rejected.

2.  <u>The "Directly Copied" Materials Are Not Opinions.</u>

    eCW continues to disagree that the four paragraphs in the Wortman Report containing materials that were also in the PowerPoint constitute "copied opinions."  Paragraph 84 merely contains two screenshots of the EHR interface, two screenshots from an automated testing software, and accompanying descriptions; they are not opinions.  (AR&E, at 45-46 (¶ 84).)

7

Paragraphs 91 and 92 contain a screenshot of a database within the EHR and a portion of the source code, respectively; they are not opinions, either. (*Id.* at 48 (¶¶ 91-92).) And paragraph 140 has already been withdrawn. (ECF No. 363 at 4 n.5.) In other words, paragraphs 84, 81, and 92 simply supply factual predicates for Mr. Wortman's ultimate opinions. Nonetheless, as stated above, eCW will agree to withdraw these paragraphs.

3. <u>Mr. Wortman's Opinions Go Far Beyond And Do Not Contradict Mr. Litwak's Opinions, And Even If They Do, That Is No Basis To Strike Mr. Wortman's Opinions.</u>

For the reasons explained above, the exclusion of Mr. Wortman's opinions is wholly inappropriate regardless of whether they agree or disagree with those of Mr. Litwak. But the fact of the matter of is that Mr. Wortman's opinions go well beyond and are wholly consistent with Mr. Litwak's opinions, when taking into account the scope of Mr. Litwak's assignment, the additional materials that Mr. Wortman reviewed that were not available to Mr. Litwak (*see supra* Section 1), and the explanations Mr. Wortman provided for his opinions.[10] Even if there were inconsistencies, the proper remedy would be to cross-examine Mr. Wortman on those topics, not to exclude his opinions.

Relators claim that Mr. Wortman and Mr. Litwak have inconsistent opinions regarding the "seriousness of and continued existence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ identified by Relators." (AE&R, at 6.) The following explains (a) how Mr. Wortman's opinions go far beyond Mr. Litwak's opinions, and (b) how their opinions are consistent.

---

[10] These facts also show that Mr. Wortman cannot have relied upon Mr. Litwak's previous work for his opinions as well.

8

**(a)** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ – ¶¶ 133-135

The PowerPoint contains the following regarding source code obfuscation:[11] (1) a general finding un-obfuscated code is "High" risk (PowerPoint at 9); (2) two table cells and a sentence noting that Versions 11.40 and 12 of eCW's EHR contain un-obfuscated code (*id.* at 9-10); and (3) two screenshots showing un-obfuscated code (*id.* at 11-12).

Mr. Wortman's report: (1) provides a history of eCW's attention to the issue (Wortman Rep. ¶ 133); ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; (3) discusses eCW's efforts ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*id.*); (4) includes a screenshot (not included in the PowerPoint) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ was appropriate (*id.*); (5) provides a criticism of Dr. Cole's opinion ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; and (6) opines on the materiality of the risk ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*id.* ¶¶ 132-133, 135). Contrary to the implication of Relators' submission, Mr. Wortman ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[12]

Mr. Litwak does not include any explanation of why he generally designated ▉▉ ▉▉▉▉▉▉▉▉▉▉ as "high" risk, or discuss whether all ▉▉▉▉▉▉▉▉▉▉ presents a high risk or

---

[11] Each PowerPoint section includes Relators' descriptions in the Amended Complaint of each alleged vulnerability and, where necessary, some additional explanation of Relators' claim.

[12] It is worth reiterating at this point that eCW does not plan, nor has it ever planned, to defend this case by claiming there are no vulnerabilities or issues in its EHR software. Rather, it is defending this case on the basis, among others, that the vulnerabilities in its software are not material and do not mean its software should not have been listed as a Certified EHR, and that eCW did not act with requisite scienter for liability to obtain under the False Claims Act.

if there are types of ▇▇▇▇ that present low or no risk.[13] Nevertheless, Mr. Litwak's general characterization is not inconsistent with Mr. Wortman's opinions, which point out that more than 800 sections of code have been obfuscated. Finally, there cannot possibly be any disagreement regarding Mr. Wortman's opinions on topics one through five above, because Mr. Litwak did not even discuss any of those topics in the PowerPoint.

**(b)** ▇▇▇▇ – ¶¶ 129, 136, 138-139, 141-146[14]

With regard to ▇▇▇▇, the PowerPoint: (1) states such vulnerabilities generally pose a "High" risk (PowerPoint at 9); (2) finds Versions 11.40 and 12 of ECW's EHR contained such vulnerabilities (*id.* at 9, 13); (3) notes a 99% decrease in the number of vulnerabilities from Version 11.40 to 12 (*id.* at 9, 13)[15]; (4) provides a number of illustrations of the issues (*id.* at 14-16, 19); and (5) ▇▇▇▇ (*id.* at 17-18, 20).

Mr. Wortman: (1) opines on the materiality ▇▇▇▇ (Wortman Rep. ¶¶ 136, 145); (2) explains the distinction between ▇▇▇▇ (*id.* ¶ 137); (3) discusses how ▇▇▇▇ generally needs to be addressed and the history of how eCW addressed it (*id.* ¶ 138); (4) opines on how eCW's process for addressing the issue was appropriate (*id.* ¶ 139); (5) comments on Relators' efforts to exploit ▇▇▇▇ (*id.* ¶¶ 141-144); and (6) comments on evidence Relators provided with respect to ▇▇▇▇

---

[13] This is one of the very reasons that initial investigations by consultants are considered work product: they are typically preliminary and do not evaluate the key questions that emerge as the litigation advances.

[14] Mr. Wortman's principal opinions regarding ▇▇▇▇ span from paragraphs 136 to 146. Relators concede that paragraph 137 exceeds the scope of Mr. Litwak's opinion. With regard to paragraph 129, it simply refers to the analysis in paragraphs 136 to 146, so is only affected if the Court were to strike ***all*** of Mr. Wortman's ▇▇▇▇ opinions. Finally, paragraph 140 has been withdrawn.

[15] As noted above, Mr. Wortman has withdrawn his similar opinion.

(*id.* ¶ 146). Importantly, Mr. Wortman expressly acknowledges that the software contained, and continues to contain, some of these potential vulnerabilities.

Based on the above, Mr. Wortman's opinions are self-evidently more expansive than Mr. Litwak's opinions and have very little overlap. Moreover, they are demonstratively ***not*** inconsistent. Contrary to Relators' submission, Mr. Wortman does not contend that the EHR software did not contain such vulnerabilities; rather, his opinion is that eCW had taken reasonable steps to address these vulnerabilities on a risk-prioritized basis, while working on a broader, more permanent solution in parallel ▮▮▮▮. And nothing in the PowerPoint suggests Mr. Litwak investigated anything other than whether any of the ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ Thus Mr. Litwak's severity opinion is nothing more than a general opinion, based upon general severity rankings, and does not take into account the compensating controls and other mitigating factors described by Mr. Wortman.

    **(c)** ▮▮▮▮ – ¶¶ **147-152**

The three slides related to SQL Injection in the PowerPoint: (1) state such vulnerabilities generally pose a "High" risk (PowerPoint at 9); (2) state that Versions 11.40 and 12 of eCW's EHR software contain such vulnerabilities (*id.* at 9, 29); and (3) provide an illustration of the issues (*id.* at 30).

By contrast, Mr. Wortman: (1) explains that eCW is aware ▮▮▮▮ ▮▮▮▮ (Wortman Rep. ¶ 147); (2) discusses additional steps eCW has taken since 2013 specifically to remediate the issue (*id.*); (3) opines regarding the difficulty ▮ ▮▮▮▮ (*id.* ¶¶ 147-148); (4) discusses the additional controls that ▮▮▮▮ (*id.* ¶¶ 149.a-b); (5) notes that on-premise customers are potentially insulated from such vulnerabilities (*id.* ¶ 149.c); (6)

11

provides data going back to 2016 demonstrating the significant progress eCW has made to ▮▮▮▮ (*id.* ¶ 150); (7) discusses eCW's ▮▮▮▮ ▮▮▮▮ (*id.* ¶ 151); and (8) explains the pervasiveness of ▮▮▮▮ throughout the software industry (Wortman Rep. ¶ 152).

Contrary to the claim in Relators' submission that Mr. Wortman disagreed with Mr. Litwak's opinions regarding the severity and continued presence of ▮▮▮▮, Mr. Wortman: (1) does not minimize the risks of ▮▮▮▮; and (2) agrees that the software contained, and continues to contain potential for ▮▮▮▮. For example, Relators claim that Mr. Litwak noted that eCW's ▮▮▮▮, which purportedly contradicts Mr. Wortman. (*See* AR&E, at 6.) That is simply not true. Mr. Wortman specifically acknowledged that the ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ This is just one of many examples in which Relators mischaracterize the nature and scope of what Mr. Litwak and Mr. Wortman did or said.

**(d)** ▮▮▮▮ **– ¶¶ 153-155**

The four slides relating to ▮▮▮▮ in the PowerPoint contain the following: (1) an explanation that Relators have alleged ▮▮▮▮ ▮▮▮▮ (PowerPoint at 37-40); (2) a table cell stating such vulnerabilities generally pose a "High" risk (*id.* at 9); (3) a finding that Versions 11.40 and 12 of eCW's EHR software contain such vulnerabilities (*id.* at 9, 37); and (4) three illustrations of the vulnerabilities (*id.* at 38-40).

Mr. Wortman: (1) explains that ▮▮▮▮ present a pervasive challenge (Wortman Rep. ¶ 153); (2) opines that eCW has taken appropriate steps to mitigate current and future risk (*id.*); (3) opines that eCW has made significant progress, ▮▮▮▮

12

███████████████████, on remediating the issue (*id.*); (4) concludes that eCW has remediated ███████████████████████████ identified in Relators' expert report (*id.* ¶ 154); (6) explains ████████████████████████████████████████████████████████ ██████████████ (*id.* ¶ 155); and (7) explains that the mitigating controls that eCW has "go a long way towards ██████████████████████████ from being exploited" (*id.*). Notably, Mr. Wortman: (1) agrees that the software contained, and continues to contain, some of these vulnerabilities, and (2) notes that eCW's remediation/controls have not been wholly successful.

Simply looking at the two paragraphs above makes clear there is virtually no overlap between Mr. Wortman's detailed analysis and Mr. Litwak's preliminary opinion that there are multiple instances of this "high risk" vulnerability. Nor are they contradictory. And even if they were, as stated above, that is no basis to strike Mr. Wortman's opinion. At most, Relators would be entitled to explore what they believe are inconsistencies.

      **(e)** ██████████████████████████████ **– ¶ 162**

Relators have invented an opinion that Mr. Litwak never stated—neither in the PowerPoint, nor at his deposition. Mr. Litwak was never asked to address whether eCW had appropriately addressed security vulnerabilities, nor did he have access to the necessary materials to do so. Whether a security vulnerability exists is entirely separate from whether a company has taken appropriate steps toward addressing that vulnerability. Mr. Wortman had access to the necessary people and materials to make that assessment; Mr. Litwak did not.

4.    <u>The Record Contradicts Relators' Suggestion That Mr. Wortman Relied On The PowerPoint For Every Topic Both He And Mr. Litwak Tested Or Analyzed.</u>

Relators suggest without explanation that the following paragraphs "are all affected by [Mr.] Litwak's work" because they relate to "several issues that Litwak tested, analyzed, and wrote up in the concealed report." As an initial matter, and as explained in the introduction, the

13

mere fact that two individuals came to the same conclusion without more is not evidence that the second individual must have reviewed and relied upon the work of the former. Indeed, the logical extension of Relators argument is that any time a consultant and an expert agree on the same point, the expert must have relied the consultant's opinion. Such an inference would be particularly improper here as the majority of the paragraphs in these sections of Mr. Wortman's report are either: (1) discussion and review of materials or facts that Mr. Litwak did not or could not have had access to and therefore could not have evaluated, (2) opinions that Mr. Litwak never offered; (3) or descriptions of Relators' allegations.

   (a)      ▇▇▇▇▇▇ – ¶¶ 81-83, 85

For the reasons explained in the Introduction and Section 1 above, there is simply no basis to find paragraphs 81-83 and 85 of Mr. Wortman's report should be excluded given they rely on more than the material in paragraph 84 (which has now been withdrawn).

   (b)      ▇▇▇ – ¶¶ 86-90, 95

Relators have not shown Mr. Wortman's opinions regarding the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ rely on Mr. Litwak's work (other than paragraphs 91 and 92, which have now been withdrawn). Paragraphs 86 and 87 of Mr. Wortman's report merely describe Relators' allegations from the Amended Complaint. (Wortman Rep. ¶¶ 86-87.) Given they are merely descriptions, not opinions, they should not be struck. Similarly, paragraph 88 describes Dr. Cole's expert report, which cannot rely on Mr. Litwak's report for the reasons explained above. Paragraphs 89-90 and 95 set forth Mr. Wortman's overall opinion that eCW had properly updated its software as of version 11.40, and that Relators' substantive claims are wholly unfounded as a result. This opinion relies on the materials and analysis set forth in paragraphs 91-94. Although paragraphs 91 and 92 have now been withdrawn, Relators concede paragraphs 93 and 94—which address, respectively, eCW's ▇▇▇▇▇▇▇▇▇▇ and a screenshot from

Relators—do not rely on the PowerPoint. (AR&E, at 48-49 (¶¶ 93-94).) These paragraphs are more than sufficient to independently support Mr. Wortman's opinions in paragraphs 89-90 and 95, and therefore they should not be excluded.

**(c)** ▓▓▓▓ – **¶¶ 96-97, 99-100**

Relators appear to concede that the majority of Mr. Wortman's opinions regarding Relators' ▓▓▓▓ do not rely on Mr. Litwak's work given they did not annotate half of paragraph 97, all of paragraph 98, and all but the last four lines of paragraph 99. With regard to paragraphs 96-97, they contain (1) a quote from the Amended Complaint, (2) Mr. Wortman's characterization of Relators' claim, and (3) an explanation of the purpose of a ▓▓▓▓. (Wortman Rep. ¶ 96.)

While these opinions are similar to observations in the PowerPoint, there is an obvious reason for the similarity beyond the notion that Mr. Wortman relied on Mr. Litwak: Relators' claim on this subject simply has no objective merit.

**(d)** ▓▓▓▓ – **¶¶ 122-124**

Both Mr. Litwak and Mr. Wortman dismissed Relators' claims regarding ▓▓▓▓ ▓▓▓▓ as a non-issue. However, their opinions do not overlap to such an extent as to imply that Mr. Wortman's opinions relied upon the PowerPoint. Mr. Litwak graded Relators' claims on this subject "N/A" meaning they had "no merit to begin with" because (1) they were either irrelevant, (2) "Relators made a misinterpretation of the issue," or (3) the issue "i[s] not considered a security vulnerability." (PowerPoint at 9.) Mr. Litwak then explained that ▓▓▓▓ ▓▓▓▓ and that there is essentially no way to mitigate that issue. (*Id.* at 31.) By contrast, Mr. Wortman noted that the ▓▓▓▓ does not introduce any meaningful additional risk" given (1) "[t]oday's threat actors have ▓▓▓▓

15

██████████████████████████████ (2) "██████████████████████████

██████████████████████████████████ and (3) "eCW has ████████████

██████████████████████ since at least 2019" with an image to confirm. (Wortman Rep.

¶ 123.) Again, the reason for the similarity is clear: Relators' claim simply has no merit.

  **(e)**  ██████████████████████████ – ¶ 128

While paragraph 128 responds to an opinion in Dr. Cole's report and therefore should be beyond the scope of Mr. Litwak's opinions, Relators assert that it nonetheless relies on Mr. Litwak's work because it references Mr. Wortman's opinions regarding ████████████████ ██████████. This argument fails for the reasons explained in Sections 3(a) and (b).

  **(f)**  ██████████████████ – ¶¶ 130-131

Relators concede that the majority of paragraph 130 discusses an allegation from Dr. Cole's report and therefore does not rely on Mr. Litwak's work. While the balance of paragraphs 130 and 131 also respond to Dr. Cole's report and are therefore nominally beyond the scope of Mr. Litwak's work, they invoke Mr. Wortman's opinions regarding ██████████████████, which Relators claim means they too rely on Mr. Litwak's prior work. This argument fails for the reasons explained in Sections 3(b) and 4(b) above.

  **(g)**  ██████████ – ¶ 156

Relators claim a portion of this paragraph relies on the PowerPoint because Mr. Wortman stated that "[t]o the extent this allegation relates to ████████████████████████████, those issues are discussed above." (AR&E, at 77 (¶ 156).) However, Relators argue that Mr. Wortman's opinions regarding ████████ should be struck because Mr. Wortman disagrees with Mr. Litwak regarding these issues (*see id.* at 5-6), not because his opinions relied upon those of Mr. Litwak, with one exception related to paragraph 140. Relators cannot have it both ways. Moreover, and in any event, Relators concede the vast majority of this paragraph cannot

rely on Mr. Litwak's report because it responds to Dr. Cole's report. (AR&E, at 77 (¶ 156) (leaving most of the paragraph unhighlighted).)

## Conclusion

In sum, actually comparing Mr. Wortman's report and the PowerPoint makes clear that Mr. Litwak and Mr. Wortman had completely different assignments. Although the subject matter of their respective assignments had some overlap, there is no basis to assume that Mr. Wortman's *opinions* relied upon, or disagreed with those Mr. Litwak came to during his consulting work. Moreover, as explained at the outset, regardless of whether the Court concludes that Mr. Wortman's opinions rely upon or disagree with Mr. Litwak's, the proper remedy is not exclusion, but cross-examining Mr. Wortman to confirm that he can defend the opinions *that he disclosed to Relators*. For these reasons, the Court should deny Relators' request for sanctions and their request to strike any portion of Mr. Wortman's report.