**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel.** ) | |
| **ALEX PERMENTER,** ) | |
| **ERIC RODIGHIERO, and** ) | |
| **CHRIS WHEELER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:18-cv-382 (MTT)** |
| ) | |
| **eCLINICALWORKS, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## ORDER

This is the third time in this False Claims Act ("FCA") action that the Court has sanctioned eClinicalWorks LLC ("eCW") for withholding evidence. The Relators in this action claim that eCW fraudulently obtained certification of its electronic health records ("EHR") software.

First, the Court sanctioned eCW because it withheld evidence that could reasonably be interpreted as an effort by eCW to intimidate Quandary Peak Research, a company tasked to oversee eCW's compliance with a corporate integrity agreement ("CIA") between eCW and the Department of Justice. The CIA arose from a settlement in a prior FCA action that also involved allegations that eCW improperly obtained certification of its EHR software. After Quandary Peak repeatedly found serious faults and deficiencies in eCW's compliance with the CIA, eCW charged Quandary Peak with "ethnic bias." *See* ECF 266-106; 266-107. Quandary Peak refused eCW's demands to resign, and the Department of Justice, after reviewing eCW's allegations, rejected

eCW's request to fire Quandary Peak. ECF 266-108; 266-109. Undaunted, eCW

pursued civil claims against Quandary Peak, which eventually led to a settlement

requiring Quandary Peak to replace key team members, including the team leader. ECF

266-41 at 6-12. Further, eCW required that Quandary Peak refuse to disclose the

settlement to the government. *Id*. at 15. eCW's attorneys then hid the settlement

agreement from the Relators, a tactic almost certain to fail in a discovery-intensive case.

Sure enough, the Relators learned of eCW's ethnic bias allegations and raised the issue

with the Court. After a hearing, the Court ordered the production of the settlement

agreement and sanctioned eCW. ECF 185 at 88-90.

Second, eCW failed to produce information about the work of its APPSEC unit.

*Id*. at 185 at 7-63. The APPSEC unit documented security vulnerabilities in eCW's

electronic health record software. The Court concluded, easily, that eCW's attorneys'

claim that this failure was "an inadvertent mistake" was not credible. ECF 171 at 8; *see*

ECF 345 at 26 n.38.

Now, the Court must sanction eCW because it failed to disclose information

relied upon by one of its key experts, Oren Wortman. eCW claimed the withheld

information was the work product of its consulting "team," that Wortman did not rely on

that work product, and that it had no obligation to disclose that work product to the

Relators.

It is appropriate to begin with a note on how eCW found itself in this position. It is

not unusual for a litigant with resources to retain consultants and expert witnesses on

the same subject matter. But it is unusual for the work of a consultant and the work of

an expert witness to overlap. The reason, of course, is that the work product of the

consultant generally is not discoverable while the expert witness has significant

disclosure obligations. Thus, prudent lawyers build a stout wall between the consultant

and the expert witness, particularly when the consultant's work product, if disclosed,

would be damaging. Here, the need for that wall seemed critical. The consulting work

confirmed some of the Relator's allegations and, in part, differed from Wortman's

conclusions. Yet inexplicably, eCW assigned its consultant to work with Wortman

(Sygnia, a cybersecurity and technology services company, employed both). Even more

inexplicably, Wortman incorporated the consultant's work product into his expert report,

claiming it as his own. But eCW insisted that the consultant had been "walled off" from

Wortman, that Wortman had not relied on the consultant's work, and that it had

produced everything that Wortman had relied on. Why a sophisticated litigant like eCW

went down this fraught path is unclear. What is clear is that eCW went to extraordinary,

and improper, lengths to maintain the fiction that the wall was solid, and thus it had no

duty to disclose the "consulting work." The truth is that there was no wall at all.

## I. STANDARD

The applicable law is straightforward and not in dispute. Federal Rule of

Procedure 26(a) provides that an expert's report must disclose "a complete statement of

all opinions the witness will express and the basis and reasons for them" and "the facts

or data considered by the witness in forming [their opinions]." Fed. R. Civ. P.

26(a)(2)(B)(i)-(ii). Under Rule 37(c)(1), courts may impose appropriate sanctions "[i]f a

party fails to provide information or identify a witness as required by Rule 26(a), …

unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In

determining whether a failure to disclose was justified or harmless, courts consider the

non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party. *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008). The Relators argue that eCW's "false rationale[s]" for nondisclosure are not substantially justified and "eCW's yearlong (and counting) delay in making a complete disclosure of Mr. Wortman's opinions with a trial looming is harmful and continues to prejudice Relators." ECF 371 at 3 (emphasis omitted). The Court agrees and concludes that limited sanctions are warranted for eCW's failure to make appropriate Rule 26(a) disclosures.

## II. BACKGROUND

The Sygnia consulting work ended in May 2023. ECF 358-4 at 2. Wortman signed an engagement agreement with eCW in February 2024 and completed his expert report in April 2024. ECF 300-7 at 2; 237 at 120:25-121:5. Before deposing Wortman, the Relators sought assurances that eCW had produced all documents upon which Wortman had relied and that the consultants and Wortman had not overlapped. ECF 210-3 at 2-4. eCW's counsel responded:

> Mr. Wortman did not provide consulting services, and we provided you with everything he considered in the formulation of his expert opinion. Other individuals (who were walled off from Mr. Wortman) from Sygnia assisted Geoff [Wyatt] and me in understanding the technical issues raised in Relators' complaint, separate from our work with Mr. Wortman.

*Id.* at 4. In short, eCW assured the Relators that eCW had discharged its disclosure obligations, and the Sygnia consultants, who had educated eCW's lawyers, played no part in Wortman's work as an expert witness.

At his August 15, 2024, deposition, Wortman testified that Sygnia was hired to provide both expert testimony and litigation consulting services. ECF 237 at 49:3-11.

Wortman explained that Sygnia employee Dan Litwak "conducted tests [on the Relators' allegations] at [Wortman's] request" and that Litwak was "the one who was hands on keyboard with all of the[] [testing] tools." *Id.* at 52:18-53:18, 67:5-68:12, 72:7-11. He clarified that where the methodology section of his expert report states that his independent opinions are "based on … independent testing and code review of the ECW software performed by my team operating fully under my supervision and direction," he is referring to Litwak's testing. *Id.* at 67:23-68:7; ECF 300-7 ¶ 16. Wortman further testified that the testing was done "in the early part of Q1 of 2024." ECF 237 at 70:1-11. Thus, according to Wortman's sworn testimony, the testing that constituted his methodology was done by Litwak under Wortman's direct supervision in early 2024, and Wortman was "isolated" from the consulting team.[1] *Id.* at 245:1-2.

But eCW had not disclosed Litwak's testing before Wortman's deposition. Given that, the Relators asked eCW to produce documentation of Litwak's testing. ECF 210-4 at 4-5. eCW represented that Wortman was unable to locate any documents responsive to the Relators' request. *Id.* at 3.

On October 30, 2024, the Relators moved to exclude some of Wortman's opinions based on eCW's failure to produce Litwak's testing and the Relators' then-sketchy suspicion that Wortman had relied on the Sygnia consulting team's work. ECF 209 at 2. eCW responded, "Relators' speculation that eCW might be withholding testing results generated by the Sygnia consulting team is baseless."[2] ECF 264 at 16 n.7.

---

[1] When pressed, Wortman acknowledged that it was "possible" that Litwak "may have assisted in parts of that effort, again, with technical testing elements." ECF 237 at 245:3-13.

[2] Wortman and Litwak confirmed in their depositions that Litwak was Wortman's "team" for purposes of Wortman's expert report. ECF 237 at 67:23-68:7; 354 at 67:21-25. Litwak also led the Sygnia consulting

Nevertheless, Wortman began to distance himself from the testing that, in his report, he said he directly supervised and relied on. In a November 19, 2024, sworn declaration filed with eCW's response, Wortman claimed that although his report identifies four testing tools used in his "methodology," "with one exception, … [he] did not rely on the results of these tools in connection with the formulation of [his] opinions in this case." ECF 264-3 ¶¶ 2-8. Thus, Wortman largely disclaimed his methodology while conceding that he relied on Litwak's testing in part.

At the June 4, 2025, hearing on the Relators' motion to exclude, eCW insisted, contrary to Wortman's testimony that Litwak did the "hands on" testing under Wortman's direct supervision, that "Mr. Wortman is neither parroting an opinion of Mr. Litwak *nor relying on anything that Mr. Litwak did*." ECF 334 at 35:7-8 (emphasis added). The Court denied the Relators' motion to exclude without prejudice but allowed the Relators to convene Litwak's deposition. *Id.* at 40:14-25. At his July 23, 2025, deposition, Litwak testified that he used the four tests identified in Wortman's report as Wortman's methodology to test the Relators' allegations and that, during the consulting phase, he drafted a report for eCW's counsel that included screenshots and a discussion of his testing results. ECF 354 at 39:18-40:1, 57:7-58:11. Litwak also confirmed that he alone assisted Wortman in preparing his expert report and that the only testing Litwak provided Wortman was done during the consulting phase—that is, before eCW retained Wortman. *Id.* at 41:20-25, 43:16-21, 65:8-25, 67:21-25.

On July 28, 2025, the Relators informed the Court that Litwak's testimony did not resolve the Relators' concerns but instead exacerbated them. Wortman, they claimed,

---

team and performed testing during the 2023 consulting phase. ECF 354 at 101:17-22. As will be discussed, that is the testing Wortman cited throughout his report.

relied on Litwak's consulting work, and eCW failed to disclose that testing. ECF 357-1. Three days later, eCW produced a 47-page Sygnia consulting report[3] discussing Litwak's testing results. *Id.*; *see* ECF 357-3. Now convinced that eCW had improperly withheld critical evidence, the Relators filed a summary of relevant events and the Sygnia report. The Court construed that as a renewed motion to exclude Wortman's testimony. ECF 357.

In its response, eCW stuck to its adamant denial that Wortman relied on anything Litwak did. That alone was odd—Litwak, the "hands-on" tester working under Wortman's direct supervision, was rubbed out of Wortman's report. But it got odder— eCW dropped a telling footnote. Wortman now claimed that "[a]fter being apprised of Relators' allegations … [he] realized that he had inadvertently failed to recall at the time he executed his [November 19, 2024] declaration in support of eCW's Opposition that his opinion [regarding authentication bypass] … relied on [Litwak's] testing using BurpSuite" and "now withdraws that opinion."[4] ECF 363 at 7 n.5. In short, after months of denials that Sygnia's consulting work and Wortman's work as an expert witness overlapped, eCW admitted that, in at least one respect, Wortman had used and, as it turned out, copied Litwak's consulting work, including images from the PowerPoint Litwak gave to eCW's lawyers. This was the Court's reaction to that footnote:

> I see no excuse for Mr. Wortman, assisted by [counsel], sitting down, crafting that [November 19, 2024] declaration to respond to these very issues, and then say something that is not true. And the excuse that 'I forgot' is not credible and I don't believe it. … [I]f that kind of excuse was good enough at that stage of a dispute, when all eyes are on everything, … lawyers could get away with anything.

---

[3] The report was actually a PowerPoint presentation summarizing, apparently, Litwak's consulting work.

[4] BurpSuite was one of the testing tools Wortman identified in his report methodology. ECF 300-7 ¶ 18.

ECF 482 at 76:9-17.[5]

### III. DISCUSSION

Beginning as early as July 2024 and continuing as late as June 2025, eCW's lawyers steadfastly maintained that Wortman was walled off from the consulting team and that Wortman did not "parrot[] an opinion of Mr. Litwak []or rely[] on anything that Mr. Litwak did." ECF 210-3 at 4; 334 at 35:7-8. To demonstrate the falsity of those repeated representations and the fiction of a stout wall, it is only necessary to look at Wortman's report.

In four paragraphs, Wortman stated the methodology for his expert witness work, describing four tools used "to conduct the technical portion of our activities." ECF 300-7 ¶¶ 16-19. Three of these four methodology paragraphs are egregiously misleading. Each repeats or adopts the misstatement that Wortman "direct[ed]" or "supervis[ed]" the described "independent" testing of eCW's software in early 2024. *Id.* ¶¶ 16-18. In the first paragraph of his methodology, Wortman avers: "My independent opinions detailed throughout this report were based on … independent testing and code review of the ECW software performed by my team operating fully under my supervision and direction." *Id.* ¶ 16. In his deposition, Wortman explained that Litwak was "the one who was hands on keyboard with all of the[] [technical testing] tools." ECF 237 at 72:7-11. The truth was that the testing identified in these methodology paragraphs was done by Litwak nearly a year earlier in his capacity as a Sygnia consultant for eCW's lawyers. *See* ECF 354 at 43:16-21, 44:19-23 (Litwak explaining that the only testing he provided

---

[5] Recall that eCW's lawyers employed the "we forgot" defense when they failed to produce the APPSEC file.

Wortman was performed during the consulting phase). Wortman reasserts the falsity of the testing circumstances throughout his report. *See* ECF 300-7 ¶¶ 27, 84, 89, 95, 140, 162 (each paragraph purporting to rely on "my own testing," "my independent testing," or "my own independent testing"). In short, Wortman's "methodology" was based on Litwak's consulting work product.

When the true facts eventually surfaced, eCW had two options. One, of course, was to tell the truth. This would have gone something like this. Judge, for whatever reason, Wortman's report represents that the testing for his stated methodology was done by Litwak under Wortman's direct supervision. In fact, that testing was done by Litwak in 2023 when he was consulting for us, *i.e.*, eCW's lawyers. Based on this representation, we cannot in good faith argue that we maintained a "stout wall" between Wortman and our consultant, and we certainly cannot say that Wortman did not "parrot" Litwak. To some extent, he clearly did. In short, we did not keep our consultant and our expert separate, and we know we must pay the price for that—we must disclose the consultant's work product. But here's the thing, Judge, regardless of what Wortman said, many of his opinions were not based on Litwak's work at all. Although Wortman will have some difficult questions to answer on cross-examination, he should not be excluded from testifying at trial.

eCW chose option two. It mounted a defense in depth, collapsing to a new line of defense as each crumbled. This was the first line: there was a stout wall between Wortman and the consultant, and we disclosed everything Wortman relied on.

Forced to retreat, this was the next line of defense: forget about what Wortman said in his report and even what he said in his deposition; trust us to give you what he

really relied on, and we're telling you he didn't rely on consulting work product. This line collapsed too. Clearly, Wortman's report and testimony could not be forgotten, and by then it was apparent that the Relators and the Court could not trust eCW to disclose what Wortman relied on.

On to the next defense. The Relators' initial motion to exclude prompted Wortman's November 19, 2024, declaration swearing "*with one exception*, … I did not rely on the results of [the testing tools represented as the foundation for his methodology] in connection with the formulation of my opinions in this case." ECF 264-3 ¶¶ 2-8 (emphasis added). In other words, Wortman disavowed his claimed methodology and swore that he had not relied on Litwak's testing. But the abandonment of his methodology was not total. He admitted that he had, in part, relied on that testing.

Now the retreat began to look like a rout. In August 2025, Wortman "remembered," and eCW admitted, that Wortman's opinion on the Relators' authentication bypass allegations relied on Litwak's testing. ECF 363 at 7 n.5; *compare* ECF 300-7 ¶ 140 *with* ECF 358-3 at 9.

Then the Sygnia report—the PowerPoint Litwak used to educate eCW's lawyers—confirmed that some of Wortman's opinions unequivocally relied on, indeed "parroted," Litwak's testing. In Section V, Subsection A of Wortman's report, titled "Allegations Refuted By My Independent Testing of ECW's Software," Wortman opines that the Relators' allegations about CAPTCHA, user password storage, and software "lockout" are refuted. ECF 300-7 ¶¶ 80-100. But Wortman's opinions on the CAPTCHA and user password storage allegations incorporate or cite Litwak's testing (as discussed, represented as "my own testing") and, in some instances, copy Litwak's

testing and analysis verbatim. *Id.* ¶¶ 86-87, 89-92, 95; *compare* ECF 358-3 at 22-24, 27-28 *with* ECF 300-7 ¶¶ 84, 91-92.







Only after the Sygnia report surfaced did eCW acknowledge the verbatim use of Litwak's work product. ECF 490-1 at 1 n.1.

By the time eCW filed its final brief on November 21, 2025, the rout was complete. Caught and cornered, eCW moved to full mitigation mode and resorted to option one—tell the truth, or something closer to the truth. eCW argued that Wortman's reliance on Litwak was minor relative to the expansive scope of Wortman's opinions, that "the bulk of Mr. Wortman's opinions rely on independent work he personally conducted," and that Wortman should be permitted to testify regarding the work he did do and the opinions he formed. *Id.* at 5, 7. The Court is not convinced that "bulk" is the best descriptor, based on what the Court knows so far. But the argument, though tainted and tardy, has some validity, and the Court agrees that excluding all of Wortman's opinions (other than those withdrawn by eCW[6]) is not, at this point, an appropriate sanction. *See Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019) ("Rule 37 gives a trial court discretion to decide how best to respond to a litigant's failure to make a required disclosure under Rule 26.")). For now, eCW shall (a) immediately produce the Sygnia consulting team's work product, and (b) shall pay the Relators' attorneys' fees and costs associated with their motions to exclude Wortman's opinions. Further, the Relators may request appropriate limiting, remedial, or punitive jury instructions. Also, the Relators, upon review of Sygnia's work product, may seek to exclude specific Wortman opinions. Finally, what can the Court do to ensure that eCW will not continue to misbehave? Never has the Court thrice-sanctioned a party for withholding evidence. At this point, the Court is not sure.

---

[6] eCW has withdrawn paragraphs 84, 91, and 92 of Wortman's report. ECF 490-1 at 1 n.1.

**SO ORDERED**, this 15th day of January, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT