UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES *ex rel.*, PERMENTER, et al.

   Plaintiffs,

v.

eCLINICALWORKS, LLC,

   Defendant.

CIVIL ACTION FILE

NUMBER 5:18-CV-382

## <u>RELATORS' THIRD MOTION FOR SANCTIONS</u>

Because of the Court's recent Order compelling additional eCW productions, Relators now know that eCW's corporate leadership, its lawyers, and its hired "consultants" have been engaged in a multiyear fraud on the Court related to eCW's work with Sygnia. The documents eCW recently produced prove that eCW hid additional Sygnia testing reports, concealed a separate Sygnia project and report (that also was copied by Mr. Wortman), and concealed Mr. Wortman's participation in Sygnia's "consulting" work. eCW, its in-house and outside counsel, and its hired consultants knew the story eCW was telling Relators and the Court in filings and under oath was not true. eCW's egregious, sustained misconduct warrants striking Mr. Wortman's testimony. Relators respectfully submit that because eCW has continued to lie to the Court and Relators even after previous sanctions, sanctions greater than simply striking Mr. Wortman are also necessary.

Since early 2024, Relators have been seeking the truth about eCW's testifying expert Oren Wortman and the "consultants" from his company Sygnia. After two depositions, three rounds of briefing, two hearings, numerous conferences, and hundreds of hours of work, Relators thought they more or less had the full story from eCW. The Court essentially agreed, finding eCW had finally resorted to "tell[ing] the truth, or something closer to the truth." Doc. 496 at 13. This is the story eCW told in filings, arguments, and through under-oath testimony of its hired witnesses and counsel. eCW said that it hired two Sygnia teams: a "consulting" team led by Mr. Litwak that performed a "preliminary assessment" of the technical

allegations in Relators' Complaint to help eCW's counsel (Mr. Wyatt and Mr. Bernardo then both of Skadden Arps)[1] understand the case;[2] and a testifying team led by Mr. Wortman.[3]  eCW represented and Mr. Litwak testified that the "consulting" team completed its work in May 2023.  eCW told the Court that Mr. Litwak's work involved limited testing of eCW's software and produced a 48-page "presentation" delivered to eCW's counsel on May 9, 2023.  Mr. Litwak testified under oath and eCW argued that the May 2023 report was the only Sygnia report that described the "consulting" team's work.[4]

Mr. Wortman testified and eCW argued that Wortman was "walled off" and "totally removed" from the "consulting" team.  Mr. Wortman testified and eCW argued that Wortman did not know who worked as a consultant or what was done, was not involved in invoicing eCW for the consulting work, and did not start his work until after the "consulting" work was completed.[5]  After eCW was forced to produce the May 9, 2023 Litwak-drafted "presentation,"[6] eCW admitted that some of that report's testing results were copied into Mr. Wortman's expert report.  But eCW downplayed the significance of that copying by claiming it was simply a matter of "efficiency".

At the October hearing, the Court instructed Relators to annotate Mr. Wortman's report where it overlapped with Mr. Litwak's May 2023 "presentation."  After Relators did so, eCW withdrew five paragraphs copied verbatim by Mr. Wortman, but otherwise claimed there was little overlap between Mr. Wortman and Mr. Litwak's work.  While the Court declined to strike Mr. Wortman entirely, it ordered eCW to "immediately produce the Sygnia team's work product"[7] and to pay Relators' attorneys' fees and expenses.  Doc. 496 at 13.  The Court also ruled that Relators could "seek to exclude [additional] specific Wortman opinions" after eCW produced the compelled work product.  *Id.*[8]

---

[1] Mr. Wyatt has now moved to Kirkland & Ellis.
[2] *See infra* Section I(a).
[3] *See infra* Section I(c).
[4] *See infra* Section I(a).
[5] *See infra* Section I(c).
[6] Doc. 358-3.
[7] Relators had not sought this relief given eCW's representations and Mr. Litwak's testimony.
[8] The Court also ruled that Relators could "request appropriate limiting, remedial, or punitive jury instructions." Relators will do so well before the May pre-trial conference.

Since the Order, eCW has made **eight** productions of withheld Sygnia work product. Those productions reveal something far worse than a refusal to comply with expert disclosure requirements. They prove the story eCW told the Court and Relators and represented as the truth is a complete fabrication. Contrary to his sworn testimony and eCW's filings, Mr. Litwak did not complete his consulting work when he delivered the May 2023 "presentation." Instead, several months later, eCW[9] asked Sygnia to review and test[10] Relators' 85-page interrogatory response that collected their technical disclosures to DOJ. After completing that testing,[11] Sygnia produced a substantially revised report in September 2023 that included extensive "supplemental" analysis (the "September Litwak Report").[12] In addition to new findings that also were copied by Mr. Wortman, the concealed report offers this succinct conclusion: "█████████ ███████████████████████████████████████████████████████████████████████[13]

Also despite eCW's representations, Sygnia's consulting work was not limited to a technical assessment of Relators' allegations. Instead, eCW also paid Sygnia to research security breaches and software vulnerability trends. That work produced a concealed 73-page report, portions of which were also copied into Mr. Wortman's expert report.[14] Further contrary to Mr. Wortman's sworn testimony and eCW's representations, Mr. Wortman was not "totally removed" from the Sygnia consulting work. Instead, Mr. Wortman knew about the security research project and was involved in researching the feasibility of Sygnia doing the work. And despite testifying under oath that he had no insight into the consulting work or the invoices for that work,[15] Mr. Wortman himself sent to eCW and its lawyers detailed Sygnia time sheets that identified the consulting team members and the work they performed. Mr. Wortman had discussions and correspondence with eCW's corporate leadership—Chief Financial Officer Mark Speyer and in-house

---

[9] eCW made this request through its lawyers Mr. Wyatt of Kirkland & Ellis, Mr. Bernardo of Skadden Arps, and Mr. Katz of Aaron Katz Law.

[10] Ex. 1, Sep. 6, 2023, Email from A. Sambira to G. Wyatt at 1-2 ███████ needed).

[11] *Id.* at 1.

[12] *See infra* Section I(a).

[13] *See* Ex. 2, 2023-09-03 Sygnia PowerPoint Revision and Supplemental Response Analysis at 34 ("September Litwak Report").

[14] *See infra* Section I(b).

[15] eCW repeated this lie in filings and hearings attended by both the in-house and outside counsel involved.

counsel Whitney Horrell— as well as eCW's outside counsel, about the details of those Sygnia consulting invoices.[16] Thus, Mr. Wortman effectively oversaw Sygnia's consulting work for eCW by participating in its planning and in ensuring payment for the work, facts eCW concealed from Relators and the Court for years.[17]

eCW's corporate leadership, its in-house lawyers, and its outside counsel knew the arguments eCW was making to the Court and the sworn testimony it was soliciting from its paid consultants was not true. At the October 2025 hearing, the Court stated its concern that it may have been misled by eCW and asked for briefing on inherent powers. It later withdrew that request and focused its January Order on eCW's failure to comply with Rule 37. Given eCW's non-compliance with its disclosure obligations and its repeated misrepresentations, Rule 37 and the Court's inherent powers allow the Court to strike Mr. Wortman. Relators ask the Court to do so at a minimum.

But more is necessary. The Court stated in its January Order that it was not sure what it could do to ensure that eCW will not "continue to misbehave." Doc. 496 at 13. eCW's recent disclosures answer the Court's question. There is nothing the Court can do. eCW will continue to mislead the Court and Relators. Even facing potential sanctions after a hearing where the Court stated its concern that eCW had misled the Court, eCW continued making arguments it knew were false. When a party refuses to follow the Rules and the Court's orders and deliberately misleads the Court and its opposing party, the Court is well within its discretion to strike that party's pleadings or to enter sanctions precluding the party from contesting particular issues. Relators ask the Court to strike eCW's answer and enter default judgment. If the Court deems a lesser sanction appropriate, Relators ask the Court to preclude eCW from arguing or offering evidence related to the security vulnerabilities in its software and its software processes. While the Court cannot force eCW to act appropriately, it can punish eCW for its continued refusal to do so. Relators submit that time is now.

---

[16] *See infra* Section I(c).

[17] eCW initially refused to produce Mr. Wortman's communications with eCW about the consulting project claiming they were not within the scope of the Court's Order, but has since relented. Ex. 3, Feb. 12, 2026 Email from R. Bernardo to R. Snyder. Relators will supplement this filing once those documents are produced, if necessary.

I.    **Facts**

a.    **The Litwak-led "consulting" work**

eCW repeatedly told this Court that Sygnia's consulting work was limited to helping counsel "understand the technical issues raised in Relators' complaint."[18]  It stated in numerous filings and in declarations that Mr. Litwak's work during that consulting phase was a "preliminary," "down and dirty" allegation review and that eCW never provided detailed information about Relators' findings to Mr. Litwak until his work with Mr. Wortman.[19]  eCW told the Court that "[t]he only testing materials created during the Sygnia consultancy were some screenshots/excels."[20]  eCW represented the "testing" done during the consulting phase was never "reduced to a report" and "Relators' speculation that eCW might be withholding testing results generated by the Sygnia consulting team is baseless."[21]  eCW and its witnesses told this Court that the consulting work was "completed" on May 9, 2023 when Sygnia sent the May report[22] and that occurred before Mr. Wortman began his work in August 2023.[23]  And eCW repeatedly told this Court that the May 2023 report was the only Sygnia report.[24]

---

[18] Doc. 210-3, Jul. 15, 2025, Email from R. Bernardo at 4; Doc. 363-1 ¶ 7 (Bernardo Decl.) ("Mr. Geoffrey Wyatt and I requested that Sygnia provide us with an overview of Relators' allegations."); Doc. 363 at 6 (same).

[19] Doc. 363-1 ¶¶ 9, 11, 21 (Bernardo Decl.) ("The Report was intended to be a high-level preliminary assessment and overview; it was not intended to be a deep dive into any of the alleged vulnerabilities of the software at issue."; "The Report was not intended … to provide anything more than a preliminary understanding as to whether these alleged vulnerabilities were completely remediated. Indeed, the type of information that would be necessary to make such assessments was never even made available to Mr. Litwak."; Litwak's work was "preliminary and superficial conclusions"); Oct. 23, 2025 Hrg. Tr. at 54:15-23 (arguing Litwak's work was a "down and dirty" assessment).

[20] Ex. 4, eCW Oct. 23, 2025 "Context of Statements in Relators' Submissions" presentation at 6.

[21] Jun. 4, 2025 Hrg. Tr. at 40:2-13; Doc. 264 at 11, n.7.

[22] Ex. 4, eCW Oct. 23, 2025 "Context" presentation at 2-4 (Litwak "completed" consulting work in May 2023); Oct. 23, 2025 Hrg. Tr. at 59:11-17 ("consulting project was, which was back in March through -- February through May of 2023"); Doc. 264, Def.'s Opp. to R's Mot. to Exclude Wortman at 9 ("Mr. Litwak was also a member of a separate litigation consulting team of Sygnia employees whose work began and was completed before Mr. Wortman commenced his expert work."); Doc. 361, Litwak Dep. at 56:8-12 ("Q: You started on the litigation support project in about March 2023 and then finished that several months later; is that correct? A. Correct."; 64:18-22 ("Q. So you did the testing in March or so of 2023. You drafted a report. After that you didn't do any additional substantive work for the litigation support team; is that correct? A. That's correct.").

[23] Ex. 4, eCW Oct. 23, 2025 "Context" presentation at 3 (Wortman began his work in August 2023); Oct. 23, 2025 Hrg. Tr at 60:3-5 ( "Wortman didn't begin until August, months after Mr. Litwak was completed.").

[24] Doc. 361, Litwak Dep. at 56:12-16 ("Q. After you put together the report that had the results of some of your testing, did you prepare any additional reports that were provided to eClinicalWorks or their counsel? A. No."); 115:21-116:2 ("Q: Other than the report that you drafted in March or April 2023 that was sent to eClinicalWorks' lawyers, is there any other document that you are aware of that summarizes your findings of any testing or analysis that you did during the litigation support phase? A. No. That was the only document.").

The documents eCW has now produced prove all those representations were false. Those documents show that eCW signed a cybersecurity consulting "Services Agreement" with Sygnia in January 2023[25] and Sygnia started work in late February 2023.[26] eCW initially asked Sygnia to review eCW's software processes and perform penetration testing related to the Relators' First Amended Complaint.[27] Between February 21 and May 9, 2023, Sygnia worked 468.5 hours.[28] The bulk of those hours were by Elroy Dayan.[29] Mr. Litwak testified that Mr. Dayan was supposed to validate Relators' allegations and "run some testing" but "it didn't work" so Mr. Litwak took over.[30] Despite that testimony, the concealed documents show Mr. Dayan performed extensive testing of eCW's software, validated Relators' allegations, and created a 40-page "Final Report."[31] Dayan's Final Report[32] is far more damning and detailed than Mr. Litwak's later May 2023 "presentation." Dayan identified high severity vulnerabilities,[33] including authentication and authorization bypass vulnerabilities, as well as vulnerabilities in eCW's then current Version 12.[34] It is unclear why Mr. Litwak "took over" for Mr. Dayan given his validation of Relators' allegations, but it is clear Dayan's work ended with a testing report that eCW said did not exist.

Although eCW finally had to admit that Mr. Litwak drafted a report with testing results and sent it to eCW on May 9, 2023 (the "May Litwak Report") it did so only after the Court compelled Mr. Litwak's

---

[25] Ex. 5, Jan. 11, 2023 Servs. Agrmt.
[26] Ex. 6, Mar. 2, 2023 Email from A. Ezer to G. Wyatt at 1-4.
[27] *Id.* The Sygnia team was Avi Sambira, Avi Ezer, Dan Litwak, Maor Arava, and Elroy Dayan. The timeline included 400 hours of work with delivery of a "Final Report" around May 4, 2023.
[28] Doc. 356-4, Project Eucalyptus: Litigation Support 2023.
[29] *Id.*
[30] Doc. 361, Litwak Dep. at 45:5-19.
[31] Ex. 7, Undated Dayan Final Report. One of the authentication bypasses Dayan found was as serious as the fax server vulnerability, would have allowed someone to view and download PHI without logging in, and was never fixed. *Id.* at 2 (identifying ███████████████████████). Mr. Dayan also created several pages of notes about his testing and validation work that were not previously produced.
[32] Both documents start with conclusions about whether eCW's Versions 11 and 12 contain certain vulnerabilities. *Compare* Ex. 7 at 1, with Doc. 358-3, May Litwak Report at 8.
[33] Relators' First Amended Complaint described categories of vulnerabilities but did not provide specific pieces of source code that were vulnerable.
[34] Ex. 7, Undated Dayan Final Report. at 2 ███████████████████████████████████████████
███████████████████████████

deposition[35] and Litwak admitted he drafted a testing report that had not been produced.  Relators now know that eCW concealed that in August 2023, its counsel Mr. Wyatt sent Relators' technical interrogatory response to Sygnia and asked Mr. Litwak to review it.[36]  Unlike Relators' Amended Complaint, Relators' interrogatory response included detailed explanations of vulnerabilities with screenshots, source code, and other details that were left out of the Complaints.[37]  On August 15, 2023, Sygnia sent Mr. Wyatt, Mr. Bernardo, and Mr. Katz a "high level review" of Relators' response and noted they needed time to review new items and perform technical validation.[38]  Mr. Wyatt agreed stating ███████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████[39]

On September 6, 2023, Avi Sambira of Sygnia emailed Mr. Wyatt, Mr. Bernardo, and Mr. Katz that Mr. Litwak had completed his testing and attached a link to a document titled "Sygnia Powerpoint_202308014 Revision + Supplemental Response Analysis" (the "September Litwak Report.").[40]  The September Litwak Report extensively revises the previously disclosed report—it added a new slide and made revisions or added comments to 15 more.[41]  Notable revisions include: agreement that the software stored passwords using MD5 hashing, a revised discussion of predictable naming conventions for eCW websites that mirrors Mr. Wortman's Report, agreement that eCW kiosks can access PHI, and agreement that the software locally stores PHI.[42]  Mr. Litwak also revised his opinion of eCW's security validation processes, concluding: ████████████████████████████████████████████ ██████████████████████████"[43]  The Court knows that eCW's lack of authorization and

---

[35] Before eCW knew it would have to disclose the May 2023 report, it argued Mr. Litwak's deposition would prove there was a "wall" between him and Wortman. Jun. 4, 2025 Hrg. Tr. at 38:7-8 ("I'm fairly certain nothing will come up, Your Honor."); 40:14-24 (discussion that Mr. Litwak's deposition would likely resolve the outstanding issues).

[36] Ex. 1, Sept. 6, 2023 Email from A. Sambira to G. Wyatt at 2-3

[37] Doc. 128-10 ; *see also* Doc. 116.

[38] Ex. 1, Sept. 6, 2023 Email from A. Sambira to G. Wyatt at 2.

[39] *Id.* Sygnia then told Mr. Wyatt that it needed another week to complete its "testing." *Id.*

[40] *Id.* at 1.

[41] Ex. 2, 2023-09-03 September Litwak Report at 4, 6, 7, 8, 20, 25, 30-36, 41-42, 46-47.

[42] *Id.* at 25, 30, 31, 35 42. With respect to the local storage of PHI, Litwak noted ████████████████████████ ████████████████████████████████ *Id.* at 42.

[43] *Id.* at 34.

authentication checks is a fundamental issue that affects eCW's certification under the ONC standards. Doc. 345, Order at 34-35 ("Certified EHR software must verify user identities … to ensure that the user seeking access is the one claimed and to set the type of access and actions users are permitted to perform based on these identifiers.").[44]

### b. The concealed security breach project and report

When these issues first surfaced in July 2024, Relators' counsel asked eCW to confirm that "Mr. Wortman (*or anyone else from Sygnia*) was not working in a purportedly 'consulting' role before February 2024."[45]  In response, eCW's counsel stated that "[o]ther individuals … from Sygnia assisted Geoff and me in understanding the technical issues raised in Relators' complaint, separate from our work with Mr. Wortman."[46]  eCW then repeated that representation in its filings and in arguments.[47]  From July 2024 until the Court compelled production of Sygnia's work product last month, eCW never disclosed that it also asked Sygnia to research other issues and draft additional reports *that were also copied by Mr. Wortman*.

The recently produced documents show that in June 2023,[48] Mr. Wyatt and Mr. Bernardo contacted Avi Ezer of Sygnia to discuss a "new" project related to breaches and vulnerabilities.[49]  Mr. Wortman immediately knew about eCW's request because he told Mr. Wyatt and Mr. Bernardo that Sygnia had its ███████████████████████████████████ and would get back to eCW in "about a week."[50]  After calls and emails, Mr. Ezer of Sygnia sent a proposed list of tasks.[51]  Mr. Bernardo approved 110 hours of work on the project and, on October 5, 2023, Sygnia sent a 58-page draft report.[52]  On October 16, 2023, Sygnia sent Mr. Bernardo and Mr. Wyatt the "Final Version" of its report titled "Software Vendors – Breaches and

---

[44] Although it is unclear what came of it, eCW also concealed from the Court and Relators that six months after eCW claimed Litwak "completed" his work, in December 2023, eCW asked Mr. Litwak and Sygnia to review eCW's produced JIRA tickets, to determine the time it took eCW to fix certain issues, and to review the tickets for "red flags." Ex. 8, Jan. 4, 2026 Email between A. Sambira, G. Wyatt, and R. Bernardo.

[45] Doc. 210-3, Jul. 15, 2025, Email from R. Bernardo (emphasis added).

[46] *Id.*

[47] *E.g.*, Doc. 363-1 ¶ 7 (Bernardo Decl.) ("In February 2023, Mr. Geoffrey Wyatt and I requested that Sygnia provide us with an overview of Relators' allegations."); Doc. 363 at 6 (same).

[48] This is after eCW told the Court the Sygnia consulting work ended.

[49] Ex. 9, Jun. 12, 2023 Email from A. Ezer to R. Bernardo and G. Wyatt at 2.

[50] Ex. 10, Jun. 15, 2023 Email from O. Wortman to R. Bernardo and G. Wyatt.

[51] Ex. 11, Aug. 15, 2023 Email from R. Bernardo to A. Sambira at 2-3.

[52] *Id.* at 2; Ex. 12, Oct. 23, 2023 Email from A. Sambira to R. Bernardo and G. Wyatt at 1-2.

Vulnerabilities" (the "October Breach Report.").[53]    The October Breach Report is 73-pages long,[54] discusses known software breaches and vulnerabilities, and includes a discussion of cybersecurity trends.[55]

### c.    Mr. Wortman's hidden involvement

Mr. Wortman and eCW both steadfastly maintained that he was "walled off" from the Sygnia team. Mr. Wortman and eCW claimed that he did not know who was a consultant, what they did, or how much they worked.[56] Mr. Wortman also testified under oath that he did not invoice eCW for consulting work and "would have no idea how much that engagement totaled or whose hours or anything else related to it."[57] While the Court has already found that eCW's "walled off" claim was false,[58] the newly disclosed documents prove that eCW concealed even more evidence of Mr. Wortman's oversight of the consulting work.

On June 15, 2023, Mr. Wortman sent Mr. Bernardo and Mr. Wyatt the ███████████████████████ ████████████████████████████████████████████"[59] The ████████████████ Mr. Wortman sent is the detailed Sygnia hours spreadsheet produced by eCW after Mr. Litwak's deposition[60] that identifies the consultants, describes the work they performed, and states the hours worked.[61]    Mr. Wortman said in that same email he had sent the "complete breakdown" to Mr. Speyer (eCW's CFO) and Whitney Horrell (eCW in-house counsel) and had talked to them about the details of the consulting work.[62] eCW has yet to produce those emails between Wortman and eCW.[63]

---

[53] *Id.* at 1.
[54] Ex. 13, Oct. 2023 Software Vendors – Breaches and Vulnerabilities.
[55] *Id.*
[56] Doc. 264 at 10 (arguing Wortman "was not aware of the work Mr. Litwak performed as part of the consulting arrangement, or even the identities of the other team members."); Doc. 237, Wortman Dep. at 49:9-11 ("I was totally removed from that process and cannot speak to the type of work, the work product, or anything else was done in that respect."); 245:1-2 ("I don't even know the entire makeup of that team.  I was isolated from it."); Oct. 23, 2025 Hrg. Tr. at 60: 9-10 ("He [Wortman] didn't know the scope of the consulting work.").
[57] Doc. 237, Wortman Dep. at 49:9-11; 58: 6-15.
[58] Doc. 496 at 3 ("The truth is that there was no wall at all.").
[59] Ex. 10, Jun 15, 2023 Email from O. Wortman to G. Wyatt and R. Bernardo.
[60] This document was produced after the deposition because eCW stated in its response to the Litwak deposition notice that there "were no references to testing" in the Sygnia invoices for Mr. Litwak's work.  Another lie.
[61] Doc. 356-4, Project Eucalyptus: Litigation Support 2023.
[62] Ex. 10, Jun. 15, 2023 Email from O. Wortman to R. Bernard and G. Wyatt.
[63] Ex. 3, Feb. 12, 2026 Email from R. Bernardo to R. Snyder.

Then, in November 2023, Sygnia invoiced eCW for its work producing the October Breach Report. Mr. Speyer asked for more details, which Sygnia sent about a week later.[64]  Like the hours breakdown Mr. Wortman forwarded in May, that detailed report identifies who worked on the project, what work was done, and when it was done.[65]  On November 22, 2023, Mr. Wyatt called Mr. Wortman to discuss that Sygnia invoice.  The next day Mr. Wortman sent an email discussing the detailed hour breakdown for the October Breach Report work, explained why Sygnia used five-hour increments, and stated Sygnia had actually worked 136.5 hours instead of the 110 hours it billed.[66]  Mr. Wortman then stated:



### d.  Mr. Wortman's expert report copies portions of the September and October Reports

eCW has repeatedly argued that Mr. Wortman did not rely on any work done during the consultancy.[68]  Relators won't repeat their previous arguments about that falsehood, but Relators now know that Mr. Wortman's expert report also copies portions of the September Litwak Report and the October Breach Report.  First, in the May Litwak Report, Mr. Litwak opined that eCW's predictable web addresses presented a limited risk because ███████████████████████████.[69]  But by September 2023 he concluded ████████████████████████████████[71]  Instead, he opined there was little risk from eCW's practice because ███████████████████████████████████████

[64] Ex. 14, Nov. 13, 2023 Email from A. Sambira to M. Speyer, W. Horrell, and G. Wyatt.
[65] Ex. 15, Eucalyptus _Research 2023_PMI_Tracking. The two Sygnia consultants were Amir Sadon and Ronen Regev—both previously undisclosed.
[66] Ex. 16, Nov. 26, 2023 Email from O. Wortman to R. Bernardo and G. Wyatt at 2.
[67] Id. at 1 (emphasis added).  Mr. Wortman and Mr. Wyatt then had a phone call a few days later to discuss these billing issues.  Id.  eCW claims the unbilled hours Mr. Wortman refers to in his email were related to another matter and his reference to Permenter was yet another mistake.
[68] Jun. 4, 2025 Hrg. Tr. at 35:7-8 ("Mr. Wortman is neither parroting an opinion of Mr. Litwak nor relying on anything that Mr. Litwak did."); Oct. 23, 2025 Hrg. Tr. at 16:14-16 ("I also disagree that there was anything that Mr. Wortman received *or relied upon* in connection with his opinion that was not produced.") (emphasis added).
[69] Doc. 356-3, May Litwak Report at 30.
[70] SSL certificates are data files hosted on a website's server that make encrypting internet traffic possible.
[71] Ex. 2, Sept. Litwak Report at 30.  DNS refers to the "domain name system."

████████████████████████████████████████████████████[72]

That revised conclusion mirrors Mr. Wortman's Report which stated that █████████████████

██████████████████████████████████████████████████████

███████████████■    When eCW addressed this Wortman opinion in response to Relators' annotations,

it argued Mr. Wortman's report did not "overlap" with Mr. Litwak because Mr. Wortman discussed DNS

servers and not the SSL certificates referenced in the May Litwak Report.[74]  Of course, eCW could only

make that argument because it had concealed the September Litwak Report.

Mr. Wortman's Report also contains a section discussing trends in software security.[75] In that

section, Mr. Wortman copies and pastes from the October Breach Report.  For example, both reports include

the following graphic created by SonicWall about the growth of vulnerabilities over time[76]:



October Breach Report                    Wortman Report

The October Breach Report also quotes research indicating that █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████"[77]

---

[72] *Id.*
[73] Doc. 210-1, Wortman Rep. ¶ 123 (emphasis added).
[74] Doc. 490-1, eCW's Resp. to Rels.' Annot. at  15-16.
[75] Doc. 210-1, ¶¶ 34-52. Relators did not annotate any of this section of Wortman's report because eCW had concealed the overlapping Sygnia work product.
[76] *Compare* Ex. 13, October Breach Report at 63 *with* Doc. 210-1 (Wortman Rep.) ¶ 36.
[77] *Compare* Ex. 13, October Breach Report at 64 *with* Doc. 210-1 (Wortman Rep.) ¶ 43.

II.    **Argument**

a.    **Mr. Wortman should not be allowed to testify**

Given eCW's recent disclosures, Relators renew their request to strike Mr. Wortman.  Initially, it is unclear whether eCW has complied with the Court's Order to "immediately produce the Sygnia consulting team's work product."[78]  eCW's productions have been ongoing.  For reasons that make little sense, eCW involved Sygnia's Israeli in-house counsel in its gathering and production of Sygnia's work product, which has resulted in delay and uncertainty about whether all documents have been produced.[79]  Indeed, eCW claims it had to retain counsel to threaten to sue Sygnia just to get some of the documents it has produced.[80]  What eCW produced seems to be incomplete.  For example, eCW did not ask Sygnia to search for work product documents from the Sygnia employees who spent 136.5 hours researching and drafting the October Breach Report, instead opting to just produce only two versions of the report.[81]  eCW also has not produced the following categories of documents which seemingly should exist: (1) documents other than the September Litwak Report reflecting Sygnia's new testing; (2) documents reflecting Sygnia's work in December 2023 to investigate eCW's JIRA production; and (3) communications between the seven known Sygnia consultants who worked on the eCW projects.[82]  Sygnia was required to keep "all information regarding [eCW] and the Services provided to Skadden" until at least 2028, so there is no reason the categories of documents listed above should not have been maintained.[83]  But none of it has been produced and Relators have no reason to believe that Sygnia, who is not subject to this Court's jurisdiction and is now adverse to eCW, has performed a complete search for documents.

---

[78] Doc. 496 at 14. Even the Court-ordered January production required multiple follow-up emails from Relators' counsel and appears to still be incomplete.

[79] eCW *and* Skadden Arps own Sygnia's work product under eCW's contract with Sygnia.  Ex. 5, Cons. Agmt. ¶ 1.3.

[80] eCW told the Court that Sygnia's lawyers were refusing to provide known work product to eCW and that eCW had been forced to "retain counsel" to compel Sygnia to produce a document Sygnia was purportedly withholding. Feb. 10, 2026 Email from R. Bernardo to K. Tavalero.

[81] Ex. 3, Feb. 12, 2026 Email from R. Berardo to R. Snyder (stating eCW "excluded Messrs. Sadon and Regev (who were not part of the consulting team that evaluated the relators' technical allegations)" from its request to Sygnia). Surely, the 136.5 hours of work resulted in some other documents beyond final reports.

[82] This is by no means an exhaustive list. It appears that there are also communications including WhatsApp messages between Mr. Litwak and eCW counsel and communications between Mr. Litwak and Mr. Wortman; Doc. 361, Litwak Dep. at 116:12-117:2; 36:6-7.

[83] Ex. 5, Con. Agmt. ¶ 1.4.

Even if the Court accepts eCW's representation that it has produced everything it can find, Mr. Wortman should still be excluded based on eCW's repeated violations of discovery obligations and its misrepresentations. Relators have briefed the law related to striking Mr. Wortman's testimony under Rule 37 for eCW's failure to comply with expert disclosure requirements.[84] Relators will not repeat that same law again here. But in addition to Rule 37, the Court also has inherent authority to exclude expert opinions if counsel lies to the Court in connection with the expert. *See Demboske v. Autry Greer & Sons, Inc.*, 740 F. Supp. 3d 1172, 1182 (N.D. Fla. 2024). In *Demboske*, the court extended the time to disclose an expert because counsel represented its expert could not complete his report without more evidence. *Id.* at 1176. The court later found those representations were false and excluded the expert using its "inherent power to sanction a party for counsel's misrepresentations to the Court." *Id.* at 1182.

eCW has not yet produced communications about billing issues between Mr. Wortman and eCW, despite the Federal Rules' clear mandate that those communications be disclosed.[85] eCW concealed the October Breach Report, even though portions of it were copied into Mr. Wortman's report.[86] When the Court compelled Mr. Litwak's deposition, eCW disclosed only the May Litwak Report in response to Relators' deposition notice,[87] even though it knew Mr. Litwak had produced a substantially revised report in September 2023 at eCW's request. eCW presumably did so because the September Litwak Report conflicted with its position in filings, depositions, and arguments that Mr. Litwak's work was a preliminary assessment finished before Mr. Wortman began his work in August 2023.

Even after the hearing, eCW continued to weaponize its lies against Relators. By concealing the

---

[84] *See* Doc. 210, Rels.' Mot. to Exclude at 10-12 (describing legal standard and collecting cases) Doc. 283, Rels.' Mot. to Exclude Reply at 3-4 (same); Doc 371, Rels.' Supp. Brief Reply at 3-4 (same).

[85] Relators requested these documents in the Wortman deposition notice. Ex. 17, Wortman Dep. Notice at 3 (requesting communications with "eClinicalWorks, including those exchanged with defense counsel, relating to … compensation for his expert work.").

[86] *Id.* (seeking all documents reviewed by Wortman). Relators were denied the ability to ask Mr. Wortman if he reviewed the October Breach Report because eCW concealed it. The quotes from the October Breach Report wound up in Mr. Wortman's report somehow.

[87] Doc. 490-5, eCW's Resp. to Litwak Dep. Notice at 4 (in response to Relators' request for communications between Mr. Litwak and eCW and its counsel relating to testing, eCW stated that "reasonable searches have been conducted and responsive documents have not been identified, other than an email on which Mr. Litwak was copied that includes a report generated by Sygnia that includes the screenshots of testing being produced in response to Request No. 2, which eCW objects to producing on the grounds stated above.").

October Breach Report, eCW avoided argument that the portions of Wortman's Report copying that report supported his exclusion. By concealing the September Litwak Report, which analyzed Relators' interrogatory response, eCW could also argue that several paragraphs in Mr. Wortman's report did not rely on Mr. Litwak because those paragraphs referenced a document eCW claimed Mr. Litwak did not review.[88] And by concealing the September Litwak Report, eCW could argue that Mr. Wortman's conclusions about eCW's predictable naming conventions differed from Mr. Litwak's work when they were, in fact, identical. Although eCW will likely downplay the significance of this by arguing these newly revealed issues only affect six more paragraphs of the report,[89] they prove eCW still refuses to comply with its discovery obligations and will say and do anything—including lying under oath and to the Court—to avoid the Court striking Mr. Wortman.

Although eCW's bad faith is clear, the Court need only find that eCW's conduct was not substantially justified or harmless to strike his testimony under Rule 37. There is no substantial justification for lying repeatedly. eCW's CFO, in-house lawyers, and outside counsel all knew that the arguments it was making to the Court and Relators were not true. And eCW's misconduct has caused true harm to Relators. Relators remain deprived of a full disclosure of evidence related to eCW's only expert witness who will testify about vulnerabilities in its software.[90] eCW has also wasted Relators' and the Court's time and proven that its attorneys, paid experts, and consultants cannot be taken at their word, even under the penalty of perjury. While an award of attorneys' fees can pay for the attorney time eCW has wasted, it cannot bring those hours back. In part because of eCW's scorched earth litigation tactics, the work this case demands is immense. When eCW forces Relators' counsel to waste time in endless conferences,

---

[88] *Compare* Docs. 490-1 at 6 and 490-3 (claiming Wortman could not have relied on Litwak for paragraphs 82, 89, and 131 because those paragraphs cite Relators' December 2023 expert report) *with* Doc. 210-1, Wortman Rep. ¶¶ 82, 89, and 131 (citing Exhibit 3 of Relators' Report) and Doc. 196-2 (Rels.' Rep.) at 7 (attaching Relators August 2023 interrogatory response as Exhibit 3 to the Report).
[89] Doc. 210-1 ¶¶ 36, 37, 82, 89, 123, 131.
[90] eCW previously argued that any alleged transgressions were substantially justified or harmless and that Relators have not suffered prejudice. *See* Doc. 363, eCW's Resp. to Suppl. Br. at 16-17; Doc. 490-1, eCW Resp.to Rels.' Annotated Rep. at 4. That argument was always false, but is demonstrably untrue now that Relators have been forced to file three motions on this issue, participate in numerous meet and confers, take two depositions, prepare and attend two hearings, and spend hundreds of hours on this issue all with trial in this case looming.

filings, arguments, and depositions, they cannot be working on other more pressing tasks. Indeed, when Relators' counsel were deposing Mr. Litwak and preparing and filing the renewed motion to strike Mr. Wortman, they were also preparing for and taking trial depositions (including eCW's CEO), putting together the consolidated pretrial order, and drafting and responding to many other motions. This is eCW's strategy. If it can get away with its lies, it avoids disclosure. If it gets caught, perhaps it pays a fine, but it has achieved its goal—distracting Relators and Relators' counsel from more important tasks, including getting this case ready for trial. *See Secrease*, 800 F.3d at 402 (even if misrepresentations are "not successful, the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly").

Relators respectfully ask the Court to strike Mr. Wortman based on his repeated lies, eCW's violations of Rules 26 and 37, and their continued pattern of misconduct and misrepresentations. *See Demboske*, 740 F. Supp. 3d at 1182 (striking expert for counsel's misrepresentations). If the Court grants Relators' request for default or issue preclusion sanctions, Mr. Wortman necessarily will not be able to testify thereby mooting this issue. As argued below, relief beyond striking Mr. Wortman is necessary.

### b. Because striking Wortman is not enough, eCW should also be sanctioned for its willful deception

eCW argued at the October hearing that it has not engaged in "an intentional effort to mislead."[91] Every document produced in the last month proves that statement false. It also proves the Court's previous sanctions and the threat of losing Mr. Wortman as an expert was not enough to stop eCW's misconduct. Relators therefore request that the Court strike eCW's answer and enter default as to liability. Failing that, Relators ask the Court to grant tailored issue preclusion sanctions.

The Court may impose default sanctions under Rule 37 if it concludes eCW acted in bad faith and failed to disclose evidence. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) (authorizing "striking pleadings in whole or in part" and "rendering a default judgment"); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994) (court must find bad faith before it imposes default). A default sanction

---

[91] Oct. 23, 2025 Hrg. Tr. at 81:24-82:4.

is appropriate "when less drastic sanctions would not ensure compliance with the court's orders." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (affirming default sanction where defendant "engaged in an unrelenting campaign to obfuscate the truth").  Default is also appropriate when a party makes "repeated misrepresentations" about the existence of evidence.  *Id.; Diamond Tr. u/a/d 10/28/2005 v. Diamond,* No. 21-11985, 2022 WL 4493035, at *3 (11th Cir. Sept. 28, 2022) (affirming default following "pattern of repeated, willful disobedience of Court orders"); *Meyer v. Gwinnett Cnty. Police Dep't.,* No. 21-12851, 2022 WL 2439590, at *11 (11th Cir. July 5, 2022) (affirming dismissal for misconduct including "implausible, frivolous, or shifting arguments and excuses").

In addition to Rule 37, this Court also has the "inherent power to control the proceedings and the conduct of the parties involved" in litigation before it.  *Oniha v. Delta Airlines, Inc.*, 1:19-CV-05272-LMM, 2021 WL 4930127, at *3 (N.D. Ga. Sept. 13, 2021*), aff'd sub nom. Oniha v. Delta Air Lines, Inc*., 21-13532, 2022 WL 580933 (11th Cir. Feb. 25, 2022)*.  "The key to unlocking a court's inherent power is a finding of bad faith."  *Id.* at *4 (dismissing complaint for fabrication of evidence and false statements).  A party acts in bad faith when it engages in "delaying or disrupting the litigation or hampering enforcement of a court order."  *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006) (affirming order striking defense after repeated failure to comply with orders).

Courts routinely exercise their authority to enter default or dismiss claims when parties and counsel lie to the court and the opposing party.  *See, e.g., Malautea*, 987 F.2d at 1541; *Jones v. Life Care Ctrs. of Am., Inc*., 3:20-CV-488-TJC-PDB, 2022 WL 4389727, at *34 (M.D. Fla. Aug. 11, 2022) (default appropriate because deception "inhibited the Court's ability to fairly administer justice and forfeited [party's] right to use the judicial system to present … claims") rep. and recommend. adopted, 3:20-CV-488-TJC-PDB, 2022 WL 4384175 (M.D. Fla. Sept. 22, 2022); *Secrease v. W.& S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015) (affirming dismissal because "falsifying evidence to secure a court victory undermines the most basic foundations of our judicial system" and "courts generally have an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct"); *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (dismissing

16

counterclaim where defendant lied to plaintiff and court); *Sell v. Country Life Ins. Co*., 189 F. Supp. 3d 925, 944-945 (D. Ariz. 2016) (striking answer where conduct showed "concerted effort to wrongfully withhold evidence, misrepresent the facts, and mislead Plaintiff and the Court to comport with Defendant's and counsels' false narrative"); *Ptak Bros. Jewelry, Inc. v. Ptak*, 06 CIV.13732(DC), 2009 WL 807725, at *9-10 (S.D.N.Y. Mar. 30, 2009) (entering default under Rules 37, 41, and inherent powers because defendants "made misrepresentations," asserted frivolous defenses, and ignored discovery obligations).

  For example, in *Malautea* the defendant disrupted discovery to "avoid revealing the truth at all costs." 987 F.2d at 1541. The district court found the defendant responded to discovery by improperly narrowing its answers, delayed producing documents after being ordered to do so, and denied the existence of certain damaging evidence in interrogatory responses. After the plaintiff obtained that damaging evidence from a third party, the defendant and its counsel admitted they knew about the damaging evidence. The district court granted default and the Eleventh Circuit affirmed, finding "defendants and their attorneys engaged in an unrelenting campaign to obfuscate the truth." *Id.* at 1543-1545.

  Likewise in *Jones*, the court found the plaintiff "lied under oath in [an] affidavit," then "lied under oath at the evidentiary hearing." 2022 WL 4389727, at *32. "Dismissal with prejudice [was therefore] warranted." *Id.* at *34*; see also Oniha*, 2021 WL 4930127, at 7-9 (dismissing complaint with prejudice after plaintiff produced falsified evidence and lied at deposition). Similarly, in *Anheuser-Busch, Inc*., the Ninth Circuit affirmed dismissal of counterclaims where a defendant "repeatedly lied to" plaintiff and "to the court throughout every phase of this litigation." 69 F.3d at 350. The court explained, "dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Id.* at 348. Because the defendant did not "take her oath to tell the truth seriously and...w[ould] say anything…to prevail" the court expected continued deception, thereby making it "appropriate to reject lesser sanctions" and dismiss the claim. *Id.* at 352.

  The Court also has the power and discretion to grant issue preclusion sanctions when a party lies to the court and opposing counsel. *Bates v. Michelin N. Am.*, No. 1:09-cv-3280-AT, 2012 WL 453233, at *1 (N.D. Ga. Jan. 13, 2012) (granting issue preclusion that tire was defective and failed because of its

defective condition); *see also* Fed. R. Civ. P. 37(c)(1)(C); (b)(2)(A)(i)(ii). Entering sanctions that "establish certain facts is one of the least harsh sanctions available to courts and… is only more severe than the granting of expenses and attorneys' fees." *Chilcutt v. United States*, 4 F.3d 1313, 1320 n. 17 (5th Cir. 1993). Courts also routinely grant issue preclusion sanctions.  For example, in *Bates*, the court based issue preclusion sanctions on a "pattern of subterfuge and withholding relevant and responsive documents until [p]laintiffs are forced to seek the Court's intervention." 2012 WL 453233, at *1.  The court found the defendant had concealed evidence, misrepresented facts, and caused extreme delay, which warranted sanctions beyond previous sanctions of attorneys' fees.  2012 WL 453233, at *21-24.

eCW had countless opportunities to tell the truth.  Every single time it chose to lie.  Relators will not repeat every single lie described above, but the sheer number of misrepresentations eCW has made is staggering. It lied about the work Sygnia did, the documents that existed about that work, and Mr. Wortman's role overseeing it all.  eCW's lawyers prepped Mr. Wortman and Mr. Litwak to testify, then allowed those witnesses to lie under oath.  eCW then repeated those lies in numerous filings and arguments in Court.  And it concealed three additional Sygnia reports, even after it was clear the Court was laser focused on the Sygnia work product and its incorporation into Mr. Wortman's opinions.

Lawyers from Skadden Arps, Kirkland & Ellis, and Aaron Katz Law, knew the arguments eCW was making to the Court about Mr. Litwak were based on lies.  They knew that because they commissioned the September Litwak Report and reviewed its findings.  And despite taking part in a hearing that focused on the May Litwak Report and whether eCW had disclosed Sygnia's testing, none of those lawyers disclosed then, or after, that they had commissioned on behalf of eCW a report with additional testing results.  Or that they had commissioned other reports that were also copied by Mr. Wortman.

But this was not simply a decision made by eCW's lawyers.  eCW's Chief Financial Officer and its in-house lawyer, Ms. Horrell,[92] were copied on the correspondence with Mr. Wortman and Sygnia about Sygnia's consulting bills.  They knew Mr. Wortman was more involved in overseeing the consulting work

---

[92] Ms. Horrell was at the June 2025 hearing when eCW argued Mr. Wortman "didn't know the scope of the consulting work." *Id*. at 60: 9-10. So too was eCW's compliance officer who has attended every hearing in this case.

than he claimed. They also knew the Sygnia "consulting" work lasted well after Mr. Wortman's work started and involved issues beyond technical validation of Relators' allegations. In short, eCW's corporate leadership knew the arguments its lawyers were making to this Court were not true.

Relators do not request default lightly. But eCW has been sanctioned three times and it has not stopped lying. Even after the October 2025 hearing when the Court said it believed eCW had misled it, eCW lied in its post-hearing filings. If the Court had not compelled eCW to produce all Sygnia's work product, none of eCW's additional lies would have come to light. Relators can only guess what other concealed deceptions eCW has embedded throughout the arduous discovery process of this case. Putting aside what the Court and Relators do not know, the record establishes that just like the misbehaving parties in the cases described above and who were dismissed or defaulted, eCW has manipulated discovery, ignored Court orders, lied to the Court and Relators repeatedly, and done everything in its power to avoid disclosing damaging evidence. *See Malautea*, 987 F.2d at 1547 (default appropriate based on "defendants and their attorneys … unrelenting campaign to obfuscate the truth"); *see also Oniha*, 2021 WL 4930127, at *9 (dismissal appropriate for repeated misrepresentations); *Anheuser-Busch, Inc.*, 69 F.3d at 352 (dismissal appropriate because party's deceptive conduct proved lesser sanctions would not be sufficient). eCW has earned a default judgment.

If the Court disagrees, Relators submit that issue preclusion sanctions—one of the Court's least harsh sanctions[93]—are needed at a minimum. *Bates*, 2012 WL 453233, at *1. eCW hired Mr. Wortman and Sygnia to defend eCW's security and its software development process, so issue preclusion sanctions on those topics are appropriate. *Id.* at *22-24; Fed. R. Civ. P. 37(c)(1)(C); (b)(2)(A)(i) and (ii). Thus, if the Court does not grant default judgment, Relators ask the Court to sanction eCW by establishing the following facts that eCW may not contest with argument or evidence:

(1) Version 11 of eCW's software included critical severity security vulnerabilities.
(2) The security vulnerabilities in Version 11 allowed or caused the following issues in the software:
    a. A user could access protected health information without entering a username or password
    b. Users who had logged in to the software could set their own permissions and take actions (including viewing, downloading, and altering PHI) that were beyond those established by

[93] *Chilcutt,* 4 F.3d at 1320, n.17.

19

   the practice

  c. eCW's audit logs do not record every user's actions within the system, including the action of viewing and downloading PHI

  d. The software did not automatically lock after a period of non-use; and

  e. The software stored PHI on the computers of users and that was accessible without logging in to eCW's software

(3) eCW knew, or should have known, those security vulnerabilities existed during the entire time Version 11 was certified for use by the ONC

(4) eCW did not have effective software development or testing processes to ensure that its software was free of foreseeable vulnerabilities.

## III. Conclusion

  eCW has proven that it does not believe the rules apply to it.  Even after being sanctioned twice and facing a third sanction, eCW continued lying to the Court and Relators.  Because eCW has shown it will never stop disobeying the Court's Orders, never follow the Rules, and never tell the truth, Relators ask the Court to sanction eCW by striking its answer and entering default or, in the alternative, entering the tailored issue preclusion sanctions described above and to exclude Mr. Wortman.

  Respectfully submitted this 12th day of February, 2026.

/s/ Robert H. Snyder, Jr.
ROBERT H. SNYDER, JR.
 Georgia Bar. No. 404522
 rob@cannellasnyder.com
ALEXANDRA "SACHI" COLE
 Georgia Bar No. 696892
 sachi@cannellasnyder.com
HANNAH D. AMANUEL
 Georgia Bar No. 922743
 hannah@cannellansnyder.com
CHASE LYNDALE
 Georgia Bar No. 183762
 chase@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

BRIAN P. ADAMS
 Georgia Bar. No. 142474
 brian@brianadamslaw.com
MARY BETH HAND
 Georgia Bar No. 322836
 mbhand@brianadamslaw.com
ADAMS LAW FIRM

598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

ANNA GREEN CROSS
 Georgia Bar No. 306674
 anna@crosskincaid.com
MEREDITH KINCAID
 Georgia Bar No. 148549
 meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Avenue, Suite 715
Decatur, GA 30030
(404) 948-3022

*Counsel for Relators*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 12th day of February, 2026.

*<u>/s/ Robert H. Snyder Jr.</u>*
Robert H. Snyder Jr.
Georgia Bar No. 404522
