# EXHIBIT A

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

**Office of the Secretary**

**45 CFR Parts 170 and 171**

**RIN 0955–AA09**

**Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions To Unleash Prosperity**

**AGENCY:** Assistant Secretary for Technology Policy (ASTP)/Office of the National Coordinator for Health Information Technology (ONC) (collectively, ASTP/ONC), Department of Health and Human Services (HHS).

**ACTION:** Proposed rule.

**SUMMARY:** This proposed rule focuses on deregulatory actions identified in HHS regulations regarding Health information technology standards, implementation specifications, and certification criteria and certification programs for health information technology, and information blocking. This proposed rule seeks to reduce burden, offer flexibility to both developers and providers, and support innovation through the removal and revisions of certain certification criteria and regulatory provisions. This proposed rule also seeks to address reported misuse and abuse of information blocking definitions and exceptions.

**DATES:** To be assured consideration, written or electronic comments must be received at one of the addresses provided below, no later than 5 p.m. Eastern Time on February 27, 2026.

**ADDRESSES:** You may submit comments, identified by RIN 0955–AA09, by any of the following methods (please do not submit duplicate comments). Because of staff and resource limitations, we cannot accept comments by facsimile (FAX) transmission.

• *Federal eRulemaking Portal:* Follow the instructions for submitting comments. Attachments should be in Microsoft Word, Microsoft Excel, or Adobe PDF; however, we prefer Microsoft Word. *http://www.regulations.gov.*

• *Regular, Express, or Overnight Mail:* Department of Health and Human Services, Assistant Secretary for Technology Policy/Office of the National Coordinator for Health Information Technology, Attention: Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity Proposed Rule, Mary E. Switzer Building, Mail Stop: 7033A, 330 C Street SW, Washington, DC 20201. Please submit one original and two copies.

• *Hand Delivery or Courier:* Assistant Secretary for Technology Policy/Office of the National Coordinator for Health Information Technology, Attention: Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity Proposed Rule, Mary E. Switzer Building, Mail Stop: 7033A, 330 C Street SW, Washington, DC 20201. Please submit one original and two copies. (Because access to the interior of the Mary E. Switzer Building is not readily available to persons without federal government identification, commenters are encouraged to leave their comments in the mail drop slots located in the main lobby of the building.)

*Inspection of Public Comments:* All comments received before the close of the comment period will be available for public inspection, including any personally identifiable or confidential business information that is included in a comment. Please do not include anything in your comment submission that you do not wish to share with the general public. Such information includes, but is not limited to, the following: a person's social security number; date of birth; driver's license number; state identification number or foreign country equivalent; passport number; financial account number; credit or debit card number; any personal health information; or any business information that could be considered proprietary. We will post all comments that are received before the close of the comment period at *http://www.regulations.gov.*

*Docket:* For access to the docket to read background documents, comments received, or the plain-language summary of the proposed rule of not more than 100 words in length required by the Providing Accountability Through Transparency Act of 2023, go to *http://www.regulations.gov* or the Department of Health and Human Services, Assistant Secretary for Technology Policy/Office of the National Coordinator for Health Information Technology, Mary E. Switzer Building, Mail Stop: 7033A, 330 C Street SW, Washington, DC 20201 (call ahead to the contact listed below to arrange for inspection).

**FOR FURTHER INFORMATION CONTACT:** Michael Lipinski, Office of Policy, Assistant Secretary for Technology Policy/Office of the National Coordinator for Health Information Technology, 202–690–7151.

**SUPPLEMENTARY INFORMATION:**

## Table of Contents

I. Executive Summary
  A. Purpose of Deregulatory Action
  1. Administration Deregulatory Priorities
  2. ASTP/ONC Implementation
  a. Certification Program and Information Blocking
  b. America's FHIR-Forward Future
  B. Summary of Major Provisions
  1. Health Information Technology Standards, Implementation Specifications, and Certification Criteria and Certification Programs for Health Information Technology (Part 170)
  a. Certification Criteria for Health Information Technology
  b. Standards and Implementation Specifications for Health Information Technology
  c. Terms and Definitions
  d. Conditions and Maintenance of Certification Requirements for Health IT Developers
  e. ONC Health IT Certification Program Administrative Requirements
  2. Information Blocking (Part 171)
  C. Severability
  D. Costs and Benefits
II. Background
  A. Statutory Basis
  1. Standards, Implementation Specifications, and Certification Criteria
  2. Health IT Certification Program
  B. Regulatory History
III. Health Information Technology Standards, Implementation Specifications, and Certification Criteria and Certification Programs for Health Information Technology (Part 170)
  A. Certification Criteria for Health Information Technology
  1. Clinical Certification Criteria
  a. Patient Demographics
  b. Clinical Decision Support
  c. Family Health History
  d. Implantable Device List
  2. Care Coordination Certification Criteria
  a. Transitions of Care
  b. Clinical Information Reconciliation and Incorporation
  c. Security Tags—Summary of Care
  d. Care Plan
  e. Decision Support Interventions
  3. Clinical Quality Measures Certification Criteria
  a. Clinical Quality Measures—Report
  b. Clinical Quality Measures—Filter
  4. Privacy and Security Certification Criteria
  5. Patient Engagement Certification Criteria
  a. View, Download, and Transmit to a 3rd Party
  b. Patient Health Information Capture
  6. Public Health Certification Criteria
  a. Transmission to Cancer Registries
  b. Transmission to Public Health Agencies—Electronic Case Reporting
  c. Transmission to Public Health Agencies—Antimicrobial Use and Resistance Reporting
  d. Transmission to Public Health Agencies—Health Care Surveys

7. Design and Performance Certification Criteria
  a. Automated Numerator Recording
  b. Automated Measure Calculation
  c. Safety Enhanced Design
  d. Quality Management System
  e. Accessibility-centered Design
  f. Consolidated CDA Creation Performance
  g. Application Access—Patient Selection
  h. Application Access—All Data Request
8. Transport Methods and Other Protocols Certification Criteria
  a. Direct Project
  b. Direct Project, Edge Protocol, and XDR/XDM
B. Standards and Implementation Specifications for Health Information Technology
1. United States Core Data for Interoperability Version 3.1 Update (USCDI v3.1)
  a. National Technology Transfer and Advancement Act
  b. ''Reasonably Available'' to Interested Parties
2. Standards and Implementation Specifications
C. Terms and Definitions
1. Base EHR
2. Common Clinical Data Set
3. Global Unique Device Identification Database and Production Identifier
D. Conditions and Maintenance of Certification Requirements for Health IT Developers
1. Assurances
2. Application Programming Interfaces
3. Real World Testing
4. Attestations
5. Insights
E. ONC Health IT Certification Program Administrative Requirements
1. Principles of Proper Conduct for ONC–ACBs
2. Health IT Module Certification
3. Certification to Newer Versions of Certain Standards
4. Effect of Revocation on the Certifications Issued to Health IT Module(s)
IV. Information Blocking (Part 171)
A. ''Access'' and ''Use'' Definitions
B. Infeasibility Exception Revisions
1. Third Party Seeking Modification Use Condition
2. Manner Exception Exhausted Condition
C. Manner Exception
D. Removal of Subpart D Exception and Other Provisions Specific to TEFCA
V. Incorporation by Reference
VI. Response to Comments
VII. Collection of Information Requirements
  A. ONC–ACBs
  B. Health IT Developers
VIII. Regulatory Impact Analysis
  A. Statement of Need
  B. Overall Impact
  1. Regulatory Planning and Review Analysis
    a. Costs and Benefits
    b. Accounting Statement and Table
  C. Regulatory Flexibility Act
  D. Executive Order 13132—Federalism
  E. Unfunded Mandates Reform Act of 1995

## I. Executive Summary

*A. Purpose of Deregulatory Action*

1. Administration Deregulatory Priorities

On January 31, 2025, President Trump issued Executive Order (E.O.) 14192 ''Unleashing Prosperity Through Deregulation,''[1] which states that it is the policy of the Administration to significantly reduce the private expenditures required to comply with Federal regulations to secure America's economic prosperity and national security and the highest possible quality of life for each citizen. ASTP/ONC is issuing this proposed rule in an effort to streamline and reduce administrative burdens on health care providers, health information technology (IT) developers, and the health IT community overall. This proposed rule would also improve patient and health care provider access to electronic health information (EHI) and promote health IT and health care market competition with proposals to revise the information blocking regulations.

In order to implement the President's deregulatory initiatives, and to better promote the health and well-being of the American people, HHS intends to dramatically expand its deregulatory efforts. An important component of Making America Healthy Again is making sure that health care providers and caretakers can focus on preventing and treating chronic diseases. By proposing to remove duplicative and unnecessary requirements of the ONC Health IT Certification Program (Certification Program), we will support providers in caring for their patients. Developers of certified health IT will have more time to support providers' specific technological needs. Providers may also have more health IT choices to meet their needs through increased competition in the certified health IT market that may come from reduced barriers to entry for the certification of health IT. Further, proposed revisions to the information blocking regulations would support health care providers in using innovative third-party software with their EHRs as well as their access, exchange, and use of patients' EHI.

2. ASTP/ONC Implementation

a. Certification Program and Information Blocking

Since the inception of the Certification Program, ASTP/ONC has aimed to implement and administer the Certification Program in the least burdensome manner that supports an administration's policy goals. Throughout the years, we have worked to improve the Certification Program with a focus on ways to reduce burden, offer flexibility to both developers and providers, and support innovation. Over the past 15 years, we have established a set of regulatory requirements that have provided a foundation for our voluntary Certification Program. As we look to the future, there is an opportunity to review the existing requirements and make updates as needed. Through both formal notice and comment rulemaking and informal engagements, we have received suggestions on how to update the Certification Program to meet current market needs. This proposed rule proposes deregulatory actions that: take into consideration these suggestions; account for the current and future state of technology; reduce burden by eliminating redundant requirements; and promote innovation for health IT developers, providers, and other interested parties. We have also evaluated the information blocking regulations and propose the removal of one exception, removal and revisions of conditions of other exceptions, and revisions of definitions to better promote EHI access, exchange, and use. Together, these efforts directly align with Administration goals as outlined in E.O. 14192 (Unleashing Prosperity through Deregulation)[2] and E.O. 14267 (Reducing Anti-Competitive Regulatory Barriers).[3]

b. America's FHIR-Forward Future

Background

In 2012, Health Level Seven (HL7®) first published for industry feedback what is now called the Fast Healthcare Interoperability Resources (FHIR®)[4] standard. FHIR aimed to build on prior HL7 work, including well-established messaging and document standards (*e.g.,* HL7 Version 2, Clinical Document Architecture (CDA)). It also sought to improve developer usability and ease of implementation by leveraging internet-scale tooling common to modern web services. Rooted in a RESTful architectural style,[5] FHIR organizes data into granular ''resources'' (*e.g.,* Patient, Observation,

---

[1] *https://www.federalregister.gov/documents/2025/02/06/2025-02345/unleashing-prosperity-through-deregulation.*

[2] *https://www.federalregister.gov/documents/2025/02/06/2025-02345/unleashing-prosperity-through-deregulation.*

[3] *https://www.federalregister.gov/documents/2025/04/15/2025-06463/reducing-anti-competitive-regulatory-barriers.*

[4] *https://hl7.org/fhir/summary.html.*

[5] *https://ics.uci.edu/~fielding/pubs/dissertation/fielding_dissertation.pdf.*

3. Clinical Quality Measures Certification Criteria

a. Clinical Quality Measures—Report

We propose to revise the "clinical quality measures—report" certification criterion in § 170.315(c)(3) as of the effective date of a final rule. We propose to remove the requirement in § 170.315(c)(3)(ii), as this provision may no longer be used to support certification to the criterion. In the Cures Act Interim Final Rule, we revised § 170.315(c)(3) to include a corrected compliance transition timeline for the criterion in § 170.315(c)(3)(ii), which specified the use of standards in § 170.205(h)(2) and in § 170.205(k)(1) and (2), for the period before December 31, 2022 (85 FR 70075, 70083). We propose to remove paragraph § 170.315(c)(3)(ii) because that transition time period has elapsed. We also propose to move the requirements in § 170.315(c)(3)(i) to § 170.315(c)(3), thus removing all subparagraphs and including all criterion requirements in the main paragraph for § 170.315(c)(3). We welcome comments on our proposal.

b. Clinical Quality Measures—Filter

We propose to remove the "clinical quality measures—filter" certification criterion in § 170.315(c)(4) with an effective date of January 1, 2027. This certification criterion assesses whether a Health IT Module can filter quality data based on a set of standardized data elements for electronic clinical quality measures (eCQM) calculated using certified health IT.

In the Voluntary Edition Proposed Rule, we proposed a new certification criterion in § 170.315(c)(4) that would require health IT to record structured data allowing CQM results to be grouped by patient characteristics (79 FR 10903 and 10904).[37] We proposed this capability to support eCQM reporting by group practice or accountable care organization (ACO). We also proposed capturing patient characteristics that support identification of health disparities, that help providers identify gaps in quality, and that support delivery of specialized care to needful patient subgroups. We did not adopt this certification criterion in the 2014 Edition Release 2 Final Rule as we received comments recommending refinement of the use cases and performance of more analysis on which data elements are being captured in standardized ways (79 FR 54462).

In the 2015 Edition Proposed Rule (80 FR 16844) we proposed to add § 170.315(c)(4) as a new certification criterion for CQM filtering based on the rationale that health IT should support an organization's ability to filter individual and aggregate eCQM results in ways that support administrative reporting, identification of health disparities, and identification of gaps in care.

In the 2015 Edition Final Rule, we adopted the "CQMs—filter" certification criterion in § 170.315(c)(4), along with three other CQM certification criteria: "CQMs—record and export" (§ 170.315(c)(1)), "CQMs—import and calculate" (§ 170.315(c)(2)), and "CQMs—report" (§ 170.315(c)(3)) (80 FR 62649 through 62655). Together, these four criteria were adopted to support providers' quality improvement activities and to support reporting to programs such as the EHR Incentive Programs, Quality Payment Program, and Comprehensive Primary Care plus initiative.

The 2015 Edition Final Rule adopted § 170.315(c)(4) as a new 2015 Edition certification criterion that supports the capability of a clinician to filter eCQM results using data captured for quality improvement and quality reporting purposes. We finalized that Health IT Modules certified to § 170.315(c)(4) must be able to: record data and filter CQM results at both patient and aggregate levels; filter by any combination of the data elements established as part of the criterion with associated vocabulary standards; create a data file of the filtered data in accordance with the QRDA Category I and Category III standards; and display the filtered data in a human readable format.

This certification criterion is not included in the Base EHR definition in § 170.102 but is included in the CEHRT definition for MIPS in 42 CFR 414.1305 as an optional criterion. While we recognize the value of this functionality, we propose to remove this criterion for multiple reasons. We reviewed and evaluated existing regulations to identify deregulatory actions that would reduce administrative burden, and the private expenditures required for compliance with federal regulations. We have identified that the administrative costs of certification for the CQMs—filter certification criterion are no longer offset by the benefits of advancing the specific functionality supported by the criterion. Further, we do not believe that quality measure filtering functionality would be removed from health IT systems because of our proposal to remove this criterion.

Quality reporting programs, such as those required by states and CMS programs, require broader supplemental data and capabilities beyond what we currently require for certification. In addition, health IT developers have widely implemented technology solutions that expand beyond the baseline requirements of the certification criterion (see section III.A for a discussion on "widely implemented"). Through listening sessions with a wide range of health care provider types and sites of service, public correspondence, and CHPL data, we understand that the use of the CQMs—filter certified functionality is fairly low relative to the other certification criteria that support clinical quality measure capabilities. According to CHPL data, as of August 2025, there are 340 active Health IT Modules certified to § 170.315(c)(1), (2), or (3), but only 71 active Health IT Modules certified to § 170.315(c)(4). Among the feedback we have received, health care providers participating in CMS alternative payment models, as well as health IT developers supporting quality initiatives, have reported that they have different options to filter eCQM results, including using customized systems and/or the support of third parties to support innovative, specialty-specific quality measurement and reporting tailored to their particular needs. We therefore believe the value of maintaining this certification criterion is minimal as health IT developer time and resources would be better spent on quality data system modernization efforts leveraging FHIR-based APIs for quality data exchange.

We therefore propose to remove the certification criterion in § 170.315(c)(4) as of January 1, 2027.

4. Privacy and Security Certification Criteria

We propose to remove all the privacy and security certification criteria in § 170.315(d) and the associated Privacy and Security Certification Framework under § 170.550(h) as of the effective date of a subsequent final rule.

We first adopted a version of the privacy and security certification criteria currently found in § 170.315(d) (and associated standards) in the 2011 Edition through an interim final rule (75 FR 2033 through 2035). These certification criteria originated from HIT Policy Committee and HIT Standards Committee recommendations. The

---

[37] Practice site and address; Tax Identification Number (TIN), National Provider Identifier (NPI), and TIN/NPI combination; diagnosis; primary and secondary health insurance, including identification of Medicare and Medicaid dual eligible; demographics including age, sex, preferred language, education level, and socioeconomic status.

criteria generally focused on basic technical capabilities that could be included in the development of Health IT Modules that would be certified. We used the Health Insurance Portability and Accountability Act of 1996 (HIPAA) Security Rule (45 CFR 164 parts 160 and 164, subparts A and C) as the starting point for the Certification Program's privacy and security certification criteria, with the intent of ensuring that Certified EHR Technology (now referred to as ''certified health IT'') included at least one capability to assist a HIPAA covered entity with complying with HIPAA Security Rule requirements. The initial criteria also included a certification criterion (''accounting of disclosures'') to support entities regulated under HIPAA that must provide an accounting of disclosures of protected health information [38] made in certain circumstances.[39] We noted, however, that the interim final rule strictly focused on the capabilities of Certified EHR Technology and did not change existing HIPAA Privacy Rule or Security Rule requirements, guarantee compliance with those requirements, or absolve an eligible professional, eligible hospital or other health care provider from having to comply with any applicable provision of the HIPAA Privacy or Security Rules. In addition, we stated that, while the capabilities provided by Certified EHR Technology may assist an eligible professional, eligible hospital in improving their technical safeguards, the use of Certified EHR Technology alone does not equate to compliance with the HIPAA Privacy or Security Rules. We stated that the capabilities provided by Certified EHR Technology do not in any way affect the analysis that an entity regulated by HIPAA is required to perform by 45 CFR 164.306(b) and (d) (75 FR 2035).

With the 2014 Edition, we included the privacy and security certification criteria in the Base EHR definition in an attempt to provide both developers and health care providers more flexibility in meeting Certification Program requirements, while still providing health care providers with basic technical options that could support compliance with parts of the HIPAA Privacy and Security Rules (77 FR 54265). Based on recommendations from the HIT Standards Committee, we established a third privacy and security certification approach under § 170.550(h) for the new 2015 Edition so that each certification criterion also had a set of separate privacy and security certification criteria attributed to them that were applicable to the criterion's functionality (80 FR 62705 through 62707). In doing so, we established the current Privacy and Security Certification Framework, which has been in place for the past 10 years. Under this framework, health IT developers have two options for meeting requirements: build the capabilities themselves natively into their certified health IT; or provide system documentation to demonstrate that the certified health IT could integrate (via service interfaces) with required privacy and security capabilities (80 FR 62707).

We have come to the conclusion that, despite the Certification Program providing various certification flexibilities and approaches to accommodate the privacy and security certification criteria (*i.e.,* different approaches for the 2011, 2014 and 2015 Editions), the costs and burden of these Certification Program requirements far exceed their intended purpose and benefits.

First, we have found that health IT developers have changed their development processes to build in privacy and security capabilities to meet these certification requirements rather than attempting to demonstrate that their technology could interface with other health IT that provides these capabilities. This has led to negative experiences for health care providers who have sought to use a best-of-breed, non-certified security technology to work across their deployed enterprise (*e.g.,* a third-party audit log).

Second, as certified health IT (which is generally EHR-focused technology) is often implemented in enterprise-wide settings (*e.g.,* group practices, large health care systems, multi-provider cloud-supported services), such certified health IT cannot in isolation, or independently, provide the necessary privacy and security capabilities for HIPAA Security Rule compliance across all relevant technologies of the enterprise-wide setting.

Third, while certified health IT has always been ''linked'' to the Medicare Promoting Interoperability Program and the MIPS Promoting Interoperability performance category, those programs have not required participating health care providers to use or implement the privacy and security capabilities included in certified health IT for purposes of meeting the security risk analysis measure. Rather, the health care providers must ''have'' such certified health IT. As such and as discussed in more detail below, health care providers participating in the Medicare Promoting Interoperability Program or the MIPS Promoting Interoperability performance category are required to adopt certified capabilities that they may not use because, for example, they may prefer a non-certified security health IT product to meet their overall security needs under relevant HIPAA Security Rule requirements.

Fourth, many stakeholders have overinterpreted the Certification Program's limited scope and policy purpose with respect to health IT security and instead assumed that the Certification Program assessed discrete specific security capabilities at significant depths, such as when and how the capabilities are implemented in health care provider or system settings. For example, stakeholders have expressed incorrect expectations of certified health IT and developers, such as expectations that the Certification Program required health IT developers of certified health IT to implement and conduct penetration testing of certified health IT or ensure that certified authentication and authorization capabilities protect against known or unknown vulnerabilities. In contrast, and to allow for significant scalable deployment flexibility, certified heath IT must only, for example, demonstrate support for basic authentication and role-based access control.

Finally, there remains a disconnect between health IT certified to the privacy and security certification criteria under the Certification Program and the implementation and compliance responsibilities of most purchasers and users of certified health IT with the HIPAA Privacy and Security Rule requirements. This disconnect has led to the introduction of unnecessary regulatory burden and duplication, as well as unwarranted opportunity costs for innovation. As we noted above and in our rulemakings related to the privacy and security certification criteria, the adoption of health IT certified to the privacy and security certification criteria does not guarantee compliance with the HIPAA Privacy and Security Rule requirements. Further, the adoption of health IT certified to the privacy and security certification criteria does not serve as an affirmative defense, has not been identified as a mitigating factor in assessing HIPAA civil money penalties, and does not exempt a HIPAA-regulated entity from having to comply with any applicable provision of the HIPAA Privacy or Security Rules. These facts alone have created unnecessary burden for health care providers that adopt

---

[38] 45 CFR 160.103 (definition of ''protected health information'').

[39] 42 U.S.C. 17935(c), sec. 13405(c) of the American Recovery and Reinvestment Act of 2009, Public Law 111–5, 123 Stat. 265 (Feb. 17, 2009); 45 CFR 164.528.

certified health IT and health IT developers of certified health IT that also meet the definition of a covered entity or business associate, respectively, and are subject to the HIPAA Privacy and Security Rules.[40] In fact, we have heard from stakeholders both arguing that our certification requirements go beyond the HIPAA Security Rule requirements (75 FR 44619, 80 FR 62707) or do not go far enough in meeting HIPAA Privacy Rule and Security Rule requirements (80 FR 62691, 62706). As such, our Certification Program requirements are diverting financial resources and efforts from innovative, agile, and comprehensive solutions that can address the threats faced by health care providers and meet their regulatory obligations under the HIPAA Privacy and Security Rules. By removing the privacy and security certification requirements under the Certification Program, we will provide health IT developers with the flexibility to innovate in this area and to develop new solutions to address the needs of their customers. Such an approach should also spur competition and give health care providers, including small practices, the opportunity to choose the best privacy and security technologies that fit their needs at the best price versus being forced to accept those capabilities included in certified health IT that may not fit their health information privacy and security needs for various reasons.

We will continue to collaborate with our colleagues in HHS to promote privacy and security and to strengthen the nation's critical health care infrastructure. Equally, we are not completely foregoing the adoption of privacy and security capabilities within the Certification Program. Instead, going forward, we intend to prioritize the adoption of privacy and security capabilities that are fit for purpose, use case specific, and deliver much needed technical consistency in the market when paired with specific conformance requirements. For example, as we pursue more API-focused certification criteria, if the standards and implementation guides adopted for them do not specify or leave optional specific security requirements, we may look to add further constraints (*e.g.,* multi-factor authentication support). But in all cases, we intend to make security capability conformance a built-in part of a certification criterion's conformance and not the separate and stand-alone conformance assessment that it is today. With this planned approach in mind, we also request comment on an alternative proposal as discussed below.

In lieu of removing, on the effective date of a subsequent final rule, all of the privacy and security certification criteria in § 170.315(d) and the associated Privacy and Security Certification Framework under § 170.550(h), we would retain the ''auditable events and tamper resistance'' (§ 170.315(d)(2)), ''audit report(s)'' (§ 170.315(d)(2)), and ''auditing actions on health information'' (§ 170.315(d)(10)) certification criteria and associated Privacy and Security Certification Framework certification requirements. These certification criteria and included functionality may serve to help identify fraud and abuse. The functionality may also support health care provider compliance obligations and investigations by relevant entities, including both civil and criminal matters at the federal and state levels. Identifying and addressing fraud and abuse increases confidence in the nation's health care system, reduces inappropriate and wasteful spending, and protects taxpayer dollars when it comes to government spending on health care.

We welcome feedback on these proposals.

5. Patient Engagement Certification Criteria

a. View, Download, and Transmit to a 3rd Party

We propose to revise the ''view, download, and transmit to 3rd party'' (VDT) certification criterion in three ways as described below. These proposed revisions, if finalized, would be effective as of the effective date of a subsequent final rule.

We first included the Web Content Accessibility Guidelines (WCAG 2.0) standard as a requirement of the view, download, and transmit to 3rd party (VDT) certification criterion (§ 170.315(e)(1)) in the 2014 Edition. Specifically, the VDT certification criterion viewing capability required conformance to WCAG Level A (77 FR 54179). This provided an accessibility baseline for health IT certified to the criterion. With the 2015 Edition, we proposed compliance with WCAG Level AA (as we did for the 2014 Edition) but finalized a policy that gave developers the option of demonstrating conformance with either Level A or Level AA to meet the certification requirements (80 FR 62660).

We now propose to remove the WCAG conformance requirement from the certification criterion (found in § 170.315(e)(1)(i)). As noted above, the WCAG baseline certification standard of Level A was adopted with the 2014 Edition in 2012 and has been part of the VDT certification criterion since that time. The functionality is now sufficiently widespread among certified health IT and health care providers who adopt such technology. This is true because the VDT certification criterion has been part of the CEHRT definitions and specifically supports the patient access measure under the Medicare Promoting Interoperability Program and MIPS Promoting Interoperability performance category since the 2014 Edition. By removing the WCAG certification requirement, health IT developers of health IT currently certified to § 170.315(e)(1) will have the opportunity to consider other innovative ways to provide patients with the viewing functionality. To this point, commenters noted in response to the 2014 Edition WCAG proposals that most patients want functions and content provided in a more visually appealing manner than the WCAG standard allows. Further, as we noted in the 2011 Edition Interim Final Rule and again in response to comments on the 2011 Edition Interim Final Rule, in providing patients with access to their online health information, the accessibility requirements of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973 still apply to entities covered by these federal civil rights laws (75 FR 2036, 75 FR 44643). In addition, Section 1557 of the Patient Protection and Affordable Care Act (Affordable Care Act) prohibits covered entities from subjecting individuals to certain forms of discrimination, including on the grounds prohibited by Section 504 of the Rehabilitation Act, in any health program or activity.[41] Health IT developers and other health programs or activities who receive Federal financial assistance under the Certification Program or other federal programs likely qualify as covered entities [42] under Section 1557 and would be required to comply with applicable accessibility requirements. Under Section 504 of the Rehabilitation Act, recipients of financial assistance from HHS must conform to certain accessibility requirements, including but not limited to using the WCAG 2.1

---

[40] 45 CFR 160.103 (definitions of ''covered entity'' and ''business associate'').

[41] *https://www.ecfr.gov/current/title-45/part-92#p-92.4(Health%20program%20or%20activity).*

[42] *https://www.ecfr.gov/current/title-45/part-92#p-92.4(Covered%20entity).*