**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ALEX PERMENTER, et al., | |
| Plaintiffs, | No. 5:18-CV-382 |
| v. | Honorable Marc T. Treadwell |
| eCLINICALWORKS, LLC, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO RELATORS' THIRD MOTION FOR SANCTIONS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ................................................................................................................2

    A.    The Parties' Prior Sanctions Disputes Regarding Oren Wortman...........................2

    B.    The Court's January 2026 Order..............................................................................3

ARGUMENT ......................................................................................................................4

I.    There Was No Discovery Misconduct. ......................................................................4

    A.    eCW And Its Counsel Have Fully Complied With The Court's January 2026 Order. ...........................................................................................................4

    B.    Mr. Wortman's Expert Opinions Do Not Rely On Consulting Documents Produced In Response To The January 2026 Order. .................................................6

          1.    The Public Research Summary ...................................................................7

          2.    Dayan Document .........................................................................................9

          3.    Revisions To The Sygnia PowerPoint ......................................................11

    C.    Mr. Wortman's Failure To Recall His Limited Involvement In A Billing Issue Is A Basis for Cross Examination, Not Exclusion Or Any Other Sanction...................................................................................................................13

II.    Relators' Proposed Sanctions Cannot Be Justified.................................................15

    A.    There Is No Basis To Exclude Mr. Wortman's Expert Testimony.......................15

    B.    Issue Preclusion Sanctions Are Entirely Inapplicable And Inappropriate.............17

    C.    Default Judgment Would Violate eCW's Due Process Rights. .............................19

CONCLUSION.................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Acosta v. Novamed Surgery Center of Orlando, LLC*,
2014 WL 12872615 (M.D. Fla. May 8, 2014)....................................................14

*Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*,
2021 WL 4935791 (M.D. Fla. May 21, 2021)....................................................15

*In re AndroGel Antitrust Litigation (No. II)*,
888 F. Supp. 2d 1336 (N.D. Ga. 2012).............................................................15

*BankAtlantic v. Blyth Eastman Paine Webber, Inc.*,
127 F.R.D. 224 (S.D. Fla. 1989).......................................................................20

*Demboske v. Autry Greer & Sons, Inc.*,
740 F. Supp. 3d 1172 (N.D. Fla. 2024).............................................................16

*Diamond Trust u/a/d 10/28/2005 v. Diamond*,
2022 WL 4493035 (11th Cir. Sept. 28, 2022)...................................................20

*Glover v. City of Atlanta*,
2024 WL 4735751 (N.D. Ga. Sept. 17, 2024)....................................................15

*H.S. Field Services, Inc. v. CEP Mid-Continent, LLC*,
2015 WL 11144029 (N.D. Okla. June 17, 2015).................................................7

*Hall v. Insurance Corp. of British Columbia*,
2023 WL 11920411 (M.D. Fla. Nov. 14, 2023)...................................................5

*Hawkins v. Fulton County*,
96 F.R.D. 416 (N.D. Ga. 1982).........................................................................12

*International Brominated Solvents Ass'n v. American Conference of Governmental
Industrial Hygienists*,
2008 WL 1805445 (M.D. Ga. Apr. 18, 2008).....................................................5

*Jones v. Life Care Centers of America, Inc.*,
2022 WL 4389727 (M.D. Fla. Aug. 11, 2022)...................................................19

*Kleiman v. Wright*,
2020 WL 113396 (S.D. Fla. Jan. 10, 2020)..................................................18, 19

*Kleiman v. Wright*,
    2023 WL 7039512 (11th Cir. Oct. 26, 2023)........................................................12, 15

*Marshall v. Dentfirst, P.C.*,
    313 F.R.D. 691 (N.D. Ga. 2016) ...............................................................................5

*Marshall v. Segona*,
    621 F.2d 763 (5th Cir. 1980) ...................................................................................12

*Mediware Information Systems, Inc. v. Hematerra Technologies, LLC*,
    2016 WL 4925166 (M.D. Fla. Sept. 1, 2016) ........................................................19

*Meyer v. Gwinnett County Police Department*,
    2022 WL 2439590 (11th Cir. July 5, 2022)............................................................20

*Nextplat Corp. v. Seifert*,
    2024 WL 1533218 (S.D. Fla. Mar. 7, 2024)...........................................................16

*In re Nitro Leisure Products, L.L.C.*,
    2003 WL 25669322 (S.D. Fla. Dec. 16, 2003) .................................................15, 17

*Norfolk County Retirement System v. Ustian*,
    2009 WL 2386156 (N.D. Ill. July 28, 2009)...........................................................14

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
    549 F.3d 1344 (11th Cir. 2008) ..............................................................................12

*Peacock v. Merrill*,
    2009 WL 10704514 (S.D. Ala. Mar. 5, 2009) .................................................17, 18

*Perkins v. Smith, Gambrell & Russell, LLP*,
    2011 WL 13176111 (N.D. Ga. Jan. 25, 2011).................................................16, 18

*Perrymond v. Lockheed Martin Corp.*,
    2011 WL 13269790 (N.D. Ga. June 8, 2011)..........................................................18

*PFM Air, Inc. v. Doctor Ing.hc.F.Porsche A.G.*,
    2011 WL 13176222 (M.D. Fla. Feb. 1, 2011) ........................................................10

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
    851 F.3d 1218 (11th Cir. 2017) ..............................................................................13

*Reid v. BMW of North America*,
    2006 WL 8431456 (N.D. Ga. Feb. 17, 2006) ..........................................................7

*Reid v. McDaniel*,
    2019 WL 13227588 (N.D. Ga. Nov. 5, 2019) .................................................13

*Secrease v. Western & Southern Life Insurance Co.*,
    800 F.3d 397 (7th Cir. 2015) .............................................................................7

*United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*,
    616 F. Supp. 3d 1339 (M.D. Ga. 2022) ............................................................16

*Vinson v. Thee Tree House, LLC*,
    2023 WL 6292490 (M.D. Fla. Aug. 7, 2023) ..................................................19

*Weilbrenner v. Teva Pharmaceuticals USA, Inc.*,
    696 F. Supp. 2d 1329 (M.D. Ga. 2010) ..........................................................15

**RULE**

Fed. R. Civ. P. 37(c)(1) ...........................................................................................15

Relators' Third Motion for Sanctions (the "Motion") seeks case-ending sanctions based on eClinicalWorks, LLC's **compliance** with the Court's January 2026 Order directing eCW to produce materials related to the work of its litigation consultants at Sygnia Consulting, Ltd.  These consulting materials were initially withheld in good faith as attorney work product and outside the scope of discovery.  Once the Court ordered production of these materials, however, eCW and its counsel responded promptly, broadly producing all Sygnia consulting work product identified regardless of its lack of relationship to eCW's testifying expert.

Relators now seek to punish eCW for that effort, asking the Court to impose case-ending sanctions because they assert: (1) eCW violated the Court's order because responsive unproduced documents **might** exist; (2) eCW's testifying expert, Oren Wortman, purportedly relied on some of the materials eCW produced; and (3) they believe that eCW's counsel and members of Sygnia willfully misrepresented certain facts.  These arguments are meritless.

**First**, eCW and its counsel **fully** complied with the January 2026 Order, producing all responsive information available to them or from Sygnia, and have submitted declarations to that effect.  Relators offer nothing more than speculation that other work product exists.

**Second**, Relators' assertions that Mr. Wortman relied upon or "parroted" Sygnia consulting materials produced in response to the Order—and that they should have been produced earlier— is false and based upon a mischaracterization and exaggeration of the specific documents they point to.  Relators effectively ask this Court to re-sanction eCW for producing the documents the Court ordered to be produced as a sanction.

**Third**, eCW's counsel and Mr. Wortman never purposefully misled anyone.  Mr. Wortman failed to remember his involvement in certain billing communications—fodder for cross, not default or exclusion.  Counsel mistakenly believed that Sygnia's last version of a PowerPoint was

in May 2023 when further additions were made in September—an error explained by the fact that Sygnia's few hours of work on it were never billed, its conclusions stayed the same, and counsel and Sygnia had little to no interaction regarding the later draft.  eCW itself had nothing to do with counsel's or Mr. Wortman's failure to recall these documents, which Relators now have.

There is no basis for *any* sanction—let alone, the severe, disproportionate sanctions Relators propose.  Relators ask the Court to (1) exclude Mr. Wortman's testimony; (2) preclude eCW's defense of Relators' key allegations; and/or (3) grant default judgment in Relators' favor.  This Court has already rejected a request to exclude Mr. Wortman's testimony based on eCW's alleged failure to produce Sygnia's materials earlier (and issued alternative sanctions).  There is no basis to impose the extreme sanctions of default judgment or issue preclusion, either of which would violate eCW's due process rights.  Relators' sanctions motion should be denied.

## BACKGROUND

### A.    The Parties' Prior Sanctions Disputes Regarding Oren Wortman

eCW produced Mr. Wortman's expert report on April 27, 2024, and responded to Relators' first deposition notice and document requests on July 11, 2024.  (ECF 210-1; Ex. 1 at 5.)  In answering Relators' follow-up questions about the deposition, eCW confirmed that Mr. Wortman had not provided litigation consulting services to eCW, but others from Sygnia had assisted counsel "in understanding the technical issues raised in Relators' complaint."  (ECF 210-3 at 4.)  Relators subsequently moved to exclude Mr. Wortman after his deposition, arguing he had failed to adequately disclose his reliance on testing performed by Dan Litwak, one of the consulting experts from Sygnia that eCW's counsel had retained.  (ECF 210 at 10-12.)  In June 2025, the Court ordered Mr. Litwak's deposition.  (ECF 334.)

In their notice of Mr. Litwak's deposition, Relators requested a broad array of documents eCW believed went far beyond the Court's instructions and Mr. Litwak's testing.  (*See* ECF 490-5;

Decl. of Richard T. Bernardo ("Bernardo Decl.") ¶¶ 22-23, Ex. A (Ex. 2).)  The parties met and conferred regarding the precise scope of documents that Relators wanted, and Relators confirmed that they sought only materials reflecting work performed by Mr. Litwak, ***not*** by anyone else at Sygnia.  (*Id.* ¶¶ 23-25.)  Accordingly, eCW served written responses to Mr. Litwak's deposition notice two days later (July 17, 2025), and objected "to the extent [Relators] seek any information or documents beyond 'the work that [Mr. Litwak] did in connection with Mr. Wortman's work.'" (ECF 490-5 at 1.)  Relators never raised concerns with that objection, and Mr. Litwak therefore did not search for or produce work product of anyone else.  (Bernardo Decl. ¶ 26.)

eCW's July 17 response identified "a report generated by Sygnia that includes the screenshots of testing being produced in response to Request No. 2," but objected to the production of the PowerPoint (the "Sygnia PowerPoint") based on work product grounds.  (ECF 490-5 at 4.) To avoid another dispute, eCW agreed to produce the Sygnia PowerPoint on July 31, 2025, after which Relators filed a renewed motion to exclude Mr. Wortman and for sanctions.  (*See* ECF 358.)

**B.    The Court's January 2026 Order**

On January 15, 2026, the Court required eCW to "immediately produce the Sygnia consulting team's work product" and "pay the Relators' attorneys' fees and costs associated with their motions to exclude Wortman's opinions."  (ECF 496 at 13.)  eCW fully complied with the Court's order: eCW confirmed it had no responsive documents, and counsel began a rolling production of counsel's documents and documents obtained from Sygnia within 48 hours of the order.  (Bernardo Decl. ¶¶ 3-4, 7.)  Counsel completed production from its files within approximately one week, taking a broad view of the scope ordered by the Court.  (*Id.* ¶¶ 9, 11.)

Counsel produced Sygnia's work product on a rolling basis as it was provided to eCW's counsel.  (*Id.* ¶¶ 3-4.)  Counsel engaged in regular, lengthy calls with Sygnia's Dan Litwak and Avi Sambira (a Sygnia project manager).  (*Id.* ¶ 12.)  After several such calls—and contrary to

Relators' suggestion that counsel improperly involved Sygnia's in-house legal team (Mot. at 12)—Sygnia **unilaterally** involved its in-house counsel, which slowed its production process. (Bernardo Decl. ¶ 13.) Because of that delay, eCW's counsel then engaged Sygnia's counsel directly, and eventually, eCW retained additional counsel and threatened litigation against Sygnia to ensure compliance with the Court's order. (*Id.* ¶¶ 14-21.) Sygnia completed its production shortly thereafter. (*Id.* ¶ 4(vii).) Just before the final production, Relators filed the instant motion. (*Id.* ¶ 4 n.1; ECF 503.)

eCW and counsel have produced all of the Sygnia consulting team's work product in their custody or control. (Bernardo Decl. ¶ 6.) Likewise, Sygnia has represented to eCW and counsel that it has produced everything that it believes is called for by the Court's January 2026 Order, including documents never previously shared with eCW or counsel. (*Id.* ¶¶ 20, 38, 43.) Contrary to Relators' assertions, eCW and its counsel undertook significant efforts to be diligent, thorough, and comprehensive in their compliance with the Court's order. (*Id.* ¶ 2.)

<u>**ARGUMENT**</u>

## I.    THERE WAS NO DISCOVERY MISCONDUCT.

Relators allege three categories of discovery misconduct that they claim warrant case-ending sanctions: (1) eCW failed to comply with the Court's January 2026 Order; (2) Mr. Wortman's report allegedly relied upon materials produced in response to the January 2026 Order the existence of which counsel purportedly concealed; and (3) Mr. Wortman misstated his involvement in the billing process for Sygnia at his deposition. (Mot. at 12-15.) These arguments are meritless or simply repackage the same grounds on which the Court already entered sanctions in January 2026. None warrants additional sanctions.

### A.    eCW And Its Counsel Have Fully Complied With The Court's January 2026 Order.

Relators argue that eCW should be sanctioned because it is "unclear whether eCW has

complied with the Court's Order." (Mot. at 12.) Nothing could be further from the truth. eCW started producing documents within two days of the Court's order, finished production of work product in its custody within roughly a week, and produced all the documents it received from Sygnia as they were received, requiring nine separate productions totaling about 250 documents. (*See* Bernardo Decl. ¶ 4 & n.1.) Everything about this sequence confirms that eCW took its compliance with the Court's order with absolute seriousness. In fact, eCW threatened to sue Sygnia—which independently represented that it has produced all responsive work product in its custody—so eCW could do everything within its power to comply with the Court's order as quickly and thoroughly as possible. (*Id.* ¶¶ 20-21.) This conduct is the opposite of disregarding the Court's order.

Relators also assert that eCW should be sanctioned because "[w]hat eCW produced ***seems*** to be incomplete" and there "***seemingly*** should" be additional documents. (Mot. at 12 (emphasis added).) "Speculation that documents must exist is not enough to show that [a party] engaged in subjective bad faith such that sanctions are warranted." *Hall v. Ins. Corp. of B.C.*, 2023 WL 11920411, at *10 (M.D. Fla. Nov. 14, 2023). Relators lack any evidence that eCW, counsel, or Sygnia are knowingly withholding responsive work product. They are not. (*See* Bernardo Decl. ¶¶ 7-11, 20-21.) A party must present substantially more than "rank speculation" to show unproduced responsive documents exist, let alone justify sanctions like default judgment, issue preclusion, or expert exclusion. *Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691, 697 n.6 (N.D. Ga. 2016) (denying sanctions as the "possibility" of unproduced documents is "rank speculation and wholly insufficient"); *accord Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists*, 2008 WL 1805445, at *4 (M.D. Ga. Apr. 18, 2008) (vague claim that more documents may exist was insufficient for sanctions).

That is all Relators offer here.  Relators claim that eCW "seemingly" may be withholding "documents reflecting Sygnia's work in December 2023 to investigate eCW's JIRA production" (Mot. at 12), but counsel explained to Relators prior to this Motion's filing that the Jira consulting work was never conducted because of delays in creating a functioning instance of Jira tickets. (Bernardo Decl. ¶¶ 46-48.)  The very January 2024 email that Relators cite shows Sygnia was "still looking into how to deploy Jira on [its] environment including costs of licensing and infrastructure"—meaning the project still had not started.  (*See id.* ¶ 45; ECF 503-8.)  In fact, the installation of the Jira instance was not accomplished until sometime in March 2024 (Bernardo Decl. ¶ 47), which reinforces that there are no such documents "reflecting Sygnia's work in December 2023" (or ever) being withheld.  (Mot. at 12.)  Nor is there a basis for Relators to assert that other work product exists besides the summaries, communications, or draft PowerPoints produced.  (*Id.*)  Counsel and Sygnia confirmed there is not.  (Bernardo Decl. ¶¶ 6, 20.)  Relators provide the Court with **no** evidence that eCW is withholding responsive work product in bad faith, that Sygnia conducted an inadequate search, or that eCW directed Sygnia to perform an inadequate search in violation of the Court's order.  (Mot. at 12-13.)

**B.    Mr. Wortman's Expert Opinions Do Not Rely On Consulting Documents Produced In Response To The January 2026 Order.**

Relators assert that eCW made knowingly false representations to the Court and intentionally "hid" documents that Relators assert Mr. Wortman relied on in his expert report: (1) an October 2023 document entitled *Software Vendors – Breaches and Vulnerabilities* (the "Public Research Summary"); (2) a summary prepared by Elroy Dayan in Spring 2023 (the "Dayan Document"); and (3) versions of the Sygnia PowerPoint dated August 14 (the "August PowerPoint") and September 6, 2023 (the "September PowerPoint").  (Mot. at 10-11.)  These inflammatory accusations are flat wrong, as explained below.  But even more fundamentally,

Relators ask this Court to re-sanction eCW for withholding Sygnia's work product after it already did so. (*See* ECF 496 at 13.) Sanctioning eCW for not producing earlier the very documents the Court ordered eCW to produce as a sanction seeks to punish eCW twice for the same conduct. *See, e.g.*, *H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*, 2015 WL 11144029, at *2 (N.D. Okla. June 17, 2015) (denying sanctions where "the undersigned ha[d] already imposed a substantial Rule 37 sanction for discovery misconduct"). Relators do not cite a single case holding that eCW can be punished twice for failing to produce material that it had withheld in good faith as work product.[1] *Reid v. BMW of N. Am.*, 2006 WL 8431456, at *5 (N.D. Ga. Feb. 17, 2006) ("Since the documents were arguably protected work product, the [c]ourt will not sanction defendants for failing to produce them earlier."). In addition to that fundamental defect, Mr. Wortman did not see and did not rely on any of documents Relators identify.

### 1.    The Public Research Summary

Sygnia's Threat Research Group prepared the Public Research Summary for the "main objective" of "illustrat[ing] and provid[ing] information on cyber breaches and software vulnerabilities across all sectors and among vendors of various sizes and disciplines" based on a review of publicly available sources. (ECF 503-13 at 4.) This was a separate research project at the request of eCW's counsel and performed by a different Sygnia unit unrelated to Mr. Litwak's testing. (Bernardo Decl. ¶¶ 33-34; Decl. of Oren Wortman ("Wortman Decl.") ¶ 11 (Ex. 3).) The project had nothing to do with Relators' technical allegations or testing of eCW's software, Mr. Litwak was not involved in its creation, and Mr. Litwak did not receive a copy of the summary. (Bernardo Decl. ¶¶ 34-35.)

Mr. Wortman **did not** rely on or consider the Public Research Summary for his expert

---

[1]    This is not a case where evidence was "falsified." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 400-02 (7th Cir. 2015) (cited in Mot. at 15, 16).

report.  (Wortman Decl. ¶ 13.)  He never saw this document prior to issuing his report; he had no communications about this work with the Sygnia individuals with substantive responsibility for it (Amir Sadon and Ronen Regev); and they had no role in connection with Mr. Wortman's expert report.  (*Id.* ¶¶ 13-16.)  The summary itself does not even mention eCW.  (*See* ECF 503-13.)  eCW produced this document because it gave a broad interpretation to materials responsive to the Court's order, not because the Public Research Summary has anything to do with either Mr. Wortman's expert opinions or Mr. Litwak's testing, or was in either of their files.[2]

Nevertheless, Relators hunted for any possible similarity they could drum up between the 40-page Public Research Summary and Mr. Wortman's 71-page expert report, and they came up with two.  First, Relators note both documents have the same bar chart from the 2023 SonicWall Cyber Threat Report.  (*See* Mot. at 11.)  But that superficial overlap is easily explained by the fact that SonicWall is an industry-leading source routinely cited by experts in this field for this exact issue.  (Wortman Decl. ¶ 21.)  One can find the same document and its bar chart with a google search.  (*Id.* ¶ 20.)  Mr. Wortman independently identified and decided to rely on this same widely recognized source for trends in "common vulnerabilities and exposures" or "CVEs" by year (*id.* ¶ 19-20)—a point confirmed by the fact that Mr. Wortman and the Public Research Summary obtained this bar chart from ***different*** sources.  (*Compare* ECF 210-1 ¶ 36 (citing https://www. nwtechnology.com/wp-content/uploads/2023/03/Sonicwall-2023-Cyber-Threat-Report.pdf), *with* Ex. 4 (native excerpt of ECF 503-13 at 63 citing to https://www.sonicwall.com/2023-cyber-threat-report/).)

Second, Relators gloss over the fact that the Public Research Summary cites more than 100

---

[2]    Relators note that Sygnia's Avi Sambira served as the project manager on the Public Research Summary and consulting work on Relators' technical allegations.  (Mot. at 6-8.)  As the hours breakdown on the billing entries confirm, Mr. Sambira did no substantive work on either the project.  (ECF 358-4, 503-15.)

sources not in Mr. Wortman's report and Mr. Wortman cites multiple public sources not in the Public Research Summary, and instead point out that both documents discuss Mandiant's September 2023 article *Analysis of Time-to-Exploit Trends: 2021-2022*.  (Mot. at 11.)  Relators tell the Court that Mr. Wortman "copied" language from the Public Research Summary (*id.*), but the specific words in these two documents are ***different*** and each largely tracks Mandiant's own language.  (*Compare* ECF 503-13 at 63-64 ("***Sixty-two*** percent ***(153)*** of the vulnerabilities were first exploited as zero-day vulnerabilities"; "year-over-year") (emphases added), *with* ECF 210-1 ¶ 43 ("***62%*** of ***exploited*** vulnerabilities ***in cyberattacks during the 2021-2022 time period*** were first exploited as zero-day vulnerabilities"; "year over year") (emphases added); *see also* Ex. 5 (*comparing* ECF 210-1 ¶ 43, *with* ECF 503-13 at 65 and Mandiant's *Analysis*).)  If Mr. Wortman had copied this language, it would be verbatim.  Regardless, Mandiant is an industry-leading cybersecurity firm whose article Mr. Wortman independently identified and relied on because Mandiant's reports are relied on by every expert in this field.  (Wortman Decl. ¶¶ 20, 22.)  The cited information is in the article's Executive Summary, and multiple contemporaneous articles use nearly identical language about Microsoft, Google, and Apple.[3]  Relators cannot credibly claim Mr. Wortman "copies and pastes" from the Public Research Summary, while ignoring ***all*** of the differences between these reports, their specific language, their sources, and the ubiquity of the public information "copied"—to say nothing of these statistics' unimportance to the overall substance of Mr. Wortman's opinions or the merits in this case.  (Mot. at 10-11.)

### 2.    *Dayan Document*

In early 2023, Sygnia contract employee Elroy Dayan was part of the consulting team that

---

[3]    *See, e.g.*, https://www.intel.com/content/dam/www/central-libraries/us/en/documents/2024-02/abi-research-security-as-a-component-of-tech.pdf;  https://medium.com/nerd-for-tech/zero-day-software-vulnerabilities-still-rare-but-trending-in-the-wrong-direction-10a7b2bf8c8e.

was hired to address Relators' technical allegations. (Bernardo Decl. ¶ 39.) As Mr. Litwak testified, "[t]here w[ere] communication issues" and Mr. Dayan "was not really available as needed," so Mr. Litwak "took over" as a litigation consultant and conducted his own testing, which was previously produced to Relators. (ECF 361 at 45:10-23.) Prior to Mr. Litwak taking over, Mr. Dayan created a document summarizing his work. Mr. Wortman did not consider or rely on this document in his April 2024 report because he has ***never*** received or reviewed the document. (Wortman Decl. ¶ 6.) eCW and its counsel also did not know the Dayan Document existed before Sygnia provided it in response to the Court's January 2026 Order. (Bernardo Decl. ¶ 43; Decl. of Geoffrey Wyatt ("Wyatt Decl.") ¶ 34 (Ex. 6); Decl. of Aaron Katz ("Katz Decl.") ¶ 12 (Ex. 7).) None of Mr. Dayan's billing entries are during the "reporting" phase and nothing in his time entries indicate he created a "testing report." (Mot. at 6; *compare* ECF 358-4 at 2 (Litwak entries referring to "Report preparations"), *with id.* (Dayan entries: "Claims Verification" and "Penetration Testing and vulnerability research").)

This document was also never within the scope of the parties' agreed discovery. The Court ordered Mr. Litwak to be deposed regarding the testing ***he*** performed, and eCW expressly limited its production in response to his deposition to testing Mr. Litwak conducted and documents in his files. (*See* ECF 490-5.) The parties conferred about that limitation, and Relators never objected after that limitation was asserted in writing. (Bernardo Decl. ¶¶ 25-26.) As Relators concede, Mr. Litwak did not create the Dayan Document. (*See* Mot. at 6.) This document was also not in Mr. Litwak's files. (Bernardo Decl. ¶ 43.) The notion that eCW willfully "hid" testing that it did not know about, Mr. Wortman did not rely on for his opinions, was not performed by Mr. Litwak, was not in ***any*** of their files, and was outside the scope of the discovery sought is meritless. (Mot. at 6.) *See also PFM Air, Inc. v. Dr. Ing.hc.F.Porsche A.G.*, 2011 WL 13176222, at *1 (M.D. Fla.

Feb. 1, 2011) ("This court cannot order the production of documents [parties] do not possess.").

### 3.    *Revisions To The Sygnia PowerPoint*

Mr. Litwak prepared the May 9, 2023 Sygnia PowerPoint for eCW's counsel in his capacity as a consulting expert, and eCW produced this document to Relators on July 31, 2025, despite its good-faith belief that it constituted attorney work-product (because it was prepared only for counsel and not shared with Mr. Wortman) and that Mr. Wortman had already identified in his report the screenshots and/or testing results that were in the PowerPoint.  (Bernardo Decl. ¶ 27 & n.2.)  In attempting to reconstruct the timeline of Sygnia's work as part of Mr. Litwak's deposition-related productions in 2025 (two years after it ended), both counsel and Mr. Litwak believed that this project had ended in May 2023, including because the last billing entry for this project was May 9, 2023.  (*Id.* ¶¶ 27-28.)  eCW's counsel did not recall that Sygnia made further edits to this PowerPoint months later in August or September, since the changes simply involved adding sentences to advise counsel that Relators' supplemental discovery response did not change Sygnia's conclusions, the time spent on these revisions was so low (less than 3 hours) that Sygnia did not bill for it, and the PowerPoint was never completed, as evidenced by the line edits and comment bubbles in the September PowerPoint.  (*Id.* ¶ 31; ECF 503-2.)  However, once eCW's counsel re-discovered those versions while collecting documents in response to the Court's January Order, eCW's counsel promptly contacted Relators and the Court about the existence of later versions.  (Bernardo Decl. ¶ 29.)  Mr. Litwak confirmed to counsel that he did not perform any testing in connection with his work on the draft revised PowerPoint versions even though it was initially discussed and referenced in emails at that time.  (*Id.* ¶ 32; ECF 503-1.)

eCW's counsel does not minimize its failure to recall this later version.  But nothing about this absence of recollection falls on eCW.  eCW was not even aware of the August or September PowerPoints given Sygnia never billed for them.  (Bernardo Decl. ¶ 31.)  The lack of recollection

was counsel's alone. *See, e.g.*, *Marshall v. Segona*, 621 F.2d 763, 769 (5th Cir. 1980) (reversing sanction under Rule 37 where party's "noncompliance was … manifestly the fault of the lawyer rather than the client, if fault there was"); *Hawkins v. Fulton Cnty.*, 96 F.R.D. 416, 422 (N.D. Ga. 1982) (denying sanctions "where the facts are not such as to indicate that the litigant is a participant in the fault, sanctions finally depriving him of his day in court should be the last resort").

Moreover, Relators' suggestion that Mark Speyer (eCW's CFO), Whitney Horrell (Senior Legal Counsel at eCW), and Aaron Katz (one of eCW's outside counsel) had any meaningful involvement with Sygnia's work as a consulting expert (*see* Mot. at 1, 3-4) is just wrong. Neither Mr. Speyer nor Ms. Horrell ever received or reviewed work product from Sygnia's litigation consulting work. (Decl. of Mark Speyer ("Speyer Decl.") ¶ 6 (Ex. 8); Decl. of Whitney Horrell ("Horrell Decl.") ¶ 6 (Ex. 9).) Their entire involvement was limited to reviewing and approving two billing invoices dated May 23 and October 31, 2023. (Speyer Decl. ¶ 4; Horrell Decl. ¶ 5.) Likewise, while Mr. Katz was copied on some transmittal emails from Sygnia, he never opened or reviewed the Sygnia materials in Relators' brief—a fact Mr. Katz conveyed to Relators before they filed their motion. (Katz Decl. ¶¶ 6-12.) Nor did Mr. Speyer, Ms. Horrell, or Mr. Katz have any role in deciding which material to produce to Relators in connection with Mr. Wortman's report or the deposition notices issued to Mr. Wortman and Mr. Litwak. (Speyer Decl. ¶ 7; Horrell Decl. ¶ 7; Katz Decl. ¶ 14.) They have ***nothing*** to do with these issues.

For sanctions to be "just," they must be tailored to address the purported violation. *Kleiman v. Wright*, 2023 WL 7039512, at *6 (11th Cir. Oct. 26, 2023). For that reason, courts have repeatedly held that a good-faith mistake that causes a discovery violation does not warrant the wholesale exclusion of an expert. *See, e.g.*, *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1365 (11th Cir. 2008) (overturning sanction order where the discovery violation was

due to mistakes or actions taken in good-faith); *Reid v. McDaniel*, 2019 WL 13227588, at *6 (N.D. Ga. Nov. 5, 2019) (denying a motion to exclude an expert witness based on an untimely expert disclosure after finding that counsel had acted in good faith).  The standard is even higher under the Court's inherent authority: "[t]he key to unlocking a court's inherent power is a finding of bad faith."  *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).

Again, eCW's counsel takes responsibility for this oversight.  But counsel's failure to recall subsequent versions of these PowerPoints did not conceal any information that Mr. Wortman relied on for his opinions.  Mr. Wortman never saw the August and September PowerPoints.  (Wortman Decl. ¶ 6.)  Paragraphs 82, 89, and 131 of his report in no way parrot any of the changes in these revised PowerPoints.  Relators assert that he "copies portions" of the September PowerPoint, but the language they point to is ***entirely*** different.[4]  (Mot. at 10-11.)  Nothing about these revised PowerPoints changes the depositions that Relators took of Mr. Wortman and Mr. Litwak, let alone justifies a sanction of deciding the trial in Relators' favor.  And eCW counsel's good-faith error in trying to reconstruct the end date of the consulting project two years after the fact—a date that was supported by the billing invoices and where the only subsequent work were minor revisions to an unfinished draft—does not warrant punishment beyond what the Court has already imposed.

## C.    Mr. Wortman's Failure To Recall His Limited Involvement In A Billing Issue Is A Basis for Cross Examination, Not Exclusion Or Any Other Sanction.

Separately, Relators emphasize that Mr. Wortman had administrative communications with eCW regarding two invoices that Sygnia submitted for its consulting work, even though he previously testified that he had "no idea" about "how much that engagement totaled or whose

---

[4]  ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████████

hours or anything else related to it." (Mot. at 9-10.) Based on that inconsistency, Relators extrapolate that "eCW concealed" that Mr. Wortman had "oversight" and ***substantive*** involvement in Sygnia's consulting work separate from his expert opinions. (*Id.*) That argument has no merit.

Mr. Wortman had no substantive involvement in any of Sygnia's consultancy projects. (*See, e.g.*, Wortman Decl. ¶¶ 5,13.) The bills do not even list him as a biller on the projects.[5] (*See* ECF 358-4, 503-15.) Mr. Wortman, as the originating and relationship partner, did address billing issues with eCW. (Wortman Decl. ¶¶ 7, 17.) But none of the billing details or communications discuss anything more than a high-level description of the work done. (*See* Ex. 10; ECF 503-14; ECF 503-16 at 3.) They do not describe the details, sources, testing, analysis or conclusions of that work, let alone prove Mr. Wortman was substantively involved in the creation of the project's content or relied on it in connection with developing his expert opinions in this case. *See, e.g.*, *Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156 (N.D. Ill. July 28, 2009) ("[A]ccess alone does not automatically translate into detailed knowledge of the content of all of [a company's] files, documents, and practices."). The fact that Mr. Wortman failed to recall his involvement with the bills at his deposition nearly a year later (*see* ECF 237 at 58:6-15) does not support the leap that he "hid" and intentionally concealed that he was actually enmeshed in the project's substance.

Mr. Wortman's failure to recall these billing disputes is entirely collateral to the merits of Relators' False Claims Act allegations and the substance of Mr. Wortman's opinions. But even assuming that were not the case, Relators have a built-in remedy: cross-examination. "Contradictory expert testimony is grounds for cross-examination, not exclusion." *See, e.g.*,

---

[5]    Relators are wrong that Rule 26 requires disclosure of billing communications between an expert and a party. *See, e.g.*, *Acosta v. Novamed Surgery Ctr. of Orlando, LLC*, 2014 WL 12872615, at *2 n.5 (M.D. Fla. May 8, 2014) (finding expert's general fee schedule was sufficient under Rule 26); *contra* Mot. at 13. Relators never even raised this issue in response to eCW's objections and limitations for Mr. Wortman's deposition document subpoena, which specified what eCW would produce. (*See* Ex. 1 at 5.)

*Glover v. City of Atlanta*, 2024 WL 4735751, at \*7 (N.D. Ga. Sept. 17, 2024); *In re AndroGel Antitrust Litig. (No. II)*, 888 F. Supp. 2d 1336 (N.D. Ga. 2012) (inconsistencies between expert's professional writings and opinions were not a basis to exclude an expert under either *Daubert* or Rule 702; *Weilbrenner v. Teva Pharms. USA, Inc.*, 696 F. Supp. 2d 1329 (M.D. Ga. 2010) ("[S]imply because an expert witness's testimony is contradicted is no cause for disregarding it").[6]

## II. RELATORS' PROPOSED SANCTIONS CANNOT BE JUSTIFIED.

Even if some sanction were warranted, the severe sanctions that Relators seek are wholly inappropriate. "[A] court must [only] impose sanctions that are both 'just' and 'specifically related to the particular "claim" which was at issue in the order to provide discovery.'" *Kleiman*, 2023 WL 7039512, at \*6. All the sanctions that Relators pursue fail this standard.

### A. There Is No Basis To Exclude Mr. Wortman's Expert Testimony.

Relators' motion "renew[s] their request to strike Mr. Wortman" as an expert, which this Court previously rejected. (Mot. at 12.) Nothing in eCW's recent productions in compliance with the Court's January 2026 Order warrants reconsideration of that decision.

"The striking of an expert report and testimony is a severe sanction" that is "not appropriate where a party's actions were [substantially] justified or harmless." *In re Nitro Leisure Prods., L.L.C.*, 2003 WL 25669322, at \*1 (S.D. Fla. Dec. 16, 2003) (denying motion to exclude expert for failure to disclose data relied upon where movant had not "proved evidence of bad faith or willful disobedience"); Fed. R. Civ. P. 37(c)(1). "Substantial justification is 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*,

---

[6]   Relators' insinuation that Mr. Wortman participated in the consulting projects because of a November 23, 2023 email to counsel is wrong. As Relators know, the November 23 email came nearly eight months after Mr. Wortman submitted a declaration, which was produced to Relators, in a Massachusetts case on behalf of eCW. (Wortman Decl. Ex. A.) Mr. Wortman has submitted a sworn statement that his reference to "Permenter" in the November 23, 2023 email was mistaken. (Wortman Decl. ¶¶ 23-25.)

2021 WL 4935791, at *1 (M.D. Fla. May 21, 2021).  Exclusion of expert testimony is "unwarranted" when the expert "failed to disclose discoverable information" based on a "good faith assumption that the material was privileged," where documents were omitted "inadvertently," or the movant fails to "follow[] up to insist on [its] production." *Perkins v. Smith, Gambrell & Russell, LLP*, 2011 WL 13176111, at *3-4 (N.D. Ga. Jan. 25, 2011); *U.S. ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, 616 F. Supp. 3d 1339, 1373 (M.D. Ga. 2022).  And belated disclosure is in any event harmless when the opposing party has adequate time to respond to it before trial.  *See, e.g.*, *Nextplat Corp. v. Seifert*, 2024 WL 1533218, at *4 (S.D. Fla. Mar. 7, 2024) (finding "harm is absent" where expert disclosure came "four months prior to the then-set trial").

There is no basis to exclude Mr. Wortman's testimony under these standards.  eCW's prior nonproduction was substantially justified based on counsel's good-faith belief that the materials were protected work product, they were not relevant to Mr. Wortman's opinions, Relators did not dispute they were outside the scope of discovery, or they were unknown to eCW and its counsel.  (Bernardo Decl. ¶¶ 22-26, 43.)  Nothing in the recent productions is to the contrary, given Mr. Wortman (1) had never seen the Public Research Summary until after the Court's January 2026 Order; (2) did not know the Dayan Document existed; (3) never saw the Revised Sygnia PowerPoints; and (4) had limited billing-related communications with eCW that in no way show he was involved in the substance of that Sygnia's consulting work.  (Wortman Decl. ¶¶ 2-25.)

Relators' cases do not compel any different result.  Relators rely on and quote *Demboske v. Autry Greer & Sons, Inc.*, 740 F. Supp. 3d 1172 (N.D. Fla. 2024), for the proposition that this Court has an "inherent authority to exclude expert opinions" where "counsel lies to the Court" regarding the expert.  (Mot. at 13.)  In *Demboske*, one of the many reasons the Court struck the expert's testimony was counsel affirmatively misrepresented that the expert needed extra time to

complete his report because relevant materials had not yet been produced when that was false. Here, eCW, its counsel, or Mr. Wortman have not made *any* willful misrepresentation.  The fact that counsel—two years after the fact—inadvertently failed to recall that Sygnia made inconsequential changes to the May version of the Sygnia PowerPoint in August and September 2023 was not willful.  Counsel took affirmative steps to corroborate their recollection that the May version was the final version that Sygnia worked on and were (incorrectly) reassured by the fact that billing records showed that Sygnia did not bill for work on this consultancy after May 2023.[7] Relators assert that they "remain deprived of a full disclosure of evidence" related to Mr. Wortman's opinions (Mot. at 14), but the reality is the opposite: Relators have all the materials Mr. Wortman relied upon for his opinions, as well as hundreds of pages of documents he never saw relating to separate consulting work others at Sygnia performed for eCW's lawyers.  Relators have *far more* materials with which to cross-examine eCW's expert than litigants in other cases. There is no basis to strike Mr. Wortman's testimony.  *Nitro*, 2003 WL 25669322, at *1.

## B.    Issue Preclusion Sanctions Are Entirely Inapplicable And Inappropriate.

Relators also ask the Court to go even further and impose issue preclusion.  (Mot. at 19-20.)  Specifically, Relators ask the Court to find that eCW should be precluded from defending itself at trial through *any* witness on multiple key elements of Relators' claims, including that

████████████████████████████████████████████████████

████████████████████████████████████████████████████  (*Id.*)

Issue preclusion is grossly inappropriate here.  Issue-preclusion sanctions apply where a party has been *denied and lacks* evidence necessary to establish a claim, and the preclusion is both just and specifically related to the discovery order at issue.  *See Peacock v. Merrill*, 2009 WL

---

[7]    The number of hours Sygnia worked on these additions to the PowerPoint was so insignificant that Sygnia did not bill for them.  (Bernardo Decl. ¶ 31.)

10704514, at *5-6 (S.D. Ala. Mar. 5, 2009) (finding a "proposed judicial establishment of fact" may be avoided "by providing [movant] with the contested documents"); *Perrymond v. Lockheed Martin Corp.*, 2011 WL 13269790, at *3 (N.D. Ga. June 8, 2011) ("[C]ourts examine whether the requested sanction is just and relates to the claim about which the discovery is being sought."). Moreover, bad faith is required for a "sanction that specified facts be deemed established" if it "effectively requires a default judgment," as it will here. *Perrymond*, 2011 WL 13269790, at *3.

Relators fail to make any of those showings. eCW initially withheld in good faith materials related to Sygnia's litigation consulting projects as attorney work product, and then made a full, prompt production to Relators in response to the Court's January 2026 Order. (Bernardo Decl. ¶¶ 2-37.) A party's assertion that documents are privileged—even if those materials are later deemed discoverable—does not constitute "bad faith" or the intentional concealment of evidence. *See Perkins*, 2011 WL 13176111, at *3-4 (non-disclosing party's "assumption that the material was privileged" was in "good faith"). Indeed, the privilege protocol states there was no obligation to ***log***—let alone, produce—"[d]ocuments and communications between … counsel that has been retained by a party and … any non-testing experts." (ECF 105 ¶ 5.) And to the extent any of this evidence is even relevant to Relators' claims, they ***have*** it. That defeats any arguable justification for issue preclusion in the first place. *Peacock*, 2009 WL 10704514, at *5-6.

On top of those failings, the facts for which Relators seek preclusion do not "***specifically*** relate to the discovery issue that was pending"—a requirement of due process. *Kleiman v. Wright*, 2020 WL 113396, at *10 (S.D. Fla. Jan. 10, 2020) (emphasis added) (vacating magistrate order deeming facts admitted as a sanction for failing to produce "a list of the Defendant's Bitcoin Holdings" because the facts at issue did not "specifically relate to the discovery issue that was pending"). For example, eCW's belated production of materials related to work done by litigation

18

consultants **after** the litigation began does not "specifically relate to" eCW's pre-litigation ████████████████████████████████████████████████████ (Mot. at 20.)  Furthermore, not only does Relators' requested finding that eCW's ████████ ██████████████████████████████████ (Mot. at 20) have nothing to do with the Dayan Document, Public Research Summary, or any other issue discussed in their motion, Relators have ████████████████████████████████████████████████████ ██████████████████████ (*See* ECF 218-29 at 57-58; ECF 378-1 at 14-15.)

## C.    Default Judgment Would Violate eCW's Due Process Rights.

Relators' request for default judgment should be denied out of hand.  "[T]he severe sanction of a default judgment [under Rule 37] is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Vinson v. Thee Tree House, LLC*, 2023 WL 6292490, at *3 (M.D. Fla. Aug. 7, 2023); *Mediware Info. Sys., Inc. v. Hematerra Techs., LLC*, 2016 WL 4925166, at *3 (M.D. Fla. Sept. 1, 2016) ("Default judgment is 'the most severe in the spectrum of sanctions provided by statute or rule'" because "[i]t represents, in effect, an infringement upon a party's right to jury by trial").  A court imposing default as a sanction "should find by clear and convincing evidence that (1) a defendant acted in bad faith, (2) the plaintiff was prejudiced by this conduct, and (3) lesser sanctions would not adequately serve the goals of punishment and deterrence." *Mediware*, 2016 WL 4925166, at *3; *accord Jones v. Life Care Ctrs. of Am., Inc.*, 2022 WL 4389727, at *31 (M.D. Fla. Aug. 11, 2022) (cited in Mot. at 16).  Relators come nowhere close to meeting this exceptional standard for case-ending sanctions.

**First**, there is no evidence of bad faith: eCW and counsel believed in good faith that materials related to Sygnia consulting work were protected work product, fell outside the scope of the parties' discovery because Mr. Wortman did not rely on them, or did not know they existed. (Bernardo Decl. ¶¶ 22-26, 43.)  Counsel's failure to recall later versions of what reasonably

appeared to be the final version of the Sygnia PowerPoint was not willful. (*Id.* ¶¶ 27-32; Wyatt Decl. ¶¶ 17-21.) Relators' cited cases are thus wholly inapposite. *See, e.g.*, *Diamond Tr. u/a/d 10/28/2005 v. Diamond*, 2022 WL 4493035, at *1, *4 (11th Cir. Sept. 28, 2022) (per curiam) (Mot. at 16) (affirming default judgment given party's "clear pattern of repeated, willful disobedience of Court orders"); *Meyer v. Gwinnett Cnty. Police Dep't*, 2022 WL 2439590, at *11-12 (11th Cir. July 5, 2022) (Mot. at 16) (affirming dismissal where "conduct led directly to the concealment of important evidence" that "was significant enough" to control application of statute of limitations).

**Second**, Relators cannot make any showing of prejudice that could ever warrant default. eCW provided Relators with roughly 250 documents about Sygnia's consulting work (Bernardo Decl. ¶ 4)—none of which could be reasonably characterized as Mr. Wortman's reliance materials. Relators have also received multiple depositions of Sygnia personnel, were paid their attorneys' fees, and still have five months to prepare for trial. (ECF 496, 507.) eCW's failure to produce documents that Mr. Wortman never saw or relied on, or did not know existed (Wortman Decl. ¶¶ 2-22), can in no way qualify as prejudice so severe that *judgment* should be entered.

**Third**, the Court has already ordered sanctions that remedy any alleged prejudice by ordering production of Sygnia's consulting materials and the costs associated with seeking them. Granting judgment for Relators based on delayed production of work product withheld in good faith five months before trial is entirely disproportionate to the conduct alleged. *See BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 235 (S.D. Fla. 1989) ("a twenty-nine million dollar default would be a disproportionate sanction for violation of a single Order").

## **CONCLUSION**

For these reasons and those discussed in eCW's prior briefs (ECF 264, 363), eCW respectfully submits that the Court should deny Relators' Third Motion for Sanctions.

Dated: March 5, 2026

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

Richard T. Bernardo (*pro hac vice*)
richard.bernardo@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &

FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (917) 777-2000

*Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I, Duke R. Groover, hereby certify that the foregoing was served on counsel of record through the CM/ECF system on March 5, 2026.

/s/ Duke R. Groover
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Counsel for Defendant eClinicalWorks, LLC