UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br> Defendant. | No. 5:18-CV-382 <br><br> Honorable Marc T. Treadwell |

**DEFENDANT'S MOTION FOR LEAVE TO SUPPLEMENT**
**MR. KYLE MEADORS' EXPERT REPORTS**

More than a year after the close of expert discovery, the Assistant Secretary for Technology Policy/Office of the National Coordinator for Health Information Technology ("ONC") has published official guidance regarding the ONC certification criteria that is directly relevant to the regulatory opinions offered by Defendant eClinicalWorks, LLC's ("eCW") certification expert, Mr. Kyle Meadors. This guidance is set forth in a notice of proposed rulemaking entitled "Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity," which was published in the Federal Register at 90 Fed. Reg. 60,970, 60,988 on December 29, 2025 (the "NPRM") (excerpts attached as Ex. A). The public comment period on the NPRM ended on February 27, 2026, with the final comments posting publicly on March 2, 2026. (*See* ECF No. 508.)

The NPRM is a critical development for this litigation. In the NPRM, ONC proposes to ***eliminate*** the 45 C.F.R. § 170.315(d) privacy and security certification criteria. The NPRM also contains multiple statements from ONC about the purpose, scope, operation, interpretation, and

proper understanding of the existing certification criteria that governed certification of version 11 of eCW's software—the same subjects of Mr. Meadors' already-disclosed expert opinions. For example, Mr. Meadors opined that compliance with certification criterion 45 C.F.R. § 170.315 (d)(1) has nothing to do with a "malicious actor circumventing controls in the software to obtain access to records the actor is not authorized to access," whether through "hacks," "stealing the credentials of another user" or certain alleged vulnerabilities in eCW's software. (ECF No. 218-21 at 9 (Rebuttal Expert Report of Kyle Meadors); ECF No. 218-14 at 19 (Expert Report of Kyle Meadors).) He specifically explained that—contrary to Relators' certification expert's opinion—"[c]ompliance with the ONC privacy and security criteria is focused on operations of typical users, and it does not require compliance against comprehensive pentation tests or actions of what we could call 'hackers.'" (ECF No. 218-14 at 18.) ONC's NPRM confirms these exact opinions:

> [M]any stakeholders have overinterpreted the Certification Program's limited scope and policy purpose with respect to health IT security and instead assumed that the Certification Program assessed discrete specific security capabilities at significant depths, such as when and how the capabilities are implemented in health care provider or system settings. For example, stakeholders have expressed incorrect expectations of certified health IT and developers, such as expectations that the Certification Program required health IT developers of certified health IT to implement and conduct penetration testing of certified health IT or ensure that certified authentication and authorization capabilities protect against known or unknown vulnerabilities. In contrast, and to allow for significant scalable deployment flexibility, certified hea[l]th IT must only, for example, demonstrate support for basic authentication and role-based access control.

Ex. A, NPRM at 60,989. The meaning of ONC's certification criteria will be one of the key issues at trial, making it essential that Mr. Meadors be allowed to explain to the jury how the NPRM confirms his understanding of the criteria and the errors in Relators' understanding of the criteria.

Given the centrality of these issues to the Relators' claims, eCW respectfully seeks the Court's leave to disclose a brief, eight-page supplemental report from Mr. Meadors, which incorporates ONC's guidance in the proposed rule, ONC's subsequent comments about this

2

rulemaking, and comments submitted during the 60-day notice-and-comment period.[1] This supplement addresses highly relevant information that was published after the original expert or pre-trial disclosure deadlines, is fully consistent with Mr. Meadors' already-disclosed opinions, and has been submitted shortly after the notice-and-comment period closed and all comments were posted to ensure Mr. Meadors could take account of any of these comments in his opinions. This timing is substantially justified and harmless to Relators, given the current trial date is July 27, 2026 following Relators' recent request to postpone the trial date. (*See* ECF No. 505.) Pursuant to Federal Rules of Civil Procedure 26 and 37 and the Court's Scheduling and Discovery Order (ECF No. 100), eCW respectfully requests that the Court grant this motion and allow supplementation so that the jury can consider these case-critical issues on their merits.

## BACKGROUND

On January 12, 2023, the Court entered a Scheduling and Discovery Order setting the initial deadline for expert discovery and requiring "the consent of all parties or leave of Court" to supplement expert reports. (ECF No. 100 at 3, 5.) The Court later extended the expert discovery deadline to October 14, 2024. (ECF No. 136.)

eCW retained Mr. Meadors, the former President and Director of EHR Testing at Drummond—one of the leading experts in the field of ONC certification and testing. (*See* ECF No. 259-1.) Mr. Meadors disclosed his initial expert report on August 2, 2024, and his responsive report to Relators' certification expert, Michael Arrigo, on October 3, 2024. (*See* ECF Nos. 218-14, 218-21.) His reports include extensive discussions of the ONC certification criteria at issue in

---

[1] To aid resolution of this motion, eCW will be filing a copy of Mr. Meadors' supplemental report after resolution of an unopposed motion for leave to file it under seal, which eCW is filing contemporaneously with this motion. Relators were served with the report on March 6, 2026. Pursuant to subsection IV.F of the Court's Scheduling and Discovery Order (ECF No. 100), eCW sought Relators' consent to supplement Mr. Meadors' reports by email on March 6. On March 9, Relators responded stating that they "oppose the supplementation because," they contend, "the proposed testimony is inadmissible."

3

this litigation, including how compliance with the certification criteria is measured and assessed in the real world.  For example, Mr. Meadors explains that "[i]n [his] [initial] report, [he] responded to the relators' claim of an alleged non-compliance in § 170.315(d)(1) involving a sophisticated cybersecurity effort" like those alleged by Relators and their expert, "and [his] response was this type of issue is outside the scope of compliance of this criteria, which focuses on functionality of user permissions within the graphic user interface, an interpretation that ONC also embraced at [ONC's] deposition."  (ECF No. 218-21 at 9.)

On December 29, 2025, ONC published the NPRM, stating that "many stakeholders have overinterpreted the Certification Program's limited scope and policy purpose with respect to health IT security"; the criteria do not require "assess[ing] discrete specific security capabilities at significant depths"; there is no requirement to "protect against known or unknown vulnerabilities" such as those that would be detected with "penetration testing"; "certified health IT cannot in isolation, or independently, provide … necessary privacy and security capabilities … across all relevant technologies of the enterprise-wide setting," which is beyond the scope of EHR security capabilities and certification requirements.  Ex. A, NPRM at 60,989.  The 60-day notice and comment period ran through February 27, 2026, and more than 300 comments were submitted.

Based on these and ONC's other recent public statements about the purpose of the NPRM, eCW—well in advance of trial—seeks leave to ensure that Mr. Meadors can share these important developments with the jury, and explain how they further support his existing opinions regarding the fact that (1) the ONC certification criteria do not mandate that EHR software prevent malicious attempts to bypass security measures; (2) the (d)-criteria were intended to provide only one layer of defense in depth security; and (3) comprehensive enterprise data security is beyond EHR security capabilities.

## ARGUMENT

"Supplementation is permitted under [Federal Rule of Civil Procedure] 26(e) to correct inaccuracies or add information not available when the report was filed." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1341 (11th Cir. 2020). Rule 37 further provides that supplementation pursuant to Rule 26(e) should be permitted, including after the pretrial disclosure deadline, "if the proponent of the supplemental expert report can show that [the disclosure] was 'substantially justified or harmless.'" *WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, 2023 WL 2734332, at *2 (M.D. Fla. Mar. 31, 2023). That outcome is especially warranted when the supplemental disclosures "merely shed light on the basis supporting both experts' opinions and their qualifications, the methodology used, and the rationale supporting those conclusions; but they do not contain *new* opinions that went undisclosed during the discovery process." *Ward v. Carnival Corp.*, 2019 WL 1228063, at *3 (S.D. Fla. Mar. 14, 2019) (emphasis in original).

Mr. Meadors' supplemental expert report should be permitted. eCW seeks a limited supplementation based on ONC's statements in connection with the new proposed rulemaking— statements that were published *after* the expert discovery period ended, are directly on point for the opinions Mr. Meadors has already disclosed, and concern central issues in the case. To avoid the need for serial supplementation based on the public comments submitted during the 60-day notice-and-comment period, eCW has submitted this request soon after the notice-and-comment period closed and all comments were posted, which is approximately five months before the current trial date. This disclosure is timely, substantially justified, harmless to Relators, and indispensable to any fair trial on what the ONC criteria mean.

**I.   MR. MEADORS' SUPPLEMENTAL REPORT RELIES ON RECENTLY PUBLISHED ONC STATEMENTS FOR THE SAME CORE OPINIONS.**

Mr. Meadors' proposed supplement is exactly the kind of supplemental expert report that

5

should be permitted: it addresses highly relevant information that was indisputably published after his initial reports and is entirely consistent with his previously disclosed opinions.

*First*, Rule 26 contemplates that experts should be permitted to supplement their reports to "add information not available when the [initial] report was filed." *Crawford*, 977 F.3d at 1341 (affirming decision to allow the jury to consider expert's supplemental affidavit submitted after the expert report deadline and just five months before trial); *accord Lanzi v. Yamaha Motor Corp.*, 2019 WL 9553066, at *11 (M.D. Fla. Sept. 26, 2019) (allowing expert's post-discovery report because it draws "substantially the same core conclusions" as the initial report and "otherwise contains opinions expressed in [the expert's] deposition"). There is no dispute that ONC's public statements in and following the December 29, 2025 NPRM were made after Mr. Meadors produced his 2024 expert reports. This scenario of "additional factual grounds" made available after an expert's "existing disclosed opinions" is exactly the circumstance where supplementation should be allowed. *Lighting v. Manus Prods., Inc.*, 2021 WL 5024365, at *2 (N.D. Ga. June 17, 2021); *accord Tejeda v. Costco Wholesale Corp.*, 2022 WL 2116710, at *2 (S.D. Fla. May 20, 2022) (finding that defendant was "entitled to produce a supplemental expert report to address … new records" after the initial deadline).

*Second*, Mr. Meadors' supplement simply builds on his original opinions by taking account of ONC's statements and explaining why they support the opinions he previously disclosed. (*See, e.g.*, Meadors Supplemental Rpt. at 1 ("[T]he government's statements within [the Proposed Rule] align with my previously disclosed opinion that the privacy and security criteria of the [ONC] Certification program are significantly more limited than the scope alleged by the relators and their expert witness, Mr. Michael Arrigo, and that their allegations about eClinicalWorks' non-compliance with these criteria are incorrect.").)

For example, Mr. Meadors' previous reports opined on compliance with criterion (d)(1), stating "D.1 involves user authentication and access. Very simply, it is ensuring that the EHR can create new user accounts, assign them permissions, modify their permissions, and ultimately make a user account inactive or delete it entirely. It is a straightforward criterion with a very low rate of failure on the testing side." (ECF No. 218-14 at 12.) He also provided extensive explanations as to why Relators' allegations about "alleged non-compliance in § 170.315(d)(1) involving a sophisticated cybersecurity effort" were "outside the scope of compliance" for ONC criterion (d)(1). (ECF No. 218-21 at 9.) More than a year since Meadors produced those reports, ONC has publicly affirmed—fully consistent with this position—that "certified hea[l]th IT must only, for example, demonstrate support for basic authentication and role-based access control" and rejected the notion that "certified authentication and authorization capabilities [must] protect against known or unknown vulnerabilities," which reflect an "incorrect" understanding of the criteria's "limited scope and policy purpose." Ex. A, NPRM at 60,989. Mr. Meadors' supplement now relies on these and ONC's other statements as an additional basis to explain how, "[c]onsistent with [his prior] opinion, ASTP/ONC's notice explains that it is wrong to interpret the criteria's 'limited' scope as requiring as security capabilities 'at significant depths,' including capabilities that protect against 'known or unknown vulnerabilities' based on attacks from malicious actors attempting to bypass security measures." (Meadors Supplemental Rpt. at 2.) He also relies on these subsequently published ONC statements to "confirm it is wrong to conflate the broader concept of 'defense in depth' with the far more limited requirements of the certification criteria." (*Id.* at 5). And consistent with his previously disclosed opinions, he relies on the NPRM and ONC's other public statements, which "confirm[] that a single certified health IT application, like eClinicalWorks, is simply part of an enterprise's overall security network," rather than its sole line

7

of defense. (*Id.* at 7.) In short, Mr. Meadors' report "builds upon the original, without significantly changing the core conclusions or opinions found therein"—exactly what a proper supplementation is supposed to do. *Lanzi*, 2019 WL 9553066, at *9.

Courts routinely allow expert supplementation after the pretrial disclosure deadline when the supplemental report provides further support for already-disclosed conclusions. *See*, *e.g.*, *In re Accutane Prods. Liab. Litig.*, 2007 WL 201091, at *1 (M.D. Fla. Jan. 24, 2007) (declining to strike supplemental report updating further literature review); *Lanzi*, 2019 WL 9553066, at *4, 11 (denying motion to strike untimely supplemental report submitted six months after disclosure deadline that "draws substantially the same core conclusions," as original report). In *Accutane*, the expert supplemented his report based on ongoing literature review after the close of expert discovery. Even though the supplement reflected additional literature review and "a degree of new or additional rationale in support of his conclusions," the district court permitted the supplement, finding "no evidence of sweeping revisions or additions to this witness's opinions" and that "the core opinions remain the same." 2007 WL 201091, at *1. The same is true here.

## II. MR. MEADORS' SUPPLEMENT TO INCORPORATE ONC'S PUBLIC STATEMENTS ABOUT THE MEANING OF THE ONC CERTIFICATION CRITERIA IS HARMLESS AND SUBSTANTIALLY JUSTIFIED.

The Court can allow Mr. Meadors' supplemental report, including after the pretrial disclosure deadline, by finding it is ***either*** "substantially justified ***or*** is harmless." *See* Fed. R. Civ. P. 37(c)(1) (emphasis added). Courts consider five factors in assessing this question: "(1) the unfair prejudice or surprise of the opposing party; (2) the opposing party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; (4) the importance of the evidence; and (5) the offering party's explanation for its failure to timely disclose the evidence." *WhereverTV, Inc.*, 2023 WL 2734332, at *2. "[W]here a party demonstrates a good reason for the late disclosure and/or there is no prejudice to the opposing party (or that prejudice can be cured),

courts are generally unwilling to exclude information that contributes to resolving a case on its merits." *Perrigo Co. v. Merial Ltd.*, 2018 WL 11350563, at *6 (N.D. Ga. Apr. 30, 2018) (collecting cases); *see also Short Creek Dev., LLC v. MFA Inc.*, 2023 WL 5660144, at *2-3 (W.D. Mo. Aug. 31, 2023) (expert's supplemental report "was substantially justified and harmless[]" even though served past pretrial disclosures deadline). Here, all five factors support supplementation. Indeed, eCW is not aware of any instance in which a court within the Eleventh Circuit denied an expert supplement based on directly relevant regulatory guidance published after the close of expert discovery and raised almost five months before the start of trial.

*First*, Relators will not suffer any unfair prejudice or surprise by the fact that Mr. Meadors' supplement seeks to add additional support for the ***same*** opinions he has already disclosed. *See, e.g.*, *RLI Ins. Co. v. OutsideIn Architecture, LLC*, 692 F. Supp. 3d 1077, 1095 (M.D. Fla. 2023) (no prejudice and "little or no surprise" where expert's "conclusions did not change between the two reports" and "many—though not all—of the documents [expert] relies on in the supplemental report were not available to Plaintiff before the expert disclosure deadline"). Said differently, because Mr. Meadors' "supplemental opinions are substantially the same as his initial opinions, there is no surprise that need be cured." *Goines v. Lee Mem'l Health Sys.*, 2019 WL 968397 at *6 (M.D. Fla. Feb. 28, 2019) (no unfair prejudice or surprise where supplemental expert opinion was based on new records but addressed the same matters as the initial opinion). This lack of surprise and prejudice is only reinforced by the fact that ONC's proposed rulemaking is ***public***, meaning Relators have had the same access to these statements as eCW has had since ONC published them.[2] *See Rockhill-Anderson v. Deere & Co.*, 994 F. Supp. 2d 1224, 1233 (M.D. Ala. 2014) (finding "there is little prejudice to [opposing party] because [the expert's] ultimate opinion did not change,

---

2   https://www.regulations.gov/document/HHS-ONC-2025-0005-0001 (last visited March 9, 2026).

9

and his new analysis was based on information that always has been within [opposing party's] possession"). Because Mr. Meadors' opinions "remain[] consistent" and are simply "updated" to reflect ONC's recent public guidance filed in the Federal Register, there is no credible claim of unfair prejudice or surprise. *RLI Ins.*, 692 F. Supp. 3d at 1095.

***Second***, to the extent that Relators contend they are "surprise[d]" by Mr. Meadors' incorporation of ONC's public, highly relevant guidance into a supplemental report, the proper remedy would be to allow Relators the chance for further rebuttal. *See Crawford*, 977 F.3d at 1341-42. In *Crawford*, the Eleventh Circuit found no abuse of discretion in allowing an expert's supplemental affidavit, even though it was submitted after the expert report deadline and just five months before trial. *Id.* at 1341. And with approximately five months until the start of trial in this case, Relators have "ample time to prepare" their own experts to respond to Mr. Meadors' supplemental report. *Jarvis v. City of Daytona Beach, Marville Tucker & James Mackenzie*, 2024 WL 3183649, at *2 (M.D. Fla. June 26, 2024) (allowing expert to supplement disclosure four months before trial to prevent surprise at trial when "parties have ample time to prepare for… trial[]" and supplementing "would not disrupt the trial schedule[.]").

***Third***, there is no risk that allowing Mr. Meadors' supplemental report will disrupt the upcoming trial, which remains five months away. *See Short Creek*, 2023 WL 5660144, at *2-3 (permitting supplementation only two months before trial). Allowing Mr. Meadors' eight-page supplement based on publicly available information will not cause any delay at all.

***Fourth***, Mr. Meadors' opinions incorporating the NPRM are essential to the jury's factfinding in this case. *See Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2016 WL 6542726, at *5 n.6, (D. Del. Oct. 31, 2016) (granting motion for leave to supplement expert report "[b]ecause the supplemental expert report will be helpful to the fact finder"). This Court has made clear that

expert testimony is necessary for understanding the meaning of the ONC certification criteria. (ECF No. 499 at 3.) For that reason, Mr. Meadors' explanation that ONC has squarely rejected Relators' "overinterpret[ation]" of the certification criteria's "limited scope and policy purpose" (Ex. A, NPRM at 60,989) is indispensable. Indeed, ONC's statements are directly relevant to falsity, scienter, materiality and many other disputes between the parties. Mr. Meadors' proposed opinions go "directly to the heart" of Relators' claims regarding eCW's compliance with the certification criteria, and consistent with the Court's rulings, it is crucial that the jury hear from Mr. Meadors on how to understand the certification criteria. *See Goines*, 2019 WL 968397 at *7.

*Fifth*, eCW's supplementation based on ONC's recent proposed rulemaking is timely, as it incorporates newly published information. An expert "supplement[] … based on new information" not previously available satisfies this factor. *United States Sec. & Exch. Comm'n v. Hall*, 2017 WL 3635109, at *5 (S.D. Fla. Jan. 4, 2017); *accord Plaseyed v. PCA Nat'l LLC*, 2006 WL 8434621, at *2 (S.D. Fla. Mar. 2, 2006) (permitting supplemental report because, "[a]s contemplated by the Federal Rules, Defendant's expert's opinion has evolved [based on new information] and requires supplementation."). ONC published its guidance on December 29, 2025, it made further public statements about this rulemaking on February 12, 2026,[3] and the notice-and-comment period closed on February 27, 2026. To avoid seeking leave to file piecemeal supplements based on the public comments, Mr. Meadors finalized his supplement right after the public comment period ended and all comments were posted, and eCW is filing this motion mere days later (March 9, 2026). There is no circumstance in which Mr. Meadors could have filed this supplement any earlier, let alone during the 2024 expert disclosure period or before the September

---

[3] ONC, *Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity (HTI-5) Proposed Rule* (Feb. 2026), https://vfairs-core-backend-prod.s3.amazonaws.com/1000000073/sessions/File-1770894757.pptx (attached as Ex. B).

2025 pretrial disclosure period because ONC did not make these statements until long afterwards. This sequence fully explains the timing for why eCW seeks this disclosure now.

Because these five factors confirm that Mr. Meadors' supplemental report is both substantially justified and harmless to Relators (either of which is sufficient on its own), the Court can and should permit Mr. Meadors to supplement his report to explain the significance of this essential evidence to a jury.

## **CONCLUSION**

For all these reasons, eCW respectfully requests that the Court grant it leave to disclose Mr. Meadors' supplemental expert report.

Dated: March 9, 2026

                                        Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice*)
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

> */s/ Duke R. Groover*
> Duke R. Groover
> Georgia Bar No. 313225
> dgroover@jamesbatesllp.com
> JAMES BATES BRANNAN
> GROOVER LLP
> 231 Riverside Drive
> Suite 100
> Macon, Georgia 31201
> Tel: (478) 742-4280
> Fax: (478) 742-8720