UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES *ex rel.*, PERMENTER, et al.

      Plaintiffs,

v.

eCLINICALWORKS, LLC,

      Defendant.

CIVIL ACTION FILE

NUMBER 5:18-CV-382

**RELATORS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Despite facing a fourth sanction, eCW is still attempting to mislead the Court. eCW's response makes misstatements,[1] and makes unsupported claims.[2] eCW also ignores the arguments Relators made in an attempt to downplay the seriousness of its misconduct. For example, Relators did not argue eCW should be sanctioned because another lie by its expert has been revealed. They argue eCW should be sanctioned for repeating those lies in its filings and arguments. And while these issues may have started with an expert file dispute, eCW has now repeatedly lied to gain a litigation advantage. Lying to win at any cost warrants sanctions far beyond limiting or excluding an expert.

eCW's response reads like a laundry list of the excuses it has repeated throughout this case. eCW relies on the "we forgot" dodge this Court has already rejected. ECF 496 at 7 ("[I]f that kind of excuse was good enough at that stage of a dispute, when all eyes are on everything, … lawyers could get away with anything."). eCW's most recent memory lapse claims are its most unbelievable. It claims its lawyers "forgot" about *multiple* versions of a revised Sygnia report the lawyers solicited and reviewed because the changes were "inconsequential." ECF 510 at 17. The revised report includes this new conclusion: ███

████████████████████████████████████████████[3]

A finding by eCW's own expert that the software did not check authentication and authorization of users is more than consequential—it will be a centerpiece of Relators' trial presentation.

eCW recycles its claim that Relators have not been prejudiced. ECF 510 at 20. That has never been true, but it is worse now. Relators have taken five trial preservation depositions without the benefit

---

[1] A few examples: eCW claims it "promptly contacted Relators and the Court about the existence of later versions" of the Sygnia report. ECF 510 at 11; ECF 510-2 ¶ 29. eCW said nothing until Relators' counsel identified the document, demanded its production, and asked why it was hidden. *Compare* ECF 503-3 at 26 (Jan. 21, 2026 email from Snyder to Bernardo (demanding production)) and 21-22 (Jan. 23, 2026 email from Snyder to Bernardo (asking why eCW concealed the revised presentation)) *with* Ex. A, Jan. 26, 2026 email from Bernardo to Kim Tavalero (disclosing revised versions to Court). eCW claims Mr. Litwak performed no "testing in connection with this work on the revised" report. ECF 510-2 ¶ 32. But eCW's own lawyers and Sygnia called it testing before the Court was involved. ECF 503-1 at 2-3, Aug. and Sept. 2023 emails between Wyatt, Bernardo, Katz, Litwak and Sambira ████████████████████████████ eCW claims Mr. Dayan's time entries do not suggest he created a "testing report." ECF 510 at 10. Those time entries show he billed eCW for ████████████████ ████████████████ ECF 355-4.

[2] eCW argues Mr. Wortman "failed to recall" his role in the consulting billing, ECF 510 at 1, 13, 14, but his declaration is silent on his memory. ECF 510-3.

[3] ECF 503-2 at 34.

1

of key documents.[4] They must either insist that eCW bring those witnesses to trial live or re-take the depositions, only now with a witness fully coached to respond. And with trial looming, eCW's refusal to follow the rules and tell the truth prejudices Relators by continuing to waste their time. While avoiding negative disclosures and the loss of an expert was eCW's goal, forcing Relators' counsel to spend hundreds of hours on these issues also gives eCW a tactical advantage.

eCW argues that it had a good-faith basis to conceal the Sygnia documents as work product and that its conduct was based on that good-faith belief. ECF 510 at 16, 18. eCW's work product claim was never in good faith: "the truth is that there was no wall at all."  Doc. 496 at 3. Good faith requires telling the truth, and eCW has not. eCW even argues that further sanctions are improper because the Court has already sanctioned it. ECF 510 at 7, 20. eCW does not get a get-out-of-jail free card for concealed misconduct because the Court sanctioned it for something else.[5] This motion is about eCW's conduct while trying to avoid a third sanction that warrants a fourth and more severe sanction.

Finally, eCW tries to blame its lawyers so it can claim it would be "unjust" to be sanctioned for something the lawyers did. That is not the law. *See Link v. Wabash Ry. Co.*, 370 U.S. 626, 633-34 (1962) (affirming dismissal because a party cannot avoid consequences of acts of voluntarily selected "lawyer-agent," is "deemed bound" by attorney's acts, and is considered on "notice of all facts…which can be charged upon the attorney").[6] Regardless, eCW was an active participant—its senior corporate leadership approved Sygnia performing both consulting and testifying services, knew Mr. Wortman was involved in

---

[4] Girish Navani, Rahul Jaiswal, Jordan Madhushudan, Brad Ulrich, and Ajit Dhavle. Of those, only Navani is on eCW's will call list and Ulrich and Dhavle are not eCW employees.

[5] Even if the same conduct was at issue, eCW's cited cases are distinguishable. *See H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*, 2015 WL 11144029, at *2 (N.D. Okla. June 17, 2015) (magistrate judge deferred further sanctions to district court who could judge credibility and decide "whether…an adverse inference instruction to the jury is appropriate"); *Reid v. BMW of N. Am.*, 2006 WL 8431456, at *5 (N.D. Ga. Feb. 17, 2006) (no double sanction issue, court denied motion to compel and for sanctions because documents were produced before ruling).

[6] eCW's cited cases on this point are also distinguishable. *See Marshall v. Segona*, 621 F.2d 763, 769 (5th Cir. 1980) (reversing dismissal based on four-day late production that was due to inability to comply, was not done in bad faith nor callous disregard, did not prejudice the defendant, and was the fault of the lawyer "if fault there was"); *Hawkins v. Fulton Cnty.*, 96 F.R.D. 416, 422 (N.D. Ga. 1982) (sanctioning lawyer instead of party where lawyer refused to cooperate with new counsel to make Court ordered production and did not respond to motion).

both phases, and that there was significant overlap between both phases. eCW then allowed *or* instructed its lawyers to repeatedly deny facts it knew to be true and to make arguments it knew to be false.[7]

The Court is well within its discretion to sanction eCW for its continued bad faith, its lies, and its refusal to follow the Court's Rules and Orders. The sanction should be as severe as eCW's misconduct. As Judge Edenfield recognized in *Malautea v. Suzuki Corp.,* "the most severe in the spectrum of sanctions must be available in appropriate cases, not merely to penalize those whose conduct may warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." 148 F.R.D. 362, 371 (S.D. Ga. 1991) (cleaned up). An Order sanctioning eCW for its misconduct is just and will remind those appearing in this Court that there are severe consequences for repeated lying and rule breaking. Relators briefly address the rest of eCW's arguments below.

## I.    eCW lied to the Court about Mr. Wortman's involvement with the consulting work

eCW argues that Mr. Wortman "failed to recall" his involvement in the consulting work when he testified under oath that he knew nothing about the consulting bills, the hours worked, or the team members (other than Mr. Litwak).[8]  But Mr. Wortman says nothing about that alleged "failure to recall" in his declaration.[9]  Instead, he admits to sending detailed invoices to eCW and its outside lawyers that described the team members and the work done.[10] Mr. Wortman also admits to being involved in assessing the work that resulted in the October Breach report.[11] The documents eCW has now produced also include communications where Mr. Wortman discusses the consulting projects, identifies consulting team members by name, and states the exact number of hours worked.[12] In total, Mr. Wortman sent or received 22 emails and took part in four conferences about bills between June and November 2023—just

---

[7] eCW's Associate General Counsel and Compliance Officer (also a lawyer) have attended hearings and depositions. Surely, they (and others) have discussed these issues with the lawyers and read briefs and transcripts on this issue.

[8] ECF 237, Aug. 15, 2024 Dep. of Oren Wortman at 58:6-15 ███████████████████████████████████████████████████████████████ ; 245:1-2 ███████████████████████████████████████████

[9] *Compare* ECF 510 at 1, 14, 17 *with* ECF 510-3 (Wortman Decl.).

[10] ECF 510-3 ¶¶ 7, 8, 17*;* ECF 510-10 and 503-10 (forwarding invoice identifying team and describing work).

[11] ECF 510-3 ¶ 9.

[12] ECF 510-10 June 16, 2023 email from Wortman ██████████████████████████████████████ ████████████████████████████████ (emphasis added); ECF 503-16, Nov. 23, 2023 email from Wortman to Bernardo and Wyatt ███████████████████████████████████

nine months before he testified under oath that he knew nothing about those issues.[13]

Unlike the concealed reports, eCW does not even argue that its Associate General Counsel, Whitney Horrell, or its outside counsel "forgot" about Mr. Wortman's consulting team knowledge. Ms. Horrell instead admits that she approved Sygnia providing consulting and testifying services and was personally involved in the consulting billing disputes.[14] eCW's lawyers also do not claim a memory loss. The documents show they also were deeply involved by reviewing consulting invoices, sending or receiving 19 emails, and taking part in three conferences with Mr. Wortman about those issues.[15]

eCW has now admitted it knew and never allegedly forgot Mr. Wortman's involvement in the consulting work and billing. That means the company (and its lawyers) knew Mr. Wortman lied under oath when he claimed to know nothing about the consulting teams, the work, the invoices, and the hours worked. eCW did not correct the record at, or after, Mr. Wortman's deposition. Instead, eCW repeated his lies in briefs and arguments to the Court.[16] While eCW claims this "is not a case where evidence was 'falsified,'" ECF 510 at 7, n.1, exploiting false testimony is no better and also warrants severe sanctions.

## II.    eCW intentionally concealed the existence of later Litwak Reports

To avoid accountability, eCW argues that (at least) three of its outside lawyers forgot they asked Sygnia to provide an analysis of Relators' technical interrogatory response and then received and reviewed multiple revised reports. eCW argues the work was minor, the changes were inconsequential, so

---

[13] ECF 510-10 June 2023 eleven email chain including Wortman ██████████████
██████████ ; ECF 503-10 June 15, 2023 email from Wortman to Bernardo and Wyatt ████████████████████ ; ECF 503-16 Nov. 26, 2023 five email chain including Wortman ███████
██████████ ; Ex. B, Nov. 27, 2023 five email chain about fourth billing call.
[14] ECF 510-9 Horrell Decl. ¶¶ 5 ("I received, reviewed, and ultimately approved invoices from Sygnia" during consulting and testifying phase), 6, 8 (describing video conferences during consulting phase); *see also* ECF 503-5, Jan. 11, 2023 Consulting Servs. Agrmt. (signed by Horrell); ECF 510-10 June 2023 eleven email chain.
[15] *See* ECF 510-10 at 2, June 20, 2023 email from Horrell to Speyer and Wortman ████████████
████████████████████████ ECF 503-10 Wortman to Bernardo and Wyatt (June 15, 2023 email) ; Ex. C, Nov. 2023 eight email chain including Wyatt and Bernardo; ECF 503-16, Nov. 26, 2023 five email chain including Wyatt and Bernardo (████████████████████ ; Ex. B, Nov. 27, 2023 five email chain about billing call.
[16] *See* ECF 264 at 10, eCW Resp. (citing Wortman deposition and arguing he "was not aware of the work Mr. Litwak performed…or even the identities of the other team members"); June 4, 2025 Hrg. Tr. at 39:13-40:1 (arguing "fairly clean line" between consulting and testifying roles); Oct. 23, 2025 Hrg. Tr. at 39:2-4 ("He didn't know what they were doing. He didn't know the composition of the team. He didn't know the scope of what anything that they were doing."); 60:9-10 ("He didn't know the scope of the consulting work.").

the lawyers simply forgot that Sygnia kept working at their request through at least September 2023.

eCW's arguments are bizarre. It writes about this issue like its lawyers needed to review Mr. Litwak's file

to remember their own actions. And to accept the argument, those lawyers would have to forget the

following:

--  Sending or receiving 27 emails about revisions to the technical report between May 9, and September 6, 2023;[17]
--  Taking part in an August 3, 2023 meeting about Sygnia's findings with Mr. Litwak and others;[18]
--  Making at least three rounds of revisions to the May Litwak Report;[19]
--  Sending those revisions to Sygnia on August 9, 2023;[20]
--  Sending Relators' August 7, 2023 interrogatory response to Sygnia for analysis after having a phone call with Mr. Litwak to discuss the response;[21]
--  Scheduling and taking part in at least one more call to discuss Mr. Litwak's review;[22]
--  Receiving Sygnia's initial response to Relators' findings on August 15, 2023 in an email that stated Sygnia needed to perform additional "technical validation" of Relators' findings;
--  Reviewing Sygnia's initial response, and directing it to perform the "additional testing";[23] and
--  Receiving the September Litwak Report with Mr. Litwak's additional comments.[24]

The substance of the changes was also memorable. ECF 503 at 7-8 (summarizing changes).

Sygnia originally found that Relators' allegation that eCW's servers freely distributed security rights was

"refuted."[25] The September Litwak Report

.[26]

This is not the first damaging evidence that eCW claims to have forgotten. When eCW failed to

produce the APPSEC tickets, it claimed "an eCW employee forgot" about those 12,000 tickets.  ECF 171

at p. 7-8. After Mr. Litwak's deposition revealed he used testing tools on more than one vulnerability,

---

[17] *See* Ex. D, eCW and Sygnia timeline regarding revised Litwak Report.
[18] *Id.* at 3.
[19] *See* Ex. E, Skadden's revisions to May Litwak Report with change log prepared by Relators' counsel.  The meta data shows that Skadden made changes to the May Litwak Report at least three times.
[20] *See* Ex. F, Aug. 9, 2023 Email from Skadden paralegal to Litwak and Sambira (uploading Skadden revisions).
[21] *See* ECF 503-1 at 3-4. Aug. 8, 2023 email from Wyatt to Litwak attaching Relators' Interrog. Resp.; *see also* ECF 266-27 Rels.' 86-page Supp. Resp to Def's Amended 1st Interrogs.
[22]  *See* Ex. D, eCW and Sygnia timeline regarding revised Litwak Report (meetings).
[23] ECF 503-1 at 1-2, Aug. 21, 2023 email from Wyatt to Sambira.
[24] *Id.* at 1, Sep. 6, 2023 email from Sambira to Wyatt.
[25] ECF 356-3 at 33.
[26] ECF 503-2 at 34. *See* also Ex. G comparison of May and September findings on servers.

eCW claimed that Mr. Wortman "failed to recall" that fact when he submitted a lawyer drafted declaration to the contrary.  eCW's allegedly faulty memory will continue.[27]

Even assuming a failed memory claim is worth considering, between July 2024 when this issue first came up and January 2026 when eCW was compelled to produce the September Litwak Report, there were at least 23 instances when eCW's lawyers should have thought about the work done by the Sygnia consulting teams.[28] That includes responding to deposition notices, six document productions, depositions, conferences, briefs, and hearings. A full timeline is attached.[29]

eCW also made statements to the Court and Relators that contradict its "we forgot" claim. Relators' counsel and eCW lawyers Bernardo, Wyatt, and Winship had a conference before Mr. Litwak's deposition. To avoid producing communications, eCW's lawyers stated they had reviewed all communications between Mr. Litwak and the lawyers, and they were all about scheduling.[30] eCW repeated that representation to the Court at the October 2025 hearing.[31] After the conference, eCW then responded to Relators' Litwak deposition notice. In response to a request for "[a]ll communications… between Mr. Litwak…[eCW] *and its counsel*, relating to any testing of eCW's software by Mr. Litwak,"[32] eCW said: "***Defendant states that reasonable searches have been conducted and responsive documents have not been identified***, other than an email on which Mr. Litwak was copied that includes a

---

[27] During a 2024 FCA trial, eCW's lead trial counsel (Allison Brown) asked questions of a witness that caused the court to consider sanctioning Ms. Brown's client for concealing evidence. Mr. Wyatt was also part of that trial team. Ms. Brown argued, as here, that "no trial sanction is warranted in this case because the delayed production was entirely inadvertent…and did not result in any real prejudice to Relators." *See United States ex. rel Penelow v. Janssen*, D.N.J., Case No. 12-cv-7758-ZNQ-JBD, Doc. 397 at 6, Ex. H.  The court ultimately gave adverse jury instructions as a sanction for the misconduct. *See* Ex. I, Trial Tr. Excerpts about adverse instruction.

[28] eCW's contention that there are no time records related to the subsequent work performed by Sygnia because the time spent on the report was "so low (less than 3 hours) that Sygnia did not bill for it" is also not credible. ECF 510 at 11; 510-2, ⁋ 31. Sygnia made extensive revisions to the report after reviewing Relators' 86 page interrogatory response.

[29] Ex. J, Opportunities to Recall and Disclose the Sygnia Consulting Material.

[30] Ex. K, Decl. of Robert H. Snyder ¶¶ 7-8.  Because of that representation, Relators' counsel agreed that eCW did not need to search for and produce the emails.

[31] Oct. 23, 2025 Hrg. Tr. at 65:22-25 ("My recollection -- and I have to go back, Mr. Snyder and confirm that -- was when I explained to you do you want communications with counsel, because I went through them all and they were just basically scheduling? The answer was no.")

[32] ECF 490-5, July 17, 2025 eCW Resp. to Litwak Dep. Notice at 4.

report generated by Sygnia that includes the screenshots of testing."[33] eCW would have located the many August and September 2023 communications with Litwak that discuss additional testing and exchange the revised reports during both the lawyers' review and the company's "reasonable searches."[34] But eCW did not produce or identify the documents until after the Court's January 2026 Order.

eCW is lying somewhere: either by now claiming its lawyers "forgot" about work they solicited and reviewed, or before when it repeatedly told the Court and Relators that it had searched for and located no additional testing documents or communications. Lying about the revised Sygnia reports allowed eCW to downplay the Litwak work, to create a time separation between the consulting and testifying phase, and to avoid Mr. Wortman's exclusion and the production of more damaging evidence. That is clear motive. In short, the record does not support eCW's most recent lapsed memory claim.

### III.    eCW intentionally concealed the Sygnia October Breach Report[35]

In July 2024, Relators' counsel asked eCW to confirm that "Mr. Wortman (or anyone else from Sygnia) was not working in a purportedly 'consulting' role before February 2024." In response, eCW said "individuals…from Sygnia assisted Geoff and me in understanding the technical issues raised in Relators' complaint, separate from our work with Mr. Wortman."[36] eCW does not attempt to justify its failure to disclose the existence of the Sygnia consulting team that produced the October Breach Report in response to Relators' question. Nor does eCW justify its failure to disclose to the Court that there were additional Sygnia reports overlapping with Mr. Wortman's. After dozens of emails and conferences, two depositions, two hearings, and three rounds of briefing about the overlap between Mr. Wortman and the consulting team, the Court and Relators should not be discovering new evidence on that question.

eCW's only argument is that the identical information in the October Breach Report and Mr. Wortman's report is a coincidence. To accept that, the Court must believe that separate Sygnia teams,

---

[33] *Id.* The email referenced is the May 9, 2023, email forwarding the May Litwak Report.

[34] Relators' counsel argued at the October 2025 hearing that there must be more Sygnia consulting documents, also allegedly without provoking memories. *See* Oct. 23, 2025 Hrg. Tr at 12:1-18; 14:19-23; 32:17-21; 86:22-87:25.

[35] eCW calls this document the "Public Research Summary" in its response, presumably to bolster its arguments. ECF 510 at 7.  The document is titled "Software Vendors – Breaches and Vulnerabilities."  ECF 503-13.

[36] ECF 210-3, Jul. 2024 Emails between R. Snyder and R. Bernardo (emphasis added). *Id.*

working independently months apart both found and quoted the same language from the same studies.[37] The Court must draw its own conclusion about whether to believe eCW's explanation of yet another concealed report with content mirroring Mr. Wortman's.

## IV.    eCW should have disclosed Mr. Dayan's "Final Report"

eCW argues that it never knew or should have known about Mr. Dayan's "Final Report." eCW also tries to blame Relators, claiming they agreed eCW only needed to search Mr. Litwak's files to respond to his deposition notice. Relators only agreed to that limitation because eCW expressly told them that Mr. Litwak was the only Sygnia consultant who tested eCW's software.[38] Mr. Dayan first came up at Mr. Litwak's deposition, when Litwak claimed Dayan's role was limited because he "was not really available."[39] But after the deposition, eCW produced a Sygnia time sheet (it previously claimed did not exist)[40] showing Mr. Dayan had performed hundreds of hours of testing.[41] As now revealed, Dayan performed extensive testing on eCW's software, validated Relators' findings, found additional critical severity vulnerabilities, and documented his testing results in a 42-page "Final Report." While eCW claims Mr. Wortman never saw that "Final Report," it does not say the same about Mr. Litwak, who surely saw the work Dayan had done. This evidence should have been disclosed while the Court was considering whether Mr. Wortman relied on consulting work.

## V.    eCW has not complied with the Court's January Order

eCW claims it has fully complied with the Court's Order and criticizes Relators for not identifying specific documents that it has not produced.[42] Neither argument is true. Sygnia's express position was that it was unwilling (after a certain point) to produce any documents beyond "deliverables

---

[37] There were at least 1,852 peer reviewed publications about cybersecurity in 2023–the year the SonicWall and Mandiant studies were published. *See* Verma, R., et al., A comprehensive scientometric study of research trends in cybersecurity from 2000 to 2024, available at: *https://link.springer.com/article/10.1007/s44354-025-00011-0?utm.*

[38] Ex. K, Snyder Decl. ¶ 9.

[39] ECF 361 at 45:10-23.

[40] ECF 490-5 at 2 (stating "counsel reviewed the invoices describing Mr. Litwak's consulting work and there are no references to testing in the invoices").

[41] ECF 356-4.

[42] ECF 510 at 4-6.

prepared under the consulting agreement."[43] eCW claims it then had to threaten to sue Sygnia to obtain one additional document that it knew existed.[44] What chance is there that Sygnia performed a complete search for work product given its stated position about deliverables (*i.e., reports*) and the threat of eCW litigation? Regardless, eCW had admitted it did not ask Sygnia to produce all its work product. eCW expressly excluded "Messrs. Sadon and Regev" from the search because they did not evaluate "the relators' technical allegations,"[45] but instead drafted and researched the October Breach Report.[46] There was no such limitation in the January Order. Nor could there have been: eCW had not revealed the existence of that second Sygnia team. To date, eCW has not produced any work product from the team that produced the October Breach Report, other than two versions of the report it generated. Those Sygnia employees did not spend 136.5 hours producing a 73-page report without creating any work product other than final drafts. That is not speculation.[47]

## VI.    eCW has earned sanctions

The Court has already imposed two monetary sanctions, ordered document productions, and stated it will allow Relators to submit proposed punitive jury instructions. Despite those sanctions, eCW has not moderated its conduct at all. Instead, it has proven it will do whatever it takes to attempt to win this case, regardless of what the Rules and this Court's Orders require. In its response, eCW makes very limited arguments against issue preclusion and default.[48]

It argues the requested issue preclusion topics are not tied to its misconduct (which it denies). Relators' proposed issue preclusion findings are all within the scope of Mr. Wortman's opinions—eCW's software processes and its knowledge and correction of security vulnerabilities identified by Relators. If

---

[43] Ex. L, Feb. 12, 2026 email from Bernardo to Snyder at 3, ¶ 7.
[44] ECF 510 at 4.
[45] Ex. L, Feb. 12, 2026 email from Bernardo to Snyder at 3, ¶ 7.
[46] *See* ECF 503-15 (breach invoice); ECF 503-16 (Wortman email stating breach team worked 136 hours).
[47] It is impossible for Relators to identify documents eCW will not admit exist but eCW has also not produced any internal communications within the Sygnia consulting team, or between Wortman and Litwak, communications between Sygnia and eCW or its lawyers on any platforms other than email, or the complete native file and notes related to Mr. Dayan's Final Report.
[48] Relators addressed eCW's arguments against Mr. Wortman's exclusion in the introduction. eCW's attempt to distinguish *Demboske v. Autry Greer & Sons, Inc.*, 740 F. Supp. 3d 1172, 1182 (N.D. Fla. 2024), is unavailing. ECF 510 at 17. There, like here, a lawyer lied to the court about expert issues resulting in his exclusion.

the Court believes those topics should be narrowed it, of course, has discretion to do so, but eCW makes no suggestions. eCW also argues that issue preclusion is inappropriate because it has now allegedly produced all the documents. Judge Totenberg rejected that exact argument in *Bates v. Michelin* finding the defendant's "dilatory gamesmanship" had delayed and disrupted the litigation thus warranting issue preclusion.[49] Because eCW has done the same here, issue preclusion is appropriate.[50]

eCW's arguments against default as just as unpersuasive. It claims it has not acted in bad faith, but offers no credible explanation for its repeated reliance on false testimony, its failure to produce or identify responsive documents, and its repeated lies. eCW's actions are precisely the type of repetitive conduct that authorizes default. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993) (affirming default where defendant "engaged in an unrelenting campaign to obfuscate the truth").[51] Once a party has proven its willingness to repeatedly lie to win, it forfeits its right to litigate the case on the merits.[52] Even facing a third sanction and accusations of misleading the Court, eCW misrepresented the facts and concealed documents. A decade after engaging in a "moral failing of truth and goodness"[53] that forced its first FCA settlement, eCW remains unrepentant and unchanged. It has earned default, and the Court is well within its discretion to give eCW what it has earned.

Respectfully submitted this 16th day of March 2026.

-- signatures appear on the following page --

---

[49] *Bates v. Michelin N. Am., Inc.*, No. 1:09-CV-3280-AT, 2012 WL 453233, at *20-21 (N.D. Ga. Jan. 13, 2012) ("Michelin claims...Plaintiffs have not been prejudiced…because all extant documents have now been produced.").
[50] The case eCW cites does not support its issue preclusion argument. That case was still in active discovery and the court allowed the plaintiff to avoid issue preclusion by producing the withheld documents. *Peacock v. Merrill*, 2009 WL 10704514, at *5-6 (S.D. Ala. Mar. 5, 2009). This case is way beyond that point.
[51] *See also* ECF 503 at 15-18 (collecting cases).
[52] *Jones v. Life Care Ctrs. of Am., Inc.*, 3:20-CV-488-TJC-PDB, 2022 WL 4389727, at *34 (M.D. Fla. Aug. 11, 2022) (default appropriate because deception "inhibited the Court's ability to fairly administer justice and forfeited [party's] right to use the judicial system to present…claims") rep. and recommend. adopted, 3:20-CV-488-TJC-PDB, 2022 WL 4384175 (M.D. Fla. Sept. 22, 2022).
[53] *See* (eCW expert) Kyle Meadors, Thoughts on DoJ and EHR Vendors, Feb. 7, 2020.

s/ Robert H. Snyder, Jr.
ROBERT H. SNYDER, JR.
  Georgia Bar. No. 404522
  rob@cannellasnyder.com
ALEXANDRA "SACHI" COLE
  Georgia Bar No. 696892
  sachi@cannellasnyder.com
HANNAH D. AMANUEL
  Georgia Bar No. 922743
  hannah@cannellansnyder.com
CHASE LYNDALE
  Georgia Bar No. 183762
  chase@cannellasnyder.com
CANNELLA SNYDER LLC
315 W. Ponce de Leon Ave.
Suite 885
Decatur, Georgia 30030
(404) 800-4828

BRIAN P. ADAMS
  Georgia Bar. No. 142474
  brian@brianadamslaw.com
MARY BETH HAND
  Georgia Bar No. 322836
  mbhand@brianadamslaw.com
ADAMS LAW FIRM
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
(478) 238-0231

ANNA GREEN CROSS
  Georgia Bar No. 306674
  anna@crosskincaid.com
MEREDITH KINCAID
  Georgia Bar No. 148549
  meredith@crosskincaid.com
CROSS KINCAID BASKAM LLC
315 W. Ponce de Leon Avenue, Suite 715
Decatur, GA 30030
(404) 948-3022

*Counsel for Relators*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 16th day of March, 2026.

/s/ Robert H. Snyder Jr.
Robert H. Snyder Jr.
Georgia Bar No. 404522