# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., | |
| Plaintiffs, | No. 5:18-CV-382 |
| v. | Honorable Marc T. Treadwell |
| eCLINICALWORKS, LLC, | |
| Defendant. | |

**DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF ITS REQUESTS FOR (1) JUDICIAL NOTICE OF ONC'S DECEMBER 29, 2025 RULEMAKING, AND (2) LEAVE TO SUPPLEMENT MR. KYLE MEADORS' EXPERT REPORTS**

This Court previously held that "it will be necessary for the Court and the parties to craft appropriate jury instructions regarding the ONC certification criteria, but it is beyond cavil that expert testimony is necessary to understand those specifications." (ECF No. 499 at 3.)  Based on that holding, Relators have argued "that interpretation of the certification requirements … is a proper area for expert testimony," and "[i]f eCW believes that a security flaw presented at trial is outside the scope of a certification, eCW can cross-examine Mr. Arrigo about it, or provide its own testimony from Mr. Meadors."  (ECF No. 431-1 at 2.)  Nevertheless, Relators ask the Court to deny mandatory judicial notice of ONC's new official statements about the certification criteria and preclude Mr. Meadors from explaining how those statements support his previously disclosed opinions.   In doing so, Relators represent to the Court that ONC's statements are irrelevant, prejudicial, and not proper expert testimony because ONC "does not even interpret the current regulatory requirements"; Relators have "never argued (d)(1) requires more than basic authentication and access control"; and Mr. Meadors "ventures into entirely new subject matter" because he "never previously expressed" any opinions on "penetration testing or security 'defense in depth.'"  (ECF No. 534 at 2, 6, 14, 17.)  These representations are demonstrably false.

*First*, nothing could be more relevant to this case than ONC's official statements about the proper interpretation of its own certification criteria and their importance to the MIPS program—evidence bearing directly on the parties' falsity, scienter, and materiality arguments.  ONC's statements in the Notice of Proposed Rulemaking ("NPRM") that "many stakeholders have overinterpreted the Certification Program's limited scope and policy purpose" and have "incorrect expectations" that "certified authentication and authorization capabilities [should] protect against known or unknown vulnerabilities" are about the same certification criteria in effect throughout this case.  (ECF No. 508-1 at 5.)  These statements squarely refute Relators' arguments that eCW

"violated" the criteria if a "malicious actor" could exploit its software. (*See* ECF No. 75 at 16.) Relators' straining to claim that the NPRM is consistent with their arguments does not render the NPRM *irrelevant*. In fact, Relators' fallback argument that eCW could "cross-examin[e]" ONC "[i]f [it] has a position on the certification criteria" effectively concedes the relevance of this evidence, since the NPRM would be admissible to cross examine ONC. (ECF No. 534 at 17.)

*Second*, Relators come nowhere close to showing any *unfair* prejudice, confusion, or delay *substantially outweighs* the NPRM's massive probative value. Fed. R. Evid. 403. All of Relators' arguments, including whether the second Trump Administration's statements in 2025 suggests how the first Trump Administration interpreted these identical criteria in 2017, go to weight, not admissibility. ONC's official statements are clear and direct, and Relators do not contend that eCW delayed at all in requesting judicial notice (which parties regularly seek even during trial).

*Third*, Relators' claim that Mr. Meadors never opined on these same subjects simply ignores his prior opinions, such as the criteria do "not require compliance against comprehensive pentation tests or actions of what we could call 'hackers.'" (ECF No. 218-14 at 18.) At no point does Mr. Meadors opine on "what … ONC was thinking"—a claim Relators never substantiate. (ECF No. 534 at 3.) Mr. Meadors explains why ONC's statements support his existing opinions. If confusion over whether "Mr. Meadors is speaking for ONC" were really Relators' concern, the remedy would be to judicially notice the NPRM so it is presented separately to the jury. (ECF No. 534 at 18.) It also makes no sense for Relators to claim it was too late for eCW to have disclosed this 8-page supplement in February 2026 when Relators *still* have not disclosed their supplemental report from their damages expert and will not do so before May 2026 at the earliest.

The Court asked at the June 2025 *Daubert* hearing, "where this body of knowledge about how [it is] going to interpret a technical criterion is supposed to come from." (ECF No. 334 at

15:8-10.)  The NPRM provides the answer.  The Court also stated, "this case can't be tried without expert testimony explaining the technical aspects of this case, and that includes the technical specifications."  (*Id.*at 21:14-17.)  Accepting Relators' position would eliminate whatever is left of eCW's ability to obtain a fair trial, depriving the jury of clear evidence from ONC disavowing Relators' interpretation of the certification criteria.  The Court should grant eCW's motions.

## ARGUMENT

### I.    ONC'S DIRECTLY ON-POINT STATEMENTS PUBLISHED IN THE FEDERAL REGISTER ARE ENTIRELY PROPER FOR JUDICIAL NOTICE.

Relators concede that 44 U.S.C. § 1507 applies to the NPRM, and "[t]he contents of the Federal Register shall be judicially noticed."  (ECF No. 534 at 4.)  Nevertheless, Relators maintain that the NPRM is "irrelevant Federal Register evidence" and "prejudicial."  (*Id.*)  Both points fail.

### A.    ONC's Statements About The Certification Criteria Are Highly Relevant.

"The Federal Rules of Evidence set a very low bar for relevance."  *State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, 2023 WL 4854725, at *3 (M.D. Fla. Jan. 10, 2023). Statements from the at-issue agency about the at-issue regulations easily clear that bar.

Relators agree that "what … the government thought was important" about the certification criteria and its payment decisions is "a matter of fact that is subject to proof by evidence of those facts."  (ECF No. 354 at 16.)  The NPRM is precisely such evidence:  it explains, in the government's own words, that the criteria do not require "assess[ing] discrete specific security capabilities at significant depths" or "protect[ing] against known or unknown vulnerabilities" such as vulnerabilities that would be detected with "penetration testing"; and "certified health IT cannot in isolation, or independently, provide … necessary privacy and security capabilities … across all relevant technologies of the enterprise-wide setting," which exceeds the "Certification Program's limited scope and policy purpose with respect to health IT security."  (ECF No. 508-1 at 5.)  ONC's

own statements are highly relevant to whether eCW violated those criteria.

Relators claim that the NPRM "do[es] not relate to Relators' allegations" because they have "never argued (d)(1) requires more than basic authentication and access control." (ECF No. 534 at 5-6.) That rewrites history. Relators have *repeatedly* argued that eCW's software violates the certification criteria because it allegedly can be "exploited by malicious actors." (ECF No. 17 ¶ 24; *see id.* ¶¶ 2, 7, 46-49, 51, 55, 57, 60, 62, 68-106.) They have claimed eCW's software violates (d)(1) because a "malicious actor" could "bypass the controls that are supposed to stop access." (ECF No. 75 at 12-13, 16.) Mr. Arrigo's opinion for why "eCW failed to meet the standard [for] § 170.315 (d)(1)" is the software had a "vulnerability [that] could allow an attacker to retrieve arbitrary files on the application server" and there were risks "if an attacker were to land inside the eCW network." (ECF No. 218-29 at 60, 65, 68.) Even now, Relators still intend to use "the penetration testing that eCW *did* as evidence that it had actual knowledge its software did not meet the certification requirements" even though the NPRM makes it unambiguous the certification criteria do not require the software to "protect against known or unknown vulnerabilities." (ECF No. 508-1 at 5; ECF No. 534 at 6.) Statements from ONC directly refuting Relators' argument for how to interpret ONC's criteria unquestionably satisfies that "'low'" "'standard for what constitutes relevant evidence.'" *U.S. v. Macrina*, 109 F.4th 1341, 1349 (11th Cir. 2024).[1]

The same applies to the NPRM's statements about how "certified health IT" is not responsible for "compliance across all relevant technologies of the enterprise-wide setting," that "the costs and burden of [the privacy and security certification criteria] far exceed their intended

---

[1] Such statements about the key regulation at issue stand in stark contrast to Relators' cases. *See Vallot v. Cent. Gulf Lines, Inc.*, 641 F.2d 347, 351 (5th Cir. 1981) (denying judicial notice of inapplicable OSHA regulations); *BRE Mariner Marco Town Ctr., LLC v. Zoom Tan, Inc.*, 682 F. App'x 744, 748 n.3 (11th Cir. 2017) (denying judicial notice of "an ordinance distinct from, and irrelevant to, the ordinance involved in the case"); *United States v. Alindor*, 799 F. App'x 678, 684 (11th Cir. 2020) (denying judicial notice of another person's conviction to support the inference they were responsible for defendant's false statements); *Berber v. Wells Fargo, NA*, 798 F. App'x 476, 483 n.7 (11th Cir. 2020) (denying plaintiff's motion for judicial notice of a defendant's settlement).

purpose and benefits," and the relationship between the certification requirements and MIPS payment decisions, including the government's deliberate separation of certification and HIPAA obligations. (ECF No. 508-1 at 5.) Relators' arguments that the NPRM's statements require more "context," are "undisputed," or support their position are exactly the arguments they can make to a jury. (ECF No. 534 at 6-8.) They do not render this evidence about Relators' allegations "irrelevant." Whether the NPRM is a "final statement by ONC" does not change the fact that ONC published *these* statements in the Federal Register to explain what the certification criteria mean. (*Id.* at 11.) Nor is Relators' point that "materiality is decided at the time of the relevant decision" correct, since the government's conduct after the fact—such as continued payments "despite actual knowledge"—can often be "strong evidence that the requirements are not material." *Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176, 195 (2016); (ECF No. 534 at 9). eCW has never argued that the criteria are "meaningless." (ECF No. 534 at 2.) Rather, ONC's statement shows their purpose and scope is far more "limited" than Relators contend and their proposal to eliminate these criteria is highly relevant to whether the criteria are material to any allegedly false claim.

To try to minimize their weight, Relators claim that ONC's statements are only "prospective," and "say[] nothing about what the regulations at issue required during the relevant time frame." (ECF No. 534 at 2.) That is equally wrong. There have been no relevant changes to the criteria since 2015, meaning ONC's statements apply to the "certification criteria in place from 2017 to 2022." (*Id.* at 12.) ONC's comments like stakeholders have "incorrect expectations of certified health IT" and "the costs and burden of *these* Certification Program requirements far exceed their intended purpose and benefits" are about "the *current* Privacy and Security Certification Framework, which has been in place for the past 10 years." (ECF No. 508-1 at 5 (emphases added).) Relators' observation that the NPRM "cannot rewrite existing regulations"

only reinforces that ONC is addressing the criteria still in effect in 2017.  (ECF No. 534 at 9.)

This Court does not need to decide whether the NPRM forecloses Relators' claims for the NPRM to be judicially noticed.  That is the purpose of trial.  But ONC's official statements about the existing certification criteria clear the *very* low bar for relevance and speak directly to whether (1) eCW's software satisfied the certification criteria (falsity); (2) eCW reasonably understood those criteria (scienter), and (3) the government considered certification criteria compliance material to its MIPS payments (materiality).  *See State Farm*, 2023 WL 4854725, at *3.

**B.    The NPRM's Relevance Vastly Outweighs Any Hypothetical Unfair Prejudice.**

Given the highly probative value of the NPRM, the Court can easily dispense with Relators' Rule 403 arguments.  As their own cases explain, "'Rule 403 is an extraordinary remedy which the district court should invoke sparingly,' and '[t]he balance … should be struck in favor of admissibility.'"  *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 287 (11th Cir. 2009).  Here, that balance weighs heavily in favor of admissibility.

*No risk of jury confusion*.  If it is the "jury's job to determine what the certification criteria required during the relevant period" (ECF No. 534 at 11), nothing could be more straightforward than official statements from ONC about the same certification criteria that were in effect in 2017.  This is not a case where a party sought to "take judicial notice of *over 150 pages* [of the federal register] at once."  *Fields v. United Network for Organ Sharing*, 2025 WL 1309807, at *2 (M.D. Fla. May 6, 2025) (emphasis added).  eCW has requested judicial notice of five statements totaling less than a page, none of which mentions "deregulation"—an issue **Relators** seek to inject into the case.  (*See* ECF No. 508-2.)  The fact that Relators wish to muddy the waters about what ONC means does not make the risk of confusion substantially outweigh the probative value of limited, objective, undisputed official statements.  *Cf. Tambourine*, 312 F. App'x at 287-88 (denying judicial notice of a separate judgment for plaintiff because of the "danger of the jury …

6

inappropriately assuming" that amount was part of the sum allegedly stolen from plaintiff).

*No unfair prejudice*.  Relators argue there will be "prejudice" because the jury may give the NPRM "weight … beyond what it deserves." (ECF No. 534 at 12.)  Arguing that a jury might consider evidence too probative is not a basis for exclusion.  But more fundamentally, "Rule 403 bars not all prejudice, but only *unfair* prejudice." *U.S. v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021).  If Relators truly believed that other NPRM statements are needed to establish the right "context" and avoid "cherry-pick[ing]," they could have sought to notice those statements too. (ECF No. 534 at 3, 5, 12.)  Their failure to do so confirms there is no missing context.  And putting aside whether it is possible to disentangle "politics" from executive branch decision-making, any argument that "this [presidential] administration's" statements and "policy" preferences would not apply to "the certification criteria in place" in 2017 when the same President was in office goes to its probative weight.  (*Id*.)  "Simply because the evidence is damaging or prejudicial to a [party's] case does not mean, however, that the evidence should be excluded.  '[I]t is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.'" *U.S. v. Terzado-Madruga*, 897 F.2d 1099, 1119 (11th Cir. 1990).  Relators fail that test.

*No delay*.  Relators have no argument eCW delayed anything.  The NPRM was published in the federal register on December 29, 2025, available to all.  eCW requested judicial notice on the day that public comment closed—*almost five months* before trial. *See Young v. Panera, LLC*, 2024 WL 2882238, at *3 (M.D. Fla. June 7, 2024) (granting judicial notice two months before trial); *Moody v. Thomas*, 89 F. Supp. 3d 1167, 1205-06 (N.D. Ala. 2015) (taking judicial notice during trial).  In fact, Relators' entire "delay" argument is not about *eCW's* delay at all, but about Relators' ploy to try to use *ONC's* public statements as a pretext to reopen discovery into *eCW's* "[c]ommunications with any federal agency or official" or "members of Congress or congressional

staff," "[p]articipation in meetings, briefings, working groups, or industry coalitions," and "[a]ny lobbying, consulting, legal, or advisory services" going back to 2018. (Ex. 1 at 7-8, Rels.' Draft 4th Interrogatories.) Not only does *that* discovery have nothing to do with whether the NPRM can be judicially noticed and the NPRM says why ONC proposes to remove the criteria, this discovery's purpose is at odds with Relators' protests the NPRM has nothing to "do with this case." (ECF No. 534 at 5.) Because none of these arguments come close to substantially outweighing the NPRM's probative value, the NPRM is "required to be judicially noticed." *Sw. Georgia Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*, 2009 WL 1410272, at *1 (M.D. Ga. May 19, 2009).

## II.   MR. MEADORS' LIMITED SUPPLEMENTAL REPORT IS PROPER.

### A.   Mr. Meadors Only Adds Support For His Existing Opinions.

Relators agree that Mr. Meadors' supplemental report is proper if it "add[s] information that was not available at the time of the initial report" and "do[es] not change [his] core opinions." (ECF No. 534 at 15-16.) Mr. Meadors' supplement does both. There is no dispute that the NPRM was not available at the time of his initial reports. Instead, Relators makes two arguments: (1) Mr. Meadors is opining on what ONC was "thinking"; and (2) he "abandons th[e] foundation" of his original report and instead "refocuses" on issues like penetration testing and defense in depth that were "never previously" covered in his prior reports. (*Id.* at 3, 13-16.) Both arguments are wrong.

*First*, Mr. Meadors' supplement is limited to explaining why ONC's recent statements are "consistent with" his own understanding and "prior experience" regarding the certification requirements. (Meadors Supplemental Rpt. at 3-8.) He does not say, and will not opine, on what ONC was "thinking," which is why Relators cite nothing from Mr. Meadors for that point. Relators have insisted "that interpretation of the certification requirements … is a proper area for expert testimony" by Mr. Meadors. (ECF No. 431-1 at 2.) They cannot now claim it is improper for "Mr. Meadors to interpret a proposed prospective rule" on those same requirements (to the

8

extent he is even doing so) to explain how ONC's comments align with his opinions. (ECF No. 534 at 17.) ONC's statements about what these criteria mean is precisely the type of authoritative material "'regularly relied upon by experts in his field.'" *U.S. v. Winston*, 372 F. App'x 17, 20 (11th Cir. 2010); Fed. R. Evid. 703. Consistent with the Court's ruling that "this case can't be tried without expert testimony explaining … the technical specifications," it cannot also be true that eCW's expert is ***prohibited*** from offering such testimony.[2] (ECF No. 334 at 21:14-17.) None of this will "substitute expert speculation for admissible evidence" (ECF No. 534 at 17), given eCW has asked the Court to judicially notice ONC's same statements.

**Second**, Relators' claim that Mr. Meadors "never" discussed penetration testing or defense in depth in his prior expert reports is just false. He wrote in his August 8, 2024 expert report, "[c]ompliance with the ONC privacy and security criteria is focused on operations of typical users, and it does not require compliance against comprehensive pentation tests or actions of what we could call 'hackers.'" (ECF No. 218-14 at 18.) He explained that cybersecurity services are "separate and distinct from the ONC certification" requirements because broader "cybersecurity" is "beyond what is expected for normal ONC compliance"—the same concept of "defense in depth" covered in his supplement. (*Id.*) He discussed at length that "sophisticated cybersecurity effort such as the path-traversal or SQL-injection attack" that Relators allege are "outside the scope of compliance" with (d)(1). (ECF No. 218-21 at 9.) As eCW pointed out in its opening brief, these exact topics were discussed in Mr. Meadors' prior expert reports. (ECF No. 512 at 2, 4, 6-8; ECF No. 218-14 at 18.) Relators ignore them because they have no response.

**B.    Mr. Meadors' Supplement Easily Clears The Bar For Supplementation.**

Relators fail to respond to most of eCW's arguments as to why Mr. Meadors' supplement

---

[2]    For preservation purposes, eCW maintains that such issues are for the Court decide. (ECF No. 378-1 at 12 n.3.)

is proper under Rule 37.  They never claim "surprise" because they cannot:  Relators have had the same access to the NPRM as eCW has had since it was published in the Federal Register.  They do not try to explain how eCW could have relied on the NPRM during the expert discovery period, since it was only published afterwards.  The NPRM plainly qualifies as "new information" not previously available, and Relators do not claim eCW delayed in bringing this issue to the Court.

Instead, Relators rehash their argument that Mr. Meadors' supplement is "prejudicial" because "the jury will mistakenly believe that Mr. Meadors is speaking for ONC."  (ECF No. 534 at 18.)  Again, the standard is "*unfair* prejudice"—a standard Relators do not claim they can meet.  *WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, 2023 WL 2734332, at *2 (M.D. Fla. Mar. 31, 2023) (emphasis added).  Nor do Relators ever specify why the jury will have that impression, since ONC will have a witness at trial and Mr. Meadors' supplement is simply quoting what ONC said and explaining how it supports his opinions.  Relators also lack any explanation as to why they have "no reasonable ability to cure that prejudice."  (ECF No. 534 at 18.)  eCW provided its supplement to Relators in February 2026 (months before the July 27, 2026 trial date), and Relators have already conceded that multiple depositions will still need to occur before trial related to their own efforts to fix their damages model.  (ECF No. 488 at 8.)  Nor will this invite any "mini-trial."  The meaning of the certification criteria is one of *the* purposes of trial.  If Mr. Meadors is prohibited from opining on the NPRM, it is *eCW* who would suffer incurable unfair prejudice.

### CONCLUSION

The NPRM is indispensable evidence to any fair trial.  Precluding the NPRM on top of the Court's past sanctions rulings and its rulings on Relators' expert's damages opinions will all but foreclose whatever is left of eCW's ability to mount a defense at trial.  eCW respectfully urges the Court to grant judicial notice of specific statements in the NPRM and grant Mr. Meadors leave to discuss the significance of this evidence at trial, consistent with his supplement.

Dated: April 17, 2026

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Geoffrey M. Wyatt (*pro hac vice)*
geoffrey.wyatt@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3393

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice)*
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants in this matter.

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

12