

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Supplement to Initial Expert Reports

for *United States ex rel. Permenter v. eClinicalWorks, LLC*, No. 5:18-cv-382 (M.D. Ga.)

Report by Kyle Meadors

Chart Lux Consulting



HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## TABLE OF CONTENTS

Page

Scope of Report.................................................................................................................. 1

ASTP/ONC Certification Does Not Mandate that EHR Software Prevent Malicious Attempts to Bypass Security Measures ..................................................................... 2

Acknowledgment that Security Criteria Were Intended to Provide Only One Layer of Defense-in-Depth Security........................................................................................... 4

Comprehensive Enterprise Data Security Is Beyond EHR Security Capabilities .................... 6

**CHART LUX**
CONSULTING

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## Scope of Report

I have prepared this supplemental report to address a recent development since my prior expert report: the publication of ASTP/ONC's proposal called Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity (or the "HTI-5 proposal").[1] While this notice of proposed rulemaking ("NPRM") proposal must still be finalized after public comments, the government's statements within this proposal align with my previously disclosed opinions that the privacy and security criteria of the ASTP/ONC Certification Program are significantly more limited than the scope alleged by the relators and their expert witness, Mr. Michael Arrigo, and that their allegations about eClinicalWorks' non-compliance with these criteria are incorrect.

The HTI-5 proposal contains recommendations from ASTP/ONC to remove or revise many of the existing criteria from its Certification Program, including removal of all of the privacy and security criteria, § 170.315(d)(1)-(d)(13).

The proposal has important implications for relators' allegations in this case for at least three reasons. First, the proposal rejects the idea that the security criteria impose ███████████ ████████████████████████████████████████████████ ████████████████ hich refutes the premise of several allegations made by relators and Mr. Arrigo. Second, the proposal recognizes the concept of defense in depth and expressly acknowledges that the certification criteria were only intended to offer one layer of an overall security strategy, rather than require a comprehensive security solution. And third, the proposal also confirms the concept of enterprise data security and the notion that some types of data maintained by practices are outside the scope of what the security criteria were designed to protect.

Since the HTI-5 proposal's publication, stakeholders have submitted comments about the proposed rule change, including removal of the privacy and security criteria. I have reviewed these comments,[2] and they do not alter my opinions in this supplemental report. None of the comments demonstrate that the current certification criteria mandate that EHR software ████████████████████████████████████████████ Many of the comments conform with my understanding that the security criteria were intended to provide only one layer of defense-in-depth security, and that comprehensive enterprise data security is beyond EHR security capabilities.[3] Many other comments do not take a position on the proposed removal of the

---

[1] https://www.federalregister.gov/documents/2025/12/29/2025-23896/health-data-technology-and-interoperability-astponc-deregulatory-actions-to-unleash-prosperity (excerpts attached as Ex. 1).

[2] Appendix A to this supplemental report documents my review of each public comment to the HTI-5 proposal. Additional materials considered are referenced in Appendix B.

[3] See, e.g., https://www.regulations.gov/comment/HHS-ONC-2025-0005-0159 ("Some stakeholders have incorrectly assumed that certified health IT provides comprehensive security capabilities, when in fact the

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

privacy and security criteria. Some advocate for retaining some or all of the criteria, or at least a measured transition to a new framework, because of a concern that some providers have come to rely on elements of certification to facilitate compliance with their own HIPAA obligations, or that removal of the privacy and security criteria could result in the imposition of additional burdens on such healthcare providers. But those objections if anything support the amendment, which affirms that certified EHR does not ensure HIPAA compliance and notes that other technological solutions exist that would continue to support the efforts of small practices to be HIPAA-compliant.[4]

## ASTP/ONC Certification Does Not Mandate that EHR Software ███████████ ██████████████████████████

Relators argue that eClinicalWorks' EHR software was non-compliant with ASTP/ONC's privacy and security criteria because, they claim, ███████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████    But as I explained in my original report, and as the HTI-5 proposal makes clear, such allegations have nothing to do with the privacy and security criteria.

For example, in my initial report, I stated:



---

certification criteria address only baseline technical functions that must be implemented within a broader organizational security program."); https://www.regulations.gov/comment/HHS-ONC-2025-0005-0081 ("Physician practices understand and accept that the capabilities provided by Certified EHR Technology (CEHRT) only assist an eligible professional in improving their technical safeguards, and the use of CEHRT alone does not guarantee compliance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy or Security Rules."); https://www.regulations.gov/comment/HHS-ONC-2025-0005-0168 ("HIMSS agrees with ASTP's assessment that privacy and security of data should happen system wide instead of at an application level."); https://www.regulations.gov/comment/HHS-ONC-2025-0005-0186 ("AdventHealth appreciates ASTP/ONC's acknowledgement that enterprise-wide privacy and security obligations cannot be fully addressed through health IT certification alone. We agree that certification should not be viewed as a substitute for comprehensive organizational cybersecurity governance or compliance with HIPAA and other applicable laws.").

[4] https://www.federalregister.gov/d/2025-23896/p-281.

[5] Meadors Independent Evaluation at 22.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Consistent with that opinion, ASTP/ONC's notice explains that it is wrong to interpret the criteria's "limited" scope as requiring as security capabilities "at significant depths," including capabilities that protect against "known or unknown vulnerabilities" ███████████ ██████████████████████████████████████ :

*Fourth, many stakeholders have overinterpreted the Certification Program's limited scope and policy purpose with respect to health IT security and instead assumed that the Certification Program assessed discrete specific security capabilities at significant depths, such as when and how the capabilities are implemented in health care provider or system settings. For example, stakeholders have expressed incorrect expectations of certified health IT and developers, such as expectations that the Certification Program required health IT developers of certified health IT to implement and conduct penetration testing of certified health IT or ensure that certified authentication and authorization capabilities protect against known or unknown vulnerabilities. In contrast, and to allow for significant scalable deployment flexibility, certified hea[l]th IT must only, for example, demonstrate support for basic authentication and role-based access control.*[6]

ASTP/ONC's statement is consistent with my prior experience as the EHR Testing Director at Drummond Group and my current experience as an ONC certification consultant, and directly refutes the interpretations offered by relators and Mr. Arrigo.[7] As explained, § 170.315(d)(1) requires only that certified EHR software is able to create new user accounts, assign them permissions, and modify their permissions, and allows for deactivating or deleting that user account. Compliance does not turn on, and has nothing to do with, ███████████████ ███████████████████████████████████████

ASTP/ONC's example of "penetration testing" is a helpful illustration for why relators' and Mr. Arrigo's allegations are wrong. A penetration test, or a "pentest," is a comprehensive test of simulated cyber security attacks in which the actor attempts to identify weakness or vulnerabilities in the overall electronic security defensives that would enable an unauthorized party to "penetrate" the security shield of the organization and obtain secrets or compromise the data. NIST defines it as "security testing in which assessors mimic real-world attacks to identify methods for circumventing the security features of an application, system, or network. It often involves launching real attacks on real systems and data that use tools and techniques commonly used by attackers. Most penetration tests involve looking for combinations of

---

[6] https://www.federalregister.gov/d/2025-23896/p-280.

[7] Drummond Group submitted its own comment to the NPRM and did not dispute ASTP/ONC's clarification that the privacy and security certification criteria were never meant to ensure "security capabilities at significant depths[.]" While Drummond noted that removal of the privacy and security criteria could impose burdens on "smaller healthcare organizations" that have not "adopted … third-party security solutions[]" and may rely on certification for their "baseline … security measures," Drummond does not disagree with the ASTP/ONC reasoning that current certification establishes a more limited scope of security. https://www.regulations.gov/comment/HHS-ONC-2025-0005-0112.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

vulnerabilities on one or more systems that can be used to gain more access than could be achieved through a single vulnerability."[8]

Penetration testing is not one individual test, but rather a complete set of multiple types of tests for various capacities designed to expose unique weaknesses. ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ That is true of my experience as well: penetration testing has never been a factor relevant to certification. To my knowledge, ONC has not sought to evaluate a health IT developer's penetration testing for purpose of certification, nor has it ever determined an EHR software to be nonconforming because of the sufficiency of such testing or its results. The NPRM provides yet another reason to conclude that relators and Mr. Arrigo's focus on the potential actions of malicious actors have nothing to do with compliance with the privacy and security certification criteria.

## Acknowledgment that Security Criteria Were Intended to Provide Only One Layer of Defense-in-Depth Security

Relatedly, relators and Mr. Arrigo allege that the privacy and security certification criteria require a certified EHR software to independently detect and prevent all types of cyberthreats and that the failure to block threats (███████████████████████████████████ ██████████) renders the software non-compliant. This argument misunderstands the limited purpose of the criteria and their intersection with the concept of "defense in depth."

NIST defines the concept of "defense in depth" as "information security strategy integrating people, technology, and operations capabilities to establish variable barriers across multiple layers and missions of the organization." [11] The idea is that appropriate security for an

---

[8] https://nvlpubs.nist.gov/nistpubs/Legacy/SP/nistspecialpublication800-115.pdf.

[9] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

[10] ████████████████████████████████

[11] https://csrc.nist.gov/glossary/term/defense_in_depth.

organization should have different but overlapping areas or layers of protection so there is ideally no single point of failure in the security apparatus. It is a concept widely used in modern security of electronic systems. The US Department of Homeland Security has put forth defense-in-depth strategies[12] to ward off cybersecurity threats.

In the HTI-5 proposal, ASTP/ONC explains that the privacy and security criteria do not require an EHR to adopt the full scope of protections that would be present with a defense-in-depth approach, and are far more "limited," focusing on a single layer in that defense based on discrete capabilities like authentication. In its fourth cited reason for dropping the privacy and security criteria, ASTP/ONC states the following:

*Fourth, many stakeholders have overinterpreted the Certification Program's limited scope and policy purpose with respect to health IT security and instead assumed that the Certification Program assessed discrete specific security capabilities at significant depths, such as when and how the capabilities are implemented in health care provider or system settings.*[13]

Consistent with this language, a PowerPoint presentation addressing the HTI-5 proposal prepared by ASTP/ONC for its Annual Meeting on February 11 and 12, 2026 ("Annual Meeting Presentation") states that the (d) criteria were proposed for elimination because

*the costs, burden, and unintended consequences of these requirements far exceed their intended purpose and benefits.*[14]

ASTP/ONC's statements confirm it is wrong to conflate the broader concept of "defense in depth" with the far more limited requirements of certification criteria. The criteria do not require a developer to attest that an EHR software has all of the "defense in depth" protection layers to stop a cyberattack, and such attacks are not evaluated in any compliance testing. ASTP/ONC's penetration testing example further illustrates this difference. Penetration testing is one aspect of modern cybersecurity protections that is part of "defense in depth," but is outside the scope of what it is required under the privacy and security criteria. Relators and Mr. Arrigo ignore this important distinction. The ASTP/ONC privacy and security criteria are not designed to bring full depth of defense security to a provider, but to be one piece in that effort.

---

[12] https://www.cisa.gov/sites/default/files/recommended_practices/NCCIC_ICS-CERT_Defense_in_Depth_2016_S508C.pdf.

[13] https://www.federalregister.gov/documents/2025/12/29/2025-23896/health-data-technology-and-interoperability-astponc-deregulatory-actions-to-unleash-prosperity#p-281.

[14] ASTP/ONC, *Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity (HTI-5) Proposed Rule*, Feb. 2026, at slide 13, https://vfairs-core-backend-prod.s3.amazonaws.com/1000000073/sessions/File-1770894757.pptx (attached as Ex. 2).

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

ASTP/ONC elaborates on this same idea in its first cited reason for removing the privacy and security criteria when it recognizes that other components and applications besides the EHR may provide better security features than found in the certified EHR:

*First, we have found that health IT developers have changed their development processes to build in privacy and security capabilities to meet these certification requirements rather than attempting to demonstrate that their technology could interface with other health IT that provides these capabilities. This has led to negative experiences for health care providers who have sought to use a best-of-breed, non-certified security technology to work across their deployed enterprise (e.g., a third-party audit log).*[15]

This reflects ONC's position that developers may be focused on meeting the certification requirements, which is distinct from providing a technology that meets all of the specific security needs that defense-in-depth technology might provide, and health care providers should have flexibility to pursue security approaches tailored to their needs. That is further recognition of the fact that there are security problems and solutions that exist outside of the scope of certification program, which is not intended to address those broader problems. These comments provide further support for my opinion that relators' and Mr. Arrigo's claim that existence of software vulnerability reflects a violation of privacy and security criteria is unfounded and inconsistent with the criteria's limited purpose.

## Comprehensive Enterprise Data Security Is Beyond EHR Security Capabilities

Several of relators' allegations assume that the privacy and security criteria are intended to establish comprehensive cybersecurity requirements for whole organizations. Relators allege, for example, ██████████████████████████████████████ I explained that these allegations are wrong in part because the conformity of an EHR with a privacy or security criterion cannot depend exclusively on the functionality of another health IT application. That is because the privacy and security certification only cover discrete functionality of the certified EHR software, not other technologies. As I have previously explained:



---

[15] https://www.federalregister.gov/documents/2025/12/29/2025-23896/health-data-technology-and-interoperability-astponc-deregulatory-actions-to-unleash-prosperity#p-281.

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

████████████████████████████████████████████████████[16]

Consistent with that opinion, ASTP/ONC acknowledges an enterprise's data security needs exceed the security provided by an individual EHR system. In its "Zero Trust Architecture" document,[17] NIST describes an enterprise and its security challenges in the modern world:

*A typical enterprise's infrastructure has grown increasingly complex. A single enterprise may operate several internal networks, remote offices with their own local infrastructure, remote and/or mobile individuals, and cloud services. This complexity has outstripped legacy methods of perimeter-based network security as there is no single, easily identified perimeter for the enterprise. Perimeter-based network security has also been shown to be insufficient since once attackers breach the perimeter, further lateral movement is unhindered.*

Building off that concept, ASTP/ONC in the HTI-5 proposal recommends removing the privacy and security criteria because it agrees that a single, isolated certified health IT solution, like eClinicalWorks, cannot be solely responsible for all the security needs of an enterprise setting:

*Second, as certified health IT (which is generally EHR-focused technology) is often implemented in enterprise-wide settings (e.g., group practices, large health care systems, multi-provider cloud-supported services), such certified health IT cannot in isolation, or independently, provide the necessary privacy and security capabilities for HIPAA Security Rule compliance across all relevant technologies of the enterprise-wide setting.*[18]

ASTP/ONC's Annual Meeting Presentation further clarifies this point, including a slide that identifies the functionality that certified EHR is required to have (and the functions that the HTI-5 proposal would remove), which do not include some of the functionalities raised in this case, including EKG devices and scanners.[19]

These statements align with my own experience with and understanding of the meaning of the certification criteria. ████████████████████████████████████████████████

█████

---

[16] Meadors Independent Evaluation at 11.

[17] https://nvlpubs.nist.gov/nistpubs/specialpublications/NIST.SP.800-207.pdf. When ASTP/ONC references "enterprise," it means the entire organization, like the provider's practice, and all of the applications it utilizes, as well as the individual and services employed.

[18] https://www.federalregister.gov/d/2025-23896/p-278.

[19] ASTP/ONC, *Health Data, Technology, and Interoperability: ASTP/ONC Deregulatory Actions to Unleash Prosperity (HTI-5) Proposed Rule*, Feb. 2026, at slide 12, https://vfairs-core-backend-prod.s3.amazonaws.com/1000000073/sessions/File-1770894757.pptx (Ex. 2).



HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

████████████████████████████████████████████
████████████████████████████████████████████
████████ [20]

In sum, ASTP/ONC's proposal confirms that a single certified health IT application, like eClinicalWorks, is simply one part of an enterprise's overall security network consisting of multiple applications, and security concerns involving other applications contained within the broader enterprise do not render the EHR non-compliant with the certification criteria.

---

[20] Meadors Independent Evaluation at 17.



HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

I hold the opinions in this report to a reasonable degree of certainty.

Date: March 6, 2026

Kyle Meadors