**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ALEX PERMENTER, ERIC RODIGHIERO, and CHRIS WHEELER,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>eCLINICALWORKS, LLC,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NO. 5:18-cv-382 (MTT)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

The Relators' seek to compel eCW to produce the 28 documents identified on eCW's March 22, 2026 privilege log (ECF 525-1). Ex. A at 5–7. The Court has reviewed the documents in-camera and concludes, to the extent that attorney-client privilege or work product protection applies, eCW has impliedly waived its attorney-client privilege and waived its work product protection for relevant portions of the documents.

## I. BACKGROUND

On March 10, 2026, the Relators asked the Court to compel eCW to produce "[a]ll communications relating to, discussing, or referencing Sygnia's work in 2023, including emails and messages by and between eCW's outside counsel, emails and messages between eCW's counsel and eCW, and internal eCW emails and messages that relate to or discuss Sygnia's work in 2023." Ex. A at 8–10. The Relators argued that eCW waived any alleged privilege related to those communications because its response to the Relators' third motion for sanctions attached declarations from eCW's outside counsel (Bernardo, Katz, and Wyatt), in-house counsel (Horrell), corporate leadership (Speyer), and testifying expert (Wortman) to "support its argument that the

company, its in-house and outside lawyers, and its experts all allegedly 'forgot' about the extensive work done by Sygnia after May 9, 2023."[1] *Id.; see* ECF 510-2; 510-3; 510-6; 510-7; 510-8; 510-9.

On March 12, 2026, the Court ordered eCW to "produce to Relators' counsel . . . (1) all Sygnia time and billing records and (2) all communications regarding time and billing for Project Eucalyptus submitted to eCW or its counsel." ECF 516. eCW withheld 28 documents responsive to the Court's March 12, 2026 Order on the basis of attorney-client privilege and/or attorney work product and provided a privilege log dated March 22, 2026. ECF 525-1. The Court held a motion hearing on the Relators' third motion for sanctions on March 24, 2026. After the hearing, the Relators asked the Court to order eCW to produce every document on the privilege log. Ex. A at 5–7. After eCW responded (*id.* at 1–3), the Court ordered eCW to produce the 28 documents for an in-camera inspection. ECF 535.

## II. DISCUSSION

The attorney-client privilege is the oldest common law privilege protecting confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "protects disclosures that a client makes to his attorney, in confidence, for the purpose of securing legal advice or assistance." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994); *see* Restatement (Third) of the Law Governing Lawyers § 68 (2000) ("[T]he attorney-client privilege may be invoked . . . with respect to . . . (1) a communication (2) made between privileged persons (3) in confidence (4) for the

---

[1] In their declarations, Horrell and Speyer did not support Bernardo's and Wyatt's sworn statements that they forgot. *See* ECF 510-8; 510-9.

purpose of obtaining or providing legal assistance for the client.").[2] "The attorney-client privilege 'belongs solely to the client,'" and only the client can waive the privilege, "either expressly or by implication." *Cox*, 17 F.3d at 1417 (quoting *In re Von Bulow*, 828 F.2d 94, 100, 101 (2d Cir. 1987)).

The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R Civ. P. 26(b)(3)(A). "Work product protection prevents most inquiries into an attorney's work files and mental impressions." *Drummond Co. v. Conrad & Scherer*, 885 F.3d 1324, 1335 (11th Cir. 2018) (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Opinion work product—materials that reflect an attorney's mental impressions, conclusions, opinions, or legal theories—"enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox*, 17 F.3d at 1422 (internal quotation marks omitted).

After reviewing each of the log entries, the Court orders production of the following email communications to the Relators:[3]

## A. Sygnia Billing Emails

1. 02_WI_E99800028900: May 23, 2023, 3:01 PM email from Horrell to Bernardo (Ex. B)

---

[2] When the court's jurisdiction is premised on a federal question in a civil case, federal law of privilege applies. *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992); *see* Fed. R. Evid. 501.

[3] Some emails in the attached exhibits were previously produced to the Relators (*see* Ex. I), and the Court did not redact these emails. Any other emails, and portions of emails, on the March 22, 2026 privilege log but not listed in this Order need not be produced to the Relators. The Court does not rule on the propriety of the privilege or work product protection asserted by eCW as to these remaining emails.

2.  03_WI_ E99800028874: June 7, 2023, 3:42 PM email from Bernardo to Horrell (Ex. C)

3.  05_ WI_ E99800028852: June 26, 2023, 9:40 AM email from Horrell to Bernardo (Ex. D)

4.  06_ WI_ E99800028849: June 19, 2023, 9:39 AM email from Horrell to Bernardo (Ex. E)

5.  06_ WI_ E99800028849: June 26, 2023, 11:46 PM email from Bernardo to Horrell (Ex. E)

6.  12_WI_ E99800036627: November 14, 2023, 9:31 PM email from Wyatt to Wortman (Ex. F)

The Court overrules eCW's claim that the above-listed Sygnia billing emails are covered by the attorney-client privilege (ECF 525-1 at 2). No legal advice or assistance was sought or received in these emails. *See Cox,* 17 F.3d at 1414. Confirming the accuracy of invoices for consulting services, and referencing billing for consulting generally, does not come close to legal advice.[4] Accordingly, the attorney-client privilege is inapplicable.

### B.  Public Research Project Emails

7.  07_ WI_ E99800034601: August 15, 2023, 6:07 PM email from Bernardo to Horrell (Ex. G)

---

[4] Not incidentally, these emails, and others produced without objection, refute eCW's lawyers' representations that "Wortman did not know the scope of the consulting work or its purpose" (ECF 503-4 at 5) and that Wortman "was not aware of the work Mr. Litwak performed as part of the consulting arrangement, or even the identities of the other team members." ECF 264 at 14. They also suggest the falsity of Wortman's testimony: "I was totally removed from that process and cannot speak to the type of work, the work product, or anything else was done in that respect"; "I would have no idea how much that engagement totaled or whose hours or anything else related to it"; and "I don't even know the entire makeup of that team. I was isolated from it." ECF 300-8 at 50, 58, 245. They also demonstrate that Speyer and Horrell knew Wortman was involved with the consulting work.

8.  07_ WI_ E99800034601: August 15, 2023, 10:37 PM email from Horrell to Bernardo (Ex. G)

9.  08_WI_ E99800036657: November 7, 2023, 1:32 PM email from Wyatt to Bernardo (Ex. H)

In the Court's January 15, 2026 Order, it ordered eCW to "immediately produce the Sygnia consulting team's work product." ECF 496 at 13. Among other documents, eCW produced an October 2023 Sygnia document entitled "Software Vendors – Breaches and Vulnerabilities" (hereinafter, the "Public Research Project"). ECF 503-13. Regarding this production, eCW counsel stated in sworn declarations: "Although the Public Research Project had nothing to do with the issues that gave rise to the [January 15, 2026] Order and is protected work product, counsel sought to resolve any plausible doubt concerning the scope of the Court's Order in favor of production and therefore provided these materials to Relators." ECF 510-2 ¶ 36; 510-6 ¶ 25.

After eCW's voluntary disclosure of the Public Research Project, the Relators observed that the contents of Wortman's expert report overlapped with the Public Research Project and argued in their third motion for sanctions that Wortman had relied on the Public Research Project and failed to disclose his reliance. ECF 503 at 10–11. In response, eCW argued, and Wortman swore, that Wortman "was never informed of, received, or reviewed any of the research the Threat Research Group conducted in connection with the Public Research Project" prior to issuing his report. ECF 510-3 ¶ 13; *see* ECF 510 at 11–13. In support of this defense, eCW's outside counsel—Wyatt and Bernardo—swore that "[the Public Research Project] had nothing to do with Sygnia's testing of eCW's software or its evaluation of Relators' technical allegations regarding eCW's software (i.e., the Sygnia Technical Consultancy), and counsel did not consider

-5-

them to be the same consultancy, *or the Public Research Project to be in any way related to Mr. Wortman's work* or to the Relators' prior requests with respect to Mr. Wortman or Sygnia." ECF 510-2 ¶ 34 (emphasis added); 510-6 ¶ 23 (emphasis added). Bernardo's and Wyatt's sworn public statements about their thought processes and litigation strategy as to the Public Research Project were directly contradicted by emails eCW now claims are covered by the attorney-client privilege and/or work product doctrine. *See* ECF 525-1 at 2.

The Court finds that eCW has waived the attorney-client privilege and work production protection as to the above-listed emails which relate to the purpose and scope of the Public Research Project. In *Cox*, the Eleventh Circuit noted "the doctrine of waiver by implication reflects the position that the attorney-client privilege 'was intended as a shield, not a sword.'" *Id*. at 1417 (quoting *GAB Business Serve, Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987)). "In other words, '[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.'" *Id*. (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) and citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Selective disclosure for tactical purposes waives the privilege.")). The court in *Cox* thus held that a party impliedly waives the attorney-client privilege if it "injects into the case an issue that in fairness requires an examination of otherwise protected communications." *Id*. at 1419.

"To waive a privilege, a party must do more than merely deny the opposing party's accusations; it must affirmatively 'inject a new factual or legal issue into the case.'" *Chick-fil-A v. ExxonMobil Corp.,* 2009 U.S. Dist. LEXIS 109588, at \*24, 2009 WL 3763032, at \*8 (quoting *Cox,* 17 F.3d at 1419). But a party "'need not raise an

affirmative defense to inject a new issue into the case, although it frequently occurs that way." *Id.* And courts "cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant." *Id.* (internal citations omitted).

The above-listed email communications reveal that eCW intended the Public Research Project to be used by Wortman. In one email, Bernardo tells Horrell that he asked Sygnia to do the Public Research Project "in order for our testifying expert [Wortman] to provide context of the external environment in which plaintiffs' claims are made." Ex. G. Horrell responded telling Bernardo to "proceed forward." *Id.* After receiving the Public Research Project, Wyatt emailed Bernardo "let's discuss on Friday how Oren [Wortman] can leverage." Ex. H.

The Court finds that eCW is attempting to use the privilege to prejudice the Relators' case and selectively "disclosed" privileged information for self-serving purposes. *See Cox,* 17 F.3d at 1417. Certainly, the Relators put Wortman's reliance on the Public Research Project at issue in their third motion for sanctions. *See* ECF 503. But eCW "affirmatively inject[ed] a new factual or legal issue into the case" by having its outside lawyers submit sworn declarations regarding the purpose and scope of the Public Research Project. eCW is both (1) attempting to use protected information as a sword and (2) mischaracterizing the protected information to obfuscate the truth. It did not simply deny the Relators' allegations but offered declarations from its outside counsel that "counsel did not consider . . . the Public Research Project to be in any way related to Mr. Wortman's work or to the Relators' prior requests with respect to Mr.

-7-

Wortman or Sygnia." ECF 510-2 ¶ 34; 510-6 ¶ 23. eCW's would-be privileged email communications show these statements to be false.[5]

The implied waiver doctrine is predicated on principles of fairness. *See Chick-fil-A,* 2009 U.S. Dist. LEXIS 109588, at *34, 2009 WL 3763032, at *11. The Relators argued in their third motion for sanctions that Wortman copied from the Public Research Project in preparing his expert report. ECF 503. eCW denied these allegations with sworn declarations from its attorneys regarding the purpose and scope of the Public Research Project. Where eCW's counsel's email communications directly contradict their own sworn statements and directly support the Relators' allegations, the Court finds that it would be "manifestly unfair" to allow eCW to withhold these otherwise protected communications. *See Cox,* 17 F.3d at 1417 (noting implied waiver occurs where "the party asserting the privilege placed information protected by it in issue through some affirmative act for its own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party."); *see also Remington Arms Co. v. Liberty Mutual Ins. Co.,* 142 F.R.D. 408, 415 (D. Del. 1992) ("If the information is actually required for a truthful resolution of the issue on which the party has raised by injecting the issue, the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case.").

As to work product, of the above-listed Public Research Project emails, eCW claims work product protection applies only to 08_WI_ E99800036657: the November 7, 2023, 1:32 PM email from Wyatt to Bernardo (Ex. H). *See* ECF 525-1. In this email,

---

[5] Notwithstanding the emails, eCW argues the Public Research Project was not, in the end, provided to Wortman. *See* Ex. I at 2.

Wyatt tells Bernardo in reference to the Public Research Project: "[L]et's discuss on Friday how Oren [Wortman] can leverage." Ex. H. To the extent this sentence is attorney work product, such protection was waived for the reasons that follow.

The Court finds that eCW waived consulting work product protection over the Public Research Project by voluntarily providing it to the Relators. *See Chick-fil-A,* 2009 U.S. Dist. LEXIS 109588, at *10, 2009 WL 3763032, at *3 (S.D. Fla. Nov. 10, 2009) ("Voluntary disclosure of work product information to an adversary waives work product protection as to that information."). The Court also finds that eCW waived attorney work product protection over Wyatt's email as it relates to the purpose and scope of the Public Research Project. In *L-3 Communications Corporation v. Sparton Corporation*, 2014 U.S. Dist. LEXIS 86426, at *8, 2014 WL 2882925, at *3 (M.D. Fla. June 25, 2014), the court held that voluntarily disclosing consulting expert reports waived work product protection "to the extent of the information covered in those reports." The court explained:

> In order for Defendants to understand, challenge, and otherwise make use of the reports given to them by Plaintiff, they will need to know the communications between [the consulting expert] and others, what investigations and tests it performed, the results of those investigations and tests, the information it obtained, and any other information it developed, which underlies the reports given to Defendants. The Court finds that this information is also discoverable.

*Id.* But eCW did more than simply disclose the Public Research Project. It also submitted declarations from outside counsel representing the intended purpose and scope of the Public Research Project. ECF 510-2 ¶ 33, 34; 510-6 ¶¶ 22, 23. eCW thus expressly "disclosed" its litigation strategy regarding the Public Research Project to support its defense of Wortman and, in doing so, waived opinion work product protection to that limited extent. *See In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d

Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears. Courts therefore accept the waiver doctrine as a limitation on work product protection.") (internal citations omitted).

Under Federal Rule of Civil Procedure 26(b)(3)(B), "[i]f the court orders discovery of [work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Here, however, eCW voluntarily disclosed its outside counsel's mental impressions as to the purpose and scope of the Public Research Project and placed them directly at issue. *See Sparton Corp. v. United States,* 44 Fed. Cl. 557, 565 (1999) ("Opinion work product is, however, subject to discovery in situations in which 'the mental impressions of counsel are directly at issue.'" (quoting *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.,* 173 F.R.D. 7, 17 (D. Mass. 1997))); *Kehle v. USAA Cas. Ins. Co.*, 2018 U.S. Dist. LEXIS 89846, at *14, 2018 WL 2435176, at *5 (S.D. Fla. May 30, 2018) ("[S]everal courts have held, subsequent to *Cox*, that a party can waive its opinion work-product privilege pursuant to the doctrine of [implied] waiver if it concerns the mental impressions and opinions of counsel in the context of bad faith litigation."). While this is not a bad faith lawsuit against an insurer, eCW's actions have created similar circumstances and thus, the Court finds that similar considerations of fairness apply.

Federal Rule of Evidence 502 restricts the scope of an express waiver to the matter disclosed unless fairness requires more extensive disclosure. Under Rule 502, where a party has waived either the attorney-client privilege or work product protection in a federal proceeding, the waiver extends to additional undisclosed protected material so long as: "(1) the waiver is intentional; (2) the disclosed and undisclosed

-10-

communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). eCW used its outside counsel's mental impressions as a sword to persuade the Relators and the Court that Wortman had not relied on the Public Research Project. This voluntary "disclosure" of work product was false and weaponized for eCW's benefit—eCW's outside counsel's sworn statements about their work product were directly contradicted by their internal communications and communications with Horrell. eCW cannot now use the work product doctrine as a shield to bar production of communications on the same narrow subject matter—the purpose and scope of the Public Research Project. Having voluntarily disclosed the Public Research Project, counsel's sworn statements should, in fairness, be "considered together" with counsel's contrary communications on the same subject matter. *See* Fed. R. Evid. 502(a)(3). Accordingly, an implied waiver of attorney work product protection applies to the above-listed Public Research Project emails to the extent such protection applies.

### III. CONCLUSION

Because the Court finds that eCW waived the attorney-client privilege and/or work product protection with respect to the nine above-listed emails to the extent such privilege or protection applies, those emails shall be placed on the docket.

**SO ORDERED**, this 18th day of May, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

-11-