Page 1

UNITED STATES DISTRICT COURT

FOR MIDDLE DISTRICT OF GEORGIA

MACON DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA ex. rel.,

ALEX PERMENTER, ERIC RODIGHIERO,

and CHRIS WHEELER,

Plaintiffs

vs.                                    CA NO. 518-CV-382

eCLINICALWORKS, LLC

Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VIDEOTAPED DEPOSITION OF:

JORDAN A. MADHUSUDHAN

KIRKLAND & ELLIS LLP

200 Clarendon Street

Boston, Massachusetts

September 3, 2025         2:46 p.m.

\*\*TRANSCRIPT CONTAINS CONFIDENTIAL DESIGNATIONS\*\*

Darlene M. Coppola

Registered Merit Reporter

Certified Realtime Reporter

Page 2

Representing the Plaintiffs/Relators:

          CANNELLA SNYDER LLC

          315 West Ponce De Leon Avenue

          Suite 885

          Decatur, GA    30030

          BY:  ROBERT SNYDER, ESQUIRE

                  HANNAH AMANUEL, ESQUIRE

          T 404.800.4828

          E rob@cannellasnyder.com

             hannah@cannellasnyder.com

    -and-

          CROSS KINCAID BASKAM

          715 West Ponce De Leon Avenue

          Suite 715

          Decatur, GA    30030

          BY:  ANNA GREEN CROSS, ESQUIRE

          T 404.948.3022

          E anna@crosskincaid.com


    (Continued on next page)

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 3

APPEARANCES (Continued):

Representing the Defendant and the Witness:

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

    One Manhattan West

    395 9th Avenue

    New York, NY 10001

    BY:  RICHARD BERNARDO, ESQUIRE

        CONNER J. WINSHIP, ESQUIRE

        LAUREN GRIFFITH, ESQUIRE

    T 212.735.3000

    E richard.bernardo@skadden.com

      conner.winship@skadden.com

      lauren.griffith@skadden.com

-and-

    KIRKLAND & ELLIS LLP

    1301 Pennsylvania Avenue NW

    Washington, DC 20004

    BY:  GEOFFREY M. WYATT, ESQUIRE

    T 202.389.5000

    E geoffrey.wyatt@kirkland.com

(Continued on next page)

Page 4

APPEARANCES (Continued):

Representing the Defendant and the Witness:

KIRKLAND & ELLIS LLP

333 West Wolf Point Plaza

Chicago, IL 60654

BY:  MARTIN ROTH, ESQUIRE

KIMBERLY HILL, ESQUIRE

312.862.2000

E martin.roth@kirkland.com

kimberly.hill@kirkland.com

-and-

KIRKLAND & ELLIS LLP

200 Clarendon Street

47th Floor

Boston, MA 02116

BY:  ELIZABETH KELLY, ESQUIRE

T 617.385.7500

E elizabeth.kelly@kirkland.com

(Continued on next page)

Page 5

APPEARANCES (Continued):

Representing the Defendant and the Witness:

    KATZ LAW FIRM, PLLC

    399 Boylston Street

    Sixth Floor

    Boston, MA  02116

    BY:  AARON KATZ, ESQUIRE

    E akatz@aaronkatzlaw.com


Also Present:

Shawn Budd, Videographer

Chris Wheeler

Sachi Cole (Via Zoom)

Chase C. Lyndale (Via Zoom)

Whitney Horrell, In-house counsel, EWC

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 6

                                INDEX
                              EXAMINATION
    Witness Name                                          Page
    JORDAN A. MADHJUSUDHAN
       Cross By Ms. Cross ......................... 10
       Direct By Mr. Roth ........................ 120
       Recross By Ms. Cross ...................... 155
                               EXHIBITS
    Exhibit          Description                          Page
    Exhibit 195      Delaney Complaint,                    31
                     previously marked

    Exhibit 330      Email dated April 28,                 42
                     2017, ECW_PER000059346
                     through 9350 Confidential

    Exhibit 300*     Kyle Meadors'                         45
                     deposition testimony
                     from August 22, 2024,
                     previously marked
                     Confidential
    Exhibit 119*     Corporate integrity                   61
                     agreement, previously
                     marked
    Exhibit 332*     Interview transcript,                 86
                     four pages

    Exhibit 122*     Baseline assessment                   92
                     dated December 12,
                     2017, ECW_GA001991728
                     through 1744,
                     previously marked
                     Highly Confidential
    Exhibit 333*     Skype chat dated                      97
                     December 19, 2018,
                     ECW_GA001681528 and
                     1529  Confidential

Veritext Legal Solutions
800.808.4958                                       770.343.9696

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 7

                           EXHIBITS
    Exhibit           Description                          Page
    Exhibit 335*       Email format of chat                 109
                       dated June 7, 2019,
                       ECW_GA000051023 and
                       1024 Confidential

    Exhibit ECW-1*    Certified EHR                         127
                      Technology Policy,
                      ECW_PER001141969
                      through 1994 Confidential
    Exhibit ECW-2*    Email thread between                  137
                      Kyle Meadors and Jordan
                      Madhusudhan from
                      October of 2019,
                      EFCW_PER000824498 and
                      4499 and attachment
                      Confidential

    Exhibit ECW-3*    Document Bates-stamped                142
                      ECW_GA1306739
    Exhibit ECW-4     Email dated October                   147
                      29,2018,
                      Meadors_000001273 to
                      1275
                      Confidential
    Exhibit ECW-5     Photograph of white                   151
                      board, ECW_PER002084672
                      Confidential

    * - Denotes Highly Confidential Exhibit

Page 8

P R O C E E D I N G

(Commencing at 2:46 p.m.)

THE VIDEOGRAPHER:  We are on the record.  This is the videographer speaking, Shawn Budd with Veritext Legal Solutions.  Today's date is September 3, 2025, and the time is 2:46 p.m.

We are here in Boston, Massachusetts, to take the video deposition of Jordan Madhusudhan in the matter of the United States of America, et al., versus eClinicalWorks, LLC, complex litigation.

Would counsel please introduce themselves for the record.

MS. CROSS:  Anna Cross.  With me is Rob Snyder, Hannah Amanuel, and litigant Chris Wheeler for the relators.

MR. ROTH:  Martin Roth from Kirkland & Ellis, along with Elizabeth Kelly, Kim Hill, and Geoff Wyatt from Kirkland.  And then Rich Bernardo, Skadden, Aaron Katz, and then in-house counsel Whitney Horrell from ECW.

THE VIDEOGRAPHER:  And would the

people on Zoom like to introduce themselves?

MS. COLE:  Sachi Cole and Chase Lyndale from Cannella Snyder on behalf of relators and Meredith Kincaid as well.

THE VIDEOGRAPHER:  Would the court, reporter Darlene Coppola, please swear in the witness.

JORDAN A. MADHUSUDHAN,

a witness called for examination by counsel for the Relators, having been satisfactorily identified by the production of her driver's license and being first duly sworn by the Notary Public, was examined and testified as follows:

THE STENOGRAPHER:  Thank you.  You may proceed.

MS. CROSS:  Thank you.  This will be the trial deposition of Jordan Madhusudhan, taken on cross-examination pursuant to notice and agreement of the parties for all uses allowed under the federal rules.

Page 10

CROSS-EXAMINATION

BY MS. CROSS:

Q.    Miss Madhusudhan, would you go ahead and spell your name for the jury, please.

A.    Jordan J-o-r-d-a-n, Madhusudhan M-a-d-h-u-s-u-d-h-a-n.

Q.    All right.  And, Miss Madhusudhan, you are currently an employee of eClinicalWorks or ECW; is that right?

A.    Yes.

Q.    And you've been with that company since at least 2013; is that correct?

A.    Correct.

Q.    Since you started in 2013 and to the present, has your name changed?

A.    Yes.

Q.    Okay.  What was your former name when you worked at ECW when you began in 2013?

A.    Jordan Stagg-Parmenter.

Q.    And so if we see some documents that have Jordan Stagg-Parmenter and I'm asking you, Jordan Madhusudhan, about them, that's still you? That's the same person?

A.    Yes, that's still me, yeah.

Jordan A. Madhusudhan                                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 11

Q.    And where do you live, Miss Madhusudhan? Just generally, what area?

A.    I live in Franklin, Massachusetts.

Q.    And we're in Boston.  How far from Franklin, Massachusetts, is Boston?

A.    Forty-five minutes on a good day.

Q.    Your current role at ECW is a product lead or a group product manager; is that correct?

A.    Yeah.  So my official title is a product management team lead.

Q.    When you began work with ECW in 2013, I think you were a college intern; is that right?

A.    Correct.

Q.    All right.  And you've been there ever since?

A.    Correct.

Q.    Did you have any connection to ECW before your internship?  Any friends or family or acquaintance work at that company?

A.    No.

Q.    When you graduated college in May of 2014, then you became a full-time employee at ECW; is that right?

A.    No.

Page 12

Q.    Tell me what's wrong.

A.    I graduated college in May of 2022, and I became a full-time employee in October of 2014, I think.

Q.    All right.  So were you going to school, taking classes continuously while working at ECW from 2014 to 2022, when you graduated?

A.    No.  I took some time off and then continued a few years later.

Q.    So when you began, you didn't have a full-time -- or you didn't have a college degree at the time you began?

A.    Correct, I didn't have a college degree.

Q.    When you did begin, you were a training specialist; is that right?

A.    Yes, a software training specialist.

Q.    Software training specialist.  And by that, we mean that you were a person who traveled to medical providers and facilities to help them learn how to use ECW's software; is that right?

A.    Yes.  I would train them and then help them implement it on their go-live day is what we called it.

Q.    That's just facilitating the first day to

Page 13

make sure there's no problem with the use of the software?

MR. ROTH:  Object to form.

A.    Just -- sorry.  Just making sure that they were successful in their use of the software.

BY MS. CROSS:

Q.    And that role didn't require any particular education or experience for you in certification compliance; is that right?

A.    No, not as it relates to certification compliance.

Q.    And after about a year as a training specialist, you became a business analyst for ECW; is that right?

A.    Correct.

Q.    And as I understand it, your role as a business analyst beginning in 2015 was working with Physician Quality Reporting Systems Optimization?

A.    Correct.

Q.    Is that right?

A.    Correct.

Q.    And Physician Quality Reporting System Optimization, that's an incentive payment program

Page 14

from -- that the government was in use at that time; is that right?

A.    Yeah, yeah.  It was a government incentive program that I helped our providers ensure that their documentation was appropriate for the incentives that they were receiving.

Q.    And what we're talking about when we talk about an incentive payment program is that the government set aside some money for medical providers to reimburse them or to incentivize them for using software that the government considered met its qualifications, right?

A.    Not --

MR. ROTH:  Object to the form.

A.    Yeah, not exactly.  So --

BY MS. CROSS:

Q.    Tell me.

A.    I'll just call it PQRS, but the Physician Quality Reporting System, how it worked was if you were a Medicaid or Medicare provider, so if you saw patients with those -- with those insurances, then the government expected you to be able to provide quality care to your patients. And they set a threshold based off of what

Page 15

incentives -- or what measures, you know, were applicable to your specialty.

So, like, a really basic example is, like, BMI.  So they would expect that for -- and this is just like a made-up number.  I don't remember if this is one of them.  But, like, for BMI, we would expect that for 60 percent of your patients, they should have their BMI collected at every Medicaid-eligible visit.  So that's kind of the process.

And then based on that, where your provider fell in that quality report, there was a report that they would get from -- I forget who they would get it from, but they would get some quality report that says, you know, For these measures, you did okay.  For these measures, you were stellar.  And based off that, they'd adjust their payments.

Q.   Okay.  Let me ask a better question, then.  Thank you for that information.  That was not quite what I was going for, but I think that was a result of my question, not your answer.

A.   Okay.

Q.   So the software medical -- the software

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 16

that medical providers used needs to be certified, correct?

MR. ROTH:  Object to form. Foundation.

BY MS. CROSS:

Q.   In order to participate in incentive programs?

MR. ROTH:  Object to form and foundation.

BY MS. CROSS

Q.   You can answer.

A.   So some providers, not all, if they want to accept patients who have Medicare or Medicaid, are required to have a certified EHR.

Q.   And by "EHR," we mean electronic health record?

A.   Correct.

Q.   And, yes, the questions I'm asking you are going to be directed towards the Medicaid and Medicare programs and the government incentive payments that are based on physicians and medical providers that participate in those programs. Okay?

A.   Okay.

Page 17

Q.   All right.  So the software that medical providers need to use in order to participate in the government programs that we're talking about needs to be certified, correct?

MR. ROTH:  Objection.  Form and foundation.

BY MS. CROSS:

Q.   You can answer.

A.   Correct.

Q.   All right.  And ECW, as a software provider selling software for electronic health records, needs to have its products certified by the government in order to market them to those providers who want to participate in the programs, correct?

MR. ROTH:  Object to form.

BY MS. CROSS:

Q.   You can answer.

A.   So it's eClinicalWorks's decision on whether or not to be certified or certify their products, rather, their software products.  But then the providers can determine if they want to accept Medicare or Medicaid patients, and then if they do want to accept that, then they have to

Page 18

use a certified software.

Q.   Understood.

A.   So eClinicalWorks is not required to be certified if they didn't want to have any customers that don't accept Medicaid or Medicare.

Q.   ECW does want to have certified software, though, correct?

A.   Correct.

Q.   It enables ECW to market to the population of medical providers and facilities that do participate in the Medicaid/Medicare programs and their incentive -- and the government incentive payments, correct?

MR. ROTH:  Object to form.

A.   It allows eClinicalWorks to have customers that accept Medicare and Medicaid insurance programs.

BY MS. CROSS:

Q.   All right.  After your time as a business analyst, you were promoted -- was it a promotion?

A.   No.

Q.   You were moved to be the project manager that oversaw the certification of software at ECW; is that correct?

Page 19

A.    So not a promotion.  It was a lateral move, and I was -- I was a product analyst at that time.

Q.    And your position as a product analyst included certification compliance, correct?

A.    So my -- my first project as a product analyst at eClinicalWorks was the 2015 Edition ONC Health IT Certification Program.

Q.    And at that time in 2016, not a college graduate yet, correct?

A.    I had four years of college experience, but I hadn't received my degree yet.

Q.    And at that time when you took over this position as overseeing the development process for the 2015 Edition of the ONC Health IT Certification Project -- is that how you --

A.    Yeah.

Q.    -- characterized it?

A.    Yeah.

Q.    In 2016 when you took over that project, you had never overseen the development certification process at any time in the past, correct?

                    MR. ROTH:  Object to the form.

Page 20

A.    I hadn't overseen any software development processes related to certification.  However, I had already had a year and a half of experience as a product management intern, and I had four years of foundation of college education, which included information systems classes.

BY MS. CROSS:

Q.    Miss Madhusudhan, I want you to listen to my question as I phrased it, okay, and to the best you're able, answer the question that I ask you.  Okay?

A.    Uh-huh.

Q.    At the time that you took over this project in 2016, you had never overseen the certification process for any other piece of software or any other project; is that right?

MR. ROTH:  Object to form.  Asked and answered.

A.    Yeah, I think my answer would be the same.  I hadn't specifically oversaw a development process for certification.  However, I had a year and a half of experience in product management specifically at eClinicalWorks.  I had experience as a business analyst working on a government

Page 21

incentive program which relied upon the use of certified health IT products.  And I had four years of college education.  I don't think you need a degree to be able to do a good job.

MS. CROSS:  I'm going to move to strike everything beginning with "I had experience as a business analyst."

BY MS. CROSS:

Q.    In the time -- or prior to the time that you took over this project in 2016, had you obtained any certification that qualified you to oversee a project of software certification?

MR. ROTH:  Object to form.

A.    A certification?  I don't know if there would have been one out there at that time.

BY MS. CROSS:

Q.    Not only did you not have one, you're not aware that someone could be certified in that area?

A.    I think at that point in time when I joined the team in 2016 through to 2018, the ONC -- the 2015 edition was new for everybody in the industry, and everyone was learning it together.

Page 22

MS. CROSS:  I move to strike that answer as nonresponsive.

BY MS. CROSS:

Q.   Did anyone tell you, Miss Madhusudhan, in the time you were put in this role in April, 2016 why you were selected?

A.   I had to interview for the role.

Q.   You interviewed internally?

A.   Uh-huh.

Q.   Anything further?

A.   No.

Q.   You're shaking your head.  And just for the court reporter's --

A.   Sorry.  No.  Sorry.

Q.   -- benefit, we'll need to have a verbal answer.

A.   Sorry.

Q.   That's okay.  It's easy to do.

April, 2016, you're taking over the certification process.  Did you replace someone in that role, or was that a new position?

MR. ROTH:  Object to form.

A.   So the product analyst role was a new roll, but I -- I was just tasked with that

Page 23

project because it was a new project.

BY MS. CROSS:

Q.    And at that time there was no certification compliance team; is that correct?

MR. ROTH:   Object to form. Foundation.

A.    At that time no, no, there wasn't.

BY MS. CROSS:

Q.    At that time, there were no written policies about the certification process; is that correct?

MR. ROTH:   Object to form.

A.    No, no specific policies, but we did have a pretty rigorous process of reviewing all of the certification criteria.  Although it might not have been written out in a formal policy document, we were very prescriptive with how we went through and reviewed it all.

BY MS. CROSS:

Q.    How did you learn about those very rigorous internal review processes if there were no written procedures or policies?

MR. ROTH:   Object to form.

A.    So we had -- at this point, because we

Page 24

weren't certified on the 2015 edition, we had

what's called a testing lab.  So Drummond Group,

which is our certification body, also operated as

a testing lab.  And they were tasked with helping

us through the certification process and

understanding and analyzing all of the

certification criteria.

BY MS. CROSS:

Q.    So you all relied on somebody outside the

company to facilitate the certification?

A.    We relied on a government-appointed agency

who they themselves had to be certified by the

ONC.

Q.    You relied on someone outside ECW?

MR. ROTH:   Objection.

A.    We relied on our certification body, who

they themselves were certified by the ONC.

BY MS. CROSS:

Q.    Who is --

A.    It's the government body that oversees the

certification process.

Q.    Miss Madhusudhan, I need you to answer the

question the way I ask it.  Okay?  If you feel

like you need to respond further to fully answer

Page 25

the question, then your attorneys and I will talk about that, but you need to answer the question I ask you.  Okay?

A.  (Witness nodding.)

Q.  Do you understand?

A.  Yes.

Q.  Okay.  You relied on an outside company, someone outside ECW, to walk you through the certification process when you began in 2016, correct?

MR. ROTH:  Objection to form.  Asked and answered.

A.  I think my answer would be the same.

BY MS. CROSS:

Q.  Yes or no, please.

MR. ROTH:  Object to form.

A.  The product management team relied -- or eClinicalWorks, as a whole, we relied on or worked with, rather, not relied on.  We worked with our ONC-appointed ATL, authorized testing lab, as -- to help us understand the certification requirements.

MS. CROSS:  I move to strike the entire answer as nonresponsive.

Page 27

Page 28

you don't have a specific recollection as you sit here now about when that settlement occurred, assume for the purpose of my question -- and we'll some documents in a few minutes -- that that settlement occurred in approximately May, 2017.

Does that timeline sound about right to you?

A.    Yes.

Q.    May, 2017.  Now, the False Claims Act case we're talking about, do you recall Delaney as being the name of the case?

A.    Yeah.  You can refer to it as Delaney.

Q.    Okay.  So if we talk about the Delaney case, we're both talking about the same thing?

A.    Uh-huh.

Q.    Do you recall that the Delaney case settled on or about May, 2017 and that that case involved allegations about a version of the ECW software, I think it was Version 10?

MR. ROTH:  Objection to form and foundation.

A.    Yeah.  So I -- like I said earlier, I wasn't involved with the settlement.  I'm not a

Page 29

lawyer.  And I only started working at the company just that summer of the -- the Delaney case settlement time frame.  So I just know what's on that press release.

BY MS. CROSS:

Q.  Okay.  Sure.

So in May, 2017 when that press release came out and you became aware of the settlement and the corporate integrity agreement, as we've talked about, it began to go into effect --

A.  Uh-huh.

Q.  -- you were overseeing the certification of a new version of ECW software.  That was Version 11; is that right?

A.  So it wasn't Version 11 yet.  I was overseeing the -- the process of making improvements to the software to meet the requirements for that certification edition.

Q.  Sure.  And that -- that's a good clarification.  Thank you.

What became Version 11 was what you were overseeing in the, say -- let's say spring, summer, fall of 2017?

MR. ROTH:  Object to form.

Page 30

A.    Yeah, and other years too, so...

BY MS. CROSS:

Q.    Other years, too, prior to?

A.    Like 26 -- like when I started as a product analyst in 2016 through to when we achieved the certification.

Q.    All right.  Now, understanding you're not a lawyer and you didn't participate in the litigation that we're referring to as the Delaney case, you are aware, however, generally, about the allegations that were made in that complaint; is that right?

A.    I -- I only really know what they put in the press release, the couple of things that they put in the press release.

Q.    That's all you knew?

A.    Yeah.

Q.    That's all you knew at the time?

A.    Yeah.

Q.    I'm going to show you -- I'm going to put this in front of you.  And I'm sorry there is not a more graceful way to do that.

That's what has been previously marked and referred to as Plaintiffs' Exhibit No. -- I

Page 31

believe it's on the document there.  It's --

A.   You have 195 on mine.

Q.   195.  Thank you.

(Exhibit No. 195 previously marked for identification.)

BY MS. CROSS:

Q.   I want you to take a look, please, at the first tab.  It's going to be on page 8, and it's Paragraph 35.  It's highlighted there.

Do you see it?

A.   Yes.

Q.   And Paragraph 35 of Exhibit 135 [sic], the Delaney complaint, says that "Certification testing does not confirm that each criteria and standard is satisfied in full and under every conceivable scenario.  Rather, testing takes a snapshot of a product's capabilities by ensuring it can pass certain predisclosed test cases."

Do you see that?

A.   That's what this document says.

Q.   And were you aware as you were overseeing this certification of what became Version 11 that

Page 32

the software passing the certification tests, that's not the same as it meeting all of the certification criteria?

MR. ROTH:  Objection.  Form.

BY MS. CROSS:

Q.  Were you aware of that?

MR. ROTH:  Calls for a legal conclusion, too.

A.  Well, I don't -- like I said, I have no idea about this document.  This is the first time I've ever seen this.  So I can just speak to that that's what this states on this page.

BY MS. CROSS:

Q.  Well, I'm interested in your understanding as you were overseeing the process of getting the certification for what became Version 11.

You understood, as you were overseeing the process of getting the certification for Version 11, that the software passing the certification tests, that's not enough, correct?

MR. ROTH:  Object to form.

A.  So software vendors who are aiming to certify their health IT product undergo a testing

Page 33

process with their ONC-certified ATL, authorized testing lab, like I mentioned earlier, and they conduct testing events in which they observe the software themselves. And the certification body in that testing lab capacity gives certifications. So they approve and determine ultimately if a software is certified.

So I'm not sure I understand what you're asking.

BY MS. CROSS:

Q.   What became Version 11, that wasn't dependent on testing entirely? There was an attestation element to it as well; is that correct?

MR. ROTH:  Objection to form.

A.   Most -- most all certifications require some element of attestation, especially nowadays.

BY MS. CROSS:

Q.   Sure. And the attestation that we're talking about is, in this case, ECW saying that, we -- the company, ECW, we have developed a software. We have tested it, and we are telling you, the government, that it meets all of the criteria that we're saying it meets; is that

Page 34

correct?

MR. ROTH:  Objection to form. Foundation.

BY MS. CROSS:

Q.   You can answer.

A.   So that process, which I'm assuming you've referring to as the gap process.

Q.   I am.  And do you know off the top of my head for the court reporter what the gap acronym stands for?

A.   I don't know if it's an acronym.  I think they just call it gap.  At least, that's how I've only ever known it as.

Q.   Okay.

A.   But I can always look it up after.

Now I lost my train of thought.  Sorry. Can you ask me the question again.

Q.   I had asked you about the attestation elements?

A.   Uh-huh.

Q.   -- that an -- ECW in this case, or any software vendor that was seeking certification from the government, attests to the government that it has produced the software, developed it,

Page 35

tested it, and that it meets the certification criteria.

Is that what an attestation is?

MR. ROTH:  Object to form and foundation.

A.   So a gap attestation is when a certified health IT product is certified already on some edition of the criteria and that vendor, that software vendor, is aiming to certify -- so their goal is to certify on the next edition.  They actually don't call them editions anymore, but for this purpose, I'll just say edition.

They aim to certify on the next edition. And they submit a document that says, Our certified product was certified on this, this, this, this criteria, and we believe fundamentally that the function and the way the software works is the same, and we believe it still meets the certification requirements.  Here you go, certification body.  Let me know if you need a live test.

So we submit that documentation to, again, the ONC-approved certified testing lab in this case because, again, we're operating with

Page 36

Drummond Group as a testing lab, and we tell them, Here's what we'd like to file gap for.  And it's ultimately up to them whether they approve that gap.  They say, Yes, you can carry over your certification from your previous edition, or they say, No, we don't agree with you.  We'd like to do a live testing event.

So it's ultimately up to their -- their decision on whether or not the product receives those certifications.

BY MS. CROSS:

Q.    Ms. Madhusudhan, as you -- as the person overseeing the certification of what became Version 11 of ECW's software, were you under the impression that passing the testing alone was sufficient to satisfy the certification criteria?

MR. ROTH:  Object to form.

A.    What do you mean "alone"?

BY MS. CROSS:

Q.    Without anything else.  Simply passing the testing scripts that Drummond or another accreditation body did, is passing the test alone sufficient for a product to be certified?

Page 38

Page 39

Page 40

Jordan A. Madhusudhan                        September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 42

know at that point, when I approached him for it, we -- he had his own firm.  So I don't know if it was, like, right after he left Drummond Group or not.

(Exhibit No. 330 marked for identification.)

BY MS. CROSS:

Q.   Okay.  Well, I'm going to hand you what I've just marked as Plaintiffs' Exhibit No. 330. Take a look at that.

A.   What do I do with this?

Q.   You can just put it right to the side.

A.   Okay.

Q.   I want you to take a look at that for me and see Exhibit 330.  That appears to me to be an email from you, Jordan, with your previous name, Stagg-Parmenter, to Kyle Meadors, and it's dated April 28, 2017.

Do you see that there at the top?

A.   Yes.

Q.   If you want to -- this is an exhibit that's about five pages.  If you want to, take a

Page 43

moment and review it.  It looks to me as though you and Mr. Meadors are talking about his coming on to ECW in a consultant role.

A.   (Witness reviews document.)

Oh, I think he was already a consultant at this point.

Q.   Okay.  So before -- sometime before April, 2017, Mr. Meadors began working with you all?

A.   Well before, yeah.  So this is when -- I think, if I can remember correctly, we were thinking of -- yeah.  Okay.  So on this page that ends in 48, we were thinking about creating an inpatient software product.  So that's what this email is talking about.  I had asked him if he could, like -- because I wasn't sure if the contract only applied for ambulatory products or if it also applied for inpatient products.  So that's why I'm talking about, like, combining of the products, I think.

Q.   Well, the specific consultation role -- you only dealt with compliance, correct?

MR. ROTH:  Object to the form.

A.   That's such a vague question.  I don't know what you mean by that.

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 44

BY MS. CROSS:

Q.    If you would turn to page 4 of the document there in front of you, Exhibit 330, the first email in this chain is from Mr. Meadors, Kyle Meadors, to you on Tuesday, March 28.

A.    Yes.

Q.    Do you see that?

A.    Yeah, I see that.

Q.    Okay.  And Mr. Meadors says, "Hi, Jordan.  Good talking with you today."

That suggests that you and Mr. Meadors had a conversation on or about March 28, 2017?

A.    Yeah.

Q.    And he has attached a consultation agreement?

A.    Correct.

Q.    So is that a scope of work?

A.    Yes.

Q.    For the 2015 edition; is that right?

A.    Yes.

Q.    So the exact date doesn't so much matter, but looks like in March and April, 2017, you and Mr. Meadors are talking about the scope of work from Mr. Meadors' consultations with ECW; is that

Page 45

right?

A.    Yes, but I -- I don't think this is the original -- the original one.  I think we had him -- I think we were working with him well before this.

Q.    Perhaps there was additional work that was done prior to, but at least by April, 2017, Mr. Meadors is working with you all; is that correct?

A.    Certainly, yeah.

Q.    And do you -- I think you said you don't recall having a conversation with Mr. Meadors.  I'm going to show you what has been already marked as Plaintiffs' Exhibit No. 300.  That's an excerpt from Mr. Meadors' deposition.

(Exhibit No. 300 previously marked for identification.)

BY MS. CROSS:

Q.    I want you to assume for the purposes of my question -- you can review the document.  It begins with the tab on page -- internal page 87 -- that Mr. Meadors recounts a conversation with

Page 46

you related to the Delaney case.

Do you recall Mr. Meadors expressing any concern to you about the allegations in the Delaney case and the -- his being associated with ECW as a result of those allegations?

MR. ROTH:  Object to form.

A.    I don't think he ever would have said that.

BY MS. CROSS:

Q.    Well, he testified under oath that he did say that --

MR. ROTH:  Object to form.

BY MS. CROSS:

Q.    -- Ms. Madhusudhan.

MR. ROTH:  Object to form and foundation.

BY MS. CROSS:

Q.    Take a look at that, and that -- perhaps that's a conversation that you don't recollect.

But are you suggesting that the conversation didn't happen?

MR. ROTH:  Object to form. Foundation.

BY MS. CROSS:

Page 47

Q.   And so the record's clear, let me read in the part that I'm referring to.

Again, this is Exhibit 300.  This is the sworn testimony of Mr. Kyle Meadows [sic] -- I'm sorry -- Meadors in relation to this case.  The deposition was August 22, 2024.

And Mr. Meadors -- going back, then, to page 86, line 12, the question to Mr. Meadors was "So you learned about the Delaney settlement just a few weeks after you had signed a contract with eClinicalWorks to help them in obtaining certification of Version 11 of their software, correct?"

Do you see that?

A.   That's what this says, yeah.

Q.   And Mr. Meadors' answer was "correct."

Do you see that?

A.   That's what he wrote -- or I guess said.

Q.   That's the sworn deposition testimony that you're --

A.   Yeah.

Q.   -- looking at?

A.   Sorry.  I meant wrote like -- I thought it was a document.

Page 48

Q.   And for the court reporter, so she has an easier time taking down, try not to talk over each other.

A.   Sorry.  I am sorry.

Q.   No, that's all right.  I understand. I'll try to wait for you to finish your answer, and if you can, try to wait for me to finish my question.  All right.  Thank you.

All right.  And then the next question to Mr. Meador [sic] was "Did learning that eClinicalWorks had misled Drummond Group during its testing and prior certification attempts for Version 10 give you any pause about working with the company as a consultant?"

Do you see that question?

A.   That -- that's what this says, yes.

Q.   All right.  And if you turn to the next page, page 87, the question continues.  "And were you concerned that they might not be truthful with you during this process?"

Do you see that question?

A.   That -- yes, that's what this says.

Q.   I read it correctly?

A.   Yes.

Page 49

Q.   All right.  And Mr. Meadors' answer was "I was going to be wise to the past and what they had.  I did talk with them.  They actually reached out after the settlement was announced and called.  And I think they were wanting to see how their current contractors felt, and they wanted to continue on.  And Jordan Stagg-Parmenter" -- that's you, correct?

A.   Yes, that's me.

Q.   I think -- it identifies you as "he" there instead of "she" -- that "He signed the contract" -- again, should be "she," but it says "he" since has to be the last name -- "was the one who called me, and we just kind of talked it through.  I felt at that point it was still a company I wanted to go ahead and work with despite the mistakes that they had made in the past.  And I felt I could still contribute from my part to helping them understand the 2015 edition rules."

Do you see all that?

A.   Yes, that's what it says.

Q.   I read that correctly?

A.   Yes.

Page 50

Q.   Do you know that -- does that refresh your recollection that you did have a conversation with Mr. Meadors?

A.   Yeah.  I mean, earlier I said -- I said I had lots of conversations.  I wasn't sure which one you were talking about.

Q.   Oh, so when I said -- when I asked you if you ever had a conversation with Mr. Meadors where he expressed concern about working with ECW in light of the allegations in the Delaney case, you weren't understanding that I was talking about this conversation?

MR. ROTH:  Object to form.

A.   I didn't remember this at all --

BY MS. CROSS:

Q.   Okay.

A.   -- until just now.

Q.   All right.  That's fine.

The next question then -- still at the bottom of page 87.  The next question then to Mr. Meadors was "What did Jordan tell you that made you more comfortable about working with the company?"

Do you see that?

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 51

A.    Yes.

Q.    And do you see the answer from Mr. Meadors was "One, I think she just acknowledged that it was wrong.  I mean, she was not trying to excuse anything.  That was just, you know, they shouldn't have done that."

Do you recall telling Mr. Meadors you acknowledged that ECW had done wrong in the allegations that were raised in the Delaney case and that ECW shouldn't have done that?

MR. ROTH:  Object to form.

A.    I think -- so what --

BY MS. CROSS:

Q.    If you could, answer the question.  Do you recall having that conversation, and then explain as you need to.

MR. ROTH:  Object to form.

Answer however you need to.

A.    So what I remember from my conversation with Kyle is that I knew the settlement had come out and he had -- and I wanted to give him any opportunity to determine if he wanted to continue with the contract with us or not.  And it's his prerogative on how he feels about that because

Page 52

obviously with the settlement like that comes

heightened scrutiny.  And I just wanted to ensure

that he was still comfortable moving forward.

BY MS. CROSS:

     Q.   And as part of ensuring that Mr. Meadors

was still comfortable moving forward, did you

tell him or did you acknowledge the ECW's

behavior was wrong?

                    MR. ROTH:  Object to form.

     A.   I don't think I ever would have said that.

But I think -- I don't remember the conversation

word for word.  But I know myself and I would

have told him, Hey, out in the open, there was a

settlement.  You can let us know if you want to

continue or not with this -- this obligation or

this contract.  Because it's ultimately up to him

on whether or not he wants to stay on as a

consultant with us.

BY MS. CROSS:

     Q.   It sounds from the exchange as Mr. Meadors

recalls it that you reached out to him about this

matter to reassure him, as you said, if you

could, given the public settlement news; is that

right?

Page 53

A.    Yes, I reached out to him to have a conversation.

Q.    What other vendors outside of ECW did you reach out to to have similar conversations?

A.    My guess is the other consultants that we had.

Q.    All right.  And you appropriated them in the same manner that you recollect approaching Mr. Meadors, that you understand there might be some -- my word, not the word you used -- but some taint or some negative association given allegations in the settlement?

MR. ROTH:  Object to form.

A.    I don't know if I emailed them or not like I did Kyle.  I honestly can't remember.

BY MS. CROSS:

Q.    Was there an email to Mr. Meadors?

A.    I'm guessing because I asked for a call.

Q.    You understood the exchange in the emails that we had -- we've marked as 330 that to be you were requesting a call about the settlement matter?

A.    Yeah, didn't -- it says, "They actually reached out after the settlement was announced."

Page 54

Q.   Oh, I'm sorry you were referring to this?

A.   Yeah.

Q.   Not the prior email?

A.   Yeah.

Q.   So you reached out.

So what other consultants did you reach out to in a similar capacity?

A.   I just said I don't remember.

Q.   Who else was ECW consulting with at that time that you were -- would have been the primary point of contact or that it would have made sense for you to be the one to reach out to those vendors?

A.   So the specific time period, I honestly can't remember.  But I know we had four other consultants at the time, so -- but I -- I can't remember when we contracted with them in relation to this specific date.

Q.   Fair enough.  Okay.  Fair enough.  So it could have been as many as four other people --

A.   Yeah.

Q.   -- that you reached out to?

A.   Yeah.

Page 55

Q.    All right.  And had similar conversations that you had with Mr. Meadors?

A.    Most definitely, yeah.

Q.    And you and Mr. Meadors, it appears now you recall the substance of conversation a little different, but your intent was to reassure him, wasn't it, that ECW was still a company that he wanted to be associated with?

A.    My intent was to let him know that he should have no obligation to move forward with being a consultant for us, that it's entirely up to him.

Q.    Well, sure, because it would have made a lot of sense for somebody who was a consultant trying to build a business, as Mr. Meadors was at that time, to not want to be associated at all with ECW given the allegations in the settlement, correct?

            MR. ROTH:  Object to form.

BY MS. CROSS:

Q.    The allegations were that you all cheated on that test, correct?

            MR. ROTH:  Object to form.

A.    I actually think it would be the opposite.

Page 56

I think he -- it would -- it would have been a wonderful opportunity for him to guide us through and say, "Look, I helped eClinicalWorks with my support.  I helped eClinicalWorks get to the other side of this 2015 edition certification."

BY MS. CROSS:

Q.   And if you're trying to get to the other side where -- you started out pretty low, right? Because the allegations of cheating are very serious, aren't they?

MR. ROTH:  Object to form.

BY MS. CROSS:

Q.   You considered them very serious, don't you?

MR. ROTH:  Object to form.

A.   I -- I know myself.  I know my work product.  I know my ability to conduct myself in a manner that is very honorable.  And I know that at that time I was focused on the 15 edition and moving forward.  We had a corporate integrity in place -- corporate integrity agreement in place. And I feel like we knew we were going to do an amazing job certifying the product.

BY MS. CROSS:

Page 57

Q.   I'm going to refer you back to Mr. Meadors' deposition.  That's Exhibit 300 that you still have there in front of you.

And the following paragraph, the paragraph we haven't read yet in the middle of the page -- and it begins on line 11 with "and -- " Mr. Meadors is continuing to respond to the question, and he says, "And but she" -- and we're understanding that "she" is you, still recounting the conversation that he recalled having with you, "kind of communicated to me, and I felt good that that was not -- wasn't going to be her approach, that she was running this and not going to be her -- her attitude that they were going to take compliance very seriously, so I felt like it was a good company worth working with."

A.   Sorry.  I was on the wrong page.

Q.   That's okay.

A.   Were you in the one --

Q.   I'm on 88.

A.   Okay.  Sorry.

Q.   That's okay.

Going to read it again so you can confirm for me that I'm reading it --

Page 58

A.    Thank you.

Q.    That's all right.  I'll start on line 11, and this is Mr. Meadors responding, "And but she" -- meaning you -- "kind of communicated to me, and I felt good that that was not -- wasn't going to be her approach, that she was running this and not going to be her -- her attitude that they were going to take compliance very seriously.  So I felt like it was a company worth working with."

Do you see that?

A.    Yeah, that's what this says.

Q.    Okay.  And then finally if you turn to the next page, this is an excerpt from Mr. Meadors' deposition, so this takes -- that's on page 188 and line 20.

I'm going to start reading there, and if you can follow along and let me know that I read it correctly or correct me if I don't.  The question to Mr. Meadors was "And you just told Mr. Katz that during that conversation she" -- meaning you -- "admitted that the company had hard-coded those RxNorm codes, correct?"

And Mr. Meadors' answer is "Uh-huh."

Next question, "And there wasn't any --

Page 59

she didn't say we didn't do that."

Next page, "She admitted that that had happened, correct?"

Mr. Meadors' answer is "Yes."

Do you see that?

A.    That's what he -- that's what this says.

Q.    That's what Mr. Meadors recalled of your conversation?

MR. ROTH:  Object to the form, and foundation.

A.    That's what he said in his deposition.

BY MS. CROSS:

Q.    Okay.  And the next line beginning on line 4, the question is "She might have taken some issue with some of the other allegations in Delaney, but that kind of core allegation that they had hard-coded these RxNorm codes she just fully said, 'Yes, that's what we did,' correct?"

His answer was "That's correct, yeah."

Do you see that?

A.    That's -- that's what he said, yeah.

Q.    Do you know that Mr. Meadors is a paid consultant, testifying expert for ECW in this current litigation?

Page 63

Page 64

CONFIDENTIAL

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 66

A.    Sorry.  Your question was how many people were working on certification compliance before this team came about?

Q.    Correct.

A.    I honestly can't remember because I don't remember when the team was formally created.

I guess it would be within -- actually, I don't even know.  So we -- well, I can say, we had four -- or no.  Three -- no.  Maybe more than that actually.

So three product analysts who worked on the ONC criteria, but then we also had a whole team of product team members who worked on the measures.  So that would be, like, the Cs, those criteria.

Q.    I want to talk about the Cs just for the benefit of the jury or somebody who's not maybe as well versed as folks around this table are in the certification criteria.

They're often referred to by letters and subsection of the statutory code, correct?

A.    Yes, yes.  Sorry.

Q.    Okay.  So when we talk about D criteria or C criteria, what we're talking about is the

Page 67

requirements of that particular subsection of the requirements, the certification requirements, correct?

A.   Yes.

Q.   Okay.  All right.  So you're not sure how many people were kind of informally involved before the team commenced?

A.   Uh-huh.

Q.   Once the team was put together, how many folks do you have then?

A.   Oh, I also don't know.

Q.   Don't know that either?  Okay.

A.   Yeah.  I would say, like, five to ten, if I can recall.

Q.    All right.  Part of your job was communicating with the software quality oversight organization, the SQOO, correct?

A.   Yes.

Q.    And were you the primary point of contact for the certification compliance team with the SQOO?

A.    Not always.  It was more so like recommendation based.  So if there was a recommendation that I was working on, I would

Page 68

talk to them in that capacity.

Q.   All right.  And how about -- you referenced a couple of times Drummond Group as being the outside testing organization that the government had assigned to ECW to perform whatever outside testing was required for the certification; is that right?

A.   So the government didn't assign Drummond Group.

Q.   I'm sorry.

A.   Yeah.

Q.   Approved of the use of Drummond Group.

A.   So the ONC -- so Drummond Group gets certified by the ONC to operate as a testing lab or a certification body, and then we hired Drummond Group to be our testing lab and certification body.

Q.   Who would you as a -- not the sole, but a point of contact, if you became aware of a potential certification issue at ECW, some vulnerability in the software that came to your attention, would it be your job to communicate that to the SQOO?

A.   I don't think so.  So we -- we have a

CONFIDENTIAL

Jordan A. Madhusudhan
September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 69

Page 70

MR. ROTH:  I'm going to object and say, to the extent that she did or didn't, it's a privileged work product communication and instruct her not to answer.

Q.   I haven't seen any documents that would suggest that you ever reached out to the ONC with a reportable event despite asking for any documents in that category.

Are you aware of any?

A.   From me?

Q.   Yes.

A.   I don't know because we had the whole regulatory compliance team, so they would do the communication for reportable events.

Q.   That wouldn't be you?

A.   Not unless it was, like, something that I got involved in for testing or talking about with Drummond Group, but typically, like, the whole reportable event function wouldn't be me.

Q.   Who would it be?

A.   The regulatory compliance team.

Q.   Okay.  Not the certification compliance team?

A.   Sorry.  I'm using those terms

Page 71

interchangeably.  They're the same thing.

Q.    Weren't you on that team?  You're on the certification compliance team, right?

MR. ROTH:  Object to form.

A.    I'm on the certification compliance committee.

Q.    Committee, not the team?

A.    Yes.

Q.    I see.

A.    Which is why they switched the name because people were getting the two confused.

So the EHR regulatory compliance team is a department within the organization, and as a part of -- there's members of that department.  I know it's, like, a little confusing.

There's members of the department and also members of other departments such as mine, like product management.  We all are comprised of the certification compliance committee.

Q.    Okay.

A.    So hopefully that helps.

Q.    Okay.  So as you sit here now, you don't ever recall that you personally reported an event that could affect certification of the Version 11

Page 72

software to ONC?

MR. ROTH:  Object to form.

A.  I don't think I ever would have honestly. That would have been something I would have done.

BY MS. CROSS:

Q.  Okay.  What about OIG?  Did you ever communicate a reportable event to OIG because it came across your desk or otherwise you became aware of it?

A.  Honestly, I don't -- I don't know.  I don't think so.

Q.  Have you seen any documents that you did? Are you aware of any documents that would corroborate that you ever made such a report to OIG?

MR. ROTH:  Object to form.

A.  I honestly -- I honestly don't think so. That -- because that whole function was the regulatory compliance team.  They had their whole Priority 1 process that they would go through.

Q.  Okay.  And given your point of contact for some limited matters with the SQOO, did you ever report a potential compliance issue to the SQOO?

CONFIDENTIAL  Jordan A. Madhusudhan  September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 74

Page 75

event.

So whether or not it actually was an issue with certification, if we felt that it just generally related to certification, we would report them.  And when I say "we," I don't literally mean me.  I mean eClinicalWorks as a whole.

Q.    Who was responsible for doing that?

A.    The certification -- well, there's different types of reportable events.  I'm talking about the certification ones.  That would have been the EHR certification compliance team or EHR regulatory compliance team.

Q.    And was there a person during the time that you were overseeing the certification of Version 11 and then until you left the position, that position, in, what, 2020?

Who was the person on that team, the compliance team, that would be responsible for reporting those events?

A.    I think it varied.  It could have been a number of people honestly.

Q.    All right.  Is -- is access control vulnerabilities -- do you understand what I'm

CONFIDENTIAL                    Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 76

Page 77

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

Page 80

Page 81

MR. ROTH:  Object to form.

A.   No, but I -- I'd have to look into that issue and see.

BY MS. CROSS:

Q.   Nobody -- as you sit here now, you don't recall anybody ever bringing that to your attention?

A.   No, not that I -- again, not that I know of.  However, we have an entire HR regulatory compliance team whose function is that, reportable events, so it's entirely possible that it wouldn't have come to me.

Q.   Okay.  That's fair.

If it had come to you, is that an issue that you think would affect or potentially affect certification?

MR. ROTH:  Objection to form. Foundation.

A.   So -- sorry.  I keep talking over him. I'm so sorry.

So what I always do anytime anyone ever brings a concern to me or wants to say Hey, what does -- does this have to do with certification or anything like that? I always

Page 82

want to see the issue replicated.

So I would watch, you know, if it's the developer, if it's a customer, if it's a support tech, whoever.  We would go through, observe the issue together.  We would look at the certification criteria text, you know, almost side by side, look at the regulation text within that criterion, and we would mirror the two and say, Okay.  In this step where the bug occurs, does it apply to this criterion in this one sentence or this or this?

And then if we felt we weren't sure, then we would look at -- the ONC kind of has, like, I'm going to informally call it their FAQs.  At the bottom of their website for each of the criteria, they have, like, frequently asked questions and answers that they get, and they publish them on their website.

So we'd, like, look at that.  We'd say, Okay.  Does this bug or this issue apply to any of those?  And if we were still unsure, then we would go to someone like Kyle Meadors.  We'd ask him, and then if we were, like, totally unsure, we would ask Drummond Group.

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 84

process, during that time, if you and colleagues were informally talking about an allegation that someone had brought to you that could impact certification, how would you all document that first conversation?

A.    I don't know if we would necessarily have documented it.  I mean, if someone sent me a message and said, Hey, can you take a look at this? then I would -- we would obviously have that in writing.  But if it was a conversation where I walked to the developer's desk, I wouldn't, like, come back to my desk and write down everything that we said.

Q.    So if you and the developer talked over an issue and you thought, Well, you know what?  No, I don't really think this is certification.  I -- I think this doesn't impact our certification, so I'm not going to bubble it up, that wouldn't be documented in any way?

MR. ROTH:  Object to form.

A.    It really just depends.  I -- I didn't have a specific policy document that said I had to write it out this way after this conversation or anything like that.

Page 86

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 87

inexperienced for the role?

A.    I don't think so.

Q.    And in March, 2018, you had been overseeing the certification process for not quite two years?

A.    Depending on the date, yeah, two years roughly.  Is this 2018?  Is that what it said?  Okay.

MS. CROSS:  We've been going about an hour, and I maybe have 20 minutes to finish up.  So why don't we take a five-, ten-minute break then come back.

MR. ROTH:  Sure.

THE WITNESS:  Whatever works for you.

MS. CROSS:  Let's do that.

THE VIDEOGRAPHER:  The time is 4:03.  We're off the record.

(Recess taken from 4:03 p.m. to 4:15 p.m.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 4:15.

Jordan A. Madhusudhan                                September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 88

BY MS. CROSS:

Q.   All right.  Miss Madhusudhan -- say it again for me.

A.   Madhusudhan.

Q.   Madhusudhan.

A.   I know.  I'm sorry.

Q.   No, don't apologize.

A.   It's a hard one.

Q.   I apologize.

All right.  So we took a few minutes' break.  Is there anything about any of your testimony so far today that you want to revise or change now that we're back?

A.   No.

Q.   All right.  Then let me direct your attention -- we talked a little bit about the attestation process for gap certification for the Version 11 that you were overseeing in 2017, correct?

MR. ROTH:  Object to form.

A.   Sorry.  That was a long question.

BY MS. CROSS:

Q.   It was.  It wasn't a very good one either.

A.   Sorry.

Page 89

Q.   It wasn't a very good one.

Do you remember the questions and answers about the attestation, moving to an attestation for certification requirements as opposed to strictly testing?

A.   Yes, there are some criteria which require attestations.

Q.   Right.  And those were criteria that were in place in December, I think, 2017, when the Version 11 was certified, correct?

A.   What do you mean by "criteria in place."

Q.   Previous versions prior to the Version 11 software --

A.   Uh-huh.

Q.   -- prior versions did not always include an attestation component to the certification process; is that correct?

MR. ROTH:  Objection to form. Foundation.

BY MS. CROSS:

Q.   Maybe that's something you don't know because you didn't participate in that.

A.   Yeah.  No, I wouldn't know because there were a few editions prior to the one that I

Page 90

worked on.

Q.   Okay.  All right.  You would agree with me, I think, that the testing that ECW did was extremely minimal; is that correct?

MR. ROTH:  Object to form.

A.   What -- what do you mean by "testing"?

BY MS. CROSS:

Q.   I mean like testing of the security of the Version 11 software, the testing.  You told me about Drummond is the outside testing group.

A.   Yeah.

Q.   You told me about some testing that was attested to based on previous editions.

Do you recall that testimony?

A.   So if I -- if I think I'm understanding your question correctly, there are a variety of testing that we can undergo.  We have the actual testing event.  So, like, the -- we didn't do them in person.  We did them on the computer.  So we would log on to a meeting.  And Drummond Group would be on that meeting, and we would share our screen and go through and test all the various criteria with them.  So that's one testing.

That's also, like, our, like, preparation

Page 91

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 92

Page 95

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

Page 96

Page 97

Page 99

Page 102

CONFIDENTIAL

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 106

that I'm involved in, but then there's testing that I'm not involved in.  So I just want to make sure.

BY MS. CROSS:

Q.    All of my questions are directed toward the testing that you were involved in.  I appreciate the clarification.

A.    Okay.

Q.    So we're clear.

A.    Okay.  So -- so the testing events that we would have done with Drummond Group?

Q.    Yeah.

A.    Okay.  Yeah.  I mean, we did exactly what was prescribed and outlined by the ONC's, you know, certification companion guide, their final rule text.  We followed the Drummond Group proctor sheets.  I mean, the testing that we did was sufficient for Drummond Group to have given us the certification, so...

Q.    And Drummond Group was the outside body that certified the version of software that was at issue in the Delaney case, correct?

MR. ROTH:  Objection.  Foundation.

BY MS. CROSS:

Page 107

Q.    That was Mr. Meadors, right?  I mean, you got Kyle Meadors --

A.    But I don't know -- there was another certification body before Drummond Group, so I don't know if --

Q.    That's fine.

A.    -- timelinewise.  I know at some point that old certification body, like, they weren't operating as a business anymore.  I don't know why.  But then obviously we had to look for a new certification body.  When I say "we," I mean eClinicalWorks because I wasn't employed at that point.  But that's when they took -- at least not that I know of.  That's when they got Drummond Group as a certification body.

Q.    I see.  Did you find that ECW leadership was interested in doing compliance -- certification compliance?

A.    Interested in it?

Q.    Yes.  Were they interested in it?  Were they invested in doing it correctly?  Did you feel supported by the leadership in adhering to high standards of certification compliance?

A.    Oh, for sure.  They were -- I mean, if you

Page 109

CONFIDENTIAL

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

Page 110

Jordan A. Madhusudhan    September 3, 2025
United States of America, et al. v. eClinicalWorks

CONFIDENTIAL

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 112

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 113

weeks.

When -- when did you provide that document to -- when did you find it?

A.    I want to say sometime the beginning of this year.

Q.    And how was it that you came across -- it was represented that it was a photograph that was on your phone.  Is that --

A.    Yes.

Q.    -- is that right?

A.    Yeah.

Q.    Your personal phone?

A.    Yes.

Q.    And the -- why don't you describe for me what's the photograph of?

A.    Yeah.  So we had this, like, massive white board -- like, literally massive.  It was, like, taller than me.  And at -- my desk at my office -- like, back then -- I've moved desks -- but there was, like, this giant curved wall right when you first walk into the, like, R&D wing of the building.

And so we took this flat white board and put it on that curved wall because it's kind of,

Page 114

like, you can only come in and out through, like, that one area.  And I used it to kind of like track the overall progress of certification because it was, like, a year -- multiyearlong process.

Q.   You're talking about tracking the multiyearslong process of certification on a white board.

Was there any memorialization of the white board?  Did you take a photograph of it at the end of each day?

A.   Oh, no, no, no, no, no.

Q.   Was somebody responsible for noting the progress of the certification process as it was reflected on the white board?

A.   So the white board wasn't like the source of truth.  The white board was a redundant piece of data for those who may not be, like, intimately involved in the process.  So anything that was written on that white board would have lived elsewhere.

Q.   Where?

A.   SharePoints --

Q.   Internal communication, internal to ECW --

Page 115

MR. ROTH:  Object to form.  She was answering the question.  You've done this about 20 times.  She said "SharePoints" and then paused.  Can she finish her answer first, if you don't mind.

BY MS. CROSS:

Q.   I certainly want you to fully answer the question.  Go ahead.

A.   Sorry.  So, like, what data -- where did data live outside of the white board, is that what you're asking?

Q.   That's what I'm asking.

A.   Sorry.  So I talked about JIRA earlier, so, like, that bug-tracking software.  We used that for enhancements too. But it's just, like, informally known as a bug-tracking software.  So there were JIRAs for every single criteria.  So that was, like, the source of truth for development.

We also had -- anytime we had a testing event with Drummond Group, we called them WAVs. I don't know if WAV is an acronym or not.  That's what they called them.  We would get these reports at the end of the WAV, and it would tell

Page 116

us, like, if we passed.  And then, if we did pass, what other material might be required to achieve the certification.

So, like -- information like that would either be, like, JIRA or those documents from Drummond Group.  But I would always put those on our SharePoint.  So SharePoint's like our cloud, I guess, document repository.

I'm trying to think of what else.  I think that's, like, the big -- the big three where that information would have lived normally.  So I just, like -- you know, there's people walking by every day.  I wanted them to know how their progress is going.  So whenever we finished a WAV, I would have written down what WAV we did, what the date of it, what the outcome of those criteria was.

And so that's -- that's the function, I guess, of that white board.

Q.   And the photograph that you -- would you routinely take photographs of the white board?

A.   No.

Q.   What was it about this particular occasion?  Because I got one photograph of the

Page 117

white board.

A.    Yeah.

Q.    What was it about this particular occasion that caused you to take a photograph of it?

A.    So I honestly don't remember why I did. My best guess, though, based on, like, the date and time, I think we were getting it taken down. Because, again, it was like a giant white board on this curved wall, so it was very awkward.  So I think I took a picture because I was getting it taken down is my best guess.

Q.    Okay.  And were you asked for any documentation about the testing of Version 11 at any time prior to discovering this photograph on your phone?

A.    Oh, yeah.  I mean, you guys have literally everything I ever wrote known to mankind, I think.  There's, like, this giant box of all my stuff.

Q.    Oh, that's interesting.  I don't think I have a giant box that -- okay.

A.    I'm being a little dramatic.

Q.    I know.  I am, too.

A.    I'm sorry.

Page 118

Q.   So you were asked for documentation.  You gathered documentation.  And is this just something that you found later?

A.   Yeah.  I honestly didn't find it until -- it was like the most ridiculous story, but I have a three-year-old daughter who eats up, like, all the storage on my phone.  So I was, as usual, like going through, deleting pictures on my phone of, like, complete nonsense.

And Apple had recently -- they, like, made this new change in their photos app where if you, like, scroll down a little bit, there's all those utilities.  And one of them is called "Handwritten."  And so I, as usual, going through deleting random stuff that I don't need anymore, I clicked on that, and I -- it, like, appeared in front of me.  I was like, Oh, I didn't even know I had this.  So it was totally random.

Q.   You didn't find any more?  Just the single photograph?

A.   No, that was just the one.

Q.   Understood.

On the board, as you've described it, there were references to criteria and then

Page 119

pass?

A.   Uh-huh.

Q.   And where else was the information about a criterion passing?  Where else was that kept?

A.   So it depends on the time.  So it would have lived -- Drummond Group would have emailed us that report.  It would have said "pass" in that report.  It was usually like a PDF, but if it was already after we were certified, it would have been on that -- the Certified Health IT Product List website.  We called it the CHPL, C-H-P-L, the ONC website.  So we would have -- like, anyone that we passed for certification would have been on there too once we were certified.

Q.   Any internal documentation kept about the status of the testing and the criteria certification?

A.   Like -- like outside of those documents?

Q.   Yes.

A.   I mean, every time I got a WAV document I would have just put it in the SharePoint.

Q.   In the SharePoint, the other SharePoint that you've already told me about?

Page 120

A.    Yeah, yeah.

Q.    Anywhere else that you can think of?

A.    I don't think so.

MS. CROSS:  All right.  I don't have any further questions for you.  Thank you.

THE WITNESS:  Thank you.

DIRECT EXAMINATION

BY MR. ROTH:

Q.    Do you need a break?

A.    I'm totally fine.  Whatever works for you guys.

Q.    Good afternoon.  Miss Cross asked you about your various roles at ECW since your college internship in 2013.

A.    (Witness nodding.)

Q.    Is there anything specific about eClinicalWorks's product or mission that has led you to stay for the past 12 years?

A.    Yeah.  I -- so I'm very passionate about healthcare.  I actually went -- long story, but I went to college for biology undergrad originally, so that's why it took me kind of a long time to finish.

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 121

But I love health software.  Actually, I, like, really, really love it.  And I love being able to interact with our users and kind of seeing that impact of the changes that we make to it day-to-day.

So things like, you know, a front office secretary, how do we kind of speed up the documentation of her -- with all her patients coming in every day or providers using the software to document their patients.

And I also like pediatrics, again, because I said I have a daughter, so I'm interested in pediatrics.  I like the fact that I can make positive improvements to the software that ultimately helped those kids and the pediatricians kind of track their kids.

So, yeah, I really -- I just genuinely like the product.

Q.   And what specifically is it about health software that you enjoy?

A.   I like the clinical aspect of it.  I -- and actually not even just the clinical.  I like the -- like I mentioned, like, the front office secretaries.

Page 122

I like -- I used to be a secretary at one point, so I can really relate to that, the use case of it, and kind of see how things would interact with them.

Q.   You were asked a series of questions about overseeing the certification process for the 2015 ONC IT certification.

Do you recall those questions?

A.   Yes.

Q.   Were you the only one involved in overseeing eClinicalWorks's certification with the ONC criteria?

A.   No, no.  We had -- I mean, there were a plethora of product analysts and even product managers.

Like I mentioned the Cs earlier, I said those clinical quality measures, we had a whole team for them.  We had software developers.  We had obviously all of our consultants that we worked on all of the certifications with.

So I wouldn't say I was, like, solely responsible for the entire certification, but I definitely was, like, emotionally invested in it because it was, like, years, years of my life

Page 123

committed to getting it done.

Q.   What parts of the certification process were within your responsibility as a member of the product management team?

A.   Yeah, so very much the software development life cycle part of it.  So reviewing -- so, like, I always like to joke that as a product analyst at the time who worked on ONC certification, instead of having, like, customer requirements, I had the government as my customer.  That was, like, always my little joke.

And so a part of that, normally you would just take a customer requirements, you'd review what they're asking for, scope it out in the software, do a gap analysis, take a look at how you have to improve the software, and test it out and ensure that what you tested or what you asked the developers to develop, you know, does it meet the definition of done, all that fun stuff.

So we would do all of that but with the lens of the regulation text.  So we would take a look at the final rule text.  I kind of mentioned a lot of this earlier, but we would take a look at the certification companion guide.  We'd take

Page 124

a look at white papers, anything like that, do our analysis, and then just rinse and repeat, like a very standard SDLC, software development life cycle.

Q.   How long were you a product analyst on the product management team?

A.   I think four years.

Q.   And were you promoted at any point?

A.   Yes, twice.

Q.   And when were those promotions, and what were your new roles?

A.   So I think after four years I became -- we call it a mentor, a product -- a product management mentor, but that's not really, like, an industry term.

And then after that, I think a year later, I was promoted to a team lead -- a team lead out in the project management team, which again, industry term, maybe not the best but akin to a manager.

Q.   And how many employees are on eClinicalWorks's product management team?

A.   Today we have close to 200.

Q.   How many were on the team in 2018?

Page 127

Does ECW have certain policies or procedures related to compliance?

A.   Yes.

Q.   Can you describe some of the compliance policies that eClinicalWorks has?

A.   Yeah.  So for certification compliance, we have -- we just refer to it as, like, the cert policies and the certified health IT product or health IT policy.

So that's, like, our big one that I interact with all day, every day.  Or -- I mean, like the work that I do is -- is outlined in that policy document.

We also have, like, the P-1 policy document.  That's another big one.

MR. ROTH:  I'm going to have the court reporter mark this document as Madhusudhan Exhibit 1.

(Exhibit No. ECW-1 marked for identification.)

BY MR. ROTH:

Q.   ECW 1.  Do you have the exhibit in front

Page 128

Page 130

Page 134

certification body know if there's been any,
like, functional changes or even if it's, like,
just like an UI change, a user interface change,
any potential issues, so bugs that may or may not
relate to certification criteria.

It's just an opportunity for us every
quarter to let our certification body know about
all of those things.

Q.   And have you had any role in submitting
quarterly attestations for eClinicalWorks?

A.   Yes.  Oh, yeah.

Q.   And when was that?

A.   I would say maybe 2016, 2017, and then
maybe again one other year.  I might have started
helping out again.

Q.   Does Drummond have any role in any
eClinicalWorks quarterly attestations?

A.   Yeah.  We send the quarterly attestations
to Drummond Group.

Q.   And what do they do with them?

A.   So my understanding is what they're
supposed to do, I guess, is -- say it's like, you
know, this many pages worth of paper, but it's
all electronic now.  They're supposed to review

it and let us know if they'd like to conduct a surveillance event with us based on any, you know, issues that we've reported for that quarter.

Q. Based on your experience, how strictly does eClinicalWorks expect you to comply with its policies and procedures related to compliance?

A. Oh, super strict. Very, very strict.

Q. Does eClinicalWorks provide compliance training to its employees?

A. Yes.

Q. How frequently?

A. Every year.

Q. And how long is each compliance training?

A. Several -- several hours. At least a whole day's worth, if not more.

Q. What topics are covered?

A. Literally everything. Overall compliance. Certification compliance is one that, like, literally everybody gets. Antikickback statutes. Even, like, HR-type stuff. We get a training on those every year.

Q. And who attends the compliance trainings?

Page 136

A.   Everybody.

Q.   Do you think they're helpful?

A.   Certainly.

MS. CROSS:   Object to relevance.

Go ahead.

BY MR. ROTH:

Q.   Why do you think they're helpful?

A.   So, I mean, obviously it's a lot of documents, a lot of words you have to read and remember.  It's helpful to just get a refresher and just make sure you're actually adhering to the policies.

Q.   You were asked earlier about a chat where you wrote, "No one wants to do compliance."

Do you remember that?

A.   Yes.

Q.   Did you suggest in any way or is it your experience that people at ECW can skip doing compliance?

A.   No, we don't have a choice.  They will find you and hunt you down and get you to attend that training.

Q.   In general, how would you describe eClinicalWorks's commitment to compliance?

Page 137

A.   Super committed, like I said, to the point where, like, it's embarrassing if you don't -- if you don't do it.  They will let your manager know.  If your manager doesn't act on it, they'll let your manager's manager know.

They take it very seriously.

Q.   Switching gears, you were asked some questions about whether testing was sufficient for certification.

Do you recall those questions?

A.   Yes.

Q.   I'd like to show you a document which I'll mark as Madhusudhan ECW Exhibit 2.


(Exhibit No. ECW-2 marked for identification.)


BY MR. ROTH:

Q.   Do you recognize what this document is on the first part of it?

A.   Yes.

Q.   And what is it?

A.   It looks like an email thread with me and Kyle Meadors from October, 2019.

Page 140

clipped to it, what does that document appear to be?

A.   Yeah.  So it looks like this is the website.

Q.   And what is HealthIT.gov?

What is that website?

A.   Yeah.  So the ONC has -- now they're called ASTPs, so I'm just going to call them ONC for this purpose.

They have a website.  I like to call it like our one-stop shop, where you can literally find everything related to the certification.

So, like, if you can see here, they have all these different things that you can look at, like criteria, the companion guide, the FAQs, links to other things like the testing tools.

It's all in that website.

Q.   Who maintains the information on that website?

A.   The ONC.

Q.   What was the ONC's guidance on the question that you and Mr. Meadors were discussing?

A.   So what this says is "Does a certified

Page 141

complete EHR or certified EHR module need to be retested and/or recertified every time it is patched or updated?"

And the answer that they have is "No.  In general, modifications such as security patches, updates to minimum standards, code sets, for example, RxNorm link" -- they had that in parentheses -- "CQM updates" -- in parentheses i.e., FAQ No. 42, Question 2 -- "in other similar improvements to the version of an EHR technology listed on the certified health or HIT products list (CHPL) may be implemented without any additional action on the EHR technology developer's part so long as the EHR technology developer does not change the EHR technology version listed on the CHPL."

Q.   Perfect.  You can set that aside.  I want to switch topics.

What is a traceability matrix?

A.   There is a traceability matrix that was a SQOO recommendation on -- to kind of take all of the certification criteria in the regulation text and map it to all the different ways you can do it in the software and then ultimately associate

Page 142

a unique test case for each of those, like, ways you can conduct functionality in that software.

MR. ROTH:  Okay.  Let's mark as Madhusudhan ECW Exhibit 3 that large document.

(Exhibit No. ECW-3 marked for identification.)

BY MR. ROTH:

Q.   And can you identify Exhibit 3, which for the record starts with Bates stamp ECW_GA1306739?

A.   Yes.  So this looks like the first tab in the traceability matrix, or this whole thing actually is a traceability matrix, but this first page is the, like, cover sheet tab-type thing on the Excel.

Q.   How are you familiar with the traceability matrix document?

A.   So I made the first one, the first version of this document or Excel sheet.

Q.   And who was the intended user of the traceability matrix?

A.   Kind of a lot of people.  So it was meant for -- or I guess even today it's still meant for

Page 143

the certification compliance team, product management obviously, and then also the quality assurance team.

I think it's the kind of like swim lanes, I guess you could call it, throughout the document.  That's kind of the function of this.

Q.    And what do those teams at eClinicalWorks use the traceability matrix for?

A.    Yeah.  So product management, I would say we would probably use this just to -- say a criteria is changed or a new criteria is introduced.  We would kind of like outline and make sure we covered all our bases in the different areas of the product.

The regulatory compliance team, they would be responsible for, like, populating the criteria.

And then the quality assurance, they would be responsible for, like, generating the test case, documentation of the test case, and all the different, like, modalities required for it.

Q.    And you said you were responsible for the initial draft of that?

A.    Yeah.

Case 5:18-cv-00382-MTT    Document 561    Filed 05/29/26    Page 144 of 212

CONFIDENTIAL
Jordan A. Madhusudhan
September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 144

Page 146

interoperability ones in particular, those point to standard documents, which those documents themselves can be really, really lengthy, so they may not always be super comprehensive.

But that's why the ONC has this whole concept of, like, FAQs, because they know that everybody has questions.  They have webinars where they allow software vendors to join and ask questions.

I think they kind of recognize that, so that's why they try to give us as much supplemental material as they can, because they can't, like, change the rule once they do it. They have to release a new rule.

Q.   Given the complexity you described, what, if anything, did you do to help eClinicalWorks understand the ONC criteria?

A.   Oh, that -- that's exactly why we got consultants, because I knew I did not know everything.  We sought out, like, the guys who wrote the implementation guides for HL-7 standards, HL, health-level, 7 standards.  Those are, like, the health IT standards for those who don't know.

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 147

I mean, I knew I didn't know everything, and I knew as much as I would love to be an expert in all things, it's important to have other people to bounce ideas off of, even just, like, product analyst to produce analyst at that point.  There were so many times I would just, like, turn and look at my coworkers and say Hey, can you read this again, because I don't know if I understand this.

And we would just bounce ideas off of each other all the time.

Q.   Let me mark as Madhusudhan ECW Exhibit 4 a document Bates-stamped Meadors 1273 to 1275.

(Exhibit No. ECW-4 marked for identification.)

BY MR. ROTH:

Q.   Do you recognize that document?

A.   (Witness reviews document.)

Yes.

Q.   What is it?

A.   It looks like an email thread between Gary Isaac and Austin Garfield and myself.

Page 148

Q.    Who is Gary Isaac?

A.    Gary, at the time, I think -- yeah, in October, 2018, Gary was our test proctor for the 15 -- or one of them.  I think we had a couple of different ones, but one of the test proctors for our 15 edition.

Q.    Where did Gary work?

A.    Drummond Group.

Q.    Who is Austin Garfield?

A.    Austin Garfield, at the time, he was a regulatory compliance analyst.

Q.    If you look with me, the first email in the chain from September 13, 2018 from Austin Garfield to Gary, copying you, what exactly is Austin asking Gary about?

A.    So it looks like Austin is asking for clarification for one of the criteria.  So it looks like B6 is the criteria or criterion he's asking about.  And he's asking specifically about date and time filtering options and what's required for that selection.

Q.    Then if you turn to the first page, does Mr. Isaac respond to the email?

A.    Yes.

Page 150

MS. CROSS:  Objection.  Relevance.
Speculation.

A.   Sorry.  It seems like what he's saying is he can understand that what they're asking for in -- so like these screenshots, they have -- that he put in his email, this is from the ONC website.  And so that's how you can see, like, how they have some clarifications.  Like, those are the FAQs like I was talking about earlier.

So I think what he's -- he's saying it seems like it's reasonable that you wouldn't -- this was, like, a bulk export criterion, if I remember correctly.  You wouldn't want someone to attempt to export a giant amount of data during normal business hours because obviously people are using your data, and that would just slow the system down, and you wouldn't want to slow it down.

And so it sounds like what he's saying is he kind of -- he understood that we could have been confused about what was actually required and what we were allowed to, like, limit our users with doing.  So he -- he -- or I don't know whether he had her or she herself did it, asked

Jordan A. Madhusudhan                     September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 151

the ONC for clarification for this.

Q.   And this is an example in the email, but are you aware of other instances where eClinicalWorks went to Drummond Group or ONC for clarification on any of the certification criteria?

A.   Oh, yeah, like all the time.

Q.   And why would you do that?

A.   Because they're our certification body. They're kind of like the next best thing next to the ONC.  There's a process for asking questions to the ONC, but the certification body is supposed to be an extension of the ONC.  So it makes sense to ask them questions all the time.

MR. ROTH:  Great.  Okay.  The last document I'll mark, this is Madhusudhan ECW Exhibit 5.

(Exhibit No. ECW-5 marked for identification.)

BY MR. ROTH:

Q.   Before you look at it -- so you were asked some questions about the white board photo by

Page 152

Miss Cross.  Once the court reporter marks it,

I'll have you identify what Exhibit 5 is.

          Can you identify for the record what is

Exhibit 5.

     A.    Yeah.  This is -- this is that massive

white board like I was talking about.

     Q.    And Miss Cross did not show this to you

when she asked questions about it, did she?

     A.    No.

     Q.    And is there anything on this photograph

that you can see that would not be documented

elsewhere in eClinicalWorks's files that you're

aware of?

     A.    No.

     Q.    You can put that aside.

          You were asked some questions earlier

today suggesting that you were not qualified for

your role in compliance because you hadn't yet

graduated college.

          Do you remember those questions?

               MS. CROSS:  Objection.  Form of the

question.

     A.    Yes, I remember those questions.

BY MR. ROTH:

Page 153

Q.   How do you feel about that suggestion?

MS. CROSS:  Objection.  Relevance.
Form of the question.  Misstates the prior
questioning.

Go ahead and answer.

A.   Obviously not good.  I mean, I'm not happy
that I wasn't able to complete my degree in four
years, but I'm a firm believer that you don't
necessarily need a degree to do really good work
and that, like, your tenacity and your hard work
should be enough.

BY MR. ROTH:

Q.   How many hours would you say you've spent
reviewing the ONC certification criteria and
working on compliance in your time at
eClinicalWorks?

A.   Oh, man.  Like, years.  I don't know if
it's, like, literally years if I were to count
every single hour of every day.  But in terms of,
like, working hours, years.

Q.   And how seriously did you take your work
in that regard?

A.   Very, like, very seriously.

Q.   And again --

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 154

A.    To a point where it's, like, all I think about sometimes.

Q.    And why do you take it so personally?

MS. CROSS:   Objection.  Relevance. Form of the question.

A.    Why do I take this personally?

BY MR. ROTH:

Q.    Why do you take your work so personally?

A.    Because I'm just a very -- I'm an uptight individual to a detriment sometimes, and, like, that's my personality in and out regardless of work or home or whatever.  And I strive for perfection, and obviously I know perfection can't always be attained.  But I strive for perfection in everything that I do, and I like to make sure that all my Ts are crossed, all my I's are dotted.  I've done my level best for anything that I do.

Even outside of certification, like, any other task that I have -- and you could ask anyone at the company.  I think they would all agree with this.  But I take -- I just take it very seriously because I know it's a serious subject.

Page 155

MR. ROTH:  Thank you for your time. That's all I have for now.

MS. CROSS:  I've got about ten minutes.  Do you need a break, or do you want to wrap?

THE WITNESS:  I'm good.


RECROSS-EXAMINATION

BY MS. CROSS:

Q.   I'm going to ask you a couple of questions about those documents that Mr. Roth put in front of you.

A.   Sure.

Q.   Thank you.  Let's start with the big one, the traceability matrix.  You got the traceability matrix there in front of you?

A.   Yes.

Q.   I think we marked that defense or M3; is that right?

A.   Yes.

Q.   You said that you put the first draft of this together, right?

A.   Uh-huh.

Q.   And I think you were candid that it wasn't

Page 158

Page 160

Q.    And the frequently asked question, Question 44 that Mr. Roth had you read, that relates to security patches, right, and updates?

Take a look at that, please, and confirm for me that it relates to modifications such as security patches and updates to minimum standards.

A.    So one of the examples that they used in their list of modifications is security patches, updates to minimum code sets, CQM updates, and other similar improvements to the version of an EHR technology listed.

Q.    Version 11, that was certified in December, 2017.  That wasn't a patch, right?  It was a whole new version of the software?

A.    It depends on what you mean by "patch."

Q.    Do you consider it a patch?

A.    There's a lot of different terminology and nomenclature that people use for software. That's a development ops question.  That's not so much a Jordan-product-manager-type question.

Q.    Okay.  As you sit here now, after working at ECW now for 12 years --

A.    Uh-huh.

Page 161

Q.   --you're not able to discern the difference between the Version 11 that was certified in December, 2017 that you oversaw, as we talked about, and a patch?

A.   So it all depends on the manner in which it's packaged.  So it could be a straight replacement of a couple of files.  It could be a complete upgrade to a giant build.  But again, like, that's -- that's all, like, the dev ops team.  They all -- they're in charge of the creating of the builds and stuff like that.  So they determine when something's called a patch or a build or...

Q.   You don't feel you have enough information to make that determination?

A.   No, because I'm not a software developer. I wouldn't -- I wouldn't do that.

Q.   Okay.  M1, have you got M1 there in front of you?  That's the -- it looks like this, "eClinicalWorks Certified EHR Technology Policies."

A.   Yeah.

Q.   It looks to me like M1 was published in August of 2023; is that correct?

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 162

A.   At least this version of it, yeah.

Q.   This version of it was.  And all of all of the policies and the regulatory compliance procedures that Mr. Roth asked you some questions about, those are policies in effect today, right?  Those are the current policies and procedures?

A.   I don't know if this one is the one that's in effect today.

Q.   Possibly there's been an update since 2003?

A.   2003?

Q.   I'm sorry.  '23.

A.   There could be.  I don't remember honestly.  At least this one's published in 2023.

Q.   Okay.  If you look there on page 2, it looks to be identified by date, the times in which these policies became either reviewed, drafted, published, or approved; is that right?

A.   Yes.

Q.   So none of the versions of -- none of them were drafted, reviewed, approved, or published per this document prior to 2021?

A.   That's what it says.

Q.   So none of these policies would have been

Page 163

in effect, as they're reflected in this document in 2017, when Version 11 was initially being certified?

MR. ROTH:  Objection to form. Foundation.

A.   We -- we wouldn't have this official policy document at that time, no.

BY MS. CROSS:

Q.   Sure.  You wouldn't have had that at that time?  There was nothing similar at that time?

MR. ROTH:  Object to form.

A.   In terms of this formal policy document, no.  But procedures and -- and the method in which we went about reviewing and certifying, that's the whole foundation of how this policy document came to play because this -- this is exactly the process that I followed when I was reviewing the 2015 edition certification criteria.  So that's what the foundation of this policy document was at that time.

In absence of the document, we still had important stuff that we took when we reviewed our certification criteria.

BY MS. CROSS:

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 164

Q.   None of which are reflected in that document?

MR. ROTH:   Object to form.

A.   What do you mean?

BY MS. CROSS:

Q.   Any policies -- never mind.  I'll withdraw the question.

MS. CROSS:   All right.  Subject to, Mr. Roth, our conversation earlier that we object to ECW playing the direct examination of this witness in the relators' case in chief, I don't have any other questions for you.

THE WITNESS:   Thank you.

MR. ROTH:   We'll reserve rights on that to discuss later, but that's fine.  Thank you.

THE VIDEOGRAPHER:   The time is 5:39. We're off the record.


(Deposition concluded at 5:39 p.m.)

Jordan A. Madhusudhan                                    September 3, 2025
United States of America, et al. v. eClinicalWorks

Page 165

CERTIFICATION

I, DARLENE M. COPPOLA, a Notary Public, do hereby certify that JORDAN A. MADHUSDHAN, after having satisfactorily identifying himself, came before me on the 3rd day of September, 2025, in Boston, Massachusetts, and was by me duly sworn to testify to the truth and nothing but the truth as to his knowledge touching and concerning the matters in controversy in this cause; that he was thereupon examined upon his oath and said examination reduced to writing by me; and that the statement is a true record of the testimony given by the witness, to the best of my knowledge and ability.

I further certify that I am not a relative or employee of counsel/attorney for any of the parties, nor a relative or employee of such parties, nor am I financially interested in the outcome of the action.

WITNESS MY HAND THIS 8TH day of September, 2025.

*Darlene M. Coppola*

DARLENE M. COPPOLA                     My commission expires:

NOTARY PUBLIC                          November 2, 2029

REGISTERED MERIT REPORTER

CERTIFIED REALTIME REPORTER

Page 166

GEOFFREY M. WYATT, ESQUIRE

geoffrey.wyatt@kirkland.com

October 15, 2025

RE:United States Of America, Et Al. v. Eclinicalworks, LLC

9/3/2025, Jordan A. Madhusudhan (#7511801)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at cs-southeast@veritext.com

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

Page 167

United States Of America, Et Al. v. Eclinicalworks, LLC

Jordan A. Madhusudhan (#7511801)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____   _____

Jordan A. Madhusudhan                       Date

Page 168

United States Of America, Et Al. v. Eclinicalworks, LLC

Jordan A. Madhusudhan (#7511801)

ACKNOWLEDGEMENT OF DEPONENT

I, Jordan A. Madhusudhan, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____    _____

Jordan A. Madhusudhan                    Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20____.

_____

NOTARY PUBLIC

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[& - 29,2018]**

Page 1

| **&** | | | |
|---|---|---|---|
| **&** 1:16 3:3,15 4:3,12 8:20 | **120** 6:6 | **20** 58:15 87:10 115:3 133:20 168:15 | 134:13 156:20 158:13 160:14 161:3 163:2 |

**&**

**&** 1:16 3:3,15 4:3,12 8:20

**0**

**000001273** 7:15
**02116** 4:15 5:6

**1**

**1** 7:5 72:20 77:20 127:14 127:18,20,24 129:24 144:9 145:19
**10** 6:5 28:20 48:13 128:20
**10001** 3:6
**1024** 7:4
**109** 7:3
**11** 29:14,15,21 31:24 32:16,19 33:11 36:14 47:12 57:6 58:2 60:10 69:11 71:24 75:16 80:16 88:18 89:10,12 90:9 95:19 117:13 160:13 161:2 163:2
**119** 6:16 61:2,5
**12** 6:20 47:8 92:3 120:19 160:23

**120** 6:6
**122** 6:19 92:2,9 92:21
**127** 7:5
**1273** 147:13
**1275** 7:15 147:13
**13** 148:13
**1301** 3:16
**135** 31:14
**137** 7:8
**142** 7:12
**147** 7:14
**15** 56:19 96:10 130:10 148:4,6 156:8 166:3
**151** 7:17
**1529** 6:24
**155** 6:7
**17** 61:10,12,23 62:12
**1744** 6:21
**188** 58:14
**19** 6:23 98:10
**195** 6:10 31:2,3 31:5 37:18
**1994** 7:7

**2**

**2** 7:8 86:6 131:1,3 137:13 137:15 141:9 162:15 165:22

**20** 58:15 87:10 115:3 133:20 168:15
**200** 1:17 4:13 124:23
**20004** 3:17
**2003** 162:10,11
**2013** 10:12,14 10:18 11:11 120:15
**2014** 11:21 12:3,7
**2015** 13:17 19:7,15 21:22 24:1 44:19 49:19 56:5 122:6 156:16 157:2 163:18
**2016** 19:9,20 20:14 21:10,21 22:5,19 25:9 26:7 30:5 63:18 134:13 156:6,7,12
**2017** 6:12,20 26:19 28:6,10 28:18 29:7,23 38:1 40:18 41:4,9 42:20 43:8 44:12,22 45:7 60:5,22 83:14,23 88:18 89:9 92:3 94:6 95:7 96:2

134:13 156:20 158:13 160:14 161:3 163:2
**2018** 6:23 21:21 85:13,19 86:9 87:3,7 98:10,16 99:11 124:24 125:1 148:3,13
**2019** 7:3,9 110:5,6,7 137:24 159:22
**202.389.5000** 3:19
**2020** 75:17
**2021** 162:22
**2022** 12:2,7
**2023** 161:24 162:14
**2024** 6:14 47:6
**2025** 1:19 8:8 78:2 165:5,17 166:3
**2029** 165:22
**20471** 165:20
**212.735.3000** 3:10
**22** 6:14 47:6
**23** 162:12
**26** 30:4
**28** 6:11 42:20 44:5,12
**29,2018** 7:14

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[2:46 - accused]**

Page 2

| **2:46** 1:19 8:3,8 | **3rd** 138:12 | **6** | **a** |
|---|---|---|---|
| **3** | 165:5 | **6** 93:6,9 95:24 | **a.m.** 138:13 |
| **3** 1:19 7:12 8:8 | **4** | **60** 15:7 | **a1** 91:9 |
| 131:1,7 142:4 | **4** 7:14 44:2 | **60654** 4:5 | **a2** 91:9 |
| 142:6,10 | 59:14 147:12 | **61** 6:16 | **aaron** 5:7 8:22 |
| 159:22 | 147:15 | **617.385.7500** | **aaronkatzlaw...** |
| **3.4.5** 99:20 | **4.3** 128:23 | 4:17 | 5:8 |
| 100:16 102:9 | **4.3.1** 129:12 | **7** | **abilities** 97:1 |
| **30** 166:16 | **4.3.2** 131:18 | **7** 7:3 92:23 | **ability** 56:17 |
| **300** 6:13 45:14 | **4.3.3** 132:13,21 | 93:2 94:16 | 165:12 |
| 45:17 47:3 | **4.4** 133:2 | 95:24 110:4 | **able** 14:23 |
| 57:2 | **4.5** 133:3,6 | 146:21,22 | 20:10 21:4 |
| **30030** 2:5,15 | **404.800.4828** | **715** 2:13,14 | 121:3 153:7 |
| **31** 6:10 | 2:8 | **7511801** 166:5 | 161:1 |
| **312.862.2000** | **404.948.3022** | 167:2 168:2 | **above** 166:6 |
| 4:8 | 2:17 | **7:23** 103:12,24 | 168:7 |
| **315** 2:3 | **42** 6:11 141:9 | **8** | **absence** 163:21 |
| **330** 6:11 42:6 | **44** 160:2 | **8** 31:10 | **absolutely** 27:5 |
| 42:11,17 44:3 | **4499** 7:10 | **86** 6:18 47:8 | **acb** 130:11 |
| 53:20 | **45** 6:13 | **87** 45:23 48:18 | 131:8 |
| **332** 6:18 85:22 | **47th** 4:14 | 50:20 | **accept** 16:13 |
| 85:24 97:9 | **48** 43:12 | **88** 57:20 | 17:23,24 18:5 |
| 125:19 | **4:03** 87:17,20 | **885** 2:4 | 18:16 |
| **333** 4:4 6:22 | **4:15** 87:21,24 | **8th** 165:17 | **access** 74:4 |
| 97:8,11,15,17 | **5** | **9** | 75:23 76:4,6 |
| **335** 7:3 109:16 | **5** 7:17 151:17 | **9** 37:19 | 77:8 79:9,20 |
| 109:18 | 151:19 152:2,4 | **9/3/2025** 166:5 | 80:22 |
| **35** 31:11,14 | **50** 125:1 | **92** 6:19 | **accreditation** |
| **382** 1:9 | **518** 1:9 | **9350** 6:12 | 36:23 41:18 |
| **395** 3:5 | **5:19** 112:2 | **97** 6:22 | **accuracy** 166:9 |
| **399** 5:4 | **5:39** 164:17,20 | **9th** 3:5 | **accused** 38:23 |
| **3:00** 138:13 | **5:59** 112:1 | | 38:24 |

Jordan A. Madhusudhan　　　　September 3, 2025
United States of America, et al. v. eClinicalWorks

**[achieve - announced]**　　　　　　　　　　　　　　　　　　Page 3

**achieve** 116:3
**achieved** 30:6
**acknowledge** 52:7
**acknowledged** 51:3,8
**acknowledge...** 168:3
**acknowledg...** 166:12
**acquaintance** 11:19
**acronym** 34:9 34:11 115:22
**act** 26:11,20 28:10 137:4
**action** 141:13 165:16
**activities** 158:2
**actual** 76:18 77:23 90:17 93:12 98:5 130:1 131:14 132:15
**actually** 35:11 49:3 53:23 55:24 66:7,10 69:3 75:2 86:12 102:4,6 110:23 111:1 120:21 121:1 121:22 128:9 136:11 142:14 150:21

**add** 144:10,22 145:22
**additional** 45:6 141:13
**additions** 168:6
**addressing** 133:7
**adequate** 103:16 104:5
**adherence** 93:18
**adhering** 107:22 136:11
**adjust** 15:17
**admitted** 58:21 59:2
**advisors** 62:22 65:1
**affect** 69:21 71:24 81:15,15
**afternoon** 120:13
**agency** 24:11
**ago** 92:17 111:7
**agree** 36:6 90:2 95:12,15 104:1 126:9 154:22
**agreeing** 104:3 105:6,7
**agreement** 6:16 9:22 27:10,13 27:22 29:9 44:15 56:21

60:4,12 61:1 64:11,18 78:6 79:2 85:9 156:23 158:5 158:12,14
**ahead** 10:3 49:16 115:8 136:5 145:17 153:5
**aim** 35:13
**aimed** 91:16
**aiming** 32:23 35:9
**akatz** 5:8
**akin** 124:19
**al** 8:12 166:4 167:1 168:1
**alex** 1:6
**allegation** 26:11 38:3,7 38:13 40:1 59:16 80:7,9 83:5 84:2
**allegations** 28:19 30:11 39:21 40:7 41:4 46:3,5 50:10 51:9 53:12 55:17,21 56:9 59:15 109:7
**allotted** 166:19
**allow** 146:8 149:18

**allowed** 9:22 76:4 125:12,13 150:22
**allows** 18:15
**amanuel** 2:7 8:17
**amazing** 56:23
**ambulatory** 43:16
**america** 1:5 8:11 166:4 167:1 168:1
**amount** 93:23 138:19 150:14
**analysis** 123:15 124:2
**analyst** 13:13 13:17 18:20 19:2,4,7 20:24 21:7 22:23 30:5 96:9,9 108:1 123:8 124:5 147:5,5 148:11
**analysts** 66:11 101:6 122:14
**analyzed** 83:10
**analyzing** 24:6
**anna** 2:16,18 8:16
**announced** 40:14 49:4 53:24

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[answer - associate]**

Page 4

**answer** 15:22
16:11 17:8,18
20:10,19 22:2
22:16 24:22,24
25:2,13,24
34:5 39:11
47:16 48:6
49:1 51:2,14
51:18 58:23
59:4,19 70:4
79:12 104:12
104:13 115:4,7
141:4 145:17
153:5
**answered**
20:18 25:12
**answering**
115:2
**answers** 82:17
89:2
**anticipate**
93:11
**anticipated**
94:21
**antikickback**
135:20
**anybody** 74:1,2
74:8 79:24
81:6 86:21
**anymore** 35:11
107:9 118:15
**anytime** 81:21
115:20

**anyway** 103:16
**apologize** 88:7
88:9
**app** 118:11
**appear** 140:1
**appearances**
3:1 4:1 5:1
**appeared**
112:17 118:16
**appears** 42:17
55:4 99:9,18
100:15 109:24
**appended**
168:7
**apple** 118:10
**applicable** 15:2
166:8
**application**
73:15 98:5
144:11
**applications**
96:23
**applied** 43:16
43:17
**apply** 82:10,20
129:3 132:8
**appointed**
24:11 25:20
**appreciate**
106:7
**approach**
57:13 58:6
**approached**
42:1

**approaching**
53:8
**appropriate**
14:5 62:21
64:2,24 108:6
**appropriated**
53:7
**approve** 33:6
36:3
**approved**
35:23 68:12
162:18,21
**approximately**
28:5
**appsec** 73:15
73:23 74:1
**april** 6:11 22:5
22:19 26:7
40:18 41:1,3,9
42:20 43:7
44:22 45:7
156:6,7,12
**apropos** 93:18
**architect** 98:20
98:21
**area** 11:2 21:19
114:2
**areas** 143:14
**arps** 3:3
**ascertain** 93:20
**aside** 14:9 83:2
133:14 141:17
145:10 152:15

**asked** 20:17
25:11 34:18
43:14 50:7
53:18 82:16
117:12 118:1
120:13 122:5
123:17 125:3
126:1 136:13
137:7 149:4
150:24 151:23
152:8,16
159:19 160:1
162:4
**asking** 10:21
16:18 33:9
61:12 64:17
70:7 73:8 78:4
80:4 86:18
96:7,13 115:11
115:12 123:14
138:5,6,15
148:15,16,19
148:19 150:4
151:11
**aspect** 121:21
**assertion** 104:3
**assessment**
6:19 92:3,7,13
95:9 96:1
**assign** 68:8
**assigned** 68:5
**assist** 41:22
**associate**
141:24

Jordan A. Madhusudhan                      September 3, 2025
United States of America, et al. v. eClinicalWorks

[associated - beyond]                                    Page 5

| | | | |
|---|---|---|---|
| associated 46:4 55:8,16 | attestations 89:7 133:21,22 134:10,17,18 | 95:6 105:18 151:3 152:13 156:11 | began 10:18 11:11 12:10,12 25:9 29:10 |
| association 53:11 | attested 38:4 90:13 | awkward 117:9 | 43:8 63:18 |
| assume 28:3 45:21 | attests 34:23 | **b** | beginning 13:17 21:6 |
| assuming 34:6 | attitude 57:14 58:7 | b6 148:18 | 59:13 113:4 138:7 |
| assurance 96:5 96:11 98:23,24 105:13 143:3 143:18 | attorney 37:22 165:14 166:13 | back 37:15 40:5 47:7 57:1 73:11 84:12 87:12,23 88:13 99:23 103:10 113:19 125:18 126:12 130:10 159:13 | begins 45:23 57:6 62:13 100:3 110:14 |
| astps 140:8 | attorneys 25:1 | | behalf 9:3 64:8 |
| atl 25:20 33:1 130:11 131:9 | august 6:14 47:6 161:24 | | behavior 40:9 52:8 |
| attached 44:14 149:5 166:11 | austin 147:24 148:9,10,13,15 148:16 149:2 | | believe 31:1 35:16,18 41:9 83:18 85:22 97:8 102:11 104:15 |
| attachment 7:10 | authorized 25:20 33:1 | bad 108:23 | |
| attained 154:14 | automatically 80:20 | bare 103:19 | |
| attempt 150:14 | available 166:6 | based 14:24 15:11,17 16:21 67:23 90:13 117:6 131:9 135:2,5 145:11 | believed 78:21 |
| attempts 48:12 | avenue 2:3,13 3:5,16 | | believer 153:8 |
| attend 136:21 | | | benefit 22:15 27:7 66:17 |
| attends 135:23 | aware 21:18 26:7,12,15,16 26:19 27:21 29:8 30:10 31:23 32:6 38:1,6 39:3,24 40:7,11 60:21 68:19 70:9 72:9,13 73:14 73:21 79:24 80:16,18 92:19 | baseline 6:19 92:3,7,13 95:9 96:1 | bernardo 3:7 8:22 |
| attention 41:7 61:10 68:22 76:21 77:6 81:7 88:16 93:5 102:14 103:12 | | bases 143:13 | best 20:10 39:16 97:1 117:6,11 124:19 151:10 154:17 165:11 |
| | | basic 15:3 93:10 144:8 | |
| | | basis 96:18 | |
| | | baskam 2:12 | |
| attestation 33:13,17,19 34:18 35:3,6 88:17 89:3,3 89:16 | | batch 149:10 | better 15:19 |
| | | bates 7:12 142:11 147:13 | beyond 83:19 95:7 101:12 |

**[big - certification]**                                         Page 6

**big** 86:17
116:10,10
126:14 127:10
127:15 130:7
155:14
**biology** 120:22
**bit** 37:16 63:10
73:11 88:16
118:12
**block** 100:14
100:21 125:12
**bmi** 15:4,6,8
**board** 7:17
112:19 113:17
113:23 114:8
114:10,15,16
114:17,20
115:10 116:19
116:21 117:1,8
118:23 151:24
152:6
**body** 24:3,16
24:20 33:4
35:20 36:23
37:3 41:18
68:15,17 95:22
106:20 107:4,8
107:11,15
132:16 134:1,7
151:9,12
**boring** 110:22
**boston** 1:18
4:15 5:6 8:9
11:4,5 165:5

**bottom** 50:20
82:15 102:18
138:1
**bounce** 147:4
147:10
**box** 117:18,21
**boylston** 5:4
**break** 87:12
88:11 120:10
155:4
**bringing** 76:20
81:6
**brings** 81:22
**brought** 38:13
84:3
**bubble** 84:18
**bubbling** 79:8
79:13,15
**budd** 5:12 8:7
**bug** 77:15,19
77:23 82:9,20
115:14,16
**bugs** 101:14
134:4
**build** 55:15
161:8,13
**building**
113:22
**builds** 161:11
**bulk** 150:12
**bullets** 129:24
**business** 13:13
13:17 18:19
20:24 21:7

55:15 97:18
107:9 149:11
150:15

**c**

**c** 5:15 8:1 66:24
119:12
**ca** 1:9
**calendar**
125:12
**call** 14:18
34:12 35:11
53:18,21 60:16
82:14 100:3
124:13 140:8
140:10 143:5
**called** 9:10
12:23 24:2
49:5,14 63:20
65:10 74:24
91:4 98:21
115:21,23
118:13 119:11
140:8 161:12
**calls** 32:7 41:5
**candid** 155:24
**cannella** 2:2
9:3
**cannellasnyd...**
2:9,10
**capabilities**
31:19
**capacity** 33:5
54:8 68:1

**care** 14:23
**carry** 36:4
**case** 26:20
28:10,12,15,17
28:18 29:3
30:10 33:20
34:21 35:24
41:4 46:1,4
47:5 50:10
51:9 60:5
106:22 122:3
142:1 143:20
143:20 157:17
164:11
**cases** 31:20
96:12 100:23
101:8,14 131:8
131:10
**category** 70:8
**cause** 101:15
165:8
**caused** 117:4
**caution** 39:8
**ccda** 103:16
104:5
**cehrt** 128:18
**cert** 127:7
**certain** 31:20
127:1 138:19
**certainly** 45:10
105:18 115:7
136:3
**certification**
13:9,10 18:23

**[certification - choice]**
Page 7

| | | | |
|---|---|---|---|
| 19:5,8,16,22 | 87:4 88:17 | 163:23 165:1 | 167:10,13,16 |
| 20:2,15,21 | 89:4,16 91:20 | **certifications** | 167:19 |
| 21:11,12,14 | 93:19,22,24 | 33:6,16 36:10 | **changed** 10:15 |
| 22:20 23:4,10 | 94:22 95:1,18 | 122:20 | 39:18 143:11 |
| 23:15 24:3,5,7 | 95:22 96:6,9 | **certified** 1:24 | 145:8 |
| 24:10,16,21 | 96:10,22 97:6 | 7:5 16:2,14 | **changes** 121:4 |
| 25:9,22 26:9 | 99:3,5,20 | 17:4,12,20 | 134:2 145:8 |
| 29:12,18 30:6 | 100:5,16 101:1 | 18:1,4,6 21:2 | 166:10 168:6 |
| 31:15,24 32:1 | 101:6,14,16,23 | 21:18 24:1,12 | **characterized** |
| 32:3,16,18,20 | 102:10,12 | 24:17 33:1,7 | 19:18 |
| 33:4 34:22 | 103:6 104:19 | 35:6,7,15,15,23 | **characters** |
| 35:1,19,20 | 104:24 106:15 | 36:24 68:14 | 93:16 |
| 36:5,13,16 | 106:19 107:4,8 | 89:10 106:21 | **charge** 86:20 |
| 37:3,10 38:4,6 | 107:11,15,18 | 119:9,10,15 | 105:13 161:10 |
| 38:12,20 39:1 | 107:23 108:7 | 127:8 128:4 | **chase** 5:15 9:2 |
| 39:2,2,14 | 108:14,22 | 133:23 139:6 | **chat** 6:22 7:3 |
| 41:11,15 47:12 | 112:11 114:3,7 | 140:24 141:1 | 97:19,19 98:2 |
| 48:12 56:5 | 114:14 116:3 | 141:11 156:7 | 98:12 99:23 |
| 62:20,23 63:6 | 119:13,18 | 160:13 161:3 | 100:4 102:15 |
| 63:12,21 65:2 | 122:6,7,11,22 | 161:20 163:3 | 102:19 104:10 |
| 65:17,20 66:2 | 123:2,9,24 | 165:24 | 104:15 109:23 |
| 66:19 67:2,20 | 126:8,18 127:6 | **certify** 17:20 | 109:23 111:4 |
| 68:7,15,17,20 | 128:15,18,24 | 32:24 35:9,10 | 136:13 |
| 69:1,9,13,22 | 129:5,7,13,22 | 35:13 91:16 | **cheated** 55:21 |
| 70:22 71:3,5 | 130:10 131:20 | 165:3,13 | **cheating** 38:23 |
| 71:19,24 74:6 | 132:14,16,16 | **certifying** | 38:24 39:22 |
| 74:14,18,22 | 133:5,7 134:1 | 56:23 129:2 | 40:1,6 56:9 |
| 75:3,4,9,11,12 | 134:5,7 135:19 | 163:14 | 109:7 |
| 75:15 76:12,13 | 137:9 139:9 | **chain** 44:4 | **check** 125:13 |
| 76:15 77:10 | 140:12 141:22 | 148:13 | 125:13 |
| 78:18 80:11,18 | 143:1 145:12 | **change** 88:13 | **chicago** 4:5 |
| 81:16,24 82:6 | 151:5,9,12 | 118:11 134:3,3 | **chief** 164:11 |
| 83:6,20,24 | 153:14 154:19 | 141:15 144:22 | **choice** 130:20 |
| 84:4,16,17 | 157:3 163:18 | 146:13 167:4,7 | 136:20 |

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[chpl - compliance]**

Page 8

**chpl** 119:11 141:12,16

**chris** 1:7 5:13 8:17

**cia** 27:4,6,6 40:15 60:3 62:19 64:1,11 65:14 74:23 78:22 79:3 83:9,11,14,14 156:3 158:21

**circumstances** 64:3 112:22

**claims** 26:11,20 28:10

**clarendon** 1:17 4:13

**clarification** 29:20 65:24 106:7 148:17 151:1,5

**clarifications** 150:8

**clarify** 65:22

**classes** 12:6 20:6

**clear** 47:1 106:9 145:13

**clicked** 118:16

**clinical** 121:21 121:22 122:17

**clinician** 139:6

**clipped** 139:21 140:1

**close** 124:23

**cloud** 116:7

**code** 66:21 141:6 160:10

**coded** 38:5 58:22 59:17

**codes** 58:22 59:17

**cole** 5:14 9:2,2

**colleagues** 83:4 84:1 97:20 98:3

**collected** 15:8

**college** 11:12 11:21 12:2,11 12:13 19:9,11 20:5 21:3 120:15,22 152:19

**combining** 43:18

**come** 37:15 51:20 74:2,8 74:12 77:6 78:14 80:10 81:12,14 84:12 87:12 114:1 132:2,24

**comes** 52:1 74:16 130:24

**comfortable** 50:22 52:3,6

**coming** 43:2 121:9 158:12

**commenced** 67:7

**commencing** 8:3

**comment** 77:22 105:14

**commission** 165:21

**commitment** 125:6 136:24

**committed** 123:1 125:7 137:1 157:6,11

**committee** 71:6 71:7,19 74:3 103:1

**common** 110:16

**communicate** 68:22 72:7 86:24

**communicated** 57:11 58:4 69:19

**communicating** 67:16

**communication** 70:3,14 85:7 86:23 114:24

**communicati...** 63:7

**companion** 106:15 123:24 130:6 140:15

**company** 10:11 11:19 24:10 25:7 26:4 27:3 29:2 33:21 48:14 49:16 50:23 55:7 57:16 58:9,21 108:13 154:21

**complaint** 6:10 30:11 31:15 37:21

**complaints** 94:18 133:7

**complete** 118:9 141:1 153:7 161:8 168:8

**completed** 166:16

**completely** 104:1 149:15

**complex** 8:12

**complexity** 146:15

**compliance** 13:9,11 19:5 23:4 38:4 43:21 57:15 58:8 60:9 62:21 63:12,13 63:21 64:19,22 65:10,14,16,17 65:20,21 66:2 67:20 69:1 70:13,21,22

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[compliance - continued]**

Page 9

71:3,5,12,19
72:19,23 73:10
74:3 75:12,13
75:19 77:22
78:12 81:10
98:18 101:16
107:17,18,23
108:7,14,22
112:2 125:4,6
125:10,16
127:2,4,6
129:6 130:17
132:1,7 133:6
133:13,16,17
135:7,9,14,18
135:19,23
136:14,19,24
139:10 143:1
143:15 145:6
148:11 152:18
153:15 157:7
157:13 158:2,3
158:10,19,20
158:23 159:1,4
159:10 162:3
**compliant** 37:9
126:7,11
**comply** 64:14
130:18 135:6
**component**
89:16
**comprehensive**
94:1 96:21
146:4

**comprehensi...**
93:21
**comprised**
71:18 131:10
**computer** 80:9
80:21 90:19
145:20
**computerized**
145:20
**conceivable**
31:18
**concept** 146:6
**concern** 46:3
50:9 81:22
**concerned** 39:5
39:21 48:19
109:1
**concerning**
109:6,9 165:7
**concerns** 108:9
**concluded**
78:16 164:20
**conclusion** 32:8
78:15
**concurrency**
93:17
**conditions**
130:9
**conduct** 33:3
56:17 91:15
135:1 142:2
**conducted**
102:8

**conducts**
128:14
**confidential**
1:20 6:12,15
6:22,24 7:4,7
7:11,16,18,20
**confine** 101:7
**confined**
100:23
**confirm** 31:16
57:23 101:23
160:4
**confirmation**
149:15
**confirming**
101:21
**confused** 71:11
73:7 150:21
**confusing**
71:15
**confusion**
149:7
**connection**
11:17
**conner** 3:8
**conner.winship**
3:12
**consider** 76:6
160:17
**considered**
14:12 56:13
**consisting**
62:21 64:24

**constituted**
64:13
**consult** 63:6
**consultant**
41:10,15 43:3
43:5 48:14
52:18 55:11,14
59:23
**consultants**
53:5 54:7,17
62:22 65:1
97:4 108:3
122:19 131:5,6
146:19
**consultation**
43:20 44:14
**consultations**
44:24
**consulting**
54:10
**contact** 54:12
67:19 68:19
72:21 86:22
**contain** 101:13
**contained**
92:20
**contains** 1:20
100:21
**continue** 49:7
51:22 52:15
**continued** 2:20
3:1,23 4:1,21
5:1 12:9

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

**[continues - creating]**                                    Page 10

**continues**
  48:18 93:13
**continuing**
  57:7
**continuous**
  85:6
**continuously**
  12:6
**contract** 43:16
  47:10 49:12
  51:23 52:16
**contracted**
  54:18
**contractors**
  49:6
**contribute**
  49:18
**control** 74:4
  75:23 76:7
  79:9,20
**controls** 94:20
**controversy**
  165:8
**conversation**
  41:3 44:12
  45:12,24 46:19
  46:21 50:2,8
  50:12 51:15,19
  52:11 53:2
  55:5 57:10
  58:20 59:8
  77:13 84:5,10
  84:23 103:11
  110:1,15 164:9

**conversations**
  39:9 50:5 53:4
  55:1 73:9 85:3
  85:4,10,11
**copies** 166:14
**coppola** 1:22
  9:6 165:2,21
**copy** 80:21
**copying** 148:14
**core** 59:16
**corporate** 6:16
  27:10,13,22
  29:9 56:20,21
  60:3,12,24
  64:11,18 78:5
  79:1 85:8
  156:22 158:4
  158:12
**correct** 10:12
  10:13 11:8,13
  11:16 12:13
  13:15,20,22
  16:2,17 17:4,9
  17:15 18:7,8
  18:13,24 19:5
  19:10,23 23:4
  23:11 25:10
  26:4,5,12,21
  27:3,11,12,16
  32:21 33:14
  34:1 37:24
  41:12,22 43:21
  44:16 45:9
  47:13,16 49:8

  55:18,22 58:18
  58:22 59:3,18
  59:19 60:14,22
  61:16 63:12,19
  64:15,20,23
  66:4,21 67:3
  67:17 73:20,23
  83:15,16,17,21
  85:3 88:19
  89:10,17 90:4
  91:21 92:5
  94:12 103:2
  106:22 110:9
  156:1 157:24
  158:6,13 159:6
  159:23 161:24
  168:8
**corrections**
  168:6
**correctly** 43:10
  48:23 49:23
  58:18 90:16
  94:2 95:4
  101:17 107:21
  150:13
**corroborate**
  72:14 73:5
**counsel** 5:16
  8:14,23 9:11
  165:14 166:14
**count** 138:13
  153:18
**counts** 138:8

**couple** 30:14
  68:3 112:14,16
  112:23,24
  128:21 130:24
  148:4 155:10
  161:7
**course** 27:4,5
  65:8 125:16
  157:13,19,23
  158:4,10
**courses** 125:10
  158:20
**court** 1:1 9:5
  22:13 27:6
  34:9 48:1
  85:15 100:1
  127:17 152:1
**cover** 103:7
  131:22 132:14
  142:15
**covered** 135:17
  143:13
**covers** 131:23
**covid** 78:7
**coworkers**
  147:7
**cpoe** 145:19
**cqm** 141:8
  160:10
**create** 144:1,17
  157:1
**created** 66:6
**creating** 43:12
  161:11

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

**[criteria - day]**                                        Page 11

| | | | |
|---|---|---|---|
| **criteria** 23:15 24:7 31:16 32:3 33:24 35:2,8,16 36:17 37:10,12 66:12,15,19,23 66:24 76:12,14 77:24 82:6,16 89:6,8,11 90:23 91:7,16 95:2 96:22,24 99:21 100:17 101:16,23 102:10,13 115:17 116:17 118:24 119:17 122:12 128:18 129:13 130:1,2 130:19 131:9 131:21 132:18 134:5 140:15 141:22 143:11 143:11,17 144:6 145:12 146:17 148:17 148:18 151:6 153:14 163:19 163:23 **criterion** 82:8 82:10 119:4 148:18 150:12 **criticism** 91:18 94:5 | **criticisms** 92:19 95:6 **cross** 2:12,16 6:5,5,7 8:16,16 9:19,21 10:1,2 13:6 14:16 16:5,10 17:7 17:17 18:18 20:7 21:5,8,16 22:1,3 23:2,8 23:19 24:8,18 25:14,23 26:1 26:18 27:23 29:5 30:2 31:8 32:5,13 33:10 33:18 34:4 36:11,20 37:14 38:17 39:20 40:4,23 42:9 44:1 45:20 46:9,13,17,24 50:15 51:13 52:4,19 53:16 55:20 56:6,12 56:24 59:12 61:8 63:16 64:9 72:5 73:3 74:15 76:22 77:2 79:14,23 80:15 81:4 83:1 85:1,21 86:3 87:9,16 88:1,22 89:20 90:7 91:24 | 92:12 93:1 94:10 97:14 102:2 104:7 105:5 106:4,24 108:19 109:14 109:21 115:6 120:4,13 126:1 136:4 139:3 145:15 150:1 152:1,7,21 153:2 154:4 155:3,9 156:18 157:20 158:9 159:2,11 163:8 163:24 164:5,8 **crossed** 154:16 **crosskincaid....** 2:18 **cs** 66:14,16 122:16 166:15 **current** 11:7 49:6 59:24 162:6 **currently** 10:8 **curved** 113:20 113:24 117:9 **customer** 82:3 123:10,11,13 138:8 **customers** 18:5 18:15 108:24 109:4 **cut** 100:15 | **cv** 1:9 **cycle** 123:6 124:4 **d** **d** 8:1 10:5,6,6 66:23 **d1** 76:13 80:3 **darlene** 1:22 9:6 165:2,21 **data** 100:24 101:8 105:4 114:18 115:9 115:10 130:5 131:11,14,17 150:14,16 **date** 8:7 26:23 44:21 54:19 87:6 98:10 110:4 116:16 117:6 138:17 138:18,23 148:20 149:12 159:22 162:16 167:24 168:12 **dated** 6:11,20 6:22 7:3,14 42:19 **daughter** 118:6 121:12 **day** 11:6 12:22 12:24 114:11 116:13 121:5,5 121:9 125:11 |

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[day - different]**

Page 12

| | | | |
|---|---|---|---|
| 125:15 127:11 127:11 153:19 157:19,23 158:3,10,18,19 158:20 165:5 165:17 168:15 | **defined** 37:10 | **depending** 87:6 | **determine** |
| **day's** 135:16 | **definitely** 55:3 122:23 130:21 145:8 158:24 | **depends** 74:20 78:3 83:8 84:21 119:5 160:16 161:5 | 17:22 33:6 51:22 161:12 |
| **days** 138:19 166:16 | **definition** 123:19 | **deponent** 166:13 168:3 | **determined** 64:2 |
| **dc** 3:17 | **degree** 12:11 12:13 19:12 21:4 153:7,9 | **deposing** 166:13 | **detriment** 154:10 |
| **de** 2:3,13 | **degrees** 104:18 | **deposition** 1:14 6:14 8:10 9:20 45:15 47:6,19 57:2 58:14 59:11 164:20 | **dev** 161:9 |
| **deal** 98:18 126:14 | **delaney** 6:10 28:11,13,14,17 29:2 30:9 31:15 41:4 46:1,4 47:9 50:10 51:9 59:16 60:5 106:22 109:12 156:20 157:17 157:24 159:5 | | **develop** 64:19 123:18 130:15 |
| **dealt** 43:21 | | **describe** 113:14 125:5 127:4 136:23 138:4 | **developed** 33:21 34:24 |
| **decatur** 2:5,15 | | | **developer** 82:3 84:14 141:15 161:16 |
| **december** 6:20 6:23 89:9 92:3 94:6 95:7 96:2 98:10,16 99:11 160:14 161:3 | | **described** 86:9 118:23 125:20 146:15 157:4,6 | **developer's** 84:11 141:14 |
| **decision** 17:19 36:9 | **delete** 145:22 | **description** 6:9 7:2 | **developers** 78:9,10 122:18 123:18 129:10 |
| **declare** 168:4 | **deleting** 118:8 118:15 | **designations** 1:20 | **developing** 41:21 |
| **deemed** 168:6 | **demonstrating** 97:2 | **desk** 72:8 78:10 84:11,12 113:18 | **development** 19:14,21 20:1 20:20 63:4,4 77:17 115:19 123:6 124:3 129:10 160:20 |
| **defects** 93:14 | | | |
| **defendant** 1:11 3:2 4:2 5:2 | **denotes** 7:20 | **desks** 113:19 | |
| **defense** 155:18 | **department** 71:13,14,16 73:18 | **despite** 49:17 70:7 | **differ** 104:23 |
| **deficiencies** 94:24 | **departments** 71:17 | **determination** 161:15 | **difference** 161:2 |
| **deficients** 94:24 | **depend** 76:18 | | **different** 55:6 64:4,8 65:12 75:10 83:13 |
| **deficits** 93:14 | **dependent** 33:12 | | |

Jordan A. Madhusudhan
September 3, 2025
United States of America, et al. v. eClinicalWorks

**[different - eclinicalworks]**
Page 13

111:10 140:14
141:23 143:14
143:21 144:10
148:5 160:18
**direct** 6:6 41:7
61:9 88:15
93:5 102:14
103:12 120:8
164:10
**directed** 16:19
106:5
**directly** 69:19
128:12 156:16
**directs** 101:6
**discern** 161:1
**discovering**
117:14
**discuss** 76:20
164:15
**discussing**
140:23
**discussion**
78:11
**dishonesty**
109:8
**district** 1:1,2
**division** 1:3
**doctorate**
104:18
**document** 7:12
23:17 31:1,22
32:10 35:14
37:17 43:4
44:3 45:22

47:24 61:11,24
62:5 63:11
73:5 74:16,19
77:3,4,13 83:3
83:6 84:4,22
92:15 94:9,13
101:3,18 102:6
102:7 110:11
112:4,17 113:2
116:8 119:21
121:10 127:13
127:15,17
128:10,17
133:14 137:12
137:19 139:21
139:24 140:1
142:4,18,20
143:6 147:13
147:19,20
151:16 162:22
163:1,7,12,16
163:20,21
164:2
**documentation**
14:5 35:22
117:13 118:1,2
119:16 121:8
143:20 149:7,8
**documented**
77:15 84:7,19
152:11
**documents**
10:20 28:4
69:20,23 70:5

70:8 72:12,13
91:4 116:5
119:19 130:12
133:17 136:9
146:2,2 155:11
**doing** 62:7 75:8
79:24 91:20
92:20 103:15
104:4 107:17
107:21 126:15
136:18 150:23
**dotted** 154:17
**dr** 102:24
**draft** 143:23
144:2 155:21
**drafted** 128:10
162:18,21
**dramatic**
117:22
**driver's** 9:13
**drummond**
24:2 26:3,6
36:1,22 37:4
37:13 41:14,17
41:24 42:3
48:11 68:3,8
68:12,13,16
69:7 70:18
79:4,19 82:24
90:10,20 91:3
97:2,3 106:11
106:16,18,20
107:4,14
115:21 116:6

119:6 130:12
134:16,19
148:8 149:3
151:4
**duly** 9:13 165:6

**e**

**e** 2:9,18 3:11,20
4:9,18 5:8 8:1
8:1 167:3,3,3
**earlier** 28:23
33:2 50:4
101:19 115:13
122:16 123:23
130:7 133:13
136:13 139:13
150:9 152:16
164:9
**ease** 99:24
**easier** 48:2
**easy** 22:18
145:13,23
**eats** 118:6
**eclinicalworks**
1:10 8:12 10:8
18:3,15 19:7
20:23 25:18
26:4 47:11
48:11 56:3,4
65:6 75:6
77:18 91:8
92:4 96:20
98:3 107:12
127:5 128:14

Jordan A. Madhusudhan
September 3, 2025
United States of America, et al. v. eClinicalWorks

**[eclinicalworks - ends]**
Page 14

129:3 131:3,7
133:10,17
134:10,17
135:6,9 143:7
146:16 151:4
153:16 161:20
166:4 167:1
168:1
**eclinicalwork...**
17:19 120:18
122:11 124:22
125:5 136:24
152:12
**ecw** 6:12,20,23
7:4,5,6,8,12,13
7:14,17,17
8:23 10:8,18
11:7,11,17,22
12:6 13:14
17:10 18:6,9
18:24 24:14
25:8 26:10
27:15 28:19
29:13 33:20,21
34:21 38:3,12
40:19 41:11,19
41:20 43:3
44:24 46:5
50:9 51:8,10
53:3 54:10
55:7,17 59:23
62:19 63:11
68:5,20 73:18
83:4 90:3

92:20 93:23
94:6,17 95:8
98:16 104:4
107:16 108:5
108:12,13,18
112:6 114:24
120:14 126:7
126:11 127:1
127:20,24
136:18 137:13
137:15 142:4,6
142:11 147:12
147:15 151:16
151:19 157:4,6
157:16 160:23
164:10
**ecw's** 12:20
36:14 39:10
40:8 52:7 63:4
63:5 93:9
108:22 125:4
**ed** 131:10
**edition** 19:7,15
21:22 24:1
29:18 35:8,10
35:12,13 36:5
44:19 49:20
56:5,19 96:10
130:11 148:6
156:8,11,16
157:2 163:18
**editions** 35:11
89:24 90:13

**education** 13:8
20:5 21:3
**efcw** 7:10
**effect** 29:10
158:6,12 159:5
162:5,8 163:1
**ehr** 7:5 16:14
16:15 62:20
63:5,20 71:12
75:12,13 76:3
93:20 94:22
126:7 128:4
129:3,6 133:5
141:1,1,10,13
141:14,15
160:12 161:20
**either** 67:12
88:23 109:22
116:5 162:17
**electronic**
16:15 17:11
80:17 93:20
134:24
**element** 33:13
33:17
**elements** 34:19
**eligible** 15:9
**elizabeth** 4:16
8:20
**elizabeth.kelly**
4:18
**ellis** 1:16 3:15
4:3,12 8:20

**email** 6:11 7:3
7:8,14 42:18
43:14 44:4
53:17 54:4
98:4 109:23
137:23 138:1
147:23 148:12
148:23 149:23
150:6 151:2
159:18
**emailed** 53:14
119:6
**emails** 53:19
125:13
**embarrassing**
137:2
**emotionally**
122:23
**emphasis** 85:5
108:7
**employed**
107:12
**employee** 10:8
11:22 12:3
149:3 165:14
165:15
**employees**
62:22 65:1
108:5 124:21
135:10
**enables** 18:9
**enact** 62:19
**ends** 43:12

**engaged** 40:19 41:9
**enhancements** 115:15
**enjoy** 121:20
**ensure** 14:4 37:9 52:2 123:17
**ensuring** 31:19 52:5
**entailed** 27:20
**entered** 60:5 62:6
**entering** 76:5 77:9
**entire** 25:24 81:9 122:22 125:10
**entirely** 33:12 55:11 81:11
**entities** 79:16
**entry** 145:20
**eric** 1:6
**errata** 166:11 166:13,16
**error** 94:17
**errors** 93:15 94:20
**especially** 33:17 112:10
**esquire** 2:6,7 2:16 3:7,8,9,18 4:6,7,16 5:7 166:1

**essentially** 129:22
**et** 8:12 166:4 167:1 168:1
**evaluating** 83:4
**event** 36:7 69:5 69:10,13,21 70:7,19 71:23 72:7 75:1 78:20,23 79:9 79:19 80:3 83:12 90:18 96:6 115:21 135:2
**events** 33:3 37:13 69:2 70:14 75:10,20 81:11 91:1,2,2 106:10 132:16 132:17,18,19
**everybody** 21:22 135:20 136:1 146:7
**ewc** 5:16
**ex** 1:5 41:13
**exact** 44:21 98:17
**exactly** 14:15 94:15 106:13 112:10 146:18 148:14 163:17
**examination** 6:2 9:10,21 10:1 120:8

155:8 164:10 165:9
**examined** 9:14 165:9
**example** 15:3 76:3 93:15 108:17 131:13 133:15 138:11 141:7 151:2
**examples** 133:16 160:8
**excel** 142:16,20
**excerpt** 45:15 58:13 61:10 100:11 101:21
**exchange** 52:20 53:19 102:17
**excuse** 51:4
**exhibit** 6:9,10 6:11,13,16,18 6:19,22 7:2,3,5 7:8,12,14,17,20 30:24 31:5,14 37:18 42:6,11 42:17,23 44:3 45:14,17 47:3 57:2 61:2,5 85:24 92:2,9 92:21 97:11,15 97:17 109:16 109:18 125:19 127:18,20,24 137:13,15 142:4,6,10

147:12,15 151:17,19 152:2,4
**exhibits** 6:8 7:1
**existence** 63:19 156:20
**expect** 15:4,7 135:6
**expectation** 103:14
**expectations** 105:3,17
**expected** 14:22
**expensive** 108:3
**experience** 13:8 19:11 20:3,22 20:23 21:7 96:14 135:5 136:18 145:11
**expert** 41:17 59:23 147:3
**experts** 131:4
**expires** 165:21
**explain** 51:15
**explanation** 78:1
**export** 150:12 150:14
**expressed** 50:9
**expressing** 46:2
**extends** 139:10
**extension** 151:13

**[extent - form]**                                                   Page 16

| | | | |
|---|---|---|---|
| **extent** 70:2 91:19 | **far** 11:4 88:12 | 149:17 | **flat** 113:23 |
| **external** 131:4 | **fashion** 94:18 | **finally** 58:12 | **flom** 3:3 |
| **extremely** 90:4 | **features** 96:22 | **financially** 165:15 | **floor** 4:14 5:5 |
| **eyes** 37:7 | **fed** 103:14 | **find** 100:11 | **focused** 56:19 |
| **f** | **federal** 9:23 | 107:16 113:3 | **folks** 41:20 66:18 67:10 |
| **facilitate** 24:10 | **feedback** 144:21 145:1,3 | 118:4,19 136:21 140:12 | **follow** 58:17 93:7 103:20 |
| **facilitating** 12:24 | **feel** 24:23 56:22 62:8 96:20 | 145:12 | 126:4 132:20 145:13 |
| **facilities** 12:19 18:10 | 105:12 107:22 108:6 126:14 | **fine** 50:18 107:6 111:6 | **followed** 83:11 106:16 163:17 |
| **fact** 101:5 121:13 | 126:16 153:1 161:14 | 120:11 139:5 159:15 164:15 | **following** 57:4 |
| **facts** 39:15 | **feels** 51:24 126:5 | **finish** 48:6,7 87:10 115:4 | **follows** 9:15 |
| **fails** 166:18 | **fell** 15:12 | 120:24 | **foregoing** 168:5 |
| **fair** 54:20,20 81:13 | **fellow** 108:5 | **finished** 116:14 | **forever** 144:4 |
| **fall** 29:23 | **felt** 49:6,15,18 57:11,15 58:5 | **firm** 5:3 42:2 153:8 | **forget** 15:13 |
| **false** 26:11,20 28:10 | 58:9 75:3 82:12 104:21 | **first** 9:13 12:24 19:6 31:10 | **form** 13:3 14:14 16:3,8 |
| **falsely** 38:4 | 104:23 105:19 126:10 | 32:10 44:4 84:5 86:11 | 17:5,16 18:14 19:24 20:17 |
| **familiar** 73:16 102:21 128:6,8 142:17 | **fictitious** 131:10 | 91:13 94:11 113:21 115:4 | 21:13 22:22 23:5,12,23 |
| **familiarity** 92:15 | **figure** 83:5 | 128:9 137:20 139:22 142:12 | 25:11,16 26:14 27:17 28:21 |
| **family** 11:18 | **file** 36:2 | 142:14,19,19 144:2 148:12 | 29:24 32:4,22 33:15 34:2 |
| **faq** 139:7,20,22 141:9 | **files** 152:12 161:7 | 148:22 155:21 | 35:4 36:18 37:1 38:15 |
| **faqs** 82:14 139:13 140:15 146:6 150:9 | **filler** 110:24 | **five** 11:6 42:24 67:13 83:18 | 39:7,23 40:18 40:20 43:22 |
| | **filtering** 148:20 | 85:9,10 87:11 | 46:6,12,15,22 50:13 51:11,17 |
| | **final** 37:11 61:22 106:15 123:22 129:18 | | |

**[form - geoffrey]**    Page 17

| | | | |
|---|---|---|---|
| 52:9 53:13 55:19,23 56:11 56:15 59:9 63:11,14 64:5 71:4 72:2,16 73:1 74:10 76:8,16 77:1 77:11 79:10,21 80:2,12 81:1 81:17 84:20 88:20 89:18 90:5 91:22 92:22 94:7 102:1 104:6,9 105:21 108:15 109:10 115:1 145:16 152:21 153:3 154:5 156:14 157:18 158:7,15 159:7 163:4,11 164:3 **formal** 23:16 94:19 132:3 163:12 **formally** 38:22 66:6 94:22 **format** 7:3 98:1 98:7 109:23 **formed** 65:15 **former** 10:17 **forty** 11:6 **forward** 52:3,6 55:10 56:20 83:23 | **found** 86:24 118:3 **foundation** 16:4,9 17:6 20:5 23:6 27:18 28:22 34:3 35:5 37:2 46:16,23 59:10 64:6 74:11 76:9,17 77:12 79:11 81:18 89:19 106:23 108:16 158:16 159:8 163:5,15 163:19 **four** 6:18 19:11 20:4 21:2 54:16,21 66:9 124:7,12 131:6 153:7 **fr** 149:17,17 **frame** 29:3 78:4 **franklin** 11:3,5 **frequently** 82:16 130:22 132:10,23 135:12 159:19 160:1 **friends** 11:18 **front** 30:21 37:17 44:3 57:3 61:3 97:16 118:17 | 121:6,23 127:24 155:11 155:16 159:17 161:18 **frustrated** 109:5 **full** 11:22 12:3 12:11 31:17 **fully** 24:24 59:18 115:7 **fun** 123:19 **function** 35:17 70:19 72:18 81:10 97:19 116:18 143:6 **functional** 134:2 **functionality** 142:2 **functionally** 149:13 **functions** 96:23 **fundamentally** 35:16 **funny** 110:23 **further** 22:10 24:24 94:17 102:15 120:5 165:13 | **ga000051023** 7:4 **ga001681528** 6:23 **ga001991728** 6:20 **ga1306739** 7:13 142:11 **gap** 34:7,9,12 35:6 36:2,4 37:12 88:17 91:17 103:13 123:15 **garfield** 147:24 148:9,10,14 **gary** 147:23 148:1,2,3,7,14 148:15 **gathered** 118:2 **gears** 137:7 **general** 85:16 85:18 125:4 133:19 136:23 141:5 **generally** 11:2 30:10 75:4 128:13 131:23 **generating** 143:19 **genuinely** 121:17 **geoff** 8:21 **geoffrey** 3:18 166:1 |
| | | **g** | |
| | | **g** 8:1 **ga** 2:5,15 | |

**[geoffrey.wyatt - handwritten]**                    Page 18

| | | | |
|---|---|---|---|
| **geoffrey.wyatt** 3:20 166:2 | **going** 12:5 15:21 16:19 21:5 30:20,20 31:10 39:8 42:10 45:13 47:7 49:2 56:22 57:1,12 57:13,14,23 58:5,7,8,16 60:22 61:18 70:1 82:14 84:18 87:9 92:1 93:5 97:7 97:15 98:6 105:22 109:15 111:14 116:14 118:8,14 127:16 140:8 145:15 149:22 155:10 | 33:23 34:23,23 38:3,14,24 39:13 40:8 64:1 68:5,8 123:10 126:17 | **groups** 133:9 |
| **georgia** 1:2 | | **government's** 64:7 | **guess** 47:18 53:5 66:7 86:20 116:8,19 117:6,11 134:22 138:11 138:21,23 142:24 143:5 158:20 |
| **getting** 32:15 32:18 71:11 117:7,10 123:1 | | **graceful** 30:22 | |
| **giant** 113:20 117:8,18,21 150:14 161:8 | | **graduate** 19:10 | |
| **gila** 149:3,3 | | **graduated** 11:21 12:2,7 152:19 | **guessing** 40:22 53:18 94:14 |
| **give** 40:16 48:13 51:21 91:11 108:17 110:9 144:21 146:11 | | **great** 104:19 112:6 149:21 151:15 | **guidance** 140:21 |
| **given** 52:23 53:11 55:17 72:21 106:18 146:15 165:11 168:9 | | **green** 2:16 | **guide** 56:2 91:6 106:15 123:24 140:15 |
| | | **griffith** 3:9 | **guides** 130:6 146:21 |
| **gives** 33:5 | **good** 11:6 21:4 29:19 44:10 57:11,16 58:5 88:23 89:1 97:4,5 108:22 120:13 153:6,9 155:6 | **group** 11:8 24:2 26:3,6 36:1 37:4,13 41:14,17,24 42:3 48:11 68:3,9,12,13,16 69:7 70:18 79:4 82:24 90:10,20 91:4 97:2,3 106:11 106:16,18,20 107:4,15 115:21 116:6 119:6 130:12 133:9 134:19 148:8 149:4 151:4 | **guy** 86:20 |
| **go** 10:3 12:22 29:10 35:19 49:16 72:20 77:20 78:12 82:4,22 90:22 115:8 125:9,11 132:5 136:5 145:17 153:5 | | | **guys** 117:16 120:12 146:20 |
| | | | **h** |
| | | | **h** 10:6,6 119:12 167:3 |
| | **gotten** 145:7 | | **half** 20:3,22 |
| | **govern** 128:13 | | **hand** 42:10 61:1 97:7 109:15 165:17 |
| **goal** 35:10 132:2 | **government** 14:1,3,9,11,22 16:20 17:3,13 18:12 20:24 24:11,20 27:15 | | **handle** 96:12 |
| **goes** 63:10 101:5 | | | **handling** 93:16 |
| | | | **hands** 145:9 |
| | | | **handwritten** 118:14 |

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[hannah - identifying]**

Page 19

**hannah** 2:7,10 8:17
**happen** 46:21 158:11
**happened** 26:24 59:3 78:18
**happening** 26:16
**happy** 153:6
**hard** 38:5 58:22 59:17 88:8 153:10
**head** 22:12 34:9 86:14
**health** 16:15 17:11 19:8,15 21:2 32:24 35:7 62:23 65:2 76:5 77:9 80:8,17,19 93:18,20 119:10 121:1 121:19 127:8,9 128:15,24 129:5,17 139:18 141:11 146:22,23
**healthcare** 120:21
**healthit.gov** 140:5
**heard** 94:11

**heightened** 52:2
**hell** 110:17
**help** 12:19,21 25:21 41:20 47:11 97:2,3 146:16
**helped** 14:4 56:3,4 121:15
**helpful** 136:2,7 136:10
**helping** 24:4 49:19 134:15
**helps** 71:21 103:23
**hereto** 168:7
**hey** 38:22 52:13 74:3 77:5 81:22 84:8 139:4 147:7
**hhs** 129:16
**hi** 44:9 149:2
**high** 107:23 129:19 132:4
**highlight** 128:21
**highlighted** 31:11 61:13,22 62:18 86:4 92:24 93:3 94:17
**highly** 6:22 7:20 103:15

**hill** 4:7 8:21
**hire** 108:2 131:3
**hired** 41:14,19 41:21 68:15
**hit** 37:5 141:11
**hive** 78:14,16
**hl** 146:21,22
**home** 154:12
**honestly** 41:5 53:15 54:15 62:8 66:5 72:3 72:10,17,17 75:22 80:6 111:5 117:5 118:4 145:14 145:18 162:14
**honorable** 56:18
**hopefully** 71:21
**horrell** 5:16 8:23
**hour** 87:10 153:19
**hours** 135:15 149:11 150:15 153:13,20
**house** 5:16 8:23
**hr** 81:9 135:21 158:23
**huge** 144:7
**huh** 20:12 22:9 28:16 29:11 34:20 58:23

62:1 67:8 89:14 99:1 100:6,13 119:2 125:22 155:23 157:8,10 160:24
**human** 129:17
**hunt** 136:21

**i**

**i.e.** 141:9
**ia** 79:17
**ice** 126:8
**idea** 32:10 38:20 69:15 74:12 79:22 97:22 103:14 156:1
**ideas** 147:4,10
**identification** 31:6 42:7 45:18 61:6 86:1 92:10 97:12 109:19 127:21 137:16 142:7 147:16 151:20
**identified** 9:12 61:2 162:16
**identifies** 49:10
**identify** 85:14 142:10 152:2,3
**identifying** 165:4

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

il  4:5
immediately
  126:3
immense  126:6
  126:10
impact  69:13
  76:14 83:6
  84:3,17 121:4
implement
  12:22
implementati...
  146:21
implemented
  78:4 141:12
implementing
  94:19 133:10
important
  147:3 163:22
impression
  36:15 126:22
improve
  123:16
improvements
  29:17 121:14
  141:10 160:11
inadequate
  105:20
incentive  13:24
  14:3,8 16:6,20
  18:12,12 21:1
  138:16
incentives  14:6
  15:1

incentivize
  14:10
include  37:12
  37:12 89:15
  128:17
included  19:5
  20:6
includes  130:4
including  91:16
inconsistencies
  149:8
incorporate
  145:3
incorrectly
  93:8
index  6:1
individual
  154:10
industry  21:23
  124:15,19
  130:13
inexperienced
  86:10 87:1
  125:21 126:2,5
inform  64:13
informal
  110:17
informally  67:6
  82:14 84:2
  115:16
information
  15:20 20:6
  40:17 76:5
  77:9 80:8,20

116:4,11 119:3
  140:18 161:14
initial  132:18
  143:23
initially  163:2
initiated
  157:16
inpatient  43:13
  43:17
insofar  62:6
inspector  85:16
  85:17
instances  151:3
instruct  70:4
insufficient
  95:13,20 105:7
insurance
  18:16
insurances
  14:22
integrity  6:16
  27:10,13,22
  29:9 56:20,21
  60:3,12,24
  64:11,18 78:5
  79:2 85:9
  156:22 158:5
  158:12
intended
  142:21
intent  55:6,9
interact  121:3
  122:4 127:11

interacted
  108:11
interaction
  78:11 131:24
interchangea...
  71:1
interested
  32:14 61:11
  107:17,19,20
  121:12 165:16
interesting
  117:20
interface  134:3
  144:14
intern  11:12
  20:4
internal  23:21
  45:23 114:24
  114:24 119:16
internally  22:8
  38:12 63:6
internship
  11:18 120:15
interoperability
  131:13 146:1
interpreting
  110:19,20
interrupt  76:23
interview  6:18
  22:7 86:5
  125:20 126:20
interviewed
  22:8 85:12,18
  86:13,16

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[interviewer - know]**

Page 21

**interviewer**
  86:8 126:21
**intimately**
  114:19
**introduce** 8:14
  9:1
**introduced**
  143:12
**invested** 107:21
  122:23
**investigated**
  26:10
**involved** 28:19
  28:24 39:14
  67:6 70:17
  83:20 86:22
  96:17 106:1,2
  106:6 109:12
  114:19 122:10
  126:7
**isaac** 147:24
  148:1,23
  149:22
**issue** 39:4
  59:15 68:20
  72:23 74:6,14
  74:17,18 75:2
  76:7,19 77:16
  78:18,21,22
  81:3,14 82:1,5
  82:20 83:11
  84:15 106:22
  149:9,19

**issues** 38:9
  41:11 63:6
  76:15 78:13
  91:20 93:11,15
  98:18 99:3,5
  133:6 134:4
  135:3

**j**

**j** 3:8 10:5
**jira** 77:16,16
  77:22,23
  115:13 116:5
**jiras** 115:17
**job** 21:4 56:23
  67:15 68:22
  97:5 128:12
**join** 146:8
**joined** 21:21
**joke** 123:7,11
**jordan** 1:15 6:4
  7:8 8:10 9:9,20
  10:5,19,21,21
  42:18 44:9
  49:7 50:21
  65:5 77:6
  139:4 160:21
  165:3 166:5
  167:2,24 168:2
  168:4,12
**june** 7:3 110:4
**jury** 10:4 66:17

**k**

**katz** 5:3,7 8:22
  58:20
**keep** 81:19
**kelly** 4:16 8:20
  98:12 99:24
  100:3,3,11
  101:5 102:18
  103:11,12
  105:8 110:1,1
  110:14 111:12
  111:19,23
  112:5
**kelly's** 104:3,16
  105:1
**kept** 119:4,16
**kids** 121:15,16
**kim** 8:20
**kimberly** 4:7
**kimberly.hill**
  4:10
**kincaid** 2:12
  9:4
**kind** 15:9 49:14
  57:11 58:4
  59:16 67:6
  76:2 82:13
  91:5 110:16
  113:24 114:2
  120:23 121:3,7
  121:16 122:3
  123:22 129:18
  131:24 132:2

141:21 142:23
  143:4,6,12
  146:10 150:20
  151:10
**kirkland** 1:16
  3:15 4:3,12
  8:20,21
**kirkland.com**
  3:20 4:9,10,18
  166:2
**knew** 30:16,18
  38:19,19 40:15
  51:20 56:22
  96:13 146:19
  147:1,2
**know** 15:1,15
  21:14 26:22
  29:3 30:13
  34:8,11 35:20
  38:13 40:2,21
  41:23 42:1,2
  43:24 50:1
  51:5 52:12,14
  53:14 54:16
  55:9 56:16,16
  56:17,18 58:17
  59:22 62:9
  64:16 66:8
  67:11,12 69:18
  70:12 71:14
  72:10 74:2
  77:23 80:6,13
  80:24 81:8
  82:2,6 84:6,15

**[know - live]**                                                      Page 22

| | | | |
|---|---|---|---|
| 86:8,12,19,19 88:6 89:21,23 91:13,23 93:7 94:23 99:4,22 100:2 102:20 106:15 107:3,5 107:7,9,14 108:20,21 111:1,18 112:20 115:22 116:12,13 117:23 118:17 121:6 123:18 125:1,2 129:17 134:1,7,23 135:1,3 137:4 137:5 144:22 145:8 146:6,19 146:24 147:1,8 150:23 153:17 154:13,23 158:17,17,18 158:24 159:9 162:7 **knowing** 96:19 **knowledge** 62:23 65:2 165:7,12 **known** 34:13 115:16 117:17 **kyle** 6:13 7:8 41:3,5,13 42:19 44:5 47:4 51:20 | 53:15 82:22 107:2 137:24 | **leading** 139:3 **leads** 102:11 **learn** 12:20 23:20 **learned** 38:8,8 47:9 **learning** 21:23 48:10 **leaves** 101:12 **led** 120:18 **left** 41:19 42:3 75:16 126:21 **legal** 8:7 32:7 166:23 **legitimate** 149:16 **lengthy** 146:3 **lens** 123:21 **leon** 2:3,13 **letters** 66:20 69:6 **level** 39:16 129:19 132:4 146:22 154:17 **license** 9:13 **life** 122:24 123:6 124:4 **light** 50:10 **limit** 150:22 **limitation** 100:22 **limited** 72:22 93:12 | **line** 47:8 57:6 58:2,15 59:13 59:13 102:19 103:20 167:4,7 167:10,13,16 167:19 **link** 139:11,22 141:7 **linked** 159:19 **links** 140:16 **list** 69:4 119:11 141:12 160:9 **listed** 129:23 141:11,16 160:12 **listen** 20:8 **literally** 75:6 113:17 117:16 135:18,20 140:11 153:18 **litigant** 8:17 **litigation** 8:13 30:9 59:24 **little** 27:6 37:16 41:8 55:5 63:10 71:15 73:11 88:16 101:19 102:15 117:22 118:12 123:11 **live** 11:1,3 12:22 35:21 36:7 37:13 115:10 |
| | **l** | | |
| | **l** 119:12 **lab** 24:2,4 25:21 33:2,5 35:23 36:1 68:14,16 **lanes** 143:4 **language** 101:5 102:8 **large** 93:13 142:4 **largely** 93:10 **latent** 94:24 **lateral** 19:1 **laugh** 110:17 **laughing** 111:2 **lauren** 3:9 **lauren.griffith** 3:13 **law** 5:3 **lawsuit** 26:15 38:19 39:13,17 40:2,11 **lawyer** 27:20 29:1 30:8 109:11 **lawyers** 39:10 **lead** 11:7,10 124:17,17 **leadership** 107:16,22 | | |

**[lived - manual]**

Page 23

**lived**  114:21 116:11 119:6

**llc**  1:10 2:2 8:12 166:4 167:1 168:1

**llp**  1:16 3:3,15 4:3,12

**locally**  80:9,14 80:20

**log**  90:20

**lol**  110:16,21 110:22 111:1

**long**  88:21 92:17 120:21 120:23 124:5 135:14 141:14 144:1,5 157:19 157:23 158:3 158:10,18,19

**look**  31:9 34:15 42:12,16 46:18 56:3 79:22 81:2 82:5,7,13 82:19 84:8 107:10 123:15 123:22,23 124:1 129:20 130:8 140:14 147:7 148:12 151:23 160:4 162:15

**looking**  47:22

**looks**  43:1 44:22 97:18

98:4,13 109:22 110:4,14 132:15 137:23 138:6 139:17 139:19,20 140:3 142:12 147:23 148:16 148:18 149:2 161:19,23 162:16

**lost**  34:16

**lot**  55:14 85:10 85:11 123:23 130:14 133:18 136:8,9 142:23 144:6,6 160:18

**lots**  50:5 85:4

**loud**  110:18 111:2

**love**  121:1,2,2 147:2

**low**  56:8

**lyndale**  5:15 9:3

**m**

**m**  1:22 3:18 10:6 165:2,21 166:1

**m1**  161:18,18 161:23

**m2**  159:17,18

**m3**  155:18

**ma**  4:15 5:6

**macon**  1:3

**made**  15:5 30:11 49:17 50:22 54:12 55:13 72:14 118:10 142:19 168:5

**madhjusudhan**  6:4

**madhusdhan**  165:3

**madhusudhan**  1:15 7:9 8:10 9:9,20 10:3,5,7 10:22 11:1 20:8 22:4 24:22 36:12 41:2 46:14 88:2,4,5 127:17 137:13 142:4 147:12 151:16 166:5 167:2,24 168:2 168:4,12

**maintains**  140:18

**maintenance**  130:9

**make**  13:1 73:11 94:20 106:2 121:4,13 126:6,10 136:11 138:22

143:13 154:15 161:15

**makes**  92:14 151:14

**making**  13:4 29:16

**man**  104:17 125:1 133:20 153:17

**management**  11:10 20:4,22 25:17 63:22 71:18 123:4 124:6,14,18,22 129:8 132:1 143:2,9

**manager**  11:8 18:22 124:20 137:3,4,5 156:5 160:21

**manager's**  137:5

**managers**  122:15

**mandated**  65:14

**manhattan**  3:4

**mankind**  117:17

**manner**  53:8 56:18 74:20 91:19 161:5

**manual**  93:10

**[map - mentioned]**                                                    Page 24

**map**  141:23

**march**  44:5,12
  44:22 85:13,19
  86:9 87:3

**mark**  85:21
  97:15 127:17
  137:13 142:3
  147:12 151:16

**marked**  6:10
  6:15,17,21
  30:23 31:5
  42:6,11 45:14
  45:17 53:20
  61:5 85:24
  92:2,9 97:11
  109:18 127:20
  137:15 142:6
  147:15 151:19
  155:18

**market**  17:13
  18:9

**marking**  97:7
  109:16

**marks**  152:1

**martin**  4:6 8:19

**martin.roth**  4:9

**massachusetts**
  1:18 8:9 11:3,5
  165:5

**massive**  113:16
  113:17 144:13
  152:5

**material**  116:2
  129:21 132:6

146:12

**materials**
  130:11

**matrix**  141:19
  141:20 142:13
  142:14,18,22
  143:8 144:2,15
  145:4 155:15
  155:16 156:15
  157:2

**matter**  8:11
  44:21 52:22
  53:22

**matters**  72:22
  165:8

**meador**  48:10

**meadors**  6:13
  7:8,15 41:3,10
  41:10,13,21
  42:19 43:2,8
  44:4,5,9,11,23
  44:24 45:8,12
  45:15,24 46:2
  47:5,7,8,16
  49:1 50:3,8,21
  51:2,7 52:5,20
  53:9,17 55:2,4
  55:15 57:2,7
  58:3,13,19,23
  59:4,7,22
  82:22 107:1,2
  137:24 138:5
  139:1 140:22
  147:13 159:18

**meadows**  47:4

**meagher**  3:3

**mean**  12:18
  16:15 36:19
  43:24 50:4
  51:4 65:16,20
  73:8 74:12
  75:6,6 76:2
  78:7 79:13,15
  80:13 84:7
  85:8 89:11
  90:6,8 94:13
  95:21,23 98:4
  106:13,17
  107:1,11,24
  108:24 109:1
  110:23 111:1
  117:16 119:21
  122:13 126:18
  126:23 127:11
  136:8 144:7,12
  147:1 153:6
  160:16 164:4

**meaning**  58:4
  58:21 138:8

**means**  77:7
  149:17

**meant**  47:23
  142:23,24

**measures**  15:1
  15:16,16 66:14
  122:17 138:2

**medicaid**  14:20
  15:9 16:13,19

17:23 18:5,11
  18:16

**medical**  12:19
  14:9 15:24
  16:1,21 17:1
  18:10 80:22

**medicare**  14:20
  16:13,20 17:23
  18:5,11,16

**medication**
  144:11 145:22
  145:22,23

**meds**  145:19,21

**meet**  29:17
  64:22 123:18

**meeting**  32:2
  90:20,21 111:9

**meets**  33:23,24
  35:1,18 93:21

**member**  85:12
  103:1 123:3

**members**  63:22
  66:13 71:14,16
  71:17

**memo**  125:19

**memorializat...**
  114:9

**mentioned**  33:2
  121:23 122:16
  123:22 130:6
  131:5,12
  132:11 139:13
  139:23

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[mentioning - noting]**

Page 25

**mentioning** 133:13

**mentor** 124:13 124:14

**meredith** 9:4

**merit** 1:23 165:23

**message** 84:8

**messages** 125:14

**messenger** 110:22

**met** 14:12 101:24

**method** 163:13

**methods** 130:3

**mic** 37:5

**michael** 111:14

**middle** 1:2 57:5

**midway** 99:12

**mind** 78:14,16 115:5 125:19 164:6

**mine** 31:2 71:17

**minimal** 90:4

**minimum** 93:23 103:19 141:6 160:6,10

**minute** 87:11 110:9

**minutes** 11:6 28:4 87:10 88:10 155:4

**mirror** 82:8

**mischaracteri...** 79:11 104:10

**misconduct** 40:19

**misled** 48:11

**missing** 102:7

**mission** 120:18

**misstates** 153:3

**mistakes** 49:17

**modalities** 143:21

**modifications** 141:5 160:5,9

**modify** 145:22

**module** 141:1

**moment** 43:1

**money** 14:9

**monohan** 98:13 99:14 110:2

**months** 144:3

**morning** 138:9

**move** 19:2 21:5 22:1 25:23 26:3 55:10

**moved** 18:22 113:19

**moving** 52:3,6 56:20 89:3

**multiple** 96:4

**multiyearlong** 114:4

**multiyearslong** 114:7

**n**

**n** 8:1 10:5,6

**name** 6:3 10:4 10:15,17 28:12 42:18 49:13 64:8 71:10 76:5 77:9

**near** 103:15 104:4

**necessarily** 84:6 153:9

**necessary** 168:6

**need** 17:2 21:4 22:15 24:22,24 25:2 35:20 51:16,18 118:15 120:10 141:1 153:9 155:4

**needed** 131:4 132:11

**needs** 16:1 17:4 17:12 149:6

**negative** 53:11

**negotiation** 27:15

**never** 19:21 20:14 69:17 108:9 164:6

**new** 3:6 21:22 22:21,23 23:1 29:13 39:1,2

107:10 118:11 124:11 129:12 129:18 130:19 130:23 132:5 132:12,24 143:11 146:14 160:15

**news** 52:23

**nodding** 25:4 110:8 120:16 139:14 157:12

**nomenclature** 160:19

**nonconformit...** 133:8

**nonresponsive** 22:2 25:24

**nonsense** 118:9

**normal** 109:1 144:24 149:10 150:15

**normally** 116:11 123:12

**nos** 131:1

**notary** 9:14 165:2,22 168:13,19

**note** 166:10

**noted** 168:7

**notes** 139:7

**notice** 9:21 144:9

**noting** 114:13

Jordan A. Madhusudhan                                    September 3, 2025
United States of America, et al. v. eClinicalWorks

**[november - okay]**                                         Page 26

| | | | |
|---|---|---|---|
| **november** 165:22 | 79:21 80:2,12 81:1 84:20 88:20 90:5 91:22 92:22 94:7 104:6,9 105:21 109:10 115:1 136:4 145:15 156:14 157:18 158:7 158:15 159:7 163:11 164:3,9 | **obtaining** 47:11 | 133:20 134:11 135:8 144:3 146:18 151:7 153:17 |
| **nowadays** 33:17 | | **obviously** 52:1 84:9 104:21 107:10 122:19 131:12,15 136:8 143:2 150:15 153:6 154:13 158:22 | **oig** 40:14 69:6 72:6,7,15 79:4 79:19 85:13,14 |
| **number** 15:5 75:22 93:13 125:3 | | | **okay** 10:17 15:16,19,23 16:23,24 20:9 20:11 22:18 24:23 25:3,7 27:9 28:14 29:6 34:14 40:5 41:7 42:10,15 43:7 43:11 44:9 50:16 54:20 57:18,21,22 58:12 59:13 60:16,20 61:14 61:17,20 62:12 63:17,24 64:10 65:4,19,21 66:23 67:5,12 69:8,11 70:22 71:20,22 72:6 72:21 74:1 76:3 79:4 81:13 82:9,20 83:13 87:8 90:2 98:8 99:7 99:23 100:2 102:24 103:22 |
| **nw** 3:16 | | **occasion** 99:2 116:24 117:3 | |
| **ny** 3:6 | **objection** 17:5 24:15 25:11 27:17 28:21 32:4 33:15 34:2 63:14 64:5 74:7 76:8 76:16 78:19 79:10 81:17 89:18 102:1 106:23 108:15 139:3 150:1 152:21 153:2 154:4 163:4 | **occur** 93:12 | |
| **o** | | **occurred** 28:2 28:5 | |
| **o** 8:1 10:5 144:15,15 | | **occurs** 82:9 | |
| **oath** 46:10 165:9 | | **october** 7:9,14 12:3 137:24 138:12 148:3 159:22 166:3 | |
| **object** 13:3 14:14 16:3,8 17:16 18:14 19:24 20:17 21:13 22:22 23:5,12,23 25:16 26:14 29:24 32:22 35:4 36:18 37:1 38:15 39:7,23 40:20 43:22 46:6,12 46:15,22 50:13 51:11,17 52:9 53:13 55:19,23 56:11,15 59:9 70:1 71:4 72:2 72:16 73:1 74:10 77:1,11 | | **office** 78:8 85:16,17 113:18 121:6 121:23 | |
| | **obligation** 52:15 55:10 | **official** 11:9 163:6 | |
| | **obligations** 64:23 | **oh** 43:5 50:7 54:1 67:11 74:13,17 85:4 98:17 107:24 108:8 114:12 117:16,20 118:17 125:1 126:12 130:20 130:20 133:18 | |
| | **observation** 96:14 | | |
| | **observe** 33:3 82:4 | | |
| | **obtained** 21:11 | | |

**[okay - page]**                                                      Page 27

103:22 104:14
105:6 106:8,10
106:13 109:15
111:3 117:12
117:21 126:24
129:12 133:14
138:13,22
142:3 144:21
151:15 160:22
161:18 162:15
**old**  107:8 118:6
**onc**  19:8,15
21:22 24:13,17
25:20 33:1
35:23 37:11
41:15 62:23
65:2 66:12
68:13,14 69:6
69:14,15,19,22
70:6 72:1 79:5
79:6,20 82:13
93:18 100:24
104:23 105:3
119:12 122:7
122:12 123:9
128:15,17
129:16 130:3
130:11 131:8,9
139:7 140:7,8
140:20 145:11
146:5,17 149:4
149:5,7,15
150:6 151:1,4
151:11,12,13

153:14
**onc's**  106:14
139:19 140:21
**once**  40:14
41:19 67:9
119:14 146:13
152:1
**one's**  162:14
**ones**  75:11
146:1 148:5
**open**  52:13
101:12
**opened**  77:15
77:19
**operate**  68:14
**operated**  24:3
**operating**
35:24 107:9
**opinion**  40:18
104:16,17
105:15
**opinions**
105:14
**opportunity**
51:22 56:2
133:24 134:6
**opposed**  89:4
**opposite**  55:24
**ops**  160:20
161:9
**optimization**
13:19,24
**options**  148:20

**order**  16:6 17:2
17:13 144:11
145:20
**organization**
41:19 60:14
67:17 68:4
71:13 103:4
104:20 156:24
**original**  45:3,3
**originally**
120:22
**outcome**
116:16 165:16
**outline**  128:11
143:12
**outlined**  79:3
97:1 104:24
106:14 127:12
149:8
**outlining**
129:15
**outside**  24:9,14
25:7,8 41:16
53:3 62:22
65:1 68:4,6
90:10 106:20
108:12,13,18
115:10 119:19
154:19
**overall**  114:3
129:19 135:18
**oversaw**  18:23
20:20 80:17
95:18 161:3

**oversee**  21:12
**overseeing**
19:14 29:12,16
29:22 31:23
32:15,17 36:13
38:11 39:1
60:9 75:15
80:10 83:20,24
87:4 88:18
122:6,11
**overseen**  19:21
20:1,14
**oversees**  24:20
**oversight**  26:8
26:9 60:13
67:16 103:1,4
104:20 156:24
**own**  42:2 91:15

**p**

**p**  8:1 77:20
119:12 127:14
**p.m.**  1:19 8:3,8
87:20,21
103:12 112:2
164:20
**packaged**
161:6
**page**  2:20 3:23
4:21 6:3,9 7:2
31:10 32:12
37:18,19 43:11
44:2 45:23,23
47:8 48:18,18

Jordan A. Madhusudhan                    September 3, 2025
United States of America, et al. v. eClinicalWorks

[page - person]                                    Page 28

50:20 57:5,17 58:13,14 59:2 61:10,12,22,22 62:12,13 86:6 92:23 93:2 99:13 102:18 125:21 128:20 132:13 142:15 148:22 162:15 167:4,7,10,13 167:16,19

**pages** 6:18 42:24 133:3 134:23 144:9

**paid** 59:22

**painfully** 110:21

**paper** 134:23

**papers** 124:1 130:13,16

**paragraph** 31:11,14 57:4 57:4 62:13 93:6,9 94:15 94:16 95:11,24

**parentheses** 101:12 141:8,8

**parmenter** 10:19,21 42:19 49:8

**part** 26:3 27:14 47:2 49:19 52:5 60:4 61:15,18,21

67:15 71:13 78:5 94:5 123:6,12 126:2 137:20 141:14 156:2,22

**participate** 16:6,22 17:2 17:14 18:11 30:8 89:22

**participating** 111:9,17

**participation** 105:19

**particular** 13:8 67:1 98:3 116:23 117:3 146:1

**particularly** 64:12 109:7

**parties** 9:22 165:14,15

**parts** 123:2 128:11

**pass** 31:20 38:5 93:24 116:2 119:1,7

**passed** 94:22 116:1 119:13

**passing** 32:1,19 36:15,21,23 101:22 119:4

**passionate** 104:18 120:20

**password** 76:6 77:10

**past** 19:22 49:2 49:18 120:19

**paste** 100:15

**patch** 138:9,12 138:22 139:9 160:14,16,17 161:4,12

**patched** 139:10 141:3

**patches** 141:5 160:3,6,9

**patient** 77:8 131:16

**patients** 14:21 14:23 15:8 16:13 17:23 76:4 121:8,10

**pause** 48:13

**paused** 115:4

**payment** 13:24 14:8

**payments** 15:18 16:21 18:13

**pdf** 119:8

**peak** 92:5

**pediatricians** 121:16

**pediatrics** 121:11,13

**penetration** 77:7

**pennsylvania** 3:16

**people** 9:1 54:21 65:9,11 65:13 66:1 67:6 71:11 74:12 75:22 86:17 116:12 128:9 130:14 136:18 142:23 147:4 150:15 160:19

**per000059346** 6:12

**per000824498** 7:10

**per001141969** 7:6

**per002084672** 7:17

**percent** 15:7

**perfect** 141:17

**perfection** 154:13,13,14

**perform** 68:5

**period** 54:15 95:17 138:7,10 138:14,17,20

**permenter** 1:6

**person** 10:23 12:18 36:12 38:11 60:9 75:14,18 77:8 90:19

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[personal - press]**

Page 29

| | | | |
|---|---|---|---|
| **personal** 76:4 80:7,19 96:14 96:18 113:12 126:6,10 | **pick** 149:6 | 74:21 78:2 86:18 94:14,15 107:7,13 122:2 124:8 125:7 | **positive** 121:14 |
| **personality** 154:11 | **picture** 117:10 **pictures** 118:8 **piece** 20:15 114:17 | 126:20 137:1 145:6,24 146:1 147:6 154:1 | **possession** 139:6 **possibility** 101:13 |
| **personally** 71:23 79:8,18 154:3,6,8 | **pissed** 111:15 **place** 56:21,21 89:9,11 158:4 158:8 | **policies** 23:10 23:13,22 102:12 127:1,5 127:8 135:7 | **possible** 81:11 149:19 **possibly** 162:9 **potential** 68:20 |
| **pertained** 96:23 | **plaintiffs** 1:8 2:1 30:24 42:11 45:14 61:2 92:2 97:15 109:16 125:19 | 136:12 159:3 161:21 162:3,5 162:6,17,24 164:6 | 72:23 78:17,22 134:4 **potentially** 76:14 81:15 |
| **pettinato** 98:13 98:14,15 99:14 99:14,15 110:2 | | **policy** 7:6 23:16 84:22 102:5,7 127:9 127:13,14 | **pqrs** 14:18 **predisclosed** 31:20 |
| **phi** 80:14 **phone** 112:19 113:8,12 117:15 118:7,8 | **plan** 132:3,3,4 **planning** 131:20 | 128:5,6,10,11 128:13 132:8 133:16,17 163:7,12,15,20 | **preparation** 69:24 90:24 **prerogative** 51:24 |
| **photo** 151:24 **photograph** 7:17 112:18 113:7,15 114:10 116:20 116:24 117:4 117:14 118:20 152:10 | **play** 163:16 **playing** 164:10 **plaza** 4:4 **please** 8:14 9:6 10:4 25:15 31:9 37:18 160:4 | **ponce** 2:3,13 **populating** 143:16 **population** 18:9 **portion** 61:11 62:18,18 64:12 86:4 149:12 | **prescribed** 106:14 **prescribes** 130:3 **prescriptive** 23:17 39:19 83:10 **present** 5:11 10:15 |
| **photographs** 116:21 | **plenty** 78:9 **plethora** 122:14 | **position** 19:4 19:14 22:21 | **president** 41:13 **prespecified** 100:24 |
| **photos** 118:11 **phrased** 20:9 **physician** 13:18,23 14:18 | **pllc** 5:3 **point** 4:4 21:20 23:24 42:1 43:6 49:15 54:12 67:19 | 26:13 75:16,17 | **press** 26:24 27:1 29:4,7 |
| **physicians** 16:21 | 68:19 72:21 | | |

**[press - proposal]**                                        Page 30

| | | | |
|---|---|---|---|
| 30:14,15 38:10 40:13,21 | 145:5 | 129:19,22 131:15 133:6 | **product's** 31:19 |
| **pretty** 23:14 56:8 78:1 97:4 | **problem** 13:1 77:10 | 144:24 151:11 163:17 | **production** 9:12 93:14 |
| **prevented** 94:21 | **problems** 93:16 | **processes** 20:2 23:21 93:9 | **products** 17:12 17:21,21 21:2 |
| **previous** 36:5 42:18 89:12 90:13 | **procedure** 128:23 129:2,4 129:15 130:18 131:2,18 | 94:6 149:10 | 43:16,17,19 133:23 141:11 |
| **previously** 6:10 6:15,16,21 30:23 31:5 45:17 61:5 92:9 | **procedures** 23:22 127:2 128:12 130:5 132:21 133:5 133:11 135:7 159:3 162:4,6 163:13 | **proctor** 91:4,5 91:9,9,11 106:17 148:3 | **program** 13:24 14:4,8 19:8 21:1 62:24 65:3 93:19 128:16 |
| **primarily** 99:24 129:11 | **proceed** 9:18 | **proctors** 148:5 **produce** 147:5 **produced** 34:24 | **programs** 16:7 16:20,22 17:3 17:15 18:11,17 138:16 |
| **primary** 54:11 67:19 | **process** 15:10 19:14,22 20:15 | **product** 11:7,8 11:9 19:2,4,6 | **progress** 114:3 114:14 116:14 |
| **prior** 21:9 30:3 37:22 45:7 48:12 54:4 89:12,15,24 117:14 139:15 153:3 158:2,11 159:1 162:22 | 20:21 22:20 23:10,14 24:5 24:21 25:9 26:10 29:16 32:15,18 33:1 34:6,7 37:8 41:22 48:20 72:20 74:22 | 20:4,22 22:23 25:17 30:5 32:24 35:7,15 36:9,24 37:9 43:13 56:17,23 63:22 66:11,13 70:3 71:18 96:8,9 100:22 101:15 108:1 119:11 120:18 121:18 122:14 | **project** 18:22 19:6,16,20 20:14,16 21:10 21:12 23:1,1 26:9 124:18 132:3,3,4 156:5 |
| **priority** 72:20 | 77:21 78:5 | 122:14 123:4,8 | **promoted** 18:20 124:8,17 |
| **private** 80:19 | 80:11 83:3,12 | 124:5,6,13,13 | **promotion** |
| **privileged** 39:9 70:3 | 83:20 84:1 85:6 87:4 | 124:22 127:8 128:24 129:5,8 | 18:20 19:1 |
| **privy** 27:19 | 88:17 89:17 | 132:1 143:1,9 | **promotions** 124:10 |
| **proactively** 94:20 | 94:19 114:5,7 | 143:14 144:7 | **proposal** |
| **probably** 138:21 143:10 | 114:14,19 122:6 123:2 | 147:5 160:21 | 149:14 |

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[propose - reading]**

Page 31

**propose** 149:11

**provide** 14:23
113:2 135:9

**provider** 14:20
15:12 17:11
80:22 145:20

**providers**
12:19 14:4,10
16:1,12,22
17:2,14,22
18:10 121:9

**public** 9:14
52:23 165:2,22
168:19

**publish** 82:18
129:18

**published**
161:23 162:14
162:18,21

**pull** 125:18

**purpose** 28:3
35:12 140:9

**purposes** 45:21

**pursuant** 9:21
64:1 79:17
159:5

**put** 22:5 30:13
30:15,20 42:14
67:9 97:16
108:6 113:24
116:6 119:22
150:6 152:15
155:11,21
159:13

**q**

**qa** 93:23 94:19
98:19,21,22

**qualification**
95:18

**qualifications**
14:12

**qualified** 21:11
152:17

**quality** 13:18
13:23 14:19,23
15:12,15 60:13
67:16 96:5,11
98:23,24
105:13 122:17
143:2,18

**quandary** 92:4

**quarter** 134:7
135:4

**quarterly**
133:21,22
134:10,17,18

**question** 15:19
15:22 20:9,10
24:23 25:1,2
28:3 34:17
39:11 40:10
43:23 45:22
47:8 48:8,9,15
48:18,21 50:19
50:20 51:14
57:8 58:19,24
59:14 66:1

88:21 90:16
100:4 115:2,8
138:3,15
140:22 141:9
145:16 149:4
152:22 153:3
154:5 160:1,2
160:20,21
164:7

**questioning**
153:4

**questions** 16:18
60:6 61:12,18
82:17 86:18
89:2 106:5
108:10 112:15
120:5 122:5,8
125:3 137:8,10
146:7,9 151:11
151:14,24
152:8,16,20,23
155:10 157:5
159:14,19
162:4 164:12

**quick** 93:4
100:4 138:2

**quite** 15:21
87:5

**quotation**
101:11

**quoted** 101:4

**quotes** 99:18
100:14 102:9

**quoting** 62:20

**r**

**r** 8:1 10:5 167:3
167:3

**r&d** 113:21

**raised** 51:9

**random** 118:15
118:18

**range** 149:12
149:16

**rather** 17:21
25:19 31:18
94:19

**reach** 53:4 54:7
54:13

**reached** 49:4
52:21 53:1,24
54:6,23 70:6

**reactive** 94:18

**read** 40:13 47:1
48:23 49:23
57:5,23 58:17
62:9,10 64:12
64:23 93:4,6,7
94:2,14 95:4,9
96:1 101:17
104:8 126:3
136:9 147:8
160:2 166:9
168:5

**reading** 57:24
58:16 94:13
100:7 105:11

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[reads - related]**

Page 32

**reads** 100:21
104:2
**ready** 110:12
**real** 39:3,3 95:2
111:9,17,18
131:16
**really** 15:3
30:13 74:20
76:18 78:3,21
83:8 84:16,21
93:4 97:5
121:2,2,17
122:2 124:14
126:13,14
146:3,3 153:9
**realtime** 1:24
165:24
**reason** 166:11
167:6,9,12,15
167:18,21
**reasonable**
150:11
**reassure** 52:22
55:6
**recall** 28:11,17
40:24 41:2
45:12 46:2
51:7,15 55:5
60:6 67:14
71:23 79:7
81:6 85:11,18
86:13 90:14
122:8 137:10

**recalled** 57:10
59:7
**recalls** 52:21
**receipt** 166:17
**received** 19:12
74:21 112:16
**receives** 36:9
**receiving** 14:6
**recently** 118:10
**recertification**
139:8
**recertified**
141:2
**recess** 87:20
**recognize** 98:1
98:9 137:19
146:10 147:19
**recollect** 46:19
53:8
**recollection**
28:1 50:2 94:4
111:11
**recommendat...**
67:23,24
141:21 144:17
144:18,20
156:2,13,17
**recommendat...**
99:6,10 156:23
157:1 159:6
**record** 8:6,15
16:16 80:17
87:18,24 93:6
93:21 142:11

152:3 164:18
165:11
**record's** 47:1
**records** 17:12
**recounting**
57:9
**recounts** 45:24
**recross** 6:7
155:8
**reduced** 109:23
165:10
**redundant**
114:17
**refer** 28:13
57:1 60:18
79:15 127:7
**reference** 131:2
**referenced** 68:3
95:23 166:6
**references**
118:24
**referencing**
102:5
**referred** 30:24
60:2,3 66:20
158:5
**referring** 30:9
34:7 47:2 54:1
**reflected**
114:15 163:1
164:1
**refresh** 50:1
94:4

**refresher**
136:10
**regard** 96:15
153:22
**regardless**
39:15 144:18
154:11 156:9
**registered** 1:23
165:23
**regulation** 82:7
91:12 96:24
123:21 141:22
**regulatory**
70:13,21 71:12
72:19 73:9
75:13 77:21
78:12 81:9
129:6 131:24
132:5 133:12
143:15 145:5
148:11 162:3
**reimburse**
14:10
**rel** 1:5
**relate** 62:7
122:2 128:12
131:19 133:4
134:5 139:15
**related** 20:2
38:20 39:14
46:1 62:11
63:7 69:9 75:4
79:9,20 112:11
127:2 130:2

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[related - responsible]**

Page 33

| | | | |
|---|---|---|---|
| 135:7 138:2 140:12 158:2 159:1,4 | 66:5,6 86:15 86:17 89:2 94:13 95:10 98:17 111:3,5 117:5 136:10 136:15 150:13 152:20,23 162:13 | 48:1 85:15 100:1 127:17 152:1 165:23 165:24 | 93:24 116:2 130:4 131:9 133:22 143:21 148:21 150:21 158:18 168:13 |
| **relates** 13:10 86:4 128:15 160:3,5 | | **reporter's** 22:13 27:7 | **requirement** 158:13 |
| **relating** 69:11 | | **reporting** 13:18,23 14:19 69:3 75:20 79:8 138:7,10 138:14,17,19 | **requirements** 25:22 29:18 35:19 38:5 62:24 65:3 67:1,2,2 89:4 93:19,22 123:10,13 129:13 131:21 |
| **relation** 47:5 54:18 76:10 | **repeat** 124:2 | | |
| **relative** 165:13 165:15 | **repeated** 93:15 **replace** 22:20 | | |
| **relators** 2:1 8:18 9:4,11 164:11 | **replacement** 161:7 | **reports** 94:18 115:24 | |
| | **replicated** 82:1 | **repository** 116:8 | **requires** 62:19 |
| **release** 26:24 27:1 29:4,7 30:14,15 38:10 40:13,21 146:14 | **report** 15:12,13 15:15 69:4,12 72:14,23 74:24 75:5 76:24 79:18 99:11,19 100:7,16 101:4 101:21 102:6 119:7,8 126:8 | **represented** 112:18 113:7 | **reserve** 164:14 **respect** 95:1 **respond** 24:24 57:7 100:10 111:14 148:23 |
| | | **representing** 2:1 3:2 4:2 5:2 | |
| | | **reproduced** 98:7 | |
| **relevance** 136:4 150:1 153:2 154:4 | | **reputation** 108:13,23 | **responding** 58:3 |
| **relevant** 149:12 | **reportable** 69:2 69:5,10,13 70:7,14,19 72:7 74:24 75:10 78:20,23 79:8,19 80:3 81:11 83:12 | **request** 77:20 85:13 | **responds** 94:17 156:16 |
| **relied** 21:1 24:9 24:11,14,16 25:7,17,18,19 | | **requesting** 53:21 | **response** 139:2 144:20 149:1 157:5 |
| **rely** 93:10 | | **require** 13:7 33:16 89:6 139:8 | **responsibility** 123:3 126:6,10 |
| **remain** 94:23 | | | |
| **remained** 37:9 | | | |
| **remember** 15:5 26:23 43:10 50:14 51:19 52:11 53:15 54:9,16,18 | **reported** 69:21 71:23 73:22 78:23 135:3 | **required** 16:14 18:3 60:12 63:11 64:19 68:6 74:24 | **responsible** 69:2 75:8,19 114:13 122:22 133:10 143:16 |
| | **reporter** 1:23 1:24 9:6 34:9 | | |

Jordan A. Madhusudhan                September 3, 2025
United States of America, et al. v. eClinicalWorks

**[responsible - roth]**                                    Page 34

| | | | |
|---|---|---|---|
| 143:19,22 | **ridiculous** | 162:18 164:8 | 35:4 36:18 |
| **restrict** 149:11 | 118:5 | **rights** 164:14 | 37:1 38:15 |
| 149:16 | **right** 10:7,9 | **rigorous** 23:14 | 39:7,23 40:20 |
| **result** 15:22 | 11:12,14,23 | 23:21 37:11 | 43:22 46:6,12 |
| 46:5 93:13 | 12:5,15,20 | **rinse** 124:2 | 46:15,22 50:13 |
| **results** 80:23 | 13:9,14,21 | **rob** 2:9 8:17 | 51:11,17 52:9 |
| **retested** 141:2 | 14:2,12 17:1 | **robert** 2:6 | 53:13 55:19,23 |
| **return** 166:13 | 17:10 18:19 | **robust** 96:21 | 56:11,15 59:9 |
| 166:16 | 20:16 26:7 | **rodighiero** 1:6 | 63:14 64:5 |
| **reveal** 39:8 | 27:24 28:7 | **role** 11:7 13:7 | 70:1 71:4 72:2 |
| **review** 23:21 | 29:14 30:7,12 | 13:16 22:5,7 | 72:16 73:1 |
| 37:22 39:19 | 42:3,14 44:19 | 22:21,23 43:3 | 74:7,10 76:8 |
| 43:1 45:22 | 45:1 48:5,8,9 | 43:20 63:18 | 76:16 77:1,11 |
| 62:4 63:5 | 48:17 49:1 | 87:1 98:16 | 78:19 79:10,21 |
| 69:20,23 77:20 | 50:18 52:24 | 134:9,16 | 80:2,12 81:1 |
| 96:21 110:9 | 53:7 55:1 56:8 | 152:18 156:5 | 81:17 84:20 |
| 123:13 134:24 | 58:2 60:2,8,20 | **roles** 63:23 | 87:13 88:20 |
| 166:7 | 60:24 62:4 | 65:12 120:14 | 89:18 90:5 |
| **reviewed** 23:18 | 63:3,10 64:10 | 124:11 | 91:22 92:22 |
| 77:24 162:17 | 67:5,15 68:2,7 | **roll** 22:24 | 94:7 102:1 |
| 162:21 163:22 | 71:3 75:23 | **room** 78:13 | 104:6,9,13 |
| **reviewing** | 83:22 85:2 | 86:16 | 105:21 106:23 |
| 23:14 123:7 | 88:2,10,15 | **roth** 4:6 6:6 | 108:15 109:10 |
| 153:14 163:14 | 89:8 90:2 | 8:19,19 13:3 | 115:1 120:9 |
| 163:18 | 94:16 96:15 | 14:14 16:3,8 | 127:16,23 |
| **reviews** 43:4 | 98:6 99:9 | 17:5,16 18:14 | 136:6 137:18 |
| 61:24 110:11 | 101:1,2 105:15 | 19:24 20:17 | 139:12 142:3,9 |
| 147:20 | 107:1 111:24 | 21:13 22:22 | 147:18 151:15 |
| **revise** 88:12 | 112:14 113:10 | 23:5,12,23 | 151:22 152:24 |
| **rich** 8:22 | 113:20 120:4 | 24:15 25:11,16 | 153:12 154:7 |
| **richard** 3:7 | 155:19,22 | 26:14 27:17 | 155:1,11 |
| **richard.berna...** | 156:6,12,21 | 28:21 29:24 | 156:14 157:18 |
| 3:11 | 157:9,17 159:3 | 32:4,7,22 | 158:7,15 159:7 |
| | 160:3,14 162:5 | 33:15 34:2 | 160:2 162:4 |

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[roth - serious]**

Page 35

163:4,11 164:3 164:9,14
**roth's** 157:5
**roughly** 87:7
**routinely** 116:21
**rule** 37:11 106:16 123:22 129:18,18 130:23 132:12 146:13,14 149:18
**rules** 9:23 49:20 132:24
**run** 91:3
**running** 57:13 58:6 149:10
**rxnorm** 38:9 58:22 59:17 141:7

**s**

**s** 10:6 62:14,15 144:15 167:3
**sachi** 5:14 9:2
**satisfactorily** 9:12 165:4
**satisfied** 31:17
**satisfy** 36:16
**saved** 80:20
**saw** 14:21
**saying** 33:20,24 40:1 83:13 100:4 102:4

111:15 149:5 149:22 150:3 150:10,19
**says** 15:15 31:15,22 35:14 44:9 47:15 48:16,22 49:12 49:22 53:23 57:8 58:11 59:6 74:17 100:11 101:3 101:10,18 102:9 103:13 104:1 111:12 111:19,22,23 111:23 112:3,4 112:5,7 131:3 131:7,20 139:20 140:24 149:2 162:23
**scenario** 31:18 139:5
**schedule** 149:19
**scheduling** 149:13
**school** 12:5
**scope** 44:17,23 123:14
**screen** 90:22
**screenshots** 150:5
**scripts** 36:22 93:11

**scroll** 118:12
**scrutiny** 52:2
**sdlc** 124:3
**second** 91:14 102:19 125:21
**secretaries** 121:24
**secretary** 121:7 122:1
**section** 99:18 99:19,20 100:16 101:6 102:9 128:23 129:4 132:21
**sections** 95:24 128:21 133:2,4
**security** 73:15 73:22 90:8 141:5 160:3,6 160:9
**see** 10:20 31:12 31:21 42:17,21 44:7,8 47:14 47:17 48:15,21 49:5,21 50:24 51:2 58:10 59:5,20 62:2 62:16 63:1,8 71:9 79:22 81:3 82:1 86:5 92:6 97:17 98:10 99:11,19 100:8,18 101:9 103:17 107:16

109:2,24 111:21 122:3 129:12 139:22 140:13 149:5,6 150:7 152:11
**seeing** 86:11 101:2 121:4
**seeking** 34:22
**seems** 149:15 150:3,11
**seen** 32:11 37:21 70:5 72:12 92:15,18
**selected** 22:6
**selection** 148:21
**selling** 17:11
**send** 69:5 134:18
**sense** 54:12 55:14 73:2,4 108:21 151:14
**sensitive** 39:4
**sent** 84:7 166:14
**sentence** 82:11 126:4
**september** 1:19 8:8 148:13 165:5,17
**series** 122:5
**serious** 56:10 56:13 125:8 154:23

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[seriously - sorry]**

Page 36

**seriously**  57:15
58:8 112:9
126:13,19
137:6 153:21
153:23 154:23
**services**  129:17
**set**  14:9,24
133:14 141:17
145:10
**sets**  141:6
160:10
**setting**  83:2
**settings**  95:3
**settled**  26:20
28:18 157:16
**settlement**
26:24 27:14,20
28:2,5,24 29:3
29:8 38:2
39:17 40:3,13
40:14 47:9
49:4 51:20
52:1,14,23
53:12,21,24
55:17 60:4
62:6 109:3,12
156:21 157:24
159:5
**several**  111:7
135:15,15
158:6
**shaking**  22:12
**share**  90:21

**shared**  132:2,3
**sharepoint**
116:7 119:22
119:23,23
**sharepoint's**
116:7
**sharepoints**
114:23 115:3
**shawn**  5:12 8:6
**sheet**  91:9,10
91:11 142:15
142:20 166:11
**sheets**  91:4,5
106:17
**shop**  140:11
**shortly**  38:2
**show**  30:20
45:13 91:13,14
92:1 137:12
152:7
**sic**  31:14 38:23
40:10 41:20
47:4 48:10
**side**  42:14 56:5
56:8 77:17
82:7,7
**sign**  166:12
**signature**
165:20
**signed**  47:10
49:11 166:19
**similar**  53:4
54:8 55:1
63:23 141:9

160:11 163:10
**simply**  36:21
**single**  115:17
118:19 153:19
**sit**  28:1 71:22
80:1 81:5
102:20 125:15
160:22
**sixth**  5:5
**skadden**  3:3
8:22
**skadden.com**
3:11,12,13
**skip**  136:18
**skype**  6:22
97:18,21
109:23
**slate**  3:3
**slow**  150:16,17
**small**  62:14
**smart**  104:17
**snapshot**  31:19
**snippets**  62:11
**snyder**  2:2,6
8:17 9:3
**software**  12:16
12:17,20 13:2
13:5 14:11
15:24,24 17:1
17:10,11,21
18:1,6,23 20:1
20:16 21:12
28:20 29:13,17
32:1,19,23

33:4,7,22
34:22,24 35:9
35:17 36:14
38:5 39:3
41:21 43:13
47:12 60:10,13
67:16 68:21
69:12 72:1
76:4 77:16
89:13 90:9
91:7 93:9,13
95:1,2 101:13
106:21 115:14
115:16 121:1
121:10,14,20
122:18 123:5
123:15,16
124:3 129:3
133:24 139:7
141:24 142:2
146:8 160:15
160:19 161:16
**sole**  68:18
**solely**  122:21
**solutions**  8:7
166:23
**somebody**  24:9
55:14 66:17
74:16 77:5
114:13
**something's**
161:12
**sorry**  13:4
22:14,14,17

**[sorry - strive]**                                              Page 37

27:8 30:21 34:16 37:5 47:5,23 48:4,4 54:1 57:17,21 66:1,22 68:10 70:24 76:23 81:19,20 88:6 88:21,24 91:2 94:24 99:12,14 104:14 105:22 112:1 115:9,13 117:24 126:23 145:21 150:3 162:12

**sort** 77:24 97:19

**sought** 146:20

**sound** 28:7 102:21

**sounds** 52:20 85:5 96:4 111:8,9,16 150:19

**source** 114:16 115:18

**sources** 129:23

**southeast** 166:15

**speak** 32:11 64:7 96:8 109:13

**speaking** 8:6 104:22

**special** 93:16

**specialist** 12:15 12:16,17 13:13

**specialty** 15:2

**specific** 23:13 28:1 43:20 54:15,19 84:22 91:6 95:11 100:23 120:17 138:18 149:6

**specifically** 20:20,23 26:16 26:22 41:23 65:17 111:3 121:19 148:19

**specs** 103:16 104:5

**speculation** 150:2

**speed** 121:7

**spell** 10:4

**spent** 153:13

**spring** 29:22

**sqoo** 60:16,17 60:19,20 67:17 67:21 68:23 69:6 72:22,24 73:9 79:4 85:3 85:7,12 86:14 86:20,21 91:18 92:5 94:5 95:7 96:1,3 99:6,10 99:19 100:7,16 101:4,21 102:6

105:19 141:21 144:14 156:2 156:12,19 159:6

**sqoo's** 145:3 156:17

**stagg** 10:19,21 42:19 49:8

**stamp** 142:11

**stamped** 7:12 147:13

**standard** 31:17 78:1 124:3 146:2

**standards** 107:23 130:2 130:15,16 141:6 146:22 146:22,23 160:7

**stands** 34:10

**start** 58:2,16 62:20 129:21 138:9,17 155:14

**started** 10:14 29:1 30:4 56:8 134:14 158:19

**starts** 99:23 142:11

**state** 149:18

**statement** 126:9 165:10

**states** 1:1,5 8:11 32:12 166:4 167:1 168:1

**status** 119:17

**statutes** 135:20

**statutory** 66:21

**stay** 52:17 120:19

**stellar** 15:17

**stenographer** 9:17

**step** 40:5 82:9 91:6,6

**stop** 140:11

**storage** 118:7

**stored** 80:8,14 80:18

**story** 118:5 120:21

**straight** 161:6

**straightforward** 109:3 145:19 145:21

**street** 1:17 4:13 5:4 112:6

**stretched** 83:18

**strict** 135:8,8

**strictly** 89:5 135:5

**strike** 21:6 22:1 25:23

**strive** 154:12 154:14

**stuff** 103:19 117:19 118:15 123:19 135:21 158:24 161:11 163:22

**subject** 138:2 154:24 164:8

**submit** 35:14 35:22 149:14

**submitting** 134:9

**subscribed** 168:14

**subsection** 66:21 67:1

**substance** 55:5

**successful** 13:5

**sufficient** 36:16 36:24 37:7 105:1 106:18 137:8

**suggest** 69:20 70:6 136:17

**suggesting** 46:20 152:17

**suggestion** 153:1

**suggests** 44:11

**suite** 2:4,14

**sujansky** 102:21,23,24 102:24

**summer** 29:2 29:23

**super** 109:6 135:8 137:1 146:4 157:6,11

**supplemental** 146:12

**supplied** 144:19

**supply** 131:14

**support** 56:4 73:5 82:3

**supported** 107:22

**supposed** 104:11 134:22 134:24 151:13

**sure** 13:1,4 27:24 29:6,19 33:8,19 41:16 43:15 50:5 55:13 64:18 67:5 73:12,18 74:18 76:13 82:12 87:13 93:5 94:20 100:10 106:3 107:24 108:24 109:4,6,6 112:5 126:6,11 136:11 138:22 143:13 154:15 155:13 156:4 156:19 157:4 163:9

**surprising** 111:6

**surveillance** 91:1,2 132:17 132:19 135:2

**suspect** 103:15

**sut** 101:7

**swear** 9:6

**swim** 143:4

**switch** 141:18

**switched** 71:10

**switching** 137:7

**sworn** 9:13 47:4,19 165:6 168:14

**system** 13:23 14:19 63:5 150:17

**systems** 13:18 20:6

**t**

**t** 2:8,17 3:10,19 4:17 167:3,3

**tab** 31:10 45:23 142:12,15

**table** 66:18

**taint** 53:11

**take** 8:10 31:9 40:5 42:12,16 42:24 46:18 57:15 58:8 84:8 87:11

114:10 116:21 117:4 123:13 123:15,21,23 123:24 126:13 126:18 137:6 138:22 141:21 144:1,5 153:21 154:3,6,8,22,22 160:4

**taken** 9:20 59:14 87:20 112:18 117:7 117:11

**takes** 31:18 58:14 158:8

**talk** 14:7 25:1 27:5 28:14 37:15 48:2 49:3 66:16,23 68:1 78:13

**talked** 27:2 29:10 49:14 79:16 84:14 85:14 88:16 101:19 115:13 157:13 158:11 161:4

**talking** 14:7 17:3 27:14 28:11,15 33:20 41:18 43:2,14 43:18 44:10,23 50:6,11 66:24 70:17 73:12

Jordan A. Madhusudhan                                September 3, 2025
United States of America, et al. v. eClinicalWorks

**[talking - text]**                                         Page 39

| | | | |
|---|---|---|---|
| 75:11 76:1 | 124:6,17,17,18 | **terminology** | 33:12 35:23 |
| 81:19 84:2 | 124:22,24 | 160:18 | 36:1,7,15,22 |
| 91:23 92:23 | 129:6,7 130:17 | **terms** 64:10 | 37:13 38:6 |
| 93:2 96:4,7 | 130:17 132:1,2 | 70:24 104:24 | 48:12 68:4,6 |
| 99:10 100:20 | 132:7,7,20 | 105:4 153:19 | 68:14,16 70:17 |
| 102:7,11 | 133:13 143:1,3 | 163:12 | 77:7 89:5 90:3 |
| 104:16 105:2,2 | 143:15 145:2,6 | **test** 31:20 | 90:6,8,9,10,12 |
| 105:16,23 | 159:10 161:10 | 35:21 36:23 | 90:17,18,23 |
| 112:20 114:6 | **teams** 97:21 | 39:1 55:22 | 91:2,15,19 |
| 129:7 139:18 | 109:22 129:10 | 80:22 90:22 | 92:20 93:10,12 |
| 150:9 152:6 | 129:11 143:7 | 93:10 96:12 | 93:24,24 94:6 |
| 157:21 | **teams's** 125:14 | 100:23,23 | 94:23 95:8,12 |
| **taller** 113:18 | **tech** 82:4 | 101:7,8,14,22 | 95:19,21,22,23 |
| **task** 154:20 | **technology** 7:6 | 105:4 123:16 | 96:5,5,6,7,16 |
| **tasked** 22:24 | 128:4 139:7 | 130:3,4,4,5,5 | 96:17 97:6 |
| 24:4 126:15 | 141:10,13,14 | 131:8,14 142:1 | 99:20 100:17 |
| **team** 11:10 | 141:15 160:12 | 143:19,20 | 100:22 101:1,7 |
| 21:21 23:4 | 161:20 | 148:3,5 | 101:20,22 |
| 25:17 62:21 | **tell** 12:1 14:17 | **tested** 33:22 | 102:8,10,13 |
| 63:3,4,12,13,19 | 22:4 36:1 37:4 | 35:1 123:17 | 103:7,16 104:5 |
| 63:20,21 64:1 | 37:6,8 38:22 | **testified** 9:14 | 105:7,9,13,20 |
| 64:8,13,19,22 | 50:21 52:7 | 46:10 | 105:23,24 |
| 65:10,14,22 | 91:12 97:23 | **testify** 165:6 | 106:1,6,10,17 |
| 66:3,6,13,13 | 112:22 115:24 | **testifying** 59:23 | 115:20 117:13 |
| 67:7,9,20 69:1 | 128:22 | **testimony** 6:14 | 119:17 130:11 |
| 70:13,21,23 | **telling** 33:22 | 37:20,23 47:4 | 131:15,16 |
| 71:2,3,7,12 | 51:7 | 47:19 69:24 | 132:14,18 |
| 72:19 73:16,23 | **ten** 67:13 87:11 | 79:11 88:12 | 137:8 140:16 |
| 74:1,3 75:12 | 155:3 | 90:14 139:16 | **tests** 32:1,20 |
| 75:13,18,19 | **tenacity** 153:10 | 165:11 166:9 | 80:21 |
| 77:22 78:12 | **term** 64:14 | 166:17 168:8 | **text** 82:6,7 |
| 81:10 96:11 | 73:17 76:1 | **testing** 24:2,4 | 91:12 96:24 |
| 98:19,22,24 | 124:15,19 | 25:20 31:16,18 | 100:15,21 |
| 122:18 123:4 | | 32:24 33:2,3,5 | 106:16 123:21 |

Veritext Legal Solutions

**[text - together]** Page 40

| | | | |
|---|---|---|---|
| 123:22 130:1 141:22 | 56:1 62:10 68:24 69:6,16 72:3,11,17 73:7 74:5 75:21 77:8 81:15 83:9 84:16,17 87:2 89:9 90:3,15 92:14 95:19 97:4 98:19,20 99:5 102:4,5,6 103:13 105:1 108:1,4,12 110:23 112:14 112:21 116:9,9 117:7,10,18,20 120:2,3 124:7 124:12,16 129:9 131:23 136:2,7 143:4 145:6 146:10 148:2,4 149:17 150:10 154:1 154:21 155:18 155:24 157:4,5 | 147:23 | 130:18 141:2 145:9 147:11 148:2,10,20 149:6,12,13,16 149:19 151:7 151:14 153:15 155:1 163:7,10 163:10,20 164:17 166:18 |
| **thank** 9:17,19 15:20 29:20 31:3 48:8 58:1 65:23 85:17 99:16 120:5,6 155:1,14 159:16 164:13 164:15 | | **three** 62:13,15 66:9,11 116:10 118:6 | |
| | | **threshold** 14:24 | **timeframe** 166:8 |
| **theory** 129:9 | | **ties** 26:5 | **timeline** 28:7 |
| **thing** 28:15 61:14 62:9 71:1 73:12 91:13,14 130:7 142:13,15 151:10 | | **time** 8:8 11:22 12:3,8,11,12 14:2 18:19 19:3,9,13,22 20:13 21:9,9 21:15,20 22:5 23:3,7,9 26:11 26:23 29:3 30:18 32:10 38:1 40:12 41:6 48:2 54:11,15,17 55:16 56:19 60:11,21 62:5 63:19 74:13 75:14 78:3,22 83:8,19,23,24 84:1 85:7 86:11,14,21 87:17,24 92:17 93:22 94:11 95:17 103:9 108:2 111:9,17 111:18 117:7 117:14 119:5 119:21 120:23 123:8 129:16 | **timelinewise** 107:7 |
| **things** 30:14 77:18 83:14 111:13 121:6 122:3 134:8 140:14,16 147:3 | | | **times** 68:3 69:12 78:9 83:2 115:3 130:14 147:6 158:6 162:16 |
| | | | **title** 11:9 86:19 98:17 |
| | | | **titles** 63:23 |
| **think** 11:12 12:4 15:21 20:19 21:3,20 25:13 28:20 34:11 39:12 40:10 41:1 43:5,10,19 45:2,3,4,11 46:7 49:5,10 51:3,12 52:10 52:11 55:24 | | | **today** 37:23 44:10 69:24 88:12 105:15 124:23 126:12 139:13 142:24 152:17 158:6 162:5,8 |
| | **thinking** 43:11 43:12 | | **today's** 8:7 |
| | **thinks** 103:6 | | **together** 21:24 67:9 78:8,14 78:15 82:5 155:22 |
| | **third** 99:12 | | |
| | **thought** 34:16 47:23 84:15 105:8,16 | | |
| | **thread** 7:8 137:23 138:2 | | |

**[told - underwent]** Page 41

**told** 39:6 52:13 58:19 63:17 90:9,12 119:24
**took** 12:8 19:13 19:20 20:13 21:10 26:8,8 26:12 88:10 107:13 113:23 117:10 120:23 138:24 144:3 158:4 163:22
**tools** 130:5 140:16
**top** 34:8 42:21 62:12 98:10 109:24
**topics** 135:17 141:18
**totally** 82:23 83:2 109:1 118:18 120:11
**touching** 165:7
**toward** 106:5
**towards** 16:19
**traceability** 141:19,20 142:13,14,17 142:22 143:8 144:2,15 145:4 155:15,16 156:15 157:2
**track** 114:3 121:16

**tracking** 77:16 114:6 115:14 115:16
**train** 12:21 34:16
**training** 12:14 12:16,17 13:12 135:10,14,21 136:22 158:23
**trainings** 135:24 158:23 159:1
**transcript** 1:20 6:18 166:6,19 168:5,8
**traveled** 12:18
**trial** 9:20
**tried** 64:14 65:4
**true** 165:10 168:8
**truth** 111:20 114:17 115:18 165:6,7
**truthful** 48:19
**try** 48:2,6,7 146:11
**trying** 51:4 55:15 56:7 83:5 116:9
**ts** 154:16
**tuesday** 44:5
**turn** 37:18 44:2 48:17 58:12

103:10 128:20 138:1 139:21 139:24 147:7 148:22
**twice** 108:4 124:9
**two** 71:11 82:8 87:5,6 104:17 129:11 133:2,3
**type** 96:15 105:22 135:21 142:15 160:21
**types** 75:10 91:1 96:4
**typically** 70:18 76:19

**u**

**u** 10:6,6
**uh** 20:12 22:9 28:16 29:11 34:20 58:23 62:1 67:8 89:14 99:1 100:6,13 119:2 125:22 155:23 157:8,10 160:24
**ui** 134:3
**ultimately** 33:7 36:3,8 40:2,12 52:16 121:15 141:24

**uncover** 101:15
**under** 9:23 31:17 36:14 46:10 64:2 129:24 131:1
**undergo** 32:24 90:17
**undergrad** 120:22
**understand** 13:16 25:5,21 33:8 48:5 49:19 53:9 64:16 65:9 75:24 101:20 102:3 146:17 147:9 149:21 150:4
**understanding** 24:6 27:24 30:7 32:14 37:20 39:12 50:11 57:9 74:23 90:15 134:21
**understood** 18:2 32:17 53:19 60:8,11 65:23 96:13 118:22 150:20 158:3
**underwent** 37:8

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[unencrypted - want]**

Page 42

**unencrypted**
80:19
**unique** 142:1
**united** 1:1,5
8:11 166:4
167:1 168:1
**unsure** 82:21
82:23 83:3
**update** 129:17
139:10 162:9
**updated** 129:12
130:19,23
132:12,24
141:3
**updates** 141:6
141:8 160:3,6
160:10,10
**upgrade** 161:8
**uploaded**
138:12
**uptight** 154:9
**url** 139:19
**use** 12:20 13:1
13:5 14:1 17:2
18:1 21:1
68:12 77:17
93:12 98:5
110:24 122:2
129:20 131:15
143:8,10
160:19
**used** 16:1 41:11
41:17 53:10
80:22 95:2

97:20 114:2
115:14 122:1
131:8 138:11
160:8 166:19
**user** 76:5 77:9
134:3 142:21
149:5
**users** 121:3
149:9 150:23
**uses** 9:22
**using** 14:11
70:24 109:2
121:9 150:16
**usual** 118:7,14
**usually** 98:5
119:8
**utilities** 118:13

**v**

**v** 166:4 167:1
168:1
**vague** 43:23
**varied** 75:21
**variety** 77:14
90:16
**various** 90:22
120:14
**vendor** 34:22
35:8,9 109:2
133:24
**vendors** 32:23
53:3 54:14
146:8

**verbal** 22:15
**verified** 74:4
**verify** 131:8
166:9
**veritext** 8:7
166:14,23
**veritext.com**
166:15
**vernacular**
110:16
**versed** 66:18
**version** 28:19
28:20 29:13,14
29:15,21 31:24
32:16,19 33:11
36:14 47:12
48:13 60:9,10
69:11 71:24
75:16 80:16
88:18 89:10,12
90:9 95:19
98:4 106:21
117:13 141:10
141:16 142:19
160:11,13,15
161:2 162:1,2
163:2
**versions** 89:12
89:15 162:20
**versus** 8:12
**video** 8:10
**videographer**
5:12 8:5,6,24
9:5 87:17,23

164:17
**videotaped**
1:14
**vigorous**
108:14
**visit** 15:9
**voice** 85:5
**volumewise**
144:12
**vs** 1:9
**vulnerabilities**
73:22 74:5
75:24
**vulnerability**
68:21

**w**

**wait** 48:6,7
**walk** 25:8 78:9
78:10 113:21
**walked** 84:11
133:15
**walking** 116:12
**wall** 113:20,24
117:9
**walter** 102:20
102:20,21
103:6 104:17
105:2,8
**walter's** 103:14
104:16 105:16
105:19
**want** 16:12
17:14,22,24

**[want - write]**                                         Page 43

| | | | |
|---|---|---|---|
| 18:4,6 20:8 31:9 42:16,23 42:24 45:21 52:14 55:16 61:9 66:16 82:1 88:12 103:11 106:2 113:4 115:7 128:20,22 131:14,16 141:17 150:13 150:17 155:4 | 99:13 126:16 136:17 144:23 | 114:15,16,17 114:20 115:10 116:19,21 117:1,8 124:1 130:13,15,16 151:24 152:6 | **work** 11:11,19 37:3 41:17 44:17,23 45:6 49:16 56:16 62:7,11 63:3 70:3 73:19,21 96:11 99:2 127:12 144:4 145:2 148:7 153:9,10,21 154:8,12 |
| **wanted** 49:7,16 51:21,22 52:2 55:8 64:3 65:22 108:2 116:13 138:21 138:22 | **ways** 77:14 141:23 142:1 144:10 | **whitney** 5:16 8:23 | |
| | **we've** 29:9 38:23,23 41:18 53:20 60:2 64:12 74:3 77:23 87:9 133:18 135:3 158:5 | **wing** 113:21 **winship** 3:8 **wise** 49:2 **withdraw** 164:6 | **worked** 10:18 14:19 25:19,19 66:11,13 90:1 99:4,5 122:20 123:8 145:7 |
| **wanting** 49:5 **wants** 52:17 81:22 112:2 136:14 | **webinars** 146:7 **website** 82:15 82:18 119:11 119:12 139:11 139:18,19 140:4,6,10,17 140:19 150:7 | **witness** 3:2 4:2 5:2 6:3 9:7,10 25:4 43:4 61:24 87:14 104:11 110:8 110:11 120:6 120:16 139:14 147:20 155:6 157:12 164:11 164:13 165:11 165:17 166:8 166:10,12,18 | **working** 12:6 13:17 20:24 29:1 43:8 45:4 45:8 48:13 50:9,22 57:16 58:9 65:13 66:2 67:24 96:10 153:15 153:20 160:22 |
| **washington** 3:17 **watch** 82:2 125:16 | **week** 112:23 **weeks** 47:10 112:16 113:1 **welcome** 104:22 **went** 23:18 120:21,22 151:4 163:14 | | |
| **wav** 115:22,24 116:15,15 119:21 132:5 **wavs** 115:21 **way** 24:23 26:2 30:22 35:17 64:4 78:1 84:19,23 92:13 | **west** 2:3,13 3:4 4:4 **wheeler** 1:7 5:13 8:18 **white** 7:17 112:19 113:16 113:23 114:8,9 | **wolf** 4:4 **wonderful** 56:2 **wondering** 108:21 **word** 52:12,12 53:10,10 110:24 112:5 **words** 126:3 136:9 | **works** 35:17 87:14 120:11 **world** 95:2 **worth** 57:16 58:9 85:10 134:23 135:16 **wrap** 155:5 **write** 84:12,23 103:24 110:22 |

Jordan A. Madhusudhan
United States of America, et al. v. eClinicalWorks

September 3, 2025

**[write - zoom]**

Page 44

112:10 130:16
**writing**  84:10
165:10
**written**  23:9,16
23:22 96:3
114:20 116:15
159:4
**wrong**  12:1
51:4,8 52:8
57:17
**wrongdoing**
40:8
**wrote**  47:18,23
86:12 94:8
96:2 103:8,9
103:18,21,22
111:1 112:8,9
112:12,13
117:17 136:14
139:4 146:21
**wth**  110:15
**wyatt**  3:18 8:21
166:1

**y**

**yeah**  10:24
11:9 14:3,3,15
19:17,19 20:19
27:4,19 28:13
28:23 30:1,17
30:19 39:12
43:9,11 44:8
44:13 45:10
47:15,21 50:4

53:23 54:3,5
54:22,24 55:3
58:11 59:19,21
60:19 62:15,17
64:24 65:8
67:13 68:11
73:13,17 79:2
79:6 85:4,8
87:6 89:23
90:11 98:14
99:8,17 100:19
101:3 102:16
102:23 103:5
106:12,13
108:8,9 110:6
110:21 112:8
112:21 113:11
113:16 117:2
117:16 118:4
120:1,1,20
121:17 123:5
126:5 127:6
130:20,20
131:3 132:17
133:12,18
134:11,18
139:17 140:3,7
143:9,24
144:16 145:5
145:18 148:2
151:7 152:5
157:15 158:17
159:21,21
161:22 162:1

**year**  13:12 20:3
20:21 113:5
114:4 118:6
124:16 125:9
125:17 134:14
135:13,22
158:8
**years**  12:9
19:11 20:5
21:3 30:1,3
83:18 85:9,10
87:5,6 111:7
120:19 122:24
122:24 124:7
124:12 130:24
153:8,17,18,20
160:23
**york**  3:6
**young**  86:9,24
125:21 126:2,5

**z**

**zoom**  5:14,15
9:1