**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., <br><br>     Plaintiffs, <br><br> v. <br><br> eCLINICALWORKS, LLC, <br><br>     Defendant. | No. 5:18-CV-382 <br><br> Honorable Marc T. Treadwell |

**DEFENDANT'S RESPONSE TO RELATORS' MOTION TO EXCLUDE**
**ANY REFERENCE TO THE ONC HTI-5 NOTICE OF PROPOSED RULEMAKING**

In February 2026, eCW moved for judicial notice of five discrete, official statements that the Office of the National Coordinator for Health Information Technology ("ONC") published in the Federal Register on December 29, 2025 (the "Notice of Proposed Rulemaking" or "NPRM"). (*See* ECF Nos. 508, 508-2.)  Based on these newly published statements and consistent with the Court's directive that "expert testimony is necessary to understand" the "ONC certification criteria" (ECF No. 499 at 3), eCW also disclosed a limited supplemental report from its certification expert, Mr. Kyle Meadors, explaining how the NPRM relates to his previously disclosed opinions.  (*See* ECF No. 512.)  Both motions remain pending.

Relators now move—"for completeness," they say—to preclude "eCW, its counsel, and its witnesses from introducing, or referring to the NPRM" under Federal Rules of Evidence 401 and 403.  (ECF No. 564 at 5.)  Their request seeks not only to preclude judicial notice and bar eCW's expert supplementation, but to shield ***their*** expert from cross-examination with ONC's contradictory statements ***and*** prohibit eCW from asking ***ONC*** at trial if "the NPRM reflects ONC's

views about the meaning, scope, or significance of the certification requirements during the relevant period." (*Id.*) These requests are meritless.

The NPRM easily clears the low bar to admissibility. It contains ONC's official statements about the meaning of the same criteria that have been in effect since 2015, including that it is "incorrect" to claim that "certified authentication and authorization capabilities [should] protect against known or unknown vulnerabilities." (ECF No. 508-1 at 5.) Statements like these are about the "current" criteria; there is nothing prospective about statements in past tense that "stakeholders have overinterpreted" the criteria's meaning. (*Id.*) ONC's statements prove that none of Relators' alleged technical violations render any certification false and are indispensable to any fair trial.

Indeed, Relators previously conceded that "[i]f eCW believes that a security flaw presented at trial is outside the scope of a certification, eCW can cross-examine [Relators' certification expert] Mr. Arrigo about it, or provide its own testimony from Mr. Meadors." (ECF No. 431-1 at 2.) They now turn around and ask the Court to shield Mr. Arrigo from cross-examination with ONC's opposing statements and block Mr. Meadors from testifying that those statements are consistent with his own. Nor is there any basis to exclude under Rule 403. Simply put, there is no unfair prejudice in presenting ONC's statements about the very ONC regulations at issue to the jury. Relators' request that the Court grant them free license to misrepresent the meaning of the certification criteria without risk of impeachment or contradiction should be denied.

## **ARGUMENT**

**I.**  **The NPRM Is Highly Relevant Because It Contains ONC's Official Public Statements About The Meaning And Import Of The Current Certification Criteria.**

Relators assert that the Court should exclude any reference to ONC's official statements about the certification criteria at issue in this litigation on grounds of "relevance." (ECF No. 564 at 5.) "The Federal Rules of Evidence set a very low bar for relevance," and the NPRM's relevance

is not a close call. *See State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, 2023 WL 4854725, at *3 (M.D. Fla. Jan. 10, 2023).

For example, Relators have argued that eCW's software violates the certification criteria because a "malicious actor" could "bypass the controls that are supposed to stop access." (ECF No. 75 at 12-13, 16.) ONC's statements in the NPRM refute these exact arguments:

> [M]any stakeholders have overinterpreted the Certification Program's limited scope and policy purpose with respect to health IT security and instead assumed that the Certification Program assessed discrete specific security capabilities at significant depths, such as when and how the capabilities are implemented in health care provider or system settings. For example, stakeholders have expressed incorrect expectations of certified health IT and developers, such as expectations that the Certification Program required health IT developers of certified health IT to implement and conduct penetration testing of certified health IT or ensure that certified authentication and authorization capabilities protect against known or unknown vulnerabilities. In contrast, and to allow for significant scalable deployment flexibility, certified hea[l]th IT must only, for example, demonstrate support for basic authentication and role-based access control.

(ECF No. 508-1 at 5.) Relators' motion ***never*** engages with ONC's statements, explains how they do not apply to criteria in effect since 2017, or reconciles them with Mr. Arrigo's opinions. After multiple chances, it is clear that they cannot do so.

As eCW has explained in detail in prior briefs, the NPRM—which was published in the federal register—is "required to be judicially noticed." *Sw. Georgia Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*, 2009 WL 1410272, at *1 (M.D. Ga. May 19, 2009). The Court has also previously held that "it will be necessary for the Court and the parties to craft appropriate jury instructions regarding the ONC certification criteria," and "expert testimony is necessary to understand those specifications." (ECF No. 499 at 3.) Those determinations ***require*** admission of statements in the NPRM, which are indispensable to properly instructing the jury on the law. Relators' request to bar Mr. Meadors from referencing the NPRM is designed to ensure the jury does not "understand" what these criteria require.

Beyond these independent grounds for admission, the argument that Relators can introduce an expert interpreting the ONC criteria, but eCW should be precluded from crossing him with ONC statements finds no support in the law. "Rule 705 entitles the attorney cross-examining an expert to probe the facts or data on which the expert based their opinion." *Ellington v. U.S.*, 2022 WL 2439981, at *13 (M.D. Fla. July 5, 2022). A testifying witness "cannot deprive the opposing party of the right of cross-examination." *U.S. v. Longstreet*, 567 F.3d 911, 923 (7th Cir. 2009).

Here, Mr. Arrigo purports to opine based on ONC statements in the federal register, the certification criteria, "ONC definitions," the "2015 Edition Base EHR Definitions, and Capabilities," and "HHS guidance." (*See* 8/03/2024 Arrigo Reb. Rpt., ECF No. 218-29 at 36-37.) He opines that ███████████ (d)(1) because its software had a ████████████ ███████████████████████████████████ (ECF No. 218-29 at 60, 66.) He asserts ██████████████████████████ ████████████████████████████████ ████████████████████████████ ██████████████████ (*Id.* at 68.) He claims eCW's software ███████ ████████████████████████████ ████████████████████████ (*Id.* at 65, 68.) Relators too have ***repeatedly*** argued that eCW's software violates the certification criteria because it allegedly can be ████████████████ who may be able to ██████████ ██████████ (ECF No. 17 ¶ 24; *see id.* ¶¶ 2, 7, 46-49, 51, 55, 57, 60, 62, 68-106; ECF No. 75 at 12-13, 16.)

These arguments are irreconcilable with the NPRM. ONC states that the certification criteria are "limited," do not require "security capabilities at significant depths" or to "protect

against known or unknown vulnerabilities," and instead require only "basic authentication and role-based access control." (ECF No. 508-1 at 5.) The NPRM is "relevant to refute [Relators'] theory of the case and the evidence is not unduly prejudicial to [Relators] simply because it weighs in [eCW's] favor." *Romans v. Ford Motor Co.*, 2021 WL 4189661, at *3 (S.D. Ohio June 4, 2021).

## II.    Relators' Relevance Arguments—If Anything—Go To Weight, Not Admissibility.

Instead of grappling with any of these problems, Relators make three cursory relevance arguments. First, they argue that ONC's statements are "outside the relevant time period" because they were published in 2025. (ECF No. 564 at 3.) But post-time period evidence remains relevant if it reflects facts or circumstances that existed during an earlier period. *See*, *e.g.*, *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, 2021 WL 2070597, at *9 (N.D. Ga. May 24, 2021) (denying motion to exclude evidence "outside the relevant time period").[1] None of Relators' cases involved post-time period statements about the rules in effect during the relevant time period.[2] The NPRM, however, is discussing "the current Privacy and Security Certification Framework,

---

[1]    *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) ("[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right"); *Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*, 679 F.2d 516, 531 n.17 (5th Cir. 1982) ("[e]vidence concerning occurrences before and after [the relevant time] period may be considered insofar as it bears on occurrences during the relevant time period"); *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 14 (1st Cir. 1991) ("actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident"); *Pollard v. Halter*, 377 F.3d 183, 194 (2d Cir.2004) (finding the "district court erred insofar as it categorically refused to consider the new evidence" because it was "generated post-[relevant time period] and did not explicitly discuss [claimant's] condition during the relevant time period"); *Abbott v. Chattanooga Hamilton Cnty. Hosp. Auth.*, 2013 WL 448922, at *5 (E.D. Tenn. Feb. 6, 2013) ("The Court disagrees, however, with Defendant's broad generalization that all of the evidence must be excluded because of the time period within which it occurred."); *U.S. v. Barnwal*, 2019 WL 1471572, at *2 (E.D. Mich. Apr. 3, 2019) ("evidence that dated from outside of the time period may be relevant to the activity within the time period") (citation omitted).

[2]    *See Trinidad v. Moore*, 2017 WL 466551, at *2 (M.D. Ala. Feb. 1, 2017) (finding evidence of a driver's negative drug test weeks after an accident was not relevant to trucking company's knowledge of drivers' drug test history prior to an accident); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (affirming exclusion of unauthenticated hearsay documents in copyright case, including because two post-time period documents with a "revised copyright date" were irrelevant to whether defendant infringed plaintiff's copyright prior to that date); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 4279833, at *3 (D. Ariz. Sept. 7, 2018) (excluding evidence of deaths related to a product version "three generations" earlier that was taken off the market 6 years before the product version at issue was used because "this case does not involve" that product).

which has been in place for the past 10 years" when it states that "certified hea[l]th IT must only, for example, demonstrate support for basic authentication and role-based access control."  (ECF No. 508-1 at 5.)  Relators effectively concede that statements like these refer to the existing criteria, since they have tried to assert that they have "never argued (d)(1) requires more than basic authentication and access control."  (ECF No. 534 at 6.)  Their admission that the NPRM "cannot rewrite existing regulations" only reinforces that ONC is addressing the criteria in effect since 2017.  (*Id*. at 9.)

*Second*, Relators blanketly assert that the ONC rulemaking is "prospective."  (ECF No. 564 at 3.)  But that conflates two distinct issues.  For one, the five specific statements eCW identified in its judicial notice motion are ONC's views about the *existing* criteria and bear directly on falsity.  (*See* ECF No. 508-2.)  There is nothing "prospective" about statements like "stakeholders *have expressed* incorrect expectations of certified health IT and developers" or "many stakeholders *have overinterpreted* the Certification Program's limited scope and policy purpose"—statements in the past tense about what the current criteria mean.  (ECF No. 508-1 at 5 (emphases added).)  This is not a prospective policy change applying "retroactively"; these are statements about the same "law that existed when the conduct took place."  *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).[3]

At the same time, however, ONC is also proposing to "remove" the security certification criteria going forward—an impact that would be prospective.  (ECF No. 564 at 3.)  But that fact is

---

[3]    Relators are simply wrong when they assert that ONC only "issues interpretative guidance" about the meaning of the current criteria in one form.  (ECF No. 564 at 3 n.1.)  Agencies like ONC "can speak through a variety of means, including regulations, preambles, interpretive statements, and responses to comments."  *See Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc*., 471 U.S. 707, 718 (1985).  The ONC website itself provides multiple examples of this, such as ONC's "Certification Companion Guide."  *See* https://healthit.gov/test-method/authentication-access-control-authorization/#cert-guide.  And regardless of whether one labels the NPRM "guidance," it clearly states ONC's views about its own certification's criteria "scope" and "purpose," what "must" be "demonstrate[d]," and what "overinterpret[ations]" are "incorrect."  (ECF No. 508-1 at 5.)

relevant to materiality, not falsity.  Said differently, the fact that the government believes it can simply delete all of the certification criteria is "strong evidence that the requirements are not material" to Medicare Promoting Interoperability Program payments.  *Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176, 195 (2016).  Contrary to Relators' assertion, eCW has never claimed the potential removal of the criteria means the jury should "retroactively evaluate eCW's conduct" under "future" "rules."  (ECF No. 564 at 4.)  The NPRM simply confirms what eCW has argued all along:  violations of the certification criteria—even assuming Relators could prove them—have never been material to the government's payment decisions.

*Third*, Relators assert that HHS has "denied" eCW's *Touhy* request for testimony about the NPRM.  (*Id.* at 1.)  But as Relators' counsel knows, eCW's negotiations with HHS about the scope of ONC's testimony remain ongoing.  In any event, HHS's position on whether they will present a witness to testify about the NPRM absent a motion to compel has no bearing on whether Mr. Arrigo should be crossed on the NPRM or Mr. Meadors can testify affirmatively about it.  In any event, Relators agree that ONC's witness, Mr. Posnack, may testify about "applicable certifications during the relevant time."  (*Id.*)  The fact that Relators ask the Court to preclude eCW from even asking Mr. Posnack whether "the NPRM reflects ONC's views about the meaning, scope, or significance of the certification requirements during the relevant period" confirms Relators know the answer to this question is "yes," and they just do not want the jury to hear it.  (ECF No. 564 at 1, 5.)  That tacit admission underscores the NPRM's relevance.

### III. There Is No "Unfair Prejudice" From Admitting ONC's Own Statements About the Meaning of the Certification Criteria At Issue In This Very Case.

Relators also rehash their arguments that the NPRM should be excluded under Rule 403, asserting the jurors will assign "unfair weight" to ONC's statements because they carry "the imprimatur of a federal agency," the NPRM will "inject politics" into this case, and there will be

a "trial within a trial" about what the NPRM means.  (ECF No. 564 at 4-5.)  None are persuasive.

*First*, Rule 403 prohibits "only *unfair* prejudice, *substantially* outweighing probative value."  *U.S. v. Sims*, 2022 WL 17088478, at *4 (11th Cir. Nov. 21, 2022).  "Rule 403 does not permit a court to exclude [one side's] evidence simply because it may hurt the [other]."  *Id.* Statements from the at-issue agency about the at-issue regulations do not threaten "unfair prejudice," and will not inflame the jury's passions.  ONC's interpretation *should* carry significant weight because ONC wrote these criteria.  Nor would it be somehow "unfair" to cross Relators' expert with ONC statements refuting his interpretation of ONC's certification criteria.  Relators are essentially arguing that the evidence is too persuasive, but "[s]imply because the evidence is damaging or prejudicial to a [party's] case does not mean, however, that the evidence should be excluded."  *Id.*; *see also Collins v. Omega Flex, Inc.*, 2010 WL 2470944, at *4 (E.D. Pa. June 15, 2010) ("[T]he fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403.").[4]

*Second*, Relators argue that "eCW also seeks to use the NPRM to inject politics into the case."  (ECF No. 564 at 4-5.)  But the only party injecting "politics" is *Relators*.  Even if Relators want to "introduce evidence" of "changing administration priorities," that will not explain the fact that *the same person* was president between 2017 and 2020 and when the NPRM was published in 2025.  Regardless, Relators' strategic decision to try to find a way to undercut the persuasiveness of ONC's 2025 statements by pointing out that different political parties might have different priorities does not make this evidence *inadmissible* under Rule 403, meaning it would "substantially outweigh" its probative value.  *See Sims*, 2022 WL 17088478, at *4.

---

[4]  Relators' other cases are not remotely applicable.  *See*, *e.g.*, *Johnson v. Baker*, 2009 WL 3486000, at *4 (W.D. Ky. Oct. 23, 2009) (excluding a DOJ letter stating the "evidence does not establish a prosecutable violation of the federal criminal civil rights statutes" from a civil malicious prosecution case for multiple reasons, including because "it addresses federal criminal prosecution, not the allegations made in the present case").

***Third**,* Relators' "trial within a trial" concerns are unfounded. eCW sought judicial notice of five ONC statements totaling less than a page. They can be read to the jury in under 5 minutes. Admitting ONC's clear, discrete statements does not require "days of testimony" or reopening discovery to fish for hypothetical "lobbying" to any federal agency or discussions with any industry coalition over the last 8 years—an issue irrelevant to eCW's "intent." (ECF No. 564 at 4; ECF No. 538-1 at 7-8.) The meaning of the ONC criteria is not a "collateral issue." (*Id.*) It is the main event. Its probative value vastly outweighs any possible unfair prejudice under Rule 403.

## CONCLUSION

There is no basis in law or fact to grant Relators' motion. The NPRM is not merely probative—it is the keystone of any fair trial about the certification criteria's meaning. It is relevant to reinforce eCW's expert's opinions, refute Relators' expert's opinions, examine ONC's witness, and correctly instruct the jury. It presents zero unfair prejudice. Granting Relators' request to bar "eCW, its counsel, and its witnesses from introducing, or referring to the NPRM, or otherwise suggesting to the jury the NPRM has any relevance to what the jury must decide" invites reversible error. (ECF No. 564 at 5.) eCW respectfully urges the Court to deny Relators' motion.

9

Dated: June 12, 2026

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER
LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice)*
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants in this matter.

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720