**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, *et al.*, | |
| Plaintiffs, | No. 5:18-CV-382 |
| v. | Honorable Marc T. Treadwell |
| eCLINICALWORKS, LLC, | |
| Defendant. | |

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE
DAMAGES OPINIONS OF EMILY WOLFSTON</u>**

Relators' claim that additional versions of eCW's software—"[a]ll of which were certified in 2021 and 2022, then fully withdrawn by eCW at the end of 2022"—"have always been a part of this case" and were "consistently treated as Version 11 by the parties" is impossible to square with their summary judgment arguments. (ECF No. 579 at 1-2.) They argued unequivocally:

- "Relators' claims here are about Version 11 of eCW's software *certified in December 2017*."

- eCW "ignores *the time frame that matters for the certification decision—December 2017* when Version 11 was certified based on eCW's fraudulent attestations."

- "eCW obtained certification of its version 11 software by fraudulently attesting to compliance with the certification requirements *in December 2017*."



(ECF No. 266 at 3-4, 13, 15, 32 (emphases added).)  They even represented that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF No. 266-2 ¶ 336.)

No amount of wordplay can change that Version 11 (certified December 28, 2017; withdrawn June 3, 2022) and Version 153 (certified December 28, 2021; withdrawn December 31, 2022) are not the same certified software.  Relators' entire summary judgment argument concerned a singular "certification decision" "in December 2017" for "Version 11," ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ (ECF No. 266 at 3-4, 13, 15.)  The falsity, scienter, and materiality arguments about ONC's multiple decisions to certify additional eCW software versions starting in December 2021—after ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—are nowhere in the summary judgment record. (ECF No. 218-99 ¶ 6.)  The government's 2021 and 2022 certification

decisions after fully investigating Relators' claims for years could not be false or material.

In fact, Relators filed—*and won*—a motion precluding eCW from presenting evidence on "changes [it made] to its Software Development Life Cycle" in 2022 and later as "irrelevant," citing Version 11's certification in 2017.  (ECF No. 386 at 17 (citing ECF No. 266-1 ¶ 89).)  It violates every notion of due process for Relators to secure relief *barring* eCW from offering evidence on Version 153 while seeking millions of dollars of alleged damages for Version 153.

All of Relators' contrary arguments fail.  eCW *never* "affirmatively" claimed the "string of numbers appended to the end" of its software version names were irrelevant.  (ECF No. 579 at 4-6.)  Rather, it was "undisputed" at summary judgment that "V11" and "V11.52.153" were distinct.  (ECF No. 266-1 ¶¶ 89, 90.)  Nor did eCW "affirmatively rel[y]" on Drummond security testing of Version 153, given Version 153 was not even released when that testing occurred.  (ECF No. 579 at 4-6.)  And eCW waived nothing:  it told Relators last fall that ██████████████ ████████████████████████████████████████████ ██████████████████████████ (ECF No. 488-1 at 1 (emphasis added).)

Relators repeatedly conceded they would not "seek damages for any non-Version 11 eCW users."  (ECF No. 573 at 8 n.2 (collecting admissions).)  The Court must hold them to their word.  Because Relators refuse to remove alleged damages for Version 153 and later certified software versions, Ms. Wolfston's model does not "fit" Relators' liability case and must be excluded.  *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1231-32 (11th Cir. 2009).

## ARGUMENT

### I.    RELATORS CANNOT REBRAND SOFTWARE CERTIFIED IN 2021 AND 2022 AS "SUBVERSIONS" OF VERSION 11, WHICH WAS CERTIFIED IN 2017.

The Court required Relators to prove that new certifications *years* after Relators filed suit are ██████████████████████████████████ (ECF No. 578, 6/24/26

2

Hr'g Tr. at 151:22-25.)  They cannot.  Relators never dispute that Version 11 and Version 153 were certified four years apart, cover different time periods, and were distinct certifications.  (ECF No. 579 at 1-2.)  Nor do they explain how their summary judgment arguments focused on "the certification decision" "in 2017" or their preclusion of 2022 evidence make *any* sense if they "always" believed certifications from December 28, 2021 and later were "part of this case."  (*Id.* at 2; ECF No. 266 at 4.)  Their arguments to transform this case on the eve of trial are meritless.

*First*, Relators assert they "reasonably relied on eCW's representations that Version 11 meant Version 11" based on a smattering of examples where eCW allegedly did not sufficiently "distinguish between Version 11" and later certified versions, such as eCW's informal customer list (where this distinction is irrelevant) or a single deposition answer where the witness was asked to choose if conduct related to "Version 11 or Version 12."  (ECF No. 579 at 2-5; ECF No. 218-20 at 94:7-95:3.)  There was no such reliance.  Relators litigated with clear understanding that these were distinct certified versions:  (1) it was "undisputed" at summary judgment that "eCW has had 15 versions of its EHR software certified," only one of which was "V11" (ECF No. 266-1 ¶¶ 87-99); (2) Relators submitted an "eCW Version Attestation Chart" at summary judgment distinguishing "V11" from "11.52.153" and later certified versions (ECF No. 266-58); (3) Relators argued ██████████████████████████████████████████████ — allegations inapplicable to Version 153, which remained certified through December 2022 (ECF No. 266 at 4; ECF No. 266-1 ¶¶ 179, 180 (emphasis added)); (4) the same witness that Relators point to, Michael Laycob, testified that eCW's ████████████████████████ ████████████████████████ (ECF No. 573-5); and (5) Relators won relief precluding eCW's later "certification processes" as "irrelevant" by citing exclusively the summary judgment statement of fact that "eCW's V 11 was certified on December 28, 2017" (ECF No. 386 at 17).

3

Regardless, the key fact that matters for Relators' theory is "the certification decision," not eCW's internal naming conventions.  (ECF No. 266 at 4.)  As this Court stated, the issue is whether there were "[f]alse representations made to obtain CEHRT certification."  (ECF No. 345 at 45.)  Seeking a *new* certification *in December 2021* is necessarily a different inquiry from whether

███████████████████████████████████████████████████████████████████

████████████████████████████████████████ because that new certified version stands alone.  (ECF No. 266 at 15.)  ONC makes the same point:  the CHPL ID "[u]niquely identifies a single health IT module" which is "[a]ssigned to each individual certified health IT product listing" and "a health IT product that is differently versioned from the version(s) listed on the CHPL … would need to acquire a new certificate."  (Ex. 1, ONC, *CHPL Product Versioning (FAQ)*; Ex. 2, *CMS EHR Certification ID Quick Reference Guide*)  "For example, V4.2 is on the CHPL, and you seek to market V4.8.  *Version V4.8 would not be considered a part of an internal version of a broader V4 CHPL listing, but instead is its own unique version and requires a new certificate.*"  (*Id.* (emphasis added).)  eCW's regulatory disclosures confirm that Versions 11, 153, and subsequent certified versions are unique.  (Ex. 3, ECW_PER001233644 at –3674 to –3975.)

*Second*, Relators obscure why eCW sought certification for Version 153.  On December 31, 2020, CMS published a rule requiring "Part D sponsors to use the NCPDP SCRIPT standard version 2017071 for electronic prior authorization transactions."  (Ex. 4, CMS, *E-Prescribing Standards and Requirements*.)  eCW needed to demonstrate compliance with ██████████

████████████████████████████████████████████ (Ex. 5, ECW_PER000011794, at –1796.)  eCW implemented this functionality on Version 153 only (not Version 11):  ████████

███████████████████████████████████████████████████████████████████

████████████████████████████ (ECF No. 580-1 at –0019312-13.)  Version 153 is not a

"subversion" or routine maintenance release of Version 11: it reflected roughly 20,000 changes, offered *different* functionality, and was tested against a *different* prescribing standard for (b)(3).

*Third*, Relators try to downplay the significance of eCW's 2021 certifications by asserting that "eCW only needed to submit an attestation form and pay $2,000." (ECF No. 579 at 4.) Considering that Relators concede eCW "follow[ed] the same certification process it employed for Version 11," it is hard to see what point Relators are making other than ONC's certification process is perfunctory and immaterial. (*Id.* at 11.) Regardless, the CHPL's "listing of Health IT Modules" signifies that they "have been tested and certified through the Certification Program." (Ex. 6, ONC, *ONC Health IT Certification Program Overview.*) The very documents that Relators cite confirm that Version 153 was a ███████████████ for which the ONC-ACB ████████

████████████████████████████████████████████

(ECF No. 580-2 at ECW_PER001238534.) eCW submitted extensive documentation on its

████████████████████████████████████████████ (*Id.* at – 8533 to –8534.) And Drummond, the ONC-authorized certification body, confirmed that Version 153 ████████████████████████████ but a ████████ requiring ███

████████ (ECF No. 580-4 at ECW_PER000003869.)

*Fourth*, Relators repeatedly assert that they and eCW "affirmatively relied" on testing of Version 153. (ECF No. 579 at 4-5, 13.) For example, Relators claim that "[i]n May 2021, Relators analyzed the 11.52 update and found that several original vulnerabilities persisted" "in the Version 11 subversions." (ECF No. 579 at 13.) But (1) they performed that test on "May 18, 2021"— *before* Version 153 was even released; and (2) their interrogatory answer admits testing was on ████████████ not the certified Version 11.52.153 that was certified seven months later. (ECF No. 556-4 at 62, 64; *see* Ex. 7, ECW_PER000572063 (discussing Version 153's release).)

5

The same applies to Relators' assertions that "[i]n April 2021, Drummond performed surveillance testing of eCW's software," and "[t]hat testing was performed on a subversion of Version 11 called Version 11.52.153." (ECF No. 579 at 3, 17.)  That sleight of hand incorrectly conflates two unrelated issues.  Drummond's testing of the ████████ security criteria occurred on April 27, 2021—again, before Version 153 was even released.  (*See*, *e.g.*, Ex. 8, ECW_PER001680967; Ex. 9, ECW_PER000011807-11 (discussing ██████████████████ ████████████████████████████████).)  There is no genuine dispute that Drummond's testing of the *(d)-criteria*—the only criteria at issue—was on Version 11.

Relators try to muddy the waters with a November 2021 email chain, ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████. (ECF No. 580-1 at eCW2023_0019312-13 (November 2021 discussion about whether ████████████████████████████████ ████████████████████████████████ for prescribing, while 99.8% of customers were on Version 153).)[1] ████████████████████████████████████████. (*See*, *e.g.*, Ex. 10, ECW_PER000011797 (deciding to ████████████████████████████████ ████████████████████████); Ex. 5, ECW_PER000011794 at –1795 (noting the ████ ████████████████████████████████ and run a separate pilot testing ████████████████); Ex. 11, ECW_PER000066590 (Drummond's June 3, 2021 testing of ████████████████████████████████).) ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.

---

[1]  Relators' assertion that "[e]ven now, eCW has not produced any information about when any of its customers upgraded to a Version 11 subversion" is belied by the very document they cite. (ECF No. 579 at 5.)

In short, Relators' effort to merge distinct certified versions in 2021 and later into Version 11 fails. They cannot rely on distinctions between these versions at summary judgment and to exclude evidence, and then assert weeks before trial that new certifications years into this litigation—following a full government investigation—have "always" been part of this case.

## II.    THE COURT ADDRESSED ONLY VERSION 11—NOT 153—AT SUMMARY JUDGMENT, AND INJECTING IT NOW MATERIALLY CHANGES THIS CASE.

The best proof that this Court did not consider arguments about Version 153 at summary judgment is that Relators now spend 10 pages making new arguments and citing evidence outside the summary judgment record. (ECF No. 579 at 9-19 (discussing new exhibits 1, 2, 4, 5, 9, 10, and 11).) Nothing in the Court's opinion discusses a claim that "eCW made repeated false representations to ONC" "throughout the subversion certification process," "withh[e]ld information about non-conformities to obtain certification" in 2021 and 2022, or was "misleading ONC … to keep its certification." (*Id.* at 13, 16-17, 19.) The Court never addressed these issues because Relators' filings made clear "Version 11" did not include later-certified "subversions."

To the contrary, Relators stated ██████████████████████████ ████████████████████████████████████████ and ██████████████████ ████████████████████████████████████████████████████ ████████████ (ECF No. 266-2 ¶¶ 132-33 (emphases added).) For the allegation that ████ ████████████████████████████████ the security criteria, Relators cited only the CHPL webpage for Version 11 (not any other certified version). (*Id.* ¶ 134; *accord* ECF No. 266-62.) Relators asserted that "the time frame that matters for the certification decision—December 2017 when Version 11 was certified" because "Relators' claims here are about Version 11 of eCW's software certified in December 2017." (ECF No. 266 at 4, 32.) The Court's own "timeline of events" and materiality analysis focus on the period before October 2021—stopping short of

Version 153's certification in December 2021. (ECF No. 345 at 16-27, 46-48.)

Relators' brief illustrates their 180-degree turn. They now claim that security issues "persisted" in subsequent certified versions that eCW "fraudulently obtained." (ECF No. 579 at 12.) At summary judgment, Relators admitted the opposite:



(ECF No. 266 at 2-4 (emphases added).) The Court even previously found that after Relators' May 2021 disclosure, "SQOO stated that each issue had either been or was being fixed, or did not constitute a security risk according to eCW." (ECF No. 345 at 27.) And it makes no sense to say eCW defrauded anyone about Version 153 when SQOO investigated Relators' allegations and determined

(Ex. 12, QPR-22738 at –2739 to –2743.)

Similarly, Relators contend that "Drummond was concerned that eCW was not fixing safety and certification issues in all its releases," but nevertheless "asked eCW to … obtain[] separate CHPL listings for its Version 11 subversions." (ECF No. 579 at 11.) Arguing that ONC's accredited certification body knew about alleged security concerns but encouraged eCW to seek certification anyway *negates* falsity, scienter, and materiality. At summary judgment, Relators tried to minimize that "the government knew about [eCW's allegedly] terrible security since it was supervising eCW" as "irrelevant" because "the time frame that matters for the certification decision" is "December 2017 when Version 11 was certified." (ECF No. 266 at 4.) But that response disappears if the question is about certifications in 2021. FCA liability is foreclosed

8

where "the government's actual conduct"—that it "learned of [relator]s' concerns, thoroughly investigated them," and "[t]o this day … continues to pay for and use the [product]"—"suggests that the allegedly false statements were immaterial." *U.S. ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563 (7th Cir. 2015); *see U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491 F.3d 254, 263 (5th Cir. 2007) ("'[I]f the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim.'"); *City of New York v. Coastal Oil New York, Inc.*, 1999 WL 493355, at *10 (S.D.N.Y. July 12, 1999) ("After a party has discovered a fraud, further reliance on fraudulent statements is not justified, and an award of damages should be limited accordingly."). Injecting additional falsity, scienter, materiality, and government knowledge arguments about Version 153 reshapes this case in ways irreconcilable with Relators' concessions.

## III.    eCW HAS CONSISTENTLY ARGUED THAT NON-VERSION 11 DAMAGES ARE UNRECOVERABLE, AND THE COURT PRESERVED THAT ARGUMENT.

As a last-ditch effort, Relators assert that eCW "waived any argument" that Relators' alleged damages should be limited to Version 11 only. (ECF No. 579 at 8-9.) That argument fails.

***First***, eCW filed a motion "to preclude Relators from seeking damages based on any version other than version 11" and then wrote a November 7, 2025 letter stating ███████████

████████████████████████████████████████████████████

████████████████████████████████ (ECF No. 364-1 at 1; ECF No. 488-1 at 1.) Relators never hinted they disagreed with this description of Version 11; instead, they filed a response to this letter stating, "Relators agree[d] that Ms. Wolfston's damages model should only include practices that were using Version 11." (ECF No. 488 at 9.) And the Court ordered that the "deficiencies raised in eCW's November 7, 2025 letter are preserved." (ECF No. 498 at 5.)

***Second***, to avoid Ms. Wolfston's exclusion, Relators conceded they would "[r]emove non-

Version 11 users from the models." (ECF No. 573 at 8 n.2.)  They told the Court that "removing" "non-Version 11 users" "was appropriate to do after the Court's ruling on summary judgment, and [they] agreed to do it." (ECF No. 482, 10/23/25 Hr'g Tr. 115:18-21.)  They did not say they would redefine "Version 11" from summary judgment to mean something other than the software certified on December 28, 2017.  (ECF No. 266-2 ¶¶ 132-33.)  Relators' stray characterization in one brief that the "case's liability focus has narrowed" to "Version 11 and all versions thereafter" cannot plausibly refer to all future *certified* versions because that would include Version 12, which Relators continue to say is ███████ (ECF No. 429 at 9; 6/24/26 Hr'g Tr. 130:20.)

**Third**, the observation that Ms. Wolfston's third model still includes non-Version 11 damages "*just like her previous models*" is an indictment, not an exoneration.  (ECF No. 579 at 1.)  Her October 2024 model failed to even identify the certified software version she included. ████████████ Nothing about this timeline supports waiver.

## CONCLUSION

Relators avoided summary judgment by arguing Version 11 and Version 153 were distinct, averted Ms. Wolfston's exclusion by promising to "remove non-Version 11 damages," and precluded eCW from introducing 2022 certification and security practices as "irrelevant."  Their desire to reverse course to preserve their artificially inflated damages and, consequently, inject entirely new falsity, materiality, and scienter arguments about distinct certifications **three weeks before trial** cannot be squared with due process.  Ms. Wolfston must remove all non-Version 11 users from her model.  If she does not, eCW respectfully submits that she should be excluded.

10

Dated: July 10, 2026

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice*)
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 10, 2026, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants in this matter.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

12