UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>    Defendant. | CIVIL ACTION FILE<br><br>NUMBER 5:18-CV-382 |

**ATTACHMENT H**

**RELATORS' PROPOSED SECOND AMENDED JURY CHARGES**

**Relators' Additional Proposed Pattern Charges**

1. Eleventh Circuit Pattern (Civil) 2.2 Depositions

2. Eleventh Circuit Pattern (Civil) 2.5. Judicial Notice

3. Eleventh Circuit Pattern (Civil) 2.8 Civil *Allen* Charge

4. Eleventh Circuit Pattern (Civil) 3.2.2 Duty to Follow Instructions – Corporate Party Involved (*modified for LLC)*

5. Eleventh Circuit Pattern (Civil) 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

6. Eleventh Circuit Pattern (Civil) 3.7.2 Responsibility of Proof – Affirmative Defense Preponderance of the Evidence

**Relators' Request to Charge No. 1**

<u>Use of Depositions:</u>

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [<u>name of witness</u>], taken on *[date]*, *[is about to be/has been]* presented to you *[by a video/by reading the transcript]*. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.[1]

---

[1] Eleventh Circuit Pattern (Civil) 2.2. This pattern charge does not appear to be in dispute as it is included in both Relators' and eCW's proposed charges.

**Relators' Request to Charge No. 2**

<u>Judicial Notice</u>

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted *that the MIPS data utilized by Relators' expert Ms. Wolfston in her damages models provided by the Centers for Medical and Medicaid Services (CMS) is proven even though no one introduced evidence to prove it.*[2] *This data includes information about Medicare payments to providers, MIPS participation data, and MIPS scores for individual providers.*[3] You must accept it as true for this case.[4] *That does not mean that you must accept Ms. Wolfston's damages calculation or methodology, only the underlying data used.*

---

[2] The Parties agreed in their pre-trial submissions that they may rely on websites maintained by CMS without specifically listing out each page on their respective exhibit lists PTO, ¶ 16. Courts routinely take judicial notice of statements on government website. *See, e.g.*, *United States v. Griggers*, No. 22-310, 2024 WL 4265254, at *12, n.22 (M.D. Ga. Sept. 23, 2024) (Treadwell, J. (taking judicial notice of USPS policy on its website that "package history and Proof of Delivery . . . are stored in the system' for two years at most" (citation omitted)); *see also id.* ("The Court may take judicial notice of government publications and website materials." (quoting *Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 G. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018))); *LaMonte v. City of Hampton*, 576 F. Supp. 3d 1314, 1327 n.12 (N.D. Ga. 2021) ("It is established law that a court may take judicial notice of government websites.").

[3] *Id.*

[4] Eleventh Circuit Pattern (Civil) 2.5.

**Relators' Request to Charge No. 3**

<u>Civil *Allen* Charge</u>

Members of the jury:

I'm going to ask you to continue your deliberations to reach a verdict. Please consider the following comments.

This is an important case. The trial has been expensive in terms of time, effort, money, and emotional strain to both the plaintiff and the defendant. If you fail to agree on a verdict, the case remains open and may have to be tried again. A second trial would be costly to both sides, and there's no reason to believe either side can try it again better or more exhaustively than they have tried it before you.

Any future jury would be selected in the same manner and from the same source as you. There's no reason to believe that the case could ever be submitted to a jury of people more conscientious, more impartial, or more competent to decide it—or that either side could produce more or clearer evidence.

It's your duty to consult with one another and to deliberate with a view to reaching an agreement—if you can do it without violating your individual judgment. You must not give up your honest beliefs about the evidence's weight or effect solely because of other jurors' opinions or just to return a verdict. You must each decide the case for yourself—but only after you consider the evidence with your fellow jurors.

You shouldn't hesitate to reexamine your own views and change your opinion if you become convinced it's wrong. To bring your minds to a unanimous result, you must openly and frankly examine the questions submitted to you with proper regard for the opinions of others and with a willingness to reexamine your own views.

5

If a substantial majority of you is for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable. It may not be reasonable since it makes so little impression on the minds of your fellow jurors—who bear the same responsibility, serve under the same oath, and have heard the same evidence.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in light of the court's instructions on the law. You may take all the time that you need.

I remind you that in your deliberations, you are to consider the court's instructions as a whole. You shouldn't single out any part of any instructions, including this one, and ignore others.

You may now return to the jury room and continue your deliberations.[5]

---

[5] Eleventh Circuit Pattern (Civil) 2.8.

**Relators' Request to Charge No. 4**

<u>Duty to Follow Instructions – Corporate Party Involved</u>

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

*The Defendant in this case, eClinicalWorks LLC (eCW), is a limited liability company.*

The fact that a limited liability company is involved as a party must not affect your decision in any way. A limited liability company and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a *limited liability company* is involved, of course, it may act only through people as its employees; and, in general, a *limited liability company* is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.[6]

---

[6] Eleventh Circuit Pattern (Civil) 3.2.2 (modifications for LLC in italics).

**Relators' Request to Charge No. 5**

<u>Impeachment of Witnesses Because of Inconsistent Statements</u>

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.[7]

---

[7] Eleventh Circuit Pattern (Civil) 3.5.1.

**Relators' Request to Charge No. 6**

<u>Responsibility of Proof – Affirmative Defense Preponderance of the Evidence</u>

In this case, the Defendant asserts the affirmative defenses of _____. Even if the Relators prove their claims by a preponderance of the evidence, the Defendant can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendant does not have to disprove the Relators' claims, but if the Defendant raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.[8]

---

[8] Eleventh Circuit Pattern (Civil) 3.7.2.

9

**Relators' Proposed Non-Pattern Charges**

7. The False Claims Act

8. Relators in FCA Case

9. Financial Interest

10. Cause of Action #1: Presenting a False or Fraudulent Claim

11. Materiality

12. Cause of Action #2: False Statement or Record Material to a False or Fraudulent Claim

13. False Claims Act: Cause to be Submitted

14. Overview of EHR Certification Program

15. EHR Certification Requirements (Criterion (d)(1))

16. EHR Certification Requirements (Criterion (d)(2))

17. EHR Certification Requirements (Criterion (d)(3))

18. EHR Certification Requirements (Criterion (d)(5))

19. EHR Certification Requirements (Criterion (d)(7))

20. EHR Certification Requirements (Criterion (d)(8))

21. EHR Certification Requirements (Criterion (d)(9))

22. EHR Certification Requirements (Criterion (d)(12))

23. Government Knowledge Not a Defense under the False Claims Act

24. Government Negligence or Other Government Failure Is Not a Defense

25. Damages

26. Estimating Damages

27. Quantification of False or Fraudulent Claims / False Statements or Records

28. Missing Witness

29. Withheld Documents

**Relators' Request to Charge No. 7**

The False Claims Act

I want to address the False Claims Act generally. As I instructed you at the beginning of this trial, the False Claims Act is a federal law designed to discourage fraud against the federal government and to make the government whole if it has been defrauded.[9] The False Claims Act authorizes the Attorney General of the United States, and/or private individuals, to bring claims on behalf of the United States Government against an individual or a company. A private individual who asserts claims under False Claims Act is known as a "relator," and the lawsuit is called a "qui tam" action.[10]

Under the False Claims Act, any person, including a company, who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval to the Government, or who knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim to the Government, is liable.[11]

---

[9] S. Rep. No. 99-345, at 1, 6, 31 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5271, 5296; S. Rep. No. 99-345, at 10-11 (1986), reprinted in 1986 U.S.C.C.A.N. at 5275-65 (citing *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537 (1943)); H.R. Rep. No. 99-660, at 20, 25 (1986); S. Rep. No. 110-507, at 19 (2008); H.R. Rep. 111-97, at 2 (2009) (quoting Cong. Globe, 37th Cong., 3d Sess. 952 (1863)); S. Rep. No. 111-10, at 10 (2009), reprinted in 2009 U.S.C.C.A.N. 430, 437-38.

[10] 31 U.S.C. § 3730; James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 955, 1021 (2016).

[11] *See United States ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1264 (N.D. Ga. 2021) ("The FCA imposes civil liability on any person who 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' or 'knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim' to the Government." (citing 31 U.S.C. § 3729(a)(1)(A), (B))); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 953, 1021 (2016).

**Relators' Request to Charge No. 8**

<u>Relators in FCA Case</u>

When Congress enacted the False Claims Act in 1863, it included qui tam provisions that allow private individuals, known as relators, to bring suit "for the person and for the United States Government" against "[a]ny person" who defrauds the government and to receive a share of any recovery.[12] Mr. Permenter, Mr. Wheeler and Mr. Rodighiero, the Plaintiffs, are Relators in this case.

---

[12] *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 774 (2000).

**Relators' Request to Charge No. 9**

<u>Financial Interest</u>

Any money recovered under the False Claims Act goes to the United States. The United States may then provide the Relators with a portion of that recovery.[13] In determining the amount of damages, if any, that the United States is entitled to, you are not to consider the possibility of a Relators' share of the recovery.[14] If you reach a verdict in favor of the United States, I will decide the amount which is reasonable for the Relators to receive from the United States' recovery.[15]

In reaching your verdict, you may consider the fact that Relators have a financial interest in this lawsuit as one factor in determining whether they have testified truthfully in this case. You may also consider the personal financial interest of any owners of eClinicalWorks as one factor in determining whether they have testified truthfully in this case. You heard testimony from Mr. Girish Navani who is the CEO of eClinicalWorks and a partial owner of the company. Therefore, you may consider the fact that Mr. Navani has a personal financial interest in this lawsuit as one factor in determining whether he has testified truthfully in this case.[16]

---

[13] Court's Charge to the Jury No. 29, *United States ex rel. Penelow v. Janssen Products, LP*, No. 12-7758 (ZNQ) (D. N.J., Jun. 13, 2024), Dkt.424-9 at 57.

[14] *Id.*; *Roberts v. Accenture, Ltd. Liab. P'ship*, 707 F.3d 1011, 1017-18 (8th Cir. 2013) (noting that a relator's share of recovery under the FCA "only comes into play at the conclusion of a case, after the action has already proceeded to a judgment or settlement"); *U.S. ex rel. Shutt v. Cmty. Home and Health Serv. Inc.*, 550 F.3d 764, 766 (9th Cir. 2008) ("The criteria for determining the relator's share . . . generally are not relevant to the defendant's liability under the FCA.").

[15] 31 U.S.C. § 3730 (d)(2)("If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages.").

[16] Evidence of witness bias is generally relevant under Rule 401 and admissible to impeach a witness. *See United States v. Abel*, 469 U.S. 45, 50-51 (1984) ("A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony."). Bias includes evidence about the "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party," which includes evidence of a witness's "self-interest." *Id.* at 52. "Pecuniary interest may be shown to prove

**Relators' Request to Charge No. 10**

Cause of Action #1: Presenting a False or Fraudulent Claim

Relators allege that Defendant violated provision (A) of the False Claims Act.

To prove a violation of provision (A), Relators must prove by a preponderance of the evidence Defendant knowingly presented or caused to be presented a false or fraudulent claim for payment or approval.

I will now instruct you on the meaning of the terms "claim for payment or approval" (sometimes just referred to as a "claim"), "false or fraudulent," and "knowledge or knowingly."[17]

(A) Claim

Under the FCA, a "claim" includes any request or demand for money where an agency of the United States Government provides any portion of the money requested or demanded.[18]

In this case, it is undisputed that EHR vendors such as eCW must attest to the U.S. Department of Health and Human Services Office of the National Coordinator for Health Information Technology (ONC) that their software satisfies ONC's certification requirements in order to obtain certification. In addition, under the Merit-Based Incentive Payment System (MIPS), healthcare providers apply each year for incentive payments from the Centers for Medicare and Medicaid Services (CMS). Each year CMS assigns a MIPS score to each provider

---

bias," including the amount of money at issue, "because the jury may reasonably believe that the willingness of a witness to lie or shade testimony would be affected, not only by whether the results may benefit him, but also by how much." *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999) (finding trial court's exclusion of witnesses' pecuniary bias violated defendant's constitutional rights, but finding error harmless*); see also United States v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994) (finding evidence of witness's pecuniary interest in particular outcome of trial admissible to prove bias and not unfairly prejudicial); *United States v. Int'l Bus. Machines Corp.*, 84 F.R.D. 651, 652 (S.D.N.Y. 1979) ("Inquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential if bias is to be uncovered.").
[17] 31 U.S.C. § 3729(b)(2)(A).
[18] *Id.*

that can increase or decrease the dollar amount of every claim for reimbursement submitted to CMS. During the timeframe at issue, in order to be eligible for a positive increase in the reimbursements paid by CMS, healthcare providers had to attest to using certified EHR software. Relators contend that because eCW's software did not satisfy federal certification requirements, the healthcare providers who use eCW's EHR could not truthfully attest to using certified EHR software.

Relators allege that the annual attestation by eCW users that they were using certified EHR technology was false or fraudulent, and therefore the claims submitted by healthcare providers who used eCW's software were false or fraudulent requests for incentive payments to CMS. If you find eCW caused the submission of one or more false or fraudulent requests for incentive payments to CMS, then you must consider each such request to be a separate claim.[19]

(B) False or Fraudulent Claim

As I explained, a claim must also be false or fraudulent. A claim can be false or fraudulent in several ways.

A claim can be false or fraudulent if it contains affirmative statements or representations that are untrue.  A claim is also false or fraudulent when a person or entity fails to comply with statutory, regulatory, or contractual requirements but still certifies that it has complied with them when it submits the claim or causes the claim to be submitted.[20]

---

[19] 31 U.S.C. § 3729(b)(2); *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 (11th Cir. 2024) ("[A] claim alleging fraud in the inducement of a government contract . . . focus[es] on the false or fraudulent statements which induced the government to enter into the contract at the outset." (internal quotation marks and citation omitted)); *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) (stating that a "claim" under the False Claims Act refers to "all fraudulent attempts to cause the Government to pay out sums of money").

[20] *Yates v. Pinellas Hematology & Oncology, P.A.,* 21 F. 4th 1288, 1299 (11th Cir. 2021) (stating that "a claim is false when it misrepresents the goods or services provided" and also when "a

A claim can also be false or fraudulent if it makes statements or representations that are true as far as they go, but misleading in context because the claimant fails to disclose important information – for example, attesting that software was certified by ONC despite knowing its product does not meet applicable security requirements required for certification.

Finally, a claim can also be false or fraudulent when it was based on or caused by an original fraud—whether a certification or otherwise—even if the submitted claims themselves would not otherwise be false.[21] Under this type of false claim, the underlying fraud taints every claim subsequently brought under the contract, rendering those claims actionably false.[22]

---

person or entity fails to comply with statutory, regulatory, or contractual requirements but certifies that it has complied with them").

[21] *Marsteller for use & benefit of United States v. Tilton*, 880 F.3d 1302, 1314 (11th Cir. 2018) (holding that under FCA fraudulent inducement basis of liability, "subsequent claims are false because of an original fraud (whether a certification or otherwise)"); *United States v. Strock*, 982 F.3d 51, 60 (2d Cir. 2020) ("Under this fraudulent inducement theory, FCA liability attaches not because a defendant has submitted any claim for payment that is 'literally false,' but instead because 'the contract under which payment [is] made is procured by fraud.'" (quoting *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467-68 (5th Cir. 2009)); *United States ex rel. Thomas v. Siemens AG*, 593 F. App'x 139, 143 (3d Cir. 2014) ("Although the focus of the False Claims Act is on false 'claims,' courts have employed a fraudulent inducement theory to establish liability under the Act for each claim submitted to the government under a contract which was procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves." (collecting cases)); *see also Strock*, 982 F.3d at 61 ("This theory of fraud recognizes that the government's decision to enter a contract in some sense undergirds any decision to ultimately pay claims arising under the contract." (citation omitted)); James B. Helmer, Jr., The False Claims Act: Whistleblower Litigation, 977 (8th Ed. 2021) ("The fraudulent inducement theory of FCA liability makes claims actionable when they are submitted to the government under a contract procured by fraud, even if the submitted claims are not, in fact, false.").

[22] *See Strock*, 982 F.3d at 60 ("The theory is based on the notion that 'fraud d[oes] not spend itself with the execution of the contract,' but instead 'taint[s]' every claim subsequently brought under the contract, rendering these claims actionably false." (citing *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 543 (1943), *abrogated in part by statute on other grounds*; *Longhi*, 575 F.3d at 468); *see also Marsteller*, 880 F.3d at 1314 n.24 ("Other circuits have conceptualized such claims somewhat differently under this statute, although still acknowledging their validity: . . . 'The [defendant] "uses" its [initial fraudulent statement] when it makes . . . [an] application for payment[; n]o more is required under the statute. . . . The statute requires a causal rather than a temporal connection between fraud and payment. If a false statement is integral to a causal chain

You should interpret the phrase "false or fraudulent" broadly.[23] Under the FCA, a claim need not be fraudulent so long as it is false.[24] If you find that a claim is either false or fraudulent, you must find liability under the FCA if the other elements are proven.[25]

The fact that Defendant supplied some service (i.e. EHR) does not relieve Defendant of liability.[26] Under the False Claims Act, a "half-truth" is false or fraudulent no less than an affirmative false statement or representation.[27] Here, Relators contend that the security vulnerabilities and other issues in eCW's EHR software that have been discussed in this trial make it ineligible to be a Certified Electronic Health Record Technology (CEHRT), which medical providers are required to use in order to receive a positive payment adjustment under the MIPS program. Relators contend it was impossible for providers using eCW's EHR while participating in MIPS to truthfully attest they were using CEHRT. Relators contend that each

---

leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork.'" (quoting *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005); alterations in *Marsteller* opinion).

[23] *U.S. ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 413 (6th Cir. 2002).

[24] *U.S. v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 60 (8th Cir. 1973) ([w]e have decided that a false claim, not only a fraudulent claim, is actionable under the Act…").

[25] *U.S. v. Neifert-White Co.*, 390 U.S. 228, 233 (1968); *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 301 (6th Cir. 1998); *U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991), *cert. denied*, 519 U.S. 865 (1996); *U.S. v. Fleming*, 336 F.2d 475, 476 (10th Cir. 1964), *cert. denied*, 380 U.S. 907 (1965).

[26] *U.S. ex rel Longhi v. Lithium Power Techs.*, 575 F.3d 458, 473 (5th Cir. 2009) (where government awarded grants based on defendant's false statements, and there was no "standard procurement contract where the government ordered a specific product or good," "there is no tangible benefit to the government and the intangible benefit is impossible to calculate"; therefore, "it is appropriate to value damages in the amount the government actually paid"); *U.S. ex rel. Compton v. Midwest Specialties*, 142 F.3d 296, 304 (6th Cir. 1998);  *U.S. v. Aerodex*, 469 F.2d 1003, 1007 (5th Cir. 1972); *U.S. v. Nat'l Wholesalers*, 236 F.2d 944, 945-51 (9th Cir. 1956)); *see also* S. Rep. No. 99-345, at 9 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5274; H.R. Rep. No. 99-660, 21 (1986).

[27] *Universal Health Servs. Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 188 (2016) ("They fall squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations.").

attestation by an eCW Version 11 user that he or she was using certified EHR technology that resulted in the provider receiving a positive MIPS payment adjustment or avoiding a negative MIPS payment adjustment is a false claim, which eCW caused the provider to submit.

In this case, it is not disputed that eCW certified that Version 11 of its EHR software satisfied the ONC certification requirements.

<u>"Knowledge or Knowingly"</u>

This element is also referred to as "scienter" or intent and includes actual knowledge, deliberate ignorance, or reckless disregard of the truth or falsity of the information.[28] Relators are not required to show proof that Defendant had specific intent to defraud the government.[29]

"Actual knowledge" means subjective knowledge that the claim, record, or statement is false.[30] For example, if it appears that a certain condition existed for a substantial period of time, and that Defendant had regular opportunities to observe the condition, then you may draw the inference that Defendant had knowledge of the condition.[31]

---

[28] 31 U.S.C. § 3729(b)(1).

[29] *U.S. ex rel. Marstellar v. MD Helicopters*, 556 F. Supp. 3d. 1291, 1301 (N.D. Ala. 2021); Jury Instructions at 12, *U.S. ex rel. Drakeford v. Tuomey d/b/a Tuomey Healthcare System, Inc.*, Case No. 3:05-2858-MBS (D.S.C. May 8, 2013), Dkt. 810.

[30] *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 757 (2023) (if relator establishes that a defendant knew the claims being submitted were false, "then it does not matter whether some other, objectively reasonable interpretation" would justify their submission; "[f]or scienter, it is enough if [defendants] believed that their claims were not accurate").

[31] *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1059 (11th Cir. 2015); Jury Instructions, *U.S. ex rel. Bunk v. Birkart Globistics GMBH & Co.*, No. 1:02cv1168, ECF No. 1312-3 at 39 (E.D. Va. Aug. 1, 2014); *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 811-12 (10th Cir. 2002) (affirming validity of jury instruction directing jury that in considering whether defendant knowingly made any false statements, it "must consider all direct and circumstantial evidence"); *see also Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 n.11, 665 (11th Cir. 1988) (finding no error with instruction that "Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time and that the defendant had regular opportunities to observe the condition, then you may draw the inference that he had knowledge of the condition.").

"Deliberate ignorance" means the Defendant does not know something because it has deliberately avoided finding out about it. Deliberate ignorance is sometimes referred to as "willful blindness." A Defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. [32]

"Reckless disregard" refers to a form of negligence, sometimes referred to as "gross negligence" in not knowing that the claim, record, or statement is false. A Defendant acts with gross negligence if the Defendant fails to make such inquiry as would be reasonable and prudent to conduct under the circumstances. Put another way, a Defendant acts with reckless disregard when the Defendant knows or has reason to know of facts that would lead a reasonable person to realize that harm is the likely result of the relevant act.[33]

---

[32] *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 57 (D.D.C. 2007) (deliberate indifference); Jury Instructions at 12, *U.S. ex rel. Drakeford v. Tuomey*, No. 3:05-cv-02858-MBS (D.S.C. May 8, 2013), Dkt. No. 810; Jury Instructions at 41, *U.S. ex rel. Bunk v. Birkart Globistics GMBH & Co.*, No. 1:02cv1168 (E.D. Va. Aug. 1, 2014), Dkt. No. 1312-3; S. Rep. No. 99-345, at *7, 21 (1986); *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 382 (4th Cir. 2015) ("warnings" and "subsequent inaction" are probative of knowledge); *U.S. v. Gruenberg*, 989 F.2d 971, 974-75 (8th Cir. 1993); *Massachusetts v. Mylan Labs.*, 608 F. Supp. 2d 127, 154 (D. Mass 2008) (finding that, "having entered into the rebate agreements, the defendants were required, as a matter of law, to familiarize themselves with the legal requirements, standards and procedures of the Medicaid program," including "the procedures and legal requirements applicable to reimbursements"); *U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Secs. Grp., Inc.*, 370 F. Supp. 2d 18, 41-42 (D.D.C. 2005) (defendant must make "such inquiry as would be reasonable and prudent to conduct under the circumstances to ascertain the true and accurate basis of the claim"); *UMC Elecs. Co. v. U.S.*, 43 Fed. Cl. 776, 793 (Fed. Cl. 1999), *aff'd*, 249 F.3d 1337 (Fed. Cir. 2001); *U.S. v. Cabrera-Diaz*, 106 F. Supp. 2d 234, 238 (D.P.R. 2000); *U.S. v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996).

[33] *Urquilla-Diaz v. Kaplan Univ.,* 780 F.3d 1039, 1058 & n.15 (11th Cir. 2015) ("Our sister circuits have uniformly described reckless disregard for purposes of the False Claims Act as akin to an 'extension of gross negligence' or an 'extreme version of ordinary negligence.'" (quoting, among others, *U.S. v. Krizek*, 111 F.3d 934, 942 (D.C. 1997) (finding that "reckless disregard in this context is not a lesser form of intent, but an extreme version of ordinary negligence" (citation and internal quotation marks omitted))); Jury Instructions at 12, *U.S. ex rel. Drakeford v. Tuomey*, No. 3:05-cv-02858-MBS (D.S.C. May 8, 2013), Dkt. No. 810; Jury Instructions at 40, *U.S. ex rel. Bunk v. Birkart Globistics GMBH & Co.*, No. 1:02cv1168 (E.D. Va. Aug. 1, 2014), Dkt. No. 1312-3.

"Deliberate ignorance" and "reckless disregard" cover the ostrich type situation where an individual buries his head in the sand and fails to make inquiries which would alert him that false or fraudulent claims are being submitted, or that false statements or records are being made or used. In evaluating Defendant's knowledge, you may consider that parties who seek public funds are expected to know the law and act with strict compliance with the requirements of the law. People must turn square corners when they deal with the government. [34]

Relators have met their burden if they prove only one of Defendant's employees acting for the benefit of the company and within the scope of his or her employment had knowledge of the falsity of the claims, records or statements, or acted with reckless disregard or deliberate ignorance of that falsity.[35] Relators are not required to show any employee with managerial responsibility had knowledge or acted with reckless disregard or deliberate ignorance of that falsity because a limited liability company can be responsible for the acts of both non-managerial

---

[34] *Urquilla-Diaz v. Kaplan Univ.,* 780 F.3d 1039, 1059 (11th Cir. 2015); *U.S. ex rel. Ervin & Assocs., Inc. v. Hamilton Secs. Grp., Inc.*, 370 F. Supp. 2d 18, 41-42 (D.D.C. 2005) (defendant must make "such inquiry as would be reasonable and prudent to conduct under the circumstances to ascertain the true and accurate basis of the claim"); *UMC Elecs. Co. v. U.S.*, 43 Fed. Cl. 776, 793 (Fed. Cl. 1999), *aff'd*, 249 F.3d 1337 (Fed. Cir. 2001); *U.S. v. Cabrera-Diaz*, 106 F. Supp. 2d 234, 238 (D.P.R. 2000); *U.S. v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996); James B. Helmer, Jr. & Erin M. Campbell, *Jury Instructions for False Claims Act Cases*, 84 U. Cin. L. Rev. 943, 980 (2016) (Instruction 11.B) ("The requirement that those who do business with the Government know the law and act in strict compliance with the law is a long-standing requirement imposed by the Supreme Court; [e]ncouraging compliance with the square corners rule is one of the purposes of the False Claims Act.").
[35] *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 918-19 (4th Cir. 2003) (attributing False Claims Act knowledge to corporation where at least one corporate employee knew or should have known that the corporation was submitting claims for payment and that those claims were false).

and managerial employees.[36] It is also not a defense if the person who actually submitted the

claims to the United States lacked knowledge.[37]

---

[36] *See*, *e.g.*, *U.S. ex rel. Reeves v. Mercer Transportation Co., Inc.*, 253 F. Supp. 3d 1242, 1255 (M.D. Ga. 2017) ("There is no requirement, as Mercer suggests, that these employees must work in a managerial capacity."); *U.S. v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977) ("liability of a corporation for a False Claims Act violation may arise from conduct of employees other than those with 'substantial authority and broad responsibility'").

[37] *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 918-19 (4th Cir. 2003); *U.S. v. Kaman Precision Prods., Inc.*, 2011 WL 3841569, at *5 n.14 (M.D. Fla. Aug. 30, 2011) ("A corporation can be held liable under the FCA even if the verifying employee was unaware of the wrongful conduct of other employees." (citing *Grand Union Co. v. United States*, 686 F.2d 888 (11th Cir. 1983)); Jury Instructions, Dkt. No. 810 at 12-13, *U.S. ex rel. Drakeford v. Tuomey*, No. 3:05-cv-2858-MBS (D.S.C. May 8, 2013).

**Relators' Request to Charge No. 11**

<u>Materiality</u>

In order to prevail on their FCA claims, Relators must prove that any false statements or fraudulent conduct of eCW was material.[38] The FCA defines "material" as having a natural tendency to influence, or being capable of influencing, the payment decision.[39]

Materiality looks to the likely or actual effect of the false or fraudulent claim on the government's decision to pay and the government's decision to award the underlying contract or certification.[40] A false or fraudulent claim is material if the government reasonably would attach importance to the untrue statements in deciding whether to pay the claim, or if the defendant knew or had reason to know that the untrue statements would be important to the government.[41]

The term "material" does not require evidence the claim actually influenced the government.[42] It also does not require the government to expressly state in a statute or regulation

---

[38] *United States ex rel. Bibby v. Mortgage Investors Corp.*, 987 F.3d 1340, 1347 (11th Circ. 2021) (quoting *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015)).

[39] 31 U.S.C. § 3729(b)(4). *see also Universal Health Servs., Inc. v. U.S. ex. rel. Escobar*, 579 U.S. 176, 187 (2016).

[40] *See Bibby*, 987 F.3d at 1350-52 (considering issuance of loan guaranties in materiality analysis); *United States v. Strock*, 982 F.3d 51, 62 (2d Cir. 2020) ("In sum, we find that, at least in fraudulent inducement cases, the government's 'payment decision' under *Escobar* encompasses both its decision to award a contract and its ultimate decision to pay under that contract."); *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 504 (8th Cir. 2016) (focusing materiality analysis on whether a misrepresentation "influenced the government's decision to enter into its relationship with" the defendant).

[41] *Escobar*, 579 U.S. at 193 ("Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." (citing 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)).

[42] *See*, *e.g.*, *U.S. ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 661 (5th Cir. 2017) (In the Fifth Circuit, the FCA requires "proof only that the defendant's false statements could have influenced the government's pay decision or had the potential to influence the government's decision, not that the false statements actually did so."); *U.S. v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) ("[W]hatever analytic relationship exists between materiality and reliance, courts have consistently maintained the distinction between 'materiality (in the sense of tendency to influence) and reliance (in the sense of actual influence).'" (internal quotation marks omitted; quoting *U.S. v. Rosby*, 454 F.3d 670, 674 (7th Cir. 2006))); *U.S. v. Lindsey*, 850 F.3d 1009, 1015

that particular information affects its payment decisions.[43] Rather, what is required for a finding of materiality is that the false claims, statements or records have a natural tendency or potential to influence the government's decisions.[44]

A finding of materiality cannot rest on a single fact or occurrence as always determinative.[45] Instead, you may consider several factors including: (1) whether the requirement at issue is a condition of the government's payment; (2) whether the misrepresentations went to the essence of the bargain with the government; (3) whether the misrepresentations concerned a threshold eligibility requirement that, by extension, was tied to every claim; and (4) to the extent the government had actual knowledge of the misrepresentations, the effect on the government's behavior.[46]

Materiality also does not require the government to have taken "the strongest possible action" against a defendant once it has actual knowledge of fraud.[47] The government's continued payment of claims after it has actual knowledge of fraud does not always mean the conduct is not material, depending on the circumstances of the particular case.[48]

---

(9th Cir. 2017) (observing that a "misrepresentation may be material without inducing any actual reliance" (internal quotation marks omitted)).

[43] *Escobar*, 579 U.S. at 190.

[44] *Escobar*, 579 U.S. at 192 ("Section 3729(b)(4) defines materiality using language that we have employed to define materiality in other federal fraud statutes[.]"); 31 U.S.C. § 3729(b)(4) ("[T]he term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.").

[45] *Bibby*, 987 F.3d at 1343 (quoting *Escobar*, 579 U.S. at 1919; and *U.S. ex. rel. Escobar*, 842 F.3d 103, 109 (1st Cir. 2016) (*Escobar II*)).

[46] *Bibby*, 987 F.3d at 1347; *Yates*, 21 F.4th at 1300 (materiality factors are "non-exhaustive"); *United States v. Luce*, 873 F.3d 999, 1008-09 (7th Cir. 2017) (considering as part of its materiality analysis that a defendant's misrepresentation concerned a "threshold eligibility requirement that, by extension, was tied to every" claim).

[47] *Bibby*, 987 F.3d at 1352; *see also U.S. ex rel. Fahn v. GardaWorld Fed. Servs. LLC*, 2024 WL 1605313, at *12 n.8 (M.D. Ga. Apr. 12, 2024).

[48] *See, e.g.*, *U.S. v. Corp. Mgmt., Inc.* 78 F. 4th 727, 737-38 (5th Cir. 2023) ("While *Escobar* articulated that continued payment despite knowledge of fraud often indicates lack of materiality,

'often' does not mean 'always.'"); *Fahn*, 2024 WL 1605313, at \*12 n.9 ("The continued payment factor may carry less weight due to the unique circumstances of th[e] case.").

**Relators' Request to Charge No. 12**

<u>Cause of Action #2: False Statement or Record Material to a False or Fraudulent Claim</u>

Relators also allege that Defendant violated provision (B) of the False Claims Act.

Relators can establish Defendant violated provision (B) of the False Claims Acts by showing Defendant knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.[49]

You should construe "knowingly," "false or fraudulent," "claim" and "material" in the same manner I instructed you in the context of provision (A) of the False Claims Act.

---

[49] 31 U.S.C. § 3729(a)(1)(B).

26

**Relators' Request to Charge No. 13**

False Claims Act: Cause to be Submitted

The False Claims Act is violated not only by a person who submits a false claim, but also by one who causes another to submit a false claim. In this case, Relators allege that eCW falsely attested that its software met ONC's certification requirements and therefore caused providers to submit false claims for incentive payments under the MIPS program. Under this theory, a defendant that procures a government benefit – here, certification of software – through material misrepresentation – the "original fraud" – can be liable for claims submitted on the strength of that certification.[50] You should decide whether eCW's conduct was a "substantial factor" in making the providers' claims false and whether those submissions of false claims to CMS was "foreseeable" to eCW, or in other words, a "normal consequence" of eCW's conduct.[51]

If you determine that eCW falsely attested that its EHR software was compliant with the ONC certification requirements, then you may also find that all subsequent claims submitted by providers attesting to the government that they were using CEHRT constituted false claims.[52]

---

[50] *U.S. ex rel. Zafirov v. Fla. Med. Assocs., LLC*, 2024 WL 4349242 (M.D. Fla. Sept. 30. 2024); *U.S. ex rel. Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1315 (11th Cir. 2024) ("subsequent claims are false 'because of an original fraud'").

[51] *U.S. ex rel. Bunk v. Birkart Globistics GmBH & Co.*, 2011 WL 4004313, at *7 n.10 (E.D. Va. Oct. 19, 2011) (quoting jury instruction on "Cause False Claim to Be Filed"); *see also U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242-45 (3rd Cir. 2004) (applying "substantial factor" and normal consequence" test); *U.S. ex. rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 650 (S.D.N.Y. 2011) (citing *Zimmer* with approval).

[52] *U.S. v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491 F.3d 254, 259 (5th Cir. 2007) (noting that where contract is awarded as a result of false representations, subsequent claims for payment under the contract are "actionable false claims" since "they derived from the original fraudulent misrepresentation" (citing *Marcus v. Hess*, 317 U.S. 537, 543-44 (1943)); *see also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("the term 'false or fraudulent claim' includes those instances 'when the contract or extension of government benefit was obtained originally through false statements or fraudulent conduct'" (citation omitted)).

**Relators' Request to Charge No. 14**

Overview of EHR Certification Program

The United States Department of Health & Human Services Office of the National Controller for Health Information Technology ("ONC") is responsible for coordinating a "nationwide health information technology infrastructure that allows for the electronic use and exchange of information" in a manner that "ensures that each patient's health information is secure and protected, in accordance with applicable law."[53] *The ONC Health IT Certification Program is a voluntary program that outlines specific standards and functionality defined by regulation, to which developers of electronic health records ("EHR") software can certify conformance.[54] The Certification Program outlines several criteria that are available for use in the certification, and each developer can decide the criteria for which it wishes to seek certification.[55]*

*To help administer its certification program, ONC relies on private third parties known as ONC-Authorized Testing Laboratories ("ONC-ATLs") and ONC-Authorized Certification Bodies ("ONC-ACBs"). The ONC-ATLs work with developers to determine whether EHR*

---

[53] 42 U.S.C. § 300jj-11(b)(1).

[54] 42 U.S.C. § 300jj-11(c)(5)(A); ONC Health IT, *About the ONC Health IT Certification Program* (last updated Nov. 9, 2021) ("The Office of the National Coordinator for Health Information Technology (ONC) Health IT Certification Program (Certification Program) is a voluntary certification program established by the ONC to provide for the certification of health IT requirements for certification are established by standards, implementation specifications and certification criteria adopted by the Secretary at the Department of Health and Human Services (HHS)."), https://www.healthit.gov/topic/certification-ehrs/about-onc-health-it-certification-program.

[55] Sentence quoted from eCW Proposed Instruction 5 ("Sources Cited (ONC)"). *See also* ONC Health IT, *Certification Process*, https://www.healthit.gov/topic/certification-ehrs/certification-process (last updated Jan. 31, 2024) ("The Certification Program outlines several criteria that are available for use in the certification of a developer's health IT module or product. It is up to the developer to determine for what criteria they wish to seek certification.").

*software satisfies certification requirements. The ONC-ACBs evaluate whether EHR software should be certified after an ONC-ATL determines that certification requirements have been satisfied.*[56]

*Drummond Group served as the ONC-ATL and ONC-ACB for eCW during the time period relevant to this case.*[57]

Relators allege that eCW's software did not meet several ONC certification standards that I will now describe.

---

[56] ONC, *Conformance Methods*, http://healthit.gov/topic/certification-ehrs/conformance-methods (last visited Aug. 8, 2025); ONC, *Oversight and Surveillance*, https://www.healthit.gov/topic/certification-ehrs/oversight-and-surveillance (last visited Aug. 8, 2025).

[57] Sentence quoted from eCW Proposed Instruction 6 ("Sources Cited (Drummond Group)").

**Relators' Request to Charge No. 15**

<u>EHR Certification Requirements (Criterion (d)(1) – Authentication, Access Control, and
Authorization)</u>

Subsection (d)(1) of the ONC certification criteria relates to Authentication, Access

Control, and Authorization.  Under subsection (d)(1), the *EHR software must be able to*

*electronically . . .*

*(i)      Verify against a unique identifier(s) (e.g., username or number) that a user*

*seeking access to electronic health information is the one claimed; and*

*(ii)      Establish the type of access to electronic health information a user is permitted*

*based on the unique identifiers provided in paragraph (i) above, and the actions the user is*

*permitted to perform with the technology.*[58]

---

[58] 45 C.F.R. §170.315(d)(1); italicized language is the same as eCW's charge on (d)(1).

**Relators' Request to Charge No. 16**

EHR Certification Requirements (Criterion (d)(2) – Auditable Events and Tamper-Resistance)

Subsection (d)(2) of the ONC certification criteria relates to Auditable Events and Tamper Resistance.  Under subsection (d)(2), the EHR software must be able to record actions performed on patient health information, including creating, adding, modifying, viewing, deleting, copying or downloading the information, and must identify the user taking such actions and the time the actions took place.  The recording of auditable events must be enabled by default and the ability to disable the recording must be restricted to a limited set of users.  The log of recorded actions must not be capable of being modified or deleted by the software and the software must detect whether the log has been altered.[59]

---

[59] 45 C.F.R. § 170.315(d)(2), modified version of eCW's charge on (d)(2).

**Relators' Request to Charge No. 17**

EHR Certification Requirements (Criterion (d)(3) – Audit Reports)

Subsection (d)(3) of the ONC certification criteria relates to Audit Reports.  Subsection (d)(3) requires that the software "enable a user to create an audit report for a specific time period and to sort entries in the audit log according to each of the data [that must be recorded under subsection (d)(2)]."[60]

---

[60] 45 C.F.R. § 170.315(d)(3) (requiring sorting of data according to each of data specified in 45 C.F.R. § 170.210(e); 45 C.F.R. § 170.315(d)(2) (requiring software to record data specified in 45 C.F.R. § 170.210(e)(1)-(3)).

32

**Relators' Request to Charge No. 18**

<u>EHR Certification Requirements (Criterion (d)(5) – Automatic Access Time-Out)</u>

Subsection (d)(5) of the ONC certification criteria relates to Automatic Access Time-Out. Subsection (d)(5) requires the software to be able to "[a]utomatically stop user access to health information after a predetermined period of inactivity[; and] require user authentication in order to resume or regain access that was stopped."[61]

---

[61] 45 C.F.R. § 170.315(d)(5), essentially identical to eCW's charge except for the first sentence.

**Relators' Request to Charge No. 19**

<u>EHR Certification Requirements (Criterion (d)(7) – End-User Device Encryption)</u>

Subsection (d)(7) relates to End-User Device Encryption.  The relevant part of subsection (d)(7) of the ONC certification criteria requires the EHR software to be "designed to prevent electronic health information from being locally stored on end-user devices after use of the technology on [the] devices stops."[62]

---

[62] *See* 45 C.F.R. § 170.315(d)(7)(ii).

**Relators' Request to Charge No. 20**

<u>EHR Certification Requirements (Criterion (d)(8) - Integrity)</u>

Subsection (d)(8) of the ONC certification criteria relates to Integrity.

Under subsection (d)(8), EHR software "must be able to electronically perform the following capabilities in accordance with applicable standards and implementation specifications:

(i) "Create a message digest [using "[a] hashing algorithm with a security strength equal to or greater than SHA-2 as specified by NIST in FIPS Publication 180-4 (August 2015)"[63]]"[64] and

(ii) "Verify [using a hashing algorithm of the same standard] upon receipt of electronically exchanged health information that such information has not been altered."[65]

---

[63] 45 C.F.R. § 170.210(c)(2); *see* 45 C.F.R. § 170.315(d)(8)(i) (expressly incorporating "the standard specified in § 170.210(c)(2)"). This charge is essentially identical to eCW's charge except for the first sentence.
[64] 45 C.F.R. § 170.315(d)(8)(i).
[65] 45 C.F.R. § 170.315(d)(8)(ii) (expressly incorporating the standard specified in § 170.210(c)(2)).

35

**Relators' Request to Charge No. 21**

EHR Certification Requirements (Criterion (d)(9) – Trusted Connections)

Subsection (d)(9) of the ONC certification criteria relates to Trusted Connections.

Under subsection (d)(9), EHR software "must be able to electronically . . . [e]stablish a trusted connection using one of the following methods:

(i) Message Level. Encrypt and integrity protect message contents in accordance with [any encryption algorithm identified by NIST as an approved security function in Annex A of the October 8, 2014 FIPS Publication 140–2[66]] and [a hashing algorithm with a security strength equal to or greater than SHA-2 as specified by NIST in FIPS Publication 180-4 (August 2015)[67]]"[68]; or

"(ii) Transport level. Use a trusted connection in accordance with [the same standards]."[69]

---

[66] 45 C.F.R. § 170.210(a)(2).
[67] 45 C.F.R. § 170.210(c)(2).
[68] 45 C.F.R. § 170.315(d)(9)(i) (expressly incorporating 45 C.F.R. §§ 170.210(a)(2) and (c)(2)).
[69] 45 C.F.R. § 170.315(d)(9)(ii) (expressly incorporating 45 C.F.R. §§ 170.210(a)(2) and (c)(2)).

**Relators' Request to Charge No. 22**

<u>EHR Certification Requirements (Criterion (d)(12) – Encrypt Authentication Credentials)</u>

Subsection (d)(12) of the ONC certification criteria relates to the Encryption of

Authentication Credentials.  Subsection (d)(12) requires that the EHR developer attest "Yes" or

"No" to this certification requirement.  When an EHR developer attests "Yes" they are attesting

that it "encrypts stored authentication credentials [using any encryption algorithm identified by

the NIST as an approved security function in Annex A of the October 8, 2014 FIPS Publication

140-2.][70]

This criterion does not apply to certified EHR software prior to June 30, 2020.[71] .

---

[70] 45 C.F.R. § 170.210(a)(2); *see* 45 C.F.R. § 170.315(d)(12)(i) (expressly incorporating the standards adopted in § 170.210(a)(2)). This charge is essentially identical to eCW's charge but omits the "no" attestation language.
[71] *See* 85 Fed. Reg. 25642, 25943, 25961 (May 1, 2020) (to be codified at 45 C.F.R. § 170.315(d)(12)).

37

**Relators' Request to Charge No. 23**

<u>Government Knowledge Not a Defense under the False Claims Act</u>

Government knowledge is not a defense to a case brought under the False Claims Act.

Accordingly, even if you suspect or believe that the United States knew or should have known

that the claims, records, or statements at issue were false, Defendant should still be found liable

under the False Claims Act if you find that they violated the elements of the Act.[72]

---

[72] *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.,* 352 F.3d 908, 917 (4th Cir. 2003);
*U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 288-89 (4th Cir. 2002);
*U.S. v. Southland Mgmt. Corp.,* 288 F.3d 665, 681 (5th Cir. 2002), *vacated on reh'g en banc*,
326 F.3d 669 (5th Cir. 2003); *Varljen v. Cleveland Gear Co., Inc.,* 250 F. 3d 426, 431, (6th Cir.
2001); *U.S. ex rel. Hagood v. Sonoma Cty. Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991).

**Relators' Request to Charge No. 24**

Government Negligence or Other Government Failure Is Not a Defense

You may not consider as a defense to a False Claims Act claim any negligent or unreasonable conduct on behalf of the government or any failure by government personnel to perform their duties. If you find that Defendant violated the False Claims Act, you must find for Relators notwithstanding any negligence or unreasonable conduct on the part of the government personnel or any failure by these personnel to perform their duties. Such failure is irrelevant and cannot be used as a defense to Defendant's liability.[73]

In considering whether Defendant knowingly made or caused to be made any false statement or record material to a false or fraudulent claim, however, you may consider all direct and circumstantial evidence concerning whether one or more United States Government employees, with authority to act, knew all the relevant facts. In other words, if you find that a United States Government employee with authority to act knew all of the relevant facts, then you may consider that fact in determining whether the Defendant submitted a false statement or record that was material to a false or fraudulent claim.[74]

---

[73] James B. Helmer, Jr., The False Claims Act: Whistleblower Litigation, 930 (8th Ed. 2021) (Instructions 15B); Jury Instructions at 22, *U.S. ex rel. Samandi v. Materials & Electrochemical Research Corp.*, No. 4:05-cv-00124-DCB (D. Ariz. Feb. 16, 2011), Dkt. No. 311; Dkt. No. 1047, Transcript of Jury Trial (Day 32) at 68, *U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc*., No. 95-1231 (D.D.C. May 4, 2007), Dkt. No. 1047; *U.S. v. Aging Care Home Health, Inc*., No. 3:02-2199, 2006 WL 2915674, at *1 (W.D. La. Oct. 6, 2006) (allegations that the government was at fault and should have discovered the misconduct earlier are no defense to an FCA claim); *U.S. v. Cushman & Wakefield, Inc*., 275 F. Supp. 2d 763, 773 (N.D. Tex. 2003) (affirmative defense of contributory negligence/comparative fault was not available in government's action asserting violations of the FCA).

[74] Transcript of Jury Trial at 44, *U.S. ex rel. Harman v. Trinity Indus., Inc.*, 2:12-cv-89 (E.D. Tex. Oct. 20, 2014), Dkt. No. 584, *rev'd on other grounds*, *U.S. ex rel. Harman v. Trinity Industries Inc.*, 872 F.3d 645, 668 (5th Cir. 2017).

**Relators' Request to Charge No. 25**

<u>Damages</u>

To establish Defendant violated the False Claims Act, the Relators are not required to prove the government was actually damaged by the false or fraudulent claims or false records or statements.[75] The Relators also are not required to prove that they sustained any damage personally as a result of Defendant's conduct. Rather, the Relators stand in the shoes of the federal government to recover damages on behalf of the federal government.[76]

If you find Defendant violated the False Claims Act, then you must determine the amount of damages the government sustained because of the acts of Defendant. The measure of the United States' damages is the amount that it paid out by reason of the false claims or false records or statements over and above what it would have paid if eCW's claims, records or statements had been truthful.[77]

---

[75] Dkt. 346 (Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J.) (collecting cases); *see* S. Rep. No. 99-345, at 8 (1986), as reprinted in 1986 U.S.C.C.A.N.5266, 5273; *Rex Trailer Co. v. U.S.*, 350 U.S. 148, 153 & n.5 (1956) (citing *U.S. ex rel. Marcus v. Hess*, 317 U.S. 537 (1943)); *U.S. v. Ridglea State Bank*, 357 F.2d 495, 497 (5th Cir. 1966) ("proof of actual damage is not a prerequisite to the recovery of a forfeiture under the False Claims Act").

[76] *U.S. v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005) ("Recovery under the False Claims Act is not measured by the amount of any actual damage a relator might have sustained personally as a result of a defendant's false claim. Rather, the relator stands in the shoes of the United States government. She can prosecute the lawsuit on the United States' behalf, and recover, for the United States, the losses attributable to any fraudulent claim and the civil penalty authorized by the statute.").

[77] 31 U.S.C. § 3729(a); O'Malley, Grenig, and Lee, 3C Fed. Jury Prac. & Instr. § 178.60 (6th Ed.); *U.S. v. Mackby*, 339 F.3d 1013, 1014-15 (9th Cir. 2003) (in False Claims Act based on Medicare fraud, because the defendant was ineligible to bill Medicare the United States' damages were found to be the sum of money that Medicare paid out even though the services for which reimbursement was claimed were actually performed); *U.S. ex rel. Freedman v. Suarez-Hojos*, No. 8:04-cv-933, 2012 WL 4344199, at *3-5 (M.D. Fla. Sept. 21, 2012) (same); *U.S. ex rel. Antidiscrimination Ctr. of Metro New York, Inc. v. Westchester Cty.*, No. 06 Civ. 2860, 2009 WL 1108517, at *2 (S.D.N.Y. Apr. 24, 2009) (rejecting "benefit of the bargain" theory where government provided a subsidy premised on certification of compliance).

Specifically, Relators seek damages for the difference between what the government actually paid eCW customers as an incentive for their participation in the MIPS program and what the government would have paid if the providers' MIPS scores accurately reflected that they were not using properly certified EHR software.

**Relators' Request to Charge No. 26**

Estimating Damages

The government's damages, if any, need not be calculated with "mathematical precision."[78] Where a defendant by its own wrong has prevented a more precise damages computation, you may not render a verdict based on speculation or guesswork, but you may make a just and reasonable estimate of the damages based on relevant data, and render your verdict accordingly.[79] In determining the amount of damages, the wrongdoer must bear the risk of the uncertainty which its own wrong has created.[80]

---

[78] *United States v. Killough*, 848 F.2d 1523, 1531 (11th Cir. 1988).

[79] *Id.* (citing *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946)).

[80] *Jot-Em-Down Store, Inc. v. Cotter & Co.*, 651 F.2d 245, 247 (5th Cir. 1981) ("Because the economic harm is intangible and dissection of its extent is difficult the wrongdoer, rather than the victim should bear 'the risk of uncertainty that inheres in measuring the damage he causes.'").

42

**Relators' Request to Charge No. 27**

<u>Quantification of False or Fraudulent Claims / False Statements or Records</u>

In addition to determining the amount of damages, if any, suffered by the United States, you must determine the number of times the Defendant violated the False Claims Act or caused the False Claims Act to be violated. In counting the number of violations, it is not necessary for you to find the government was actually damaged by the violation.

Under provision (A) of the False Claims Act, each false or fraudulent claim eCW knowingly presented or caused to be presented to the United States for payment constitutes a separate violation.[81] For provision (B), each material false statement or record eCW knowingly made, used, or caused to be made or used, constitutes a separate violation.[82]

There will be a space on the verdict form for you to place the number of violations, i.e., the total number of false claims submitted under either provision (A) or (B), if you find that the Defendant violated the False Claims Act.

---

[81] 31 U.S.C. § 3729(a)(1)(A).
[82] 31 U.S.C. § 3729(a)(1)(B).

**Relators' Charge No. 28**

Missing Witness

If it is peculiarly within the power of a party to produce a witness who could give material testimony, the failure to call that witness may justify an inference that his or her testimony would in this instance be unfavorable to that party.[83]

---

[83] *Graves v. United States*, 150 U.S. 118, 121 (1983); *Latin Am. Music Co. v. ASCAP*, 593 F.3d 95, 101 (1st Cir. 2010); *Grajales-Romero v. Am. Airlines, Inc.*, 194 F.3d 288, 298 (1st Cir. 1999) (approving use of instruction in civil case where "a party fails to call a witness who is either (1) 'favorably disposed' to testify for that party, by virtue of status or relationship with the party or (2) 'peculiarly available' to that party, such as being with the party's 'exclusive control'").

**Relators' Charge No. 29**

Withheld Documents

During this case, Defendant eCW withheld documents that Relators requested and that it was obligated to produce. Specifically:

- eCW uses an issue tracking software called JIRA that creates a "ticket" when a new issue is reported.  Despite telling Relators that it had searched for and produced relevant JIRA tickets, eCW withheld more than 11,000 JIRA tickets specifically about security issues until after Relators and their cybersecurity expert Dr. Cole had already produced their expert reports;

- eCW withheld its March 2021 settlement agreement with the SQOO that required the SQOO team leader and others to leave the eCW SQOO team. eCW did not produce those agreements until after Relators discovered their existence during the deposition of SQOO team leader Brad Ulrich; and

- eCW withheld reports about eCW security vulnerabilities that were created by Sygnia, a consulting firm that eCW hired to help its defense of this case. There are two Sygnia reports that (*are* or *will be*) in evidence: an April 2023, 40-page document titled "Final Report," and an August 2023, 50-page presentation that make findings about Relators' allegations and security vulnerabilities in eCW's software. eCW repeatedly denied those reports existed and did not produce them until long after they were requested.

Even though eCW eventually produced the documents, you may infer that eCW withheld producing this evidence because it was unfavorable to eCW.

45

Respectfully submitted this 15th day of July, 2026.

*/s/ Meredith C. Kincaid*
Anna Green Cross
Georgia Bar No. 306674
anna@crosskincaid.com
Meredith C. Kincaid
Georgia Bar No. 148549
meredith@crosskincaid.com
**CROSS KINCAID BASKAM LLC**
315 W. Ponce de Leon Ave, Suite 715
Decatur, Georgia 30030
Tel: (404) 948-3022

Robert H. Snyder, Jr.
Georgia Bar No. 404522
rob@cannellasnyder.com
Alexandra "Sachi" Cole
Georgia Bar No. 696892
sachi@cannellasnyder.com
Hannah Drosky Amanuel
Georgia Bar No. 922743
hannah@cannellasnyder.com
**CANNELLA SNYDER LLC**
315 W. Ponce de Leon Ave, Suite 885
Decatur, Georgia 30030
Tel: (404) 800-4828
Fax: (404) 393-0365

Brian P. Adams
Georgia Bar No. 142474
brian@brianadamslaw.com
Mary Beth Hand
Georgia Bar No. 322836
mbhand@brianadamslaw.com
**ADAMS LAW FIRM**
598 D.T. Walton Sr. Way
Post Office Box 142
Macon, Georgia 31202
Tel: (478) 238-0231
Fax: (478) 216-9188

*Counsel for Relators/Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing by electronically mailing a copy of the same to counsel of record, who, by registering with the Court's CM/ECF system, has consented to electronic service.

This 15th day of July, 2026.

<div style="margin-left:50%">

*/s/ Meredith C. Kincaid*
Meredith C. Kincaid
Georgia Bar No. 148549

*Counsel for Relators/Plaintiffs*

</div>