**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al., | |
| *Plaintiffs*, | Civil Action No. 5:18-CV-00382-MTT |
| v. | Hon. Marc T. Treadwell |
| eCLINICALWORKS, LLC, | |
| *Defendant.* | |

**eCLINICALWORKS, LLC'S MEMORANDUM TO THE COURT**
**REGARDING RELATORS' CIVIL PENALTY CLAIMS METHODOLOGY**

In an abundance of caution, eCW respectfully submits this bench memorandum to prevent the injection of a critical legal error into this trial at the outset.  At the Pretrial Conference, Relators represented to the Court that "Ms. Wolfston is not and has never counted claims," she "doesn't opine about what a claim is under the False Claims Act," and Relators will not ask her "how many claims did you identify" in her damages model.  (6/24/26 Pretrial Conference Tr. at 141:17-20, 144:16-24, 146:16-21.)   The Court resolved that this is "not an issue that Ms. Wolfston is expressing an opinion on."  (*Id.* at 146:10-15.)   Nevertheless, eCW believes there remains a significant risk—based on Relators' recently filed jury instructions, Ms. Wolfston's most current damages spreadsheet, and Relators' other comments at the pretrial conference—that Relators will still try to improperly suggest to the jury that each entry in Ms. Wolfston's spreadsheet is a "claim" they should add up on the verdict form.  (*See*, *e.g.*, *id.* at 144:25-145:9 (Relators' counsel: "[W]hat we need the jury to do at trial is to determine how many false claims there are and what they think the single damages are.  So, we present the evidence from Ms. Wolfston that this is the number of providers who got payments that we contend are too high … And then the jury can go back in the back and say, 'Okay, well, we think you should count it as ten instead of fifty.'").)

This argument invites reversible error.  *See Hays v. Hoffman*, 325 F.3d 982, 993-94 (8th Cir. 2003) (reversing penalty award); *U.S. v. Krizek*, 111 F.3d 934, 940, 943 (D.C. Cir. 1997) (same).  eCW is not asking the Court to resolve, at this moment, whether the correct FCA "claim" is eCW's attestation to ONC or the practice's attestation to CMS under MIPS.  As the Court stated, "[t]he underlying issue of what constitutes a claim obviously is a significant issue," and eCW expects that parties will argue that issue at the charging conference.  (6/24/26 Pretrial Conference Tr. at 146:10-15.)  But under no circumstances can the jury fabricate claims that do not exist.  That is what Relators imply they will seek:  to have the jury take a single group attestation to CMS from

the real world, disaggregate that submission into hundreds of separate line-items based on the number of rows in Ms. Wolfston's spreadsheet, and then find each of those litigation-invented rows is a "claim."  Respectfully, any such argument must be precluded at trial.

*First*, "the submission of an aggregate claim, rather than its individual components, is the act that creates liability under the False Claims Act."  *Oasis Int'l Waters, Inc. v. U.S.*, 134 Fed. Cl. 405, 453 (2016).  For that reason, the courts across the country—including the United States Supreme Court—have routinely rejected efforts to artificially unbundle one allegedly false submission into constituent subparts to multiply the number of FCA "claims":

- In *Bornstein*, a subcontractor delivered 21 boxes of falsely labeled products to the prime contractor across three shipments.  *U.S. v. Bornstein*, 423 U.S. 303, 307 (1976).  The prime contractor then delivered 397 of the products in the boxes to the government and billed the government using 35 separate invoices.  *Id.*  The Supreme Court held there were *three* false claims by the subcontractor, one for each shipment of falsely certified products.  *Id.* at 312-13.  The Court rejected the argument that the defendant "assumed the risk that [the prime contractor] might send 35 invoices when [defendant] sent the falsely branded" parts, and no one even suggested the right measure would be the number of boxes per shipment or products per box.  *Id.*

- In *Krizek*, the district court held that each CPT code on a claim form should be treated as a separate claim (more than 8,000 total), even though only one form was submitted.  *Krizek*, 111 F.3d at 937, 940.  The government argued that "each CPT code" within each form constituted a separate violation that supported a separate penalty, on the theory that, "in processing the claims, the CPT code, and not the [form] in its entirety," determined how much money the government paid.  *Id.* at 939-40.  The D.C. Circuit *reversed* because what constitutes a claim "turns, not on how the government chooses to process the claim, but on how many times the defendants made a 'request or demand.'"  *Id.* at 940.  It explained: "It is the conduct of the [defendant], not the disposition of the claims by the government, that creates FCA liability."  *Id.*

- In *Hays*, "the misconduct was to purchase approximately $6,000 worth of apples, give them to employees during the holiday season, and then falsely claim Medicaid reimbursement for this expense."  325 F.3d at 993.  The "employee gift apples were claimed by eight" facilities in "twenty-seven annual Medicaid cost reports" per facility and "monthly requests for payment."  *Id.* at 993-94.  The Eighth Circuit *reversed* the district court's finding there were 200 claims, holding there were "clearly eight false claims for FCA purposes"—one per facility.  *Id.*  The fact that "a one-time expense for a multi-facility provider may be reimbursed over hundreds or many thousands of claims for reimbursement of services provided to individual residents" does not transform those into separate FCA claims.  *Id.*

2

- In *Garibaldi*, the district court ruled that the defendant was "not liable for each and every code" that was "on the same page" of "its requests to the government." *U.S. ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 46 F. Supp. 2d 546, 554-55 (E.D. La. 1999), *vacated on other grounds,* 244 F.3d 486 (5th Cir. 2001). Rather, the defendant was "liable for only one false claim per application, even if more than one account was listed on the page." *Id.* at 555. That is because "[i]t is the number of applications for funds, and not the number of coded items on each application, or the number of invoices generated by the applications, or the number of contracts the applications represent, that determines the number of claims made." *Id.* at 554.[1]

These principles apply with full force here. Relators concede that "MIPS submissions can be made … as a group," and Ms. Wolfston's latest damages submission now has a column indicating which providers attest as a "group" versus as "individuals." (6/24/26 Rels.' Damages Slides at Pretrial Conference, at 19.) Under MIPS regulations, a "group" is "a single TIN with two or more eligible clinicians (including at least one MIPS eligible clinician), as identified by their individual NPI, ***who have reassigned their billing rights to the TIN***." 42 C.F.R. § 414.1305 (emphasis added). That means the group "collect[s] and report[s] measures and activities based on aggregated performance of the clinicians billing" as a group, attests as a "group" and receives a "payment adjustment … based on [the] group's final score from the MIPS performance categories."[2] When the "group" attests, the individual NPIs associated with clinicians are not even on the attestation. Having submitted a single group attestation, the group submits at most one "claim" regardless of whether that form theoretically "represents" multiple clinicians. *Garibaldi*,

---

[1]    *See also U.S. ex rel. Bahnsen v. Boston Sci. Neuromodulation Corp.*, 2018 WL 4604307, at *4 (D.N.J. Sept. 24, 2018) ("[T]he Form [itself] represents a claim, regardless of the number of diagnostic codes or line entries included on each form."); *Cantrell v. New York Univ.*, 326 F. Supp. 2d 468, 470 (S.D.N.Y. 2004) ("One invoice constitutes one false claim, even though it contains numerous individual entries, and a false claim is made when the invoice is presented for payment."); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 2010 WL 3730894, at *3, 5 (D. Colo. Sept. 16, 2010) (The "monthly consolidated form filed by the Defendant," not "each miscalculated royalty from *each lease* included in each monthly report," constituted "the 'claim' for which penalties are assessed."); *Hendrix ex rel. U.S. v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1172-73 (9th Cir. 2023) (affirming the district court "awarding only one penalty per project[]" because FCA penalties are "based on the number of contracts or invoices but not on each good").

[2]    Quality Payment Program, *Individual, Group, and Subgroup Participation*, https://qpp.cms.gov/eligibility-participation/ways-to-participate/individual-or-groups (last visited July 27, 2026).

46 F. Supp. 2d at 554-55.

**Second**, converting hundreds of real-world aggregate group submissions into tens of thousands of fictional individual attestations "bears no rational relationship to the false claim misconduct." *Hays*, 325 F.3d at 993. Penalties must attach to "the **specific conduct** of the person from whom the Government seeks to collect the statutory forfeitures." *Bornstein*, 423 U.S. at 313 & n.8 (cautioning that, "in construing" the FCA's penalty provision, "we are actually construing the provisions of a criminal statute" (emphasis added)); *accord U.S. ex rel. Longhi v. Lithium Power Techs., Inc.*, 530 F. Supp. 2d 888, 900-01 (S.D. Tex. 2008) (rejecting the argument that "the court should assess a penalty for each of the 54 vouchers submitted under the [f]our [c]ontracts" because "although the invoices are tainted by the initial fraud, it is the contracts themselves that trigger the forfeiture"). eCW has **no** control over (1) whether its customers attest individually or as a group, or (2) how many providers will be included in any group attestations—it could be 2, 200, or more.[3] "The fact that [clinicians] chose to submit [one number of] false claims instead of some other number was, so far as [eCW] was concerned, wholly irrelevant—completely fortuitous and beyond [eCW's] knowledge or control." *Bornstein*, 423 U.S. at 312. "The [FCA], however, does not penalize [eCW] for what [clinicians] did. It penalizes [eCW] for what it did." *Id.*

**Third**, Ms. Wolfston's latest damages model illustrates the absurdity of Relators dividing group attestations into fictitious provider-level "claims." Ms. Wolfston now estimates ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[3]  Relators' proposed jury instruction—that "each attestation by an eCW Version 11 user that he or she was using certified EHR technology that resulted in the provider receiving a positive MIPS payment adjustment or avoiding a negative MIPS payment adjustment is a false claim, which eCW caused the provider to submit"—walks straight into this problem. (ECF No. 584, Rels.' Proposed Jury Charges, at 18-19.) Even putting aside the parties' disagreement over whether a provider's attestation matters, this proposal is designed to focus on the individual "eCW user" and any payment "that resulted"—not the actual attestation in fact submitted to the government.

████████████████████████████████████████

████████████████ That is precisely the "irrational outcome" courts reject. *See U.S. ex rel. Dyer v. Raytheon Co.*, 2013 WL 5348571, at \*32 (D. Mass. Sept. 23, 2013) ("[a] fine of [a] magnitude" "as high as $561 million" "simply cannot have any rational relationship to the alleged misconduct" of "charging the government for, at most, $1.165 million in unallowable expenses"); *Krizek*, 111 F.3d at 940 ("fairness" precluded counting CPT codes in medical claims forms where it would permit recovery of "an astronomical $81 million worth of damages for alleged actual damages of $245,392"); *Hays*, 325 F.3d at 993 (rejecting an analysis that "produces a $1,000,000 penalty" for "spending $6,000 to purchase apples").

\*    \*    \*

Given the importance of these issues and the clear risk of legal error, eCW respectfully submits this memorandum for the Court's consideration. Having disclaimed that "Ms. Wolfston is not and has never counted claims," Relators should not be permitted to argue or otherwise suggest that each line in her spreadsheet is, in fact, a "claim." The Court should preclude Relators from presenting a fabricated unbundled claims number to the jury or urging it to count "claims" at the individual provider-level regardless of whether that provider attested as part of a group.

5

Dated: July 27, 2026

Respectfully submitted,

*/s/ Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

Allison M. Brown (*pro hac vice*)
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, Pennsylvania 19103
Tel: (215) 268-5000

Martin L. Roth (*pro hac vice*)
martin.roth@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-7170

Aaron Katz (*pro hac vice)*
akatz@aaronkatzlaw.com
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, Massachusetts 02116
Tel: (617) 915-6305

*Counsel for Defendant eClinicalWorks, LLC*

6

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on July 27, 2026, a copy of the foregoing was served on all parties of record via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Duke R. Groover*
Duke R. Groover
Georgia Bar No. 313225
dgroover@jamesbatesllp.com
JAMES BATES BRANNAN
GROOVER LLP
231 Riverside Drive
Suite 100
Macon, Georgia 31201
Tel: (478) 742-4280
Fax: (478) 742-8720

*Counsel for Defendant eClinicalWorks, LLC*

1