UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ALEX PERMENTER, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>eCLINICALWORKS, LLC,<br><br>    Defendant. | CIVIL ACTION FILE<br><br>NUMBER 5:18-CV-382 |

**RESPONSE OF AARON KATZ TO THE COURT'S REQUEST REGARDING THE PRIOR MOTION PRACTICE RELEVANT TO THE DEFENSE'S OPENING SLIDE CRITICIZING RELATORS' DAMAGES EVIDENCE**

As the Court directed, this evening I reviewed the prior motion practice relevant to the damages slide in the defense's opening statement that the Court deemed objectionable.  This response seeks to summarize those prior motions, the transcripts of any oral arguments on those motions, the Court's rulings on those motions, and subsequent motions filed in response to the Court's rulings.  I have tried my best to capture in an efficient manner the gist of the parties' arguments and the Court's rulings.  I have prepared this response without any assistance from any member of the Kirkland & Ellis team.  I did not show this filing to any other member of the eCW litigation team prior to filing it, nor did any other member of the litigation team contribute to it.

**1. eCW's First Challenge to Ms. Wolfston (ECF No. 191)**

On October 30, 2024, eCW filed its original *Daubert* challenge to Ms. Wolfston's damages report.  At that time, Ms. Wolfston's opinion was that the government "sustained damages somewhere in the range of $215 to $388 million . . . ."  ECF No. 191-1, at 1.  The gist of eCW's challenge was that (1) Ms. Wolfston lacked the requisite experience and expertise to conduct her

1

analysis; (2) because the MIPS program is "budget neutral," by definition the "federal government's bottom line [could not have been] affected"; and (3) Ms. Wolfston's "full refund model" failed to account for the fact that "the government received value from doctors' use of eCW's software" even assuming there were material non-conformities with the ONC's certification requirements. *Id.* at 1-2. eCW also raised other conceptual challenges to Ms. Wolfston's methodology—for example, her failure to consider that practitioners would have claimed hardship exemptions had eCW's product been decertified. *See id.* at 16-17.

Relators opposed all of eCW's arguments. *See* ECF No. 290. At oral argument on the motion, Relators' counsel acknowledged that Mr. Wheeler "gather[ed] the information that we were looking [for] here, which was [practitioners'] NPI numbers." ECF No. 334, at 90:2-3. Relators argued that, even "if it were" true that Ms. Wolfston "just blindly rel[ied] on [Mr. Wheeler's] work," that would be "a question for cross-examination" and not a ground for preclusion. *Id.* at 90:21-23.

The Court agreed with Relators that Ms. Wolfston was qualified to offer her opinions and that, although her "computations are based upon data that the relators assisted her in gathering," that is "not necessarily fatal to an expert." ECF No. 334, 81:1-4. The Court also rejected, essentially on legal grounds, eCW's other methodological challenges to Ms. Wolfston's analysis and denied eCW's motion in full. *See* ECF No. 333, at 2. Thus, eCW's first challenge to Ms. Wolfston's opinions was not the reason Ms. Wolfston subsequently changed her damages estimates.

### 2. eCW's Second, Third, and Fourth Challenges to Ms. Wolfston (ECF Nos. 364, 365, and 367)

On August 25, 2025, eCW filed three new challenges to Ms. Wolfston's damages calculation. *See* ECF Nos. 364, 367. The motion filed at ECF No. 364 principally argued that,

although Relators had "recently narrowed their claims in opposing summary judgment to version 11 only," Ms. Wolfston's damages calculation "included customers" using version 10 of eCW's software, which meant that her opinion no longer fit Relators' theory of liability. *See* ECF No. 364-1, at 1, 3. The motion filed at ECF No. 365 principally argued that Ms. Wolfston's methodology failed to account for various "automatic [regulatory] exemptions" and "automatic [regulatory] exceptions" to the MIPS interoperability scoring category. *See* ECF No. 365-1, at 4-5. It also criticized Ms. Wolfston for failing to consider the alternative payment model that applies to MIPS-APMs. *See id.* at 6. The motion filed at ECF No. 367 principally argued that Ms. Wolfston's "proposed single damages figure . . . includes ***more than $125 million*** in supposed 'overpayments' that the Medicare program made to thousands of clinicians who ***were not eCW users***." ECF No. 367-1, at 8 (italics and bolding in original). The motion also argued that Ms. Wolfston "double-counts, triple-counts, and even ***quintuple-counts***" the supposed overpayments received by certain practitioners (*e.g.*, attributing a $3.5+ million overpayment to Hillside Medical Care and then attributing that same overpayment again to NYC-Metro Physician Services). *Id.* at 10 (italics and bolding in original).

On August 28, 2025, Relators responded to eCW's three motions by moving to strike them, either as untimely *Daubert* motions that should have been filed in October 2024 or procedurally improper motions for reconsideration. *See* ECF No. 372. Relators pointed out that the Court had "denied eCW's [first *Daubert*] motion in its entirety on June 4, 2025." *Id.* at 1. They argued that eCW's new motions did "nothing more than rehash arguments the Court expressly rejected or [made] arguments that eCW could have made when it first sought Ms. Wolfston's exclusion." *Id.* at 1.

3

The Court scheduled oral argument on the three motions for October 23, 2025. On October 1, 2025 (three weeks prior to oral argument), Relators filed a motion for leave to serve a supplemental expert report. In that motion, Relators stated:

> [We] carefully reviewed eCW's filings and agree that Ms. Wolfston should supplement her report to account for *some* of the issues eCW raises. Ms. Wolfston agrees that she should:
>
> a. Remove non-Version 11 users from the models;
>
> b. For performance years 2019-2021, confirm that providers matched to the eCW customer list reported to CMS they were using eCW, remove practices that reported using some other software, and for those practices only include damages from individual providers that eCW expressly identified as customers; and
>
> c. Substitute the 'Total Medical Medicare Payment Amounts' used to calculate damages for some providers in Model 2 for the 'Total Medicare Payment Amount' she originally used.

ECF No. 434, at 3. In other words, Relators' decision to have Ms. Wolfston revise her damages opinion was not compelled by a Court order, but rather was an acknowledgment that eCW had identified a flaw in the factual inputs she used to calculate her damages.

On October 15, 2025, the Court granted Relators' motion for leave, without ruling on whether the supplemental report actually would be permitted at trial. *See* ECF No. 473. Relators served Ms. Wolfston's new report on eCW (with a copy to the Court) on October 20, 2025. *See* ECF No. 477. Ms. Wolfston's new report estimated a damages range of ~$124-$184 million, as compared to her original estimated range of ~$215-$388 million. That same day, Relators filed a brief arguing that Ms. Wolfston's supplemental report was procedurally proper. Relators argued: "Damages models are routinely updated to address new data, rebuttal opinions, and liability rulings. This case is no different, no matter how hard eCW tries to spin the facts or distort the law." ECF No. 479, at 3.

4

At the October 23, 2025 oral argument, Relators' counsel "agreed . . . that if you point out a piece of information that contradicts something in our model which was reasonably constructed and fully disclosed, then I believe we do have an obligation to attempt to take it into account, which is what the new model does." ECF No. 482, at 116:2-7. Relators' counsel also agreed that "[they] should confirm that there's nobody on our list that we know to have attested to using some other EHR. . . . [W]hat we believe is appropriate is that we should supplement the model, and we have." *Id.* at 121:1-3, 15-16. Relators counsel also said "it's a point for cross to make with Ms. Wolfston to say that, you know, perhaps you couldn't say for sure whether they attested to using [version] 10 or [version] 11. I think that's a cross point." *Id.* at 115:10-13.

Technically, the Court did not rule on eCW's motion at the October 23, 2025 hearing. However, the Court made clear that, at least with respect to the non-eCW customer issue, the motion raised "substantial questions [in the Court's] mind that need to be resolved." *Id.* at 129:6-7. I certainly left the hearing with the impression that the Court at least was tacitly directing Relators to fix whatever factual-input problem Ms. Wolfston's damages model might contain.

### 3. Relators' Request to Obtain Data From CMS (ECF No. 488)

In response to a directive the Court issued to eCW's counsel at the October 23, 2025 hearing, on November 7, 2025, eCW sent Relators' counsel a letter listing all of the flaws in Ms. Wolfston's newest report that eCW believed still needed to be fixed. On November 21, 2025, Relators asked the Court for permission to obtain data from CMS that would "eliminate[ ]" or "substantially reduce[ ]" the issues that eCW had raised with Ms. Wolfston's prior opinions, which relied significantly on discretionary judgments about whether a practitioner not listed on eCW's customer list nevertheless was an eCW customer. ECF No. 488-1, at 7. Relators proposed a schedule for providing eCW a new damages opinion from Ms. Wolfston within 30 days of receiving the CMS data. *Id.* at 8. The Court granted that motion on December 19, 2025. *See* ECF

No. 494.  On February 12, 2026, the Court denied as moot the motions eCW had filed at ECF Nos. 364, 365, and 367.  *See* ECF No. 498.

Relators ultimately received the CMS data, and Ms. Wolfston served her third supplemental report on eCW on May 15, 2026.

### 4.  eCW's Motion in Limine No. 11 (ECF No. 404)

While eCW's motions filed at ECF Nos. 364, 365, and 367 were pending, the parties filed their pre-trial motions in limine in compliance with the pre-trial schedule.  eCW's "Motion in Limine No. 11" moved to preclude Relators from "introducing evidence and arguments concerning the parties' motion practice."  ECF No. 404, at cover page.  The motion was precipitated by Relators designating for use at trial a portion of Girish Navani's deposition involving questions regarding eCW's transfer of venue motion.  *Id.* at 1.  The transfer motion was the only prior motion practice that the motion in limine specifically referenced.  eCW's motion in limine argued that "[m]otions are not *evidence* that make Relators' allegation[s] more or less likely," *id.*, and that "injecting the parties' prior motion practice into the jury's deliberations" would violate Rule 403.  *Id.*

Relators responded to eCW's motion in limine by arguing that the "only actual motion eCW refers to specifically is its denied Motion to Transfer."  ECF No. 441, at 2.  Relators argued various reasons why they should be permitted to introduce at trial statements eCW made in the transfer motion, asserting that the transfer motion contained statements that contradicted certain defenses eCW may seek to assert at trial.

At the oral argument held on June 24, 2026, the Court did not take any argument on eCW's motion in limine. The Court described the motion by its title and stated that it was granted.[1] *See* ECF No. 578, at 78:25-79:3.

### 5. eCW's Fifth Challenge to Ms. Wolfston (ECF No. 572)

eCW's fifth motion challenging Ms. Wolfston's opinion was filed on June 17, 2026 at ECF No. 572. This motion challenged the version of Ms. Wolfston's opinion that Relators served on eCW on May 15, 2026. Its principal argument was that Ms. Wolfston's damages calculation improperly included users who attested to MIPS using v.11.52.153 of eCW's software, which the ONC had certified several months *after* the unsealing of Relators' complaint. Relators did not respond to eCW's motion prior to the June 24, 2026 hearing, but the issue was addressed at the hearing. Relators then filed an opposition to eCW's motion on July 1, 2026. *See* ECF No. 580. The Court informed the parties via email on the morning of July 16, 2026 that it agreed with eCW's motion and that Relators would not be permitted to seek damages for MIPS incentive payments made to v.11.152.153 users.

Last week, Relators provided eCW's counsel with a revised version of Ms. Wolfston's report that removed the v.11.52.153 payments from her damages model, as the Court had directed. This reduced her damages from ~$106 million to ~$49 million.

*    *    *    *    *

Thank you for considering this filing. I am happy to answer any questions the Court would like to ask me.

---

[1] It had never occurred to me that this motion in limine, or the Court's ruling on it, had any bearing on how eCW would be permitted to cross-examine Ms. Wolfston, Mr. Wheeler, or any other witness at trial. I had considered the motion merely to be a straightforward "defensive medicine" measure to prevent Relators from telling the jury that a Massachusetts company and its Boston- and D.C.-based lawyers had tried to get the case transferred out of Macon five years ago.

Respectfully submitted,

*/s/ Aaron M. Katz*
Aaron M. Katz
AARON KATZ LAW LLC
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305
akatz@aaronkatzlaw.com

July 28, 2026

## Certificate of Service

This document was served on all counsel of record via the CM/ECF system.

*Aaron M. Katz*